Electronically Served
5/13/2014 6:40:19 PM
Hennepin County Civil, MN

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |
| | Case Type:  Other Civil |

| | |
|---|---|
| RESIDENTIAL FUNDING COMPANY, LLC, | Court File No. 27-CV-14-3609 |
| | Judge Bernhardson |
| Plaintiff, | **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| HOME LOAN CENTER, INC., | |
| Defendant. | |

Plaintiff Residential Funding Company, LLC f/k/a Residential Funding Corporation ("RFC" or "Plaintiff"), by and through its attorneys, alleges for its First Amended Complaint against defendant Home Loan Center, Inc. ("Defendant" or "HLC"), as follows:

## NATURE OF ACTION

1.     This case arises in substantial part from the billions of dollars in liabilities and losses incurred by Plaintiff RFC in and pursuant to its chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of New York (Case No. 12-12020 (MG)).  Those liabilities and losses, in turn, arose from defective residential mortgage loans sold to RFC by mortgage loan sellers, including Defendant HLC, who are legally and contractually responsible for the liabilities and losses caused by the poor quality of the mortgage loans in question.

2.      Plaintiff RFC was, at times prior to its bankruptcy in May 2012, in the business of acquiring and securitizing residential mortgage loans.

3.      RFC's business model was built on acquiring loans from "correspondent lenders," such as Defendant HLC, and distributing those loans by either pooling them together with other similar mortgage loans to sell into residential mortgage-backed securitization ("RMBS") trusts, or selling them to whole loan purchasers.

4.      Over the course of the parties' relationship, HLC sold over 6,200 mortgage loans, with an original principal balance in excess of $600 million, to RFC.

5.      Critical to RFC's business success was the quality of the loans it purchased. To that end, RFC required its correspondent lenders, including HLC, to abide by stringent loan-level contractual representations and warranties designed to protect RFC from the risks of borrower fraud, appraisal fraud, failure to comply with state and federal law, and other credit and compliance factors that could negatively impact the performance and value of the loans it purchased.

6.      Over the course of RFC's business relationship with Defendant HLC, RFC identified loans that contained material defects violating one or more of HLC's contractual representations and warranties, and HLC in many cases acknowledged those material defects by repurchasing the loans or otherwise compensating RFC for the defects.  To the extent HLC repurchased certain individual loans from RFC, RFC is not seeking to again recover the repurchase price as to those loans.  However, many defective loans sold to RFC by HLC remain unresolved.  Moreover, HLC repurchase of certain loans did not compensate RFC for all the liabilities and losses that RFC incurred due to

HLC's sale of defective loans to RFC. The parties' Agreement entitles RFC to recovery of the additional liabilities and losses it incurred due to HLC's breaches.

7. Ultimately, due in significant part to the failure of correspondent lenders, including HLC, to honor their contractual representations and warranties, RFC was sued by numerous counterparties and investors in its RMBS, based on allegations that the loans contained numerous defects and were rife with fraud and compliance problems.

8. By the time RFC and certain of its affiliates (collectively, the "Debtors") filed for bankruptcy in May 2012, RFC was facing over two dozen lawsuits around the country, all alleging that the loans RFC had securitized were defective, as well as claims by investors in hundreds of its RMBS seeking tens of billions of dollars in damages based on loan-level problems.

9. During the bankruptcy proceeding, hundreds of proofs of claim were filed by dozens of claimants, including investors alleging securities fraud claims, class action plaintiffs, monoline insurers, RMBS holders and indenture trustees acting at their direction claiming breaches of representations and warranties, whole loan investors, and non-debtor co-defendants (such as underwriters of the RMBS offerings). Collectively, these claims alleged tens of billions of dollars of damages stemming from defective loans, including those sold to RFC by HLC.

10. Following a lengthy and intensive mediation presided over by sitting bankruptcy judge James M. Peck, and related proceedings, RFC was able to resolve its RMBS-related liabilities for over $10 billion of allowed claims in its bankruptcy case. This agreed resolution of RFC's RMBS-related liabilities was set forth in a global

settlement, which formed the cornerstone of a liquidating chapter 11 plan for RFC and its affiliated Debtors.   On December 11, 2013, after a five-day confirmation trial, the Bankruptcy Court approved the global settlement, finding it to be fair and reasonable and in the best interests of each of the Debtors, and confirmed the chapter 11 plan.

11.     Defendant HLC is contractually obligated to indemnify RFC for all liabilities and losses incurred by RFC as a result of breaches of Defendant's representations and warranties.

12.     Accordingly, RFC brings this action for breach of contract, and for indemnification of all liabilities and losses RFC has incurred due to Defendant's breaches of its representations and warranties.

## PARTIES

13.     Plaintiff RFC is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.   RFC was formerly known as Residential Funding Corporation.   When this case was commenced, RFC was a wholly owned subsidiary of GMAC-RFC Holding Company, LLC, a Delaware limited liability company.   GMAC-RFC Holding Company, LLC was a wholly owned subsidiary of Residential Capital, LLC, a Delaware limited liability company.   Residential Capital, LLC was a wholly owned subsidiary of GMAC Mortgage Group LLC, a Delaware limited liability company, which in turn was a wholly owned subsidiary of Ally Financial, Inc., a Delaware corporation with its principal place of business in Michigan. Pursuant to the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et. al. and the Official Committee of Unsecured Creditors*, Case No. 12-12020

(MG) (Bankr. S.D.N.Y.) [D.I. 6065-1] (the "Plan"), on December 17, 2013, GMAC-RFC Holding Company, LLC's interest in RFC was cancelled and the ResCap Liquidating Trust (the "Trust") succeeded to all of RFC's rights and interests under RFC's Agreement with HLC, and now controls RFC.[1]

14.     Defendant Home Loan Center, Inc. is a California corporation with its principal place of business at 11115 Rushmore Drive, Charlotte, NC 28277.

## JURISDICTION AND VENUE

15.     This Court has personal jurisdiction over the Defendant because the Defendant transacted business in Minnesota and committed acts in Minnesota causing injury to RFC.

16.     Venue is proper in this Court pursuant to Minn. Stat. § 542.09 because the cause of action arose, in part, in Hennepin County, the agreements at issue were to be performed in part or entirely in Hennepin County, and because the parties have contractually agreed that Minnesota State Court is an appropriate venue.  Plaintiff also believes that venue is appropriate in the United States Bankruptcy Court for the Southern District of New York because these claims relate to the bankruptcy proceedings involving Residential Funding Company, LLC already pending in that court at Case No. 12-12020 (MG).

---

[1]     The Trust is organized pursuant to the Delaware Statutory Trust Act.

# FACTUAL BACKGROUND

## The Agreement Between RFC and HLC

17.     Over the course of the parties' relationship, HLC sold over 6,200 mortgage loans to RFC pursuant to the Seller Contract attached as Exhibit A (the "Contract").

18.     The Contract incorporates into its terms and conditions the RFC Client Guide, exemplary excerpts of which are attached as Exhibit B-1 through B-15 (the "Client Guide").  (The complete versions of the Client Guide are known to the parties and too voluminous to attach in their entirety; the omitted portions of the Client Guides do not affect the obligations set forth in this Amended Complaint.)  The Contract and Client Guide collectively form the parties' Agreement, and set the standards to which HLC's loans sold to RFC were expected to adhere.

19.     A preliminary list of the loans sold by HLC to RFC pursuant to the Agreement, and subsequently securitized by RFC, is attached hereto as Exhibit C.  The original principal balance of these loans exceeds $600 million.

20.     As a correspondent lender, HLC had the initial responsibility for collecting information from the borrower, verifying its accuracy, and underwriting the loan.  HLC had primary responsibility for all aspects of the underwriting of the loan, and it was understood between the parties that RFC would generally *not* be re-underwriting the loan. It was HLC, or others from whom HLC purchased mortgages, that actually closed the loans with the borrowers.

21.     As HLC was well aware, once the loans were sold to RFC, RFC pooled groups of loans with similar characteristics, and the pool of loans would be sold into a

special-purpose securitization Trust.  The pool of loans formed the collateral underlying the Trust's mortgage-backed securities, which were in turn sold to investors.

22.     As HLC was also well aware, RFC from time to time sold pools of loans to whole loan investors.

23.     HLC knew of RFC's intention to securitize and/or sell the loans. Specifically, Defendant HLC acknowledged, in the Client Guide, that it "recognize[d] that it is [RFC's] intent to securitize some or all of the Loans sold to [RFC]," and agreed to provide RFC with "all such information … as may be reasonably requested by [RFC] for inclusion in a prospectus or private placement memorandum published in connection with such securitization," including all information necessary to comply with the disclosures required by Regulation AB (governing asset-backed securities) and other applicable federal securities laws.  (See Client Guide at A202(II); 206(D).)

24.     Pursuant to the Agreement, Defendant HLC made a number of representations and warranties with respect to the loans, including, but not limited to, the following:

    a.   Defendant's "origination and servicing of the Loans have been legal, proper, prudent and customary and have conformed to the highest standards of the residential mortgage origination and servicing business." (Client Guide A201(K).)

    b.   Defendant "will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding [Defendant], the Loan, the Mortgaged Property or the Mortgagor of which [Defendant] has knowledge, which … may materially affect [Defendant], the Loan, the Mortgaged Property or the Mortgagor." (Client Guide A201(M).)

c.  "All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts.  All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file."  (Client Guide A202(A).)

d.  "All Loan Documents, Funding Documents and Final Documents are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide," and "[a]ll originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate."  (Client Guide A202(D).)

e.  "All Loan Documents, Funding Documents and Final Documents and all other documents describing or otherwise relating thereto are in compliance with all local and State laws, regulations and orders." (Client Guide A202(D).)

f.  "There is no default, breach, violation or event of acceleration existing under any Note or Security Instrument transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by [Defendant] or any other entity involved in originating or servicing the Loan."  (Client Guide A202(G).)

g.  "[E]ach Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations, including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act.  This warranty is made by [Defendant] with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the [Defendant] or any other entity."  (Client Guide A202(I).)

h.  "No Loan is a … loan considered a 'high-cost,' covered, 'high-risk,' 'predatory' or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees."  (Client Guide A202(J)(1)(d).)

i. "[N]o circumstances exist involving the Loan Documents, the Mortgaged Premises or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan." (Client Guide A202(Q).)

j. "The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide." (Client Guide A202(T).)

k. "For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide." (Client Guide A202(T).)

l. "For each Loan, as of the Funding Date, the market Value of the Mortgaged Premises is at least equal to the appraised value stated on the Loan appraisal, or if an Automated Valuation Model (AVM) is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower … due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the [Defendant] has actual knowledge of reasonable grounds to suspect." (Client Guide A202(T).)

m. "No fraud or misrepresentation by the Borrower or by the [Defendant], broker, correspondent, appraiser or any independent contractor retained by the [Defendant], broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate." (Client Guide A202(KK).)

25.     These representations and warranties were material terms in RFC's agreement to acquire the mortgage loans from HLC.  HLC's contractual warranty of the quality of the loans was important because RFC in turn sold these loans to RMBS trusts and whole loan purchasers, making its own representations and warranties to the trusts and investors.  If any of HLC's representations and warranties turned out to be false, RFC could have exposure to these third parties, and thus RFC required contractual protection

from HLC under which RFC would have recourse for its liabilities and losses on account of defective loans.

26.     Pursuant to the Client Guide, HLC's failure to comply with its representations and warranties or <u>any</u> of the other requirements, terms or conditions of the Client Guide constitutes an "Event of Default," as does its failure to provide RFC with true, accurate and complete information in a timely manner.  (<u>See</u> Client Guide A208.)

27.     Similarly, it is an "Event of Default" if a "[b]orrower or any other person or entity involved in the loan transaction or its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with" the loan transaction, regardless of whether HLC knew of the misrepresentation or incorrect information.  (<u>See</u> Client Guide A208.)

28.     HLC expressly agreed that RFC was permitted to exercise any remedy "allowed by law or in equity" in connection with such Events of Default.   (<u>See</u> Client Guide A209.)  Moreover, the Client Guide specified that RFC's exercise of one or more remedies in connection with a particular Event of Default "will not prevent it from exercising … [o]ne or more other remedies in connection with the same Event of Default," or "[a]ny other rights which it may have at law or in equity."  (<u>Id.</u>)  RFC's remedies expressly survived the sale of the loans and the termination of the ongoing business relationship between RFC and HLC.  (<u>Id.</u> at A209(C).)

29.     The Client Guide further specified the remedies available to RFC in case of an Event of Default, including a breach of any loan-level representation or warranty.  The available remedies included, but were expressly not limited to, repurchase of the defective loan, substitution of another loan for the defective one, or indemnification against liabilities resulting from such breaches.  (See Client Guide A210.)  The Client Guide expressly stated that RFC was "not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase."  (Id.) Further indemnification remedies are set forth in Sections A202 and A212 of the Client Guide.  Section A209 of the Client Guide, in turn, makes clear that all of these remedies are non-exclusive and cumulative.

30.     Moreover, RFC alone retained the sole discretion to declare an Event of Default, and to choose what remedy or remedies to pursue.  Nothing in the Agreement required RFC to provide HLC with notice and an opportunity to cure the defects, to make a repurchase demand, or in any way restricted RFC from pursuing recovery for materially defective loans at any time.  In fact, the United States Court of Appeals for the Eighth Circuit recently confirmed that, under the Client Guide, RFC has the sole discretion to declare an Event of Default, and correspondent lenders such as HLC have contractually bargained away any right to challenge RFC's determination regarding such an Event of Default.  See Residential Funding Co., LLC v. Terrace Mortg. Co., 725 F.3d 910 (8th Cir. 2013).

31.     The repurchase provision required HLC to compensate RFC for defective loans according to a formula specified in the Client Guide that is based on the original

principal balance of the loan.  If RFC determined that repurchase was not appropriate, HLC would nonetheless contractually be obligated to pay RFC "all losses, costs and expenses incurred by [RFC] and/or the loan's servicer as a result of an Event of Default," including "all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken."  (See Client Guide A210.)

32.     Under the terms of the Agreement, HLC is obligated to repurchase loans and/or pay RFC the repurchase price even if the loan has already been foreclosed upon. (See Client Guide A210(B).)

33.     Defendant HLC also expressly agreed to broad indemnification provisions, including the following:

> [Defendant] shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses … includ[ing], without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Guide, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by [Defendant] contained by the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the [Defendant] in information required under Regulation AB or any successor regulation.
>
> In addition, [Defendant] shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by [Defendant], or any of its

agents, or any originator or broker in connection with the origination or servicing of a Loan.

(Client Guide A212.)  HLC further agreed:

> to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by [Defendant] to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

(Client Guide A202.)  The Client Guide also entitles RFC to recover all court costs, attorney's fees and any other costs, fees and expenses incurred by RFC in enforcing the Agreement or Client Guide.

34.     Additionally, prior to the commencement of this lawsuit, HLC conceded that certain of its loans sold to RFC were materially defective.  In that regard, HLC has already paid substantial sums to RFC to cover those defects.  In this action, RFC is not seeking to recover again on those sums.

35.     RFC at all times performed all of its obligations to HLC, if any, under the Agreement, and all conditions precedent to the relief sought in this action, if any, have been satisfied.

**Defendant Materially Breached Numerous Loan-Level Representations and Warranties.**

36.     As noted above, the loans RFC acquired from HLC and other correspondent lenders were sold, either into RMBS trusts that issued certificates to outside investors, or in "whole loan" portfolios to other mortgage companies and banks.

37.     The loans HLC sold RFC were eventually deposited in over 150 RMBS Trusts.  When RFC sold the loans, it passed on a more limited set of representations and warranties to the Trusts, and, as required by SEC regulations, disclosed pertinent information about the loans to investors in the RMBS.  In making those representations and warranties, RFC relied on information provided to it by HLC and other correspondent lenders.  That information in many cases violated HLC's representations and warranties to RFC.

38.     HLC materially breached its extensive contractual representations and warranties by delivering loans that were not originated or underwritten in accordance with the requirements of the Agreement; did not meet the representations and warranties made as to those loans; and/or failed to comply with applicable state and federal law.

39.     Over time, many of the loans sold to RFC by HLC defaulted or became seriously delinquent.  Many of the loans HLC sold RFC and RFC securitized eventually sustained losses, collectively totaling over $80 million, exposing RFC to claims from investors, monoline insurers, and others.

40.     These delinquency and default rates far exceed what would normally be expected in a given population of mortgage loans.

41.    Internal reviews conducted by RFC determined that dozens of the loans sold to RFC by HLC violated the Client Guide and/or other representations or warranties made by HLC, resulting in an Event of Default under the Agreement.

42.    The types of defects varied, but included income misrepresentation, employment misrepresentation, owner occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, and missing or inaccurate documents, among others.   Additional material defects are likely contained throughout the loan population sold to RFC by HLC.   Indeed, a number of the loans defaulted very shortly after origination (constituting Early Payment Defaults or EPDs), which is widely recognized in the industry as often signaling fraud or other problems in the origination and underwriting of the loans.

43.    By way of example, the following loans sold to RFC by HLC were identified as having significant and material defects violating the Client Guide representations and warranties:

a.    Loan ID #9724107 (included in securitization 2005-HI1) – The borrower on this $35,000 loan misrepresented his/her employment by misrepresenting the prior position to show continuity in the same line of work.   The employment verification documents were signed by the same person, yet the signatures are different.   Moreover, the employer address could not be found in public records, and is over 600 miles away from the borrower. This misrepresentation of employment rendered the loan in material breach of applicable representations and warranties and unacceptable under RFC's standards.

b.    Loan ID # 11088383 – The borrower on this loan provided two different social security numbers with the loan application.   The application, credit report, and W-9 used one number, but the borrower's picture ID and state defense ID reflected a different number.   No explanation was provided.   In addition, the loan was originated as a first lien Goal Loan,

but the final title policy included an exception for a $33,735 mortgage that was not paid off at closing, putting this loan in a second lien position. The loan materially breached representations and warranties made by HLC and was therefore deemed unacceptable under RFC standards.

c. Loan ID # 11133457 (included in securitization 2007-HAS1) – The borrower on this $25,000 second lien loan defaulted shortly after the loan was originated, which is often a sign of fraud or other underwriting problems. In fact, the borrower materially misrepresented his/her income, which breached the representations and warranties, rendering this loan unacceptable under RFC standards. HLC acknowledged this deficiency by ultimately repurchasing the loan.

d. Loan ID # 11009137 - This loan was ineligible for the applicable loan program for which it was underwritten. The borrower's prior mortgage history shows that the borrower made 4 late payments on its prior mortgage during the last 12 months, whereas the guidelines require that no late payments are made. This loan materially breached the representations and warranties made by HLC and was therefore deemed unacceptable under RFC standards.

e. Loan ID # 11298849 – The borrower on this loan materially misrepresented his/her income or employment. The misrepresentation of income/employment was a material breach of the applicable representations and warranties, rendering the loan unacceptable under RFC standards.

f. Loan ID # 10114439 – The property related to this $100,000 loan had a valuation of $657,000, which exceeded the maximum property value of $500,000 allowed under the program guidelines. The loan therefore contained a material breach rendering the loan unacceptable under RFC's standards.

g. Loan ID # 10984775 – The borrower on this loan misrepresented his/her income as $7,900 per month, which upon reverification, was actually $3,300 per month. When actual income was used, the debt-to-income ratio increased to 103%, which was unacceptable to under the applicable program. The misrepresentation of income was a breach of the representations and warranties, rendering the loan unacceptable under RFC's standards.

44.     The above examples are not intended to be an exhaustive list of the loans sold by HLC to RFC that contained material breaches of representations and warranties. Rather, these loans represent a sampling of the material defects found in the loans HLC sold to RFC.  Many more of the loans sold to RFC by HLC contained material defects that violated the representations and warranties HLC made in the Agreement.  While HLC has, over the parties' course of dealing, repurchased some individual loans (thereby acknowledging it sold defective loans to RFC), it has in no way fully compensated RFC for the breaches of representations and warranties, liabilities, or losses stemming from the universe of defective loans HLC sold to RFC over time.

45.     As detailed below, these defects constituted material breaches of Defendant's representations and warranties, contributing to RFC's exposure to billions of dollars in liability and tens of millions of dollars in legal expenses.

**RFC's Liabilities and Losses Stemming from Defendant's Breaches.**

46.     As a direct result of Defendant HLC's breaches, RFC has incurred obligations, liabilities, damages, and losses for which it is entitled to recovery from HLC.

47.     First, RFC has incurred billions of dollars in liabilities and losses stemming from defective loans, including those sold to RFC by HLC.

48.     In addition, RFC has expended tens of millions of dollars litigating the quality of the loans sold to it by HLC and others in extensive federal and state court litigation in which plaintiffs claimed the loans were rife with borrower or originator fraud, or failed to comply with applicable state and/or federal law.

49.     Beginning in 2008 and continuing until RFC filed for bankruptcy protection on May 14, 2012, RFC faced a growing number of claims and dozens of lawsuits stemming from the defective loans sold to it by HLC and others.

50.     For example, the RFC-sponsored RMBS offerings containing loans sold to RFC by HLC included a number of RMBS that became the subject of more than a dozen lawsuits brought by investors and other participants in the securitizations, alleging that as many as 98% of the loans contained in the RMBS offerings were defective in one or more ways.

51.     RFC ordinarily received a limited number of repurchase demands, primarily from whole loan investors.

52.     However, in early 2008, MBIA Insurance Corp., a bond insurer that issued insurance policies guaranteeing the performance of certain mortgage-backed securities issued by RFC, began questioning the quality of large numbers of loans in the securitizations it had insured.

53.     MBIA hired a team to begin reviewing loan files, and in May 2008, based on the *less-stringent* representations and warranties RFC had made to MBIA, demanded that RFC repurchase many allegedly defective loans.  A number of the loans subject to these repurchase requests were loans HLC sold to RFC and RFC pooled in the securitization trusts for which MBIA issued financial guaranty insurance policies.

54.     Although RFC aggressively defended the claims made by MBIA wherever possible, RFC ultimately acknowledged that, even on the basis of representations and warranties that were less stringent than those HLC made to RFC, RFC was obligated to

repurchase at least 24% of the loans MBIA claimed were defective.   These loans included, by way of example only, the following loans sold to RFC by HLC:

    a.  Loan ID # 10984155 (included in securitization 2007-HSA1): This $95,000 second lien loan did not meet the program requirements in that the maximum combined loan-to-value ratio under the program was 80%, whereas the combined loan-to-value ratio for the subject loan was 95%. RFC's internal quality audit personnel agreed with MBIA's determination that the loan contained an unacceptable material breach of representations and warranties, and repurchased the loan from the securitization trust in August 2008 for approximately $110,000.00.

    b.  Loan ID # 11279767 (included in securitization 2007-HSA1):   The amount loaned to the borrower for this $200,000 second lien loan exceeded the program guidelines.   The combined loan-to-value ratio also exceed program guidelines.   RFC's internal quality audit personnel agreed with MBIA's determination that the loan contained an unacceptable material breach of representations and warranties, and repurchased the loan from the securitization trust in September 2008 for approximately $233,000.

    c.  Loan ID # 11013861 (included in securitization 2007-HSA1): This $30,000 second lien loan did not meet the program requirements in that the maximum combined loan-to-value ratio exceeded the ratio allowed under the program. RFC's internal quality audit personnel agreed with MBIA's determination that the loan contained an unacceptable material breach of representations and warranties, and repurchased the loan from the securitization trust in August 2008 for approximately $30,000.

    d.  Loan ID # 11368433 (included in securitization 2007-HSA3): HLC used an automated valuation model to value the property for this second lien loan, whereas loan approval required full appraisal.   The automated valuation of $430,000 did not support the appraisal $250,000 conducted after the loan was originated.   RFC's internal quality audit personnel agreed with MBIA's determination that the loan contained unacceptable material breaches of representations and warranties, and repurchased the loan from the securitization trust in August 2008 for approximately $170,000.

    e.  Loan ID # 10714167 (included in securitization 2006-HSA5): The borrower on this $10,000 second lien loan grossly overstated his/her income on the loan application.   When actual earnings are applied, the debt-to-income ratio exceeded 150%, which was a violation under the

applicable program. RFC's internal quality audit personnel agreed with MBIA's determination that the loan contained unacceptable material breaches of representations and warranties, and repurchased the loan from the securitization trust in August 2008 for approximately $12,000.

55.     In total, RFC repurchased over $1.1 million worth of loans sold to it by HLC as a result of MBIA's repurchase demands.

56.     MBIA continued its review and continued to find many defective loans, ultimately resulting in protracted and costly litigation, as described below.

57.     Other purchasers or investors in loans HLC sold to RFC and RFC sold to those purchasers or investors also identified defects in the HLC loans and demanded that RFC repurchase them.  These entities included Aurora Loan Services, Bank of America, CitiMortgage, Countrywide, E*Trade, Goldman Sachs, and others.  In total, RFC repurchased over $3.5 million of HLC loans as a result of these investors' repurchase demands.

58.     Beginning in October 2008, RFC was sued in literally dozens of lawsuits stemming from allegedly defective mortgage loans, including those sold to it by HLC.

59.     The first of these lawsuits was filed by bond insurer MBIA in October 2008.  The MBIA lawsuit covered five RFC second-lien securitizations that included thousands of mortgage loans.  For the first time, RFC learned that MBIA's analysis had concluded that over 80% of the loans in the pools it insured were defective.

60.     The MBIA lawsuit specifically attacked RFC's RMBS offerings 2006-HSA4, 2006-HSA5, and 2007-HSA1, HSA2 and HSA3, all of which (as shown in Exhibit C) contained numerous HLC loans.

61.    Indeed, as part of the MBIA litigation, MBIA hired an expert to review again a sampling of loans across the five securitizations involved in the *MBIA v. Residential Funding Company, LLC* case.  Even in a relatively small sample of loans reviewed, MBIA's expert identified 254 loans originated by HLC that materially breached the weaker representations that RFC had provided to MBIA.  Examples of the material breaches MBIA asserted were 85 cases where HLC sold loans where a borrower lied about income, 93 cases where a borrower's debt to income ratio exceeded the limits in the relevant underwriting guidelines, and 90 cases with improper appraisals.  MBIA asserted many of these 254 loans contained multiple breaches of the applicable representation and warranties.

62.    The MBIA lawsuit was followed shortly by a class action suit filed by the New Jersey Carpenters pension funds.

63.    The New Jersey Carpenters' lawsuit purported to cover 59 mortgage-backed securities offerings issued through RFC's RALI shelf in 2006 and 2007, which consisted of first-lien Alt-A loans.  These securitizations were identified by names that included the letters "QA," "QH," "QO," and "QS."  As shown in Exhibit C, hundreds of HLC loans were included in the offerings that were the subject of the New Jersey Carpenters' lawsuit.

64.    The New Jersey Carpenters' complaint alleged that 38% of the mortgage loans underlying the securitizations were in delinquency, default, foreclosure or repossession when New Jersey Carpenters filed its class action complaint, and that much of RFC's mortgage loan data "was inaccurate due to the inflated appraisal values,

inaccurate LTV ratios, borrower income inflation, and the other facets of defective underwriting" described throughout the Complaint.  (NJ Carpenters First Am. Compl. ¶¶ 9, 110 in *New Jersey Carpenters et al. v. Residential Capital, LLC et al.* Case No. 08-cv-08781 (HB) (S.D.N.Y.).)  Of course, that data was provided to RFC—and represented and warranted to be accurate—by HLC and other correspondent lenders.

65.    Similarly, the Federal Housing Finance Authority, as conservator for Freddie Mac, filed suit against RFC in 2011, seeking to recover losses stemming from loan defects in numerous RMBS offerings that contained dozens of HLC loans, including RALI offerings 2006-QO4, 2006-QO5, 2006-QO8, and 2006-QO9.

66.    Numerous other lawsuits followed on through RFC's bankruptcy filing in 2012, including over fifteen lawsuits brought by private investors in its RMBS securities, and more than a dozen lawsuits brought by monoline insurers.

67.    All of these lawsuits alleged that the loans RFC sold into RMBS securitizations were defective in a variety of ways, including borrower fraud, missing or inaccurate documentation, fraudulent or inflated appraisals, misrepresentations concerning owner-occupancy, or failure to comply with applicable state and federal law.

68.    Collectively, these lawsuits involved more than one hundred RMBS securitizations, and a combined original principal balance of more than $100 billion.

69.    Across the dozens of securitizations involved in these lawsuits, HLC was responsible for over 4,700 of the loans.

70.    As of May 2012, RFC had already repurchased millions of dollars worth of defective loans from its RMBS securitizations and from whole loan purchasers, either at

the request of a bond insurer or trustee, or because RFC itself discovered a defect and affirmatively took steps to repurchase the loan.  As described in more detail above, these included numerous loans sold to RFC by HLC.

71.     In May 2012, RFC and certain of its affiliates—partly because of the enormous exposure stemming from the pending mortgage-related lawsuits described above—filed for Chapter 11 bankruptcy protection in the Bankruptcy Court for the Southern District of New York.

72.     In connection with the bankruptcy proceeding, hundreds of proofs of claim were filed by investors in RMBS, monoline insurers, whole loan purchasers, indenture trustees, and an array of co-defendants in the above-described loan-related litigation. These proofs of claim, many of which mirrored the litigation filed prior to the bankruptcy, sought damages in the tens of billions of dollars, all stemming from allegedly defective mortgage loans, including those sold to RFC by HLC.  By way of example, the following represents a small sampling of the hundreds of proofs of claim filed on the basis of defective loans:

    a.  The indenture trustees for each of the RFC-sponsored securitizations (Deutsche Bank, Bank of New York, U.S. Bank, HSBC Bank, Law Trust and Wells Fargo, and Wells Fargo) collectively filed more than two dozen proofs of claim at the direction of two substantial groups of institutional investors.  The institutional investors collectively asserted that loan-level defects (including in the loans sold to RFC by HLC and securitized) were responsible for more than $19.5 billion in repurchase obligations.

    b.  AIG, an investor in over 25 Debtor-sponsored securitizations (a number of which included HLC loans), filed five proofs of claim totaling in excess of $2.6 billion, based on the allegation that the loans were

defective.  The proofs of claim were based in part on analyses of the individual loan-level data for these loans.

c.  Allstate, an investor in 25 Debtor-sponsored securitizations (a number of which included HLC loans), filed 20 proofs of claim based on the allegation that the loans were defective.  The proofs of claim were based in part on analyses of the individual loan-level data for these loans.

d.  John Hancock, an investor in over 50 Debtor-sponsored securitizations (a number of which included HLC loans), filed 43 proofs of claim asserting similar allegations.

e.  MBIA, a monoline insurer that issued financial guaranty insurance on a number of RFC-sponsored securitizations that included HLC loans, filed six proofs of claim seeking approximately $2.2 billion in damages based on alleged defects contained in the loans, a number of which (as described above) MBIA had individually reviewed.

f.  FGIC, a monoline insurer that issued financial guaranty insurance on a number of RFC-sponsored securitizations that included HLC loans, filed three proofs of claim seeking approximately $1.85 billion in damages based on alleged defects contained in the loans, a number of which FGIC had individually reviewed.

73.  Many whole loan purchasers also filed proofs of claim in the bankruptcy proceedings, collectively seeking millions of dollars in recovery.

74.  These proofs of claim, lawsuits, and demands all alleged, among other things, that the securitized or purchased loans were defective, improperly underwritten, and breached representations and warranties made by RFC to investors, purchasers, and other contractual parties.  Those representations and warranties were, in most cases, identical to or less stringent than those that RFC had received from HLC, and on which RFC had relied.

75.  The Debtors initially proposed to settle portions of their RMBS-related liabilities for an aggregate $8.7 billion allowed claim in the bankruptcy case.

Subsequently, after protracted litigation over the reasonableness and propriety of that settlement, the Bankruptcy Court appointed the Hon. James M. Peck, a United States Bankruptcy Judge for the Southern District of New York, to serve as a mediator and to attempt to achieve a negotiated resolution of the Debtors' RMBS-related liabilities and of other disputed issues in the chapter 11 cases. A lengthy mediation process ensued, which, together with related proceedings, resulted in a global settlement that, among other things, provided for the resolution of all of the Debtors' RMBS-related liabilities for more than $10 billion in allowed claims granted to the various RMBS trusts, monoline insurers, FHFA, securities law claimants, and others.

76.     The Bankruptcy Court for the Southern District of New York ultimately approved the global settlement, including the $10 billion-plus settlement of RMBS-related liabilities, finding it to be fair and reasonable and in the best interests of each of the Debtors, and confirmed the Plan. (See Case No. 12-12020-MG, Doc. 6066 (Findings of Fact) (Glenn, J.), at ¶¶ 98 to 176.) RFC filed this suit on December 16, 2013, after RFC's RMBS-related liabilities became fixed through confirmation of the Plan. The Plan became effective on December 17, 2013. Pursuant to the Plan, the Trust succeeded to all of RFC's rights and interests, including its litigation claims against HLC.

77.     Pursuant to its express contractual obligations, HLC is obligated to compensate RFC for the portion of global settlement associated with its breaches of representations and warranties, as well as for the portion of RFC's other liabilities and losses (including the tens of millions of dollars that RFC has paid in attorneys' fees to

defend against, negotiate, and ultimately settle claims relating to allegedly defective loans) associated with those breaches.

## COUNT ONE
## (BREACH OF CONTRACT)

78.     RFC realleges each and every allegation set forth in Paragraphs 1 through 77, above, as if fully rewritten herein.

79.     RFC and Defendant HLC entered into a valid and enforceable Agreement pursuant to which RFC acquired over 6,200 mortgage loans from HLC.

80.     Pursuant to the parties' Agreement, HLC made representations and warranties to RFC regarding the quality and characteristics of the mortgage loans Defendant sold to RFC.

81.     RFC complied with all conditions precedent, if any, and all of its obligations under the Agreement.

82.     Defendant materially breached its representations and warranties to RFC inasmuch as the mortgage loans materially did not comply with the representations and warranties.

83.     Defendant's material breaches constitute Events of Default under the Agreement.

84.     RFC has suffered loss, harm, and financial exposure directly attributable to Defendant's material breaches, including liabilities and losses stemming from the defective loans, as well as attorneys' fees, litigation-related expenses, and other costs associated with both defending dozens of lawsuits and proofs of claim filed against RFC

stemming in part from materially defective loans sold to RFC by Defendant, and fees and costs incurred in prosecuting this action.

85.     Accordingly, RFC is entitled to compensation in an amount to be proven at trial, which exceeds $75,000, together with an award of attorneys' fees, interest, and costs.

## COUNT TWO
## (INDEMNIFICATION)

86.     RFC realleges each and every allegation set forth in Paragraphs 1 through 85, above, as if fully rewritten herein.

87.     RFC has incurred substantial liabilities, losses and damages arising from and relating to material defects in the mortgage loans HLC sold to RFC, including over $10 billion in allowed claims approved by the United States Bankruptcy Court for the Southern District of New York, as well as tens of millions of dollars in attorneys' fees, litigation-related expenses, and other costs associated with defending dozens of lawsuits and proofs of claim filed against RFC stemming in part from materially defective loans sold to RFC by HLC.

88.     Defendant expressly agreed to indemnify RFC for the liabilities, losses and damages, including attorneys' fees and costs, which RFC has incurred.

89.     Accordingly, RFC is entitled to indemnification in excess of $75,000 and in an amount to be proven at trial, and an award of attorneys' fees, interest, and costs.

WHEREFORE, RFC demands judgment in its favor and against Defendant as follows:

(A)     On Count One (Breach of Contract), contractual repurchase compensation and/or damages in excess of $75,000 and in an amount to be proven at trial, and an award of attorneys' fees, interest, and costs; and

(B)     On Count Two (Indemnification), a declaratory judgment that Defendant is responsible to indemnify RFC against liabilities, losses, expenses and/or other damages paid or to be paid in settlements or otherwise stemming from Defendant's conduct, an order for damages sufficient to reimburse RFC's liabilities, losses, costs and expenses caused by Defendant's actions in excess of $75,000 and in an amount to be proven at trial, and an award of attorneys' fees, interest, and costs; and

(C)     All such further relief, as the Court deems necessary or proper.

Dated:  May 13, 2014                    FELHABER LARSON

                                        By:   s/Jessica J. Nelson
                                            Donald G. Heeman, #286023
                                            David L. Hashmall, #138162
                                            Jessica J. Nelson, #347358
                                            220 South Sixth Street, Suite 2200
                                            Minneapolis, MN  55402-4504
                                            Telephone:  (612) 339-6321
                                            Facsimile:  (612) 338-0535
                                            dheeman@felhaber.com
                                            dhashmall@felhaber.com
                                            jnelson@felhaber.com

OF COUNSEL:

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Peter E. Calamari
David Elsberg
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
peterCalamari@quinnemanuel.com
davidelsberg@quinnemanuel.com

CARPENTER LIPPS & LELAND LLP
Jeffrey A. Lipps
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile:  (614) 365-9145
lipps@CarpenterLipps.com

ATTORNEYS FOR PLAINTIFF
RESIDENTIAL FUNDING COMPANY,
LLC

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable

attorney and witness fees may be awarded pursuant to Minn. Stat. §549.211, subdivision

3, to the party against whom the allegations in this pleading are asserted.


    s/Jessica J. Nelson
Jessica J. Nelson

# Exhibit A

## Client Contract



This Client Contract (as amended from time to time, the "Contract") between Residential Funding Corporation ("GMAC-RFC") and Home Loan Center, Inc. (the "Client") is dated as of May 6, 2002.

Client desires to sell residential mortgage loans ("Loans") to, and/or service Loans for, GMAC-RFC, and GMAC-RFC desires to purchase Loans from, and/or have Client service Loans for, GMAC-RFC pursuant to the terms and conditions of this Contract and the applicable Guides (as Guides is defined below).

In consideration of the above premises, and of the mutual agreements set forth below, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Client and GMAC-RFC agree as follows:

1.   **Guides.** GMAC-RFC has approved Client to sell Loans to, and/or service Loans for GMAC-RFC, under the Guide(s) checked below, which Guide(s) are incorporated by reference into this Contract (as amended from time to time, the "Guides").

<u>STATUS</u>
- ☒ Client Only
- ☐ Servicer Only
- ☐ Client and Servicer

<u>APPLICABLE GUIDES</u>
- ☒ Client Guide
- ☐ Servicer Guide

Upon the execution by GMAC-RFC and Client and delivery of an addendum to this Contract, GMAC-RFC may in the exercise of its sole discretion approve Client to sell Loans to, and/or service Loans for, GMAC-RFC under other Guides than those checked above. All capitalized terms used in this Contract and not otherwise defined shall have the meanings set forth in the applicable Guides.

2.   **Commitment Letters.** Pursuant to the applicable Guides' terms, GMAC-RFC may offer to enter into one or more Commitment Letters with Client. By executing a Commitment Letter and delivering it to GMAC-RFC, Client agrees to abide by its terms and conditions, which terms and conditions constitute a material part of this Contract, as if set forth expressly herein.

3.   **Amendments and Governing Contract.** This Contract and any Commitment Letter may only be amended in writing signed by both parties.  The Guides may be amended only as set forth in the applicable Guide.  In the case of any inconsistency between this Contract and the applicable Guide, this Contract's terms and conditions shall control.  In the case of any inconsistency between either:  (i) this Contract and any Commitment Letter; or (ii) the applicable Guide and any Commitment Letter, the Commitment Letter's terms and conditions shall control.

4.   **Representations and Warranties.** Client hereby makes to GMAC-RFC all of Client's representations and warranties set forth in the applicable Guides.  Client also hereby covenants to GMAC-RFC that Client shall continue to comply with all of Client's covenants and obligations set forth in the applicable Guides, each Commitment Letter, and/or this Contract.  Pursuant to the terms of the applicable Guides, GMAC-RFC's rights and remedies with respect to any breach of the above-referenced Client representations, warranties, and covenants will survive delivery and Funding of any Loan and the termination or suspension of this Contract, any Commitment Letter, any other program documents, or the applicable Guides.

5.   **Board of Directors Resolution.** Along with the execution of this Contract, Client shall delivery to GMAC-RFC the certified resolution of its Board of Directors authorizing this Contract's execution and delivery.

6.   **GMAC-RFC's Remedies.** If an event of default shall occur, GMAC-RFC may exercise, at its option, one or more of the remedies set forth in the applicable Guides.

7.   **Suspension and Termination.** This Contract, other program documents, Commitment Letters, and any applicable Guides may be suspended or terminated as set forth in the applicable Guides.

8.     **Client's Status as Independent Contractor.**  At no time shall Client represent that it is acting as GMAC-RFC's agent. Client shall act, at all times, as an independent contractor.

9.     **Prior Agreements Superseded.**  This Contract restates, amends and supersedes any and all prior Contracts or agreements between the parties except that any subservicing agreement executed by Client in connection with any loan-security exchange transaction shall not be affected.

10.    **Assignment.**  Client may not assign or transfer this Contract, in whole or in part, without GMAC-RFC's prior written consent.  GMAC-RFC may sell, assign, convey, hypothecate, pledge, or in any other way transfer, in whole or in part, without restriction, its rights under this Contract and the applicable Guides with respect to any Commitment or Loan.

11.    **Notices.**  All notices, requests, demands or other communications that are to be given under this Contract shall, if to GMAC-RFC be as set forth in the applicable Guides and if to Client to the addresses and facsimile numbers specified in as set forth below.

<u>Home Loan Center Inc.</u>

<u>2010 Main Street,  Suite 850</u>

<u>Irvine  CA  92614</u>

Attention:          _____

Facsimile Number:   <u>949-252-1191</u>

12.    **Jurisdiction and Venue.**  The parties submit to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, and the parties irrevocably agree that all claims may be heard or determined in such state or federal court. The parties waive the defense of an inconvenient forum and any other substantive or procedural rights or remedies it may have in any other forum.  The parties agree that a final judgment in any action between the parties shall be conclusive and may be enforced in any other jurisdiction than that set forth above.  The parties further agree not to institute any legal actions or proceedings against the other party, or any director, officer, employee, attorney, agent or property of the other party, arising out of or relating to this Contract in any court other than as specified in this paragraph.

13.    **Miscellaneous.**  This Contract, including all documents incorporated by reference, constitutes the entire understanding between the parties and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract. All paragraph headings contained herein are for convenience only and shall not be construed as part of this Contract.  Any Contract provision that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and, to this end, the provisions hereof are severable.  This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Minnesota. This Contract may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and either of the parties may execute this Contract by signing any such counterpart.

IN WITNESS WHEREOF, Client's and GMAC-RFC's duly authorized officers have executed this Contract as of the date first written above.

CLIENT: HOME LOAN CENTER                    RESIDENTIAL FUNDING CORPORATION

By: _____         By: _____
         (Signature)                                  (Signature)

Name: <u>Mr. Anthony Hsieh</u>                  Name: _____
         (Typed or Printed)                           (Typed or Printed)

Title: <u>Chief Executive Officer</u>           Title: _____

# EXHIBIT B-1

# *Client Guide*

# GMAC RFC

**Version 1-03-G04**

**©2003 Residential Funding Corporation. All rights reserved.**

**GMAC-RFC**

# Table of Contents

## Chapter 1 Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | General Rules of Interpretation | 1.4 |
| 111 | Client Guide Online | 1.5 |
| 112 | Headings and Definitions | 1.5 |
| 113 | Form Numbering | 1.5 |
| 114 | Use of Client's Name | 1.6 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.6 |
| 116 | Assetinfo | 1.6 |

## Chapter 2 Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.3 |
| 203 | Client Underwriting Responsibilities | 2.3 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.5 |
| 207 | Audits and Inspections | 2.6 |
| 208 | Disclosure of Information | 2.6 |
| 209 | Maintenance of Records | 2.6 |
| 210 | Disclosure of Borrower Information | 2.7 |
| 211 | Quality Control | 2.7 |

**GMAC-RFC**

# Chapter 2A Representations, Warranties and Covenants

A200 Client Representations Warranties and Covenants . . . . . . . . . . 2A.1
A201 Specific Representations, Warranties and Covenants
     Concerning Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.2
A202 Specific Representations, Warranties and Covenants
     Concerning Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.5
A203 Additional Client Representations, Warranties and
     Covenants for the Home Equity Loan Program . . . . . . . . . . . . 2A.15
A204 Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.17
A205 Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.18
A206 Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.19
A207 Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.19
A208 Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.20
A209 Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.21
A210 Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.22
A211 Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . 2A.27
A212 Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.28
A213 Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.29
A214 Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . 2A.29
A215 Notification of Changes in Client Status . . . . . . . . . . . . . . . . . 2A.30

# Chapter 2B Discontinued Loans

B200 Discontinued Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2B.1

**GMAC-RFC**

# Chapter 3 Loan Eligibility

| | | |
|---|---|---|
| 300 | Loan Seasoning | 3.1 |
| 301 | Occupancy | 3.1 |
| 302 | Borrower Eligibility | 3.3 |
| 303 | Required Signatures | 3.5 |
| 304 | Loans to One Borrower | 3.6 |
| 305 | Ownership Interests | 3.6 |
| 306 | Transaction Types | 3.11 |
| 307 | Arm's Length Transaction | 3.15 |
| 308 | Inherited Properties | 3.15 |
| 309 | Determining Amount to be Financed | 3.16 |
| 310 | Calculating LTV Ratios | 3.17 |
| 311 | Financing Closing Costs | 3.19 |
| 312 | Secondary or Subordinate Financing | 3.20 |
| 313 | Sales Concessions or Home-seller Subsidy | 3.21 |
| 314 | Documentation | 3.21 |
| 315 | Age of Documents | 3.22 |
| 316 | Note Requirements | 3.24 |
| 317 | Loan Documents | 3.26 |
| 318 | Escrow Issues | 3.28 |
| 319 | Temporary Buydowns | 3.29 |
| 320 | Current Payment History | 3.31 |
| 321 | Property Issues | 3.31 |
| 322 | Eligible Property Locations | 3.31 |
| 323 | Texas Equity Loans | 3.32 |
| 324 | Eligible Property Types | 3.36 |
| 325 | Ineligible Property Types | 3.40 |
| 326 | Project Requirements for Warrantable Condominiums and PUDs | 3.41 |
| 327 | Insurance Requirements | 3.45 |
| 328 | Survey Requirements | 3.60 |

**GMAC-RFC**

# Chapter 4 Underwriting

| | | |
|---|---|---|
| **400** | **Underwriting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.1** |
| **401** | **Client Underwriting Responsibility** . . . . . . . . . . . . . . . . . . . . . . . . | **4.1** |
| **402** | **GMAC-RFC Underwriting Review** . . . . . . . . . . . . . . . . . . . . . . . . | **4.1** |
| **403** | **Loan Application Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.2** |
| **404** | **Credit Report Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.2** |
| **405** | **Credit Score Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.3** |
| **406** | **Selecting Credit Score** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.3** |
| **407** | **Minimum Credit History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.4** |
| **408** | **Credit Evaluation Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.5** |
| **409** | **Credit Evaluation Components** . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.5** |
| **410** | **Upgrading the Credit Grade** . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.13** |
| **411** | **Borrower Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **412** | **Borrower's Liabilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **413** | **Debt Payoff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **414** | **Co-Signed Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **415** | **Divorce Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **416** | **Business Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **417** | Borrower **Capacity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **418** | **Student Loan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.18** |
| **419** | **Qualifying Ratios** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.18** |
| **420** | **Electronic Documentation Standards** . . . . . . . . . . . . . . . . . . . . | **4.20** |
| **421** | **Employment and Income Analysis** . . . . . . . . . . . . . . . . . . . . . . | **4.21** |
| **422** | **Income Documentation Standards** . . . . . . . . . . . . . . . . . . . . . . | **4.21** |
| **423** | **Income Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.24** |
| **424** | **Wage Earners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.24** |
| **425** | **Self-Employed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.28** |
| **426** | **Fixed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.32** |
| **427** | **Rental Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.34** |
| **428** | **Other Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.35** |
| **429** | **Trailing or Relocating Co-Borrower** . . . . . . . . . . . . . . . . . . . . . | **4.42** |
| **430** | **Cash to Close** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.42** |
| **431** | **Collateral Property Underwriting** . . . . . . . . . . . . . . . . . . . . . . . | **4.47** |
| **432** | **Appraiser Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.47** |
| **433** | **Appraisal Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.48** |
| **434** | **Appraisal Evaluation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.51** |
| **435** | **Additional Review Considerations** . . . . . . . . . . . . . . . . . . . . . . | **4.61** |

**GMAC-RFC**

# Chapter 4A Assetwise

**400    Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
**401    Client Responsibilities and Exclusions** . . . . . . . . . . . . . . . . . . . . . **4A.1**
**402    Assetwise Approvals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.2**
**403    Delivery Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.3**
**404    Assetwise Documentation Set** . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.4**

# Chapter 5 Products

**500    Product Descriptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.1**
**501    Fixed-Rate Mortgages (FRM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.3**
**502    Adjustable Rate Mortgages (ARM)** . . . . . . . . . . . . . . . . . . . . . . . **5.6**
**503    Balloon Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.57**

# Chapter 6 Loan Programs

**600    Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.1**
**601    Mortgage Insurance Requirements for Loans
         Originated in New York** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.2**

# Chapter 6A Jumbo A Loan Program

**A600   Jumbo A Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
**A601   Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
**A602   Jumbo A, Stated Income Documentation** . . . . . . . . . . . . . . . . . . **6A.9**
**A603   EasyFi**$^{SM}$ **or Streamline Refinance** . . . . . . . . . . . . . . . . . . . . . . . . **6A.12**
**A604   Converted and/or Modified Loans—Contemplated
         by Original Note** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.18**
**A605   Converted and/or Modified Loans—Not Contemplated
         by Original Note** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.20**

**GMAC-RFC**

# Chapter 6B Expanded Criteria Loan Program

B600  Expanded Criteria Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.1
B601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.1
B602  Expanded Criteria, 100% Combo Loan . . . . . . . . . . . . . . . . . 6B.14
B603  Expanded Criteria, Uninsured LTV  . . . . . . . . . . . . . . . . . . . . 6B.17
B604  Expanded Criteria, Stated Income Documentation  . . . . . . . . 6B.19
B605  Expanded Criteria, Stated Income/Stated Asset
      Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.24
B606  Expanded Criteria, No Ratio  . . . . . . . . . . . . . . . . . . . . . . . . 6B.27
B607  Expanded Criteria, No Income/No Asset  . . . . . . . . . . . . . . . . 6B.32

# Chapter 6C Home Solution Loan Program

C600  Home Solution Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
C601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
C602  Home Solution Stated Income Documentation  . . . . . . . . . . . . 6C.9

# Chapter 6E AlterNet/Credit Gap Loan Program

E600  AlterNet/Credit Gap Program . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E602  Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.8
E603  Maximum Loan Amounts  . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.13

# Chapter 6F Performance Loan Program

F600  Performance Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1
F601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1

**GMAC-RFC**

# Chapter 6G Home Equity Loan Program

**G600   Home Equity Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6G.1**
**G601   Home Equity Program, Stated Value** . . . . . . . . . . . . . . . . . . . . **6G.13**
**G602   Home Equity Program, Stated Income Documentation** . . . . . . **6G.14**
**G603   Supplemental Home Equity Information** . . . . . . . . . . . . . . . . **6G.15**
**G604   Home Equity Program Goal Line**[SM] **Product Description** . . . . . . **6G.19**
**G605   Home Equity Program Goal Loan**[SM] **Description** . . . . . . . . . . . . **6G.23**

# Chapter 6H 125 CLTV Loan Program

**H600   125 CLTV Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6H.1**

# Chapter 7 At-A-Glances

**700     Program At-A-Glances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7.1**

**GMAC-RFC**

# Chapter 8 Servicing Released

**800    Servicing Released** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.1**
**801    Program Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.1**
**802    Designated Servicer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.2**
**803    Contractual Obligations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.2**
**804    Program Eligibility** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.2**
**805    Disqualification Suspension or Inactivation** . . . . . . . . . . . . . . . **8.2**
**806    Restrictions on Loan Eligibility** . . . . . . . . . . . . . . . . . . . . . . . **8.3**
**807    Record Maintenance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.3**
**808    Final Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.3**
**809    Disclosure of Information; Cooperation** . . . . . . . . . . . . . . . . . . **8.4**
**810    Client Representations and Warranties;**
         **Events of Servicer Default Prior to Transfer** . . . . . . . . . . . . . . **8.4**
**811    Specific Warranties and Covenants** . . . . . . . . . . . . . . . . . . . . . **8.4**
**812    Notification of Change in Servicer** . . . . . . . . . . . . . . . . . . . . . **8.8**
**813    Escrow Account for Postponed Improvements/Repairs** . . . . . . . **8.9**
**814    Interest on Escrows** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.9**
**815    Termination of Automatic Payment** . . . . . . . . . . . . . . . . . . . . . **8.9**
**816    Purchase of Servicing** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.9**
**817    Servicing Released Submission of Purchase** . . . . . . . . . . . . . . . **8.9**
**818    Required Servicing Documents** . . . . . . . . . . . . . . . . . . . . . . . . **8.10**
**819    Sale Date and Effective Date of Servicing Transfer** . . . . . . . . . **8.11**
**820    Reconciliation by GMAC-RFC** . . . . . . . . . . . . . . . . . . . . . . . . . **8.12**
**821    Notification of Purchase** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.14**
**822    Monies Paid for Servicing Released** . . . . . . . . . . . . . . . . . . . . . **8.14**
**823    Monies Due Client** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.15**
**824    Monies Due Designated Servicer** . . . . . . . . . . . . . . . . . . . . . . . **8.16**
**825    Loans Paid in Full** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.17**
**826    Servicing Document Corrections** . . . . . . . . . . . . . . . . . . . . . . . **8.17**
**827    Bulk Servicing Acquisitions** . . . . . . . . . . . . . . . . . . . . . . . . . . **8.18**
**828    Subservicing Election** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8.18**

# Chapter 9 Commitment and Delivery

| | | |
|---|---|---|
| 900 | Commitment and Delivery—First Mortgage Product | 9.1 |
| 901 | Commitment Rate, Fee and Price Information | 9.1 |
| 902 | Authorized Rates and Prices | 9.1 |
| 903 | Electronic Loan Data Delivery | 9.1 |
| 904 | Wire Transfer Authorization | 9.2 |
| 905 | Notification of Wire Transfer | 9.2 |
| 906 | Best Efforts | 9.3 |
| 907 | Commitment Rate and Price Information | 9.3 |
| 908 | Best Efforts Delivery Commitment Periods | 9.4 |
| 909 | Best Efforts Servicing Options | 9.5 |
| 910 | Commitment Amounts and Variance | 9.5 |
| 911 | Ordering Best Efforts Delivery Commitment | 9.6 |
| 912 | Mandatory Delivery Commitments | 9.7 |
| 913 | Mandatory Delivery Servicing Options | 9.7 |
| 914 | Commitment Amounts | 9.7 |
| 915 | Ordering Mandatory Delivery Commitments | 9.8 |
| 916 | Delivery Under Mandatory Delivery Commitment | 9.8 |
| 917 | Corrections and Substitutions | 9.9 |
| 918 | Buyouts and Extensions | 9.9 |
| 919 | Over-Delivery Procedures | 9.10 |
| 920 | Mandatory Delivery Commitment Expirations | 9.10 |
| 921 | Transferability of Commitments | 9.11 |
| 922 | Delivery for Funding | 9.11 |
| 923 | Submission of Funding Documents | 9.11 |
| 924 | Required Funding Documents | 9.12 |
| 925 | Required Servicing Documents for First Mortgage Deliveries | 9.15 |
| 926 | Obligation to Sell Upon Submission of Funding Documents | 9.15 |
| 927 | Loan Purchase | 9.16 |
| 928 | Wire Transfer Process | 9.16 |
| 929 | Funding Amount | 9.16 |
| 930 | Notification of Wire Transfer | 9.18 |
| 931 | Payoff Prior to Funding Date | 9.19 |
| 932 | Loans Paid in Full | 9.19 |
| 933 | Failure to Comply with GMAC-RFC Remittance Requirements | 9.20 |
| 934 | Final Document Delivery | 9.21 |
| 935 | Submission of Final Documents | 9.21 |
| 936 | Required Final Documents | 9.22 |
| 937 | Extensions for Final Delivery | 9.22 |
| 938 | Request for Additional Documentation | 9.23 |
| 939 | Commitment and Delivery Registration for Goal Lines of Credit | 9.23 |
| 940 | Commitment and Delivery Registration for Goal Loan and 125 CLTV Closed-End Second Mortgages | 9.26 |
| 941 | Assetinfo | 9.30 |
| 942 | MERS Loan Registration, Transfer and Delivery Requirements | 9.30 |

**GMAC-RFC**

# Chapter 10 Definitions

# Chapter 11 Forms

**1110  Required GMAC-RFC Forms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11.1**



# 2A
Page 2A.2

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client and, in any event, Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

## (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

## (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

## (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

## (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



**2A**
Page 2A.4
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

## (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

## (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

## (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

## (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

## (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

#### (A) Loans Are Eligible; Accuracy Of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

#### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

#### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

#### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, **Funding Documents**, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



**2A**
Page 2A.6 **GMAC-RFC**

10/01/03
Client Guide
**Representations,**
**Warranties and**
**Covenants**

## (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

## (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the **Mortgaged Premises** and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

## (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

## (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

# GMAC-RFC

**2A**
Page 2A.7
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (I) Compliance with Law

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

## (J) Responsible Lending Representations, Warranties and Covenants

Client makes the responsible lending representations, warranties and covenants set out below. These representations, warranties and covenants are in addition to, and not in substitution for, Client's representations, warranties and covenants, made elsewhere in this Client Guide. All Loans must comply with all applicable federal, State, and local laws. All Loans must be originated and serviced according to GMAC-RFC standards contained in this Client Guide.

### (1) Certain "High Cost" Loans Prohibited

No Loan is a **Discontinued Loan**. In general, a Discontinued Loan is:

• A Loan subject to HOEPA/Section 32;

• A purchase money Loan on a consumer's principal residence that exceeds the "points and fees" or APR triggers of HOEPA and Section 32;

• An open-end line of credit on a consumer's principal residence that exceeds the "points and fees" or APR triggers of HOEPA and Section 32; or

• A Loan with terms that trigger high-cost mortgage laws or regulations in certain States, counties or cities regardless of whether the originator qualifies for an exemption.

See **Chapter 2B**, Discontinued Loans, for the complete definition of **Discontinued Loan**s.

# 2A
**GMAC-RFC**

**(2) Prohibited Terms and Practices on all Loans sold to GMAC–RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) No financing of pre-paid insurance products. No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) Prepayment penalties. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

  • The penalty may be enforced for only the first five years following consummation;

  • The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

  • The prepayment penalty does not become due upon default

(c) Reporting to credit bureaus. Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) Increased interest rate. A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by **Mortgaged Premises** located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.

**GMAC-RFC**

**2A**

Page 2A.9

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

## (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Client Guide, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

## (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the **Mortgaged Premises** in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

## (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

## (P) No Liens

There are no delinquent tax or delinquent assessment liens against the **Mortgaged Premises**, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

## (Q) No Adverse Circumstances

The **Mortgaged Premises** are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the **Mortgaged Premises**. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.



**2A**
Page 2A.10

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

## (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

## (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. As of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.

## (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the **Security Instrument** and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

**GMAC-RFC**

**2A**
Page 2A.11
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

## (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

## (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any **Security Instrument** that is a deed of trust.

## (Y) Execution Of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

## (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each **Mortgaged Premises** involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

## (AA) Condominiums; Planned Unit Developments (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

## (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

## (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.



**2A**
Page 2A.12
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (DD) Client And Originators

The Client either is an institution insured by **FDIC** which is supervised and examined by a federal or State authority, or is a **HUD** approved mortgagee, and was so at the time the Loan was originated. The Loan either was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is an institution insured by FDIC and supervised and examined by a federal or State authority, or is a **HUD** approved mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator"), or (iii) closed in the name of a Loan broker under the circumstances described in the following sentence: If the Loan was originated through a Loan broker, the originator approved the Loan prior to funding by the Loan broker and the originator acquired the Loan from the Loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

### (EE) No Impairment Of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

### (FF) Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section of this Client Guide.

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

**GMAC-RFC**

**2A**
Page 2A.13
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

## (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

## (KK) No Fraud Or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.



# 2A GMAC-RFC

Page 2A.18
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.

**GMAC-RFC**

**2A**
Page 2A.19
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A208

## Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in the Eligibility Standards Chapter of this Client Guide) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

# 2A

**GMAC-RFC**

## A209

### Remedies of GMAC-RFC

#### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same **Event of Default**
- Any other rights which it may have at law or in equity

#### (B) Waiver Of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

#### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage **Note** or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

# 2A
Page 2A.21
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



**2A**
**GMAC-RFC**

## (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**
Page 2A.23
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (C) Repurchase Price of Home Equity Loan Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

• The unpaid principal balance of the Home Equity Loan

• All accrued and unpaid interest on the Home Equity Loan

• The amount of all fees and/or purchase premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

• All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

• All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

• Any additional amount GMAC-RFC or any of its **Affiliates** is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

• Repurchase price as calculated above, plus

• Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

• Amount by which the current market Value of the **Mortgaged Premises** as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



**2A**
Page 2A.24
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Premium** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Premium be greater than the original Servicing Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

## (E) Repurchase as a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.25
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**(F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(G) Cost Of Transfer Fees Due To Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.27
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-2

**GMAC-RFC**

# 1-04-G01

**Effective: January 1, 2004**

# Client Guideline

Enclosed is the Client Guideline. The purpose of the Client Guideline is to identify enhancements, clarifications and changes to the Client Guide and to give notice that the Client Guide has been amended. All clarifications and changes are effective for Commitments taken on or after January 1, 2004, unless otherwise noted.

The actual enhancements, clarifications and changes can be found in the pages of the Client Guide indicated below. Residential Funding Corporation ("GMAC-RFC") is pleased to announce the following enhancements, clarifications and changes:

## Chapter 1, Introduction

- Clarified Updates and Amendments section (**Page 1.4**)

## Chapter 2A, Representations, Warranties and Covenants

- Clarified Notification of Changes in Client Status section (**Page 2A.28**)

## Chapter 2B, Discontinued Loans

- Added California covered Loans (**Page 2B.2**) *(Effective on Loans that close on or after January 1, 2004)*
- Amended Illinois high risk Loans (**Page 2B.3**)
- Added Maryland covered Loans (**Page 2B.3**) *(Effective on Loans that close on or after January 1, 2004)*
- Added New Jersey home Loans (**Page 2B.4**)
- Added South Carolina high-cost home Loans (**Page 2B.5**)

## Chapter 3, Loan Eligibility

- Clarified home-seller guidelines for purchase mortgage transactions (**Pages 3.11, 3.15**)
- Updated incidental cash back on rate/term transactions (**Page 3.12**)
- Clarified how GMAC-RFC determine's Value for Home Equity programs (**Page 3.18**)
- Added requirement that AVMs must be dated within 180 days of the Note (**Page 3.22**)
- Clarified requirements for small condominium projects and condominium conversion projects (**Pages 3.38, 3.42, 3.45, 3.46**)
- Updated hazard insurance requirements (**Page 3.48**)
- Moved mortgage insurance requirements from other sections of the Client Guide to Chapter 3 (**Page 3.51**)

## GMAC-RFC

# Table of Contents

## Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | General Rules of Interpretation | 1.4 |
| 111 | Client Guide Online | 1.5 |
| 112 | Headings and Definitions | 1.5 |
| 113 | Form Numbering | 1.5 |
| 114 | Use of Client's Name | 1.5 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.6 |
| 116 | Assetinfo | 1.6 |

## Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.3 |
| 203 | Client Underwriting Responsibilities | 2.3 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.5 |
| 207 | Audits and Inspections | 2.6 |
| 208 | Disclosure of Information | 2.6 |
| 209 | Maintenance of Records | 2.6 |
| 210 | Quality Control | 2.7 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200  **Client Representations Warranties and Covenants** ..................**2A.1**
A201  **Specific Representations, Warranties and Covenants Concerning Client** .**2A.2**
A202  **Specific Representations, Warranties and Covenants Concerning Individual Loans** ...........................................**2A.5**
A203  **Additional Client Representations, Warranties and Covenants for the Home Equity Loan Program** ............................**2A.14**
A204  **Non-Standard Documents** ...................................**2A.16**
A205  **Proof of Compliance** ......................................**2A.17**
A206  **Integrity of Information** ...................................**2A.18**
A207  **Third-Party Originators** ...................................**2A.18**
A208  **Events of Default** ........................................**2A.19**
A209  **Remedies of GMAC-RFC** ...................................**2A.20**
A210  **Repurchase** ............................................**2A.21**
A211  **Disqualification Suspension or Inactivation** .......................**2A.26**
A212  **Indemnification** .........................................**2A.27**
A213  **Right of Set-Off** .........................................**2A.28**
A214  **Merger or Consolidation of Client** ............................**2A.28**
A215  **Notification of Changes in Client Status** ........................**2A.28**

# Chapter 2B, Discontinued Loans

B200  **Discontinued Loans** ......................................**2B.1**

**GMAC-RFC**

# Chapter 3, Loan Eligibility

**300   Loan Seasoning**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.1**
**301   Occupancy**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.1**
**302   Borrower Eligibility**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.4**
**303   Required Signatures**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.5**
**304   Multiple Loans to One Borrower**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.6**
**305   Ownership Interests**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.6**
**306   Transaction Types**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.11**
**307   Arm's Length Transaction**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.15**
**308   Inherited Properties**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.16**
**309   Determining Amount to be Financed**  . . . . . . . . . . . . . . . . . . . . . . . . . . **3.16**
**310   Calculating LTV Ratios**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.17**
**311   Financing Closing Costs**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.19**
**312   Secondary or Subordinate Financing**  . . . . . . . . . . . . . . . . . . . . . . . . . **3.20**
**313   Sales Concessions or Home-seller Subsidy**  . . . . . . . . . . . . . . . . . . . . **3.21**
**314   Documentation**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.21**
**315   Age of Documents**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.22**
**316   Note Requirements**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.24**
**317   Loan Documents**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.26**
**318   Escrow Issues**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.28**
**319   Temporary Buydowns**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.30**
**320   Current Payment History**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.31**
**321   Property Issues**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.31**
**322   Eligible Property Locations**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.32**
**323   Texas Equity Loans**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.33**
**324   Eligible Property Types**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.37**
**325   Ineligible Property Types**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.41**
**326   Project Requirements for Warrantable Condominiums and PUDs**  . . . . . . **3.42**
**327   Insurance Requirements**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.48**
**328   Survey Requirements**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.63**

**GMAC-RFC**

---

# Chapter 4, Underwriting

| | | |
|---|---|---|
| **400** | **Underwriting** | **4.1** |
| **401** | **Client Underwriting Responsibility** | **4.1** |
| **402** | **GMAC-RFC Underwriting Review** | **4.1** |
| **403** | **Loan Application Analysis** | **4.2** |
| **404** | **Credit Report Requirements** | **4.2** |
| **405** | **Credit Score Requirements** | **4.3** |
| **406** | **Selecting Credit Score** | **4.3** |
| **407** | **Minimum Credit History** | **4.4** |
| **408** | **Credit Evaluation Overview** | **4.5** |
| **409** | **Credit Evaluation Components** | **4.5** |
| **410** | **Upgrading the Credit Grade** | **4.13** |
| **411** | **Borrower Income** | **4.16** |
| **412** | **Borrower's Liabilities** | **4.16** |
| **413** | **Debt Payoff** | **4.17** |
| **414** | **Co-Signed Debt** | **4.17** |
| **415** | **Divorce Debt** | **4.17** |
| **416** | **Business Debt** | **4.17** |
| **417** | **Borrower Capacity** | **4.17** |
| **418** | **Student Loan** | **4.17** |
| **419** | **Qualifying Ratios** | **4.18** |
| **420** | **Electronic Documentation Standards** | **4.20** |
| **421** | **Employment and Income Analysis** | **4.21** |
| **422** | **Income Documentation Standards** | **4.21** |
| **423** | **Income Types** | **4.24** |
| **424** | **Wage Earners** | **4.25** |
| **425** | **Self-Employed Income** | **4.29** |
| **426** | **Fixed Income** | **4.33** |
| **427** | **Rental Income** | **4.35** |
| **428** | **Other Income** | **4.36** |
| **429** | **Trailing or Relocating Co-Borrower** | **4.42** |
| **430** | **Cash to Close** | **4.43** |
| **431** | **Collateral Property Underwriting** | **4.48** |
| **432** | **Appraiser Requirements** | **4.48** |
| **433** | **Appraisal Requirements** | **4.49** |
| **434** | **Appraisal Evaluation** | **4.52** |
| **435** | **Additional Review Considerations** | **4.62** |

**GMAC-RFC**

# Chapter 4A, Assetwise

A400   **Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
A401   **Client Responsibilities and Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
402   **Assetwise Approvals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.2**
403   **Delivery Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.3**
404   **Assetwise Documentation Set** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.4**

# Chapter 5, Products

500   **Product Descriptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.1**
501   **Fixed-Rate Mortgages (FRM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.3**
502   **Adjustable Rate Mortgages (ARM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.6**
503   **Balloon Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.57**

# Chapter 6, Loan Programs

600   **Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.1**

# Chapter 6A, Jumbo A Loan Program

A600   **Jumbo A Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A601   **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A602   **Jumbo A, Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . **6A.9**
A603   **EasyFi^{SM} or Streamline Refinance** . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.12**
A604   **Converted and/or Modified Loans—Contemplated by Original Note** . . . . **6A.18**
A605   **Converted and/or Modified Loans—Not Contemplated by Original Note**  **6A.20**

**GMAC-RFC**

# Chapter 6B, Expanded Criteria Loan Program

B600  Expanded Criteria Program ....................................6B.1
B601  Eligibility Standards .........................................6B.1
B602  Expanded Criteria, 100% Combo Loan ........................6B.14
B603  Expanded Criteria, Uninsured LTV ..........................6B.17
B604  Expanded Criteria, Stated Income Documentation ..............6B.19
B605  Expanded Criteria, Stated Income/Stated Asset Documentation ......6B.24
B606  Expanded Criteria, No Ratio ................................6B.27
B607  Expanded Criteria, No Income/No Asset .......................6B.32

# Chapter 6C, Home Solution Loan Program

C600  Home Solution Program .......................................6C.1
C601  Eligibility Standards .........................................6C.1
C602  Home Solution Stated Income Documentation ....................6C.9

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600  AlterNet/Credit Gap Program ..................................6E.1
E601  Eligibility Standards .........................................6E.1
E602  Underwriting ................................................6E.8
E603  Maximum Loan Amounts ......................................6E.13

# Chapter 6F, Performance Loan Program

F600  Performance Loan Program ....................................6F.1
F601  Eligibility Standards .........................................6F.1

# Chapter 6G, Home Equity Loan Program

G600  Home Equity Program ........................................6G.1
G601  Home Equity Program, Stated Value ...........................6G.13
G602  Home Equity Program, Stated Income Documentation ..............6G.14
G603  Supplemental Home Equity Information .........................6G.15
G604  Home Equity Program Goal Line$^{SM}$ Product Description ............6G.19
G605  Home Equity Program Goal Loan$^{SM}$ Description ....................6G.23

**GMAC-RFC**

# Chapter 6H, 125 CLTV Loan Program

**H600  125 CLTV Loan Program** ......................................**6H.1**

# Chapter 7, At-A-Glances

**700    Program At-A-Glances** .......................................**7.1**

# Chapter 8, Servicing Released

**800    Servicing Released** ...........................................**8.1**
**801    Program Overview** ...........................................**8.1**
**802    Designated Servicer** .........................................**8.2**
**803    Contractual Obligations** .....................................**8.2**
**804    Program Eligibility** ..........................................**8.2**
**805    Disqualification Suspension or Inactivation** ................**8.2**
**806    Restrictions on Loan Eligibility** .............................**8.3**
**807    Record Maintenance** ........................................**8.3**
**808    Final Documents** ............................................**8.3**
**809    Disclosure of Information; Cooperation** ....................**8.3**
**810    Client Representations and Warranties;**
 **Events of Servicer Default Prior to Transfer** ......................**8.4**
**811    Specific Warranties and Covenants** .........................**8.4**
**812    Notification of Change in Servicer** ..........................**8.8**
**813    Escrow Account for Postponed Improvements/Repairs** ......**8.9**
**814    Interest on Escrows** .........................................**8.9**
**815    Termination of Automatic Payment** ..........................**8.9**
**816    Purchase of Servicing** .......................................**8.9**
**817    Servicing Released Submission of Purchase** ..................**8.9**
**818    Required Servicing Documents** ..............................**8.9**
**819    Sale Date and Effective Date of Servicing Transfer** ..........**8.11**
**820    Reconciliation by GMAC-RFC** ...............................**8.12**
**821    Notification of Purchase** ....................................**8.14**
**822    Monies Paid for Servicing Released** .........................**8.14**
**823    Monies Due Client** ..........................................**8.15**
**824    Monies Due Designated Servicer** ............................**8.16**
**825    Loans Paid in Full** ...........................................**8.17**
**826    Servicing Document Corrections** ............................**8.17**
**827    Bulk Servicing Acquisitions** .................................**8.18**
**828    Subservicing Election** .......................................**8.18**

**GMAC-RFC**

# Chapter 9, Commitment and Delivery

**900   Commitment and Delivery—First Mortgage Product** . . . . . . . . . . . . . . . . . **9.1**
**901   Commitment Rate, Fee and Price Information** . . . . . . . . . . . . . . . . . . . . . . **9.1**
**902   Authorized Rates and Prices** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.1**
**903   Electronic Loan Data Delivery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.1**
**904   Wire Transfer Authorization** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.2**
**905   Notification of Wire Transfer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.2**
**906   Best Efforts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.2**
**907   Commitment Rate and Price Information** . . . . . . . . . . . . . . . . . . . . . . . . . . **9.3**
**908   Best Efforts Delivery Commitment Periods** . . . . . . . . . . . . . . . . . . . . . . . . **9.4**
**909   Best Efforts Servicing Options** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.5**
**910   Commitment Amounts and Variance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.5**
**911   Ordering Best Efforts Delivery Commitment** . . . . . . . . . . . . . . . . . . . . . . . **9.6**
**912   Mandatory Delivery Commitments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.7**
**913   Mandatory Delivery Servicing Options** . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.7**
**914   Commitment Amounts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.7**
**915   Ordering Mandatory Delivery Commitments** . . . . . . . . . . . . . . . . . . . . . . . **9.8**
**916   Delivery Under Mandatory Delivery Commitment** . . . . . . . . . . . . . . . . . . . **9.8**
**917   Corrections and Substitutions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.9**
**918   Buyouts and Extensions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.9**
**919   Over-Delivery Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.10**
**920   Mandatory Delivery Commitment Expirations** . . . . . . . . . . . . . . . . . . . . . **9.10**
**921   Transferability of Commitments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.11**
**922   Delivery for Funding** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.11**
**923   Submission of Funding Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.11**
**924   Required Funding Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.12**
**925   Required Servicing Documents for First Mortgage Deliveries** . . . . . . . . . **9.15**
**926   Obligation to Sell Upon Submission of Funding Documents** . . . . . . . . . . **9.15**
**927   Loan Purchase** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.16**
**928   Wire Transfer Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.16**
**929   Funding Amount** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.17**
**930   Notification of Wire Transfer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.19**
**931   Payoff Prior to Funding Date** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.20**
**932   Loans Paid in Full** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.20**
**933   Failure to Comply with GMAC-RFC Remittance Requirements** . . . . . . . . . **9.21**
**934   Final Document Delivery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.22**
**935   Submission of Final Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.22**
**936   Required Final Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.23**
**937   Extensions for Final Delivery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.23**
**938   Request for Additional Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.24**
**939   Commitment and Delivery Registration for Goal Lines of Credit** . . . . . . . **9.24**
**940   Commitment and Delivery Registration for Goal Loan and
       125 CLTV Closed-End Second Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . **9.27**
**941   Assetinfo** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.31**
**942   MERS Loan Registration, Transfer and Delivery Requirements** . . . . . . . . **9.31**

**GMAC-RFC**

# Chapter 10, Definitions

# Chapter 11, Forms & Exhibits

**1110  GMAC-RFC Forms & Exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11.1**



# 2A
**GMAC-RFC**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client and, in any event, Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

# GMAC-RFC

# 2A
Page 2A.3
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

## (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

## (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

## (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

## (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



# 2A GMAC-RFC
Page 2A.4

## (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

## (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

## (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

## (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

## (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

## (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**

Page 2A.5
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy Of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, **Funding Documents**, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A GMAC-RFC

Page 2A.6

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

## (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

## (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the **Mortgaged Premises** and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

## (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

## (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (I) Compliance with Law

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

## (J) Responsible Lending Representations, Warranties and Covenants

Client makes the responsible lending representations, warranties and covenants set out below. These representations, warranties and covenants are in addition to, and not in substitution for, Client's representations, warranties and covenants, made elsewhere in this Client Guide. All Loans must comply with all applicable federal, State, and local laws. All Loans must be originated and serviced according to GMAC-RFC standards contained in this Client Guide.

### (1) Certain "High Cost" Loans Prohibited

No Loan is a **Discontinued Loan**. In general, a Discontinued Loan is:

- A Loan subject to HOEPA/Section 32;

- A purchase money Loan on a consumer's principal residence that exceeds the "points and fees" or APR triggers of HOEPA and Section 32;

- An open-end line of credit on a consumer's principal residence that exceeds the "points and fees" or APR triggers of HOEPA and Section 32; or

- A Loan with terms that trigger high-cost mortgage laws or regulations in certain States, counties or cities regardless of whether the originator qualifies for an exemption.

See **Chapter 2B**, Discontinued Loans, for the complete definition of **Discontinued Loan**s.



# 2A GMAC-RFC
Page 2A.8

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**(2) Prohibited Terms and Practices on all Loans sold to GMAC–RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) No financing of pre-paid insurance products. No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) Prepayment penalties. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The prepayment penalty does not become due upon default

(c) Reporting to credit bureaus. Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) Increased interest rate. A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by **Mortgaged Premises** located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.

**GMAC-RFC**

**2A**
Page 2A.9
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

### (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Client Guide, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

### (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the **Mortgaged Premises** in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

### (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

### (P) No Liens

There are no delinquent tax or delinquent assessment liens against the **Mortgaged Premises**, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

### (Q) No Adverse Circumstances

The **Mortgaged Premises** are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the **Mortgaged Premises**. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.



**2A**
Page 2A.10

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

### (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

### (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. As of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the **Security Instrument** and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

**GMAC-RFC**

**2A**
Page 2A.11
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/ beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W)Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any **Security Instrument** that is a deed of trust.

### (Y) Execution Of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

### (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each **Mortgaged Premises** involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

### (AA) Condominiums; **Planned Unit Development**s (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

### (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

### (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.



# 2A
Page 2A.12

**GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (DD) Client And Originators

The Client either is an institution insured by **FDIC** which is supervised and examined by a federal or State authority, or is a **HUD** approved mortgagee, and was so at the time the Loan was originated. The Loan either was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is an institution insured by FDIC and supervised and examined by a federal or State authority, or is a **HUD** approved mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator"), or (iii) closed in the name of a Loan broker under the circumstances described in the following sentence: If the Loan was originated through a Loan broker, the originator approved the Loan prior to funding by the Loan broker and the originator acquired the Loan from the Loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

## (EE) No Impairment Of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

## (FF) Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section of this Client Guide.

## (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

## (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

# GMAC-RFC

**2A**
Page 2A.13
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

## (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

## (KK) No Fraud Or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.



# 2A GMAC-RFC
Page 2A.18

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.

**GMAC-RFC**

**2A**
Page 2A.19
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in the Eligibility Standards Chapter of this Client Guide) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A
Page 2A.20  **GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A209

**Remedies of GMAC-RFC**

### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

• One or more other remedies in connection with the same **Event of Default**

• Any other rights which it may have at law or in equity

### (B) Waiver Of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage **Note** or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

# GMAC-RFC

**2A**

Page 2A.21

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



**2A**
Page 2A.22 **GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**
Page 2A.23
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (C) Repurchase Price of Home Equity Loan Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliates** is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the **Mortgaged Premises** as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



# 2A
Page 2A.24   **GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Premium** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Premium be greater than the original Servicing Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

## (E) Repurchase as a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.25
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

### (F) Substitution

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

### (G) Cost Of Transfer Fees Due To Repurchase

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

### (H) Notice and Appeal

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.27
01/01/04
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

• The investment quality of Loans sold to GMAC-RFC

• The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-3

**GMAC-RFC**

# 1-04-G02

**Effective: April 1, 2004**

# Client Guideline

Enclosed is the Client Guideline. The purpose of the Client Guideline is to identify enhancements, clarifications and changes to the Client Guide and to give notice that the Client Guide has been amended. All clarifications and changes are effective for Commitments taken on or after April 1, 2004, unless otherwise noted.

The actual enhancements, clarifications and changes can be found in the pages of the Client Guide indicated below.

## Chapter 1, Introduction
• Added option to email to notification methods (**Page 1.3**)

## Chapter 2, Client Eligibility
• Revised language for Client Eligibility (**Page 2.2**)

## Chapter 2A, Representations, Warranties and Covenants
• Revised language for Loan Eligibility (**Page 2A.12**)
• Added Exclusionary List to Representations, Warranties and Covenants (**2A.13**)

## Chapter 2B, Discontinued Loans
• Deleted New York City High Cost Home Loan (**Page 2B.4**)

## Chapter 3, Loan Eligibility
• Clarified trust requirements (**Pages 3.7**, **3.8**)
• Added language referring to Home Solution Program restrictions regarding incidental cash back (**Page 3.12**)
• Clarified incidental cash back in a cash-out refinance mortgage (**Page 3.13**)
• Clarified ownership seasoning, pay history documentation and additional restrictions for contract for deed/land contracts (**Pages 3.14**)
• Added additional restriction to lease with option to purchase transactions (**Page 3.15**)
• Clarified Value of lot definition (**Page 3.18**)
• Changed requirement for engineers report for small condominium projects having less than 10 stories (**Page 3.46**)
• Changed occupancy type for site condominiums (**Page 3.46**)
• Changed liability insurance requirements for small condominium projects (**Page 3.56**)



**GMAC-RFC**

# Table of Contents

## Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | General Rules of Interpretation | 1.4 |
| 111 | Client Guide Online | 1.5 |
| 112 | Headings and Definitions | 1.5 |
| 113 | Form & Exhibit Numbering | 1.5 |
| 114 | Use of Client's Name | 1.5 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.6 |
| 116 | Assetinfo | 1.6 |

## Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.3 |
| 203 | Client Underwriting Responsibilities | 2.3 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.5 |
| 207 | Audits and Inspections | 2.6 |
| 208 | Disclosure of Information | 2.6 |
| 209 | Maintenance of Records | 2.6 |
| 210 | Quality Control | 2.7 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . . 2A.1
A201  Specific Representations, Warranties and Covenants Concerning Client  . 2A.2
A202  Specific Representations, Warranties and Covenants Concerning
       Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.5
A203  Additional Client Representations, Warranties and Covenants for
       the Home Equity Loan Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.14
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.16
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.17
A206  Integrity of Information  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.18
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.18
A208  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.19
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.20
A210  Repurchase  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.21
A211  Disqualification Suspension or Inactivation  . . . . . . . . . . . . . . . . . . . . . 2A.26
A212  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.27
A213  Right of Set-Off  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.28
A214  Merger or Consolidation of Client  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.28
A215  Notification of Changes in Client Status  . . . . . . . . . . . . . . . . . . . . . . . 2A.28

# Chapter 2B, Discontinued Loans

B200  Discontinued Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2B.1

**GMAC-RFC**

# Chapter 3, Loan Eligibility

| | | |
|---|---|---|
| 300 | Loan Seasoning | 3.1 |
| 301 | Occupancy | 3.1 |
| 302 | Borrower Eligibility | 3.4 |
| 303 | Required Signatures | 3.5 |
| 304 | Multiple Loans to One Borrower | 3.6 |
| 305 | Ownership Interests | 3.6 |
| 306 | Transaction Types | 3.11 |
| 307 | Arms Length Transaction | 3.16 |
| 308 | Inherited Properties | 3.16 |
| 309 | Determining Amount to Be Financed | 3.16 |
| 310 | Calculating LTV Ratios | 3.17 |
| 311 | Financing Closing Costs | 3.19 |
| 312 | Secondary or Subordinate Financing | 3.20 |
| 313 | Sales Concessions or Home-seller Subsidy | 3.21 |
| 314 | Documentation | 3.21 |
| 315 | Age of Documents | 3.22 |
| 316 | Note Requirements | 3.24 |
| 317 | Loan Documents | 3.26 |
| 318 | Escrow Issues | 3.28 |
| 319 | Temporary Buydowns | 3.30 |
| 320 | Current Payment History | 3.31 |
| 321 | Property Issues | 3.31 |
| 322 | Eligible Property Locations | 3.32 |
| 323 | Texas Equity Loans | 3.33 |
| 324 | Eligible Property Types | 3.37 |
| 325 | Ineligible Property Types | 3.41 |
| 326 | Project Requirements for Warrantable Condominiums and PUDs | 3.42 |
| 327 | Insurance Requirements | 3.48 |
| 328 | Survey Requirements | 3.63 |

**GMAC-RFC**

# Chapter 4, Underwriting

| | | |
|---|---|---|
| 400 | Underwriting ................................................ | 4.1 |
| 401 | Client Underwriting Responsibility .......................... | 4.1 |
| 402 | GMAC-RFC Underwriting Review .............................. | 4.1 |
| 403 | Loan Application Analysis .................................. | 4.2 |
| 404 | Credit Report Requirements ................................ | 4.2 |
| 405 | Credit Score Requirements ................................. | 4.3 |
| 406 | Selecting Credit Score .................................... | 4.3 |
| 407 | Minimum Credit History .................................... | 4.4 |
| 408 | Credit Evaluation Overview ................................ | 4.5 |
| 409 | Credit Evaluation Components .............................. | 4.5 |
| 410 | Upgrading the Credit Grade ................................ | 4.13 |
| 411 | Borrower Income .......................................... | 4.16 |
| 412 | Borrower's Liabilities .................................... | 4.16 |
| 413 | Debt Payoff ............................................... | 4.17 |
| 414 | Co-Signed Debt ........................................... | 4.17 |
| 415 | Divorce Debt .............................................. | 4.17 |
| 416 | Business Debt ............................................. | 4.17 |
| 417 | Borrower Capacity ........................................ | 4.17 |
| 418 | Student Loan .............................................. | 4.17 |
| 419 | Qualifying Ratios ......................................... | 4.18 |
| 420 | Electronic Documentation Standards ........................ | 4.20 |
| 421 | Employment and Income Analysis ............................ | 4.21 |
| 422 | Income Documentation Standards ............................ | 4.21 |
| 423 | Income Types ............................................. | 4.24 |
| 424 | Wage Earners ............................................. | 4.25 |
| 425 | Self-Employed Income ..................................... | 4.29 |
| 426 | Fixed Income ............................................. | 4.33 |
| 427 | Rental Income ............................................ | 4.35 |
| 428 | Other Income ............................................. | 4.36 |
| 429 | Trailing or Relocating Co-Borrower ........................ | 4.42 |
| 430 | Cash to Close ............................................ | 4.43 |
| 431 | Collateral Property Underwriting .......................... | 4.48 |
| 432 | Appraiser Requirements ................................... | 4.48 |
| 433 | Appraisal Requirements ................................... | 4.49 |
| 434 | Appraisal Evaluation ..................................... | 4.52 |
| 435 | Additional Review Considerations .......................... | 4.62 |

**GMAC-RFC**

# Chapter 4A, Assetwise

A400   **Overview**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4A.1
A401   **Client Responsibilities and Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . .4A.1
402    **Assetwise Approvals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4A.2
403    **Delivery Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4A.3
404    **Assetwise Documentation Set** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4A.4

# Chapter 5, Products

500    **Product Descriptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.1
501    **Fixed-Rate Mortgages (FRM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.3
502    **Adjustable Rate Mortgages (ARM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.6
503    **Balloon Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.57

# Chapter 6, Loan Programs

600    **Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6.1

# Chapter 6A, Jumbo A Loan Program

A600   **Jumbo A Program**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.1
A601   **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.1
A602   **Jumbo A, Stated Income Documentation**  . . . . . . . . . . . . . . . . . . . . . . . . .6A.9
A603   **EasyFi[SM] or Streamline Refinance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.12
A604   **Converted and/or Modified Loans—Contemplated by Original Note** . . . .6A.18
A605   **Converted and/or Modified Loans—Not Contemplated by Original Note**  6A.20

**GMAC-RFC**

# Chapter 6B, Expanded Criteria Loan Program

B600   Expanded Criteria Program .................................... 6B.1
B601   Eligibility Standards ......................................... 6B.1
B602   Expanded Criteria, 100% Combo Loan ......................... 6B.14
B603   Expanded Criteria, Uninsured LTV ............................ 6B.17
B604   Expanded Criteria, Stated Income Documentation ................ 6B.19
B605   Expanded Criteria, Stated Income/Stated Asset Documentation ..... 6B.24
B606   Expanded Criteria, No Ratio .................................. 6B.27
B607   Expanded Criteria, No Income/No Asset ........................ 6B.32

# Chapter 6C, Home Solution Loan Program

C600   Home Solution Program ...................................... 6C.1
C601   Eligibility Standards ........................................ 6C.1
C602   Home Solution Stated Income Documentation .................... 6C.10

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600   AlterNet/Credit Gap Program ................................. 6E.1
E601   Eligibility Standards ........................................ 6E.1

# Chapter 6F, Performance Loan Program

F600   Performance Loan Program ................................... 6F.1
F601   Eligibility Standards ........................................ 6F.1

**GMAC-RFC**

# Chapter 6G, Home Equity Loan Program

**G600 Home Equity Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G601 Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G602 Supplemental Home Equity Information** . . . . . . . . . . . . . . . . . . . . . . . . .6G.17
**G603 Home Equity Program Goal Line**[SM] **Product Description** . . . . . . . . . . . . .6G.19
**G604 Home Equity Program Goal Loan**[SM] **Description** . . . . . . . . . . . . . . . . . .6G.23
**G605 Home Equity Program, Stated Value** . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.25
**G606 Home Equity Program, Stated Income Documentation** . . . . . . . . . . . . . .6G.26

# Chapter 6H, 125 CLTV Loan Program

**H600 125 CLTV Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H601 Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H602 Supplemental 125 CLTV Program Information** . . . . . . . . . . . . . . . . . . . .6H.16

# Chapter 7, At-A-Glances

**700 Program At-A-Glances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7.1

**GMAC-RFC**

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.9 |
| 819 | Sale Date and Effective Date of Servicing Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

**GMAC-RFC**

# Chapter 9, Commitment and Delivery

900   Commitment and Delivery—First Mortgage Product . . . . . . . . . . . . . . . . . 9.1
901   Commitment Rate, Fee and Price Information  . . . . . . . . . . . . . . . . . . . . . . 9.1
902   Authorized Rates and Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
903   Electronic Loan Data Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
904   Wire Transfer Authorization  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
905   Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
906   Best Efforts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
907   Commitment Rate and Price Information  . . . . . . . . . . . . . . . . . . . . . . . . . . 9.3
908   Best Efforts Delivery Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . . 9.4
909   Best Efforts Servicing Options  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.5
910   Commitment Amounts and Variance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.5
911   Ordering Best Efforts Delivery Commitment . . . . . . . . . . . . . . . . . . . . . . . 9.6
912   Mandatory Delivery Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
913   Mandatory Delivery Servicing Options  . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
914   Commitment Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
915   Ordering Mandatory Delivery Commitments . . . . . . . . . . . . . . . . . . . . . . . 9.8
916   Delivery Under Mandatory Delivery Commitment . . . . . . . . . . . . . . . . . . . 9.8
917   Corrections and Substitutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.9
918   Buyouts and Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.9
919   Over-Delivery Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.10
920   Mandatory Delivery Commitment Expirations . . . . . . . . . . . . . . . . . . . . . 9.10
921   Transferability of Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
922   Delivery for Funding  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
923   Submission of Funding Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
924   Required Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.12
925   Required Servicing Documents for First Mortgage Deliveries . . . . . . . . . 9.15
926   Obligation to Sell Upon Submission of Funding Documents  . . . . . . . . . . 9.15
927   Loan Purchase  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.16
928   Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.16
929   Funding Amount  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.17
930   Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.19
931   Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.20
932   Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.20
933   Failure to Comply with GMAC-RFC Remittance Requirements  . . . . . . . . 9.21
934   Final Document Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.22
935   Submission of Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.22
936   Required Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.23
937   Extensions for Final Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.23
938   Request for Additional Documentation  . . . . . . . . . . . . . . . . . . . . . . . . . . 9.24
939   Commitment and Delivery Registration for Goal Lines of Credit . . . . . . . 9.24
940   Commitment and Delivery Registration for Goal Loan and 125 CLTV
      Closed-End Second Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.27
941   Assetinfo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.31
942   MERS Loan Registration, Transfer and Delivery Requirements . . . . . . . . 9.31

**GMAC-RFC**

---

# Chapter 10, Definitions

---

# Chapter 11, Forms & Exhibits

**1110  GMAC-RFC Forms & Exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11.1**



# 2A
**GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client and, in any event, Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**(D) No Conflicts**

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

**(E) Ability to Perform**

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

**(F) No Litigation Pending**

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

**(G) No Consent Required**

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

**(H) No Untrue Information**

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.

# 2A
Page 2A.4

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**



## GMAC-RFC

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, **Funding Documents**, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6 **GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

## (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the **Mortgaged Premises** and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

## (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

## (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## (I) Compliance with Law

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

## (J) Responsible Lending Representations, Warranties and Covenants

Client makes the responsible lending representations, warranties and covenants set out below. These representations, warranties and covenants are in addition to, and not in substitution for, Client's representations, warranties and covenants, made elsewhere in this Client Guide. All Loans must comply with all applicable federal, State, and local laws. All Loans must be originated and serviced according to GMAC-RFC standards contained in this Client Guide.

### (1) Certain "High Cost" Loans Prohibited

No Loan is a **Discontinued Loan**. In general, a Discontinued Loan is:

- A Loan subject to HOEPA/Section 32;

- A purchase money Loan on a consumer's principal residence that exceeds the "points and fees" or APR triggers of HOEPA and Section 32;

- An open-end line of credit on a consumer's principal residence that exceeds the "points and fees" or APR triggers of HOEPA and Section 32; or

- A Loan with terms that trigger high-cost mortgage laws or regulations in certain States, counties or cities regardless of whether the originator qualifies for an exemption.

See **Chapter 2B**, Discontinued Loans, for the complete definition of **Discontinued Loan**s.



# 2A
**GMAC-RFC**

**(2) Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) No financing of pre-paid insurance products. No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) Prepayment penalties. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

• The penalty may be enforced for only the first five years following consummation;

• The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

• The prepayment penalty does not become due upon default

(c) Reporting to credit bureaus. Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) Increased interest rate. A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by **Mortgaged Premises** located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.

**GMAC-RFC**

**2A**

Page 2A.9

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

## (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Client Guide, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

## (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the **Mortgaged Premises** in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

## (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

## (P) No Liens

There are no delinquent tax or delinquent assessment liens against the **Mortgaged Premises**, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

## (Q) No Adverse Circumstances

The **Mortgaged Premises** are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the **Mortgaged Premises**. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.



# 2A
Page 2A.10

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

### (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

### (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. As of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the **Security Instrument** and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

**GMAC-RFC**

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any **Security Instrument** that is a deed of trust.

### (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

### (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each **Mortgaged Premises** involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

### (AA) Condominiums; Planned Unit Developments (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

### (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

### (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.



# 2A
Page 2A.12

04/01/04
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

**(DD) Client and Originators**

If the Client sells Jumbo A or Expanded Criteria Loans to GMAC-RFC, the Client is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or state authority **or** a **HUD** approved non-supervised mortgagee.

Each Jumbo A and Expanded Criteria Loan was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or a HUD approved non-supervised mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator") or (iii) closed in the name of the loan broker.

All Loans closed in the name of a loan broker (including but not limited to Jumbo A and Expanded Criteria Loans) were originated under the circumstances described in the following sentence: If the Loan was originated through a loan broker, the originator approved the Loan prior to funding by the loan broker and the originator acquired the Loan from the loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

**(EE) No Impairment of Insurance**

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

**(FF) Temporary Buydowns**

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section of this Client Guide.

**(GG) Primary Mortgage Insurance Cancellation**

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

**(HH) No Deficiency In Escrow Deposits or Payments**

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

**GMAC-RFC**

**2A**
Page 2A.13
04/01/04
Client Guide
**Representations,
Warranties and
Covenants**

**(II) Loan Securitization**

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

**(JJ) Non-Solicitation**

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**(KK) No Fraud or Misrepresentation**

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

**(LL) Exclusionary List**

No party involved in the origination of a Loan, including without limitation the originator, broker, title company or appraiser, was named on the version of the **Exclusionary List** that was effective on the date of the promissory Note for that particular Loan.

# 2A

Page 2A.18

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

 **GMAC-RFC**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.

**GMAC-RFC**

**2A**
Page 2A.19
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A

Page 2A.20
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### A209

**Remedies of GMAC-RFC**

#### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same **Event of Default**
- Any other rights which it may have at law or in equity

#### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

#### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage **Note** or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.21
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



# 2A
Page 2A.22

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**
Page 2A.23
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

### ( C) Repurchase Price of Home Equity Loan Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliates** is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the **Mortgaged Premises** as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



**2A**
**GMAC-RFC**

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Premium** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Premium be greater than the original Servicing Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.25
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

### (F) Substitution

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

### (G) Cost of Transfer Fees Due to Repurchase

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

### (H) Notice and Appeal

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

# GMAC-RFC

**2A**
Page 2A.27
01/01/04
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-4

# *Client Guide*



**Version 1-04-G03**

**©2004 Residential Funding Corporation. All rights reserved.**

**GMAC-RFC**

# Table of Contents

## Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | General Rules of Interpretation | 1.4 |
| 111 | Client Guide Online | 1.5 |
| 112 | Headings and Definitions | 1.5 |
| 113 | Form & Exhibit Numbering | 1.5 |
| 114 | Use of Client's Name | 1.5 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.6 |
| 116 | Assetinfo | 1.6 |

## Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.3 |
| 203 | Client Underwriting Responsibilities | 2.3 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.5 |
| 207 | Audits and Inspections | 2.6 |
| 208 | Disclosure of Information | 2.6 |
| 209 | Maintenance of Records | 2.6 |
| 210 | Quality Control | 2.7 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201  Specific Representations, Warranties and Covenants Concerning Client  .2A.2
A202  Specific Representations, Warranties and Covenants Concerning
      Individual Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203  Additional Client Representations, Warranties and Covenants
      for the Home Equity Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.16
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.18
A205  Proof of Compliance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A206  Integrity of Information  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A208  Events of Default  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.22
A210  Repurchase  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.23
A211  Disqualification Suspension or Inactivation  . . . . . . . . . . . . . . . . . . . . .2A.28
A212  Indemnification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A213  Right of Set-Off  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A214  Merger or Consolidation of Client  . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A215  Notification of Changes in Client Status  . . . . . . . . . . . . . . . . . . . . . . .2A.30

**GMAC-RFC**

# Chapter 3, Loan Eligibility

| | | |
|---|---|---|
| 300 | Loan Seasoning | 3.1 |
| 301 | Occupancy | 3.1 |
| 302 | Borrower Eligibility | 3.4 |
| 303 | Required Signatures | 3.5 |
| 304 | Multiple Loans to One Borrower | 3.6 |
| 305 | Ownership Interests | 3.6 |
| 306 | Transaction Types | 3.11 |
| 307 | Arms Length Transaction | 3.16 |
| 308 | Inherited Properties | 3.16 |
| 309 | Determining Amount to Be Financed | 3.17 |
| 310 | Calculating LTV Ratios | 3.17 |
| 311 | Financing Closing Costs | 3.19 |
| 312 | Secondary or Subordinate Financing | 3.20 |
| 313 | Sales Concessions or Home-seller Subsidy | 3.21 |
| 314 | Documentation | 3.21 |
| 315 | Age of Documents | 3.22 |
| 316 | Note Requirements | 3.24 |
| 317 | Loan Documents | 3.26 |
| 318 | Escrow Issues | 3.28 |
| 319 | Temporary Buydowns | 3.30 |
| 320 | Current Payment History | 3.31 |
| 321 | Property Issues | 3.31 |
| 322 | Eligible Property Locations | 3.32 |
| 323 | Texas Equity Loans | 3.33 |
| 324 | Eligible Property Types | 3.37 |
| 325 | Ineligible Property Types | 3.41 |
| 326 | Project Requirements for Warrantable Condominiums and PUDs | 3.42 |
| 327 | Insurance Requirements | 3.48 |
| 328 | Survey Requirements | 3.63 |

**GMAC-RFC**

# Chapter 4, Underwriting

**400**   **Underwriting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.1**
**401**   **Client Underwriting Responsibility** . . . . . . . . . . . . . . . . . . . . . . . . **4.1**
**402**   **GMAC-RFC Underwriting Review** . . . . . . . . . . . . . . . . . . . . . . . . . . **4.1**
**403**   **Loan Application Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.2**
**404**   **Credit Report Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.2**
**405**   **Credit Score Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.3**
**406**   **Selecting Credit Score** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.3**
**407**   **Minimum Credit History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.4**
**408**   **Credit Evaluation Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.4**
**409**   **Credit Evaluation Components** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.5**
**410**   **Upgrading the Credit Grade** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.13**
**411**   **Borrower Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.16**
**412**   **Borrower's Liabilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.17**
**413**   **Debt Payoff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.17**
**414**   **Co-Signed Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.17**
**415**   **Divorce Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.18**
**416**   **Business Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.18**
**417**   **Borrower Capacity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.18**
**418**   **Student Loan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.18**
**419**   **Qualifying Ratios—Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.19**
**420**   **Electronic Documentation Standards** . . . . . . . . . . . . . . . . . . . . . **4.20**
**421**   **Employment and Income Analysis** . . . . . . . . . . . . . . . . . . . . . . . **4.20**
**422**   **Income Documentation Standards** . . . . . . . . . . . . . . . . . . . . . . . **4.21**
**423**   **Income Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.23**
**424**   **Wage Earners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.24**
**425**   **Self-Employed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.28**
**426**   **Fixed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.32**
**427**   **Rental Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.34**
**428**   **Other Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.35**
**429**   **Trailing or Relocating Co-Borrower** . . . . . . . . . . . . . . . . . . . . . **4.43**
**430**   **Cash to Close** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.43**
**431**   **Collateral Property Underwriting** . . . . . . . . . . . . . . . . . . . . . . . . **4.48**
**432**   **Appraiser Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.48**
**433**   **Appraisal Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.49**
**434**   **Appraisal Evaluation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.52**
**435**   **Additional Review Considerations** . . . . . . . . . . . . . . . . . . . . . . . **4.62**

## GMAC-RFC

# Chapter 4A, Assetwise

A400  **Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
A401  **Client Responsibilities and Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
A402  **Assetwise Approvals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.2**
A403  **Delivery Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.3**
A404  **Assetwise Documentation Set** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.3**

# Chapter 5, Products

500  **Product Descriptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.1**
501  **Fixed-Rate Mortgages (FRM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.3**
502  **Adjustable Rate Mortgages (ARM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.6**
503  **Balloon Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.58**

# Chapter 6, Loan Programs

600  **Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.1**
601  **Standard Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.1**
602  **Non-standard Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.2**

# Chapter 6A, Jumbo A Loan Program

A600  **Jumbo A Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A601  **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A602  **Jumbo A, Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . **6A.10**
A603  **EasyFi**SM **or Streamline Refinance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.13**
A604  **Converted and/or Modified Loans—Contemplated by Original Note** . . . **6A.19**
A605  **Converted and/or Modified Loans—Not Contemplated by Original Note** **6A.21**

**GMAC-RFC**

# Chapter 6B, Expanded Criteria Loan Program

B600   Expanded Criteria Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
B601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
B602   Expanded Criteria, 100% Combo Loan . . . . . . . . . . . . . . . . . . . . . . .6B.15
B603   Expanded Criteria, Uninsured LTV . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.18
B604   Expanded Criteria, Stated Income Documentation . . . . . . . . . . . . . . . . .6B.20
B605   Expanded Criteria, Stated Income/Stated Asset Documentation . . . . . .6B.25
B606   Expanded Criteria, No Ratio . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.28
B607   Expanded Criteria, No Income/No Asset . . . . . . . . . . . . . . . . . . . . . . . . .6B.33

# Chapter 6C, Home Solution Loan Program

C600   Home Solution Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.1
C601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.1
C602   Home Solution Stated Income Documentation . . . . . . . . . . . . . . . . . . . .6C.10

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600   AlterNet/Credit Gap Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.1
E601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.1

**GMAC-RFC**

# Chapter 6F, Performance Loan Program

F600   Performance Loan Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6F.1
F601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6F.1

# Chapter 6G, Home Equity Loan Program

G600   Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
G601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
G602   Supplemental Home Equity Information . . . . . . . . . . . . . . . . . . . . . . . . . .6G.17
G603   Home Equity Program Goal Line<sup>SM</sup> Product Description . . . . . . . . . . . . .6G.19
G604   Home Equity Program Goal Loan<sup>SM</sup> Description . . . . . . . . . . . . . . . . . . . .6G.23
G605   Home Equity Program, Stated Value . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.25
G606   Home Equity Program, Stated Income Documentation . . . . . . . . . . . . . .6G.26

# Chapter 6H, 125 CLTV Loan Program

H600   125 CLTV Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H602   Supplemental 125 CLTV Program Information  . . . . . . . . . . . . . . . . . . . . .6H.16

# Chapter 7, At-A-Glances

700   Program At-A-Glances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7.1

**GMAC-RFC**

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.9 |
| 819 | Sale Date and Effective Date of Servicing Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

**GMAC-RFC**

# Chapter 9, Commitment and Delivery

900   Commitment and Delivery—First Mortgage Product . . . . . . . . . . . . . . . . . 9.1
901   Commitment Rate, Fee and Price Information . . . . . . . . . . . . . . . . . . . . . . 9.1
902   Authorized Rates and Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
903   Electronic Loan Data Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
904   Wire Transfer Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
905   Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
906   Best Efforts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
907   Commitment Rate and Price Information . . . . . . . . . . . . . . . . . . . . . . . . . 9.3
908   Best Efforts Delivery Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . 9.4
909   Best Efforts Servicing Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.5
910   Commitment Amounts and Variance . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.5
911   Ordering Best Efforts Delivery Commitment . . . . . . . . . . . . . . . . . . . . . . 9.6
912   Mandatory Delivery Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
913   Mandatory Delivery Servicing Options . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
914   Commitment Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
915   Ordering Mandatory Delivery Commitments . . . . . . . . . . . . . . . . . . . . . . 9.8
916   Delivery Under Mandatory Delivery Commitment . . . . . . . . . . . . . . . . . . 9.8
917   Corrections and Substitutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.9
918   Buyouts and Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.9
919   Over-Delivery Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.10
920   Mandatory Delivery Commitment Expirations . . . . . . . . . . . . . . . . . . . . 9.10
921   Transferability of Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
922   Delivery for Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
923   Submission of Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
924   Required Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.12
925   Required Servicing Documents for First Mortgage Deliveries . . . . . . . . . 9.15
926   Obligation to Sell Upon Submission of Funding Documents . . . . . . . . . . 9.16
927   Loan Purchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.16
928   Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.16
929   Funding Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.17
930   Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.19
931   Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.20
932   Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.20
933   Failure to Comply with GMAC-RFC Remittance Requirements . . . . . . . . 9.21
934   Final Document Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.22
935   Submission of Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.22
936   Required Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.23
937   Extensions for Final Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.23
938   Request for Additional Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . 9.24
939   Commitment and Delivery Registration for Goal Lines of Credit . . . . . . . 9.24
940   Commitment and Delivery Registration for Goal Loan and
      125 CLTV Closed-End Second Mortgages . . . . . . . . . . . . . . . . . . . . . . . . 9.27
941   Assetinfo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.31
942   MERS Loan Registration, Transfer and Delivery Requirements . . . . . . . . 9.31

**GMAC-RFC**

---

# Chapter 10, Definitions

---

# Chapter 11, Forms & Exhibits

**1110  GMAC-RFC Forms & Exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**11.1**



# 2A
Page 2A.2   **GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client and, in any event, Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**(D) No Conflicts**

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

**(E) Ability to Perform**

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

**(F) No Litigation Pending**

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

**(G) No Consent Required**

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

**(H) No Untrue Information**

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



# 2A
Page 2A.4

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

## (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

## (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

## (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

## (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

## (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

# 2A

Page 2A.5

10/01/03

Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, **Funding Documents**, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6  **GMAC-RFC**

10/01/03
Client Guide
**Representations,
Warranties and
Covenants**

**(E) Ownership; Transfer**

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

**(F) Disbursements; No Payoffs or Future Advancements**

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the **Mortgaged Premises** and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

**(G) No Default**

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

**(H) No Defenses**

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) Discontinued Loan**

No Loan is a "Discontinued Loan". **Discontinued Loan** means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

(a) HOEPA/Section 32

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

(b) Purchase Money Loans with High Points or Fees

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



**2A**

Page 2A.8
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

(c)  Home Equity Lines of Credit That Exceed the HOEPA Triggers

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

(d)  State and Local High Cost Loans

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any state or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

(e)  Certain Georgia Home Loans

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

(f)  Certain New Jersey Home Loans

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

• A "home loan" if the property is a "**Manufactured Home**";

• A "home loan" with proceeds intended for home improvement purposes;

• A "home loan" that is an open-end line of credit;

• A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**
Page 2A.9
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

(g) Certain New Mexico Home Loans

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

• A "home loan" if the property is a "**Manufactured Home**";

• A "home loan" with proceeds intended for home improvement purposes;

• A "home loan" that is an open-end line of credit;

• A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(2) Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3) Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

• The penalty may be enforced for only the first five years following consummation;

• The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

• The prepayment penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default**. A Loan may not provide for an increase in the interest rate after default.

# 2A
Page 2A.10
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**



**GMAC-RFC**

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by **Mortgaged Premises** located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Client Guide, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the **Mortgaged Premises** in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the **Mortgaged Premises**, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**GMAC-RFC**

# 2A
Page 2A.11

07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

## (Q) No Adverse Circumstances

The **Mortgaged Premises** are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the **Mortgaged Premises**. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

## (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

## (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

## (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. As of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12 **GMAC-RFC**
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the **Security Instrument** and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any **Security Instrument** that is a deed of trust.

**GMAC-RFC**

**2A**
Page 2A.13
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

**(Y) Execution of Documents**

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**(Z) Leaseholds**

Where permitted by the applicable **Loan Program**, each **Mortgaged Premises** involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

**(AA) Condominiums; Planned Unit Developments (PUDs)**

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

**(BB) Compliance By Others**

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

**(CC) Client Contract Warranties**

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

**(DD) Client and Originators**

- If the Client sells Jumbo A or Expanded Criteria Loans to GMAC-RFC, the Client is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or state authority or a **HUD** approved non-supervised mortgagee.

- Each Jumbo A and Expanded Criteria Loan was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or a HUD approved non-supervised mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator") or (iii) closed in the name of the loan broker.

- All Loans closed in the name of a loan broker (including but not limited to Jumbo A and Expanded Criteria Loans) were originated under the circumstances described in the following sentence: If the Loan was originated through a loan broker, the originator approved the Loan prior to funding by the loan broker and the originator acquired the Loan from the loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.



# 2A
Page 2A.14
07/01/04
Client Guide
Representations,
Warranties and
Covenants

**GMAC-RFC**

### (EE) No Impairment of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

### (FF) Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section of this Client Guide.

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

**GMAC-RFC**

**2A**
Page 2A.15
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

## (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

## (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

## (LL) Exclusionary List

No party involved in the origination of a Loan, including without limitation the originator, broker, title company or appraiser, was named on the version of the **Exclusionary List** that was effective on the date of the promissory Note for that particular Loan.



# 2A
**GMAC-RFC**

## A205

### Proof of Compliance

The Client will, upon the request of GMAC-RFC, supply proof satisfactory to GMAC-RFC of its:

(1) Compliance with all representations and warranties contained in this Client Guide, and

(2) Compliance with all local, State and federal laws, rules and regulations.

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

**GMAC-RFC**

**2A**
Page 2A.21
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A GMAC-RFC

Page 2A.22

07/01/04

Client Guide
**Representations,
Warranties and
Covenants**

## A209

### Remedies of GMAC-RFC

**(A) Non-Exclusive, Cumulative Remedies**

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same **Event of Default**
- Any other rights which it may have at law or in equity

**(B) Waiver of Defaults**

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

**(C) Survival of Remedies**

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage **Note** or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.23
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### ( A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



**2A**
Page 2A.24
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**

Page 2A.25

07/01/04

Client Guide
**Representations,
Warranties and
Covenants**

## (C) Repurchase Price of Home Equity Loan Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliates** is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the **Mortgaged Premises** as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



# 2A
Page 2A.26
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Premium** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Premium be greater than the original Servicing Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.27
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

**( F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**( G) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**( H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.29
07/01/04
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-5

# *Client Guide*

# GMAC RFC

**Version 1-04-G04**

©**2004 Residential Funding Corporation. All rights reserved.**

**GMAC-RFC**

# Table of Contents

## Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client I D Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 100 | Headings, **Use of Capitalization** and Definitions | 1.4 |
| 101 | Form & Exhibit Numbering | 1.4 |
| 102 | Client Guide Online | 1.4 |
| 103 | General Rules of Interpretation | 1.4 |
| 104 | Use of Client's Name | 1.5 |
| 105 | Use of GMAC-RFC Name and Service Marks | 1.6 |
| 106 | Assetinfo | 1.6 |

## Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and Inspections | 2.7 |
| 208 | Disclosure of Information | 2.7 |
| 209 | Maintenance of Records | 2.7 |
| 210 | Quality Control | 2.8 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201  Specific Representations, Warranties and Covenants Concerning Client  .2A.2
A202  Specific Representations, Warranties and Covenants Concerning
     Individual Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203  Additional Client Representations, Warranties and Covenants for the
     Home Equity Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A206  Integrity of Information  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A208  Events of Default  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.22
A210  Repurchase  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.23
A211  Disqualification Suspension or Inactivation  . . . . . . . . . . . . . . . . . . . .2A.28
A212  Indemnification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A213  Right of Set-Off  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A214  Merger or Consolidation of Client  . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A215  Notification of Changes in Client Status  . . . . . . . . . . . . . . . . . . . . . .2A.30

**GMAC-RFC**

# Chapter 3, Loan Eligibility

| | | |
|---|---|---|
| 300 | Loan Seasoning | 3.1 |
| 301 | Occupancy Types | 3.1 |
| 302 | Borrower Types | 3.2 |
| 303 | Required Signatures | 3.4 |
| 304 | Multiple Loans to One Borrower | 3.4 |
| 305 | Ownership Interests | 3.5 |
| 306 | Arm's Length and Non-Arm's Length Transactions | 3.9 |
| 307 | Transaction Types | 3.9 |
| 308 | Inherited Properties | 3.17 |
| 309 | Determining Amount to Be Financed | 3.18 |
| 310 | Calculating Loan-to-Value Ratios | 3.18 |
| 311 | Secondary or Subordinate Financing | 3.21 |
| 312 | Sales Concessions or Home-seller Subsidy | 3.22 |
| 313 | Note Requirements | 3.22 |
| 314 | Loan Documents | 3.25 |
| 315 | Escrow Issues | 3.28 |
| 316 | Temporary Buydowns | 3.29 |
| 317 | Current Payment History | 3.30 |
| 318 | Property Issues | 3.30 |
| 319 | Texas Equity Loans | 3.31 |
| 320 | Eligible Property Types | 3.34 |
| 321 | Ineligible Property Types | 3.39 |
| 322 | Project Requirements for Warrantable Condominiums and PUDs | 3.39 |
| 323 | Insurance Requirements | 3.45 |
| 324 | Survey Requirements | 3.59 |

**GMAC-RFC**

# Chapter 4, Underwriting

| | | |
|---|---|---|
| 400 | Underwriting | 4.1 |
| 401 | Client Underwriting Responsibility | 4.1 |
| 402 | GMAC-RFC Underwriting Review | 4.2 |
| 403 | Loan Application Analysis | 4.2 |
| 404 | Credit Report Requirements | 4.3 |
| 405 | Credit Score Requirements | 4.3 |
| 406 | Selecting Credit Score | 4.4 |
| 407 | Minimum Credit History | 4.4 |
| 408 | Credit Evaluation Overview | 4.5 |
| 409 | Credit Evaluation Components | 4.5 |
| 410 | Upgrading the Credit Grade | 4.12 |
| 411 | Borrower's Liabilities | 4.16 |
| 412 | Debt Payoff | 4.16 |
| 413 | Co-Signed Debt | 4.16 |
| 414 | Divorce Debt | 4.17 |
| 415 | Business Debt | 4.17 |
| 416 | Borrower Capacity | 4.17 |
| 417 | Student Loan | 4.17 |
| 418 | Qualifying Ratios—Payment | 4.18 |
| 419 | Electronic Documentation Standards | 4.19 |
| 420 | Borrower Income | 4.19 |
| 421 | Income Types | 4.20 |
| 422 | Wage Earners | 4.21 |
| 423 | Self-Employed Income | 4.21 |
| 424 | Fixed Income | 4.23 |
| 425 | Rental Income | 4.24 |
| 426 | Other Income | 4.26 |
| 427 | Employment and Income Analysis | 4.27 |
| 428 | Income Documentation | 4.28 |
| 429 | Full Income Documentation Requirements | 4.29 |
| 430 | Lite Income Documentation Requirements | 4.31 |
| 431 | One Paystub Income Documentation Requirements | 4.31 |
| 432 | Fast Income Documentation Requirements | 4.32 |
| 433 | Stated Income Documentation Requirements | 4.35 |
| 434 | Stated Income/Stated Asset Documentation Requirements | 4.36 |
| 435 | No Ratio Documentation Requirements | 4.38 |
| 436 | No Income/No Asset Documentation Requirements | 4.40 |
| 437 | Trailing or Relocating Co-Borrower | 4.41 |
| 440 | Cash to Close | 4.41 |
| 441 | Collateral Property Underwriting | 4.46 |
| 442 | Appraiser Requirements | 4.46 |
| 443 | Appraisal Requirements | 4.47 |
| 444 | Appraisal Evaluation | 4.50 |
| 445 | Additional Review Considerations | 4.60 |

**GMAC-RFC**

# Chapter 4A, Assetwise

A400   **Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
A401   **Client Responsibilities and Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
A402   **Assetwise Approvals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.2**
A403   **Delivery Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.3**
A404   **Assetwise Documentation Set** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.3**

# Chapter 5, Products

500   **Product Descriptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.1**
501   **Fixed-Rate Mortgages (FRM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.3**
502   **Adjustable Rate Mortgages (ARM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.6**
503   **Balloon Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.58**

# Chapter 6, Loan Programs

600   **Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.1**

# Chapter 6A, Jumbo A Loan Program

A600   **Jumbo A Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A601   **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A602   **Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.12**
A603   **EasyFi or Streamline Refinance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.14**

**GMAC-RFC**

# Chapter 6B, Expanded Criteria Loan Program

B600  Expanded Criteria Program ................................................. 6B.1
B601  Eligibility Standards .................................................... 6B.1
B602  Stated Income Documentation ............................................ 6B.17
B603  Stated Income/ Stated Asset Documentation ...................... 6B.21
B604  No Ratio Documentation ................................................ 6B.23
B605  No Income/ No Asset Documentation ............................ 6B.27
B606  Uninsured LTV .......................................................... 6B.29

# Chapter 6C, 100% Combo Loan Program

C600  100% Combo Loan Program ................................................. 6C.1
C601  Eligibility Standards .................................................... 6C.1

# Chapter 6D, Home Solution Loan Program

D600  Home Solution Program .................................................. 6D.1
D601  Eligibility Standards .................................................... 6D.1

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600  AlterNet/ Credit Gap Program ......................................... 6E.1
E601  Eligibility Standards .................................................... 6E.1

# Chapter 6F, Performance Loan Program

F600  Performance Loan Program ............................................. 6F.1
F601  Eligibility Standards .................................................... 6F.1

**GMAC-RFC**

# Chapter 6G, Home Equity Loan Program

**G600  Home Equity Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G602  Supplemental Home Equity Information** . . . . . . . . . . . . . . . . . . . . . . . .6G.14
**G603  Home Equity Program Goal Line Product Description** . . . . . . . . . . . . . .6G.16
**G604  Home Equity Program Goal Loan Description** . . . . . . . . . . . . . . . . . . . .6G.20

# Chapter 6H, 125 CLTV Loan Program

**H600  125 CLTV Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H602  Supplemental 125 CLTV Program Information** . . . . . . . . . . . . . . . . . . . .6H.15

# Chapter 6I, Non-Standard Loan Program

**I600  Non-Standard Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
**I601  Ineligible Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1

# Chapter 7, At-A-Glances

**700   Program At-A-Glances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7.1

**GMAC-RFC**

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Servicing Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

**GMAC-RFC**

# Chapter 9, Commitment and Delivery

900   Commitment and Delivery—First Mortgage Product . . . . . . . . . . . . . . . . . . 9.1
901   Commitment Rate, Fee and Price Information . . . . . . . . . . . . . . . . . . . . . . 9.1
902   Authorized Rates and Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
903   Electronic Loan Data Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
904   Wire Transfer Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
905   Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.2
906   Best Efforts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.3
907   Commitment Rate and Price Information . . . . . . . . . . . . . . . . . . . . . . . . . 9.3
908   Best Efforts Delivery Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . 9.4
909   Best Efforts Servicing Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.5
910   Commitment Amounts and Variance . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.5
911   Ordering Best Efforts Delivery Commitment . . . . . . . . . . . . . . . . . . . . . . 9.6
912   Mandatory Delivery Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
913   Mandatory Delivery Servicing Options . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
914   Commitment Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.7
915   Ordering Mandatory Delivery Commitments . . . . . . . . . . . . . . . . . . . . . . 9.8
916   Delivery Under Mandatory Delivery Commitment . . . . . . . . . . . . . . . . . . 9.8
917   Corrections and Substitutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.9
918   Buyouts and Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.9
919   Over-Delivery Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.10
920   Mandatory Delivery Commitment Expirations . . . . . . . . . . . . . . . . . . . . 9.10
921   Transferability of Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.10
922   Delivery for Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
923   Submission of Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
924   Required Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.11
925   Required Servicing Documents for First Mortgage Deliveries . . . . . . . . . 9.15
926   Obligation to Sell Upon Submission of Funding Documents . . . . . . . . . . 9.15
927   Loan Purchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.15
928   Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.16
929   Funding Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.16
930   Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.18
931   Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.19
932   Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.19
933   Failure to Comply with GMAC-RFC Remittance Requirements . . . . . . . . 9.20
934   Final Document Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.21
935   Submission of Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.21
936   Required Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.22
937   Extensions for Final Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.22
938   Request for Additional Documentation . . . . . . . . . . . . . . . . . . . . . . . . . 9.23
939   Commitment and Delivery Registration for Goal Lines of Credit . . . . . . . 9.23
940   Commitment and Delivery Registration for Goal Loan and 125 CLTV Closed-End
      Second Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.26
941   Assetinfo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.30
942   MERS Loan Registration, Transfer and Delivery Requirements . . . . . . . . 9.30

**GMAC-RFC**

# Chapter 10, Definitions

# Chapter 11, Forms & Exhibits

**1110  GMAC-RFC Forms & Exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11.1**



# 2A
Page 2A.2 **GMAC-RFC**

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client and, in any event, Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**

Page 2A.3

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

**(D) No Conflicts**

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

**(E) Ability to Perform**

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

**(F) No Litigation Pending**

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

**(G) No Consent Required**

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

**(H) No Untrue Information**

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



**2A**
Page 2A.4
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

### (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

### (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

### (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**

Page 2A.7

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) Discontinued Loan**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

(a) HOEPA/Section 32

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

(b) Purchase Money Loans with High Points or Fees

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A
Page 2A.8

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

(c) Home Equity Lines of Credit That Exceed the HOEPA Triggers

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

(d) State and Local High Cost Loans

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any state or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

(e) Certain Georgia Home Loans

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

(f) Certain New Jersey Home Loans

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

(g) Certain New Mexico Home Loans

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

---

**GMAC-RFC**

**2A**
Page 2A.9
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(2) Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3) Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

  • The penalty may be enforced for only the first five years following consummation;

  • The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

  • The prepayment penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default**. A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**(Q) No Adverse Circumstances**

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

## (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

## (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, (a) The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide, and (b) as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/ beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

### (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**
Page 2A.13
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

### (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

### (AA) Condominiums; **Planned Unit Development**s (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

### (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

### (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

### (DD) Client and Originators

- If the Client sells Jumbo A or Expanded Criteria Loans to GMAC-RFC, the Client is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or state authority or a **HUD** approved non-supervised mortgagee.

- Each Jumbo A and Expanded Criteria Loan was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or a HUD approved non-supervised mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator") or (iii) closed in the name of the loan broker.

- All Loans closed in the name of a loan broker (including but not limited to Jumbo A and Expanded Criteria Loans) were originated under the circumstances described in the following sentence: If the Loan was originated through a loan broker, the originator approved the Loan prior to funding by the loan broker and the originator acquired the Loan from the loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

### (EE) No Impairment of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.



**2A**
Page 2A.14
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(FF) Temporary Buydowns**

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3** of this Client Guide.

**(GG) Primary Mortgage Insurance Cancellation**

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

**(HH) No Deficiency In Escrow Deposits or Payments**

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

**(II) Loan Securitization**

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

**(JJ) Non-Solicitation**

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**GMAC-RFC**

**2A**
Page 2A.15
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

## (LL) Exclusionary List

No party involved in the origination of a Loan, including without limitation the originator, broker, title company or appraiser, was named on the version of the **Exclusionary List** that was effective on the date of the promissory Note for that particular Loan.

## A203

### Additional Client Representations, Warranties and Covenants for the Home Equity Loan Program

The Home Equity Loan Program adheres to the Client representations, warranties and covenants stated below as well as the representations, warranties and covenants contained in this Client Guide.

Unless the Home Equity Loan is a valid first lien on the **Mortgaged Premises**, the following representation and warranty applies:

Valid Second Lien

Each **Security Instrument** transferred to GMAC-RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments described in the **Title Insurance** Section of this Chapter. No such impediment shall adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises.

The following additional representations and warranties are made by the Client to GMAC-RFC as of the **Purchase Date** of each Home Equity Loan:

## (A) Licensing

The Client and any agents or correspondents originating for the Client have obtained all licenses and approvals required with respect to the origination of the Home Equity Loans, including, to the extent applicable, licenses and approvals required for small Loans or small advances and licenses and approvals required to charge the maximum interest rate allowable under State law.

## (B) No Contractor or Dealer Loans

No home improvement contractor or dealer was involved as a third party originator of a Home Equity Loan or received compensation in any form from the Client.

## (C) No Borrower Defenses or Claims

No unresolved defense or claim has been made or asserted in writing by the Borrower with respect to the Home Equity Loan, including, without limitation, any defenses or claims based on unsatisfactory workmanship or materials in connection with any home improvements financed with the proceeds of the Home Equity Loan.

**GMAC-RFC**

**2A**
Page 2A.19
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A205

### Proof of Compliance

The Client will, upon the request of GMAC-RFC, supply proof satisfactory to GMAC-RFC of its:

(1) Compliance with all representations and warranties contained in this Client Guide, and

(2) Compliance with all local, State and federal laws, rules and regulations.

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

**GMAC-RFC**

**2A**
Page 2A.21
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A

**GMAC-RFC**

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A209

### Remedies of GMAC-RFC

**(A) Non-Exclusive, Cumulative Remedies**

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same Event of Default

- Any other rights which it may have at law or in equity

**(B) Waiver of Defaults**

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

**(C) Survival of Remedies**

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.23
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



# 2A
Page 2A.24

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of **Chapter 9** of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**

Page 2A.25
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## ( C) Repurchase Price of Home Equity Loan Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



# 2A
Page 2A.26 **GMAC-RFC**

10/18/04
Client Guide
**Representations,**
**Warranties and**
**Covenants**

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Premium** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Premium be greater than the original Servicing Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.27
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(G) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**

Page 2A.29

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-6

# *Client Guide*

# GMAC RFC

**Version 1-05-G01**

**©2005 Residential Funding Corporation. All rights reserved.**

**GMAC-RFC**

## Table of Contents

# Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | Headings, Use of Capitalization and Definitions | 1.4 |
| 111 | Form & Exhibit Numbering | 1.4 |
| 112 | Client Guide Online | 1.4 |
| 113 | General Rules of Interpretation | 1.4 |
| 114 | Use of Client's Name | 1.5 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.6 |
| 116 | Assetinfo | 1.6 |

# Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and Inspections | 2.7 |
| 208 | Disclosure of Information | 2.7 |
| 209 | Maintenance of Records | 2.7 |
| 210 | Quality Control | 2.8 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201  Specific Representations, Warranties and Covenants
      Concerning Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.2
A202  Specific Representations, Warranties and Covenants
      Concerning Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203  Additional Client Representations, Warranties and Covenants
      for the Home Equity Loan Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A206  Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A208  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.22
A210  Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.23
A211  Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . . . .2A.28
A212  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A213  Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A214  Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A215  Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A216  Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.31

**GMAC-RFC**

# Chapter 3, Loan Eligibility

| | | |
|---|---|---|
| 300 | Loan Seasoning | 3.1 |
| 301 | Occupancy Types | 3.1 |
| 302 | Borrower Types | 3.2 |
| 303 | Required Signatures | 3.4 |
| 304 | Multiple Loans to One Borrower | 3.4 |
| 305 | Ownership Interests | 3.5 |
| 306 | Arm's Length and Non-Arm's Length Transactions | 3.9 |
| 307 | Transaction Types | 3.9 |
| 308 | Inherited Properties | 3.17 |
| 309 | Determining Amount to Be Financed | 3.18 |
| 310 | Calculating Loan-to-Value Ratios | 3.18 |
| 311 | Secondary or Subordinate Financing | 3.21 |
| 312 | Sales Concessions or Home-seller Subsidy | 3.22 |
| 313 | Note Requirements | 3.22 |
| 314 | Loan Documents | 3.25 |
| 315 | Escrow Issues | 3.29 |
| 316 | Temporary Buydowns | 3.30 |
| 317 | Current Payment History | 3.32 |
| 318 | Property Issues | 3.32 |
| 319 | Texas Equity Loans | 3.32 |
| 320 | Eligible Property Types | 3.35 |
| 321 | Ineligible Property Types | 3.40 |
| 322 | Project Requirements for Warrantable Condominiums and PUDs | 3.40 |
| 323 | Insurance Requirements | 3.46 |
| 324 | Survey Requirements | 3.60 |

**GMAC-RFC**

# Chapter 4, Underwriting

| | | |
|---|---|---|
| **400** | **Underwriting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.1** |
| **401** | **Client Underwriting Responsibility** . . . . . . . . . . . . . . . . . . . . . . . | **4.1** |
| **402** | **GMAC-RFC Underwriting Review** . . . . . . . . . . . . . . . . . . . . . . . . . | **4.2** |
| **403** | **Loan Application Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.2** |
| **404** | **Credit Report Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.3** |
| **405** | **Credit Score Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.3** |
| **406** | **Selecting Credit Score** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.4** |
| **407** | **Minimum Credit History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.4** |
| **408** | **Credit Evaluation Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.5** |
| **409** | **Credit Evaluation Components** . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.5** |
| **410** | **Upgrading the Credit Grade** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.11** |
| **411** | **Borrower's Liabilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.15** |
| **412** | **Debt Payoff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.15** |
| **413** | **Co-Signed Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.15** |
| **414** | **Divorce Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **415** | **Business Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **416** | **Borrower Capacity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **417** | **Student Loan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **418** | **Qualifying Ratios—Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **419** | **Electronic Documentation Standards** . . . . . . . . . . . . . . . . . . . . | **4.18** |
| **420** | **Borrower Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.19** |
| **421** | **Income Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.19** |
| **422** | **Wage Earners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.19** |
| **423** | **Self-Employed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.20** |
| **424** | **Fixed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.22** |
| **425** | **Rental Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.23** |
| **426** | **Other Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.25** |
| **427** | **Employment and Income Analysis** . . . . . . . . . . . . . . . . . . . . . . | **4.26** |
| **428** | **Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.27** |
| **429** | **Full Income Documentation Requirements** . . . . . . . . . . . . . . . | **4.28** |
| **430** | **Lite Income Documentation Requirements** . . . . . . . . . . . . . . . | **4.31** |
| **431** | **One Paystub Income Documentation Requirements** . . . . . . . . | **4.31** |
| **432** | **Fast Income Documentation Requirements** . . . . . . . . . . . . . . . | **4.32** |
| **433** | **Stated Income Documentation Requirements** . . . . . . . . . . . . . | **4.35** |
| **434** | **Stated Income/Stated Asset Documentation Requirements** . . . | **4.36** |
| **435** | **No Ratio Documentation Requirements** . . . . . . . . . . . . . . . . . . | **4.38** |
| **436** | **No Income/No Asset Documentation Requirements** . . . . . . . . . | **4.39** |
| **437** | **Trailing or Relocating Co-Borrower** . . . . . . . . . . . . . . . . . . . . . | **4.40** |
| **440** | **Cash to Close** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.41** |
| **441** | **Collateral Property Underwriting** . . . . . . . . . . . . . . . . . . . . . . . | **4.46** |
| **442** | **Appraiser Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.46** |
| **443** | **Appraisal Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.47** |
| **444** | **Appraisal Evaluation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.50** |
| **445** | **Additional Review Considerations** . . . . . . . . . . . . . . . . . . . . . . | **4.60** |

**GMAC-RFC**

# Chapter 4A, Electronic Services

A400   Overview and Incorporation of Terms of Use . . . . . . . . . . . . . . . . . . . . . 4A.1
A401   Assetwise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.2
A402   Assetwise Compliance Engine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.5

# Chapter 5, Products

500   Product Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1
501   Fixed-Rate Mortgages (FRM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.3
502   Adjustable Rate Mortgages (ARM) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.6
503   Balloon Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.61
504   1st Lien Line of Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.62

# Chapter 6, Loan Programs

600   Loan Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1

# Chapter 6A, Jumbo A Loan Program

A600   Jumbo A Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A602   Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.12
A603   EasyFi or Streamline Refinance . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.14

**GMAC-RFC**

# Chapter 6B, Expanded Criteria Loan Program

B600  **Expanded Criteria Program** ...................................... 6B.1
B601  **Eligibility Standards** .......................................... 6B.1
B602  **Stated Income Documentation** .................................. 6B.16
B603  **Stated Income/Stated Asset Documentation** ...................... 6B.20
B604  **No Ratio Documentation** ....................................... 6B.22
B605  **No Income/No Asset Documentation** ............................. 6B.26
B606  **Uninsured LTV** ................................................ 6B.28

# Chapter 6C, 100% Combo Loan Program

C600  **100% Combo Loan Program** ...................................... 6C.1
C601  **Eligibility Standards** ........................................ 6C.1

# Chapter 6D, Home Solution Loan Program

D600  **Home Solution Program** ........................................ 6D.1
D601  **Eligibility Standards** ........................................ 6D.1

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600  **AlterNet/Credit Gap Program** .................................. 6E.1
E601  **Eligibility Standards** ........................................ 6E.1

# Chapter 6F, Performance Loan Program

F600  **Performance Loan Program** ..................................... 6F.1
F601  **Eligibility Standards** ........................................ 6F.1

**GMAC-RFC**

# Chapter 6G, 1st Lien Line of Credit Loan Program

**G600  1st Lien Line of Credit Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G602  Supplemental 1st Lien Line of Credit Information** . . . . . . . . . . . . . . . . .6G.11

# Chapter 6H, Home Equity Loan Program

**H600  Home Equity Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H602  Supplemental Home Equity Information** . . . . . . . . . . . . . . . . . . . . . . . .6H.15
**H603  Home Equity Program Goal Line Product Description** . . . . . . . . . . . . . .6H.17
**H604  Home Equity Program Goal Loan Description** . . . . . . . . . . . . . . . . . . . .6H.21

# Chapter 6I, 125 CLTV Loan Program

**I600   125 CLTV Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
**I601   Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
**I602   Supplemental 125 CLTV Program Information** . . . . . . . . . . . . . . . . . . . 6I.15

# Chapter 6J, Non-Standard Loan Program

**J600   Non-Standard Loan Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
**J601   Ineligible Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 7, At-A-Glances

**700   Program At-A-Glances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

**GMAC-RFC**

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Servicing Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.17 |
| 828 | Subservicing Election | 8.18 |

**GMAC-RFC**

# Chapter 9, Commitment and Delivery

| | | |
|---|---|---|
| 900 | Commitment and Delivery—First Mortgage Product | 9.1 |
| 901 | Commitment Rate, Fee and Price Information | 9.1 |
| 902 | Authorized Rates and Prices | 9.1 |
| 903 | Electronic Loan Data Delivery | 9.1 |
| 904 | Wire Transfer Authorization | 9.2 |
| 905 | Notification of Wire Transfer | 9.2 |
| 906 | Best Efforts | 9.3 |
| 907 | Commitment Rate and Price Information | 9.3 |
| 908 | Best Efforts Delivery Commitment Periods | 9.4 |
| 909 | Best Efforts Servicing Options | 9.5 |
| 910 | Commitment Amounts and Variance | 9.5 |
| 911 | Ordering Best Efforts Delivery Commitment | 9.6 |
| 912 | Mandatory Delivery Commitments | 9.7 |
| 913 | Mandatory Delivery Servicing Options | 9.7 |
| 914 | Commitment Amounts | 9.7 |
| 915 | Ordering Mandatory Delivery Commitments | 9.8 |
| 916 | Delivery Under Mandatory Delivery Commitment | 9.8 |
| 917 | Corrections and Substitutions | 9.9 |
| 918 | Buyouts and Extensions | 9.9 |
| 919 | Over-Delivery Procedures | 9.10 |
| 920 | Mandatory Delivery Commitment Expirations | 9.10 |
| 921 | Transferability of Commitments | 9.10 |
| 922 | Delivery for Funding | 9.11 |
| 923 | Submission of Funding Documents | 9.11 |
| 924 | Required Funding Documents | 9.11 |
| 925 | Required Servicing Documents for First Mortgage Deliveries | 9.15 |
| 926 | Obligation to Sell Upon Submission of Funding Documents | 9.15 |
| 927 | Loan Purchase | 9.15 |
| 928 | Wire Transfer Process | 9.16 |
| 929 | Funding Amount | 9.16 |
| 930 | Notification of Wire Transfer | 9.18 |
| 931 | Payoff Prior to Funding Date | 9.19 |
| 932 | Loans Paid in Full | 9.19 |
| 933 | Failure to Comply with GMAC-RFC Remittance Requirements | 9.20 |
| 934 | Final Document Delivery | 9.21 |
| 935 | Submission of Final Documents | 9.21 |
| 936 | Required Final Documents | 9.22 |
| 937 | Extensions for Final Delivery | 9.22 |
| 938 | Request for Additional Documentation | 9.23 |
| 939 | Commitment and Delivery Registration for 1st Lien Lines of Credit | 9.23 |
| 940 | Commitment and Delivery Registration for Goal Lines of Credit | 9.27 |
| 941 | Commitment and Delivery Registration for Goal Loan and 125 CLTV Closed-End Second Mortgages | 9.29 |
| 942 | Assetinfo | 9.33 |
| 943 | MERS Loan Registration, Transfer and Delivery Requirements | 9.33 |

**GMAC-RFC**

# Chapter 10, Definitions

# Chapter 11, Forms & Exhibits

**1100  GMAC-RFC Forms & Exhibits**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11.1**

# 2A

Page 2A.2  **GMAC-RFC**

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client and, in any event, Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

### (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

### (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

### (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

### (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

### (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



# 2A GMAC-RFC

Page 2A.4
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6 **GMAC-RFC**

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(E) Ownership; Transfer**

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

**(F) Disbursements; No Payoffs or Future Advancements**

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

**(G) No Default**

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

**(H) No Defenses**

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

# GMAC-RFC

**(I)  Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J)  Responsible Lending Representations, Warranties and Covenants**

**(1)  Discontinued Loan**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a)  HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b)  Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



**2A**
Page 2A.8
01/01/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any state or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**
Page 2A.9
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(2)  Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3)  Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a)  **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b)  **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The prepayment penalty does not become due upon default

(c)  **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d)  **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**(Q) No Adverse Circumstances**

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, (a) The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide, and (b) as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12

**GMAC-RFC**

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

### (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**
Page 2A.13
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

## (AA) Condominiums; Planned Unit Developments (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

## (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

## (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

## (DD) Client and Originators

- If the Client sells Jumbo A or Expanded Criteria Loans to GMAC-RFC, the Client is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or state authority or a **HUD** approved non-supervised mortgagee.

- Each Jumbo A and Expanded Criteria Loan was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or a HUD approved non-supervised mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator") or (iii) closed in the name of the loan broker.

- All Loans closed in the name of a loan broker (including but not limited to Jumbo A and Expanded Criteria Loans) were originated under the circumstances described in the following sentence: If the Loan was originated through a loan broker, the originator approved the Loan prior to funding by the loan broker and the originator acquired the Loan from the loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

## (EE) No Impairment of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.



# 2A GMAC-RFC

Page 2A.14
10/18/04
Client Guide
Representations,
Warranties and
Covenants

### (FF) Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3** of this Client Guide.

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**GMAC-RFC**

**2A**

Page 2A.15

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

**(KK) No Fraud or Misrepresentation**

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

**(LL) Exclusionary List**

No party involved in the origination of a Loan, including without limitation the originator, broker, title company or appraiser, was named on the version of the **Exclusionary List** that was effective on the date of the promissory Note for that particular Loan.

## A203

### Additional Client Representations, Warranties and Covenants for the Home Equity Loan Program

The Home Equity Loan Program adheres to the Client representations, warranties and covenants stated below as well as the representations, warranties and covenants contained in this Client Guide.

Unless the Home Equity Loan is a valid first lien on the **Mortgaged Premises**, the following representation and warranty applies:

Valid Second Lien

Each **Security Instrument** transferred to GMAC-RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments described in the **Title Insurance** Section of this Chapter. No such impediment shall adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises.

The following additional representations and warranties are made by the Client to GMAC-RFC as of the **Purchase Date** of each Home Equity Loan:

**(A) Licensing**

The Client and any agents or correspondents originating for the Client have obtained all licenses and approvals required with respect to the origination of the Home Equity Loans, including, to the extent applicable, licenses and approvals required for small Loans or small advances and licenses and approvals required to charge the maximum interest rate allowable under State law.

**(B) No Contractor or Dealer Loans**

No home improvement contractor or dealer was involved as a third party originator of a Home Equity Loan or received compensation in any form from the Client.

**(C) No Borrower Defenses or Claims**

No unresolved defense or claim has been made or asserted in writing by the Borrower with respect to the Home Equity Loan, including, without limitation, any defenses or claims based on unsatisfactory workmanship or materials in connection with any home improvements financed with the proceeds of the Home Equity Loan.

**GMAC-RFC**

**2A**
Page 2A.19
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A205

### Proof of Compliance

The Client will, upon the request of GMAC-RFC, supply proof satisfactory to GMAC-RFC of its:

(1) Compliance with all representations and warranties contained in this Client Guide, and

(2) Compliance with all local, State and federal laws, rules and regulations.

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

**GMAC-RFC**

**2A**
Page 2A.21
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A208

## Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A
Page 2A.22 **GMAC-RFC**

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A209

### Remedies of GMAC-RFC

#### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same Event of Default

- Any other rights which it may have at law or in equity

#### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

#### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.23
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A210

### Repurchase

**(A) Repurchase Obligations**

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



# 2A
Page 2A.24 **GMAC-RFC**

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of **Chapter 9** of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**

Page 2A.25

01/01/05

Client Guide

**Representations,
Warranties and
Covenants**

### (C) Repurchase Price of Home Equity Loan Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliates** is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



# 2A
Page 2A.26  **GMAC-RFC**

01/01/05
Client Guide
**Representations,
Warranties and
Covenants**

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.27
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(G) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

# GMAC-RFC

**2A**
Page 2A.29
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-7

# *Client Guide*

# GMAC RFC

**Version 1-05-G02**

©2005 Residential Funding Corporation. All rights reserved.

**GMAC-RFC**

## Table of Contents

# Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client I D Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | Headings, Use of Capitalization and Definitions | 1.4 |
| 111 | Form & Exhibit Numbering | 1.4 |
| 112 | Client Guide Online | 1.4 |
| 113 | General Rules of Interpretation | 1.4 |
| 114 | Use of Client's Name | 1.5 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.6 |
| 116 | Assetinfo | 1.6 |

# Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and Inspections | 2.7 |
| 208 | Disclosure of Information | 2.7 |
| 209 | Maintenance of Records | 2.7 |
| 210 | Quality Control | 2.8 |

**GMAC-RFC**

# Chapter 3, Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201  Specific Representations, Warranties and Covenants
  Concerning Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.2
A202  Specific Representations, Warranties and Covenants
  Concerning Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203  Additional Client Representations, Warranties and Covenants
  for the Home Equity Loan Program . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A206  Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A208  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.22
A210  Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.23
A211  Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . .2A.28
A212  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A213  Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A214  Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A215  Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . .2A.30
A216  Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.31

**GMAC-RFC**

# Chapter 3, Loan Eligibility

**300**   Loan Seasoning  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.1
**301**   Occupancy Types  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.1
**302**   Borrower Types  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.2
**303**   Required Signatures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.4
**304**   Multiple Loans to One Borrower  . . . . . . . . . . . . . . . . . . . . . . . . . . 3.4
**305**   Ownership Interests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.5
**306**   Arm's Length and Non-Arm's Length Transactions  . . . . . . . . . . . . . . 3.9
**307**   Transaction Types  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.9
**308**   Inherited Properties  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.17
**309**   Determining Amount to Be Financed  . . . . . . . . . . . . . . . . . . . . . . 3.18
**310**   Calculating Loan-to-Value Ratios  . . . . . . . . . . . . . . . . . . . . . . . . 3.18
**311**   Secondary or Subordinate Financing  . . . . . . . . . . . . . . . . . . . . . . 3.21
**312**   Sales Concessions or Home-seller Subsidy  . . . . . . . . . . . . . . . . . . 3.22
**313**   Note Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.22
**314**   Loan Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.25
**315**   Escrow Issues  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.29
**316**   Temporary Buydowns  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.30
**317**   Current Payment History  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.32
**318**   Property Issues  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.32
**319**   West Virginia Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.32
**320**   Texas Equity Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.32
**321**   Eligible Property Types  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.36
**322**   Ineligible Property Types  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.40
**323**   Project Requirements for Warrantable Condominiums and PUDs  . . . . . 3.41
**324**   Insurance Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.47
**325**   Survey Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.62

**GMAC-RFC**

# Chapter 4, Underwriting

**400**  Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1
**401**  Client Underwriting Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1
**402**  GMAC-RFC Underwriting Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
**403**  Loan Application Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
**404**  Credit Report Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.3
**405**  Credit Score Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.3
**406**  Selecting Credit Score . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.4
**407**  Minimum Credit History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.4
**408**  Credit Evaluation Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.5
**409**  Credit Evaluation Components . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.5
**410**  Upgrading the Credit Grade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.11
**411**  Borrower's Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.15
**412**  Debt Payoff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.15
**413**  Co-Signed Debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.15
**414**  Divorce Debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.16
**415**  Business Debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.16
**416**  Borrower Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.16
**417**  Student Loan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.16
**418**  Qualifying Ratios—Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.17
**419**  Electronic Documentation Standards . . . . . . . . . . . . . . . . . . . . . . . . 4.18
**420**  Borrower Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.19
**421**  Income Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.19
**422**  Wage Earners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.19
**423**  Self-Employed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.20
**424**  Fixed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.22
**425**  Rental Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.23
**426**  Other Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.25
**427**  Employment and Income Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . 4.26
**428**  Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.27
**429**  Full Income Documentation Requirements . . . . . . . . . . . . . . . . . . 4.28
**430**  Lite Income Documentation Requirements . . . . . . . . . . . . . . . . . . . 4.31
**431**  One Paystub Income Documentation Requirements . . . . . . . . . . . 4.31
**432**  Fast Income Documentation Requirements . . . . . . . . . . . . . . . . . . 4.32
**433**  Stated Income Documentation Requirements . . . . . . . . . . . . . . . . 4.35
**434**  Stated Income/Stated Asset Documentation Requirements . . . . . 4.36
**435**  No Ratio Documentation Requirements . . . . . . . . . . . . . . . . . . . . . 4.38
**436**  No Income/No Asset Documentation Requirements . . . . . . . . . . . 4.39
**437**  Trailing or Relocating Co-Borrower . . . . . . . . . . . . . . . . . . . . . . . . 4.40
**440**  Cash to Close . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.41
**441**  Collateral Property Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . 4.46
**442**  Appraiser Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.46
**443**  Appraisal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.47
**444**  Appraisal Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.50
**445**  Additional Review Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . 4.60

**GMAC-RFC**

# Chapter 4A, Electronic Services

A400  **Overview and Incorporation of Terms of Use** . . . . . . . . . . . . . . . . . . . . . . **4A.1**
A401  **Assetwise** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.2**
A402  **Assetwise Compliance Engine** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.5**

# Chapter 5, Products

500  **Product Descriptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.1**
501  **Fixed-Rate Mortgages (FRM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.3**
502  **Adjustable Rate Mortgages (ARM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.6**
503  **Balloon Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.61**
504  **1st Lien Line of Credit** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.62**

# Chapter 6, Loan Programs

600  **Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.1**

# Chapter 6A, Jumbo A Loan Program

A600  **Jumbo A Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A601  **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
A602  **Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.12**
A603  **EasyFi or Streamline Refinance** . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.14**

# Chapter 6B, Expanded Criteria Loan Program

B600  **Expanded Criteria Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.1**
B601  **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.1**
B602  **Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.16**
B603  **Stated Income/Stated Asset Documentation** . . . . . . . . . . . . . . . **6B.20**
B604  **No Ratio Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.22**
B605  **No Income/No Asset Documentation** . . . . . . . . . . . . . . . . . . . . . . **6B.26**
B606  **Uninsured LTV** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.28**

**GMAC-RFC**

# Chapter 6C, 100% Combo Loan Program

C600  100% Combo Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
C601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1

# Chapter 6D, Home Solution Loan Program

D600  Home Solution Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1
D601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600  AlterNet/Credit Gap Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1

# Chapter 6F, Performance Loan Program

F600  Performance Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1
F601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1

# Chapter 6G, 1st Lien Line of Credit Loan Program

G600  1st Lien Line of Credit Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
G601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
G602  Supplemental 1st Lien Line of Credit Information  . . . . . . . . . . . . . . . . . 6G.11

# Chapter 6H, Home Equity Loan Program

H600  Home Equity Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H602  Supplemental Home Equity Information . . . . . . . . . . . . . . . . . . . . . . . .6H.15
H603  Home Equity Program Goal Line Product Description . . . . . . . . . . . . . . .6H.17
H604  Home Equity Program Goal Loan Description  . . . . . . . . . . . . . . . . . . . . .6H.21

# Chapter 6I, 125 CLTV Loan Program

I600  125 CLTV Loan Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I602  Supplemental 125 CLTV Program Information  . . . . . . . . . . . . . . . . . . . 6I.15

# Chapter 6J, Non-Standard Loan Program

J600  Non-Standard Loan Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
J601  Ineligible Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 7, At-A-Glances

700  Program At-A-Glances  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7.1

Page 8
04/01/05
Client Guide
**Table of Contents**

**GMAC-RFC**

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Servicing Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.17 |
| 828 | Subservicing Election | 8.18 |

# Chapter 9, Commitment and Delivery

| | | |
|---|---|---|
| 900 | Commitment and Delivery—First Mortgage Product | 9.1 |
| 901 | Commitment Rate, Fee and Price Information | 9.1 |
| 902 | Authorized Rates and Prices | 9.2 |
| 903 | Electronic Loan Data Delivery | 9.2 |
| 904 | Wire Transfer Authorization | 9.2 |
| 905 | Notification of Wire Transfer | 9.3 |
| 906 | Best Efforts | 9.3 |
| 907 | Commitment Rate and Price Information | 9.3 |
| 908 | Best Efforts Delivery Commitment Periods | 9.4 |
| 909 | Best Efforts Servicing Options | 9.5 |
| 910 | Commitment Amounts and Variance | 9.5 |
| 911 | Ordering Best Efforts Delivery Commitment | 9.6 |
| 912 | Mandatory Delivery Commitments | 9.7 |
| 913 | Mandatory Delivery Servicing Options | 9.7 |
| 914 | Commitment Amounts | 9.7 |
| 915 | Ordering Mandatory Delivery Commitments | 9.8 |
| 916 | Delivery Under Mandatory Delivery Commitment | 9.8 |
| 917 | Corrections and Substitutions | 9.9 |
| 918 | Buyouts and Extensions | 9.9 |
| 919 | Over-Delivery Procedures | 9.10 |
| 920 | Mandatory Delivery Commitment Expirations | 9.10 |
| 921 | Transferability of Commitments | 9.10 |
| 922 | Delivery for Funding | 9.11 |
| 923 | Submission of Funding Documents | 9.11 |
| 924 | Required Funding Documents | 9.11 |
| 925 | Required Servicing Documents for First Mortgage Deliveries | 9.15 |
| 926 | Obligation to Sell Upon Submission of Funding Documents | 9.15 |
| 927 | Loan Purchase | 9.15 |
| 928 | Wire Transfer Process | 9.16 |
| 929 | Funding Amount | 9.16 |
| 930 | Notification of Wire Transfer | 9.18 |
| 931 | Payoff Prior to Funding Date | 9.19 |
| 932 | Loans Paid in Full | 9.19 |
| 933 | Failure to Comply with GMAC-RFC Remittance Requirements | 9.20 |
| 934 | Final Document Delivery | 9.21 |
| 935 | Submission of Final Documents | 9.21 |
| 936 | Required Final Documents | 9.22 |
| 937 | Extensions for Final Delivery | 9.22 |
| 938 | Request for Additional Documentation | 9.23 |
| 939 | Commitment and Delivery Registration for 1st Lien Lines of Credit | 9.23 |
| 940 | Commitment and Delivery Registration for Goal Lines of Credit | 9.27 |
| 941 | Commitment and Delivery Registration for Goal Loan and 125 CLTV Closed-End Second Mortgages | 9.29 |
| 942 | Assetinfo | 9.33 |
| 943 | MERS Loan Registration, Transfer and Delivery Requirements | 9.33 |

**GMAC-RFC**

---

# Chapter 10, Definitions

---

# Chapter 11, Forms & Exhibits

**1100   GMAC-RFC Forms & Exhibits**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**11.1**

# 2A
**GMAC-RFC**

04/01/05
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1]. Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**

Page 2A.3

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

### (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

### (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

### (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

### (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

### (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



# 2A
Page 2A.4
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

# GMAC-RFC

## (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

## (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

## (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

## (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

## (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

## (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6 **GMAC-RFC**

**(E) Ownership; Transfer**

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

**(F) Disbursements; No Payoffs or Future Advancements**

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

**(G) No Default**

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

**(H) No Defenses**

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
01/01/05
Client Guide
**Representations,
Warranties and
Covenants**

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) Discontinued Loan**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a) HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b) Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A
Page 2A.8
01/01/05
Client Guide
Representations,
Warranties and
Covenants

## GMAC-RFC

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any state or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**
Page 2A.9
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(2)  Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3)  Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The prepayment penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10

**GMAC-RFC**

10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

## (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

## (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

## (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

## (P) No Liens

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

## (Q) No Adverse Circumstances

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, (a) The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide, and (b) as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/ beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

### (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**
Page 2A.13
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(Z) Leaseholds**

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

**(AA) Condominiums; Planned Unit Developments (PUDs)**

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

**(BB) Compliance By Others**

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

**(CC) Client Contract Warranties**

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

**(DD) Client and Originators**

- If the Client sells Jumbo A or Expanded Criteria Loans to GMAC-RFC, the Client is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or state authority or a **HUD** approved non-supervised mortgagee.

- Each Jumbo A and Expanded Criteria Loan was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or a HUD approved non-supervised mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator") or (iii) closed in the name of the loan broker.

- All Loans closed in the name of a loan broker (including but not limited to Jumbo A and Expanded Criteria Loans) were originated under the circumstances described in the following sentence: If the Loan was originated through a loan broker, the originator approved the Loan prior to funding by the loan broker and the originator acquired the Loan from the loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

**(EE) No Impairment of Insurance**

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.



**2A**
Page 2A.14
10/18/04

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(FF) Temporary Buydowns**

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3** of this Client Guide.

**(GG) Primary Mortgage Insurance Cancellation**

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

**(HH) No Deficiency In Escrow Deposits or Payments**

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

**(II) Loan Securitization**

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

**(JJ) Non-Solicitation**

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**GMAC-RFC**

**2A**

Page 2A.15

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

**(KK) No Fraud or Misrepresentation**

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

**(LL) Exclusionary List**

No party involved in the origination of a Loan, including without limitation the originator, broker, title company or appraiser, was named on the version of the **Exclusionary List** that was effective on the date of the promissory Note for that particular Loan.

## A203

**Additional Client Representations, Warranties and Covenants for the Home Equity Loan Program**

The Home Equity Loan Program adheres to the Client representations, warranties and covenants stated below as well as the representations, warranties and covenants contained in this Client Guide.

Unless the Home Equity Loan is a valid first lien on the **Mortgaged Premises**, the following representation and warranty applies:

Valid Second Lien

Each **Security Instrument** transferred to GMAC-RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments described in the **Title Insurance** Section of this Chapter. No such impediment shall adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises.

The following additional representations and warranties are made by the Client to GMAC-RFC as of the **Purchase Date** of each Home Equity Loan:

**(A) Licensing**

The Client and any agents or correspondents originating for the Client have obtained all licenses and approvals required with respect to the origination of the Home Equity Loans, including, to the extent applicable, licenses and approvals required for small Loans or small advances and licenses and approvals required to charge the maximum interest rate allowable under State law.

**(B) No Contractor or Dealer Loans**

No home improvement contractor or dealer was involved as a third party originator of a Home Equity Loan or received compensation in any form from the Client.

**(C) No Borrower Defenses or Claims**

No unresolved defense or claim has been made or asserted in writing by the Borrower with respect to the Home Equity Loan, including, without limitation, any defenses or claims based on unsatisfactory workmanship or materials in connection with any home improvements financed with the proceeds of the Home Equity Loan.

**GMAC-RFC**

**2A**
Page 2A.19
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A205

### Proof of Compliance

The Client will, upon the request of GMAC-RFC, supply proof satisfactory to GMAC-RFC of its:

(1) Compliance with all representations and warranties contained in this Client Guide, and

(2) Compliance with all local, State and federal laws, rules and regulations.

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

**GMAC-RFC**

**2A**
Page 2A.21
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A
Page 2A.22

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### A209

Remedies of GMAC-RFC

**( A) Non-Exclusive, Cumulative Remedies**

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same Event of Default

- Any other rights which it may have at law or in equity

**( B) Waiver of Defaults**

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

**( C) Survival of Remedies**

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.23
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



# 2A
Page 2A.24  **GMAC-RFC**

10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

## (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of **Chapter 9** of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**
Page 2A.25
01/01/05
Client Guide
**Representations,
Warranties and
Covenants**

**(C) Repurchase Price of Home Equity Loan Program**

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



# 2A
**GMAC-RFC**

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.27
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

### (F) Substitution

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

### (G) Cost of Transfer Fees Due to Repurchase

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

### (H) Notice and Appeal

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.29
10/18/04
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

• The investment quality of Loans sold to GMAC-RFC

• The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-8

# *Client Guide*

# GMAC RFC

**Version 1-05-G03**
**Effective July 22, 2005**

**GMAC-RFC**

## Table of Contents

# Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | **GMAC-RFC Objective** | 1.1 |
| 101 | **Client Contractual Obligations** | 1.1 |
| 102 | **Single Contract** | 1.1 |
| 103 | **Relationship of GMAC-RFC and Client** | 1.2 |
| 104 | **Client ID Number** | 1.2 |
| 105 | **GMAC-RFC Loan Number** | 1.2 |
| 106 | **Servicer Contractual Obligations** | 1.2 |
| 107 | **Notice** | 1.3 |
| 108 | **Hours of Operation and Holidays** | 1.3 |
| 109 | **Client Guide Organization** | 1.3 |
| 110 | **Headings, Use of Capitalization and Definitions** | 1.4 |
| 111 | **Form & Exhibit Numbering** | 1.4 |
| 112 | **Client Guide Online** | 1.4 |
| 113 | **General Rules of Interpretation** | 1.4 |
| 114 | **Use of Client's Name** | 1.5 |
| 115 | **Use of GMAC-RFC Name and Service Marks** | 1.6 |
| 116 | **Assetinfo** | 1.6 |

# Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | **Client Eligibility** | 2.1 |
| 201 | **Eligibility Standards** | 2.2 |
| 202 | **Client Contract** | 2.4 |
| 203 | **Client Underwriting Responsibilities** | 2.4 |
| 204 | **Continuing Client Obligations** | 2.4 |
| 205 | **Disqualification, Suspension or Inactivation** | 2.4 |
| 206 | **Reporting Requirements** | 2.6 |
| 207 | **Audits and Inspections** | 2.7 |
| 208 | **Disclosure of Information** | 2.7 |
| 209 | **Maintenance of Records** | 2.7 |
| 210 | **Quality Control** | 2.8 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200   Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201   Specific Representations, Warranties and Covenants Concerning Client  .2A.2
A202   Specific Representations, Warranties and Covenants Concerning
       Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203   Additional Client Representations, Warranties and Covenants for the
       Home Equity Loan Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204   Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205   Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A206   Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207   Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A208   Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A209   Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.22
A210   Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.23
A211   Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . . .2A.28
A212   Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A213   Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A214   Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A215   Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . . . .2A.30
A216   Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.31

# Chapter 3, Loan Eligibility

300   Loan Seasoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
301   Occupancy Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
302   Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.2
303   Required Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.4
304   Multiple Loans to One Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.5
305   Ownership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.6
306   Arm's Length and Non-Arm's Length Transactions . . . . . . . . . . . . . . .3.11
307   Transaction Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.11
308   Inherited Properties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.20
309   Determining Amount to Be Financed . . . . . . . . . . . . . . . . . . . . . . . . . .3.20
310   Calculating Loan-to-Value Ratios . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.20
311   Secondary or Subordinate Financing . . . . . . . . . . . . . . . . . . . . . . . . . .3.23
312   Sales Concessions or Home-seller Subsidy . . . . . . . . . . . . . . . . . . . . .3.24
313   Note Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.24
314   Loan Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.27
315   Escrow Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.31
316   Temporary Buydowns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.32
317   Current Payment History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.34
318   Property Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.34

**GMAC-RFC**

| | | |
|---|---|---|
| **319** | **West Virginia Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3.34** |
| **320** | **Texas Equity Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3.34** |
| **321** | **Eligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3.38** |
| **322** | **Ineligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3.44** |
| **323** | **Project Requirements for Warrantable Condominiums and PUDs** . . . . . . | **3.45** |
| **324** | **Insurance Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3.53** |
| **325** | **Survey Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3.68** |

# Chapter 4, Underwriting

| | | |
|---|---|---|
| **400** | **Underwriting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.1** |
| **401** | **Client Underwriting Responsibility** . . . . . . . . . . . . . . . . . . . . . . . . . | **4.1** |
| **402** | **GMAC-RFC Underwriting Review** . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.2** |
| **403** | **Loan Application Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.2** |
| **404** | **Credit Report Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.3** |
| **405** | **Credit Score Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.3** |
| **406** | **Selecting Credit Score** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.4** |
| **407** | **Minimum Credit History & Trade Line Requirements** . . . . . . . . . . | **4.5** |
| **408** | **Credit Evaluation Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.6** |
| **409** | **Credit Evaluation Components** . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.6** |
| **410** | **Upgrading the Credit Grade** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.12** |
| **411** | **Borrower's Liabilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **412** | **Debt Payoff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.16** |
| **413** | **Co-Signed Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **414** | **Divorce Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **415** | **Business Debt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **416** | **Borrower Capacity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **417** | **Student Loan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.17** |
| **418** | **Qualifying Ratios—Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.18** |
| **419** | **Electronic Documentation Standards** . . . . . . . . . . . . . . . . . . . . . . | **4.19** |
| **420** | **Borrower Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.20** |
| **421** | **Employment and Income Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . | **4.20** |
| **422** | **Income Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.20** |
| **423** | **Wage Earners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.21** |
| **424** | **Self-Employed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.22** |
| **425** | **Fixed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.24** |
| **426** | **Rental Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.25** |
| **427** | **Other Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.26** |
| **428** | **Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4.28** |
| **429** | **Full Income Documentation Requirements** . . . . . . . . . . . . . . . . . . | **4.29** |
| **430** | **Lite Income Documentation Requirements** . . . . . . . . . . . . . . . . . . | **4.32** |
| **431** | **One Paystub Income Documentation Requirements** . . . . . . . . . . . | **4.32** |
| **432** | **Fast Income Documentation Requirements** . . . . . . . . . . . . . . . . . . | **4.33** |
| **433** | **Stated Income Documentation Requirements** . . . . . . . . . . . . . . . . | **4.36** |
| **434** | **Stated Income/Stated Asset Documentation Requirements** . . . . . . | **4.37** |
| **435** | **No Ratio Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . | **4.39** |
| **436** | **No Income/No Asset Documentation Requirements** . . . . . . . . . . . | **4.40** |

**GMAC-RFC**

437   Trailing or Relocating Co-Borrower ............................... 4.41
440   Cash to Close ................................................... 4.42
441   Collateral Property Underwriting ............................... 4.45
442   Appraiser Requirements ......................................... 4.45
443   Appraisal Requirements ......................................... 4.46
444   Appraisal Evaluation ........................................... 4.49
445   Additional Review Considerations ............................... 4.59

# Chapter 4A, Electronic Services

A400  Overview and Incorporation of Terms of Use ..................... 4A.1
A401  Assetwise ...................................................... 4A.2
A402  Assetwise Compliance Engine .................................... 4A.5

# Chapter 5, Products

500   Product Descriptions ........................................... 5.1
501   Fixed-Rate Mortgages (FRM) ..................................... 5.3
502   Adjustable Rate Mortgages (ARM) ................................ 5.8
503   Balloon Mortgages .............................................. 5.68
504   1st Lien Line of Credit ........................................ 5.70

# Chapter 6, Loan Programs

600   Loan Programs .................................................. 6.1

# Chapter 6A, Jumbo A Loan Program

A600  Jumbo A Program ................................................ 6A.1
A601  Eligibility Standards .......................................... 6A.1
A602  Stated Income Documentation .................................... 6A.12
A603  EasyFi or Streamline Refinance ................................. 6A.14

# Chapter 6B, Expanded Criteria Loan Program

B600  Expanded Criteria Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.1
B601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.1
B602  Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.14
B603  Stated Income/Stated Asset Documentation . . . . . . . . . . . . . . . . . . . .6B.18
B604  No Ratio Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.20
B605  No Income/No Asset Documentation . . . . . . . . . . . . . . . . . . . . . . . . . .6B.24
B606  Uninsured LTV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.26

# Chapter 6C, Payment Option Loan Program

C600  Payment Option Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
C601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
C602  Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.15
C603  Stated Income/Stated Asset Documentation . . . . . . . . . . . . . . . . . . . .6C.20

# Chapter 6D, Home Solution Loan Program

D600  Home Solution Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6D.1
D601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6D.1

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600  AlterNet/Credit Gap Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E602  Interest Only Feature Eligibility Standards . . . . . . . . . . . . . . . . . . . . .6E.19
E603  80/20 Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.23

# Chapter 6F, Performance Loan Program

F600  Performance Loan Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1
F601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1

**GMAC-RFC**

# Chapter 6G, 1st Lien Line of Credit Loan Program

G600  1st Lien Line of Credit Loan Program ............................6G.1
G601  Eligibility Standards ...........................................6G.1
G602  Supplemental 1st Lien Line of Credit Information .................6G.11

# Chapter 6H, Home Equity Loan Program

H600  Home Equity Program ...........................................6H.1
H601  Eligibility Standards ...........................................6H.1
H602  Supplemental Home Equity Information ...........................6H.16
H603  Home Equity Program Goal Line Product Description ...............6H.18
H604  Home Equity Program Goal Loan Description ......................6H.22

# Chapter 6I, 125 CLTV Loan Program

I600  125 CLTV Loan Program ........................................6I.1
I601  Eligibility Standards ...........................................6I.1
I602  Supplemental 125 CLTV Program Information .....................6I.15

# Chapter 6J, Non-Standard Loan Program

J600  Non-Standard Loan Program ....................................6J.1
J601  Ineligible Loans .............................................6J.1

# Chapter 7, At-A-Glances

700   Program At-A-Glances .........................................7.1

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Servicing Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

# Chapter 9, Commitment and Delivery

| | | |
|---|---|---|
| 900 | Commitment and Delivery—First Mortgage Product | 9.1 |
| 901 | Commitment Rate, Fee and Price Information | 9.1 |
| 902 | Authorized Rates and Prices | 9.2 |
| 903 | Electronic Loan Data Delivery | 9.2 |
| 904 | Wire Transfer Authorization | 9.2 |
| 905 | Notification of Wire Transfer | 9.3 |
| 906 | Best Efforts | 9.3 |
| 907 | Commitment Rate and Price Information | 9.3 |
| 908 | Best Efforts Delivery Commitment Periods | 9.4 |
| 909 | Best Efforts Servicing Options | 9.5 |

# GMAC-RFC

| | | |
|---|---|---|
| 910 | Commitment Amounts and Variance | 9.5 |
| 911 | Ordering Best Efforts Delivery Commitment | 9.6 |
| 912 | Mandatory Delivery Commitments | 9.7 |
| 913 | Mandatory Delivery Servicing Options | 9.7 |
| 914 | Commitment Amounts | 9.7 |
| 915 | Ordering Mandatory Delivery Commitments | 9.8 |
| 916 | Delivery Under Mandatory Delivery Commitment | 9.8 |
| 917 | Corrections and Substitutions | 9.9 |
| 918 | Buyouts and Extensions | 9.9 |
| 919 | Over-Delivery Procedures | 9.10 |
| 920 | Mandatory Delivery Commitment Expirations | 9.10 |
| 921 | Transferability of Commitments | 9.10 |
| 922 | Prior Underwriting Approval | 9.11 |
| 923 | Delivery for Funding | 9.13 |
| 924 | Submission of Funding Documents | 9.13 |
| 925 | Required Funding Documents | 9.13 |
| 926 | Required Servicing Documents for First Mortgage Deliveries | 9.17 |
| 927 | Obligation to Sell Upon Submission of Funding Documents | 9.17 |
| 928 | Loan Purchase | 9.17 |
| 929 | Wire Transfer Process | 9.18 |
| 930 | Funding Amount | 9.18 |
| 931 | Notification of Wire Transfer | 9.20 |
| 932 | Payoff Prior to Funding Date | 9.21 |
| 933 | Loans Paid in Full | 9.21 |
| 934 | Failure to Comply with GMAC-RFC Remittance Requirements | 9.22 |
| 935 | Final Document Delivery | 9.23 |
| 936 | Submission of Final Documents | 9.23 |
| 937 | Required Final Documents | 9.24 |
| 938 | Extensions for Final Delivery | 9.24 |
| 939 | Request for Additional Documentation | 9.25 |
| 940 | Commitment and Delivery Registration for 1st Lien Lines of Credit | 9.25 |
| 941 | Commitment and Delivery Registration for Goal Lines of Credit | 9.29 |
| 942 | Commitment and Delivery Registration for Goal Loan and 125 CLTV Closed-End Second Mortgages | 9.32 |
| 943 | Assetinfo | 9.36 |
| 944 | MERS Loan Registration, Transfer and Delivery Requirements | 9.37 |

# Chapter 10, Definitions

# Chapter 11, Forms & Exhibits

| | | |
|---|---|---|
| 1100 | GMAC-RFC Forms & Exhibits | 11.1 |



# 2A
**GMAC-RFC**

07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1.] Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## ( D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

## ( E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

## ( F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

## ( G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

## ( H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.

# 2A
Page 2A.4
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**



**GMAC-RFC**

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**

Page 2A.5
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



**2A**
Page 2A.6
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

# GMAC-RFC

**(E) Ownership; Transfer**

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

**(F) Disbursements; No Payoffs or Future Advancements**

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

**(G) No Default**

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

**(H) No Defenses**

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) Discontinued Loan**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a) HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b) Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A
Page 2A.8
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**

Page 2A.9
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

(2) **Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

(3) **Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single Premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties.** A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

  • The penalty may be enforced for only the first five years following consummation;

  • The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

  • The prepayment penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10

**GMAC-RFC**

07/22/05

Client Guide
**Representations,
Warranties and
Covenants**

### (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

### (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

### (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

### (P) No Liens

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

### (Q) No Adverse Circumstances

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, (a) The appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide, and (b) as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal except to the extent that the market Value of the Mortgaged Premises is lower than the appraised Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12

**GMAC-RFC**

07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(U) Enforceability; Enforcement Provisions**

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

**(V) Holder-In-Due-Course**

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/ beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

**(W) Trustee Designated**

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

**(X) No Fees Due Trustee**

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

**(Y) Execution of Documents**

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**
Page 2A.13
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(Z) Leaseholds**

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

**(AA) Condominiums; Planned Unit Developments (PUDs)**

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

**(BB) Compliance By Others**

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

**(CC) Client Contract Warranties**

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

**(DD) Client and Originators**

- If the Client sells Jumbo A, Expanded Criteria, or Payment Option Loans to GMAC-RFC, the Client is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority or a **HUD** approved non-supervised mortgagee.

- Each Jumbo A, Expanded Criteria, and Payment Option Loan was: (i) closed in the name of the Client, (ii) closed in the name of another entity that either is a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or a HUD approved non-supervised mortgagee, and was so at the time the Loan was originated (the Client or such other entity shall be called the "originator") or (iii) closed in the name of the loan broker.

- All Loans closed in the name of a loan broker (including but not limited to Jumbo A, Expanded Criteria, and Payment Option Loans) were originated under the circumstances described in the following sentence: If the Loan was originated through a loan broker, the originator approved the Loan prior to funding by the loan broker and the originator acquired the Loan from the loan broker contemporaneously with the origination thereof.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

**(EE) No Impairment of Insurance**

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.



# 2A
Page 2A.14
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### (FF) Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3** of this Client Guide.

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**GMAC-RFC**

**2A**

Page 2A.15
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(KK) No Fraud or Misrepresentation**

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

**(LL) Exclusionary List**

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

## A203

### Additional Client Representations, Warranties and Covenants for the Home Equity Loan Program

The Home Equity Loan Program adheres to the Client representations, warranties and covenants stated below as well as the representations, warranties and covenants contained in this Client Guide.

Unless the Home Equity Loan is a valid first lien on the **Mortgaged Premises**, the following representation and warranty applies:

Valid Second Lien

Each **Security Instrument** transferred to GMAC-RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments described in the **Title Insurance** Section of this Chapter. No such impediment shall adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises.

The following additional representations and warranties are made by the Client to GMAC-RFC as of the **Purchase Date** of each Home Equity Loan:

**(A) Licensing**

The Client and any agents or correspondents originating for the Client have obtained all licenses and approvals required with respect to the origination of the Home Equity Loans, including, to the extent applicable, licenses and approvals required for small Loans or small advances and licenses and approvals required to charge the maximum interest rate allowable under State law.

**(B) No Contractor or Dealer Loans**

No home improvement contractor or dealer was involved as a third party originator of a Home Equity Loan or received compensation in any form from the Client.

**(C) No Borrower Defenses or Claims**

No unresolved defense or claim has been made or asserted in writing by the Borrower with respect to the Home Equity Loan, including, without limitation, any defenses or claims based on unsatisfactory workmanship or materials in connection with any home improvements financed with the proceeds of the Home Equity Loan.

**GMAC-RFC**

**2A**
Page 2A.19
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A205

### Proof of Compliance

The Client will, upon the request of GMAC-RFC, supply proof satisfactory to GMAC-RFC of its:

(1) Compliance with all representations and warranties contained in this Client Guide, and

(2) Compliance with all local, State and federal laws, rules and regulations.

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

**GMAC-RFC**

**2A**
Page 2A.21
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A
Page 2A.22
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### A209

### Remedies of GMAC-RFC

#### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same Event of Default
- Any other rights which it may have at law or in equity

#### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

#### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.23
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



# 2A
Page 2A.24
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Buyouts and Extensions** Section of **Chapter 9** of this Client Guide; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**GMAC-RFC**

**2A**

Page 2A.25
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## (C) Repurchase Price of Home Equity Loan Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



**2A**
Page 2A.26

07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.27
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(G) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossing
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.29
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

(17)  The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18)  The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19)  The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-9

**GMAC-RFC**

# 1-05-G04

**Effective: November 21, 2005**

# Client Guideline Memo

Enclosed is the Client Guideline. The purpose of the Client Guideline is to identify enhancements, clarifications and changes to the Client Guide and to give notice that the Client Guide has been amended. All clarifications and changes are effective for Commitments taken on or after November 21, 2005, unless otherwise noted.

The actual enhancements, clarifications and changes can be found in the pages of the Client Guide indicated below.

## Chapter 1, Introduction

- Revised chapter listing adding new Chapter 9 Sections (Section 109, **Page 1.3**)

- Amended language for sole discretion (Section 113, **Page 1.4**)

- GMAC-RFC may give less than 30 days notice for new programs, products or enhancements (Section 113, **Page 1.5**)

## Chapter 2, Client Eligibility

- Revised Client eligibility language from Client Guide Bulletin 1-05-B05 (Section 201, **Page 2.2**)

## Chapter 2A, Representations, Warranties and Covenants

- Clarified language (Section A202, **Page 2A.9**)

- Added language for AVM (Section A202, **Page 2A.11**)

- Simplified language for Client and Originators (Section A202, **Page 2A.13**)

- Added guidelines for AVM (Section A210, **Page 2A.24**)

- Revised chapter reference adding new Chapter 9 Sections (Section A210, **Page 2A.24**)

- Amended language for sole discretion (Section A210, **Page 2A.27**)

- Revised chapter reference adding new Chapter 9 Sections (Section A216, **Page 2A.32**)

## Chapter 3, Loan Eligibility

- Clarified guidelines for down payment funds (Section 302, **Page 3.3**)

- Added Guidelines for Foreign Nationals (Section 302, **Page 3.4**)

- Revised chapter reference adding new Chapter 9 Sections (Section 314, **Page 3.28**, **Page 3.29**)

- Revised Guidelines for West Virginia Loans (Section 319, **Page 3.34**)

**GMAC-RFC**

## Table of Contents

# Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | **GMAC-RFC Objective** | 1.1 |
| 101 | **Client Contractual Obligations** | 1.1 |
| 102 | **Single Contract** | 1.1 |
| 103 | **Relationship of GMAC-RFC and Client** | 1.2 |
| 104 | **Client ID Number** | 1.2 |
| 105 | **GMAC-RFC Loan Number** | 1.2 |
| 106 | **Servicer Contractual Obligations** | 1.2 |
| 107 | **Notice** | 1.3 |
| 108 | **Hours of Operation and Holidays** | 1.3 |
| 109 | **Client Guide Organization** | 1.3 |
| 110 | **Headings, Use of Capitalization and Definitions** | 1.4 |
| 111 | **Form & Exhibit Numbering** | 1.4 |
| 112 | **Client Guide Online** | 1.4 |
| 113 | **General Rules of Interpretation** | 1.4 |
| 114 | **Use of Client's Name** | 1.5 |
| 115 | **Use of GMAC-RFC Name and Service Marks** | 1.6 |
| 116 | **Assetinfo** | 1.6 |

# Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | **Client Eligibility** | 2.1 |
| 201 | **Eligibility Standards** | 2.2 |
| 202 | **Client Contract** | 2.4 |
| 203 | **Client Underwriting Responsibilities** | 2.4 |
| 204 | **Continuing Client Obligations** | 2.4 |
| 205 | **Disqualification, Suspension or Inactivation** | 2.4 |
| 206 | **Reporting Requirements** | 2.6 |
| 207 | **Audits and Inspections** | 2.7 |
| 208 | **Disclosure of Information** | 2.7 |
| 209 | **Maintenance of Records** | 2.7 |
| 210 | **Quality Control** | 2.8 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . . 2A.1
A201  Specific Representations, Warranties and Covenants Concerning
      Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.2
A202  Specific Representations, Warranties and Covenants Concerning
      Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.5
A203  Additional Client Representations, Warranties and Covenants for the
      Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.15
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.17
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.19
A206  Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.19
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.20
A208  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.21
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.22
A210  Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.23
A211  Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . . 2A.28
A212  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.29
A213  Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.30
A214  Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.30
A215  Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . . 2A.30
A216  Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.31

**GMAC-RFC**

# Chapter 3, Loan Eligibility

| | | |
|---|---|---|
| 300 | Loan Seasoning | 3.1 |
| 301 | Occupancy Types | 3.1 |
| 302 | Borrower Types | 3.2 |
| 303 | Required Signatures | 3.5 |
| 304 | Multiple Loans to One Borrower | 3.5 |
| 305 | Ownership Interests | 3.6 |
| 306 | Arm's Length and Non-Arm's Length Transactions | 3.11 |
| 307 | Transaction Types | 3.11 |
| 308 | Inherited Properties | 3.20 |
| 309 | Determining Amount to Be Financed | 3.20 |
| 310 | Calculating Loan-to-Value Ratios | 3.20 |
| 311 | Secondary or Subordinate Financing | 3.23 |
| 312 | Sales Concessions or Home-seller Subsidy | 3.24 |
| 313 | Note Requirements | 3.24 |
| 314 | Loan Documents | 3.27 |
| 315 | Escrow Issues | 3.31 |
| 316 | Temporary Buydowns | 3.32 |
| 317 | Current Payment History | 3.34 |
| 318 | Property Issues | 3.34 |
| 319 | West Virginia Loans | 3.34 |
| 320 | Texas Equity Loans | 3.34 |
| 321 | Eligible Property Types | 3.38 |
| 322 | Ineligible Property Types | 3.44 |
| 323 | Project Requirements for Warrantable Condominiums and PUDs | 3.45 |
| 324 | Insurance Requirements | 3.53 |
| 325 | Survey Requirements | 3.68 |

# Chapter 4, Underwriting

| | | |
|---|---|---|
| 400 | Underwriting | 4.1 |
| 401 | Client Underwriting Responsibility | 4.1 |
| 402 | GMAC-RFC Underwriting Review | 4.1 |
| 403 | Loan Application Analysis | 4.2 |
| 404 | Credit Report Requirements | 4.2 |
| 405 | Credit Score Requirements | 4.3 |
| 406 | Selecting Credit Score | 4.3 |
| 407 | Minimum Credit History & Trade Line Requirements | 4.4 |
| 408 | Credit Evaluation Overview | 4.5 |
| 409 | Credit Evaluation Components | 4.5 |
| 410 | Upgrading the Credit Grade | 4.12 |
| 411 | Borrower's Liabilities | 4.16 |
| 412 | Debt Payoff | 4.16 |
| 413 | Co-Signed Debt | 4.17 |

# GMAC-RFC

| | | |
|---|---|---|
| 414 | Divorce Debt | 4.17 |
| 415 | Business Debt | 4.17 |
| 416 | Borrower Capacity | 4.17 |
| 417 | Student Loan | 4.17 |
| 418 | Qualifying Ratios—Payment | 4.18 |
| 419 | Electronic Documentation Standards | 4.19 |
| 420 | Borrower Income | 4.20 |
| 421 | Employment and Income Analysis | 4.20 |
| 422 | Income Types | 4.20 |
| 423 | Wage Earners | 4.21 |
| 424 | Self-Employed Income | 4.22 |
| 425 | Fixed Income | 4.24 |
| 426 | Rental Income | 4.25 |
| 427 | Other Income | 4.27 |
| 428 | Income Documentation | 4.28 |
| 429 | Full Income Documentation Requirements | 4.29 |
| 430 | Lite Income Documentation Requirements | 4.32 |
| 431 | One Paystub Income Documentation Requirements | 4.32 |
| 432 | Fast Income Documentation Requirements | 4.33 |
| 433 | Stated Income Documentation Requirements | 4.36 |
| 434 | No Ratio Documentation Requirements | 4.37 |
| 435 | Stated Income/Stated Asset Documentation Requirements | 4.38 |
| 436 | No Income/No Asset Documentation Requirements | 4.39 |
| 437 | No Doc Income | 4.40 |
| 438 | Trailing or Relocating Co-Borrower | 4.40 |
| 440 | Cash to Close | 4.40 |
| 441 | Collateral Property Underwriting | 4.43 |
| 442 | Appraiser Requirements | 4.44 |
| 443 | Appraisal Requirements | 4.45 |
| 444 | Appraisal Evaluation | 4.48 |
| 445 | Additional Review Considerations | 4.58 |

# Chapter 4A, Electronic Services

| | | |
|---|---|---|
| A400 | Overview and Incorporation of Terms of Use | 4A.1 |
| A401 | Assetwise | 4A.2 |
| A402 | Assetwise Compliance Engine | 4A.5 |

## GMAC-RFC

# Chapter 5, Products

**500   Product Descriptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.1**
**501   Fixed-Rate Mortgages (FRM)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.3**
**502   Adjustable Rate Mortgages (ARM)** . . . . . . . . . . . . . . . . . . . . . . . . . **5.8**
**503   Balloon Mortgages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.68**
**504   1st Lien Line of Credit** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5.70**

# Chapter 6, Loan Programs

**600   Loan Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.1**

# Chapter 6A, Jumbo A Loan Program

**A600   Jumbo A Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
**A601   Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.1**
**A602   Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . **6A.13**
**A603   EasyFi or Streamline Refinance** . . . . . . . . . . . . . . . . . . . . . . . . **6A.15**

# Chapter 6B, Expanded Criteria Loan Program

**B600   Expanded Criteria Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.1**
**B601   Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.1**
**B602   Stated and No Ratio Income Documentation** . . . . . . . . . . . . . . . . **6B.14**
**B603   Stated Income/Stated Asset, No Income/No Asset, and No Doc
Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.18**
**B604   Uninsured LTV** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6B.22**

# Chapter 6C, Payment Option Loan Program

**C600   Payment Option Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6C.1**
**C601   Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6C.1**
**C602   Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . **6C.15**
**C603   Stated Income/Stated Asset Documentation** . . . . . . . . . . . . . . . **6C.20**

**GMAC-RFC**

# Chapter 6D, Home Solution Loan Program

D600  Home Solution Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1
D601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1

# Chapter 6E, AlterNet/Credit Gap Loan Program

E600  AlterNet/Credit Gap Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E602  Interest Only Feature Eligibility Standards . . . . . . . . . . . . . . . . . . . 6E.22
E603  80/20 Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.27

# Chapter 6F, Performance Loan Program

F600  Performance Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1
F601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1

# Chapter 6G, 1st Lien Line of Credit Loan Program

G600  1st Lien Line of Credit Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
G601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
G602  Supplemental 1st Lien Line of Credit Information . . . . . . . . . . . . . . 6G.11

# Chapter 6H, Home Equity Loan Program

H600  Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6H.1
H601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6H.1
H602  Supplemental Home Equity Information . . . . . . . . . . . . . . . . . . . . . . . 6H.17
H603  Home Equity Program Goal Line Product Description . . . . . . . . . . . . 6H.19
H604  Home Equity Program Goal Loan Description . . . . . . . . . . . . . . . . . . 6H.23

**GMAC-RFC**

# Chapter 6I, 125 CLTV Loan Program

I600   125 CLTV Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I602   Supplemental 125 CLTV Program Information  . . . . . . . . . . . . . . . . . . . . . 6I.15

# Chapter 6J, Non-Standard Loan Program

J600   Non-Standard Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
J601   Ineligible Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 7, At-A-Glances

700   Program At-A-Glances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

**GMAC-RFC**

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Servicing Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

# Chapter 9, Commitment, Prior Approval, Delivery & Funding

900   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
901   Written Communication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
902   Assetinfo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1

# Chapter 9A, Commitments

A900  Commitment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.1
A901  Requesting a Commitment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.2
A902  Commitment Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.3
A903  Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.3
A904  Failure to Deliver or Over-Deliver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.4
A905  Extension and Buyout Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.5

# Chapter 9B, Prior Underwriting Approval

B900  Prior Underwriting Submission—Delivery Requirements . . . . . . . . . . . . 9B.1
B901  Required Documents for Prior Underwriting . . . . . . . . . . . . . . . . . . . . . . 9B.1
B902  Notification of Prior Underwriting Loan File Status . . . . . . . . . . . . . . . . . 9B.3
B903  Returning Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3
B904  Equal Credit Opportunity Act (ECOA) and Home Mortgage Disclosure Act (HMDA) Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3
B905  Additional Delivery Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3

# Chapter 9C, Delivery

C900  Delivery Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.1
C901  Submission of Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.1
C902  Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.2
C903  Review and Acceptance of Funding Documents . . . . . . . . . . . . . . . . . . . 9C.9
C904  MERS Loan Registration, Transfer and Delivery Requirements . . . . . . . . 9C.9
C905  Alternative Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.10

**GMAC-RFC**

---

# Chapter 9D, Funding Requirements and Wire Instructions

D900  Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D901  Funding Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D902  Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.3
D903  Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.4
D904  Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.4
D905  Failure to Comply with GMAC-RFC Remittance Requirements . . . . . . . . .9D.5

---

# Chapter 9E, Final Documents

E900  Submission of Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9E.1
E901  Review and Acceptance of Final Documents . . . . . . . . . . . . . . . . . . . .9E.2
E902  Further Assurance Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9E.2

---

# Chapter 10, Definitions

---

# Chapter 11, Forms & Exhibits

1100  GMAC-RFC Forms & Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11.1



# 2A
Page 2A.2
## GMAC-RFC

07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1]. Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(D) No Conflicts**

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

**(E) Ability to Perform**

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

**(F) No Litigation Pending**

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

**(G) No Consent Required**

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

**(H) No Untrue Information**

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



# 2A
Page 2A.4
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

# GMAC-RFC

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**

Page 2A.5
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

### (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

### (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

### (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) Discontinued Loan**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a) HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b) Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.

# 2A
Page 2A.8

07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**( c )  Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**( d )  State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**( e )  Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**( f )  Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

• A "home loan" if the property is a "**Manufactured Home**";

• A "home loan" with proceeds intended for home improvement purposes;

• A "home loan" that is an open-end line of credit;

• A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**( g )  Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

• A "home loan" if the property is a "**Manufactured Home**";

• A "home loan" with proceeds intended for home improvement purposes;

• A "home loan" that is an open-end line of credit;

• A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**

Page 2A.9

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

(2) **Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

(3) **Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The prepayment penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**(Q) No Adverse Circumstances**

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

### (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

### (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if an **Automated Valuation Model (AVM)** is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12

**GMAC-RFC**

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**(U) Enforceability; Enforcement Provisions**

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

**(V) Holder-In-Due-Course**

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/ beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

**(W) Trustee Designated**

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

**(X) No Fees Due Trustee**

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

**(Y) Execution of Documents**

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**
Page 2A.13
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(Z) Leaseholds**

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

**(AA) Condominiums; Planned Unit Developments (PUDs)**

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

**(BB) Compliance By Others**

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

**(CC) Client Contract Warranties**

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

**(DD) Client and Originators**

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

**(EE) No Impairment of Insurance**

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

**(FF) Temporary Buydowns**

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3** of this Client Guide.

**(GG) Primary Mortgage Insurance Cancellation**

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.



**2A**
Page 2A.14

GMAC-RFC

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

### (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

### (LL) Exclusionary List

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

**GMAC-RFC**

# 2A

Page 2A.19
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A205

### Proof of Compliance

The Client will, upon the request of GMAC-RFC, supply proof satisfactory to GMAC-RFC of its:

(1) Compliance with all representations and warranties contained in this Client Guide, and

(2) Compliance with all local, State and federal laws, rules and regulations.

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

**GMAC-RFC**

**2A**
Page 2A.21
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or as failed to provide GMAC-RFC with information that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.



# 2A

**GMAC-RFC**

07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## A209

### Remedies of GMAC-RFC

**(A) Non-Exclusive, Cumulative Remedies**

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same Event of Default

- Any other rights which it may have at law or in equity

**(B) Waiver of Defaults**

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

**(C) Survival of Remedies**

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.23
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A210

## Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.



**2A**
Page 2A.24

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

If, for any particular Loan, Client has complied with its property valuation documentation requirements (as described under Specific Representations, Warranties and Covenants Concerning Individual Loans in the **Underwriting; Appraisal; Appraiser** Section) by providing Propertywise (a GMAC-RFC Qualified AVM) in lieu of an appraisal, where the **Loan Program** terms permit the use of **Propertywise** as the sole documentation of property valuation underlying such Loan, and provided Propertywise was obtained by Client in good faith directly from Propertywise Vendors (See GMAC-RFC **Exhibit 16G05**, Automated Valuation Model (AVM) Approved Vendors) and has been submitted to GMAC-RFC in its original, unaltered form as issued by the Propertywise Vendor; then, if an **Event of Default** related to such Loan arises solely out of the validity and accuracy of the property valuation amount stated in the Propertywise AVM, but provided that in all other aspects the Loan was eligible for purchase by GMAC-RFC at the time it was submitted for purchase by Client, GMAC-RFC will not exercise its right to demand repurchase for such particular Loan by reason of such particular Event of Default. However, GMAC-RFC may continue to exercise its right to demand repurchase if GMAC-RFC reasonably believes that Client or any third party originator obtained Propertywise in bad faith, such as by using Propertywise where Client or the third party originator had reason to know that the mortgaged property was materially different than that described in Propertywise or that the description in Propertywise should not be considered reliable at the time the Loan was sold to GMAC-RFC.

**(B) Repurchase Price of First Mortgage Programs**

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the buyout fee as calculated in the **Extension and Buyout Fees** Section of Chapter 9A, Commitments; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

**GMAC-RFC**

**2A**

Page 2A.25
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

## (C) Repurchase Price of Home Equity Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliates** is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.



# 2A
Page 2A.26 **GMAC-RFC**

07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

## (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

## (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other legal documents.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.27
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its sole discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(G) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossings
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**

Page 2A.29
07/22/05
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-10

# *Client Guide*

# GMAC RFC

**Version 1-06-G01**
**Effective March 13, 2006**

**GMAC-RFC**

## Table of Contents

# Chapter 1 Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | Headings, Use of Capitalization and Definitions | 1.4 |
| 111 | Form & Exhibit Numbering | 1.5 |
| 112 | Client Guide Online | 1.5 |
| 113 | General Rules of Interpretation | 1.5 |
| 114 | Use of Client's Name | 1.6 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.7 |
| 116 | Assetinfo | 1.7 |

# Chapter 2 Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and Inspections | 2.8 |
| 208 | Disclosure of Information | 2.8 |
| 209 | Maintenance of Records | 2.9 |
| 210 | Quality Control | 2.9 |

**GMAC-RFC**

# Chapter 2A Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201  Specific Representations, Warranties and Covenants Concerning
       Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.2
A202  Specific Representations, Warranties and Covenants Concerning
       Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203  Additional Client Representations, Warranties and Covenants for
       the Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.18
A206  Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A208  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A210  Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A211  Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . . .2A.26
A212  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.27
A213  Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A214  Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A215  Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . . .2A.28
A216  Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29

# Chapter 3 Loan Eligibility

300   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
301   Loan Seasoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
302   Required Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.2

# Chapter 3A Occupancy, Borrower & Ownership Status

A300  Occupancy Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.1
A301  Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
A302  Multiple Loans to One Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.4
A303  Ownership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.5

# Chapter 3B Transactions

B300  **Arm's Length and Non-Arm's Length Transactions** . . . . . . . . . . . . . . . . . . 3B.1
B301  **Transaction Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3B.1

# Chapter 3C Financing

C300  **Determining Amount to Be Financed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.1
C301  **Calculating Loan-to-Value Ratios** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.1
C302  **Secondary or Subordinate Financing** . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.4
C303  **Sales Concessions or Home-seller Subsidy** . . . . . . . . . . . . . . . . . . . . 3C.5
C304  **Escrow Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.5
C305  **Temporary Buydowns** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.7
C306  **West Virginia Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.8
C307  **Texas Equity Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.9
C308  **Current Payment History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.12

# Chapter 3D Property Types & Considerations

D300  **Property Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3D.1
D301  **Eligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3D.1
D302  **Ineligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3D.5
D303  **Project Requirements for Warrantable Condominiums and PUDs** . . . . . . 3D.6

# Chapter 3E Loan Documents & Notes

E300  **Note Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3E.1
E301  **Loan Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3E.3

**GMAC-RFC**

# Chapter 3F Insurance & Survey Requirements

F300  Insurance Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.1
F301  Hazard Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.1
F302  Mortgage Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.3
F303  Earthquake Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
F304  Flood Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
F305  Flood Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
F306  Condominium Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.8
F307  PUD Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.11
F308  Title Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.12
F309  Title Search/Insurance for Second Mortgage Programs . . . . . . . . . . . . 3F.16
F310  Survey Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.16

# Chapter 3G Prepayment Penalties

G300  Prepayment Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3G.1
G301  Program Prepayment Pricing Requirements . . . . . . . . . . . . . . . . . . . 3G.2
G302  Compliance with Applicable Laws . . . . . . . . . . . . . . . . . . . . . . . . . 3G.3

# Chapter 4 Underwriting

400   Description of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . 4.1
401   Client Underwriting Responsibility . . . . . . . . . . . . . . . . . . . . . . . . 4.1
402   GMAC-RFC Underwriting Review . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
403   Loan Application Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
404   Electronic Documentation Standards . . . . . . . . . . . . . . . . . . . . . . . 4.2

# Chapter 4A Credit

A400  Credit Report Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.1
A401  Credit Score Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.1
A402  Selecting Credit Score . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.2
A403  Minimum Credit History & Trade Line Requirements . . . . . . . . . . . . . 4A.2
A404  Credit Evaluation Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.3
A405  Credit Evaluation Components . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.4
A406  Upgrading the Credit Grade . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.11

# Chapter 4B Liabilities & Debt Ratios

**B400  Qualifying Ratios—Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.1**
**B401  Borrower's Liabilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.3**
**B402  Debt Payoff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B403  Co-Signed Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B404  Divorce Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B405  Business Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B406  Borrower Capacity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B407  Student Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**

# Chapter 4C Cash to Close

**C400  Cash to Close** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4C.1**

# Chapter 4D Income Types

**D400  Borrower Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.1**
**D401  Employment and Income Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.1**
**D402  Income Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.2**
**D403  Wage Earners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.2**
**D404  Self-Employed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.3**
**D405  Fixed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.5**
**D406  Rental Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.6**
**D407  Other Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.7**
**D408  Trailing or Relocating Co-Borrower** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4D.8**

# Chapter 4E Income Documentation

**E400  Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4E.1**
**E401  Full Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . **4E.2**
**E402  Lite Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . **4E.5**
**E403  One Paystub Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . **4E.5**
**E404  Fast Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . **4E.6**
**E405  Stated Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . **4E.9**
**E406  No Ratio Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4E.10**
**E407  Stated Income/Stated Asset Documentation Requirements** . . . . . . . . . . **4E.11**
**E408  No Income/No Asset Documentation Requirements** . . . . . . . . . . . . . . . . **4E.12**
**E409  No Doc Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4E.12**

**GMAC-RFC**

# Chapter 4F Appraisal Requirements & Property Underwriting

F400   Collateral Property Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.1
F401   Appraiser Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F402   Appraisal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F403   Appraisal Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.6
F404   Additional Review Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.15

# Chapter 4G Electronic Services

G400   Overview and Incorporation of Terms of Use . . . . . . . . . . . . . . . . . . . . 4G.1
G401   Assetwise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4G.2
G402   Assetwise Compliance Engine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4G.5

# Chapter 5 Products

500   Product Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1
501   Fixed-Rate Mortgages (FRM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.3
502   Adjustable Rate Mortgages (ARM) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.9
503   Balloon Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.70
504   1st Lien Line of Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.72

# Chapter 6 Loan Programs

600   Loan Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1

# Chapter 6A Jumbo A Loan Program

A600   Jumbo A Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A602   Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.11
A603   EasyFi or Streamline Refinance . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.11

**GMAC-RFC**

# Chapter 6B Expanded Criteria Loan Program

**B600  Expanded Criteria Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
**B601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
**B602  Stated and No Ratio Income Documentation** . . . . . . . . . . . . . . . . . . .6B.11
**B603  Stated Income/Stated Asset, No Income/No Asset, and No Doc Documentation**
6B.11
**B604  Uninsured LTV** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.13

# Chapter 6C Payment Option Loan Program

**C600  Payment Option Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.1
**C601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.1
**C602  Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.12
**C603  Stated Income/Stated Asset Documentation** . . . . . . . . . . . . . . . . . . .6C.13

# Chapter 6D Home Solution Loan Program

**D600  Home Solution Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6D.1
**D601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6D.1

# Chapter 6E AlterNet Loan Program

**E600  AlterNet Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.1
**E601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.1
**E602  Interest Only Feature Eligibility Standards** . . . . . . . . . . . . . . . . . . .6E.12
**E603  80/20 Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.15

# Chapter 6F Performance Loan Program

**F600  Performance Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6F.1
**F601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6F.1

# GMAC-RFC

---

# Chapter 6G 1st Lien Line of Credit Loan Program

**G600  1st Lien Line of Credit Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
**G602  Supplemental 1st Lien Line of Credit Information** . . . . . . . . . . . . . . . . .6G.9

---

# Chapter 6H Home Equity Loan Program

**H600  Home Equity Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H602  Supplemental Home Equity Information** . . . . . . . . . . . . . . . . . . . . . . . . .6H.13
**H603  Home Equity Program Goal Line Product Description** . . . . . . . . . . . . . .6H.14
**H604  Home Equity Program Goal Loan Description** . . . . . . . . . . . . . . . . . . . . .6H.18

---

# Chapter 6I 125 CLTV Loan Program

**I600  125 CLTV Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
**I601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
**I602  Supplemental 125 CLTV Program Information** . . . . . . . . . . . . . . . . . . . . 6I.13

---

# Chapter 6J Non-Standard Loan Program

**J600  Non-Standard Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
**J601  Ineligible Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

---

# Chapter 7 At-A-Glances

**700   Program At-A-Glances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

**GMAC-RFC**

# Chapter 8 Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

# Chapter 9 Commitment, Prior Approval, Delivery & Funding

| | | |
|---|---|---|
| 900 | Descriptions of Underlying Chapters | 9.1 |
| 901 | Written Communication | 9.1 |
| 902 | Assetinfo | 9.1 |

**GMAC-RFC**

# Chapter 9A Commitments

A900  Commitment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.1
A901  Requesting a Commitment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.2
A902  Commitment Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.3
A903  Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.3
A904  Failure to Deliver or Over-Deliver . . . . . . . . . . . . . . . . . . . . . . . . .9A.4
A905  Extension and Buyout Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.5

# Chapter 9B Prior Underwriting Approval

B900  Prior Underwriting Submission—Delivery Requirements . . . . . . . . . . . .9B.1
B901  Required Documents for Prior Underwriting . . . . . . . . . . . . . . . . . . . .9B.1
B902  Notification of Prior Underwriting Loan File Status . . . . . . . . . . . . . . .9B.3
B903  Returning Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3
B904  Equal Credit Opportunity Act (ECOA) and Home Mortgage
      Disclosure Act (HMDA) Compliance . . . . . . . . . . . . . . . . . . . . . . . . .9B.3
B905  Additional Delivery Documentation . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3

# Chapter 9C Delivery

C900  Delivery Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
C901  Submission of Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
C902  Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.2
C903  Review and Acceptance of Funding Documents . . . . . . . . . . . . . . . . .9C.8
C904  MERS Loan Registration, Transfer and Delivery Requirements . . . . . . .9C.9
C905  Alternative Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.10

# Chapter 9D Funding Requirements and Wire Instructions

D900  Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D901  Funding Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D902  Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.4
D903  Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
D904  Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
D905  Failure to Comply with GMAC-RFC Remittance Requirements . . . . . . . .9D.6

**GMAC-RFC**

# Chapter 9E Final Documents

E900  Submission of Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.1
E901  Review and Acceptance of Final Documents . . . . . . . . . . . . . . . . . . . . . 9E.2
E902  Further Assurance Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.2

# Chapter 11 Forms & Exhibits

1100  GMAC-RFC Forms & Exhibits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.1

# Chapter 10 Definitions



# 2A
Page 2A.2 **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1.] Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

# GMAC-RFC

# 2A
Page 2A.3
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

## (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

## (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

## (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

## (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.

# 2A
Page 2A.4

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**



**GMAC-RFC**

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
**GMAC-RFC**

## (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

## (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

## (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

## (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

# GMAC-RFC

**2A**
Page 2A.7
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(I)  Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J)  Responsible Lending Representations, Warranties and Covenants**

**(1)  Discontinued Loan**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a)  HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b)  Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A
Page 2A.8

**GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

# 2A

Page 2A.9
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(2) Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3) Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The prepayment penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
**GMAC-RFC**

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**(Q) No Adverse Circumstances**

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if an **Automated Valuation Model (AVM)** is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



# 2A
Page 2A.12

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

## (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

## (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

## (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

## (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**
Page 2A.13
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(Z) Leaseholds**

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

**(AA) Condominiums; Planned Unit Developments (PUDs)**

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

**(BB) Compliance By Others**

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

**(CC) Client Contract Warranties**

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

**(DD) Client and Originators**

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

**(EE) No Impairment of Insurance**

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

**(FF) Temporary Buydowns**

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3C**, Financing, of this Client Guide.

**(GG) Primary Mortgage Insurance Cancellation**

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.



# 2A
Page 2A.14

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

# GMAC-RFC

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

### (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

### (LL) Exclusionary List

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

**GMAC-RFC**

**2A**
Page 2A.19
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.



# 2A
Page 2A.20  **GMAC-RFC**

12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

## A208

## Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or has failed to provide GMAC-RFC with information in a timely manner, including information required under Regulation AB or any successor regulation, that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

## A209

## Remedies of GMAC-RFC

## (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

• One or more other remedies in connection with the same Event of Default

• Any other rights which it may have at law or in equity

**GMAC-RFC**

**2A**
Page 2A.21
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

## (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

## A210

### Repurchase

## (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.



# 2A

Page 2A.22

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.

If, for any particular Loan, Client has complied with its property valuation documentation requirements (as described under Specific Representations, Warranties and Covenants Concerning Individual Loans in the **Underwriting; Appraisal; Appraiser** Section) by providing a GMAC-RFC Qualified AVM in lieu of an appraisal, where the **Loan Program** terms permit the use of a **Qualified AVM** as the sole documentation of property valuation underlying such Loan, and provided a Qualified AVM was obtained by Client in good faith directly from Qualified AVM Vendors (See GMAC-RFC **Exhibit 16G05**, Automated Valuation Model (AVM) Approved Vendors) and has been submitted to GMAC-RFC in its original, unaltered form as issued by the Qualified AVM Vendor; then, if an **Event of Default** related to such Loan arises solely out of the validity and accuracy of the property valuation amount stated in the Qualified AVM, but provided that in all other aspects the Loan was eligible for purchase by GMAC-RFC at the time it was submitted for purchase by Client, GMAC-RFC will not exercise its right to demand repurchase for such particular Loan by reason of such particular Event of Default. However, GMAC-RFC may continue to exercise its right to demand repurchase if GMAC-RFC reasonably believes that Client or any third party originator obtained a Qualified AVM in bad faith, such as by using a Qualified AVM where Client or the third party originator had reason to know that the mortgaged property was materially different than that described in the Qualified AVM or that the description in the Qualified AVM should not be considered reliable at the time the Loan was sold to GMAC-RFC.

## (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the **Buyout Fee** as calculated in the **Extension and Buyout Fees** Section of Chapter 9A, Commitments; plus

**GMAC-RFC**

**2A**
Page 2A.23
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**(C) Repurchase Price of Home Equity Program**

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less



**2A**
Page 2A.24

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.

## (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

## (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other **Legal Documents**.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**GMAC-RFC**

**2A**
Page 2A.25
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (F) Substitution

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its sole discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

### (G) Cost of Transfer Fees Due to Repurchase

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

### (H) Notice and Appeal

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossings
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.27
12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

  • The investment quality of Loans sold to GMAC-RFC

  • The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-11

# *Client Guide*

# GMAC RFC

**Version 1-06-G02**
**Effective June 12, 2006**

**GMAC-RFC**

## Table of Contents

# Chapter 1 Introduction

**100    GMAC-RFC Objective** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.1**
**101    Client Contractual Obligations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.1**
**102    Single Contract** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.1**
**103    Relationship of GMAC-RFC and Client** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.2**
**104    Client ID Number** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.2**
**105    GMAC-RFC Loan Number** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.2**
**106    Servicer Contractual Obligations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.2**
**107    Notice** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.3**
**108    Hours of Operation and Holidays** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.3**
**109    Client Guide Organization** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.3**
**110    Headings, Use of Capitalization and Definitions** . . . . . . . . . . . . . . . . . . . .**1.5**
**111    Form & Exhibit Numbering** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.5**
**112    Client Guide Online** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.5**
**113    General Rules of Interpretation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.5**
**114    Use of Client's Name** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.6**
**115    Use of GMAC-RFC Name and Service Marks** . . . . . . . . . . . . . . . . . . . . . . .**1.7**
**116    Assetinfo** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**1.7**

# Chapter 2 Client Eligibility

**200    Client Eligibility** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.1**
**201    Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.2**
**202    Client Contract** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.4**
**203    Client Underwriting Responsibilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.4**
**204    Continuing Client Obligations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.4**
**205    Disqualification, Suspension or Inactivation** . . . . . . . . . . . . . . . . . . . . . .**2.4**
**206    Reporting Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.6**
**207    Audits and Inspections** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.8**
**208    Disclosure of Information** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.8**
**209    Maintenance of Records** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.9**
**210    Quality Control** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2.9**

**GMAC-RFC**

# Chapter 2A Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201  Specific Representations, Warranties and Covenants Concerning
      Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.2
A202  Specific Representations, Warranties and Covenants Concerning
      Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203  Additional Client Representations, Warranties and Covenants for
      the Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.18
A206  Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A208  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A210  Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A211  Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . . . .2A.26
A212  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.27
A213  Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A214  Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A215  Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A216  Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29

# Chapter 3 Loan Eligibility

300   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
301   Loan Seasoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
302   Required Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.2

# Chapter 3A Occupancy, Borrower & Ownership Status

A300  Occupancy Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.1
A301  Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
A302  Multiple Loans to One Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.4
A303  Ownership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.5

**GMAC-RFC**

# Chapter 3B Transactions

**B300  Arm's Length and Non-Arm's Length Transactions** . . . . . . . . . . . . . . . . . . **3B.1**
**B301  Transaction Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3B.1**

# Chapter 3C Financing

**C300  Determining Amount to Be Financed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.1**
**C301  Calculating Loan-to-Value Ratios** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.1**
**C302  Secondary or Subordinate Financing** . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.4**
**C303  Sales Concessions or Home-seller Subsidy** . . . . . . . . . . . . . . . . . . . . . **3C.5**
**C304  Escrow Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.5**
**C305  Temporary Buydowns** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.7**
**C306  West Virginia Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.8**
**C307  Texas Equity Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.9**
**C308  Current Payment History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3C.12**

# Chapter 3D Property Types & Considerations

**D300  Property Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3D.1**
**D301  Eligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3D.1**
**D302  Ineligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3D.5**
**D303  Project Requirements for Warrantable Condominiums and PUDs** . . . . . . **3D.6**

# Chapter 3E Loan Documents & Notes

**E300  Note Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3E.1**
**E301  Loan Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3E.3**

# Chapter 3F Insurance & Survey Requirements

**F300  Insurance Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.1**
**F301  Hazard Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.1**
**F302  Mortgage Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.3**
**F303  Earthquake Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.7**
**F304  Flood Certification** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.7**
**F305  Flood Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.7**

CASE 0:14-cv-01716-SRN-HB   Document 1-2   Filed 05/30/14   Page 377 of 679

Page 4
06/12/06
Client Guide
**Table of Contents**

**GMAC-RFC**

**F306  Condominium Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.8**
**F307  PUD Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.11**
**F308  Title Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.12**
**F309  Title Search/Insurance for Second Mortgage Programs** . . . . . . . . . . . . **3F.16**
**F310  Survey Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.16**

# Chapter 3G Prepayment Penalties

**G300  Prepayment Definition** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3G.1**
**G301  Program Prepayment Pricing Requirements** . . . . . . . . . . . . . . . . . . . . **3G.2**
**G302  Compliance with Applicable Laws** . . . . . . . . . . . . . . . . . . . . . . . . . . **3G.3**

# Chapter 4 Underwriting

**400  Description of Underlying Chapters** . . . . . . . . . . . . . . . . . . . . . . . . . . **4.1**
**401  Client Underwriting Responsibility** . . . . . . . . . . . . . . . . . . . . . . . . . . **4.1**
**402  GMAC-RFC Underwriting Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.2**
**403  Loan Application Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4.2**
**404  Electronic Documentation Standards** . . . . . . . . . . . . . . . . . . . . . . . . **4.2**

# Chapter 4A Credit

**A400  Credit Report Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
**A401  Credit Score Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.1**
**A402  Selecting Credit Score** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.2**
**A403  Minimum Credit History & Trade Line Requirements** . . . . . . . . . . . . . **4A.2**
**A404  Credit Evaluation Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.3**
**A405  Credit Evaluation Components** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.4**
**A406  Upgrading the Credit Grade** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4A.11**

# Chapter 4B Liabilities & Debt Ratios

**B400  Qualifying Ratios—Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.1**
**B401  Borrower's Liabilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.3**
**B402  Debt Payoff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B403  Co-Signed Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B404  Divorce Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B405  Business Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B406  Borrower Capacity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**
**B407  Student Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4B.4**

**GMAC-RFC**

# Chapter 4C Cash to Close

**C400   Cash to Close** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4C.1

# Chapter 4D Income Types

**D400   Borrower Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
**D401   Employment and Income Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
**D402   Income Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
**D403   Wage Earners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
**D404   Self-Employed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.3
**D405   Fixed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.5
**D406   Rental Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.6
**D407   Other Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.7
**D408   Trailing or Relocating Co-Borrower** . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.8

# Chapter 4E Income Documentation

**E400   Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.1
**E401   Full Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . 4E.2
**E402   Lite Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . 4E.5
**E403   One Paystub Income Documentation Requirements** . . . . . . . . . . . . . . 4E.5
**E404   Fast Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . 4E.6
**E405   Stated Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . 4E.9
**E406   No Ratio Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . . 4E.10
**E407   Stated Income/Stated Asset Documentation Requirements** . . . . . . . . 4E.11
**E408   No Income/No Asset Documentation Requirements** . . . . . . . . . . . . . . 4E.12
**E409   No Doc Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.12

# Chapter 4F Appraisal Requirements & Property Underwriting

**F400   Collateral Property Underwriting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.1
**F401   Appraiser Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
**F402   Appraisal Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
**F403   Appraisal Evaluation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.6
**F404   Additional Review Considerations** . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.15

**GMAC-RFC**

# Chapter 4G Electronic Services

G400  Overview and Incorporation of Terms of Use . . . . . . . . . . . . . . . . . . . . . . .4G.1
G401  Assetwise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4G.2
G402  Assetwise Compliance Engine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4G.5

# Chapter 5 Products

500   Product Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.1
501   Fixed-Rate Mortgages (FRM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.2
502   Adjustable Rate Mortgages (ARM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.8
503   Balloon Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.70
504   1st Lien Line of Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.72

# Chapter 6 Loan Programs

600   Loan Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6.1

# Chapter 6A Jumbo A Loan Program

A600  Jumbo A Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.1
A601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.1
A602  Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.10
A603  EasyFi or Streamline Refinance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.10

# Chapter 6B Expanded Criteria Loan Program

B600  Expanded Criteria Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
B601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
B602  Stated and No Ratio Income Documentation . . . . . . . . . . . . . . . . . . . .6B.11
B603  Stated Income/Stated Asset, No Income/No Asset, and No Doc Documentation 6B.11
B604  Uninsured LTV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.14

**GMAC-RFC**

# Chapter 6C Payment Option Loan Program

C600  Payment Option Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
C601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
C602  Stated Income Documentation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.11
C603  Stated Income/ Stated Asset Documentation  . . . . . . . . . . . . . . . . . . . . . 6C.12

# Chapter 6D Home Solution Loan Program

D600  Home Solution Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1
D601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1

# Chapter 6E AlterNet Loan Program

E600  AlterNet Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
E602  Interest Only Feature Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . 6E.12
E603  80/ 20 Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.15

# Chapter 6F Performance Loan Program

F600  Performance Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1
F601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1

# Chapter 6G 1st Lien Line of Credit Loan Program

G600  1st Lien Line of Credit Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
G601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
G602  Supplemental 1st Lien Line of Credit Information  . . . . . . . . . . . . . . . . . . 6G.9

**GMAC-RFC**

# Chapter 6H Home Equity Loan Program

H600  Home Equity Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H602  Supplemental Home Equity Information  . . . . . . . . . . . . . . . . . . . . . . . .6H.13
H603  Home Equity Program Goal Line Product Description  . . . . . . . . . . . . . .6H.14
H604  Home Equity Program Goal Loan Description  . . . . . . . . . . . . . . . . . . . . .6H.18

# Chapter 6I 125 CLTV Loan Program

I600  125 CLTV Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I602  Supplemental 125 CLTV Program Information  . . . . . . . . . . . . . . . . . . . 6I.13

# Chapter 6J Non-Standard Loan Program

J600  Non-Standard Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
J601  Ineligible Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 7 At-A-Glances

700   Program At-A-Glances  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

# Chapter 8 Servicing Released

800   Servicing Released  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
801   Program Overview  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
802   Designated Servicer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.2
803   Contractual Obligations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.2
804   Program Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.2
805   Disqualification Suspension or Inactivation  . . . . . . . . . . . . . . . . . . . . . . 8.2
806   Restrictions on Loan Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.3
807   Record Maintenance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.3
808   Final Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.3
809   Disclosure of Information; Cooperation  . . . . . . . . . . . . . . . . . . . . . . . . . 8.3
810   Client Representations and Warranties; Events of Servicer Default Prior
      to Transfer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.4

**GMAC-RFC**

| | | |
|---|---|---|
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

# Chapter 9 Commitment, Prior Approval, Delivery & Funding

| | | |
|---|---|---|
| 900 | Descriptions of Underlying Chapters | 9.1 |
| 901 | Written Communication | 9.1 |
| 902 | Assetinfo | 9.1 |

# Chapter 9A Commitments

| | | |
|---|---|---|
| A900 | Commitment Defined | 9A.1 |
| A901 | Requesting a Commitment | 9A.2 |
| A902 | Commitment Confirmation | 9A.3 |
| A903 | Commitment Periods | 9A.3 |
| A904 | Failure to Deliver or Over-Deliver | 9A.4 |
| A905 | Extension and Buyout Fees | 9A.5 |

# Chapter 9B Prior Underwriting Approval

| | | |
|---|---|---|
| B900 | Prior Underwriting Submission—Delivery Requirements | 9B.1 |
| B901 | Required Documents for Prior Underwriting | 9B.1 |
| B902 | Notification of Prior Underwriting Loan File Status | 9B.3 |
| B903 | Returning Loan Files | 9B.3 |

**GMAC-RFC**

**B904   Equal Credit Opportunity Act (ECOA) and Home Mortgage Disclosure Act (HMDA) Compliance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3
**B905   Additional Delivery Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3

# Chapter 9C Delivery

**C900   Delivery Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.1
**C901   Submission of Funding Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.1
**C902   Funding Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.2
**C903   Review and Acceptance of Funding Documents** . . . . . . . . . . . . . . . . . . 9C.8
**C904   MERS Loan Registration, Transfer and Delivery Requirements** . . . . . . . . 9C.9
**C905   Alternative Delivery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.10

# Chapter 9D Funding Requirements and Wire Instructions

**D900   Wire Transfer Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.1
**D901   Funding Amount** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.1
**D902   Notification of Wire Transfer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.4
**D903   Payoff Prior to Funding Date** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.5
**D904   Loans Paid in Full** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.5
**D905   Failure to Comply with GMAC-RFC Remittance Requirements** . . . . . . . . 9D.6

# Chapter 9E Final Documents

**E900   Submission of Final Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.1
**E901   Review and Acceptance of Final Documents** . . . . . . . . . . . . . . . . . . . . . 9E.2
**E902   Further Assurance Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.2

# Chapter 10 Definitions

# Chapter 11 Forms & Exhibits

**1100   GMAC-RFC Forms & Exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.1

# 2A
**GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1.] Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(D) No Conflicts**

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

**(E) Ability to Perform**

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

**(F) No Litigation Pending**

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

**(G) No Consent Required**

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

**(H) No Untrue Information**

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



# 2A
Page 2A.4

**GMAC-RFC**

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(E) Ownership; Transfer**

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

**(F) Disbursements; No Payoffs or Future Advancements**

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

**(G) No Default**

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

**(H) No Defenses**

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

# GMAC-RFC

**2A**

Page 2A.7

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## (I) Compliance with Law

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

## (J) Responsible Lending Representations, Warranties and Covenants

### (1) Discontinued Loan

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

#### (a) HOEPA/Section 32

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

#### (b) Purchase Money Loans with High Points or Fees

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A
Page 2A.8
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**

Page 2A.9
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

(2) **Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

(3) **Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties.** A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

  • The penalty may be enforced for only the first five years following consummation;

  • The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

  • The prepayment penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

## (K) Title Insurance

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

## (L) Title Guaranty Certificate In Iowa

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10  **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

## (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

## (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

## (P) No Liens

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

## (Q) No Adverse Circumstances

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if an **Automated Valuation Model (AVM)** is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



# 2A
## GMAC-RFC

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

### (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**

Page 2A.13

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

### (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

### (AA) Condominiums; Planned Unit Developments (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

### (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

### (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

### (DD) Client and Originators

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

### (EE) No Impairment of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

### (FF) Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3C**, Financing, of this Client Guide.

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.



**2A**
Page 2A.14

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

### (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

### (LL) Exclusionary List

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

**GMAC-RFC**

**2A**
Page 2A.19
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.



# 2A

**GMAC-RFC**

12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

## A208

## Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or has failed to provide GMAC-RFC with information in a timely manner, including information required under Regulation AB or any successor regulation, that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

## A209

## Remedies of GMAC-RFC

### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same Event of Default

- Any other rights which it may have at law or in equity

# GMAC-RFC

**2A**
Page 2A.21
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

## A210

### Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.



# 2A
Page 2A.22

06/12/06
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.

If, for any particular Loan, Client has complied with its property valuation documentation requirements (as described under Specific Representations, Warranties and Covenants Concerning Individual Loans in the **Underwriting; Appraisal; Appraiser** Section) by providing a GMAC-RFC Qualified AVM in lieu of an appraisal, where the **Loan Program** terms permit the use of a **Qualified AVM** as the sole documentation of property valuation underlying such Loan, and provided a Qualified AVM was obtained by Client in good faith directly from Qualified AVM Vendors (See GMAC-RFC **Exhibit 16G05**, Automated Valuation Model (AVM) Approved Vendors) and has been submitted to GMAC-RFC in its original, unaltered form as issued by the Qualified AVM Vendor; or, alternatively, if GMAC-RFC has waived an appraisal and indicated such waiver in its Assetwise[SM] messaging (an **Appraisal Waiver**), then, if an **Event of Default** related to such Loan arises solely out of the validity and accuracy of the property valuation amount stated in the Qualified AVM, or otherwise related to the property valuation amount with respect to a loan where GMAC-RFC has granted an Appraisal Waiver, but provided that in all other aspects the Loan was eligible for purchase by GMAC-RFC at the time it was submitted for purchase by Client, GMAC-RFC will not exercise its right to demand repurchase for such particular Loan by reason of such particular Event of Default. However, in the case of either a **Qualified AVM** or an Appraisal Waiver, GMAC-RFC may continue to exercise its right to demand repurchase if GMAC-RFC reasonably believes that Client or any third party originator obtained a Qualified AVM or allowed GMAC-RFC to rely on an **Appraisal Waiver** in bad faith, such as by using a Qualified AVM where Client or the third party originator had reason to know that the mortgaged property was materially different than that described in the Qualified AVM or that the description in the Qualified AVM should not be considered reliable at the time the Loan was sold to GMAC-RFC, or where the Client or third party originator has reason to know that the mortgaged property was materially damaged.

### (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

**GMAC-RFC**

**2A**

Page 2A.23

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the **Buyout Fee** as calculated in the **Extension and Buyout Fees** Section of Chapter 9A, Commitments; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

### (C) Repurchase Price of Home Equity Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:



# 2A
Page 2A.24

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.

## (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

## (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other **Legal Documents**.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

# GMAC-RFC

**2A**
Page 2A.25
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

## (F) Substitution

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its sole discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

## (G) Cost of Transfer Fees Due to Repurchase

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

## (H) Notice and Appeal

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossings
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.27
12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-12

# *Client Guide*

# GMAC RFC

**Version 1-06-B04**
**Effective July 24, 2006**

## GMAC-RFC

# Table of Contents

# Chapter 1 Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | Headings, Use of Capitalization and Definitions | 1.5 |
| 111 | Form & Exhibit Numbering | 1.5 |
| 112 | Client Guide Online | 1.5 |
| 113 | General Rules of Interpretation | 1.5 |
| 114 | Use of Client's Name | 1.6 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.7 |
| 116 | Assetinfo | 1.7 |

# Chapter 2 Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and Inspections | 2.8 |
| 208 | Disclosure of Information | 2.8 |
| 209 | Maintenance of Records | 2.9 |
| 210 | Quality Control | 2.9 |

**GMAC-RFC**

# Chapter 2A Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . . 2A.1
A201  Specific Representations, Warranties and Covenants Concerning
        Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.2
A202  Specific Representations, Warranties and Covenants Concerning
        Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.5
A203  Additional Client Representations, Warranties and Covenants for
        the Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.15
A204  Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.17
A205  Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.18
A206  Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.19
A207  Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.19
A208  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.20
A209  Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.20
A210  Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.21
A211  Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . . 2A.26
A212  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.27
A213  Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.28
A214  Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.28
A215  Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . . . 2A.28
A216  Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2A.29

# Chapter 3 Loan Eligibility

300   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.1
301   Loan Seasoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.1
302   Required Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.2

# Chapter 3A Occupancy, Borrower & Ownership Status

A300  Occupancy Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3A.1
A301  Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3A.2
A302  Multiple Loans to One Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3A.4
A303  Ownership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3A.5

**GMAC-RFC**

# Chapter 3B Transactions

**B300  Arm's Length and Non-Arm's Length Transactions** . . . . . . . . . . . . . . . . . 3B.1
**B301  Transaction Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3B.1

# Chapter 3C Financing

**C300  Determining Amount to Be Financed** . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.1
**C301  Calculating Loan-to-Value Ratios** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.1
**C302  Secondary or Subordinate Financing** . . . . . . . . . . . . . . . . . . . . . . . . . 3C.4
**C303  Sales Concessions or Home-seller Subsidy** . . . . . . . . . . . . . . . . . . . . 3C.5
**C304  Escrow Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.5
**C305  Temporary Buydowns** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.7
**C306  West Virginia Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.8
**C307  Texas Equity Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.9
**C308  Current Payment History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3C.12

# Chapter 3D Property Types & Considerations

**D300  Property Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3D.1
**D301  Eligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3D.1
**D302  Ineligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3D.5
**D303  Project Requirements for Warrantable Condominiums and PUDs** . . . . . . 3D.6

# Chapter 3E Loan Documents & Notes

**E300  Note Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3E.1
**E301  Loan Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3E.3

# Chapter 3F Insurance & Survey Requirements

**F300  Insurance Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.1
**F301  Hazard Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.1
**F302  Mortgage Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.3
**F303  Earthquake Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
**F304  Flood Certification** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
**F305  Flood Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7

**GMAC-RFC**

F306  Condominium Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.8
F307  PUD Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.11
F308  Title Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.12
F309  Title Search/Insurance for Second Mortgage Programs . . . . . . . . . . . . 3F.16
F310  Survey Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.16

# Chapter 3G Prepayment Penalties

G300  Prepayment Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3G.1
G301  Program Prepayment Pricing Requirements . . . . . . . . . . . . . . . . . . . . . 3G.2
G302  Compliance with Applicable Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3G.3

# Chapter 4 Underwriting

400   Description of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1
401   Client Underwriting Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1
402   GMAC-RFC Underwriting Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
403   Loan Application Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
404   Electronic Documentation Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2

# Chapter 4A Credit

A400  Credit Report Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.1
A401  Credit Score Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.1
A402  Selecting Credit Score . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.2
A403  Minimum Credit History & Trade Line Requirements . . . . . . . . . . . . . . . 4A.2
A404  Credit Evaluation Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.3
A405  Credit Evaluation Components . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.4
A406  Upgrading the Credit Grade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.11

# Chapter 4B Liabilities & Debt Ratios

B400  Qualifying Ratios—Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.1
B401  Borrower's Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.3
B402  Debt Payoff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B403  Co-Signed Debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B404  Divorce Debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B405  Business Debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B406  Borrower Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B407  Student Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4

**GMAC-RFC**

# Chapter 4C Cash to Close

C400  Cash to Close . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4C.1

# Chapter 4D Income Types

D400  Borrower Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
D401  Employment and Income Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
D402  Income Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
D403  Wage Earners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
D404  Self-Employed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.3
D405  Fixed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.5
D406  Rental Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.6
D407  Other Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.7
D408  Trailing or Relocating Co-Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.8

# Chapter 4E Income Documentation

E400  Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.1
E401  Full Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . . . . 4E.2
E402  Lite Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . . . . 4E.5
E403  One Paystub Income Documentation Requirements . . . . . . . . . . . . . . . 4E.5
E404  Fast Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . . . 4E.6
E405  Stated Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . 4E.9
E406  No Ratio Documentation Requirements  . . . . . . . . . . . . . . . . . . . . . . . . 4E.10
E407  Stated Income/Stated Asset Documentation Requirements . . . . . . . . 4E.11
E408  No Income/No Asset Documentation Requirements . . . . . . . . . . . . . . 4E.12
E409  No Doc Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.12

# Chapter 4F Appraisal Requirements & Property Underwriting

F400  Collateral Property Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.1
F401  Appraiser Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F402  Appraisal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F403  Appraisal Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.6
F404  Additional Review Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.15

**GMAC-RFC**

# Chapter 4G Electronic Services

G400  Overview and Incorporation of Terms of Use . . . . . . . . . . . . . . . . . . . . . .4G.1
G401  Assetwise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4G.2
G402  Assetwise Compliance Engine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4G.5

# Chapter 5 Products

500   Product Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.1
501   Fixed-Rate Mortgages (FRM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.2
502   Adjustable Rate Mortgages (ARM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.8
503   Balloon Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.70
504   1st Lien Line of Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5.72

# Chapter 6 Loan Programs

600   Loan Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6.1

# Chapter 6A Jumbo A Loan Program

A600  Jumbo A Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.1
A601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.1
A602  Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.10
A603  EasyFi or Streamline Refinance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6A.10

# Chapter 6B Expanded Criteria Loan Program

B600  Expanded Criteria Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
B601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.1
B602  Stated and No Ratio Income Documentation . . . . . . . . . . . . . . . . . . . . .6B.11
B603  Stated Income/Stated Asset, No Income/No Asset, and
       No Doc Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.11
B604  Uninsured LTV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6B.14

**GMAC-RFC**

# Chapter 6C Payment Option Loan Program

**C600  Payment Option Program**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
**C601  Eligibility Standards**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.1
**C602  Stated Income Documentation**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6C.11
**C603  Stated Income/Stated Asset Documentation**  . . . . . . . . . . . . . . . . . . . 6C.12

# Chapter 6D Home Solution Loan Program

**D600  Home Solution Program**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1
**D601  Eligibility Standards**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6D.1

# Chapter 6E AlterNet Loan Program

**E600  AlterNet Program**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
**E601  Eligibility Standards**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.1
**E602  Interest Only Feature Eligibility Standards**  . . . . . . . . . . . . . . . . . . . . 6E.12
**E603  80/20 Eligibility Standards**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6E.15

# Chapter 6F Performance Loan Program

**F600  Performance Program**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1
**F601  Eligibility Standards**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6F.1

# Chapter 6G 1st Lien Line of Credit Loan Program

**G600  1st Lien Line of Credit Program**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
**G601  Eligibility Standards**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6G.1
**G602  Supplemental 1st Lien Line of Credit Information**  . . . . . . . . . . . . . . . . 6G.9

**GMAC-RFC**

# Chapter 6H Home Equity Loan Program

H600  Home Equity Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H602  Supplemental Home Equity Information  . . . . . . . . . . . . . . . . . . . . .6H.13
H603  Home Equity Program Goal Line Product Description  . . . . . . . . . . . . .6H.14
H604  Home Equity Program Goal Loan Description  . . . . . . . . . . . . . . . . . .6H.18

# Chapter 6I 125 CLTV Loan Program

I600  125 CLTV Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I601  Eligibility Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I602  Supplemental 125 CLTV Program Information  . . . . . . . . . . . . . . . . . 6I.13

# Chapter 6J Non-Standard Loan Program

J600  Non-Standard Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
J601  Ineligible Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 7 At-A-Glances

700   Program At-A-Glances  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7.1

# Chapter 8 Servicing Released

800   Servicing Released  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.1
801   Program Overview  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.1
802   Designated Servicer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.2
803   Contractual Obligations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.2
804   Program Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.2
805   Disqualification Suspension or Inactivation  . . . . . . . . . . . . . . . . . . .8.2
806   Restrictions on Loan Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . . .8.3
807   Record Maintenance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.3
808   Final Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.3
809   Disclosure of Information; Cooperation  . . . . . . . . . . . . . . . . . . . . .8.3
810   Client Representations and Warranties; Events of Servicer
       Default Prior to Transfer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8.4

**GMAC-RFC**

**811**   Specific Warranties and Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.4
**812**   Notification of Change in Servicer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.8
**813**   Escrow Account for Postponed Improvements/ Repairs . . . . . . . . . . . . . 8.9
**814**   Interest on Escrows . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.9
**815**   Termination of Automatic Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.9
**816**   Purchase of Servicing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.9
**817**   Servicing Released Submission of Purchase . . . . . . . . . . . . . . . . . . . . . . 8.9
**818**   Required Servicing Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.10
**819**   Sale Date and Effective Date of Transfer . . . . . . . . . . . . . . . . . . . . . . . 8.11
**820**   Reconciliation by GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.12
**821**   Notification of Purchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.14
**822**   Monies Paid for Servicing Released . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.14
**823**   Monies Due Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.15
**824**   Monies Due Designated Servicer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.16
**825**   Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.17
**826**   Servicing Document Corrections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.17
**827**   Bulk Servicing Acquisitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.18
**828**   Subservicing Election . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.18

# Chapter 9 Commitment, Prior Approval, Delivery & Funding

**900**   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
**901**   Written Communication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1
**902**   Assetinfo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1

# Chapter 9A Commitments

**A900**   Commitment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.1
**A901**   Requesting a Commitment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.2
**A902**   Commitment Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.3
**A903**   Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.3
**A904**   Failure to Deliver or Over-Deliver . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.4
**A905**   Extension and Buyout Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.5

# Chapter 9B Prior Underwriting Approval

**B900**   Prior Underwriting Submission—Delivery Requirements . . . . . . . . . . . 9B.1
**B901**   Required Documents for Prior Underwriting . . . . . . . . . . . . . . . . . . . . 9B.1
**B902**   Notification of Prior Underwriting Loan File Status . . . . . . . . . . . . . . . 9B.3
**B903**   Returning Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3

**GMAC-RFC**

**B904  Equal Credit Opportunity Act (ECOA) and Home Mortgage
Disclosure Act (HMDA) Compliance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3
**B905  Additional Delivery Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3

# Chapter 9C Delivery

**C900  Delivery Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
**C901  Submission of Funding Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
**C902  Funding Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.2
**C903  Review and Acceptance of Funding Documents** . . . . . . . . . . . . . . . . . .9C.8
**C904  MERS Loan Registration, Transfer and Delivery Requirements** . . . . . . . .9C.9
**C905  Alternative Delivery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.10

# Chapter 9D Funding Requirements and Wire Instructions

**D900  Wire Transfer Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
**D901  Funding Amount** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
**D902  Notification of Wire Transfer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.4
**D903  Payoff Prior to Funding Date** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
**D904  Loans Paid in Full** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
**D905  Failure to Comply with GMAC-RFC Remittance Requirements** . . . . . . . .9D.6

# Chapter 9E Final Documents

**E900  Submission of Final Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9E.1
**E901  Review and Acceptance of Final Documents** . . . . . . . . . . . . . . . . . . . .9E.2
**E902  Further Assurance Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9E.2

# Chapter 10 Definitions

# Chapter 11 Forms & Exhibits

**1100  GMAC-RFC Forms & Exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11.1



# 2A
**GMAC-RFC**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1]. Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**

Page 2A.3

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**(D) No Conflicts**

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

**(E) Ability to Perform**

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

**(F) No Litigation Pending**

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

**(G) No Consent Required**

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

**(H) No Untrue Information**

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.

# 2A
Page 2A.4

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**



# GMAC-RFC

## (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

## (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

## (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

## (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

## (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

## (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

#### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

#### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

#### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

#### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
Page 2A.6 **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

### (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

### (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

### (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) Discontinued Loan**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a) HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b) Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.

# 2A
Page 2A.8

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**



**GMAC-RFC**

**( c ) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**( d ) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**( e ) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**( f ) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**( g ) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**

Page 2A.9

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**(2)  Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3)  Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a)  **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b)  **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The **Prepayment** penalty does not become due upon default

(c)  **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d)  **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**(Q) No Adverse Circumstances**

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if an **Automated Valuation Model (AVM)** is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



# 2A
**GMAC-RFC**

Page 2A.12

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

## (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

## (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

## (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

## (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**(Z) Leaseholds**

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

**(AA) Condominiums; Planned Unit Developments (PUDs)**

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

**(BB) Compliance By Others**

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

**(CC) Client Contract Warranties**

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

**(DD) Client and Originators**

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

**(EE) No Impairment of Insurance**

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

**(FF) Temporary Buydowns**

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3C**, Financing, of this Client Guide.

**(GG) Primary Mortgage Insurance Cancellation**

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.



# 2A
Page 2A.14

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

### (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

### (LL) Exclusionary List

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

**GMAC-RFC**

**2A**
Page 2A.19
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.



# 2A

Page 2A.20

12/01/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

## A208

## Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or has failed to provide GMAC-RFC with information in a timely manner, including information required under Regulation AB or any successor regulation, that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

## A209

## Remedies of GMAC-RFC

### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

• One or more other remedies in connection with the same Event of Default

• Any other rights which it may have at law or in equity

**GMAC-RFC**

**2A**
Page 2A.21
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

## A210

### Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.



# 2A
Page 2A.22

06/26/
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.

If, for any particular Loan, Client has complied with its property valuation documentation requirements (as described under Specific Representations, Warranties and Covenants Concerning Individual Loans in the **Underwriting; Appraisal; Appraiser** Section) by providing a GMAC-RFC Qualified AVM in lieu of an appraisal, where the **Loan Program** terms permit the use of a **Qualified AVM** as the sole documentation of property valuation underlying such Loan, and provided a Qualified AVM was obtained by Client in good faith directly from Qualified AVM Vendors (See GMAC-RFC **Exhibit 16G05**, Automated Valuation Model (AVM) Approved Vendors) and has been submitted to GMAC-RFC in its original, unaltered form as issued by the Qualified AVM Vendor; or, alternatively, if GMAC-RFC has waived an appraisal and indicated such waiver in its Assetwise[SM] messaging (an **Appraisal Waiver**), then, if an **Event of Default** related to such Loan arises solely out of the validity and accuracy of the property valuation amount stated in the Qualified AVM, or otherwise related to the property valuation amount with respect to a loan where GMAC-RFC has granted an Appraisal Waiver, but provided that in all other aspects the Loan was eligible for purchase by GMAC-RFC at the time it was submitted for purchase by Client, GMAC-RFC will not exercise its right to demand repurchase for such particular Loan by reason of such particular Event of Default. However, in the case of either a **Qualified AVM** or an Appraisal Waiver, GMAC-RFC may continue to exercise its right to demand repurchase if GMAC-RFC reasonably believes that Client or any third party originator obtained a Qualified AVM or allowed GMAC-RFC to rely on an **Appraisal Waiver** in bad faith, such as by using a Qualified AVM where Client or the third party originator had reason to know that the mortgaged property was materially different than that described in the Qualified AVM or that the description in the Qualified AVM should not be considered reliable at the time the Loan was sold to GMAC-RFC, or where the Client or third party originator has reason to know that the mortgaged property was materially damaged.

### (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

**GMAC-RFC**

**2A**
Page 2A.23
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the **Buyout Fee** as calculated in the **Extension and Buyout Fees** Section of Chapter 9A, Commitments; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

**(C) Repurchase Price of Home Equity Program**

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:



# 2A
Page 2A.24

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other **Legal Documents**.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

**GMAC-RFC**

**2A**
Page 2A.25
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**(F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its sole discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(G) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossings
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

# GMAC-RFC

**2A**
Page 2A.27
12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-13

# *Client Guide*

# GMAC RFC

**Version 1-06-G03**
**Effective September 11, 2006**

**GMAC-RFC**

## Table of Contents

# Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client ID Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | Headings, Use of Capitalization and Definitions | 1.5 |
| 111 | Form & Exhibit Numbering | 1.5 |
| 112 | Client Guide Online | 1.5 |
| 113 | General Rules of Interpretation | 1.5 |
| 114 | Use of Client's Name | 1.6 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.7 |
| 116 | Assetinfo | 1.7 |

# Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or Inactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and Inspections | 2.8 |
| 208 | Disclosure of Information | 2.8 |
| 209 | Maintenance of Records | 2.9 |
| 210 | Quality Control | 2.9 |

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200   Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201   Specific Representations, Warranties and Covenants Concerning
       Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.2
A202   Specific Representations, Warranties and Covenants Concerning
       Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203   Additional Client Representations, Warranties and Covenants for
       the Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204   Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205   Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.18
A206   Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207   Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A208   Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A209   Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A210   Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A211   Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . .2A.26
A212   Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.27
A213   Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A214   Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A215   Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . .2A.28
A216   Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29

# Chapter 3, Loan Eligibility

300   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
301   Loan Seasoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
302   Required Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.2

# Chapter 3A, Occupancy, Borrower & Ownership Status

A300   Occupancy Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.1
A301   Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
A302   Multiple Loans to One Borrower . . . . . . . . . . . . . . . . . . . . . . . . . .3A.4
A303   Ownership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.5

**GMAC-RFC**

# Chapter 3B, Transactions

B300  **Arm's Length and Non-Arm's Length Transactions** . . . . . . . . . . . . . . . . . .3B.1
B301  **Transaction Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3B.1

# Chapter 3C, Financing

C300  **Determining Amount to Be Financed** . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
C301  **Calculating Loan-to-Value Ratios** . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
C302  **Secondary or Subordinate Financing** . . . . . . . . . . . . . . . . . . . . . . . .3C.4
C303  **Sales Concessions or Home-seller Subsidy** . . . . . . . . . . . . . . . . . . .3C.5
C304  **Escrow Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.5
C305  **Temporary Buydowns** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.7
C306  **West Virginia Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.8
C307  **Texas Equity Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.9
C308  **Current Payment History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.12

# Chapter 3D, Property Types & Considerations

D300  **Property Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3D.1
D301  **Eligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3D.1
D302  **Ineligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3D.5
D303  **Project Requirements for Warrantable Condominiums and PUDs** . . . . . .3D.6

# Chapter 3E, Loan Documents & Notes

E300  **Note Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3E.1
E301  **Loan Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3E.3

**GMAC-RFC**

# Chapter 3F, Insurance & Survey Requirements

F300  Insurance Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.1
F301  Hazard Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.1
F302  Mortgage Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.3
F303  Earthquake Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
F304  Flood Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
F305  Flood Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.7
F306  Condominium Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.8
F307  PUD Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.11
F308  Title Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.12
F309  Title Search/Insurance for Second Mortgage Programs . . . . . . . . . . . . 3F.16
F310  Survey Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3F.16

# Chapter 3G, Prepayment Penalties

G300  Prepayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3G.1
G301  Prepayment Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3G.1
G302  Program Prepayment Pricing Requirements . . . . . . . . . . . . . . . . . . . . 3G.3
G303  Note Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3G.4
G304  Compliance with Applicable Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . 3G.4

# Chapter 4, Underwriting

400   Description of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1
401   Client Underwriting Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1
402   GMAC-RFC Underwriting Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
403   Loan Application Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2
404   Electronic Documentation Standards . . . . . . . . . . . . . . . . . . . . . . . . . 4.2

# Chapter 4A, Credit

A400  Credit Report Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.1
A401  Credit Score Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.1
A402  Selecting Credit Score . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.2
A403  Minimum Credit History & Trade Line Requirements . . . . . . . . . . . . . . 4A.2
A404  Credit Evaluation Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.3
A405  Credit Evaluation Components . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.4
A406  Upgrading the Credit Grade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4A.11

# Chapter 4B, Liabilities & Debt Ratios

B400   Qualifying Ratios—Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.1
B401   Borrower's Liabilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.3
B402   Debt Payoff  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B403   Co-Signed Debts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B404   Divorce Debts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B405   Business Debts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B406   Borrower Capacity  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4
B407   Student Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4B.4

# Chapter 4C, Cash to Close

C400   Cash to Close  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4C.1

# Chapter 4D, Income Types

D400   Borrower Income  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
D401   Employment and Income Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
D402   Income Types  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
D403   Wage Earners  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
D404   Self-Employed Income  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.3
D405   Fixed Income  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.4
D406   Rental Income  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.6
D407   Other Income  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.7
D408   Trailing or Relocating Co-Borrower  . . . . . . . . . . . . . . . . . . . . . . . . 4D.8

# Chapter 4E, Income Documentation

E400   Income Documentation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.1
E401   Full Income Documentation Requirements  . . . . . . . . . . . . . . . . . . . 4E.2
E402   Lite Income Documentation Requirements  . . . . . . . . . . . . . . . . . . . 4E.5
E403   One Paystub Income Documentation Requirements  . . . . . . . . . . . . 4E.6
E404   Fast Income Documentation Requirements  . . . . . . . . . . . . . . . . . . . 4E.6
E405   Stated Income Documentation Requirements  . . . . . . . . . . . . . . . . 4E.10
E406   No Ratio Documentation Requirements  . . . . . . . . . . . . . . . . . . . . . 4E.10
E407   Stated Income/Stated Asset Documentation Requirements  . . . . . . . 4E.12
E408   No Income/No Asset Documentation Requirements  . . . . . . . . . . . . 4E.13
E409   No Doc Income  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.13

**GMAC-RFC**

# Chapter 4F, Appraisal Requirements & Property Underwriting

F400   Collateral Property Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.1
F401   Appraiser Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F402   Appraisal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F403   Appraisal Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.6
F404   Additional Review Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.15

# Chapter 4G, Electronic Services

G400   Overview and Incorporation of Terms of Use . . . . . . . . . . . . . . . . . . . . . 4G.1
G401   Assetwise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4G.2
G402   Assetwise Compliance Engine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4G.5

# Chapter 5, Products

500   Product Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1
501   Fixed-Rate Mortgages (FRM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.2
502   Adjustable Rate Mortgages (ARM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.8
503   Balloon Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.71
504   1st Lien Line of Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.73

# Chapter 6, Loan Programs

600   Loan Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1

# Chapter 6A, Jumbo A Loan Program

A600   Jumbo A Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A601   Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A602   Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.10
A603   EasyFi or Streamline Refinance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.10

**GMAC-RFC**

# Chapter 6B, Expanded Criteria Loan Program

B600   **Expanded Criteria Program** ......................................6B.1
B601   **Eligibility Standards** .........................................6B.1
B602   **Stated and No Ratio Income Documentation** ....................6B.10
B603   **Stated Income/Stated Asset, No Income/No Asset, and No Doc
         Documentation** ...............................................6B.10
B604   **Uninsured LTV** .................................................6B.12

# Chapter 6C, Payment Option Loan Program

C600   **Payment Option Program** ......................................6C.1
C601   **Eligibility Standards** ........................................6C.1
C602   **Stated Income Documentation** .................................6C.11
C603   **Stated Income/Stated Asset Documentation** ...................6C.12

# Chapter 6D, Home Solution Loan Program

D600   **Home Solution Program** .......................................6D.1
D601   **Eligibility Standards** ........................................6D.1

# Chapter 6E, AlterNet Loan Program

E600   **AlterNet Program** ............................................6E.1
E601   **Eligibility Standards** ........................................6E.1
E602   **Interest Only Feature Eligibility Standards** .................6E.12
E603   **80/20 Eligibility Standards** .................................6E.15

# Chapter 6F, Performance Loan Program

F600   **Performance Program** .........................................6F.1
F601   **Eligibility Standards** ........................................6F.1

**GMAC-RFC**

# Chapter 6G, 1st Lien Line of Credit Loan Program

G600  1st Lien Line of Credit Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
G601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
G602  Supplemental 1st Lien Line of Credit Information  . . . . . . . . . . . . . . .6G.9

# Chapter 6H, Home Equity Loan Program

H600  Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
H602  Supplemental Home Equity Information . . . . . . . . . . . . . . . . . . . . . .6H.13
H603  Home Equity Program Goal Line Product Description . . . . . . . . . . . .6H.14
H604  Home Equity Program Goal Loan Description . . . . . . . . . . . . . . . . . .6H.18

# Chapter 6J, Non-Standard Loan Program

J600  Non-Standard Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
J601  Ineligible Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 6I, 125 CLTV Loan Program

I600  125 CLTV Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
I602  Supplemental 125 CLTV Program Information . . . . . . . . . . . . . . . . . . 6I.13

# Chapter 7, At-A-Glances

700  Program At-A-Glances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

# Chapter 8, Servicing Released

| | | |
|---|---|---|
| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.14 |
| 822 | Monies Paid for Servicing Released | 8.14 |
| 823 | Monies Due Client | 8.15 |
| 824 | Monies Due Designated Servicer | 8.16 |
| 825 | Loans Paid in Full | 8.17 |
| 826 | Servicing Document Corrections | 8.17 |
| 827 | Bulk Servicing Acquisitions | 8.18 |
| 828 | Subservicing Election | 8.18 |

# Chapter 9, Commitment, Prior Approval, Delivery & Funding

| | | |
|---|---|---|
| 900 | Descriptions of Underlying Chapters | 9.1 |
| 901 | Written Communication | 9.1 |
| 902 | Assetinfo | 9.1 |

**GMAC-RFC**

# Chapter 9A, Commitments

A900  Commitment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.1
A901  Requesting a Commitment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.2
A902  Commitment Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.3
A903  Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.3
A904  Failure to Deliver or Over-Deliver . . . . . . . . . . . . . . . . . . . . . . . . .9A.4
A905  Extension and Buyout Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.5

# Chapter 9B, Prior Underwriting Approval

B900  Prior Underwriting Submission—Delivery Requirements . . . . . . . . . . . .9B.1
B901  Required Documents for Prior Underwriting . . . . . . . . . . . . . . . . . . . .9B.1
B902  Notification of Prior Underwriting Loan File Status . . . . . . . . . . . . . . .9B.3
B903  Returning Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3
B904  Equal Credit Opportunity Act (ECOA) and Home Mortgage Disclosure
      Act (HMDA) Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3
B905  Additional Delivery Documentation . . . . . . . . . . . . . . . . . . . . . . . . .9B.3

# Chapter 9C, Delivery

C900  Delivery Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
C901  Submission of Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
C902  Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.2
C903  Review and Acceptance of Funding Documents . . . . . . . . . . . . . . . . .9C.8
C904  MERS Loan Registration, Transfer and Delivery Requirements . . . . . . .9C.9
C905  Alternative Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.10

# Chapter 9D, Funding Requirements and Wire Instructions

D900  Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D901  Funding Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D902  Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.4
D903  Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
D904  Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
D905  Failure to Comply with GMAC-RFC Remittance Requirements . . . . . . . .9D.6

**GMAC-RFC**

# Chapter 9E, Final Documents

E900  Submission of Final Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.1
E901  Review and Acceptance of Final Documents . . . . . . . . . . . . . . . . . . . . . . 9E.2
E902  Further Assurance Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.2

# Chapter 10, Definitions

# Chapter 11, Forms & Exhibits

1100  GMAC-RFC Forms & Exhibits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.1



# 2A
**GMAC-RFC**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1]. Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### ( D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

### ( E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

### ( F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

### ( G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

### ( H) No Untrue I nformation

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



**2A**
Page 2A.4

**GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(I) Securities Law**

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

**(J) No Accrued Liabilities**

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

**(K) Origination, Servicing**

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

**(L) Compliance With Laws**

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

**(M) Compliance With Program Documents and Client Guide**

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

**(N) No Defenses Against GMAC-RFC**

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

#### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

#### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

#### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

#### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



**2A**
Page 2A.6

**GMAC-RFC**

11/21/05
Client Guide
**Representations,**
**Warranties and**
**Covenants**

**(E) Ownership; Transfer**

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

**(F) Disbursements; No Payoffs or Future Advancements**

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

**(G) No Default**

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

**(H) No Defenses**

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

# GMAC-RFC

**2A**
Page 2A.7
09/11/06
Client Guide
**Representations,
Warranties and
Covenants**

**(I) Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J) Responsible Lending Representations, Warranties and Covenants**

**(1) No Discontinued Loans**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a) HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b) Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A
Page 2A.8

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";

- A "home loan" with proceeds intended for home improvement purposes;

- A "home loan" that is an open-end line of credit;

- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**

Page 2A.9

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

(2) **Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

(3) **Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

- The penalty may be enforced for only the first five years following consummation;

- The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

- The **Prepayment** penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10   **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**(Q) No Adverse Circumstances**

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if an **Automated Valuation Model (AVM)** is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



# 2A
Page 2A.12   **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/ beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

### (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**GMAC-RFC**

**2A**
Page 2A.13
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

### (AA) Condominiums; Planned Unit Developments (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

### (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

### (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

### (DD) Client and Originators

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

### (EE) No Impairment of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

### (FF) Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3C**, Financing, of this Client Guide.

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.



# 2A
Page 2A.14

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

## (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

## (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

## (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

## (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

## (LL) Exclusionary List

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

**GMAC-RFC**

**2A**
Page 2A.19
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.



# 2A

Page 2A.20

12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

## A208

## Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or has failed to provide GMAC-RFC with information in a timely manner, including information required under Regulation AB or any successor regulation, that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

## A209

## Remedies of GMAC-RFC

### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

• One or more other remedies in connection with the same Event of Default

• Any other rights which it may have at law or in equity

**GMAC-RFC**

**2A**

Page 2A.21
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

## A210

### Repurchase

### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.



**2A**
Page 2A.22
06/26/
Client Guide
Representations,
Warranties and
Covenants

## GMAC-RFC

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.

If, for any particular Loan, Client has complied with its property valuation documentation requirements (as described under Specific Representations, Warranties and Covenants Concerning Individual Loans in the **Underwriting; Appraisal; Appraiser** Section) by providing a GMAC-RFC Qualified AVM in lieu of an appraisal, where the **Loan Program** terms permit the use of a **Qualified AVM** as the sole documentation of property valuation underlying such Loan, and provided a Qualified AVM was obtained by Client in good faith directly from Qualified AVM Vendors (See GMAC-RFC **Exhibit 16G05**, Automated Valuation Model (AVM) Approved Vendors) and has been submitted to GMAC-RFC in its original, unaltered form as issued by the Qualified AVM Vendor; or, alternatively, if GMAC-RFC has waived an appraisal and indicated such waiver in its Assetwise[SM] messaging (an **Appraisal Waiver**), then, if an **Event of Default** related to such Loan arises solely out of the validity and accuracy of the property valuation amount stated in the Qualified AVM, or otherwise related to the property valuation amount with respect to a loan where GMAC-RFC has granted an Appraisal Waiver, but provided that in all other aspects the Loan was eligible for purchase by GMAC-RFC at the time it was submitted for purchase by Client, GMAC-RFC will not exercise its right to demand repurchase for such particular Loan by reason of such particular Event of Default. However, in the case of either a **Qualified AVM** or an Appraisal Waiver, GMAC-RFC may continue to exercise its right to demand repurchase if GMAC-RFC reasonably believes that Client or any third party originator obtained a Qualified AVM or allowed GMAC-RFC to rely on an **Appraisal Waiver** in bad faith, such as by using a Qualified AVM where Client or the third party originator had reason to know that the mortgaged property was materially different than that described in the Qualified AVM or that the description in the Qualified AVM should not be considered reliable at the time the Loan was sold to GMAC-RFC, or where the Client or third party originator has reason to know that the mortgaged property was materially damaged.

### (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

**GMAC-RFC**

**2A**
Page 2A.23
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the **Buyout Fee** as calculated in the **Extension and Buyout Fees** Section of Chapter 9A, Commitments; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.

## (C) Repurchase Price of Home Equity Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:



# 2A
Page 2A.24

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other **Legal Documents**.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

**GMAC-RFC**

# 2A
Page 2A.25
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

**(F) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its sole discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(G) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(H) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

GMAC-RFC
One Meridian Crossings
Suite 100
Minneapolis, MN 55423
Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.

**GMAC-RFC**

**2A**
Page 2A.27
12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-14

# *Client Guide*

# GMAC RFC

**Version 1-06-G04**

**Effective December 11, 2006**

**GMAC-RFC**

## Table of Contents

# Chapter 1, Introduction

| | | |
|---|---|---|
| 100 | GMAC-RFC Objective | 1.1 |
| 101 | Client Contractual Obligations | 1.1 |
| 102 | Single Contract | 1.1 |
| 103 | Relationship of GMAC-RFC and Client | 1.2 |
| 104 | Client I D Number | 1.2 |
| 105 | GMAC-RFC Loan Number | 1.2 |
| 106 | Servicer Contractual Obligations | 1.2 |
| 107 | Notice | 1.3 |
| 108 | Hours of Operation and Holidays | 1.3 |
| 109 | Client Guide Organization | 1.3 |
| 110 | Headings, Use of Capitalization and Definitions | 1.5 |
| 111 | Form and Exhibit Numbering | 1.5 |
| 112 | Client Guide Online | 1.5 |
| 113 | General Rules of I nterpretation | 1.5 |
| 114 | Use of Client's Name | 1.6 |
| 115 | Use of GMAC-RFC Name and Service Marks | 1.7 |
| 116 | Assetinfo | 1.7 |

# Chapter 2, Client Eligibility

| | | |
|---|---|---|
| 200 | Client Eligibility | 2.1 |
| 201 | Eligibility Standards | 2.2 |
| 202 | Client Contract | 2.4 |
| 203 | Client Underwriting Responsibilities | 2.4 |
| 204 | Continuing Client Obligations | 2.4 |
| 205 | Disqualification, Suspension or I nactivation | 2.4 |
| 206 | Reporting Requirements | 2.6 |
| 207 | Audits and I nspections | 2.8 |
| 208 | Disclosure of I nformation | 2.8 |
| 209 | Maintenance of Records | 2.9 |
| 210 | Quality Control | 2.9 |

© 2006 Residential Funding Company, LLC (f/k/a Residential Funding Corporation). All rights reserved.

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200   Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201   Specific Representations, Warranties and Covenants
       Concerning Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.2
A202   Specific Representations, Warranties and Covenants
       Concerning Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203   Additional Client Representations, Warranties and Covenants
       for the Home Equity Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204   Non-Standard Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205   Proof of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.18
A206   Integrity of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207   Third-Party Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A208   Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A209   Remedies of GMAC-RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A210   Repurchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A211   Disqualification Suspension or Inactivation . . . . . . . . . . . . . . . . . . . . .2A.27
A212   Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A213   Right of Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A214   Merger or Consolidation of Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A215   Notification of Changes in Client Status . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A216   Premium Recapture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30

# Chapter 3, Loan Eligibility

300   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
301   Loan Seasoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
302   Required Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.2

**GMAC-RFC**

# Chapter 3A Occupancy, Borrower and Ownership Status

A300   Occupancy Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.1
A301   Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
A302   Borrower Citizenship Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
A303   Other Borrower Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.5
A304   Multiple Loans to One Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.6
A305   Ownership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.6

# Chapter 3B, Transactions

B300   Arm's Length and Non-Arm's Length Transactions . . . . . . . . . . . . . . . . .3B.1
B301   Transaction Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3B.1

# Chapter 3C, Financing

C300   Determining Amount to Be Financed . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
C301   Calculating Loan-to-Value Ratios . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
C302   Secondary or Subordinate Financing . . . . . . . . . . . . . . . . . . . . . . . . . .3C.4
C303   Sales Concessions or Home-seller Subsidy . . . . . . . . . . . . . . . . . . . . .3C.5
C304   Escrow Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.5
C305   Temporary Buydowns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.7
C306   West Virginia Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.8
C307   Texas Equity Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.9
C308   Current Payment History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.12

**GMAC-RFC**

# Chapter 3D, Property Types and Considerations

**D300  Property Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3D.1**
**D301  Eligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3D.1**
**D302  Ineligible Property Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3D.5**
**D303  Project Requirements for Warrantable Condominiums and PUDs** . . . . . . . **3D.6**

# Chapter 3E, Loan Documents and Notes

**E300  Note Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3E.1**
**E301  Loan Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3E.3**

# Chapter 3F, Insurance and Survey Requirements

**F300  Insurance Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.1**
**F301  Hazard Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.1**
**F302  Mortgage Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.3**
**F303  Earthquake Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.7**
**F304  Flood Certification** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.7**
**F305  Flood Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.7**
**F306  Condominium Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.8**
**F307  PUD Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.11**
**F308  Title Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.12**
**F309  Title Search/Insurance for Second Mortgage Programs** . . . . . . . . . . . **3F.16**
**F310  Survey Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3F.16**

# Chapter 3G, Prepayment Penalties

**G300  Prepayment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3G.1**
**G301  Prepayment Penalty** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3G.1**
**G302  Program Prepayment Pricing Requirements** . . . . . . . . . . . . . . . . . . **3G.3**
**G303  Note Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3G.4**
**G304  Compliance with Applicable Laws** . . . . . . . . . . . . . . . . . . . . . . . . **3G.4**

**GMAC-RFC**

# Chapter 4, Underwriting

**400  Description of Underlying Chapters** ................................ **4.1**
**401  Client Underwriting Responsibility** ................................ **4.1**
**402  GMAC-RFC Underwriting Review** ................................. **4.2**
**403  Loan Application Analysis** ...................................... **4.2**
**404  Electronic Documentation Standards** ............................ **4.2**

# Chapter 4A, Credit

**A400  Credit Report Requirements** .................................. **4A.1**
**A401  Credit Score Requirements** ................................... **4A.1**
**A402  Selecting Credit Score** ...................................... **4A.2**
**A403  Minimum Credit History and Trade Line Requirements** ................. **4A.2**
**A404  Credit Evaluation Overview** .................................. **4A.3**
**A405  Credit Evaluation Components** ................................ **4A.4**
**A406  Upgrading the Credit Grade** ................................. **4A.11**

# Chapter 4B, Liabilities and Debt Ratios

**B400  Qualifying Ratios—Payment** ................................. **4B.1**
**B401  Borrower's Liabilities** ...................................... **4B.3**
**B402  Debt Payoff** ............................................. **4B.4**
**B403  Co-Signed Debts** ......................................... **4B.4**
**B404  Divorce Debts** ........................................... **4B.4**
**B405  Business Debts** .......................................... **4B.4**
**B406  Borrower Capacity** ....................................... **4B.4**
**B407  Student Loans** ........................................... **4B.4**

# Chapter 4C, Cash to Close

**C400  Cash to Close** ........................................... **4C.1**
**C401  Reserve Requirements** ..................................... **4C.4**

**GMAC-RFC**

# Chapter 4D, Income Types

D400  Borrower Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
D401  Employment and Income Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.1
D402  Income Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
D403  Wage Earners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.2
D404  Self-Employed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.3
D405  Fixed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.4
D406  Rental Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.6
D407  Other Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4D.7
D408  Trailing or Relocating Co-Borrower . . . . . . . . . . . . . . . . . . . . . . . . . 4D.8

# Chapter 4E, Income Documentation

E400  Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.1
E401  Full Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . 4E.2
E402  Lite Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . 4E.5
E403  One Paystub Income Documentation Requirements . . . . . . . . . . . . . 4E.6
E404  Fast Income Documentation Requirements . . . . . . . . . . . . . . . . . . . . 4E.6
E405  Stated Income Documentation Requirements . . . . . . . . . . . . . . . . . 4E.10
E406  No Ratio Documentation Requirements . . . . . . . . . . . . . . . . . . . . . . 4E.10
E407  Stated Income/Stated Asset Documentation Requirements . . . . . . . . 4E.12
E408  No Income/No Asset Documentation Requirements . . . . . . . . . . . . . 4E.13
E409  No Doc Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4E.13

# Chapter 4F, Appraisal Requirements and Property Underwriting

F400  Collateral Property Underwriting . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.1
F401  Appraiser Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F402  Appraisal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.2
F403  Appraisal Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4F.6
F404  Additional Review Considerations . . . . . . . . . . . . . . . . . . . . . . . . . 4F.15

# Chapter 4G, Electronic Services

G400  Overview and Incorporation of Terms of Use . . . . . . . . . . . . . . . . . . . . . 4G.1
G401  Assetwise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4G.2
G402  Assetwise Compliance Engine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4G.5

# Chapter 5, Products

500   Product Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1
501   Fixed-Rate Mortgages (FRM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.2
502   Adjustable Rate Mortgages (ARM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.8
503   Balloon Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.81
504   1st Lien Line of Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.83

# Chapter 6, Loan Programs

600   Loan Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1

# Chapter 6A, Jumbo A Loan Program

A600  Jumbo A Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.1
A602  Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.10
A603  EasyFi or Streamline Refinance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6A.10

# Chapter 6B, Expanded Criteria Loan Program

B600  Expanded Criteria Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.1
B601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.1
B602  Stated and No Ratio Income Documentation . . . . . . . . . . . . . . . . . . . . 6B.10
B603  Stated Income/Stated Asset, No Income/No Asset, and
No Doc Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.10
B604  Uninsured LTV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6B.12

**GMAC-RFC**

# Chapter 6C, Payment Option Loan Program

C600  Payment Option Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.1
C601  Payment Option First Generation Eligibility Standards . . . . . . . . . . . . .6C.4
C602  Payment Option Second Generation Eligibility Standards . . . . . . . . . .6C.14
C603  Stated Income Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6C.25
C604  Stated Income/Stated Asset Documentation . . . . . . . . . . . . . . . . . . .6C.26

# Chapter 6D, Home Solution Loan Program

D600  Home Solution Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6D.1
D601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6D.1

# Chapter 6E, AlterNet Loan Program

E600  AlterNet Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.1
E601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.1
E602  Interest Only Feature Eligibility Standards . . . . . . . . . . . . . . . . . . . .6E.12
E603  80/20 Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6E.15

# Chapter 6F, Performance Loan Program

F600  Performance Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6F.1
F601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6F.1

# Chapter 6G, 1st Lien Line of Credit Loan Program

G600  1st Lien Line of Credit Program . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
G601  Eligibility Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6G.1
G602  Supplemental 1st Lien Line of Credit Information . . . . . . . . . . . . . . . .6G.8

# Chapter 6H, Home Equity Loan Program

**H600  Home Equity Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6H.1
**H602  Supplemental Home Equity Information** . . . . . . . . . . . . . . . . . . .6H.13
**H603  Home Equity Program Goal Line Product Description** . . . . . . . . . . . . . .6H.14
**H604  Home Equity Program Goal Loan Description** . . . . . . . . . . . . . . . . . . .6H.18

# Chapter 6I, 125 CLTV Loan Program

**I600  125 CLTV Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
**I601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6I.1
**I602  Supplemental 125 CLTV Program Information** . . . . . . . . . . . . . . . . . 6I.13

# Chapter 6J, Non-Standard Loan Program

**J600  Non-Standard Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1
**J601  Ineligible Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6J.1

# Chapter 7, At-A-Glances

**700  Program At-A-Glances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

**GMAC-RFC**

# Chapter 8, Servicing Released

| 800 | Servicing Released | 8.1 |
| 801 | Program Overview | 8.1 |
| 802 | Designated Servicer | 8.2 |
| 803 | Contractual Obligations | 8.2 |
| 804 | Program Eligibility | 8.2 |
| 805 | Disqualification Suspension or Inactivation | 8.2 |
| 806 | Restrictions on Loan Eligibility | 8.3 |
| 807 | Record Maintenance | 8.3 |
| 808 | Final Documents | 8.3 |
| 809 | Disclosure of Information; Cooperation | 8.3 |
| 810 | Client Representations and Warranties; Events of Servicer Default Prior to Transfer | 8.4 |
| 811 | Specific Warranties and Covenants | 8.4 |
| 812 | Notification of Change in Servicer | 8.8 |
| 813 | Escrow Account for Postponed Improvements/Repairs | 8.9 |
| 814 | Interest on Escrows | 8.9 |
| 815 | Termination of Automatic Payment | 8.9 |
| 816 | Purchase of Servicing | 8.9 |
| 817 | Servicing Released Submission of Purchase | 8.9 |
| 818 | Required Servicing Documents | 8.10 |
| 819 | Sale Date and Effective Date of Transfer | 8.11 |
| 820 | Reconciliation by GMAC-RFC | 8.12 |
| 821 | Notification of Purchase | 8.15 |
| 822 | Monies Paid for Servicing Released | 8.15 |
| 823 | Monies Due Client | 8.16 |
| 824 | Monies Due Designated Servicer | 8.17 |
| 825 | Loans Paid in Full | 8.18 |
| 826 | Servicing Document Corrections | 8.18 |
| 827 | Bulk Servicing Acquisitions | 8.19 |
| 828 | Subservicing Election | 8.19 |

# Chapter 9, Commitment, Prior Approval, Delivery and Funding

| 900 | Descriptions of Underlying Chapters | 9.1 |
| 901 | Written Communication | 9.1 |
| 902 | Assetinfo | 9.1 |

**GMAC-RFC**

# Chapter 9A, Commitments

A900  Commitment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.1
A901  Requesting a Commitment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.2
A902  Commitment Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.3
A903  Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.3
A904  Failure to Deliver or Over-Deliver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.4
A905  Extension and Buyout Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9A.5

# Chapter 9B, Prior Underwriting Approval

B900  Prior Underwriting Submission—Delivery Requirements . . . . . . . . . . . . . 9B.1
B901  Required Documents for Prior Underwriting . . . . . . . . . . . . . . . . . . . . . . . 9B.1
B902  Notification of Prior Underwriting Loan File Status . . . . . . . . . . . . . . . . . 9B.3
B903  Returning Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3
B904  Equal Credit Opportunity Act (ECOA) and Home
       Mortgage Disclosure Act (HMDA) Compliance . . . . . . . . . . . . . . . . . . . . 9B.3
B905  Additional Delivery Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9B.3

# Chapter 9C, Delivery

C900  Delivery Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.1
C901  Submission of Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.1
C902  Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.2
C903  Review and Acceptance of Funding Documents . . . . . . . . . . . . . . . . . . . . 9C.9
C904  MERS Loan Registration, Transfer and Delivery Requirements . . . . . . . . 9C.10
C905  Alternative Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9C.11

**GMAC-RFC**

# Chapter 9D, Funding Requirements and Wire Instructions

D900  Wire Transfer Process  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.1
D901  Funding Amount  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.1
D902  Notification of Wire Transfer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.4
D903  Payoff Prior to Funding Date  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.5
D904  Loans Paid in Full  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9D.5
D905  Failure to Comply with GMAC-RFC Remittance Requirements  . . . . . . . . . 9D.6

# Chapter 9E, Final Documents

E900  Submission of Final Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.1
E901  Review and Acceptance of Final Documents  . . . . . . . . . . . . . . . . . . . . . 9E.2
E902  Further Assurance Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9E.2

# Chapter 10, Definitions

# Chapter 11, Forms and Exhibits

1100  GMAC-RFC Forms and Exhibits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.1



# 2A
Page 2A.2 **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1]. Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

# GMAC-RFC

**2A**
Page 2A.3
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

## (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

## (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

## (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

## (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.

# 2A
Page 2A.4

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**



# GMAC-RFC

## (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

## (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

## (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

## (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

## (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

## (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

#### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

#### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

#### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

#### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



**2A**
Page 2A.6

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(E) Ownership; Transfer**

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

**(F) Disbursements; No Payoffs or Future Advancements**

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

**(G) No Default**

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

**(H) No Defenses**

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**

Page 2A.7

09/11/06

Client Guide
**Representations,
Warranties and
Covenants**

**(I)  Compliance with Law**

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

**(J)  Responsible Lending Representations, Warranties and Covenants**

**(1)  No Discontinued Loans**

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

**(a)  HOEPA/Section 32**

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

**(b)  Purchase Money Loans with High Points or Fees**

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A
Page 2A.8

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**
Page 2A.9
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(2)  Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3)  Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a)  **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b)  **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

   • The penalty may be enforced for only the first five years following consummation;

   • The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

   • The **Prepayment** penalty does not become due upon default

(c)  **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d)  **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



# 2A
Page 2A.10

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### (M) Valid First Liens

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

### (N) No Encroachments By Adjoining Properties; Improvements

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

### (O) Survey

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

### (P) No Liens

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

### (Q) No Adverse Circumstances

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(R) Casualty Insurance**

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

**(S) Primary Mortgage Insurance**

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

**(T) Underwriting; Appraisal; Appraiser**

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if an **Automated Valuation Model (AVM)** is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



# 2A
Page 2A.12

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W) Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

**GMAC-RFC**

**(Y) Execution of Documents**

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

**(Z) Leaseholds**

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

**(AA) Condominiums; Planned Unit Developments (PUDs)**

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

**(BB) Compliance By Others**

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

**(CC) Client Contract Warranties**

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

**(DD) Client and Originators**

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

**(EE) No Impairment of Insurance**

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

**(FF) Temporary Buydowns**

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3C**, Financing, of this Client Guide.



# 2A
Page 2A.14

**GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

## (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

## (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

## (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**GMAC-RFC**

**2A**
Page 2A.15

12/11/05
Client Guide
**Representations,
Warranties and
Covenants**

**(KK) No Fraud or Misrepresentation**

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

**(LL) Exclusionary List**

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

**(MM) Early Payment Default**

Neither Client, nor any third party acting on behalf of Client, has made or will make a scheduled payment on a Loan during the 90-day period where the Loan is subject to repurchase for **Early Payment Default**.

## A203

### Additional Client Representations, Warranties and Covenants for the Home Equity Program

The Home Equity Program adheres to the Client representations, warranties and covenants stated below as well as the representations, warranties and covenants contained in this Client Guide.

Unless the Home Equity Loan is a valid first lien on the **Mortgaged Premises**, the following representation and warranty applies:

Valid Second Lien

Each **Security Instrument** transferred to GMAC-RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments described in the **Title Insurance** Section of this Chapter. No such impediment shall adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises.

The following additional representations and warranties are made by the Client to GMAC-RFC as of the **Purchase Date** of each Home Equity Loan:

**(A) Licensing**

The Client and any agents or correspondents originating for the Client have obtained all licenses and approvals required with respect to the origination of the Home Equity Loans, including, to the extent applicable, licenses and approvals required for small Loans or small advances and licenses and approvals required to charge the maximum interest rate allowable under State law.

**(B) No Contractor or Dealer Loans**

No home improvement contractor or dealer was involved as a third party originator of a Home Equity Loan or received compensation in any form from the Client.

**GMAC-RFC**

**2A**
Page 2A.19
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.



**2A**
Page 2A.20 **GMAC-RFC**

12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

**A208**

## Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or has failed to provide GMAC-RFC with information in a timely manner, including information required under Regulation AB or any successor regulation, that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

**GMAC-RFC**

**2A**
Page 2A.21
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A209

### Remedies of GMAC-RFC

#### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

- One or more other remedies in connection with the same Event of Default
- Any other rights which it may have at law or in equity

#### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

#### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

## A210

### Repurchase

#### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.



**2A**
Page 2A.22
06/26/
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.

If, for any particular Loan, Client has complied with its property valuation documentation requirements (as described under Specific Representations, Warranties and Covenants Concerning Individual Loans in the **Underwriting; Appraisal; Appraiser** Section) by providing a GMAC-RFC Qualified AVM in lieu of an appraisal, where the **Loan Program** terms permit the use of a **Qualified AVM** as the sole documentation of property valuation underlying such Loan, and provided a Qualified AVM was obtained by Client in good faith directly from Qualified AVM Vendors (See GMAC-RFC **Exhibit 16G05**, Automated Valuation Model (AVM) Approved Vendors) and has been submitted to GMAC-RFC in its original, unaltered form as issued by the Qualified AVM Vendor; or, alternatively, if GMAC-RFC has waived an appraisal and indicated such waiver in its Assetwise[SM] messaging (an **Appraisal Waiver**), then, if an **Event of Default** related to such Loan arises solely out of the validity and accuracy of the property valuation amount stated in the Qualified AVM, or otherwise related to the property valuation amount with respect to a loan where GMAC-RFC has granted an Appraisal Waiver, but provided that in all other aspects the Loan was eligible for purchase by GMAC-RFC at the time it was submitted for purchase by Client, GMAC-RFC will not exercise its right to demand repurchase for such particular Loan by reason of such particular Event of Default. However, in the case of either a **Qualified AVM** or an Appraisal Waiver, GMAC-RFC may continue to exercise its right to demand repurchase if GMAC-RFC reasonably believes that Client or any third party originator obtained a Qualified AVM or allowed GMAC-RFC to rely on an **Appraisal Waiver** in bad faith, such as by using a Qualified AVM where Client or the third party originator had reason to know that the mortgaged property was materially different than that described in the Qualified AVM or that the description in the Qualified AVM should not be considered reliable at the time the Loan was sold to GMAC-RFC, or where the Client or third party originator has reason to know that the mortgaged property was materially damaged.

**GMAC-RFC**

**2A**
Page 2A.23
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (B) Repurchase Price of First Mortgage Programs

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the **Buyout Fee** as calculated in the **Extension and Buyout Fees** Section of Chapter 9A, Commitments; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.



**2A**
Page 2A.24

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

### (C) Repurchase Price of Home Equity Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.

### (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/ Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

**GMAC-RFC**

**2A**
Page 2A.25
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

### (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other **Legal Documents**.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

### (F) Early Payment Default

If an **Early Payment Default** has occurred with respect to a specific Loan, GMAC-RFC may, at its sole discretion require the Client to repurchase the Loan. Client agrees to repurchase the Loan at the repurchase price, and according to the repurchase procedures and other repurchase terms set out in this Chapter except that Client shall not have the right to appeal GMAC-RFC's repurchase demand. This policy applies to all Loans seasoned less than six (6) months as of **Funding Date**.



# 2A

Page 2A.26   **GMAC-RFC**

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## (G) Substitution

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its sole discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

## (H) Cost of Transfer Fees Due to Repurchase

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

## (I) Notice and Appeal

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

GMAC-RFC
One Meridian Crossings
Suite 100
Minneapolis, MN 55423
Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.



# 2A
Page 2A.28

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

- The investment quality of Loans sold to GMAC-RFC

- The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

# EXHIBIT B-15

# *Client Guide*

# GMAC RFC

**Version 1-07-B03**

**Effective March 26, 2007**

**GMAC-RFC**

## Table of Contents

# Chapter 1, Introduction

| | | |
|---|---|---|
| **100** | **GMAC-RFC Objective** | **1.1** |
| **101** | **Client Contractual Obligations** | **1.1** |
| **102** | **Single Contract** | **1.1** |
| **103** | **Relationship of GMAC-RFC and Client** | **1.2** |
| **104** | **Client ID Number** | **1.2** |
| **105** | **GMAC-RFC Loan Number** | **1.2** |
| **106** | **Servicer Contractual Obligations** | **1.2** |
| **107** | **Notice** | **1.3** |
| **108** | **Hours of Operation and Holidays** | **1.3** |
| **109** | **Client Guide Organization** | **1.3** |
| **110** | **Headings, Use of Capitalization and Definitions** | **1.5** |
| **111** | **Form and Exhibit Numbering** | **1.5** |
| **112** | **Client Guide Online** | **1.5** |
| **113** | **General Rules of Interpretation** | **1.5** |
| **114** | **Use of Client's Name** | **1.6** |
| **115** | **Use of GMAC-RFC Name and Service Marks** | **1.7** |
| **116** | **Assetinfo** | **1.7** |

# Chapter 2, Client Eligibility

| | | |
|---|---|---|
| **200** | **Client Eligibility** | **2.1** |
| **201** | **Eligibility Standards** | **2.2** |
| **202** | **Client Contract** | **2.4** |
| **203** | **Client Underwriting Responsibilities** | **2.4** |
| **204** | **Continuing Client Obligations** | **2.4** |
| **205** | **Disqualification, Suspension or Inactivation** | **2.4** |
| **206** | **Reporting Requirements** | **2.6** |
| **207** | **Audits and Inspections** | **2.8** |
| **208** | **Disclosure of Information** | **2.8** |
| **209** | **Maintenance of Records** | **2.9** |
| **210** | **Quality Control** | **2.9** |

© 2007 Residential Funding Company, LLC (f/k/a Residential Funding Corporation). All rights reserved.

**GMAC-RFC**

# Chapter 2A, Representations, Warranties and Covenants

A200  Client Representations Warranties and Covenants . . . . . . . . . . . . . . . . . .2A.1
A201  Specific Representations, Warranties and Covenants
      Concerning Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.2
A202  Specific Representations, Warranties and Covenants
      Concerning Individual Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.5
A203  Additional Client Representations, Warranties and Covenants
      for the Home Equity Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.15
A204  Non-Standard Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.17
A205  Proof of Compliance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.18
A206  Integrity of Information  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A207  Third-Party Originators  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.19
A208  Events of Default  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.20
A209  Remedies of GMAC-RFC  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A210  Repurchase  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.21
A211  Disqualification Suspension or Inactivation  . . . . . . . . . . . . . . . . . . . .2A.27
A212  Indemnification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.28
A213  Right of Set-Off  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A214  Merger or Consolidation of Client  . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.29
A215  Notification of Changes in Client Status  . . . . . . . . . . . . . . . . . . . . . . .2A.29
A216  Premium Recapture  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2A.30

# Chapter 3, Loan Eligibility

300   Descriptions of Underlying Chapters . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
301   Loan Seasoning  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.1
302   Required Signatures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3.2

**GMAC-RFC**

# Chapter 3A, Occupancy, Borrower and Ownership Status

**A300  Occupancy Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.1
**A301  Borrower Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
**A302  Borrower Citizenship Status** . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.2
**A303  Other Borrower Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.5
**A304  Multiple Loans to One Borrower** . . . . . . . . . . . . . . . . . . . . . . . . .3A.6
**A305  Ownership Interests** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3A.6

# Chapter 3B, Transactions

**B300  Arm's Length and Non-Arm's Length Transactions** . . . . . . . . . . . . . . . . . .3B.1
**B301  Transaction Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3B.1

# Chapter 3C, Financing

**C300  Determining Amount to Be Financed** . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
**C301  Calculating Loan-to-Value Ratios** . . . . . . . . . . . . . . . . . . . . . . . . . .3C.1
**C302  Secondary or Subordinate Financing** . . . . . . . . . . . . . . . . . . . . . . . .3C.4
**C303  Sales Concessions or Home-seller Subsidy** . . . . . . . . . . . . . . . . . . . .3C.5
**C304  Escrow Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.5
**C305  Temporary Buydowns** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.7
**C306  West Virginia Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.8
**C307  Texas Equity Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.9
**C308  Current Payment History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3C.12

**GMAC-RFC**

# Chapter 3D, Property Types and Considerations

**D300  Property Issues**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3D.1**
**D301  Eligible Property Types**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3D.1**
**D302  Ineligible Property Types**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3D.5**
**D303  Project Requirements for Warrantable Condominiums and PUDs** . . . . . . .**3D.6**

# Chapter 3E, Loan Documents and Notes

**E300  Note Requirements**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3E.1**
**E301  Loan Documents**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3E.3**

# Chapter 3F, Insurance and Survey Requirements

**F300  Insurance Requirements**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.1**
**F301  Hazard Insurance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.1**
**F302  Mortgage Insurance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.3**
**F303  Earthquake Insurance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.7**
**F304  Flood Certification**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.7**
**F305  Flood Insurance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.7**
**F306  Condominium Insurance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.8**
**F307  PUD Insurance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.11**
**F308  Title Insurance**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.12**
**F309  Title Search/Insurance for Second Mortgage Programs**  . . . . . . . . . . . . .**3F.16**
**F310  Survey Requirements**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3F.16**

# Chapter 3G, Prepayment Penalties

**G300  Prepayment**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3G.1**
**G301  Prepayment Penalty**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3G.1**
**G302  Program Prepayment Pricing Requirements**  . . . . . . . . . . . . . . . . . . . . . .**3G.3**
**G303  Note Requirements**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3G.4**
**G304  Compliance with Applicable Laws**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3G.4**

**GMAC-RFC**

# Chapter 4, Underwriting

**400** **Description of Underlying Chapters** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4.1**
**401** **Client Underwriting Responsibility** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4.1**
**402** **GMAC-RFC Underwriting Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4.2**
**403** **Loan Application Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4.2**
**404** **Electronic Documentation Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4.2**

# Chapter 4A, Credit

**A400** **Credit Report Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4A.1**
**A401** **Credit Score Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4A.1**
**A402** **Selecting Credit Score** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4A.2**
**A403** **Minimum Credit History and Trade Line Requirements** . . . . . . . . . . . . . . .**4A.2**
**A404** **Credit Evaluation Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4A.3**
**A405** **Credit Evaluation Components** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4A.4**
**A406** **Upgrading the Credit Grade** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4A.11**

# Chapter 4B, Liabilities and Debt Ratios

**B400** **Qualifying Ratios—Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.1**
**B401** **Borrower's Liabilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.3**
**B402** **Debt Payoff** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.4**
**B403** **Co-Signed Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.4**
**B404** **Divorce Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.4**
**B405** **Business Debts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.4**
**B406** **Borrower Capacity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.4**
**B407** **Student Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4B.4**

# Chapter 4C, Cash to Close

**C400** **Cash to Close** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4C.1**
**C401** **Reserve Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4C.4**

**GMAC-RFC**

# Chapter 4D, Income Types

**D400  Borrower Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.1**
**D401  Employment and Income Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.1**
**D402  Income Types** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.2**
**D403  Wage Earners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.2**
**D404  Self-Employed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.3**
**D405  Fixed Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.4**
**D406  Rental Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.6**
**D407  Other Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.7**
**D408  Trailing or Relocating Co-Borrower** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4D.8**

# Chapter 4E, Income Documentation

**E400  Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4E.1**
**E401  Full Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . .**4E.2**
**E402  Lite Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . .**4E.5**
**E403  One Paystub Income Documentation Requirements** . . . . . . . . . . . . . . .**4E.6**
**E404  Fast Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . .**4E.6**
**E405  Stated Income Documentation Requirements** . . . . . . . . . . . . . . . . . . . .**4E.10**
**E406  No Ratio Documentation Requirements** . . . . . . . . . . . . . . . . . . . . . . . . .**4E.10**
**E407  Stated Income/Stated Asset Documentation Requirements** . . . . . . . . .**4E.12**
**E408  No Income/No Asset Documentation Requirements** . . . . . . . . . . . . . . .**4E.13**
**E409  No Doc Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4E.13**

# Chapter 4F, Appraisal Requirements and Property Underwriting

**F400  Collateral Property Underwriting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4F.1**
**F401  Appraiser Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4F.3**
**F402  Appraisal Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4F.3**
**F403  Appraisal Evaluation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4F.7**
**F404  Additional Review Considerations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4F.16**

**GMAC-RFC**

# Chapter 4G, Electronic Services

**G400  Overview and Incorporation of Terms of Use** ....................**4G.1**
**G401  Assetwise** ...........................................................**4G.2**
**G402  Assetwise Compliance Engine** ...................................**4G.5**

# Chapter 5, Products

**500   Product Descriptions** ............................................**5.1**
**501   Fixed-Rate Mortgages (FRM)** ...................................**5.2**
**502   Adjustable Rate Mortgages (ARM)** ..............................**5.8**
**503   Balloon Mortgages** ..............................................**5.81**
**504   1st Lien Line of Credit** .........................................**5.83**

# Chapter 6, Loan Programs

**600   Loan Programs** ..................................................**6.1**

# Chapter 6A, Jumbo A Loan Program

**A600  Jumbo A Program** ...............................................**6A.1**
**A601  Eligibility Standards** ...........................................**6A.1**
**A602  Stated Income Documentation** ..................................**6A.10**
**A603  EasyFi or Streamline Refinance** ................................**6A.10**

# Chapter 6B, Expanded Criteria Loan Program

**B600  Expanded Criteria Program** .....................................**6B.1**
**B601  Eligibility Standards** ...........................................**6B.1**
**B602  Stated and No Ratio Income Documentation** ....................**6B.10**
**B603  Stated Income/Stated Asset, No Income/No Asset,
       and No Doc Documentation** ....................................**6B.10**
**B604  Uninsured LTV** .................................................**6B.12**

**GMAC-RFC**

# Chapter 6C, Payment Option Loan Program

C600  **Payment Option Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6C.1**
C601  **Payment Option First Generation Eligibility Standards** . . . . . . . . . . . . . . . **6C.4**
C602  **Payment Option Second Generation Eligibility Standards** . . . . . . . . . . . **6C.14**
C603  **Stated Income Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6C.25**
C604  **Stated Income/Stated Asset Documentation** . . . . . . . . . . . . . . . . . . . . . . **6C.26**

# Chapter 6D, Home Solution Loan Program

D600  **Home Solution Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6D.1**
D601  **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6D.1**

# Chapter 6E, AlterNet Loan Program

E600  **AlterNet Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6E.1**
E601  **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6E.1**
E602  **Interest Only Feature Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . **6E.12**
E603  **80/20 Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6E.15**

# Chapter 6F, Performance Loan Program

F600  **Performance Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6F.1**
F601  **Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6F.1**

**GMAC-RFC**

# Chapter 6G, 1st Lien Line of Credit Loan Program

**G600  1st Lien Line of Credit Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**6G.1**
**G601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**6G.1**
**G602  Supplemental 1st Lien Line of Credit Information** . . . . . . . . . . . . . . . . .**6G.8**

# Chapter 6H, Home Equity Loan Program

**H600  Home Equity Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**6H.1**
**H601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**6H.1**
**H602  Supplemental Home Equity Information** . . . . . . . . . . . . . . . . . . . . . . . .**6H.13**
**H603  Home Equity Program Goal Line Product Description** . . . . . . . . . . . . . .**6H.14**
**H604  Home Equity Program Goal Loan Description** . . . . . . . . . . . . . . . . . . . .**6H.18**

# Chapter 6I, 125 CLTV Loan Program

**I600  125 CLTV Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6I.1**
**I601  Eligibility Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6I.1**
**I602  Supplemental 125 CLTV Program Information** . . . . . . . . . . . . . . . . . . . . **6I.13**

# Chapter 6J, Non-Standard Loan Program

**J600  Non-Standard Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6J.1**
**J601  Ineligible Loans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6J.1**

# Chapter 7, At-A-Glances

**700  Program At-A-Glances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7.1**

**GMAC-RFC**

# Chapter 8, Servicing Released

800 Servicing Released . . . . . 8.1
801 Program Overview . . . . . 8.1
802 Designated Servicer . . . . . 8.2
803 Contractual Obligations . . . . . 8.2
804 Program Eligibility . . . . . 8.2
805 Disqualification Suspension or Inactivation . . . . . 8.2
806 Restrictions on Loan Eligibility . . . . . 8.3
807 Record Maintenance . . . . . 8.3
808 Final Documents . . . . . 8.3
809 Disclosure of Information; Cooperation . . . . . 8.3
810 Client Representations and Warranties; Events of Servicer Default Prior to Transfer . . . . . 8.4
811 Specific Warranties and Covenants . . . . . 8.4
812 Notification of Change in Servicer . . . . . 8.8
813 Escrow Account for Postponed Improvements/Repairs . . . . . 8.9
814 Interest on Escrows . . . . . 8.9
815 Termination of Automatic Payment . . . . . 8.9
816 Purchase of Servicing . . . . . 8.9
817 Servicing Released Submission of Purchase . . . . . 8.9
818 Required Servicing Documents . . . . . 8.10
819 Sale Date and Effective Date of Transfer . . . . . 8.11
820 Reconciliation by GMAC-RFC . . . . . 8.12
821 Notification of Purchase . . . . . 8.14
822 Monies Paid for Servicing Released . . . . . 8.14
823 Monies Due Client . . . . . 8.15
824 Monies Due Designated Servicer . . . . . 8.16
825 Loans Paid in Full . . . . . 8.17
826 Servicing Document Corrections . . . . . 8.17
827 Bulk Servicing Acquisitions . . . . . 8.18
828 Subservicing Election . . . . . 8.18

# Chapter 9, Commitment, Prior Approval, Delivery and Funding

900 Descriptions of Underlying Chapters . . . . . 9.1
901 Written Communication . . . . . 9.1
902 Assetinfo . . . . . 9.1

**GMAC-RFC**

# Chapter 9A, Commitments

A900  Commitment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.1
A901  Requesting a Commitment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.2
A902  Commitment Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.3
A903  Commitment Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.3
A904  Failure to Deliver or Over-Deliver . . . . . . . . . . . . . . . . . . . . . . . . . .9A.4
A905  Extension and Buyout Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9A.5

# Chapter 9B, Prior Underwriting Approval

B900  Prior Underwriting Submission—Delivery Requirements . . . . . . . . . . . .9B.1
B901  Required Documents for Prior Underwriting . . . . . . . . . . . . . . . . . . . . .9B.1
B902  Notification of Prior Underwriting Loan File Status . . . . . . . . . . . . . . . .9B.3
B903  Returning Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3
B904  Equal Credit Opportunity Act (ECOA) and Home Mortgage
       Disclosure Act (HMDA) Compliance . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3
B905  Additional Delivery Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . .9B.3

# Chapter 9C, Delivery

C900  Delivery Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
C901  Submission of Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.1
C902  Funding Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.2
C903  Review and Acceptance of Funding Documents . . . . . . . . . . . . . . . . . .9C.9
C904  MERS Loan Registration, Transfer and Delivery Requirements . . . . . . . .9C.10
C905  Alternative Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9C.11

# Chapter 9D, Funding Requirements and Wire Instructions

D900  Wire Transfer Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D901  Funding Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.1
D902  Notification of Wire Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.4
D903  Payoff Prior to Funding Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
D904  Loans Paid in Full . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9D.5
D905  Failure to Comply with GMAC-RFC Remittance Requirements . . . . . . . . .9D.6

**GMAC-RFC**

# Chapter 9E, Final Documents

**E900  Submission of Final Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9E.1**
**E901  Review and Acceptance of Final Documents** . . . . . . . . . . . . . . . . . . . . . **9E.2**
**E902  Further Assurance Documents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9E.2**

# Chapter 10, Definitions

# Chapter 11, Forms and Exhibits

**1100  GMAC-RFC Forms and Exhibits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11.1**



# 2A
Page 2A.2   **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A201

### Specific Representations, Warranties and Covenants Concerning Client

#### (A) Due Organization; Good Standing; Licensing

Client and, to Client's knowledge, Client's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain all licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each State where a Mortgaged Property is located if the laws of such State require licensing or qualification in order to conduct business of the type conducted by Client[1]. Client is and will remain in compliance with the laws of any such State, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Loan. Client has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigation, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed, within two years prior to the date of the Client Contract, by any federal or State agency or instrumentality with respect to either the lending or related financial operations of Client, or the ability of Client to perform in accordance with the Program Documents terms. Each of the representations and warranties made by Client in its Client Application is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Client Contract, and as of each **Funding Date**.

[1] In addition, if any Loan is secured by mortgaged property located in the State of West Virginia, Client and the originator of the Loan is licensed under the West Virginia Mortgage Loan Act and Client and the originator of the Loan held such license at the time the Loan was originated, unless otherwise exempt from licensing. Client and the originator of the Loan must be licensed under the West Virginia Mortgage Loan Act even if Client and the originator of the Loan makes or offers to make or accepts or offers to accept or purchases or services in a calendar year fewer than the number of de minimus primary or subordinate mortgage Loans specified in the definition of "lender" in W. Va. Code Section 31-17-1.

#### (B) Authority

Client has and will maintain the full corporate, partnership or limited liability company power and authority to execute and deliver the Program Documents and to perform the terms of this Client Guide. The execution, delivery, and performance of the Program Documents and the performance of the terms of this Client Guide by Client, and the consummation of the transactions contemplated, have been duly and validly authorized. The Program Documents and this Client Guide evidence Client's legal valid, binding, and enforceable obligations. All requisite corporate, partnership or limited liability company action has been taken by Client to make the Program Documents and the terms of this Client Guide valid and binding upon Client and enforceable in accordance with their respective terms.

#### (C) Ordinary Course of Business

The consummation of the transactions contemplated by the Program Documents and the Client Guide terms are in Client's ordinary course of business, and the transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages by Client, pursuant to the Program Documents and the Client Guide terms are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

**GMAC-RFC**

**2A**
Page 2A.3
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (D) No Conflicts

Neither the execution and delivery of the Program Documents, the acquisition and/or making of the Loans by Client, the sale of the Loans to GMAC-RFC or the transactions contemplated thereby or pursuant to this Client Guide, nor the fulfillment of or compliance with the Program Documents terms and conditions, will conflict with or result in a breach of any of the terms, conditions, or provisions of Client's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which Client is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Client, or any of its property is subject, or impair the ability of GMAC-RFC to realize on any of the Loans, or impair the Value of any of the Loans.

## (E) Ability to Perform

Client has the ability to perform each and every obligation of and/or satisfy each and every requirement imposed on, Client pursuant to the Program Documents and this Client Guide, and no offset, counterclaim, or defense exists to the full performance by Client of the requirements of Program Documents and this Client Guide.

## (F) No Litigation Pending

There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened against Client that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Client, or in any material liability on the part of Client, or which would draw into question the validity or enforceability of any of the Program Documents, this Client Guide, or the Loans or of any action taken or to be taken in connection with Client's obligations contemplated in any of the Program Documents or this Client Guide, or which would be likely to impair materially Client's ability to perform under the terms of the Program Documents or this Client Guide.

## (G) No Consent Required

No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Client of, or compliance by Client with, any of the Program Documents or this Client Guide, the sale of any of the Loans, or the consummation of any of the transactions contemplated by any of the Purchase Documents, or, if required, such unconditional approval has been obtained prior to the related **Funding Date**.

## (H) No Untrue Information

Neither the Program Documents, the Client Application, this Client Guide, nor any statement, report, or other document furnished or to be furnished by Client pursuant to the Program Documents or this Client Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Client meets GMAC-RFC's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.



# 2A

Page 2A.4

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (I) Securities Law

The Client represents that the Loans are not "securities" under any federal or State securities laws or any rules or regulations thereunder and that the transactions contemplated by this Client Guide do not require registration under, and are not subject to, any federal or State securities laws or any rules or regulations thereunder.

### (J) No Accrued Liabilities

Except as may be otherwise disclosed by Client to GMAC-RFC and acknowledged by GMAC-RFC in writing prior to the date of the Client Contract, there are no accrued liabilities of Client, with respect to any of the Loans, or circumstances under which any such accrued liabilities will arise against GMAC-RFC, as successor to Client's interests in and to the Loans, with respect to any action or failure to act by Client occurring on or prior to the **Funding Date**.

### (K) Origination, Servicing

Client's origination and servicing of the Loans have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

### (L) Compliance With Laws

Client has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Client, or the ability of Client to consummate the transactions contemplated by the Program Documents and this Client Guide.

### (M) Compliance With Program Documents and Client Guide

Client will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding Client, the Loan, the Mortgaged Property or the Mortgagor of which Client has knowledge, which occurrence, act, or omission may materially affect Client, the Loan, the Mortgaged Property, or the Mortgagor.

### (N) No Defenses Against GMAC-RFC

The Client has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**GMAC-RFC**

**2A**
Page 2A.5
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A202

### Specific Representations, Warranties and Covenants Concerning Individual Loans

For all Loans, the Client represents, warrants and covenants to GMAC-RFC as follows:

### (A) Loans Are Eligible; Accuracy of Information

Each of the Loans delivered and sold to GMAC-RFC meets the applicable program terms and criteria set forth in this Client Guide. All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file.

### (B) Compliance With Warranties

The Client is in compliance with, and has taken all necessary action to ensure that each Loan is in compliance with all representations, warranties and requirements contained in this Client Guide.

### (C) Loan Provisions

The provisions of the Loan have not been impaired, waived, altered or modified in any respect, unless approved in writing by GMAC-RFC. The issuer of any related PMI Policy and the title insurer have approved the substance of any such waiver, alteration, or modification to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

### (D) Documents

All **Loan Documents**, **Funding Documents** and **Final Documents** are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide, and each Loan is the Mortgagor's legal, valid and binding obligation enforceable in accordance with its terms. All originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate. All Loan Documents, Funding Documents, Final Documents and all other documents describing or otherwise relating thereto are in compliance with all applicable local and State laws, regulations and orders.



# 2A
**GMAC-RFC**

## (E) Ownership; Transfer

The Client has good title to and is the sole owner of, each Loan delivered and sold to GMAC-RFC. Except for the security interest of a warehouse lender, which security interest Client has disclosed to GMAC-RFC in writing, the assignment of the Loan by the Client validly transfers such Loan to GMAC-RFC free and clear of any pledge, lien or security interest or other encumbrance.

For each Loan registered with **MERS**, the Client represents that (a) if the **Security Instrument** relating to such Loan identifies MERS as the original mortgagee of record, such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns and that such Security Instrument has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest on the **Mortgaged Premises** in favor of MERS, solely as nominee for the Client and its successors and assigns; or (b) if the Loan is registered with MERS, and MERS is not the original mortgagee of record, an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS. Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that the Client has confirmed the transfer on MERS to GMAC-RFC.

## (F) Disbursements; No Payoffs or Future Advancements

Each Loan has been closed and fully disbursed, except as permitted in the **Escrow Account for Postponed Improvements/Repairs** Section of this Client Guide. There are no payoffs, assumptions or insurance claims pending on any Loan or pertaining to the Mortgaged Premises and the Borrower may not exercise any option under any of the **Loan Documents** to borrow additional funds secured thereby from the Client or any other person or entity without the Noteholder's consent.

Additionally, the Client warrants that the Client has not made arrangements with any Borrower for any payment forbearance or future refinancing with respect to any Loan.

## (G) No Default

There is no default, breach, violation or event of acceleration existing under any Note or **Security Instrument** transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by the Client or by any other entity involved in originating or servicing the Loan.

## (H) No Defenses

Except as provided in a buydown or subsidy agreement, if any, meeting the requirements set forth in this Client Guide, the Borrower (including any party secondarily liable under the **Loan Documents**) has no right of set-off, defense, counterclaim or right of rescission to any Loan Document.

**GMAC-RFC**

**2A**
Page 2A.7
09/11/06
Client Guide
**Representations,
Warranties and
Covenants**

## (I) Compliance with Law

The sale and transfer of each Loan to GMAC-RFC does not violate any applicable State laws. To the extent that any applicable State law places any restrictions on the transfer of any Loan, the Client has notified GMAC-RFC in writing of that restriction and any related State licensing or registration requirements.

The **Security Instrument** has been properly executed, acknowledged, delivered and recorded in all places necessary to perfect the security interest in the **Mortgaged Premises** in favor of the Client and its successors and assigns. If a Loan is registered with **MERS**, and MERS is identified on the Security Instrument as the original mortgagee of record, Client represents that such Security Instrument provides that the Security Instrument is given to MERS solely as nominee for the Client and its successors and assigns. If the Loan is registered with MERS, and MERS is not the original mortgagee of record, Client represents that an assignment to MERS has been prepared, duly executed and recorded and the chain of assignments is complete and recorded from the original mortgagee to MERS and Client further represents that it has complied with all rules and procedures of MERS for its assignment of the Security Instrument to GMAC-RFC, including, among other things, that Client has confirmed the transfer on MERS to GMAC-RFC.

Each GMAC-RFC Loan Application (**Fannie Mae** 1003/**Freddie Mac** Form 65) was taken from the Borrower and processed for each Loan, and each Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by the Client with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the Client or any other entity.

## (J) Responsible Lending Representations, Warranties and Covenants

### (1) No Discontinued Loans

No Loan is a "Discontinued Loan". Discontinued Loan means any of the following, regardless of whether the originator is required by law to comply with the law or has grounds to claim preemption from all or part of the law.

#### (a) HOEPA/Section 32

A loan considered a "mortgage" under Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602 (aa) and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations, and the official staff commentary to those regulations.

#### (b) Purchase Money Loans with High Points or Fees

A "purchase money" loan secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. A "purchase money" loan is a loan that is considered a "residential mortgage transaction" under Section 226.2(24) of Title 12 of the Code of Federal Regulations.



# 2A

Page 2A.8

11/21/05
Client Guide
Representations,
Warranties and
Covenants

**GMAC-RFC**

**(c) Home Equity Lines and 1st Lien Lines of Credit That Exceed the HOEPA Triggers**

An open-end line of credit secured by the consumer's principal dwelling that exceeds the "points and fees" or APR triggers of the Home Ownership and Equity Protection Act of 1994 and the related regulations and commentary promulgated by the Federal Reserve Board, including Section 226.32 of Title 12 of the Code of Federal Regulations. "Points and fees" must be calculated in accordance with Section 226.32 of Title 12 of the Code of Regulations and the related commentary promulgated by the Federal Reserve Board. The "APR" is the fully indexed rate or the initial rate, whichever is greater, at the time of consummation. The "total loan amount" is the total credit line available under the terms of the loan, without subtracting any amounts for closing costs.

**(d) State and Local High Cost Loans**

A loan considered a "high-cost," covered, "high-risk," "predatory" or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

**(e) Certain Georgia Home Loans**

A "home loan" under the Georgia Fair Lending Act, Ga. Code Ann. Section 7-6A-1 et. seq. that became effective on October 1, 2002 (the "Act"), if the Commitment was issued on or after February 1, 2003 and the loan was closed on or before March 7, 2003.

**(f) Certain New Jersey Home Loans**

A "home loan" under the New Jersey Home Ownership Security Act of 2002 (the "Act"), N.J.S.A. 46:10B-22 et seq. if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**(g) Certain New Mexico Home Loans**

A "home loan" under the New Mexico Home loan Protection Act (the "Act"), that was closed on or after February 1, 2004, and on or before February 26, 2004, if the loan is:

- A "home loan" if the property is a "**Manufactured Home**";
- A "home loan" with proceeds intended for home improvement purposes;
- A "home loan" that is an open-end line of credit;
- A closed-end "home loan" secured by a first or second lien that is a cash-out transaction;

Follow standard guidelines in the GMAC-RFC Client Guide to determine whether the loan is a cash-out refinance or a rate/term refinance.

**GMAC-RFC**

**2A**
Page 2A.9
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(2) Mandatory Arbitration Clause**

A Loan may not include a mandatory arbitration clause. Any arbitration agreement signed by the Borrower prior to the time of a dispute is prohibited.

**(3) Prohibited Terms and Practices on all Loans sold to GMAC-RFC**

A Loan may not violate any of the following prohibited terms and practices:

(a) **Pre-paid insurance products.** No Loan finances single premium credit life, credit disability, credit unemployment, or any other pre-paid life or health insurance, directly or indirectly.

(b) **Prepayment penalties**. A Loan may not provide for a penalty for paying all or part of the principal before the date on which the principal is due except as set forth in this paragraph and otherwise allowed by applicable federal, State, and local law.

   • The penalty may be enforced for only the first five years following consummation;

   • The penalty does not exceed 6 months of interest on the amount prepaid or 6% of the amount prepaid; and

   • The **Prepayment** penalty does not become due upon default

(c) **Reporting to credit bureaus.** Client or its **Servicer** must report to a nationally recognized consumer credit reporting agency at least quarterly the favorable and unfavorable payment history information of Borrower on payments due to Client on a Loan for the period during which Client holds or services the Loan. This paragraph shall not prevent Client or its Servicer from not reporting specific payment history information in the event of a resolved or unresolved dispute with Borrower and shall not apply to Loans held or serviced by Client for less than 90 days.

(d) **Increased interest rate upon default.** A Loan may not provide for an increase in the interest rate after default.

**(K) Title Insurance**

A policy of title insurance, in the form and amount required by this Client Guide, is effective as of the day the **Security Instrument** is recorded, is valid and binding, is in conformance with all agency guidelines and remains in full force and effect, unless the **Mortgaged Premises** are located in the State of Iowa and a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority has been provided as described in Title Guaranty Certificate In Iowa below.

**(L) Title Guaranty Certificate In Iowa**

As to each Loan secured by Mortgaged Premises located in the State of Iowa, and if an American Land Title Association (**ALTA**) Loan policy of title insurance has not been provided, a Title Guaranty Certificate issued by the Iowa Title Guaranty Division of the Iowa Finance Authority, in the form and amount required by this Client Guide, duly delivered and effective as of the closing of each such Loan, is valid and binding, and remains in full force and effect.



**2A**
Page 2A.10

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

**(M) Valid First Liens**

Each **Security Instrument** transferred to GMAC-RFC, unless provided for otherwise in a given **Loan Program**, constitutes a valid first lien on the **Mortgaged Premises** subject only to the minor impediments described in the **Title Insurance** Section of this Chapter, and such impediments do not adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises. Each Security Instrument and all related documents (including, without limitation, releases of prior Security Instruments, assumption agreements, assignments, amendments, powers of attorney, and modification, extension and consolidation agreements) that are required to be recorded or filed under applicable law in order to preserve in favor of GMAC-RFC the validity and enforceability of the Security Instrument and the liens created thereby, have been duly recorded in all appropriate recording offices, and all associated recording fees or taxes must be paid.

**(N) No Encroachments By Adjoining Properties; Improvements**

No improvements by adjoining properties encroach upon the Mortgaged Premises in any respect so as to affect the Value or marketability of the Mortgaged Premises. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

**(O) Survey**

All improvements which were considered in determining the appraised Value of the **Mortgaged Premises** lie wholly within its boundaries and the building restriction lines of the Mortgaged Premises, or the policy of title insurance insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance that either is disclosed or would have been disclosed by an accurate survey.

**(P) No Liens**

There are no delinquent tax or delinquent assessment liens against the Mortgaged Premises, and there are no mechanic's liens or claims for work, labor or material or any other liens affecting the Mortgaged Premises, which are or may be a lien prior to, or equal with, the lien of the **Security Instrument** assigned to GMAC-RFC, except those liens that are insured against by the policy of title insurance or Title Guaranty Certificate issued by the Iowa Title Guaranty Division.

**(Q) No Adverse Circumstances**

The Mortgaged Premises are free of damage and in good repair, and no notice of condemnation has been given with respect thereto, and no circumstances exist involving the **Loan Documents**, the **Mortgaged Premises** or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan. The Client warrants that it neither has actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards on, in or that could affect any of the Mortgaged Premises. The Client warrants compliance with local, State or federal law or regulation designed to protect the health and safety of the occupants of the property.

**GMAC-RFC**

**2A**
Page 2A.11
02/01/07
Client Guide
**Representations,
Warranties and
Covenants**

### (R) Casualty Insurance

The improvements upon the **Mortgaged Premises** are insured against loss by fire and other hazards as required by this Client Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The **Security Instrument** requires the Borrower to maintain such casualty insurance at the Borrower's expense, or on the Borrower's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at the Borrower's expense and to seek reimbursement from the Borrower. Each casualty policy is the insurer's valid and binding obligation, is in full force and effect, and will be in full force and effect, to GMAC-RFC's benefit upon the consummation of the transactions contemplated by the Program Documents and this Client Guide. The Loan terms permit the maintenance of an escrow account to pay the Premiums for the above mentioned insurance, and the Client has not waived the requirement of such escrow account unless permitted by GMAC-RFC or required by applicable law.

### (S) Primary Mortgage Insurance

If required by this Client Guide, primary mortgage insurance has been obtained, the Premium has been paid, and the mortgage insurance coverage is in full force and effect meeting the requirements of this Client Guide.

### (T) Underwriting; Appraisal; Appraiser

The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide.

For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide. For each Loan, as of the **Funding Date**, the market Value of the **Mortgaged Premises** is at least equal to the appraised Value stated on the Loan appraisal, or if a **Qualified AVM** is permitted, the Value on the Qualified AVM, except to the extent that the market Value of the Mortgaged Premises is lower than the appraised or Qualified AVM Value due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the Client has actual knowledge or reasonable grounds to suspect.



**2A**
Page 2A.12
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (U) Enforceability; Enforcement Provisions

Each Note and **Security Instrument** constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights.

Each Security Instrument contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the **Mortgaged Premises**, including: (i) in the case of a Security Instrument designated as a deed of trust, by trustee's sale, (ii) by summary foreclosure, if available under applicable law; and (iii) otherwise by foreclosure, and there are no homestead or other exemptions or dower, courtesy or other rights or interests available to the Borrower or the Borrower's spouse, survivors or estate or any other person or entity that would, or could, interfere with such right to sell at a trustee's sale or to foreclose. The Security Instrument and any riders to the Security Instrument must be signed by any person with an actual or potential interest in the property. Title holders have an actual interest in the property and must sign the Security Instrument and riders. Non-Borrowing spouses who are not in title may have an actual or potential interest in the property under State law and may be required to sign the Security Instrument and rider in some States in order for the holder of the Security Instrument to obtain, protect and enforce its lien. The Client will obtain the signature of the non-Borrowing spouse on the Security Instrument and riders or other documentation, as allowed by law, if such signature is necessary to protect the interest of the holder of the Security Instrument.

### (V) Holder-In-Due-Course

The Client is the owner and holder-in-due-course of each Note and is named as mortgagee/beneficiary or assignee under each **Security Instrument**, and all **Loan Documents** requiring execution have been appropriately executed, witnessed or notarized by the persons whose names appear as signatories and witnesses, or, as appropriate, notaries who constitute the valid and binding legal obligation of the Borrower, enforceable in accordance with their respective terms. Notwithstanding the foregoing, with respect to adjustable-rate mortgage Loans (ARMs), the Client represents and warrants that there are no claims to the Note on the part of any person or defenses of any party to the Note other than those that validly could be raised against a holder-in-due-course.

### (W)Trustee Designated

With respect to each **Security Instrument** that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving.

### (X) No Fees Due Trustee

Except in connection with a trustee's sale after default by the Borrower, no fees or expenses are payable by the Client or GMAC-RFC to the trustee under any Security Instrument that is a deed of trust.

**GMAC-RFC**

**2A**

Page 2A.13

11/21/05

Client Guide
**Representations,
Warranties and
Covenants**

## (Y) Execution of Documents

All agreements, contracts, assignments, endorsements and issuances of checks or drafts, reports, **Loan Documents** or other papers related to a Loan that are required by this Client Guide to be executed by the Client have been properly executed by an officer on behalf of the Client pursuant to a duly adopted Resolution of Board of Directors.

## (Z) Leaseholds

Where permitted by the applicable **Loan Program**, each Mortgaged Premises involving a **Leasehold** estate complies with the applicable Leasehold warranties set forth in this Client Guide.

## (AA) Condominiums; Planned Unit Developments (PUDs)

Each **Mortgaged Premises** that is a unit in a condominium or PUD complies with the applicable condominium or PUD warranties set forth in this Client Guide.

## (BB) Compliance By Others

When a person or entity: (i) originates a Loan on behalf of a Client, (ii) originates a Loan on its own behalf and sells it to a Client, or (iii) performs any act for a Client which the Client is required to perform under this Client Guide, the Client warrants that such person or entity has complied with all requirements of this Client Guide with respect to all such Loans and acts.

## (CC) Client Contract Warranties

The representations and warranties made at the time of the Client's execution of the Client Contract must remain true, correct and complete.

## (DD) Client and Originators

Each Jumbo A, Expanded Criteria or Payment Option Loan was originated by (i) a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar banking institution which is supervised by a federal or State authority, or (ii) a HUD approved non-supervised or correspondent mortgagee.

If the Client sells Loans to GMAC-RFC which are registered with **MERS** or as to which MERS is the mortgagee on the **Security Instrument**, the Client is a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

## (EE) No Impairment of Insurance

No action, error, omission, misrepresentation, negligence, fraud or similar occurrence in respect of a Loan has taken place on the part of any person, including, without limitation, the Borrower, any appraiser, any builder or developer or any party involved in the origination of the Loan or in the application of any insurance in relation to such Loan that might result in a denial, contesting, failure or impairment of full and timely coverage under any insurance policies required to be obtained or any pool insurance policy covering such Loan.

## (FF)Temporary Buydowns

Where permitted by the applicable **Loan Program**, each **Temporary Buydown** Loan delivered to GMAC-RFC was entered into pursuant to a buydown agreement which complies with the **Temporary Buydowns** Section in **Chapter 3C**, Financing, of this Client Guide.



# 2A
Page 2A.14

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

### (GG) Primary Mortgage Insurance Cancellation

The Client has disclosed in writing to the Borrower the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation. A copy of this disclosure has been retained in the Loan file as a permanent record.

### (HH) No Deficiency In Escrow Deposits or Payments

The Loan has been serviced by the Client and any predecessor **Servicer** in accordance with the terms of the mortgage Note and all applicable law. With respect to escrow deposits and escrow payments, if any, all such payments are in the possession of, or under the control of, the Client, and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits, escrow payments or other charges or payments due the Client have been capitalized under any mortgage or related mortgage Note.

### (II) Loan Securitization

The Client recognizes that it is GMAC-RFC's intent to securitize some or all of the Loans sold to GMAC-RFC by the Client. The Client agrees to provide GMAC-RFC with all such information concerning the Client generally and, if applicable, the Client's servicing experience, as may be reasonably requested by GMAC-RFC for inclusion in a prospectus or private placement memorandum published in connection with such securitization.

In addition, the Client will cooperate in a similar manner with GMAC-RFC in connection with any whole Loan sale or other disposition of any Loan sold to GMAC-RFC by the Client. The Client agrees to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by the Client to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

The Client further agrees to cooperate fully with GMAC-RFC, rating agencies, attorneys, bond insurers, purchasers of Loans or any other parties that may be involved in the sale or securitization of any Loan, including, without limitation, all cooperation as may be necessary in order to accommodate due diligence activity.

### (JJ) Non-Solicitation

The Client has not solicited or provided information to another party for the purpose of soliciting, and covenants and agrees that it will not solicit or provide information to another party for the purpose of soliciting, the refinance of any Loan. The term "solicit" as used herein shall mean a direct request or offer to refinance a servicing released Loan, and shall not include general solicitations, advertisements or promotions directed to the public at large.

**GMAC-RFC**

**2A**

Page 2A.15
12/11/05
Client Guide
**Representations,
Warranties and
Covenants**

### (KK) No Fraud or Misrepresentation

No fraud or misrepresentation by the Borrower or by the Client, broker, correspondent, appraiser or any independent contractor retained by the Client, broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate.

### (LL) Exclusionary List

No party involved in the origination of a Loan (e.g., originator, broker, title company, appraiser, etc.) was on the **Exclusionary List** on the date the Loan was originated as determined by the date of the promissory Note for that particular Loan.

### (MM) Early Payment Default

Neither Client, nor any third party acting on behalf of Client, has made or will make a scheduled payment on a Loan during the 90-day period where the Loan is subject to repurchase for Early Payment Default.

## A203

### Additional Client Representations, Warranties and Covenants for the Home Equity Program

The Home Equity Program adheres to the Client representations, warranties and covenants stated below as well as the representations, warranties and covenants contained in this Client Guide.

Unless the Home Equity Loan is a valid first lien on the **Mortgaged Premises**, the following representation and warranty applies:

Valid Second Lien

Each **Security Instrument** transferred to GMAC-RFC constitutes a valid lien on the Mortgaged Premises which is subordinated only to a lien of the holder of a first mortgage Loan, and is subject only to the minor impediments described in the **Title Insurance** Section of this Chapter. No such impediment shall adversely affect the Value, use, enjoyment or marketability of the Mortgaged Premises.

The following additional representations and warranties are made by the Client to GMAC-RFC as of the **Purchase Date** of each Home Equity Loan:

### (A) Licensing

The Client and any agents or correspondents originating for the Client have obtained all licenses and approvals required with respect to the origination of the Home Equity Loans, including, to the extent applicable, licenses and approvals required for small Loans or small advances and licenses and approvals required to charge the maximum interest rate allowable under State law.

### (B) No Contractor or Dealer Loans

No home improvement contractor or dealer was involved as a third party originator of a Home Equity Loan or received compensation in any form from the Client.

**GMAC-RFC**

**2A**
Page 2A.19
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A206

### Integrity of Information

The Client is responsible for credit and property underwriting regardless of whether the information was provided by the Client, an entity related to the Client or designated by the Client to perform the function. This includes credit information, appraisals, or other documents/information used in the Loan's evaluation.

The Client should take all steps necessary to ensure that each Loan sold to GMAC-RFC has been prudently originated and underwritten, and that all information supplied by, on behalf of, or concerning the Borrower is true, accurate and complete. The Client should ensure that interested parties are sufficiently independent from the Loan transaction and that adequate organizational controls are in place to ensure the independence, validity and reliability of the Loan information.

In addition, the Client should implement prudent practices when relying on designated agents (such as escrow companies, title companies, etc.) in order to ensure that they comply with its instructions and that the integrity of the Loan transaction has been maintained.

## A207

### Third-Party Originators

When relying on the actions or services of third-party originators, the Client should establish qualification and eligibility standards. The Client should consider the functions being performed by the third-party originator in establishing these standards. These standards should be reviewed periodically to ensure ongoing eligibility by the third-party originator.

The Client is encouraged to include the following items in formulating its qualification and eligibility standards and procedures:

(1) Review personnel resumes and references of management and Loan origination staff (Loan officers, processors, underwriters, closers, etc.)

(2) Establish minimum net worth requirements and evaluate the financial viability of the firm on an ongoing basis

(3) Establish minimum requirements for errors and omissions insurance and fidelity bond coverage and monitor ongoing compliance with these standards

(4) Document the relationship with a contractual agreement that contains specific warranties related to each party's responsibilities, as well as recourse rights in the event of warranty violations

(5) Review the performance of Loans originated by third parties to evaluate trends or patterns of **Delinquency**

The Client should include a representative, random sample of third-party Loans in the quality control program through both pre- and post-closing quality control audits to ensure the quality of Loan information.



# 2A

Page 2A.20  **GMAC-RFC**

12/01/05
Client Guide
**Representations,
Warranties and
Covenants**

## A208

### Events of Default

Any one or more of the following events constitute an **Event of Default**:

(1) The Client has not complied with one or more of the requirements (including any requirement outlined in Chapter 2, Client Eligibility) terms or conditions outlined in this Client Guide or one of the disqualification, suspension or inactivation events set forth in the **Disqualification Suspension or Inactivation** Section has occurred or occurs.

(2) The Client has breached any agreement outlined or incorporated by reference in the Client Contract or any other agreement between the Client and GMAC-RFC.

(3) The Client breaches any of the representations, warranties or covenants set forth in this Client Guide, fails to perform its obligations under this Client Guide or the Program Documents, makes one or more misleading representations, warranties or covenants to GMAC-RFC, or has failed to provide GMAC-RFC with information in a timely manner, including information required under Regulation AB or any successor regulation, that is true, complete and accurate.

(4) The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not the Client was a party to or had knowledge of such misrepresentation or incorrect information.

(5) Occurrence of an Event of **Servicer** Default with respect to any Loans serviced by the Client.

(6) Termination of servicing for cause is a basis for the Client's immediate disqualification or suspension. Action taken by GMAC-RFC to terminate servicing may be merged with an action to disqualify, suspend or inactivate the Client.

**GMAC-RFC**

**2A**
Page 2A.21
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## A209

### Remedies of GMAC-RFC

#### (A) Non-Exclusive, Cumulative Remedies

GMAC-RFC may exercise any remedy outlined in this Client Guide or as allowed by law or in equity. GMAC-RFC's exercise of one or more remedies in connection with a particular **Event of Default** will not prevent it from exercising:

• One or more other remedies in connection with the same Event of Default

• Any other rights which it may have at law or in equity

#### (B) Waiver of Defaults

GMAC-RFC may waive any default by Client in the performance of Client's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by GMAC-RFC in exercising, or failure to exercise, any right arising from such default affect or impair GMAC-RFC's rights as to such default or any subsequent default.

#### (C) Survival of Remedies

GMAC-RFC's remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to GMAC-RFC and funding of the related purchase price by GMAC-RFC, and will continue in full force and effect for the remaining life of the Loans, notwithstanding any termination of this Client Guide and the related **Funding Documents**, or any restrictive or qualified endorsement on any mortgage Note or assignment of mortgage or Loan approval or other examination of or failure to examine any related mortgage Loan file by GMAC-RFC.

## A210

### Repurchase

#### (A) Repurchase Obligations

If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

If the Client discovers an Event of Default, it should give GMAC-RFC prompt written notice. Such notice should include a written description of the Event of Default. Upon receipt of this notice, GMAC-RFC will review these materials and any additional information or documentation that the Client believes may influence GMAC-RFC's decision to require repurchase. If GMAC-RFC decides to require repurchase, the Client shall repurchase the Loan and the servicing (if the Loan was sold servicing released) within 30 days after GMAC-RFC's decision is communicated to Client in writing.

To expedite the wiring of funds to GMAC-RFC, the Client should complete the servicing transfer instruction form provided by GMAC-RFC. GMAC-RFC will send the form to the Client along with the notification of repurchase.



# 2A
Page 2A.22
02/01/07
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by GMAC-RFC of any of its rights or remedies.

Where GMAC-RFC determines that repurchase of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses, costs and expenses incurred by GMAC-RFC and/or the Loan's **Servicer** as a result of an **Event of Default**. This includes all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken.

Upon the Client's satisfaction of its repurchase obligation, GMAC-RFC will endorse the Note evidencing the Loan in blank and will deliver it and other pertinent **Loan Documents** to the Client. If GMAC-RFC acquired title to any of the real property securing the Loan pursuant to a foreclosure sale and has not disposed of such property, it will transfer such property to the Client on a "quit claim" basis or, if required by State law, a "warranty deed" basis. However, if GMAC-RFC has disposed of the real property securing the Loan, the Loan Documents will not be returned to the Client unless requested.

If the Client is also the **Servicer** of a Loan repurchased by reason of the occurrence of an Event of Default, GMAC-RFC will not reimburse the Client for any principal, interest or other advances made by the Client with respect to that Loan.

If, for any particular Loan, Client has complied with its property valuation documentation requirements (as described under Specific Representations, Warranties and Covenants Concerning Individual Loans in the **Underwriting; Appraisal; Appraiser** Section) by providing a GMAC-RFC Qualified AVM in lieu of an appraisal, where the **Loan Program** terms permit the use of a **Qualified AVM** as the sole documentation of property valuation underlying such Loan, and provided a Qualified AVM was obtained by Client in good faith directly from Qualified AVM Vendors (See GMAC-RFC **Exhibit 16H05**) and has been submitted to GMAC-RFC in its original, unaltered form as issued by the Qualified AVM Vendor; or, alternatively, if GMAC-RFC has waived an appraisal and indicated such waiver in its Assetwise[SM] messaging (an **Appraisal Waiver**), then, if an **Event of Default** related to such Loan arises solely out of the validity and accuracy of the property valuation amount stated in the Qualified AVM, or otherwise related to the property valuation amount with respect to a loan where GMAC-RFC has granted an Appraisal Waiver, but provided that in all other aspects the Loan was eligible for purchase by GMAC-RFC at the time it was submitted for purchase by Client, GMAC-RFC will not exercise its right to demand repurchase for such particular Loan by reason of such particular Event of Default. However, in the case of either a **Qualified AVM** or an Appraisal Waiver, GMAC-RFC may continue to exercise its right to demand repurchase if GMAC-RFC reasonably believes that Client or any third party originator obtained a Qualified AVM or allowed GMAC-RFC to rely on an **Appraisal Waiver** in bad faith, such as by using a Qualified AVM where Client or the third party originator had reason to know that the mortgaged property was materially different than that described in the Qualified AVM or that the description in the Qualified AVM should not be considered reliable at the time the Loan was sold to GMAC-RFC, or where the Client or third party originator has reason to know that the mortgaged property was materially damaged.

**GMAC-RFC**

**2A**
Page 2A.23
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**(B) Repurchase Price of First Mortgage Programs**

In the event the Client is obligated to repurchase a Loan the Client must pay to GMAC-RFC a repurchase price equal to the sum of:

- The actual principal balance of the Loan at the time of repurchase (if the Client sold the Loan to GMAC-RFC at a discount or a Premium, the repurchase price above will be adjusted to reflect the actual principal balance minus the discount percentage multiplied by the actual principal balance, or plus the Premium percentage multiplied by the actual principal balance, as appropriate, including that price paid for **Servicing Rights**), plus

- All accrued and unpaid interest on the Loan through the last day of the month of the date of repurchase; plus

- All interest, principal and other advances made to investors and all out of pocket costs and expenses of any kind incurred by GMAC-RFC and/or the primary **Servicer** in connection with the Loan, including, but not limited to, advances for taxes or insurance, and repair, foreclosure and insurance costs and reasonable attorneys' fees; plus

- The amount of the **Buyout Fee** as calculated in the **Extension and Buyout Fees** Section of Chapter 9A, Commitments; plus

- In the event that GMAC-RFC or any of its **Affiliates** is required to repurchase the Loan from any subsequent assignee, then any additional amount as may be required to make the repurchase price that the Client is obligated to pay hereunder equal to the repurchase price that GMAC-RFC or its Affiliate is required to pay to such subsequent assignee; minus

- The net amount of any proceeds realized by the owner of the Loan upon the final liquidation of the Loan or the **Mortgaged Premises** to an unrelated third party.

The **Designated Servicer** will return to the Client any escrow funds, unapplied funds and prepaid principal and interest installments.

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure even if the full amount of its outstanding debt was bid on by or on behalf of the Loan's owner to acquire the **Mortgaged Premises** at the foreclosure sale. In the event the Client is obligated to repurchase a Loan after foreclosure, the repurchase price shall be calculated using the formula above, however **Scheduled Principal Balance** shall be substituted for the actual principal balance.



# 2A
Page 2A.24 **GMAC-RFC**

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## (C) Repurchase Price of Home Equity Program

In the event the Client is obligated to repurchase a Home Equity Loan, the Client must, upon repurchase, service such Home Equity Loan. The repurchase price for such Home Equity Loan shall be equal to the sum of:

- The unpaid principal balance of the Home Equity Loan

- All accrued and unpaid interest on the Home Equity Loan

- The amount of all fees and/or purchase Premium paid, if any, to the Client by GMAC-RFC for origination of the Home Equity Loan

- All fees paid to any **Servicer** or sub-servicer of a Home Equity Loan by reason of the termination of that Servicer's or Sub-Servicer's right to service that Home Equity Loan

- All costs incurred or paid by GMAC-RFC or any Servicer in collecting or enforcing the Home Equity Loan, including, without limitation, interest or other costs paid to bring or maintain a prior lien current or up to date, costs to insure or pay delinquent taxes, attorneys' fees, court costs, appraisal and title expenses and other similar costs or expenses (collectively, "Foreclosure Expenses")

- Any additional amount GMAC-RFC or any of its **Affiliate**s is required to pay to repurchase the Home Equity Loan from a subsequent assignee

In lieu of repurchasing a Home Equity Loan that has not yet been foreclosed and accepting the servicing of such Home Equity Loan, GMAC-RFC may in its sole discretion allow Client to pay to GMAC-RFC the Estimated Loss (as defined below). Estimated Loss, as it relates to each Home Equity Loan subject to repurchase, shall equal the product of:

120% multiplied by the result of:

- Repurchase price as calculated above, plus

- Accrued interest on the Home Equity Loan through the date GMAC-RFC estimates that the Home Equity Loan will be fully liquidated (which in the case of a foreclosure, shall mean the date that GMAC-RFC estimates that the **Mortgaged Premises** will be sold to a third party and which in any other case means the date that GMAC-RFC estimates that all collection efforts on the Home Equity Loan will be abandoned) and estimated foreclosure and other enforcement expenses for the entire collection process, less

- Amount by which the current market Value of the Mortgaged Premises as determined by GMAC-RFC using valuation services provided by an independent third party exceeds the current outstanding amount of indebtedness secured by the Mortgaged Premises that is senior to the Home Equity Loan.

## (D) Repurchase Price of a Servicing Released Loan

In the event the Client repurchases a Loan for which the servicing has also been sold to GMAC-RFC, the Client will also be required to repurchase the servicing. If the repurchase of the servicing of the Loan is for any reason other than a breach of the **Delinquency** Payoff/Liquidation warranty contained in the Servicing Released **Chapter 8**, the Client must pay to GMAC-RFC a repurchase price equal to the original **Servicing Released Premium (SRP)** percentage multiplied by the actual unpaid principal balance at the time of repurchase.

In no event however, will the required repurchase Servicing Released Premium be greater than the original Servicing Released Premium paid to the Client.

**GMAC-RFC**

**2A**
Page 2A.25
11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

The **Designated Servicer** will return to the Client any escrow funds, **Temporary Buydown** funds, unapplied funds and prepaid principal and interest installments. The Client will be required to reimburse the Designated Servicer for any delinquent principal and interest advances, and any escrow advances and foreclosure expenses they have made and not recovered on a repurchased Loan.

## (E) Repurchase As a Result of Conversion

The Client (or, if the Client has transferred servicing of the Loans, the **Servicer**) shall repurchase a Loan which has converted from an ARM to a fixed-rate mortgage. The Servicer must submit the ARM Conversion Notification Report no less than 15 days prior to the conversion date.

If the Client or Servicer repurchases a converted Loan and subsequently resells that converted Loan to GMAC-RFC, all the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale. In addition, the Client shall be subject to all rights and remedies (including repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

The Client shall also submit the modification agreement if requested by GMAC-RFC or its assigns.

After its receipt of the Loan funds, GMAC-RFC will endorse the Note to the party which repurchased the Loan. The Loan will then be assigned to such party, and all credit documentation will be returned. Failure to submit the ARM Conversion Notification Report in a timely manner may delay the receipt of the endorsed Note and other **Legal Documents**.

The **Servicer** shall submit a Payoff/Liquidation Report and wire transfer Loan funds to the GMAC-RFC **Loan Accounting Department** no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. The Client shall attach a copy of the ARM Conversion Notification Report.

If the appropriate amount is not wired on time, GMAC-RFC will charge a late payment fee. This fee will equal the amount due multiplied by the "**Prime Rate**" plus 3% multiplied by the number of days overdue divided by 365. The term "Prime Rate" shall mean the highest quoted Prime Rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first **Business Day** of the month in which the payment was due and not paid. If the Prime Rate is not available, GMAC-RFC will determine a comparable rate.

## (F) Early Payment Default

If an **Early Payment Default** has occurred with respect to a specific Loan, GMAC-RFC may, at its sole discretion require the Client to repurchase the Loan. Client agrees to repurchase the Loan at the repurchase price, and according to the repurchase procedures and other repurchase terms set out in this Chapter except that Client shall not have the right to appeal GMAC-RFC's repurchase demand. This policy applies to all Loans seasoned less than six (6) months as of **Funding Date**.



# 2A
Page 2A.26

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

## GMAC-RFC

**(G) Substitution**

Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its sole discretion, may allow the Client to substitute another Loan satisfactory to GMAC-RFC in place of the original Loan, within 10 days of notification by GMAC-RFC, unless otherwise notified. If the substituted Loan contains terms different from those of the Loan that it is replacing, a purchase price adjustment will be calculated by GMAC-RFC based on market changes and Loan characteristics. Every Loan substituted will be subject to all agreements, terms, conditions, representations and warranties in this Client Guide as of the **Substitution Date**.

In the event a Loan is eligible for purchase by GMAC-RFC but the servicing is ineligible for purchase by GMAC-RFC, the Loan will be purchased and the sale of servicing denied. GMAC-RFC will not allow the Client to substitute another servicing released Loan.

**(H) Cost of Transfer Fees Due to Repurchase**

The Client agrees that, if it is required to repurchase a Loan and the related Servicing, it will pay all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the repurchase and will indemnify and hold harmless GMAC-RFC and the **Designated Servicer** against all losses, costs and expenses, including attorney fees, resulting from such required repurchases or the breach giving rise hereto.

**(I) Notice and Appeal**

The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination.

Send all notifications and appeals to:

> GMAC-RFC
> One Meridian Crossings
> Suite 100
> Minneapolis, MN 55423
> Attention: Repurchase Management

Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.



# 2A

Page 2A.28

11/21/05
Client Guide
**Representations,
Warranties and
Covenants**

**GMAC-RFC**

(17) The Client or **Servicer**'s failure to maintain a qualified Loan origination, servicing and quality control staff, an acceptable ongoing quality control program, adequate facilities and written policies and procedures to ensure:

• The investment quality of Loans sold to GMAC-RFC

• The adequacy of the servicing of Loans purchased by GMAC-RFC **OR**

(18) The failure of the Client or the **Servicer** to meet any test as may be prescribed for eligibility,

(19) The determination by GMAC-RFC that a Client has not delivered an adequate volume of Loans to GMAC-RFC.

## A212

### Indemnification

The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any **Event of Default**. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

In addition, Client shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of GMAC-RFC in connection with any such litigation or governmental proceeding, Client shall reimburse GMAC-RFC for such fees and expenses. Reimbursement shall be made directly to GMAC-RFC within ten days of receipt of a request for payment, which request shall include copies of the relevant invoices. Except for notices for reimbursement, GMAC-RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with GMAC-RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

The Client also shall indemnify GMAC-RFC and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract. The obligations of the Client under this Section shall survive the **Delivery Date**, the **Funding Date** (and each **Substitution Date**, if applicable) and the termination of the Client Contract and the disqualification, suspension or inactivation of the Client.

Exhibit C

| Home Loan Center, Inc. - Loans Sold to RFC and Securitized | | | |
|---|---|---|---|
| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
| 8404096 | 2004-HI1 | 8/26/2003 | $28,374.32 |
| 8404226 | 2004-HS3 | 7/18/2003 | $18,000.00 |
| 8404302 | 2004-HS1 | 7/10/2003 | $45,834.45 |
| 8525728 | 2005-HI1 | 9/30/2003 | $35,000.00 |
| 8568960 | 2004-HS1 | 9/18/2003 | $73,764.25 |
| 8569062 | 2004-HS1 | 9/23/2003 | $29,546.21 |
| 8569288 | 2004-HS1 | 10/8/2003 | $77,421.10 |
| 8569442 | 2004-HS1 | 10/3/2003 | $94,136.49 |
| 8624182 | 2004-HS1 | 10/10/2003 | $37,000.05 |
| 8632462 | 2004-HS1 | 10/15/2003 | $49,158.59 |
| 8639409 | 2004-HS1 | 6/5/2003 | $4,000.00 |
| 8655728 | 2004-HS1 | 10/8/2003 | $78,992.40 |
| 8655772 | 2004-HS1 | 10/28/2003 | $49,447.38 |
| 8655926 | 2004-HS1 | 10/8/2003 | $48,279.03 |
| 8657783 | 2004-HS2 | 6/30/2003 | $16,871.28 |
| 8672964 | 2004-HS1 | 10/10/2003 | $37,614.88 |
| 8673036 | 2004-HS1 | 10/14/2003 | $13,551.26 |
| 8711860 | 2004-HS1 | 10/22/2003 | $55,997.84 |
| 8730704 | 2004-HS1 | 10/29/2003 | $67,089.44 |
| 8730956 | 2004-HS1 | 10/30/2003 | $74,232.37 |
| 8730980 | 2004-HI1 | 1/30/2004 | $68,529.82 |
| 8751947 | 2004-RS7 | 6/19/2003 | $382,000.00 |
| 8761704 | 2004-HS1 | 11/5/2003 | $78,128.81 |
| 8773632 | 2004-HS1 | 1/6/2004 | $35,394.41 |
| 8778872 | 2004-HS1 | 10/27/2003 | $54,603.11 |
| 8781502 | 2004-HS1 | 11/13/2003 | $56,813.84 |
| 8781686 | 2004-HS1 | 11/12/2003 | $91,084.88 |
| 8781802 | 2004-HS1 | 12/23/2003 | $28,752.21 |
| 8782612 | 2004-QA3 | 11/4/2003 | $300,000.00 |
| 8787786 | 2004-HS1 | 12/15/2003 | $37,000.00 |
| 8788504 | 2004-HS1 | 12/16/2003 | $49,470.15 |
| 8800518 | 2004-S3 | 11/26/2003 | $288,000.00 |
| 8808824 | 2004-HS1 | 12/31/2003 | $25,303.88 |
| 8817130 | 2004-HI1 | 12/26/2003 | $49,926.64 |
| 8826572 | 2004-HS1 | 12/15/2003 | $38,608.33 |
| 8826574 | 2004-HS1 | 12/12/2003 | $57,657.29 |
| 8826660 | 2004-HS1 | 1/22/2004 | $25,000.00 |
| 8837808 | 2004-HS1 | 1/29/2004 | $28,999.07 |
| 8837814 | 2004-HS1 | 12/16/2003 | $84,607.40 |
| 8837816 | 2004-HS1 | 12/4/2003 | $94,249.37 |
| 8837836 | 2004-HS2 | 12/3/2003 | $32,533.03 |
| 8837846 | 2004-HS1 | 12/4/2003 | $48,400.00 |
| 8837880 | 2004-HS1 | 12/4/2003 | $49,875.27 |
| 8837882 | 2004-HS1 | 12/17/2003 | $28,476.18 |
| 8837904 | 2004-HS1 | 12/29/2003 | $52,432.18 |
| 8856084 | 2004-HS1 | 11/17/2003 | $72,502.93 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 8857770 | 2004-HS1 | 12/5/2003 | $40,000.00 |
| 8857892 | 2004-HS1 | 12/4/2003 | $39,994.99 |
| 8858076 | 2004-HS1 | 12/12/2003 | $39,800.00 |
| 8858114 | 2004-HI1 | 12/10/2003 | $31,853.60 |
| 8858132 | 2004-HS1 | 12/10/2003 | $42,000.00 |
| 8858136 | 2004-HS1 | 12/11/2003 | $74,614.86 |
| 8858176 | 2004-HI1 | 12/11/2003 | $29,880.18 |
| 8858186 | 2004-HS1 | 12/10/2003 | $29,169.61 |
| 8858188 | 2004-HS1 | 12/10/2003 | $62,404.18 |
| 8858266 | 2004-HI1 | 12/10/2003 | $29,976.57 |
| 8858280 | 2004-HS2 | 12/10/2003 | $33,588.89 |
| 8858284 | 2004-HS1 | 12/17/2003 | $66,402.32 |
| 8858304 | 2004-HS1 | 12/10/2003 | $35,938.71 |
| 8867250 | 2004-S2 | 12/1/2003 | $600,000.00 |
| 8868944 | 2004-HI1 | 12/31/2003 | $34,707.62 |
| 8874330 | 2004-HS1 | 12/22/2003 | $35,000.00 |
| 8874338 | 2004-HS1 | 12/12/2003 | $36,500.00 |
| 8874360 | 2004-HS1 | 12/12/2003 | $29,623.84 |
| 8874414 | 2004-HS1 | 12/15/2003 | $49,893.84 |
| 8874416 | 2004-HS1 | 12/15/2003 | $36,725.18 |
| 8874420 | 2004-HS1 | 12/16/2003 | $49,971.23 |
| 8874448 | 2004-HS1 | 12/15/2003 | $39,973.63 |
| 8874516 | 2004-HI1 | 12/19/2003 | $34,972.67 |
| 8874532 | 2004-HS1 | 12/15/2003 | $65,649.79 |
| 8874566 | 2004-HS1 | 12/19/2003 | $59,580.81 |
| 8874618 | 2004-HS1 | 12/15/2003 | $26,800.00 |
| 8874652 | 2004-HI1 | 12/17/2003 | $54,623.59 |
| 8874656 | 2004-HS1 | 12/16/2003 | $28,971.50 |
| 8886440 | 2004-HS1 | 12/15/2003 | $25,365.10 |
| 8886446 | 2004-HS1 | 12/15/2003 | $4,610.20 |
| 8886452 | 2004-HS1 | 12/15/2003 | $79,500.83 |
| 8886474 | 2004-HS1 | 12/15/2003 | $44,860.91 |
| 8886492 | 2004-HS1 | 12/15/2003 | $19,147.84 |
| 8889854 | 2004-HS1 | 12/19/2003 | $36,050.00 |
| 8890220 | 2004-S1 | 12/19/2003 | $460,000.00 |
| 8892610 | 2004-HS1 | 12/31/2003 | $35,236.92 |
| 8902366 | 2004-QS3 | 12/9/2003 | $232,000.00 |
| 8905810 | 2004-QS3 | 12/9/2003 | $117,000.00 |
| 8907414 | 2004-QS3 | 12/12/2003 | $130,000.00 |
| 8914634 | 2004-HI1 | 12/19/2003 | $29,895.42 |
| 8915968 | 2004-S3 | 12/18/2003 | $432,000.00 |
| 8922934 | 2004-HS1 | 12/12/2003 | $33,750.01 |
| 8923532 | 2004-HS1 | 12/18/2003 | $34,986.12 |
| 8923614 | 2004-HS1 | 12/18/2003 | $62,372.82 |
| 8929126 | 2004-HS1 | 12/12/2003 | $25,000.00 |
| 8933323 | 2004-HS2 | 4/20/2004 | $21,866.68 |
| 8933337 | 2004-HS2 | 4/27/2004 | $20,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 8933359 | 2004-HI2 | 4/29/2004 | $27,800.00 |
| 8933409 | 2004-HS2 | 5/3/2004 | $37,317.11 |
| 8933439 | 2004-HS2 | 4/28/2004 | $60,995.26 |
| 8933485 | 2004-HS2 | 4/20/2004 | $4,906.96 |
| 8934949 | 2004-HS2 | 4/22/2004 | $43,000.00 |
| 8934969 | 2004-HS2 | 4/20/2004 | $32,000.00 |
| 8937049 | 2004-HS2 | 4/28/2004 | $22,894.03 |
| 8937107 | 2004-HS2 | 4/27/2004 | $24,984.93 |
| 8937157 | 2004-HS2 | 4/22/2004 | $45,745.00 |
| 8937207 | 2004-HS2 | 4/26/2004 | $43,160.50 |
| 8937453 | 2004-HI2 | 4/27/2004 | $35,000.00 |
| 8937455 | 2004-HS2 | 4/27/2004 | $38,000.00 |
| 8937521 | 2004-HS2 | 4/28/2004 | $24,925.00 |
| 8937545 | 2004-HS2 | 4/27/2004 | $27,500.00 |
| 8937593 | 2004-HS2 | 4/27/2004 | $36,800.00 |
| 8937595 | 2004-HI2 | 4/27/2004 | $54,000.00 |
| 8937637 | 2004-HS2 | 4/27/2004 | $26,900.00 |
| 8940161 | 2004-S5 | 4/23/2004 | $245,000.00 |
| 8944624 | 2004-HS1 | 12/16/2003 | $74,826.54 |
| 8944634 | 2004-HS1 | 12/17/2003 | $43,875.00 |
| 8944648 | 2004-HI1 | 12/16/2003 | $49,667.07 |
| 8945042 | 2004-HS2 | 12/17/2003 | $22,444.38 |
| 8945092 | 2004-HI1 | 12/17/2003 | $37,741.05 |
| 8945120 | 2004-HS1 | 12/16/2003 | $21,252.52 |
| 8945136 | 2004-HS1 | 1/6/2004 | $91,305.78 |
| 8945224 | 2004-HS1 | 12/16/2003 | $4,631.63 |
| 8945264 | 2004-HS1 | 12/16/2003 | $46,122.88 |
| 8945300 | 2004-HS1 | 12/17/2003 | $43,300.90 |
| 8946053 | 2004-HS2 | 4/29/2004 | $11,011.84 |
| 8946339 | 2004-HS2 | 4/28/2004 | $92,921.67 |
| 8946484 | 2004-QS1 | 12/24/2003 | $186,400.00 |
| 8948000 | 2004-HS1 | 12/29/2003 | $32,831.37 |
| 8948022 | 2004-HI1 | 1/9/2004 | $44,966.42 |
| 8948024 | 2004-HS1 | 12/19/2003 | $50,000.00 |
| 8948026 | 2004-HS1 | 12/19/2003 | $48,717.43 |
| 8948252 | 2004-HS2 | 12/22/2003 | $24,238.81 |
| 8948254 | 2004-HS1 | 12/19/2003 | $59,997.95 |
| 8948258 | 2004-HS1 | 12/22/2003 | $20,000.00 |
| 8948260 | 2004-HS1 | 12/22/2003 | $40,000.00 |
| 8948264 | 2004-HS1 | 12/19/2003 | $27,755.74 |
| 8948266 | 2004-HS2 | 12/26/2003 | $47,174.03 |
| 8948270 | 2004-HS1 | 12/22/2003 | $28,291.23 |
| 8948274 | 2004-HS1 | 12/23/2003 | $24,900.00 |
| 8948276 | 2004-HI1 | 12/19/2003 | $48,476.39 |
| 8948278 | 2004-HS1 | 12/23/2003 | $28,250.00 |
| 8948280 | 2004-HI1 | 12/19/2003 | $29,937.79 |
| 8948284 | 2004-HS1 | 12/22/2003 | $29,900.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 8948286 | 2004-HS1 | 12/22/2003 | $49,980.13 |
| 8948290 | 2004-HS1 | 12/19/2003 | $52,843.52 |
| 8948294 | 2004-HS1 | 12/19/2003 | $23,810.05 |
| 8948400 | 2004-HS1 | 12/23/2003 | $14,989.93 |
| 8948442 | 2004-HS1 | 12/23/2003 | $25,594.98 |
| 8948444 | 2004-HS1 | 12/23/2003 | $29,950.00 |
| 8948448 | 2004-HS1 | 12/23/2003 | $34,800.00 |
| 8948482 | 2004-HS1 | 12/23/2003 | $24,585.86 |
| 8950216 | 2004-HS1 | 12/17/2003 | $24,935.00 |
| 8950348 | 2004-HS1 | 12/17/2003 | $61,023.36 |
| 8950530 | 2004-HS1 | 12/17/2003 | $69,800.00 |
| 8950682 | 2004-HS1 | 12/17/2003 | $37,273.97 |
| 8951838 | 2004-HS1 | 12/17/2003 | $34,855.27 |
| 8951882 | 2004-HS1 | 12/18/2003 | $29,815.06 |
| 8951984 | 2004-HS2 | 12/18/2003 | $74,576.21 |
| 8952188 | 2004-HS1 | 12/17/2003 | $42,000.00 |
| 8952611 | 2004-HS2 | 5/3/2004 | $18,000.00 |
| 8952615 | 2004-HS2 | 4/29/2004 | $48,600.00 |
| 8952619 | 2004-HS2 | 4/28/2004 | $37,000.00 |
| 8952668 | 2004-HS1 | 1/6/2004 | $19,676.49 |
| 8952678 | 2004-HS1 | 12/24/2003 | $31,839.95 |
| 8952690 | 2004-HS1 | 12/24/2003 | $27,243.03 |
| 8952694 | 2004-HS1 | 12/26/2003 | $75,000.00 |
| 8952708 | 2004-HS1 | 12/23/2003 | $59,786.00 |
| 8952800 | 2004-HI1 | 12/24/2003 | $34,857.29 |
| 8952870 | 2004-HS2 | 12/26/2003 | $71,996.45 |
| 8952904 | 2004-HS1 | 12/29/2003 | $28,000.00 |
| 8952932 | 2004-HS1 | 12/26/2003 | $39,808.85 |
| 8952942 | 2004-HS1 | 12/29/2003 | $21,975.00 |
| 8952948 | 2004-HS1 | 1/8/2004 | $36,029.94 |
| 8952952 | 2004-HS1 | 12/26/2003 | $29,417.13 |
| 8952970 | 2004-HS1 | 12/31/2003 | $100,000.00 |
| 8952977 | 2004-HS2 | 4/28/2004 | $59,800.00 |
| 8952979 | 2004-HS2 | 4/28/2004 | $33,574.89 |
| 8953073 | 2004-HI2 | 4/28/2004 | $30,931.82 |
| 8953128 | 2004-HI1 | 1/2/2004 | $33,188.24 |
| 8953146 | 2004-HS1 | 12/29/2003 | $34,500.00 |
| 8953149 | 2004-HS2 | 4/28/2004 | $40,483.70 |
| 8953176 | 2004-HS1 | 12/29/2003 | $49,800.20 |
| 8953200 | 2004-HS1 | 12/29/2003 | $34,951.29 |
| 8953216 | 2004-HI1 | 1/6/2004 | $49,906.83 |
| 8953228 | 2004-HS1 | 12/30/2003 | $42,000.00 |
| 8953338 | 2004-HI1 | 12/17/2003 | $34,864.82 |
| 8953440 | 2004-HS1 | 12/18/2003 | $46,364.89 |
| 8956076 | 2004-HS1 | 12/29/2003 | $23,633.81 |
| 8956132 | 2004-HS1 | 12/18/2003 | $38,697.51 |
| 8956160 | 2004-HS1 | 12/18/2003 | $23,462.01 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 8956228 | 2004-HS1 | 12/18/2003 | $34,800.00 |
| 8956276 | 2004-HS1 | 12/24/2003 | $29,350.25 |
| 8956306 | 2004-HI1 | 1/2/2004 | $49,947.96 |
| 8956308 | 2004-HI1 | 12/30/2003 | $40,326.20 |
| 8956390 | 2004-HI1 | 1/6/2004 | $49,968.75 |
| 8956392 | 2004-HI1 | 1/2/2004 | $49,905.71 |
| 8956420 | 2004-HI1 | 1/6/2004 | $36,981.57 |
| 8956472 | 2004-HI1 | 1/9/2004 | $31,441.44 |
| 8956482 | 2004-HI1 | 1/6/2004 | $59,969.45 |
| 8956522 | 2004-HS1 | 12/30/2003 | $28,987.96 |
| 8956532 | 2004-HS1 | 1/2/2004 | $74,800.00 |
| 8956544 | 2004-HS1 | 1/6/2004 | $24,990.00 |
| 8956554 | 2004-HS1 | 1/2/2004 | $56,453.88 |
| 8956556 | 2004-HS1 | 1/7/2004 | $29,931.68 |
| 8956564 | 2004-HS1 | 1/2/2004 | $30,000.00 |
| 8956568 | 2004-HS1 | 1/6/2004 | $55,177.53 |
| 8956570 | 2004-HS1 | 1/2/2004 | $24,942.08 |
| 8956572 | 2004-HS1 | 1/6/2004 | $32,872.05 |
| 8956574 | 2004-HS1 | 1/6/2004 | $47,842.19 |
| 8956582 | 2004-HS1 | 1/6/2004 | $22,897.76 |
| 8956592 | 2004-HI1 | 1/6/2004 | $49,970.94 |
| 8956600 | 2004-HS1 | 1/6/2004 | $24,300.00 |
| 8956616 | 2004-HS1 | 1/2/2004 | $45,000.00 |
| 8956622 | 2004-HS1 | 1/2/2004 | $62,701.95 |
| 8956634 | 2004-HS1 | 1/6/2004 | $15,688.36 |
| 8956638 | 2004-HI1 | 1/6/2004 | $34,934.78 |
| 8956640 | 2004-HS1 | 1/9/2004 | $40,100.00 |
| 8956644 | 2004-HS1 | 1/7/2004 | $24,890.00 |
| 8956658 | 2004-HS1 | 1/6/2004 | $18,748.18 |
| 8956708 | 2004-HS1 | 1/9/2004 | $27,480.00 |
| 8956740 | 2004-HS1 | 1/9/2004 | $30,683.54 |
| 8956752 | 2004-HI1 | 1/6/2004 | $34,987.01 |
| 8956754 | 2004-HI1 | 1/8/2004 | $48,975.06 |
| 8956758 | 2004-HS1 | 1/7/2004 | $18,878.12 |
| 8956760 | 2004-HI1 | 2/3/2004 | $49,903.43 |
| 8956766 | 2004-HI1 | 1/6/2004 | $34,985.77 |
| 8956774 | 2004-HS1 | 1/7/2004 | $58,800.00 |
| 8956792 | 2004-HS1 | 1/5/2004 | $39,778.17 |
| 8956798 | 2004-HS1 | 1/6/2004 | $37,912.44 |
| 8956994 | 2004-HS2 | 1/21/2004 | $25,289.27 |
| 8957046 | 2004-HI1 | 1/7/2004 | $34,982.57 |
| 8957050 | 2004-HS1 | 1/7/2004 | $39,988.77 |
| 8957062 | 2004-HS1 | 1/6/2004 | $12,931.53 |
| 8957070 | 2004-HS1 | 1/6/2004 | $46,831.78 |
| 8957072 | 2004-HS1 | 1/6/2004 | $26,999.34 |
| 8957100 | 2004-HS1 | 1/7/2004 | $38,600.00 |
| 8957156 | 2004-HI1 | 1/8/2004 | $31,986.69 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 8957158 | 2004-HI1 | 1/14/2004 | $49,936.25 |
| 8957160 | 2004-HI1 | 1/7/2004 | $45,913.25 |
| 8957168 | 2004-HS1 | 1/7/2004 | $39,621.64 |
| 8957172 | 2004-HS1 | 1/8/2004 | $30,662.73 |
| 8957176 | 2004-HS1 | 1/9/2004 | $57,000.00 |
| 8957184 | 2004-HI1 | 1/7/2004 | $49,968.97 |
| 8957238 | 2004-HS1 | 1/9/2004 | $36,588.19 |
| 8957258 | 2004-HS1 | 1/7/2004 | $39,226.30 |
| 8957334 | 2004-HS1 | 1/16/2004 | $62,000.00 |
| 8957394 | 2004-HS1 | 1/8/2004 | $28,000.00 |
| 8957398 | 2004-HS1 | 1/16/2004 | $56,600.00 |
| 8957406 | 2004-HS1 | 1/9/2004 | $32,998.66 |
| 8957476 | 2004-HS1 | 1/8/2004 | $34,944.93 |
| 8957686 | 2004-HI2 | 12/17/2003 | $34,930.49 |
| 8957971 | 2004-HS2 | 4/29/2004 | $31,773.52 |
| 8958141 | 2004-HS2 | 5/3/2004 | $20,100.00 |
| 8958227 | 2004-HS2 | 5/3/2004 | $30,000.00 |
| 8958232 | 2004-HS2 | 12/17/2003 | $20,000.00 |
| 8958235 | 2004-HS2 | 5/11/2004 | $88,700.00 |
| 8958237 | 2004-HS2 | 5/5/2004 | $25,000.00 |
| 8958243 | 2004-HS2 | 5/11/2004 | $80,000.00 |
| 8958247 | 2004-HS2 | 5/6/2004 | $21,800.00 |
| 8958248 | 2004-HS1 | 12/19/2003 | $101,734.74 |
| 8958258 | 2004-HS1 | 1/12/2004 | $30,000.00 |
| 8958266 | 2004-HS1 | 12/19/2003 | $34,800.00 |
| 8958295 | 2004-HS2 | 5/4/2004 | $34,000.00 |
| 8958305 | 2004-HS2 | 5/3/2004 | $60,000.00 |
| 8958405 | 2004-HI2 | 5/4/2004 | $45,000.00 |
| 8958407 | 2004-HS2 | 5/4/2004 | $15,000.00 |
| 8960923 | 2004-S5 | 5/10/2004 | $341,000.00 |
| 8963861 | 2004-S5 | 5/6/2004 | $391,000.00 |
| 8965591 | 2004-HS2 | 5/5/2004 | $25,000.00 |
| 8965601 | 2004-HS2 | 5/21/2004 | $47,000.00 |
| 8965777 | 2004-HS2 | 5/4/2004 | $43,000.00 |
| 8965853 | 2004-HS2 | 5/6/2004 | $63,500.00 |
| 8965859 | 2004-HS2 | 5/5/2004 | $49,500.00 |
| 8965861 | 2004-HI2 | 5/5/2004 | $25,000.00 |
| 8965863 | 2004-HS2 | 5/6/2004 | $49,000.00 |
| 8965947 | 2004-HS2 | 5/6/2004 | $30,000.00 |
| 8965955 | 2004-HI2 | 5/5/2004 | $49,892.57 |
| 8965957 | 2004-HI2 | 5/5/2004 | $35,000.00 |
| 8966831 | 2004-S7 | 5/13/2004 | $355,000.00 |
| 8969452 | 2004-HS2 | 1/8/2004 | $24,100.00 |
| 8969532 | 2004-HS1 | 1/8/2004 | $44,000.00 |
| 8969542 | 2004-HI1 | 1/8/2004 | $24,990.73 |
| 8969546 | 2004-HS1 | 1/9/2004 | $37,690.58 |
| 8969568 | 2004-HS1 | 1/9/2004 | $32,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 8969656 | 2004-HS1 | 1/13/2004 | $74,000.00 |
| 8969662 | 2004-HS1 | 1/12/2004 | $38,082.19 |
| 8969664 | 2004-HS1 | 1/12/2004 | $49,985.62 |
| 8969686 | 2004-HS1 | 1/13/2004 | $42,637.84 |
| 8969748 | 2004-HS1 | 2/2/2004 | $26,700.00 |
| 8969750 | 2004-HS1 | 1/13/2004 | $119,950.00 |
| 8969752 | 2004-HS1 | 1/13/2004 | $27,800.00 |
| 8969758 | 2004-HS1 | 1/13/2004 | $48,900.00 |
| 8969760 | 2004-HS1 | 1/12/2004 | $29,700.00 |
| 8969800 | 2004-HS1 | 1/12/2004 | $75,000.00 |
| 8969820 | 2004-HS1 | 1/13/2004 | $75,100.00 |
| 8969828 | 2004-HS1 | 1/9/2004 | $43,782.68 |
| 8969860 | 2004-HI1 | 1/9/2004 | $43,415.98 |
| 8969862 | 2004-HS1 | 1/20/2004 | $49,500.00 |
| 8969868 | 2004-HS1 | 1/13/2004 | $20,700.00 |
| 8969874 | 2004-HS1 | 1/12/2004 | $30,500.00 |
| 8969988 | 2004-HS1 | 1/13/2004 | $24,700.00 |
| 8970178 | 2004-HS1 | 12/22/2003 | $34,784.94 |
| 8973376 | 2004-QS3 | 1/6/2004 | $246,000.00 |
| 8975472 | 2004-HS1 | 12/24/2003 | $44,973.97 |
| 8977209 | 2004-HS2 | 5/7/2004 | $21,000.00 |
| 8977263 | 2004-HS2 | 5/11/2004 | $57,000.00 |
| 8977275 | 2004-HS2 | 5/10/2004 | $35,000.00 |
| 8977421 | 2004-HS2 | 5/6/2004 | $41,000.00 |
| 8977541 | 2004-HS2 | 5/6/2004 | $76,500.00 |
| 8977543 | 2004-HS2 | 5/6/2004 | $23,000.00 |
| 8977619 | 2004-QS6 | 5/7/2004 | $165,000.00 |
| 8977699 | 2004-HS2 | 5/6/2004 | $22,000.00 |
| 8977799 | 2004-QS9 | 5/14/2004 | $135,000.00 |
| 8977877 | 2004-SA1 | 5/6/2004 | $457,500.00 |
| 8979382 | 2004-HS1 | 12/26/2003 | $25,864.11 |
| 8979440 | 2004-HS1 | 12/26/2003 | $44,864.85 |
| 8981336 | 2004-HS1 | 1/2/2004 | $30,000.00 |
| 8981408 | 2004-HI1 | 12/30/2003 | $49,961.67 |
| 8982561 | 2004-S6 | 5/17/2004 | $385,000.00 |
| 8982607 | 2004-S6 | 5/13/2004 | $230,000.00 |
| 8982834 | 2004-HS1 | 1/13/2004 | $48,946.66 |
| 8982858 | 2004-HS1 | 1/13/2004 | $34,418.05 |
| 8982868 | 2004-HS1 | 1/13/2004 | $30,000.00 |
| 8982870 | 2004-HS1 | 1/15/2004 | $14,500.00 |
| 8982882 | 2004-HS1 | 1/13/2004 | $35,000.00 |
| 8983030 | 2004-HI1 | 1/30/2004 | $34,926.55 |
| 8983078 | 2004-HI1 | 1/15/2004 | $34,986.40 |
| 8983080 | 2004-HI1 | 1/15/2004 | $29,977.61 |
| 8983136 | 2004-HS1 | 1/15/2004 | $24,749.32 |
| 8983398 | 2004-HI1 | 1/16/2004 | $29,500.00 |
| 8983400 | 2004-HS1 | 1/21/2004 | $55,600.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 8983798 | 2004-HI1 | 1/21/2004 | $33,872.63 |
| 8984550 | 2004-QS3 | 1/8/2004 | $112,250.00 |
| 8985108 | 2004-HS1 | 12/30/2003 | $15,000.00 |
| 8985124 | 2004-HS1 | 12/31/2003 | $22,500.00 |
| 8985184 | 2004-HS2 | 12/31/2003 | $21,077.82 |
| 8985194 | 2004-HS1 | 12/29/2003 | $22,500.00 |
| 8985204 | 2004-HS1 | 12/30/2003 | $52,701.61 |
| 8985250 | 2004-HS1 | 1/14/2004 | $25,000.00 |
| 8985574 | 2004-HI1 | 12/31/2003 | $28,889.81 |
| 8985612 | 2004-HS1 | 12/30/2003 | $39,500.00 |
| 8985624 | 2004-HI1 | 12/30/2003 | $74,823.17 |
| 8985640 | 2004-RZ1 | 1/6/2004 | $235,000.00 |
| 8985688 | 2004-HS1 | 12/30/2003 | $94,000.00 |
| 8985770 | 2004-HS1 | 12/30/2003 | $49,669.00 |
| 8985776 | 2004-HS1 | 12/31/2003 | $51,270.32 |
| 8985786 | 2004-HS1 | 12/29/2003 | $18,100.00 |
| 8985788 | 2004-HS1 | 12/30/2003 | $32,727.34 |
| 8985808 | 2004-HS1 | 1/29/2004 | $34,000.00 |
| 8985810 | 2004-HS1 | 1/6/2004 | $37,800.00 |
| 8986902 | 2004-QS3 | 1/13/2004 | $300,000.00 |
| 8993803 | 2004-SA1 | 5/18/2004 | $343,500.00 |
| 8997483 | 2004-HS2 | 5/13/2004 | $30,000.00 |
| 9003258 | 2004-QS1 | 1/9/2004 | $153,000.00 |
| 9006852 | 2004-HI1 | 1/27/2004 | $44,906.67 |
| 9011488 | 2004-HS1 | 1/13/2004 | $24,963.70 |
| 9011570 | 2004-HS1 | 1/12/2004 | $24,800.00 |
| 9011666 | 2004-HS1 | 1/12/2004 | $38,983.34 |
| 9012811 | 2004-S6 | 5/27/2004 | $500,000.00 |
| 9013022 | 2004-HI1 | 1/27/2004 | $31,927.11 |
| 9013128 | 2004-HS1 | 1/27/2004 | $49,848.50 |
| 9013231 | 2004-HS2 | 5/21/2004 | $36,800.00 |
| 9013243 | 2004-HS2 | 5/21/2004 | $61,900.00 |
| 9013351 | 2004-HS2 | 5/28/2004 | $56,400.00 |
| 9013368 | 2004-HI1 | 1/27/2004 | $34,985.77 |
| 9013729 | 2004-HS2 | 5/24/2004 | $20,000.00 |
| 9013737 | 2004-HS2 | 5/24/2004 | $60,650.00 |
| 9013743 | 2004-HI2 | 5/24/2004 | $50,000.00 |
| 9013947 | 2004-HI2 | 5/24/2004 | $32,500.00 |
| 9013953 | 2004-HI2 | 5/25/2004 | $60,000.00 |
| 9014061 | 2004-HS3 | 6/23/2004 | $63,000.00 |
| 9014063 | 2004-HS2 | 5/25/2004 | $27,100.00 |
| 9014163 | 2004-HS2 | 5/26/2004 | $26,850.00 |
| 9014498 | 2004-QS2 | 1/21/2004 | $127,000.00 |
| 9014967 | 2004-HI2 | 5/28/2004 | $50,000.00 |
| 9014977 | 2004-HS3 | 7/2/2004 | $72,700.00 |
| 9015053 | 2004-HS3 | 7/1/2004 | $47,000.00 |
| 9015077 | 2004-HS2 | 6/3/2004 | $17,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9015366 | 2004-QS3 | 1/27/2004 | $128,000.00 |
| 9017650 | 2004-HS1 | 1/13/2004 | $26,500.00 |
| 9018087 | 2004-HI2 | 5/19/2004 | $15,800.00 |
| 9018395 | 2004-HS2 | 5/19/2004 | $40,000.00 |
| 9018707 | 2004-HS2 | 5/20/2004 | $26,700.00 |
| 9022147 | 2004-HS3 | 7/12/2004 | $25,500.00 |
| 9022149 | 2004-HS3 | 7/2/2004 | $75,000.00 |
| 9022165 | 2004-HS3 | 7/8/2004 | $38,500.00 |
| 9022187 | 2004-HS2 | 6/4/2004 | $19,500.00 |
| 9022349 | 2004-HS3 | 6/18/2004 | $96,000.00 |
| 9022381 | 2004-HS3 | 6/3/2004 | $35,000.00 |
| 9022549 | 2004-HS2 | 6/8/2004 | $29,500.00 |
| 9022599 | 2004-HS2 | 6/8/2004 | $25,000.00 |
| 9022641 | 2004-HS3 | 7/19/2004 | $36,000.00 |
| 9024624 | 2004-HI1 | 1/28/2004 | $59,000.00 |
| 9024630 | 2004-HS1 | 1/28/2004 | $63,804.58 |
| 9024640 | 2004-HI1 | 1/29/2004 | $49,974.42 |
| 9024642 | 2004-HS1 | 1/28/2004 | $45,000.00 |
| 9024926 | 2004-HS1 | 2/10/2004 | $39,654.17 |
| 9024930 | 2004-HI1 | 2/3/2004 | $35,000.00 |
| 9025004 | 2004-HS1 | 1/30/2004 | $50,000.00 |
| 9025152 | 2004-HI1 | 2/10/2004 | $48,000.00 |
| 9025164 | 2004-HI1 | 2/9/2004 | $49,901.10 |
| 9025170 | 2004-HS1 | 2/3/2004 | $25,000.00 |
| 9026359 | 2004-HS2 | 5/21/2004 | $45,000.00 |
| 9029838 | 2004-HI1 | 1/16/2004 | $50,000.00 |
| 9031219 | 2004-HS2 | 6/8/2004 | $37,000.00 |
| 9031239 | 2004-HS2 | 6/4/2004 | $10,000.00 |
| 9031255 | 2004-HS2 | 6/8/2004 | $74,800.00 |
| 9031437 | 2004-HS2 | 6/10/2004 | $56,000.00 |
| 9031605 | 2004-HS3 | 6/25/2004 | $27,500.00 |
| 9031627 | 2004-HS3 | 6/25/2004 | $30,000.00 |
| 9031631 | 2004-HS3 | 7/12/2004 | $33,500.00 |
| 9031633 | 2004-HS3 | 6/25/2004 | $55,000.00 |
| 9031635 | 2004-HS3 | 6/30/2004 | $25,800.00 |
| 9031637 | 2004-HS3 | 6/25/2004 | $41,000.00 |
| 9031641 | 2004-HS3 | 6/30/2004 | $28,500.00 |
| 9031651 | 2004-HS3 | 6/17/2004 | $20,000.00 |
| 9031657 | 2004-HS3 | 7/8/2004 | $68,000.00 |
| 9031663 | 2004-HS3 | 6/30/2004 | $54,000.00 |
| 9031713 | 2004-HS2 | 6/4/2004 | $26,600.00 |
| 9031803 | 2004-HS3 | 6/29/2004 | $35,000.00 |
| 9032902 | 2004-HI1 | 2/4/2004 | $49,973.97 |
| 9033210 | 2004-HS1 | 2/11/2004 | $111,000.00 |
| 9033212 | 2004-HS1 | 2/4/2004 | $45,000.00 |
| 9033214 | 2004-HI1 | 2/4/2004 | $34,881.88 |
| 9033232 | 2004-HS1 | 2/4/2004 | $42,859.06 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9033248 | 2004-HI1 | 2/5/2004 | $32,902.50 |
| 9033252 | 2004-HS1 | 2/4/2004 | $38,581.82 |
| 9033340 | 2004-HI1 | 2/5/2004 | $28,289.97 |
| 9033452 | 2004-HS1 | 2/9/2004 | $42,000.00 |
| 9033478 | 2004-HS1 | 2/9/2004 | $36,700.00 |
| 9033983 | 2004-HS2 | 5/25/2004 | $70,000.00 |
| 9034179 | 2004-HS2 | 5/25/2004 | $35,000.00 |
| 9034191 | 2004-HS2 | 6/3/2004 | $40,500.00 |
| 9034209 | 2004-HS2 | 5/25/2004 | $22,500.00 |
| 9037673 | 2004-HI2 | 5/26/2004 | $32,000.00 |
| 9038235 | 2004-HS2 | 5/28/2004 | $32,250.00 |
| 9038365 | 2004-HS2 | 5/26/2004 | $44,000.00 |
| 9038559 | 2004-HS2 | 5/27/2004 | $60,000.00 |
| 9038567 | 2004-HS2 | 6/3/2004 | $12,500.00 |
| 9038603 | 2004-HS3 | 6/23/2004 | $15,500.00 |
| 9038685 | 2004-HS3 | 6/18/2004 | $75,000.00 |
| 9038803 | 2004-QS8 | 6/3/2004 | $99,900.00 |
| 9039875 | 2004-HS3 | 6/25/2004 | $28,000.00 |
| 9039891 | 2004-HS3 | 6/25/2004 | $30,000.00 |
| 9039893 | 2004-HS3 | 6/16/2004 | $29,000.00 |
| 9040031 | 2004-HS2 | 6/8/2004 | $65,000.00 |
| 9040061 | 2004-HI2 | 6/10/2004 | $35,000.00 |
| 9040221 | 2004-HS2 | 6/10/2004 | $10,000.00 |
| 9040225 | 2004-HI2 | 6/10/2004 | $60,000.00 |
| 9040229 | 2004-HI2 | 6/14/2004 | $25,000.00 |
| 9040765 | 2004-HI2 | 5/26/2004 | $50,000.00 |
| 9041406 | 2004-QS2 | 1/30/2004 | $54,000.00 |
| 9043837 | 2004-HS2 | 6/3/2004 | $42,000.00 |
| 9045081 | 2004-HS3 | 6/15/2004 | $28,750.00 |
| 9045083 | 2004-HI3 | 6/24/2004 | $25,000.00 |
| 9045089 | 2004-HS3 | 6/15/2004 | $21,000.00 |
| 9045101 | 2004-HI3 | 6/16/2004 | $31,200.00 |
| 9045219 | 2004-HS3 | 6/25/2004 | $124,300.00 |
| 9045389 | 2004-HI3 | 6/17/2004 | $30,000.00 |
| 9045579 | 2004-HS3 | 6/15/2004 | $16,500.00 |
| 9045600 | 2004-HS1 | 2/9/2004 | $32,500.00 |
| 9045629 | 2004-HS3 | 6/30/2004 | $75,000.00 |
| 9045636 | 2004-HI1 | 2/9/2004 | $50,000.00 |
| 9045663 | 2004-HI3 | 6/16/2004 | $68,000.00 |
| 9045716 | 2004-HI1 | 2/10/2004 | $50,000.00 |
| 9045724 | 2004-HS1 | 2/11/2004 | $25,000.00 |
| 9045726 | 2004-HS1 | 2/11/2004 | $48,000.00 |
| 9045728 | 2004-HS1 | 2/11/2004 | $36,700.00 |
| 9045730 | 2004-HS1 | 2/11/2004 | $11,200.00 |
| 9045734 | 2004-HS1 | 2/11/2004 | $20,000.00 |
| 9045742 | 2004-HS1 | 2/12/2004 | $28,000.00 |
| 9045754 | 2004-HS1 | 2/11/2004 | $15,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9045756 | 2004-HS1 | 2/11/2004 | $32,300.00 |
| 9045760 | 2004-HS1 | 2/11/2004 | $30,000.00 |
| 9045768 | 2004-HS1 | 2/11/2004 | $50,000.00 |
| 9045850 | 2004-HS1 | 2/11/2004 | $74,000.00 |
| 9045854 | 2004-HS1 | 2/12/2004 | $75,000.00 |
| 9045884 | 2004-HS1 | 2/11/2004 | $24,950.00 |
| 9045918 | 2004-HS1 | 2/12/2004 | $19,000.00 |
| 9052730 | 2004-S1 | 2/2/2004 | $355,000.00 |
| 9053292 | 2004-S3 | 2/3/2004 | $366,000.00 |
| 9056736 | 2004-HI1 | 2/11/2004 | $35,000.00 |
| 9057280 | 2004-HS1 | 2/12/2004 | $25,000.00 |
| 9057284 | 2004-HI1 | 2/18/2004 | $49,903.43 |
| 9057733 | 2004-HS3 | 6/15/2004 | $43,200.00 |
| 9057757 | 2004-HI3 | 6/16/2004 | $50,000.00 |
| 9065963 | 2004-HS3 | 6/30/2004 | $29,400.00 |
| 9066021 | 2004-HI3 | 6/25/2004 | $49,500.00 |
| 9066051 | 2004-HI3 | 7/21/2004 | $50,000.00 |
| 9066111 | 2004-HS3 | 6/22/2004 | $33,000.00 |
| 9066123 | 2004-HI3 | 6/22/2004 | $25,000.00 |
| 9068949 | 2004-HS3 | 6/29/2004 | $30,000.00 |
| 9070185 | 2004-SA1 | 6/9/2004 | $400,000.00 |
| 9071755 | 2004-QS10 | 6/11/2004 | $615,000.00 |
| 9072023 | 2004-SA1 | 6/9/2004 | $449,900.00 |
| 9072092 | 2004-HS1 | 2/13/2004 | $50,000.00 |
| 9072094 | 2004-HS1 | 2/13/2004 | $54,000.00 |
| 9072098 | 2004-HS1 | 3/9/2004 | $50,000.00 |
| 9072102 | 2004-HS1 | 2/17/2004 | $52,000.00 |
| 9072120 | 2004-HS1 | 2/17/2004 | $43,200.00 |
| 9072124 | 2004-HS1 | 2/17/2004 | $31,500.00 |
| 9072126 | 2004-HS1 | 2/17/2004 | $14,500.00 |
| 9072128 | 2004-HS1 | 2/13/2004 | $60,000.00 |
| 9072130 | 2004-HS1 | 2/17/2004 | $69,000.00 |
| 9072132 | 2004-HS1 | 2/13/2004 | $35,800.00 |
| 9072140 | 2004-HS1 | 2/17/2004 | $34,300.00 |
| 9072142 | 2004-HS1 | 2/17/2004 | $40,000.00 |
| 9072144 | 2004-HS1 | 2/13/2004 | $26,000.00 |
| 9072150 | 2004-HS1 | 2/17/2004 | $45,000.00 |
| 9072154 | 2004-HS1 | 2/13/2004 | $49,500.00 |
| 9072156 | 2004-HI1 | 2/17/2004 | $36,100.00 |
| 9072160 | 2004-HS1 | 2/17/2004 | $25,000.00 |
| 9072162 | 2004-HS1 | 2/18/2004 | $27,000.00 |
| 9072168 | 2004-HS1 | 2/17/2004 | $10,000.00 |
| 9072172 | 2004-HS1 | 2/13/2004 | $52,000.00 |
| 9072176 | 2004-HS1 | 2/17/2004 | $40,000.00 |
| 9072180 | 2004-HS1 | 2/17/2004 | $50,000.00 |
| 9072284 | 2004-HS1 | 2/24/2004 | $25,000.00 |
| 9072310 | 2004-HI1 | 2/23/2004 | $39,927.23 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9072342 | 2004-HS1 | 2/18/2004 | $25,000.00 |
| 9072346 | 2004-HS1 | 2/19/2004 | $34,000.00 |
| 9072352 | 2004-HS1 | 2/18/2004 | $79,000.00 |
| 9072376 | 2004-HS1 | 2/18/2004 | $43,000.00 |
| 9072386 | 2004-HS1 | 2/17/2004 | $30,500.00 |
| 9072398 | 2004-HS1 | 2/20/2004 | $10,000.00 |
| 9072416 | 2004-HS1 | 2/18/2004 | $40,000.00 |
| 9072418 | 2004-HS1 | 3/5/2004 | $24,000.00 |
| 9072420 | 2004-HS1 | 2/18/2004 | $26,000.00 |
| 9072422 | 2004-HS1 | 2/19/2004 | $27,500.00 |
| 9072454 | 2004-HS1 | 2/20/2004 | $38,500.00 |
| 9072460 | 2004-HS1 | 2/18/2004 | $25,000.00 |
| 9072478 | 2004-HS1 | 2/20/2004 | $30,000.00 |
| 9072482 | 2004-HS1 | 2/17/2004 | $25,000.00 |
| 9072486 | 2004-HS1 | 2/24/2004 | $35,000.00 |
| 9072558 | 2004-HS1 | 2/18/2004 | $52,000.00 |
| 9072568 | 2004-HS1 | 2/18/2004 | $19,750.00 |
| 9072586 | 2004-HS1 | 2/19/2004 | $15,000.00 |
| 9072610 | 2004-HS1 | 2/19/2004 | $60,000.00 |
| 9072614 | 2004-HS1 | 2/19/2004 | $20,000.00 |
| 9072618 | 2004-HS1 | 2/19/2004 | $30,000.00 |
| 9072638 | 2004-HS1 | 2/19/2004 | $92,000.00 |
| 9072640 | 2004-HS1 | 2/25/2004 | $25,000.00 |
| 9072642 | 2004-HS1 | 2/19/2004 | $47,000.00 |
| 9072650 | 2004-HS1 | 2/18/2004 | $56,000.00 |
| 9072654 | 2004-HS1 | 2/18/2004 | $25,000.00 |
| 9072658 | 2004-HS1 | 2/18/2004 | $45,000.00 |
| 9073913 | 2004-HS3 | 6/25/2004 | $46,000.00 |
| 9073983 | 2004-HS3 | 6/22/2004 | $46,300.00 |
| 9074005 | 2004-HS3 | 6/29/2004 | $58,000.00 |
| 9074007 | 2004-HI3 | 6/22/2004 | $50,000.00 |
| 9074143 | 2004-HS3 | 6/22/2004 | $34,000.00 |
| 9074779 | 2004-HS2 | 6/10/2004 | $30,000.00 |
| 9074805 | 2004-HI3 | 6/15/2004 | $28,500.00 |
| 9074815 | 2004-HS3 | 6/29/2004 | $53,000.00 |
| 9074827 | 2004-HI2 | 6/10/2004 | $51,500.00 |
| 9074837 | 2004-HI3 | 6/16/2004 | $50,000.00 |
| 9074841 | 2004-HS2 | 6/10/2004 | $12,000.00 |
| 9074887 | 2004-HS2 | 6/10/2004 | $53,000.00 |
| 9074911 | 2004-HI3 | 6/15/2004 | $35,000.00 |
| 9075013 | 2004-HI3 | 8/26/2004 | $35,000.00 |
| 9080028 | 2004-S3 | 2/10/2004 | $316,500.00 |
| 9080267 | 2004-HS3 | 6/23/2004 | $35,000.00 |
| 9080273 | 2004-HI3 | 6/22/2004 | $32,000.00 |
| 9080279 | 2004-HI3 | 6/29/2004 | $60,000.00 |
| 9080483 | 2004-HS3 | 6/23/2004 | $18,400.00 |
| 9080485 | 2004-HS3 | 6/22/2004 | $30,750.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9080673 | 2004-HS3 | 7/2/2004 | $24,000.00 |
| 9081966 | 2004-HS1 | 2/18/2004 | $53,500.00 |
| 9081982 | 2004-HS1 | 2/18/2004 | $120,000.00 |
| 9081990 | 2004-HS2 | 3/16/2004 | $37,599.67 |
| 9082158 | 2004-HS2 | 3/11/2004 | $41,000.00 |
| 9085492 | 2004-S3 | 2/17/2004 | $392,300.00 |
| 9087837 | 2004-HI3 | 6/23/2004 | $42,000.00 |
| 9087843 | 2004-HS3 | 7/1/2004 | $29,000.00 |
| 9087847 | 2004-HS3 | 7/13/2004 | $17,000.00 |
| 9087851 | 2004-HI3 | 6/23/2004 | $29,000.00 |
| 9088287 | 2004-HS3 | 6/25/2004 | $43,000.00 |
| 9088289 | 2004-HS3 | 7/19/2004 | $75,000.00 |
| 9090022 | 2004-HI1 | 2/12/2004 | $35,000.00 |
| 9090030 | 2004-HS1 | 2/11/2004 | $33,500.00 |
| 9091170 | 2004-HS1 | 2/11/2004 | $40,000.00 |
| 9092030 | 2004-HI1 | 3/1/2004 | $35,000.00 |
| 9092036 | 2004-HI1 | 2/24/2004 | $43,800.00 |
| 9092260 | 2004-HS1 | 2/24/2004 | $30,500.00 |
| 9092492 | 2004-HI1 | 2/25/2004 | $50,000.00 |
| 9092578 | 2004-QS5 | 3/29/2004 | $75,200.00 |
| 9094235 | 2004-HS3 | 6/25/2004 | $15,400.00 |
| 9094249 | 2004-HS3 | 6/25/2004 | $20,550.00 |
| 9094253 | 2004-HS3 | 8/3/2004 | $42,700.00 |
| 9094255 | 2004-HS3 | 6/24/2004 | $29,000.00 |
| 9094359 | 2004-HS3 | 7/2/2004 | $150,000.00 |
| 9094481 | 2004-HS3 | 7/19/2004 | $59,000.00 |
| 9094501 | 2004-HS3 | 6/25/2004 | $82,500.00 |
| 9098090 | 2004-HS1 | 2/26/2004 | $57,400.00 |
| 9098116 | 2004-HS1 | 2/25/2004 | $40,000.00 |
| 9098118 | 2004-HS1 | 2/25/2004 | $34,000.00 |
| 9098124 | 2004-HS1 | 2/25/2004 | $35,000.00 |
| 9098126 | 2004-HS1 | 2/25/2004 | $50,000.00 |
| 9098130 | 2004-HS1 | 2/26/2004 | $39,000.00 |
| 9098134 | 2004-HS1 | 2/25/2004 | $75,000.00 |
| 9098136 | 2004-HS1 | 2/25/2004 | $20,000.00 |
| 9098140 | 2004-HS1 | 2/25/2004 | $45,800.00 |
| 9098142 | 2004-HS2 | 3/12/2004 | $32,923.59 |
| 9098144 | 2004-HS1 | 2/25/2004 | $45,400.00 |
| 9098146 | 2004-HS1 | 2/25/2004 | $29,000.00 |
| 9098148 | 2004-HS1 | 2/26/2004 | $37,000.00 |
| 9098150 | 2004-HS1 | 3/10/2004 | $46,500.00 |
| 9098154 | 2004-HS2 | 2/25/2004 | $49,358.39 |
| 9098156 | 2004-HS1 | 2/25/2004 | $18,000.00 |
| 9098158 | 2004-HS1 | 2/25/2004 | $48,000.00 |
| 9098168 | 2004-HS1 | 2/25/2004 | $60,000.00 |
| 9098222 | 2004-HS1 | 2/25/2004 | $64,000.00 |
| 9098288 | 2004-HS1 | 2/26/2004 | $35,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9098300 | 2004-HS1 | 2/25/2004 | $100,000.00 |
| 9098434 | 2004-HS1 | 2/26/2004 | $40,000.00 |
| 9098442 | 2004-HS2 | 2/26/2004 | $70,000.00 |
| 9098466 | 2004-HS1 | 2/26/2004 | $95,000.00 |
| 9098470 | 2004-HS1 | 2/26/2004 | $17,300.00 |
| 9098478 | 2004-HS1 | 2/26/2004 | $30,000.00 |
| 9098496 | 2004-HS1 | 2/26/2004 | $35,000.00 |
| 9098506 | 2004-HS1 | 2/26/2004 | $29,350.00 |
| 9098584 | 2004-HI1 | 2/27/2004 | $40,000.00 |
| 9098592 | 2004-HI1 | 2/27/2004 | $60,000.00 |
| 9098596 | 2004-HS1 | 3/1/2004 | $45,000.00 |
| 9104189 | 2004-HS3 | 7/20/2004 | $25,000.00 |
| 9104207 | 2004-HS3 | 8/4/2004 | $25,000.00 |
| 9104479 | 2004-HS3 | 6/30/2004 | $18,500.00 |
| 9104487 | 2004-HI3 | 6/30/2004 | $35,000.00 |
| 9104497 | 2004-HS3 | 6/30/2004 | $30,000.00 |
| 9104561 | 2004-HI3 | 7/8/2004 | $70,000.00 |
| 9104693 | 2004-HS3 | 7/19/2004 | $95,000.00 |
| 9110032 | 2004-HS1 | 2/27/2004 | $50,000.00 |
| 9110034 | 2004-HS1 | 3/1/2004 | $29,100.00 |
| 9110038 | 2004-HS1 | 2/27/2004 | $16,590.00 |
| 9110160 | 2004-HS1 | 3/1/2004 | $25,000.00 |
| 9110170 | 2004-HS1 | 3/2/2004 | $34,000.00 |
| 9110172 | 2004-HS1 | 3/1/2004 | $32,500.00 |
| 9110202 | 2004-HS1 | 3/5/2004 | $45,000.00 |
| 9110318 | 2004-HI1 | 3/3/2004 | $65,000.00 |
| 9110322 | 2004-HI1 | 3/4/2004 | $60,000.00 |
| 9110427 | 2004-HS3 | 6/30/2004 | $32,300.00 |
| 9110471 | 2004-HS3 | 6/30/2004 | $40,200.00 |
| 9110479 | 2004-HS3 | 7/2/2004 | $27,000.00 |
| 9110741 | 2004-HS3 | 7/14/2004 | $76,000.00 |
| 9113843 | 2004-HS3 | 7/2/2004 | $82,000.00 |
| 9113887 | 2004-HS3 | 7/2/2004 | $56,700.00 |
| 9113967 | 2004-HS3 | 7/14/2004 | $36,600.00 |
| 9113977 | 2004-HS3 | 7/2/2004 | $24,000.00 |
| 9113981 | 2004-HI3 | 7/2/2004 | $75,000.00 |
| 9113993 | 2004-HS3 | 7/2/2004 | $33,000.00 |
| 9114133 | 2004-HS3 | 7/19/2004 | $35,500.00 |
| 9114185 | 2004-HS3 | 7/9/2004 | $52,500.00 |
| 9114187 | 2004-HS3 | 7/16/2004 | $80,000.00 |
| 9114269 | 2004-HS3 | 7/30/2004 | $51,000.00 |
| 9114279 | 2004-HS3 | 7/9/2004 | $33,300.00 |
| 9114315 | 2004-HS3 | 7/12/2004 | $35,000.00 |
| 9114341 | 2004-HS3 | 7/9/2004 | $61,000.00 |
| 9114343 | 2004-HI3 | 7/12/2004 | $74,000.00 |
| 9116818 | 2004-HI2 | 3/9/2004 | $24,962.83 |
| 9117492 | 2004-QS3 | 2/27/2004 | $240,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9118162 | 2004-HS1 | 3/4/2004 | $65,000.00 |
| 9118220 | 2004-HS2 | 3/3/2004 | $28,091.84 |
| 9118222 | 2004-HS1 | 3/4/2004 | $47,000.00 |
| 9118240 | 2004-HS1 | 3/4/2004 | $40,000.00 |
| 9118246 | 2004-HS1 | 3/4/2004 | $25,600.00 |
| 9118250 | 2004-HS2 | 3/24/2004 | $45,500.00 |
| 9118264 | 2004-HS1 | 3/4/2004 | $25,050.00 |
| 9118324 | 2004-HS1 | 3/4/2004 | $27,500.00 |
| 9118336 | 2004-HS1 | 3/4/2004 | $34,100.00 |
| 9118354 | 2004-HS1 | 3/3/2004 | $69,000.00 |
| 9118366 | 2004-HS1 | 3/5/2004 | $50,000.00 |
| 9118374 | 2004-HS1 | 3/4/2004 | $56,000.00 |
| 9118382 | 2004-HS1 | 3/4/2004 | $20,000.00 |
| 9118386 | 2004-HS1 | 3/4/2004 | $50,000.00 |
| 9118418 | 2004-HS1 | 3/4/2004 | $63,600.00 |
| 9118426 | 2004-HS1 | 3/4/2004 | $13,000.00 |
| 9118460 | 2004-HS1 | 3/4/2004 | $48,000.00 |
| 9123176 | 2004-QS4 | 3/4/2004 | $129,200.00 |
| 9125081 | 2004-HS3 | 7/9/2004 | $30,000.00 |
| 9125387 | 2004-HI3 | 7/9/2004 | $39,300.00 |
| 9125391 | 2004-HI3 | 7/16/2004 | $30,000.00 |
| 9125395 | 2004-HS3 | 7/9/2004 | $18,700.00 |
| 9125663 | 2004-HI3 | 7/12/2004 | $50,000.00 |
| 9129660 | 2004-HS1 | 3/8/2004 | $36,000.00 |
| 9129674 | 2004-HS1 | 3/8/2004 | $25,000.00 |
| 9129676 | 2004-HS1 | 3/8/2004 | $53,300.00 |
| 9129678 | 2004-HS1 | 3/5/2004 | $25,000.00 |
| 9129702 | 2004-HS1 | 3/8/2004 | $37,500.00 |
| 9129742 | 2004-HS1 | 3/5/2004 | $33,000.00 |
| 9129746 | 2004-HS2 | 3/10/2004 | $29,500.00 |
| 9129752 | 2004-HS1 | 3/5/2004 | $20,000.00 |
| 9129760 | 2004-HI2 | 3/10/2004 | $34,862.48 |
| 9129762 | 2004-HS1 | 3/9/2004 | $32,400.00 |
| 9129846 | 2004-HI2 | 3/11/2004 | $59,728.65 |
| 9129854 | 2004-HI2 | 3/22/2004 | $34,972.30 |
| 9129858 | 2004-HS1 | 3/8/2004 | $43,000.00 |
| 9129928 | 2004-HS1 | 3/10/2004 | $19,000.00 |
| 9129930 | 2004-HS1 | 3/10/2004 | $10,000.00 |
| 9129934 | 2004-HS1 | 3/9/2004 | $50,000.00 |
| 9129936 | 2004-HS1 | 3/9/2004 | $15,000.00 |
| 9129952 | 2004-HS1 | 3/10/2004 | $45,000.00 |
| 9129956 | 2004-HS2 | 3/11/2004 | $22,200.00 |
| 9129970 | 2004-HS1 | 3/9/2004 | $38,000.00 |
| 9129976 | 2004-HS2 | 3/11/2004 | $56,918.55 |
| 9129978 | 2004-HS1 | 3/8/2004 | $30,000.00 |
| 9129986 | 2004-HS2 | 3/11/2004 | $27,916.69 |
| 9129990 | 2004-HS1 | 3/8/2004 | $43,600.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9129994 | 2004-HS2 | 3/12/2004 | $14,533.61 |
| 9129996 | 2004-HS1 | 3/8/2004 | $25,000.00 |
| 9129998 | 2004-HS1 | 3/10/2004 | $11,000.00 |
| 9130042 | 2004-HS1 | 3/9/2004 | $31,000.00 |
| 9130044 | 2004-HS2 | 3/11/2004 | $49,417.98 |
| 9130046 | 2004-HS2 | 3/11/2004 | $76,600.00 |
| 9130096 | 2004-HS2 | 3/11/2004 | $19,942.47 |
| 9130100 | 2004-HS1 | 3/9/2004 | $20,600.00 |
| 9130104 | 2004-HS2 | 3/12/2004 | $39,237.03 |
| 9130106 | 2004-HS1 | 3/10/2004 | $35,000.00 |
| 9130108 | 2004-HS1 | 3/10/2004 | $88,000.00 |
| 9130116 | 2004-HS2 | 3/15/2004 | $36,985.51 |
| 9130136 | 2004-HS1 | 3/9/2004 | $52,500.00 |
| 9130178 | 2004-HS1 | 3/8/2004 | $60,500.00 |
| 9130186 | 2004-HS1 | 3/8/2004 | $15,000.00 |
| 9130200 | 2004-HS1 | 3/9/2004 | $150,000.00 |
| 9131153 | 2004-HS3 | 7/12/2004 | $60,000.00 |
| 9131155 | 2004-HS3 | 7/12/2004 | $99,000.00 |
| 9131179 | 2004-HI3 | 7/16/2004 | $56,000.00 |
| 9131305 | 2004-HI3 | 7/22/2004 | $38,000.00 |
| 9131333 | 2004-HS3 | 7/12/2004 | $21,000.00 |
| 9131403 | 2004-HI3 | 7/12/2004 | $48,000.00 |
| 9131413 | 2004-HI3 | 7/14/2004 | $60,000.00 |
| 9133238 | 2004-S2 | 3/3/2004 | $386,000.00 |
| 9133282 | 2004-S3 | 3/12/2004 | $464,000.00 |
| 9137598 | 2004-HS1 | 3/1/2004 | $20,000.00 |
| 9137816 | 2004-HS2 | 3/16/2004 | $10,000.00 |
| 9137844 | 2004-HI2 | 3/10/2004 | $59,695.74 |
| 9137874 | 2004-HS2 | 3/12/2004 | $19,197.23 |
| 9137876 | 2004-HS2 | 3/11/2004 | $14,944.38 |
| 9137884 | 2004-HS2 | 3/12/2004 | $34,919.70 |
| 9137910 | 2004-HS2 | 3/11/2004 | $10,000.00 |
| 9137928 | 2004-HS2 | 3/11/2004 | $100,290.44 |
| 9137934 | 2004-HS2 | 3/11/2004 | $35,000.00 |
| 9137958 | 2004-HS2 | 3/11/2004 | $22,252.36 |
| 9137960 | 2004-HS2 | 3/11/2004 | $26,082.22 |
| 9137964 | 2004-HS2 | 3/11/2004 | $24,077.57 |
| 9138090 | 2004-HI2 | 3/11/2004 | $22,598.15 |
| 9138092 | 2004-HS2 | 3/11/2004 | $51,900.00 |
| 9138106 | 2004-HS2 | 3/11/2004 | $10,950.00 |
| 9138110 | 2004-HS2 | 3/11/2004 | $59,500.00 |
| 9138504 | 2004-HS1 | 2/26/2004 | $90,000.00 |
| 9139797 | 2004-HS3 | 7/1/2004 | $29,700.00 |
| 9140841 | 2004-HS3 | 6/30/2004 | $43,000.00 |
| 9140851 | 2004-HS3 | 7/8/2004 | $90,000.00 |
| 9140969 | 2004-HS3 | 7/1/2004 | $61,500.00 |
| 9141203 | 2004-HS3 | 7/21/2004 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9141257 | 2004-HS3 | 7/1/2004 | $63,800.00 |
| 9141329 | 2004-HS3 | 7/16/2004 | $29,200.00 |
| 9142869 | 2004-HI3 | 7/19/2004 | $35,000.00 |
| 9142879 | 2004-HI3 | 7/14/2004 | $32,400.00 |
| 9144472 | 2004-HS2 | 3/11/2004 | $17,599.63 |
| 9144474 | 2004-HS2 | 3/11/2004 | $27,393.70 |
| 9144524 | 2004-HS2 | 3/11/2004 | $49,400.00 |
| 9144568 | 2004-HS2 | 3/12/2004 | $39,500.00 |
| 9144578 | 2004-HS2 | 3/15/2004 | $11,469.81 |
| 9144592 | 2004-HS2 | 3/12/2004 | $49,343.81 |
| 9144594 | 2004-HS2 | 3/15/2004 | $27,564.44 |
| 9144606 | 2004-HS2 | 3/11/2004 | $74,000.00 |
| 9144714 | 2004-HS2 | 3/12/2004 | $35,000.00 |
| 9144728 | 2004-HS2 | 3/17/2004 | $39,488.30 |
| 9144766 | 2004-HS2 | 3/15/2004 | $52,476.21 |
| 9144916 | 2004-HS2 | 3/16/2004 | $55,000.00 |
| 9144924 | 2004-HS2 | 3/15/2004 | $23,957.20 |
| 9147136 | 2004-QS4 | 3/5/2004 | $164,000.00 |
| 9149919 | 2004-RZ3 | 7/13/2004 | $71,300.00 |
| 9150043 | 2004-QS13 | 7/9/2004 | $208,000.00 |
| 9150303 | 2004-HS3 | 7/8/2004 | $10,000.00 |
| 9150361 | 2004-HI3 | 7/8/2004 | $60,000.00 |
| 9150389 | 2004-HI3 | 7/8/2004 | $50,000.00 |
| 9150441 | 2004-HS3 | 7/8/2004 | $35,000.00 |
| 9153014 | 2004-HS1 | 3/4/2004 | $30,000.00 |
| 9153048 | 2004-HS1 | 3/4/2004 | $55,000.00 |
| 9153054 | 2004-HS1 | 3/3/2004 | $34,000.00 |
| 9153060 | 2004-HS1 | 3/3/2004 | $65,850.00 |
| 9154844 | 2004-HS2 | 3/15/2004 | $26,480.42 |
| 9154964 | 2004-HS2 | 3/16/2004 | $33,969.86 |
| 9154972 | 2004-HI2 | 3/19/2004 | $42,397.46 |
| 9155012 | 2004-HS2 | 3/17/2004 | $14,835.00 |
| 9155020 | 2004-HS2 | 3/16/2004 | $15,800.00 |
| 9155044 | 2004-HS2 | 3/16/2004 | $62,500.00 |
| 9155078 | 2004-HS2 | 3/17/2004 | $39,764.22 |
| 9155084 | 2004-HS2 | 3/16/2004 | $68,714.35 |
| 9155096 | 2004-HS2 | 3/17/2004 | $74,341.78 |
| 9155102 | 2004-HS2 | 3/16/2004 | $29,971.42 |
| 9156864 | 2004-QS5 | 3/15/2004 | $516,300.00 |
| 9156944 | 2004-HS1 | 3/5/2004 | $48,500.00 |
| 9156964 | 2004-HS1 | 3/5/2004 | $40,000.00 |
| 9156992 | 2004-HS1 | 3/5/2004 | $55,500.00 |
| 9157058 | 2004-HI2 | 3/10/2004 | $34,972.67 |
| 9157226 | 2004-HI2 | 3/8/2004 | $34,787.04 |
| 9159010 | 2004-HI2 | 3/5/2004 | $45,065.68 |
| 9159046 | 2004-HI2 | 3/10/2004 | $74,809.49 |
| 9159088 | 2004-HS1 | 3/10/2004 | $27,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9160719 | 2004-HS3 | 7/12/2004 | $35,000.00 |
| 9163074 | 2004-HS1 | 3/10/2004 | $34,100.00 |
| 9166338 | 2004-HS2 | 3/19/2004 | $21,892.17 |
| 9166356 | 2004-HS2 | 3/17/2004 | $25,098.51 |
| 9166372 | 2004-HS2 | 3/17/2004 | $19,785.42 |
| 9166510 | 2004-HS2 | 3/22/2004 | $69,966.85 |
| 9166516 | 2004-HS2 | 3/22/2004 | $10,888.47 |
| 9166538 | 2004-HS2 | 3/23/2004 | $23,699.34 |
| 9166562 | 2004-HS2 | 3/22/2004 | $37,000.00 |
| 9166570 | 2004-HS2 | 3/22/2004 | $15,550.54 |
| 9166582 | 2004-HS2 | 3/22/2004 | $11,957.19 |
| 9166626 | 2004-HS2 | 3/22/2004 | $16,500.00 |
| 9166628 | 2004-HS2 | 3/23/2004 | $34,900.00 |
| 9166702 | 2004-HS2 | 3/22/2004 | $51,050.00 |
| 9166892 | 2004-HS2 | 3/23/2004 | $23,980.72 |
| 9166898 | 2004-HS2 | 3/23/2004 | $17,841.07 |
| 9166900 | 2004-HS2 | 3/23/2004 | $20,000.00 |
| 9166904 | 2004-HS2 | 3/23/2004 | $28,000.00 |
| 9171356 | 2004-S2 | 3/16/2004 | $341,250.00 |
| 9171612 | 2004-HS2 | 3/30/2004 | $29,750.00 |
| 9171614 | 2004-HS2 | 3/23/2004 | $49,500.00 |
| 9171636 | 2004-HS2 | 3/23/2004 | $25,000.00 |
| 9171638 | 2004-HS2 | 3/23/2004 | $17,499.71 |
| 9171644 | 2004-HS2 | 3/25/2004 | $48,500.00 |
| 9171742 | 2004-HS2 | 3/23/2004 | $17,294.24 |
| 9171864 | 2004-HS2 | 4/23/2004 | $19,990.00 |
| 9171926 | 2004-HS2 | 3/23/2004 | $26,504.69 |
| 9172016 | 2004-HS2 | 3/25/2004 | $145,000.00 |
| 9172028 | 2004-HS2 | 3/25/2004 | $14,464.56 |
| 9172034 | 2004-HI2 | 3/30/2004 | $59,776.31 |
| 9172036 | 2004-HS2 | 3/24/2004 | $89,800.00 |
| 9172104 | 2004-HS2 | 3/24/2004 | $24,809.59 |
| 9172110 | 2004-HS2 | 3/26/2004 | $35,736.06 |
| 9174053 | 2004-HS3 | 8/4/2004 | $35,000.00 |
| 9178119 | 2004-HS3 | 7/16/2004 | $27,700.00 |
| 9178185 | 2004-HS3 | 7/16/2004 | $82,000.00 |
| 9178241 | 2004-HI3 | 7/22/2004 | $46,000.00 |
| 9180188 | 2004-HS2 | 3/25/2004 | $31,300.00 |
| 9180192 | 2004-HS2 | 3/26/2004 | $29,887.77 |
| 9180194 | 2004-HS2 | 3/25/2004 | $47,463.55 |
| 9180208 | 2004-HS2 | 3/26/2004 | $14,800.00 |
| 9180218 | 2004-HS2 | 3/24/2004 | $22,950.05 |
| 9180508 | 2004-HS2 | 3/26/2004 | $19,923.01 |
| 9180546 | 2004-HS2 | 3/26/2004 | $47,250.00 |
| 9181132 | 2004-HS2 | 3/15/2004 | $26,349.73 |
| 9181266 | 2004-HS2 | 3/15/2004 | $29,988.77 |
| 9181453 | 2004-HS3 | 8/20/2004 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9181509 | 2004-HS3 | 7/21/2004 | $40,000.00 |
| 9181561 | 2004-HS3 | 7/23/2004 | $34,800.00 |
| 9181563 | 2004-HS3 | 8/13/2004 | $100,000.00 |
| 9181567 | 2004-HS3 | 7/21/2004 | $34,200.00 |
| 9181765 | 2004-HS3 | 7/23/2004 | $57,000.00 |
| 9181813 | 2004-HS3 | 7/23/2004 | $45,750.00 |
| 9181933 | 2004-HS3 | 7/27/2004 | $15,000.00 |
| 9182111 | 2004-HS3 | 7/28/2004 | $68,000.00 |
| 9182751 | 2004-HS3 | 8/4/2004 | $10,000.00 |
| 9182937 | 2004-HS3 | 7/30/2004 | $36,000.00 |
| 9182941 | 2004-HS3 | 7/30/2004 | $24,750.00 |
| 9183229 | 2004-HI3 | 8/17/2004 | $34,000.00 |
| 9183321 | 2004-HI3 | 8/6/2004 | $50,000.00 |
| 9183349 | 2004-HS3 | 8/6/2004 | $30,000.00 |
| 9183377 | 2004-HI3 | 8/3/2004 | $45,000.00 |
| 9183429 | 2004-HI3 | 8/24/2004 | $31,000.00 |
| 9183431 | 2004-HS3 | 8/6/2004 | $60,000.00 |
| 9183471 | 2004-HS3 | 8/6/2004 | $98,000.00 |
| 9183523 | 2004-HS3 | 8/11/2004 | $75,000.00 |
| 9187460 | 2004-RZ2 | 3/17/2004 | $135,000.00 |
| 9187486 | 2004-QS5 | 3/23/2004 | $274,400.00 |
| 9188650 | 2004-HS2 | 3/29/2004 | $45,086.80 |
| 9188652 | 2004-HS2 | 3/26/2004 | $74,965.04 |
| 9188660 | 2004-HI2 | 3/26/2004 | $29,867.44 |
| 9188722 | 2004-HS2 | 3/30/2004 | $58,000.00 |
| 9188806 | 2004-HS2 | 3/29/2004 | $27,495.40 |
| 9189018 | 2004-HS2 | 3/30/2004 | $64,671.49 |
| 9194894 | 2004-HI2 | 3/23/2004 | $49,897.51 |
| 9195261 | 2004-HI3 | 7/20/2004 | $32,000.00 |
| 9195277 | 2004-HI3 | 7/20/2004 | $50,000.00 |
| 9197830 | 2004-HS2 | 3/31/2004 | $34,831.64 |
| 9197994 | 2004-HS3 | 3/31/2004 | $20,000.00 |
| 9198234 | 2004-HS2 | 4/1/2004 | $36,969.48 |
| 9198252 | 2004-HS2 | 4/1/2004 | $27,660.78 |
| 9198404 | 2004-HS2 | 4/7/2004 | $30,000.00 |
| 9199736 | 2004-QS5 | 3/26/2004 | $71,000.00 |
| 9201829 | 2004-HI3 | 8/6/2004 | $35,000.00 |
| 9201839 | 2004-HS3 | 8/11/2004 | $75,100.00 |
| 9201843 | 2004-HI3 | 8/27/2004 | $27,500.00 |
| 9201905 | 2004-HI3 | 8/6/2004 | $35,000.00 |
| 9202383 | 2004-HI3 | 8/13/2004 | $32,700.00 |
| 9202385 | 2004-HS3 | 8/5/2004 | $19,000.00 |
| 9202530 | 2004-HS2 | 4/2/2004 | $19,939.00 |
| 9202536 | 2004-HS2 | 4/6/2004 | $10,000.00 |
| 9202540 | 2004-HS2 | 4/2/2004 | $24,878.08 |
| 9202560 | 2004-HS2 | 4/2/2004 | $70,000.00 |
| 9202578 | 2004-HS2 | 4/7/2004 | $20,550.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9202586 | 2004-HS2 | 4/9/2004 | $10,000.00 |
| 9202590 | 2004-HS2 | 4/7/2004 | $26,881.81 |
| 9202600 | 2004-HS2 | 4/7/2004 | $82,796.00 |
| 9202622 | 2004-HS2 | 4/5/2004 | $47,131.38 |
| 9202644 | 2004-HS2 | 4/5/2004 | $32,500.00 |
| 9202674 | 2004-HS2 | 4/7/2004 | $33,203.42 |
| 9202680 | 2004-HS2 | 4/7/2004 | $39,948.36 |
| 9202704 | 2004-HS2 | 4/5/2004 | $43,700.00 |
| 9202832 | 2004-HS2 | 4/9/2004 | $40,622.05 |
| 9202906 | 2004-HS2 | 4/6/2004 | $50,000.00 |
| 9203030 | 2004-HI2 | 4/7/2004 | $53,363.14 |
| 9203032 | 2004-HS2 | 4/7/2004 | $43,500.00 |
| 9203036 | 2004-HS2 | 4/9/2004 | $35,000.00 |
| 9203038 | 2004-HS2 | 4/7/2004 | $46,481.39 |
| 9203040 | 2004-HS2 | 4/7/2004 | $34,300.00 |
| 9203066 | 2004-HS2 | 4/7/2004 | $13,200.00 |
| 9208434 | 2004-HS2 | 4/7/2004 | $40,650.00 |
| 9208480 | 2004-HS2 | 4/7/2004 | $42,618.36 |
| 9208482 | 2004-HS2 | 4/7/2004 | $28,206.06 |
| 9208616 | 2004-HS2 | 4/6/2004 | $69,000.00 |
| 9208652 | 2004-HI2 | 4/7/2004 | $26,500.00 |
| 9208742 | 2004-HS2 | 4/9/2004 | $34,968.68 |
| 9208760 | 2004-HS2 | 4/8/2004 | $66,865.95 |
| 9208804 | 2004-HI2 | 4/9/2004 | $49,903.43 |
| 9208812 | 2004-HS2 | 4/8/2004 | $25,866.50 |
| 9208836 | 2004-HI2 | 4/8/2004 | $17,985.45 |
| 9208866 | 2004-HS2 | 4/9/2004 | $100,000.00 |
| 9208868 | 2004-HI2 | 4/9/2004 | $61,719.60 |
| 9208870 | 2004-HS2 | 4/9/2004 | $61,957.97 |
| 9208880 | 2004-HS2 | 4/9/2004 | $23,000.00 |
| 9208934 | 2004-HS2 | 4/8/2004 | $30,000.00 |
| 9208938 | 2004-HI2 | 4/8/2004 | $23,988.57 |
| 9208952 | 2004-HS2 | 4/9/2004 | $39,008.74 |
| 9209000 | 2004-HS2 | 4/8/2004 | $70,000.00 |
| 9221179 | 2004-HS3 | 8/10/2004 | $100,000.00 |
| 9221189 | 2004-HS3 | 8/10/2004 | $35,000.00 |
| 9221205 | 2004-HS3 | 8/6/2004 | $93,200.00 |
| 9221211 | 2004-HS3 | 8/13/2004 | $75,000.00 |
| 9221247 | 2004-HS3 | 8/6/2004 | $75,000.00 |
| 9221315 | 2004-HI3 | 8/6/2004 | $43,000.00 |
| 9221333 | 2004-HS3 | 8/11/2004 | $70,000.00 |
| 9221427 | 2004-HS3 | 8/10/2004 | $30,900.00 |
| 9221571 | 2004-HS3 | 8/10/2004 | $34,000.00 |
| 9221579 | 2004-HS3 | 8/12/2004 | $51,750.00 |
| 9221593 | 2004-HS3 | 8/11/2004 | $15,000.00 |
| 9221601 | 2004-HS3 | 8/10/2004 | $110,000.00 |
| 9221719 | 2004-HS3 | 8/12/2004 | $36,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9221725 | 2004-HS3 | 8/16/2004 | $45,000.00 |
| 9221727 | 2004-HS3 | 8/12/2004 | $60,000.00 |
| 9221940 | 2004-HS2 | 4/8/2004 | $26,100.00 |
| 9221944 | 2004-HS2 | 4/8/2004 | $15,688.96 |
| 9221946 | 2004-HS2 | 4/16/2004 | $24,999.59 |
| 9221948 | 2004-HS2 | 4/12/2004 | $69,678.36 |
| 9221950 | 2004-HS2 | 4/12/2004 | $9,023.84 |
| 9221954 | 2004-HI2 | 4/12/2004 | $19,980.86 |
| 9221956 | 2004-HS2 | 4/8/2004 | $13,870.60 |
| 9221958 | 2004-HS2 | 4/12/2004 | $47,867.33 |
| 9221988 | 2004-HS2 | 4/13/2004 | $96,300.00 |
| 9221998 | 2004-HS2 | 4/9/2004 | $46,621.14 |
| 9222152 | 2004-HS2 | 4/13/2004 | $50,000.00 |
| 9222154 | 2004-HS2 | 4/22/2004 | $35,888.77 |
| 9222156 | 2004-HS2 | 4/13/2004 | $71,000.00 |
| 9222158 | 2004-HS2 | 4/13/2004 | $50,000.00 |
| 9222314 | 2004-HS2 | 4/13/2004 | $44,661.78 |
| 9228130 | 2004-S5 | 4/9/2004 | $345,950.00 |
| 9228214 | 2004-S6 | 4/7/2004 | $417,000.00 |
| 9228941 | 2004-HS3 | 8/2/2004 | $10,000.00 |
| 9230091 | 2004-HS3 | 7/29/2004 | $15,000.00 |
| 9231217 | 2004-QS12 | 8/6/2004 | $136,000.00 |
| 9232090 | 2004-HS2 | 4/14/2004 | $108,777.73 |
| 9232304 | 2004-HS2 | 4/13/2004 | $39,000.00 |
| 9232584 | 2004-HS2 | 4/15/2004 | $24,849.32 |
| 9232588 | 2004-HS2 | 4/14/2004 | $69,000.00 |
| 9232592 | 2004-HS2 | 4/15/2004 | $86,377.99 |
| 9234865 | 2004-HI3 | 8/12/2004 | $30,000.00 |
| 9234867 | 2004-HS3 | 8/12/2004 | $100,000.00 |
| 9234899 | 2004-HI3 | 8/12/2004 | $47,000.00 |
| 9235301 | 2004-HS3 | 8/12/2004 | $27,600.00 |
| 9236445 | 2004-HS3 | 7/29/2004 | $21,500.00 |
| 9243368 | 2004-HS2 | 4/5/2004 | $65,311.56 |
| 9245846 | 2004-S4 | 4/15/2004 | $367,500.00 |
| 9248498 | 2004-HS2 | 4/15/2004 | $49,868.12 |
| 9250539 | 2004-HS3 | 8/20/2004 | $60,900.00 |
| 9250545 | 2004-HS3 | 8/20/2004 | $36,000.00 |
| 9250563 | 2004-HI3 | 8/25/2004 | $49,500.00 |
| 9253138 | 2004-S4 | 4/14/2004 | $297,000.00 |
| 9256558 | 2004-HS2 | 4/20/2004 | $63,620.99 |
| 9256564 | 2004-HS2 | 4/20/2004 | $75,000.00 |
| 9256574 | 2004-HI2 | 4/20/2004 | $39,775.83 |
| 9256648 | 2004-HI2 | 4/19/2004 | $49,902.27 |
| 9256722 | 2004-HS2 | 4/23/2004 | $25,000.00 |
| 9256746 | 2004-HS2 | 4/27/2004 | $68,000.00 |
| 9256798 | 2004-HS2 | 5/7/2004 | $17,400.00 |
| 9256800 | 2004-HI2 | 5/10/2004 | $36,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9256804 | 2004-HI2 | 5/28/2004 | $35,000.00 |
| 9256810 | 2004-HI2 | 5/14/2004 | $75,000.00 |
| 9256856 | 2004-HS2 | 5/11/2004 | $74,156.25 |
| 9256860 | 2004-HI2 | 5/13/2004 | $49,981.02 |
| 9256862 | 2004-HS2 | 5/11/2004 | $23,000.00 |
| 9256864 | 2004-HI2 | 5/13/2004 | $59,868.04 |
| 9256866 | 2004-HS2 | 5/18/2004 | $23,036.39 |
| 9256878 | 2004-HS2 | 5/13/2004 | $34,000.00 |
| 9256880 | 2004-HS2 | 5/11/2004 | $32,000.00 |
| 9256912 | 2004-HS2 | 5/25/2004 | $75,000.00 |
| 9256916 | 2004-HS2 | 5/13/2004 | $66,300.00 |
| 9262932 | 2004-S4 | 4/16/2004 | $455,000.00 |
| 9264390 | 2004-HS2 | 5/13/2004 | $40,500.00 |
| 9264430 | 2004-HS2 | 5/19/2004 | $68,000.00 |
| 9264482 | 2004-HS2 | 5/11/2004 | $28,000.00 |
| 9264536 | 2004-HS3 | 6/14/2004 | $71,000.00 |
| 9264538 | 2004-HS2 | 5/14/2004 | $28,700.00 |
| 9264574 | 2004-HI2 | 5/18/2004 | $61,000.00 |
| 9264588 | 2004-HS2 | 5/11/2004 | $42,000.00 |
| 9264612 | 2004-HS2 | 5/11/2004 | $30,000.00 |
| 9264618 | 2004-HS2 | 5/11/2004 | $93,000.00 |
| 9264642 | 2004-HS2 | 5/18/2004 | $41,500.00 |
| 9264696 | 2004-HS2 | 5/19/2004 | $45,750.00 |
| 9264740 | 2004-HS2 | 6/4/2004 | $10,962.17 |
| 9264958 | 2004-HS2 | 5/13/2004 | $56,800.00 |
| 9264972 | 2004-HS2 | 5/13/2004 | $39,500.00 |
| 9272762 | 2004-HI2 | 5/17/2004 | $33,000.00 |
| 9272852 | 2004-HS2 | 5/18/2004 | $23,000.00 |
| 9272856 | 2004-HS3 | 8/3/2004 | $39,000.00 |
| 9274566 | 2004-S5 | 4/27/2004 | $375,000.00 |
| 9274606 | 2004-SA1 | 4/27/2004 | $336,000.00 |
| 9281582 | 2004-HS2 | 4/23/2004 | $73,500.00 |
| 9281592 | 2004-HI2 | 5/18/2004 | $34,928.26 |
| 9281608 | 2004-HI2 | 5/19/2004 | $16,488.59 |
| 9281614 | 2004-HS2 | 5/18/2004 | $75,000.00 |
| 9281620 | 2004-HS2 | 5/24/2004 | $58,300.00 |
| 9281706 | 2004-HS2 | 5/21/2004 | $25,000.00 |
| 9281772 | 2004-HS2 | 5/19/2004 | $54,000.00 |
| 9281784 | 2004-HI2 | 5/18/2004 | $44,909.92 |
| 9281786 | 2004-HI2 | 5/18/2004 | $27,000.00 |
| 9281794 | 2004-HS2 | 6/10/2004 | $39,600.00 |
| 9282096 | 2004-HS2 | 5/28/2004 | $22,500.00 |
| 9282102 | 2004-HS2 | 5/19/2004 | $36,000.00 |
| 9282172 | 2004-HS2 | 5/19/2004 | $20,000.00 |
| 9282184 | 2004-HS2 | 5/19/2004 | $30,000.00 |
| 9282188 | 2004-HS2 | 4/15/2004 | $49,690.41 |
| 9438927 | 2004-HS3 | 8/27/2004 | $69,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9438989 | 2004-HS3 | 8/26/2004 | $54,500.00 |
| 9439027 | 2004-HI3 | 8/25/2004 | $49,000.00 |
| 9439385 | 2004-HS3 | 8/26/2004 | $31,200.00 |
| 9439391 | 2005-HI1 | 9/17/2004 | $35,000.00 |
| 9439395 | 2004-HS3 | 8/27/2004 | $34,000.00 |
| 9439415 | 2004-HI3 | 8/27/2004 | $25,000.00 |
| 9446159 | 2004-HS3 | 8/12/2004 | $20,500.00 |
| 9446631 | 2004-HI3 | 8/12/2004 | $60,000.00 |
| 9447733 | 2004-HS3 | 8/26/2004 | $26,000.00 |
| 9447881 | 2004-HS3 | 8/27/2004 | $40,000.00 |
| 9450827 | 2004-HI3 | 8/13/2004 | $50,000.00 |
| 9450839 | 2004-HI3 | 8/27/2004 | $75,000.00 |
| 9450965 | 2004-HS3 | 8/23/2004 | $35,800.00 |
| 9454919 | 2004-HS3 | 8/24/2004 | $120,350.00 |
| 9457257 | 2005-HI1 | 9/3/2004 | $35,000.00 |
| 9457265 | 2005-HI1 | 9/15/2004 | $35,500.00 |
| 9457267 | 2004-HS3 | 9/3/2004 | $35,800.00 |
| 9457287 | 2004-HS3 | 9/8/2004 | $97,000.00 |
| 9457481 | 2005-HI1 | 9/29/2004 | $30,000.00 |
| 9457493 | 2004-HS3 | 9/7/2004 | $43,500.00 |
| 9457521 | 2005-HI1 | 9/7/2004 | $67,500.00 |
| 9457579 | 2004-HS3 | 9/7/2004 | $38,000.00 |
| 9457619 | 2004-HS3 | 9/7/2004 | $51,700.00 |
| 9457697 | 2004-HS3 | 9/14/2004 | $25,000.00 |
| 9461329 | 2004-HI3 | 8/20/2004 | $28,300.00 |
| 9463791 | 2004-HS3 | 8/25/2004 | $20,000.00 |
| 9465969 | 2004-HS3 | 9/9/2004 | $25,000.00 |
| 9466017 | 2004-HS3 | 9/3/2004 | $32,800.00 |
| 9466131 | 2004-HS3 | 9/10/2004 | $40,900.00 |
| 9468153 | 2004-HI3 | 8/27/2004 | $38,500.00 |
| 9474579 | 2004-HI3 | 8/27/2004 | $60,000.00 |
| 9474585 | 2005-HI1 | 9/22/2004 | $35,000.00 |
| 9474617 | 2004-HS3 | 8/27/2004 | $95,000.00 |
| 9474647 | 2004-HS3 | 8/26/2004 | $48,600.00 |
| 9495925 | 2004-HS3 | 8/30/2004 | $25,000.00 |
| 9495937 | 2004-HS3 | 9/14/2004 | $17,500.00 |
| 9509353 | 2004-HS3 | 9/10/2004 | $61,600.00 |
| 9509813 | 2005-HI1 | 9/14/2004 | $35,000.00 |
| 9509945 | 2005-HI1 | 9/10/2004 | $50,000.00 |
| 9509965 | 2004-HI3 | 9/13/2004 | $45,000.00 |
| 9509969 | 2005-HI1 | 9/10/2004 | $35,000.00 |
| 9510203 | 2005-HI1 | 9/15/2004 | $35,000.00 |
| 9510205 | 2005-HI1 | 9/23/2004 | $50,000.00 |
| 9510223 | 2005-HI1 | 10/12/2004 | $33,900.00 |
| 9510363 | 2005-HI1 | 9/15/2004 | $40,000.00 |
| 9512723 | 2005-HI1 | 9/23/2004 | $60,000.00 |
| 9513249 | 2005-HI1 | 9/22/2004 | $50,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9521873 | 2005-HI1 | 9/23/2004 | $60,000.00 |
| 9527407 | 2004-HS3 | 9/10/2004 | $33,000.00 |
| 9527415 | 2004-HS3 | 9/14/2004 | $28,000.00 |
| 9529979 | 2004-HS3 | 9/8/2004 | $55,000.00 |
| 9531029 | 2004-HS3 | 9/14/2004 | $75,000.00 |
| 9540967 | 2005-HI1 | 9/30/2004 | $75,000.00 |
| 9541063 | 2005-HI1 | 9/24/2004 | $42,700.00 |
| 9541147 | 2005-HI1 | 9/29/2004 | $30,800.00 |
| 9551589 | 2005-HI1 | 9/29/2004 | $27,000.00 |
| 9551591 | 2005-HI1 | 10/19/2004 | $50,000.00 |
| 9559773 | 2005-HI1 | 9/30/2004 | $35,000.00 |
| 9559797 | 2005-HI1 | 9/30/2004 | $60,000.00 |
| 9559801 | 2005-HI1 | 10/7/2004 | $54,800.00 |
| 9559909 | 2005-HI1 | 10/1/2004 | $60,000.00 |
| 9559911 | 2005-HI1 | 11/1/2004 | $32,500.00 |
| 9559919 | 2005-HI1 | 10/12/2004 | $20,000.00 |
| 9560411 | 2005-HI1 | 10/12/2004 | $35,000.00 |
| 9571627 | 2005-HI1 | 10/7/2004 | $39,800.00 |
| 9571735 | 2005-HI1 | 10/14/2004 | $42,500.00 |
| 9571737 | 2005-HI1 | 10/12/2004 | $43,500.00 |
| 9571741 | 2005-HI1 | 11/9/2004 | $25,000.00 |
| 9572221 | 2005-HI1 | 10/7/2004 | $75,000.00 |
| 9582509 | 2005-HI1 | 10/14/2004 | $27,000.00 |
| 9582529 | 2005-HI1 | 10/14/2004 | $39,000.00 |
| 9585945 | 2005-QA1 | 10/7/2004 | $370,000.00 |
| 9587169 | 2005-HI1 | 10/29/2004 | $50,000.00 |
| 9594413 | 2005-HI1 | 10/27/2004 | $35,000.00 |
| 9594415 | 2006-HSA4 | 11/9/2004 | $25,000.00 |
| 9594659 | 2005-HI1 | 11/10/2004 | $46,000.00 |
| 9603815 | 2004-RZ4 | 10/29/2004 | $85,000.00 |
| 9611947 | 2005-HI1 | 10/29/2004 | $48,500.00 |
| 9611953 | 2005-HI1 | 11/9/2004 | $50,000.00 |
| 9616285 | 2005-HI1 | 11/1/2004 | $48,000.00 |
| 9616335 | 2005-HI1 | 11/3/2004 | $50,000.00 |
| 9617915 | 2004-QS16 | 10/29/2004 | $130,500.00 |
| 9623947 | 2005-HI1 | 11/9/2004 | $52,500.00 |
| 9630777 | 2005-HI1 | 11/10/2004 | $35,000.00 |
| 9631001 | 2005-HI1 | 12/9/2004 | $60,000.00 |
| 9631133 | 2005-HI1 | 11/15/2004 | $35,600.00 |
| 9631145 | 2005-HI1 | 11/22/2004 | $35,100.00 |
| 9639891 | 2005-HI1 | 11/19/2004 | $38,000.00 |
| 9640197 | 2005-HI1 | 11/15/2004 | $46,500.00 |
| 9645203 | 2005-HI1 | 11/10/2004 | $38,700.00 |
| 9647543 | 2005-HI1 | 11/17/2004 | $39,900.00 |
| 9648195 | 2005-HI1 | 11/22/2004 | $67,800.00 |
| 9648647 | 2005-HI1 | 11/29/2004 | $39,000.00 |
| 9658315 | 2005-HI1 | 12/2/2004 | $35,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9661507 | 2004-S9 | 11/29/2004 | $210,000.00 |
| 9662739 | 2005-HI1 | 12/2/2004 | $60,000.00 |
| 9662975 | 2004-S9 | 11/24/2004 | $551,350.00 |
| 9669043 | 2005-QS1 | 12/10/2004 | $110,400.00 |
| 9672861 | 2005-HI1 | 11/23/2004 | $35,000.00 |
| 9678837 | 2005-HI1 | 12/10/2004 | $51,000.00 |
| 9678855 | 2005-HS1 | 12/10/2004 | $68,000.00 |
| 9678859 | 2005-HI1 | 12/10/2004 | $47,000.00 |
| 9678879 | 2005-HI1 | 12/10/2004 | $35,000.00 |
| 9678919 | 2005-HI1 | 12/13/2004 | $33,200.00 |
| 9679241 | 2005-HS2 | 12/13/2004 | $40,000.00 |
| 9679261 | 2005-HI1 | 12/13/2004 | $35,000.00 |
| 9693625 | 2005-HI1 | 12/1/2004 | $60,000.00 |
| 9705757 | 2005-HI1 | 12/22/2004 | $33,000.00 |
| 9705761 | 2005-HI1 | 12/22/2004 | $35,000.00 |
| 9710675 | 2005-HI1 | 12/30/2004 | $66,700.00 |
| 9721313 | 2005-HI1 | 12/20/2004 | $52,000.00 |
| 9721993 | 2005-QS3 | 12/31/2004 | $89,000.00 |
| 9722933 | 2005-HI1 | 12/28/2004 | $35,000.00 |
| 9724097 | 2005-HI1 | 12/30/2004 | $34,400.00 |
| 9724103 | 2005-HI1 | 12/22/2004 | $50,400.00 |
| 9724107 | 2005-HI1 | 12/22/2004 | $35,000.00 |
| 9725155 | 2005-HI1 | 12/30/2004 | $30,000.00 |
| 9748533 | 2005-HI2 | 1/26/2005 | $59,876.88 |
| 9748911 | 2005-HI2 | 2/8/2005 | $64,676.86 |
| 9751039 | 2005-QS3 | 1/31/2005 | $200,000.00 |
| 9751041 | 2005-QS3 | 1/12/2005 | $103,000.00 |
| 9755267 | 2005-S1 | 1/14/2005 | $393,000.00 |
| 9756407 | 2005-HI2 | 2/4/2005 | $48,903.74 |
| 9765061 | 2005-S1 | 2/1/2005 | $388,000.00 |
| 9766279 | 2005-HI2 | 1/21/2005 | $24,840.03 |
| 9770801 | 2005-HI2 | 2/11/2005 | $34,933.64 |
| 9780337 | 2005-S2 | 2/1/2005 | $380,000.00 |
| 9780479 | 2005-HI2 | 2/17/2005 | $39,224.33 |
| 9780763 | 2005-HI2 | 2/23/2005 | $49,808.62 |
| 9784579 | 2005-QA5 | 3/15/2005 | $340,000.00 |
| 9785645 | 2005-HI2 | 3/30/2005 | $59,755.73 |
| 9785651 | 2005-HI2 | 2/24/2005 | $49,805.86 |
| 9789105 | 2005-QA2 | 2/11/2005 | $240,000.00 |
| 9790629 | 2005-QA2 | 2/11/2005 | $232,000.00 |
| 9802013 | 2005-HI2 | 3/16/2005 | $39,837.54 |
| 9802953 | 2005-QA3 | 2/18/2005 | $464,000.00 |
| 9803913 | 2005-QA5 | 2/18/2005 | $362,879.01 |
| 9813083 | 2005-QA5 | 2/28/2005 | $255,000.00 |
| 9814305 | 2005-QA4 | 3/2/2005 | $259,000.00 |
| 9819209 | 2005-QS4 | 3/11/2005 | $104,000.00 |
| 9821395 | 2005-QA3 | 3/11/2005 | $360,014.97 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9828131 | 2005-QS8 | 3/21/2005 | $309,000.00 |
| 9829331 | 2005-QA5 | 3/16/2005 | $256,700.00 |
| 9830553 | 2005-HI2 | 4/8/2005 | $41,916.92 |
| 9830563 | 2005-HI2 | 4/11/2005 | $59,723.71 |
| 9830567 | 2005-HI2 | 4/11/2005 | $59,767.02 |
| 9830637 | 2005-HS1 | 4/11/2005 | $35,000.00 |
| 9830971 | 2005-QS5 | 3/15/2005 | $99,600.00 |
| 9835525 | 2005-QA5 | 3/21/2005 | $320,000.00 |
| 9836525 | 2005-HI2 | 4/26/2005 | $35,131.50 |
| 9836527 | 2005-HI2 | 4/26/2005 | $74,951.37 |
| 9836531 | 2005-HI2 | 4/14/2005 | $59,732.39 |
| 9836807 | 2005-HI2 | 4/18/2005 | $71,000.00 |
| 9842299 | 2005-HI2 | 4/25/2005 | $49,973.96 |
| 9842397 | 2005-HI2 | 4/27/2005 | $49,894.79 |
| 9856685 | 2005-HS1 | 5/10/2005 | $100,000.00 |
| 9856835 | 2005-HI2 | 5/16/2005 | $50,000.00 |
| 9863605 | 2005-HS1 | 4/1/2005 | $10,000.00 |
| 9870497 | 2005-HS1 | 5/13/2005 | $50,000.00 |
| 9870613 | 2005-HI2 | 5/18/2005 | $50,000.00 |
| 9870619 | 2005-HI2 | 5/24/2005 | $49,912.28 |
| 9870621 | 2005-HI2 | 5/18/2005 | $53,200.00 |
| 9870631 | 2005-HI2 | 5/18/2005 | $50,000.00 |
| 9871013 | 2005-HS1 | 7/19/2005 | $52,000.00 |
| 9878221 | 2005-HI2 | 4/18/2005 | $64,872.30 |
| 9878289 | 2005-HI2 | 4/26/2005 | $59,452.75 |
| 9879365 | 2005-QA6 | 4/20/2005 | $118,400.00 |
| 9884197 | 2005-HI2 | 6/1/2005 | $40,000.00 |
| 9884267 | 2005-HS1 | 5/31/2005 | $60,900.00 |
| 9884285 | 2005-HS1 | 5/31/2005 | $35,000.00 |
| 9884423 | 2005-HI2 | 6/2/2005 | $60,000.00 |
| 9884489 | 2005-HS1 | 6/3/2005 | $24,500.00 |
| 9884505 | 2005-HI3 | 6/17/2005 | $49,617.49 |
| 9896519 | 2005-HS1 | 6/8/2005 | $58,000.00 |
| 9896537 | 2005-HI2 | 6/8/2005 | $60,000.00 |
| 9896567 | 2005-HI3 | 6/8/2005 | $59,452.42 |
| 9896605 | 2005-HI3 | 6/15/2005 | $32,634.85 |
| 9896713 | 2005-HS1 | 6/20/2005 | $55,000.00 |
| 9896715 | 2005-HS1 | 6/20/2005 | $21,000.00 |
| 9896827 | 2005-HS1 | 6/21/2005 | $26,600.00 |
| 9896835 | 2005-HS1 | 6/21/2005 | $25,800.00 |
| 9896855 | 2005-HI3 | 6/20/2005 | $49,641.59 |
| 9896925 | 2005-HS1 | 6/22/2005 | $27,400.00 |
| 9896927 | 2005-HS1 | 7/19/2005 | $40,000.00 |
| 9896949 | 2005-HS1 | 7/19/2005 | $32,000.00 |
| 9909799 | 2005-HS1 | 6/13/2005 | $38,000.00 |
| 9910665 | 2005-HS1 | 6/20/2005 | $16,400.00 |
| 9912663 | 2005-QA7 | 5/23/2005 | $264,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9914089 | 2005-HS1 | 6/21/2005 | $25,200.00 |
| 9914093 | 2005-HS1 | 6/21/2005 | $15,000.00 |
| 9914139 | 2005-HS1 | 6/22/2005 | $21,000.00 |
| 9914551 | 2005-HS1 | 7/25/2005 | $10,500.00 |
| 9915313 | 2005-HI2 | 5/10/2005 | $50,000.00 |
| 9916643 | 2007-HSA1 | 5/10/2005 | $14,700.00 |
| 9919819 | 2005-QS7 | 5/20/2005 | $161,500.00 |
| 9926323 | 2005-HI2 | 5/23/2005 | $46,700.00 |
| 9929117 | 2005-HS1 | 7/6/2005 | $15,000.00 |
| 9929123 | 2005-HI3 | 6/30/2005 | $49,821.31 |
| 9929129 | 2005-HS1 | 6/29/2005 | $100,000.00 |
| 9929281 | 2005-HI3 | 6/29/2005 | $59,618.55 |
| 9929287 | 2005-HS1 | 6/27/2005 | $10,000.00 |
| 9929307 | 2005-HS1 | 6/29/2005 | $70,000.00 |
| 9929409 | 2005-HI3 | 7/14/2005 | $55,763.83 |
| 9929415 | 2005-HS1 | 7/13/2005 | $21,000.00 |
| 9929425 | 2005-HS1 | 7/7/2005 | $23,800.00 |
| 9929437 | 2005-HS2 | 7/20/2005 | $13,800.00 |
| 9929509 | 2005-HS1 | 7/6/2005 | $15,000.00 |
| 9929511 | 2005-HS1 | 7/11/2005 | $15,000.00 |
| 9929515 | 2005-HS1 | 7/19/2005 | $34,000.00 |
| 9929545 | 2005-HS1 | 7/13/2005 | $35,000.00 |
| 9929551 | 2005-HS1 | 8/4/2005 | $34,000.00 |
| 9929569 | 2005-HS1 | 7/11/2005 | $16,500.00 |
| 9929697 | 2005-HS1 | 7/15/2005 | $20,000.00 |
| 9942679 | 2005-HS1 | 5/26/2005 | $22,500.00 |
| 9942751 | 2005-HS1 | 6/10/2005 | $38,000.00 |
| 9944765 | 2005-HS1 | 6/1/2005 | $10,000.00 |
| 9945557 | 2005-HS1 | 7/14/2005 | $31,950.00 |
| 9945561 | 2006-HI1 | 8/5/2005 | $34,513.77 |
| 9945563 | 2005-HS1 | 7/15/2005 | $38,000.00 |
| 9945575 | 2005-HS1 | 7/15/2005 | $35,000.00 |
| 9945583 | 2005-HS1 | 7/14/2005 | $71,500.00 |
| 9945591 | 2005-HS1 | 7/14/2005 | $20,000.00 |
| 9945619 | 2005-HS1 | 7/18/2005 | $26,900.00 |
| 9945621 | 2005-HS1 | 7/18/2005 | $19,000.00 |
| 9945625 | 2005-HS1 | 7/13/2005 | $30,000.00 |
| 9945641 | 2005-HS1 | 8/4/2005 | $27,400.00 |
| 9945645 | 2005-HS1 | 7/13/2005 | $25,000.00 |
| 9945649 | 2005-HS1 | 7/29/2005 | $24,000.00 |
| 9945665 | 2005-HS1 | 7/14/2005 | $33,975.00 |
| 9945669 | 2005-HI3 | 7/20/2005 | $34,973.87 |
| 9945671 | 2005-HS1 | 8/4/2005 | $60,000.00 |
| 9945783 | 2005-HS1 | 7/29/2005 | $23,700.00 |
| 9945805 | 2005-HS1 | 7/19/2005 | $37,500.00 |
| 9945885 | 2005-HS1 | 7/21/2005 | $32,500.00 |
| 9945891 | 2005-HS1 | 7/27/2005 | $50,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9945913 | 2005-HS1 | 7/21/2005 | $15,000.00 |
| 9945969 | 2005-HS1 | 7/20/2005 | $22,000.00 |
| 9949775 | 2005-HS1 | 6/2/2005 | $16,500.00 |
| 9949815 | 2005-HS1 | 6/20/2005 | $10,000.00 |
| 9959659 | 2005-HI2 | 6/10/2005 | $60,000.00 |
| 9961251 | 2005-HS1 | 6/6/2005 | $19,200.00 |
| 9964939 | 2005-HS1 | 6/8/2005 | $39,000.00 |
| 9964941 | 2005-HS1 | 6/9/2005 | $34,400.00 |
| 9965097 | 2005-HS1 | 6/8/2005 | $38,600.00 |
| 9965099 | 2005-HS1 | 6/14/2005 | $63,000.00 |
| 9965105 | 2005-HS1 | 6/14/2005 | $42,500.00 |
| 9965783 | 2005-HS1 | 6/9/2005 | $100,000.00 |
| 9967231 | 2005-HS1 | 7/21/2005 | $32,250.00 |
| 9967233 | 2005-HS1 | 7/21/2005 | $35,000.00 |
| 9967245 | 2005-HI3 | 7/26/2005 | $59,928.56 |
| 9967265 | 2005-HS1 | 7/26/2005 | $21,800.00 |
| 9967267 | 2005-HS1 | 8/1/2005 | $24,750.00 |
| 9967269 | 2005-HS1 | 7/19/2005 | $12,600.00 |
| 9967275 | 2005-HS1 | 7/21/2005 | $15,000.00 |
| 9967287 | 2005-HS1 | 7/21/2005 | $30,000.00 |
| 9967323 | 2005-HI3 | 8/17/2005 | $49,710.72 |
| 9967361 | 2005-HS1 | 7/21/2005 | $20,000.00 |
| 9967363 | 2005-HS1 | 7/21/2005 | $20,000.00 |
| 9967413 | 2005-HS1 | 7/22/2005 | $24,000.00 |
| 9967435 | 2005-HS1 | 7/22/2005 | $19,300.00 |
| 9967465 | 2005-HS1 | 7/26/2005 | $20,000.00 |
| 9967503 | 2005-HS1 | 7/26/2005 | $69,800.00 |
| 9967605 | 2005-HS1 | 8/3/2005 | $40,000.00 |
| 9967607 | 2005-HS1 | 7/27/2005 | $30,000.00 |
| 9967651 | 2005-HS1 | 7/26/2005 | $30,400.00 |
| 9967667 | 2005-HS1 | 7/26/2005 | $77,000.00 |
| 9967669 | 2005-HS1 | 7/27/2005 | $32,600.00 |
| 9967673 | 2005-HS1 | 7/26/2005 | $20,800.00 |
| 9967679 | 2005-HS1 | 7/26/2005 | $26,500.00 |
| 9967715 | 2005-HS1 | 7/28/2005 | $23,000.00 |
| 9967785 | 2005-HS1 | 7/29/2005 | $35,500.00 |
| 9967807 | 2005-HI3 | 7/29/2005 | $24,490.69 |
| 9967817 | 2005-HS1 | 7/29/2005 | $14,500.00 |
| 9967913 | 2005-HI3 | 7/28/2005 | $30,452.66 |
| 9967915 | 2005-HI3 | 8/2/2005 | $25,984.38 |
| 9968127 | 2005-HS1 | 7/29/2005 | $23,500.00 |
| 9968199 | 2005-HS1 | 8/3/2005 | $30,000.00 |
| 9968201 | 2005-HS1 | 8/3/2005 | $15,000.00 |
| 9968203 | 2005-HS1 | 8/8/2005 | $21,000.00 |
| 9968207 | 2005-HS1 | 8/3/2005 | $10,000.00 |
| 9968211 | 2005-HS2 | 9/6/2005 | $20,000.00 |
| 9968217 | 2005-HS1 | 8/2/2005 | $39,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9968273 | 2005-HI3 | 9/15/2005 | $49,965.56 |
| 9968299 | 2005-HS1 | 8/9/2005 | $20,750.00 |
| 9968305 | 2005-HS1 | 8/12/2005 | $22,500.00 |
| 9969437 | 2005-HS1 | 6/10/2005 | $74,000.00 |
| 9969503 | 2005-HS1 | 6/10/2005 | $16,000.00 |
| 9973107 | 2005-HS1 | 6/14/2005 | $21,000.00 |
| 9975201 | 2005-HI3 | 7/1/2005 | $59,928.66 |
| 9975211 | 2005-HS1 | 6/15/2005 | $15,700.00 |
| 9977211 | 2005-HS1 | 6/16/2005 | $59,000.00 |
| 9978055 | 2005-HS1 | 6/16/2005 | $10,000.00 |
| 9978557 | 2005-HS1 | 7/13/2005 | $16,350.00 |
| 9979353 | 2005-HS1 | 6/16/2005 | $23,000.00 |
| 9984095 | 2005-HS1 | 6/24/2005 | $21,250.00 |
| 9984195 | 2005-HI3 | 6/23/2005 | $59,746.95 |
| 9985665 | 2005-HS1 | 6/27/2005 | $47,200.00 |
| 9987173 | 2005-HS1 | 6/23/2005 | $19,100.00 |
| 9987553 | 2005-HS1 | 6/24/2005 | $55,000.00 |
| 9988149 | 2005-HS1 | 6/28/2005 | $33,700.00 |
| 9992199 | 2005-HS1 | 6/29/2005 | $33,700.00 |
| 9992963 | 2005-HS1 | 6/29/2005 | $43,700.00 |
| 9992983 | 2005-HS1 | 6/29/2005 | $25,000.00 |
| 9994685 | 2005-HS1 | 7/1/2005 | $45,000.00 |
| 9994723 | 2005-HS1 | 7/18/2005 | $32,500.00 |
| 9998253 | 2005-HI3 | 8/5/2005 | $72,059.39 |
| 9998273 | 2005-HS1 | 8/10/2005 | $29,000.00 |
| 9998279 | 2005-HS1 | 8/9/2005 | $27,500.00 |
| 9998315 | 2005-HI3 | 8/10/2005 | $49,882.10 |
| 9998449 | 2005-HS1 | 8/16/2005 | $30,000.00 |
| 9998457 | 2005-HS1 | 8/16/2005 | $30,000.00 |
| 9998495 | 2005-HS1 | 9/2/2005 | $33,750.00 |
| 9998503 | 2005-HS1 | 8/16/2005 | $22,900.00 |
| 9998531 | 2005-HS1 | 8/16/2005 | $29,000.00 |
| 9998599 | 2005-HS1 | 8/22/2005 | $26,500.00 |
| 9998631 | 2006-HSA4 | 8/24/2005 | $75,000.00 |
| 9998669 | 2005-HS1 | 8/15/2005 | $40,000.00 |
| 9998695 | 2005-HI3 | 8/15/2005 | $49,899.91 |
| 9998709 | 2005-HS1 | 8/16/2005 | $28,900.00 |
| 9998721 | 2005-HS1 | 8/19/2005 | $23,300.00 |
| 9998741 | 2005-HS1 | 8/16/2005 | $36,700.00 |
| 9998771 | 2005-HS1 | 8/15/2005 | $38,700.00 |
| 9998973 | 2005-HS1 | 9/9/2005 | $58,000.00 |
| 9999015 | 2005-HS1 | 8/24/2005 | $27,000.00 |
| 9999045 | 2005-HS1 | 8/18/2005 | $45,000.00 |
| 9999065 | 2005-HS1 | 8/22/2005 | $28,500.00 |
| 9999163 | 2005-HS1 | 8/24/2005 | $71,500.00 |
| 9999221 | 2005-HS1 | 8/24/2005 | $19,500.00 |
| 9999295 | 2005-HS1 | 8/25/2005 | $20,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 9999333 | 2005-HS1 | 8/26/2005 | $20,000.00 |
| 9999351 | 2005-HS1 | 8/31/2005 | $46,000.00 |
| 9999369 | 2005-HS1 | 8/26/2005 | $57,000.00 |
| 10001299 | 2005-QA9 | 7/19/2005 | $108,000.00 |
| 10001363 | 2005-HS1 | 7/12/2005 | $16,000.00 |
| 10002711 | 2005-HS1 | 7/11/2005 | $25,000.00 |
| 10004423 | 2005-HS1 | 7/13/2005 | $20,500.00 |
| 10004431 | 2005-HS1 | 7/12/2005 | $15,750.00 |
| 10004505 | 2005-HS1 | 7/12/2005 | $52,800.00 |
| 10004515 | 2005-HS1 | 7/13/2005 | $20,000.00 |
| 10004519 | 2005-HI3 | 7/14/2005 | $57,758.26 |
| 10004533 | 2005-HS1 | 7/12/2005 | $91,500.00 |
| 10004549 | 2005-HS1 | 7/14/2005 | $20,000.00 |
| 10004575 | 2005-HS1 | 7/13/2005 | $20,250.00 |
| 10004577 | 2005-HS1 | 7/15/2005 | $40,000.00 |
| 10004647 | 2005-HS1 | 7/15/2005 | $30,500.00 |
| 10004965 | 2005-HS1 | 7/13/2005 | $43,100.00 |
| 10005051 | 2005-HS1 | 7/13/2005 | $15,000.00 |
| 10005065 | 2005-HS1 | 7/14/2005 | $31,400.00 |
| 10005701 | 2005-HS1 | 7/13/2005 | $12,500.00 |
| 10005705 | 2005-HS1 | 7/14/2005 | $22,000.00 |
| 10009533 | 2005-HS1 | 7/13/2005 | $22,000.00 |
| 10009955 | 2005-SA4 | 7/18/2005 | $438,550.00 |
| 10012187 | 2005-HS1 | 8/2/2005 | $31,500.00 |
| 10018679 | 2005-HS1 | 7/18/2005 | $38,000.00 |
| 10018685 | 2005-HS1 | 7/21/2005 | $45,400.00 |
| 10018805 | 2005-HS1 | 7/21/2005 | $40,000.00 |
| 10018817 | 2005-HS1 | 7/28/2005 | $20,000.00 |
| 10018899 | 2005-HS1 | 7/25/2005 | $28,000.00 |
| 10018913 | 2005-HS1 | 7/19/2005 | $20,000.00 |
| 10018933 | 2005-HS1 | 7/18/2005 | $81,000.00 |
| 10018935 | 2005-HS1 | 7/25/2005 | $27,900.00 |
| 10020759 | 2005-HS1 | 7/18/2005 | $30,000.00 |
| 10021421 | 2005-HS1 | 7/18/2005 | $23,900.00 |
| 10023843 | 2005-SA4 | 7/28/2005 | $183,600.00 |
| 10027175 | 2005-HS1 | 7/19/2005 | $99,000.00 |
| 10029647 | 2005-HS1 | 7/22/2005 | $26,600.00 |
| 10029661 | 2005-HS1 | 8/4/2005 | $112,000.00 |
| 10035239 | 2005-HI3 | 8/26/2005 | $43,983.30 |
| 10035243 | 2005-HS2 | 9/22/2005 | $30,000.00 |
| 10035251 | 2005-HS2 | 8/29/2005 | $75,000.00 |
| 10035377 | 2005-HS1 | 9/1/2005 | $28,000.00 |
| 10035409 | 2005-HS1 | 8/31/2005 | $34,100.00 |
| 10035411 | 2005-HI3 | 9/1/2005 | $53,975.35 |
| 10035417 | 2005-HS1 | 9/1/2005 | $32,800.00 |
| 10035483 | 2005-HS1 | 9/7/2005 | $45,800.00 |
| 10035501 | 2005-HI3 | 9/2/2005 | $21,952.17 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10035535 | 2005-HI3 | 9/21/2005 | $30,488.15 |
| 10035573 | 2005-HS1 | 9/7/2005 | $25,000.00 |
| 10035597 | 2005-HS2 | 9/6/2005 | $45,000.00 |
| 10035599 | 2005-HS1 | 9/9/2005 | $49,500.00 |
| 10035603 | 2005-HS1 | 9/7/2005 | $31,000.00 |
| 10035613 | 2005-HS1 | 9/7/2005 | $25,200.00 |
| 10035617 | 2005-HI3 | 9/8/2005 | $54,874.74 |
| 10035773 | 2005-HS1 | 9/8/2005 | $20,000.00 |
| 10035775 | 2005-HS1 | 9/8/2005 | $40,000.00 |
| 10035999 | 2005-HS1 | 7/22/2005 | $18,000.00 |
| 10047781 | 2005-HS1 | 8/8/2005 | $18,000.00 |
| 10047829 | 2005-HS1 | 7/27/2005 | $14,990.00 |
| 10047839 | 2005-HS1 | 7/28/2005 | $71,200.00 |
| 10055623 | 2005-HS1 | 9/9/2005 | $29,250.00 |
| 10055627 | 2005-HS1 | 9/9/2005 | $10,700.00 |
| 10055827 | 2005-HSA1 | 9/16/2005 | $95,900.00 |
| 10055897 | 2005-HS2 | 9/15/2005 | $15,000.00 |
| 10062611 | 2005-HS1 | 8/8/2005 | $79,100.00 |
| 10064339 | 2005-HS2 | 10/21/2005 | $65,000.00 |
| 10064633 | 2005-HS1 | 8/8/2005 | $10,000.00 |
| 10067265 | 2005-HS1 | 8/12/2005 | $75,000.00 |
| 10067371 | 2005-HI3 | 8/15/2005 | $29,935.54 |
| 10067383 | 2005-HI3 | 8/12/2005 | $44,421.07 |
| 10067389 | 2005-HS1 | 8/15/2005 | $44,700.00 |
| 10067417 | 2005-HS1 | 8/18/2005 | $66,000.00 |
| 10070237 | 2005-QA10 | 8/11/2005 | $116,000.00 |
| 10071299 | 2005-HS1 | 8/17/2005 | $61,000.00 |
| 10071691 | 2005-HS1 | 8/17/2005 | $20,000.00 |
| 10071713 | 2005-HS1 | 8/16/2005 | $24,000.00 |
| 10071845 | 2006-HSA1 | 8/17/2005 | $22,000.00 |
| 10071851 | 2005-HS1 | 8/17/2005 | $10,000.00 |
| 10074445 | 2005-HS2 | 11/14/2005 | $30,000.00 |
| 10074543 | 2005-HSA1 | 10/20/2005 | $25,700.00 |
| 10074699 | 2005-HS2 | 10/3/2005 | $43,500.00 |
| 10074731 | 2005-HS2 | 10/3/2005 | $27,000.00 |
| 10074735 | 2005-HS2 | 10/5/2005 | $26,000.00 |
| 10074737 | 2005-HS2 | 10/3/2005 | $21,000.00 |
| 10074739 | 2005-HS2 | 10/7/2005 | $35,000.00 |
| 10074745 | 2005-HS2 | 10/13/2005 | $48,000.00 |
| 10074749 | 2006-HI1 | 11/2/2005 | $74,802.00 |
| 10074751 | 2005-HI3 | 10/17/2005 | $40,980.03 |
| 10074753 | 2005-HSA1 | 10/11/2005 | $25,000.00 |
| 10074773 | 2005-HS2 | 10/4/2005 | $150,000.00 |
| 10074791 | 2005-HS2 | 10/11/2005 | $60,000.00 |
| 10074845 | 2005-HS2 | 10/11/2005 | $54,500.00 |
| 10074935 | 2005-HSA1 | 11/14/2005 | $60,000.00 |
| 10074943 | 2005-HS2 | 10/17/2005 | $17,200.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10074947 | 2005-HS2 | 10/7/2005 | $44,600.00 |
| 10074949 | 2005-HS2 | 10/20/2005 | $30,000.00 |
| 10076733 | 2005-HS1 | 8/16/2005 | $34,400.00 |
| 10080845 | 2005-HS1 | 8/17/2005 | $47,950.00 |
| 10080913 | 2005-HS1 | 8/17/2005 | $80,000.00 |
| 10083489 | 2005-HS2 | 10/13/2005 | $100,000.00 |
| 10083495 | 2005-HI3 | 10/13/2005 | $50,000.00 |
| 10090647 | 2005-HS1 | 8/31/2005 | $16,000.00 |
| 10091309 | 2005-HS1 | 8/22/2005 | $58,500.00 |
| 10096059 | 2005-HS1 | 8/25/2005 | $28,000.00 |
| 10096129 | 2005-HS1 | 8/24/2005 | $46,000.00 |
| 10096415 | 2005-HS1 | 8/24/2005 | $28,000.00 |
| 10099633 | 2005-HS1 | 8/31/2005 | $49,000.00 |
| 10100441 | 2005-HS1 | 8/25/2005 | $25,000.00 |
| 10100647 | 2005-HS1 | 8/25/2005 | $13,600.00 |
| 10100677 | 2005-HS1 | 8/24/2005 | $33,000.00 |
| 10110853 | 2005-HS1 | 8/25/2005 | $56,000.00 |
| 10110943 | 2005-HI3 | 8/24/2005 | $34,933.19 |
| 10111927 | 2005-HI3 | 8/31/2005 | $25,000.00 |
| 10111933 | 2005-HS1 | 8/26/2005 | $20,325.00 |
| 10111941 | 2005-HS1 | 8/26/2005 | $13,700.00 |
| 10114439 | 2005-HS2 | 9/29/2005 | $100,000.00 |
| 10114451 | 2005-HS2 | 9/9/2005 | $60,000.00 |
| 10114469 | 2005-HS1 | 9/1/2005 | $49,600.00 |
| 10114501 | 2005-HS2 | 9/28/2005 | $50,000.00 |
| 10122161 | 2005-HS2 | 10/11/2005 | $30,000.00 |
| 10122267 | 2005-HS2 | 9/2/2005 | $39,200.00 |
| 10124013 | 2005-SA5 | 9/23/2005 | $160,000.00 |
| 10124017 | 2005-HS2 | 9/19/2005 | $50,000.00 |
| 10128913 | 2005-HS2 | 9/15/2005 | $12,000.00 |
| 10131227 | 2006-QA5 | 9/13/2005 | $107,200.00 |
| 10131463 | 2005-HS2 | 9/6/2005 | $36,000.00 |
| 10131555 | 2005-HS2 | 9/6/2005 | $70,000.00 |
| 10132929 | 2005-HS2 | 9/7/2005 | $50,000.00 |
| 10132961 | 2005-HS2 | 9/16/2005 | $15,300.00 |
| 10133175 | 2005-HI3 | 9/19/2005 | $26,945.31 |
| 10134977 | 2005-HS2 | 9/7/2005 | $59,000.00 |
| 10135055 | 2005-HS2 | 9/30/2005 | $53,200.00 |
| 10138591 | 2005-HS2 | 9/22/2005 | $40,600.00 |
| 10138613 | 2005-HS2 | 9/13/2005 | $28,050.00 |
| 10139407 | 2005-HS2 | 9/13/2005 | $14,000.00 |
| 10139787 | 2005-HS2 | 9/22/2005 | $67,000.00 |
| 10139811 | 2005-HS2 | 9/13/2005 | $30,700.00 |
| 10141907 | 2005-HS2 | 9/14/2005 | $70,000.00 |
| 10143263 | 2005-HS2 | 10/6/2005 | $38,000.00 |
| 10148549 | 2005-HS2 | 10/3/2005 | $50,000.00 |
| 10149249 | 2005-HS2 | 9/20/2005 | $74,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10152095 | 2005-HS2 | 9/27/2005 | $26,000.00 |
| 10159435 | 2005-HS2 | 9/23/2005 | $24,500.00 |
| 10159697 | 2005-HS2 | 9/23/2005 | $30,000.00 |
| 10159931 | 2005-HI3 | 9/23/2005 | $70,000.00 |
| 10160189 | 2005-HS2 | 9/30/2005 | $15,000.00 |
| 10160223 | 2005-HS2 | 10/26/2005 | $17,400.00 |
| 10162793 | 2005-SA5 | 10/19/2005 | $150,000.00 |
| 10162831 | 2005-HS2 | 10/26/2005 | $70,000.00 |
| 10162859 | 2005-HS2 | 9/27/2005 | $47,500.00 |
| 10163105 | 2005-HS2 | 9/27/2005 | $48,800.00 |
| 10164321 | 2005-HSA1 | 10/13/2005 | $40,000.00 |
| 10164335 | 2005-HS2 | 9/28/2005 | $61,300.00 |
| 10164397 | 2005-HS2 | 9/29/2005 | $24,500.00 |
| 10164725 | 2005-S8 | 10/19/2005 | $378,000.00 |
| 10171631 | 2005-HS2 | 9/29/2005 | $39,400.00 |
| 10176467 | 2005-HS2 | 10/6/2005 | $50,000.00 |
| 10184585 | 2005-HS2 | 10/7/2005 | $38,200.00 |
| 10184633 | 2005-HS2 | 10/11/2005 | $27,700.00 |
| 10184701 | 2005-HS2 | 10/13/2005 | $20,000.00 |
| 10184837 | 2005-HSA1 | 10/19/2005 | $51,000.00 |
| 10184863 | 2005-HS2 | 10/11/2005 | $64,500.00 |
| 10184939 | 2005-HS2 | 10/11/2005 | $12,600.00 |
| 10185355 | 2005-QS15 | 10/11/2005 | $336,300.00 |
| 10187687 | 2005-HI3 | 10/12/2005 | $75,000.00 |
| 10190063 | 2005-HSA1 | 10/12/2005 | $75,000.00 |
| 10190071 | 2005-QA13 | 11/3/2005 | $390,400.00 |
| 10190305 | 2005-HS2 | 10/12/2005 | $70,000.00 |
| 10192827 | 2005-HS2 | 10/11/2005 | $15,000.00 |
| 10192831 | 2005-HS2 | 10/12/2005 | $22,980.00 |
| 10192841 | 2006-HI1 | 11/18/2005 | $34,228.03 |
| 10192847 | 2005-HS2 | 10/17/2005 | $23,000.00 |
| 10192851 | 2005-HS2 | 10/17/2005 | $30,000.00 |
| 10194597 | 2005-HS2 | 10/13/2005 | $75,000.00 |
| 10196153 | 2005-HI3 | 10/12/2005 | $47,400.00 |
| 10196343 | 2005-HS2 | 10/13/2005 | $13,000.00 |
| 10196751 | 2005-HS2 | 10/19/2005 | $22,200.00 |
| 10196805 | 2006-HSA1 | 11/28/2005 | $71,000.00 |
| 10196839 | 2006-HI1 | 12/1/2005 | $48,020.27 |
| 10196929 | 2006-HI1 | 10/19/2005 | $41,528.34 |
| 10197661 | 2005-HS2 | 10/12/2005 | $15,000.00 |
| 10197701 | 2005-HS2 | 11/2/2005 | $54,000.00 |
| 10197803 | 2005-HS2 | 10/28/2005 | $31,800.00 |
| 10197819 | 2005-HS2 | 10/19/2005 | $29,200.00 |
| 10198153 | 2005-HSA1 | 10/13/2005 | $22,500.00 |
| 10198189 | 2006-HI1 | 11/15/2005 | $59,524.04 |
| 10199591 | 2005-HS2 | 10/19/2005 | $14,000.00 |
| 10199597 | 2005-HS2 | 11/4/2005 | $47,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10201485 | 2005-HS2 | 11/9/2005 | $10,000.00 |
| 10201487 | 2005-HS2 | 10/17/2005 | $26,000.00 |
| 10201537 | 2006-HI1 | 11/21/2005 | $50,864.15 |
| 10202935 | 2005-HS2 | 10/26/2005 | $75,000.00 |
| 10202937 | 2005-HS2 | 10/26/2005 | $35,000.00 |
| 10202939 | 2005-HS2 | 10/21/2005 | $32,700.00 |
| 10202941 | 2005-HS2 | 10/26/2005 | $31,100.00 |
| 10203913 | 2005-HS2 | 10/26/2005 | $23,085.00 |
| 10204325 | 2005-HS2 | 10/20/2005 | $70,000.00 |
| 10205233 | 2005-HSA1 | 11/2/2005 | $75,000.00 |
| 10205235 | 2005-HS2 | 10/21/2005 | $41,000.00 |
| 10205515 | 2006-HSA4 | 10/21/2005 | $60,000.00 |
| 10207467 | 2005-HSA1 | 10/24/2005 | $48,000.00 |
| 10207469 | 2005-HS2 | 10/27/2005 | $20,000.00 |
| 10207471 | 2006-HI1 | 10/26/2005 | $41,942.01 |
| 10208243 | 2005-HS2 | 10/24/2005 | $28,000.00 |
| 10208935 | 2005-HS2 | 10/26/2005 | $68,000.00 |
| 10209211 | 2005-HS2 | 10/27/2005 | $23,200.00 |
| 10209215 | 2005-HS2 | 10/26/2005 | $10,000.00 |
| 10209229 | 2005-HS2 | 11/14/2005 | $20,000.00 |
| 10209231 | 2005-HS2 | 11/3/2005 | $43,500.00 |
| 10209807 | 2005-HS2 | 10/21/2005 | $150,000.00 |
| 10210341 | 2005-HS2 | 10/24/2005 | $47,000.00 |
| 10210507 | 2006-HSA2 | 12/2/2005 | $49,618.87 |
| 10210603 | 2005-HS2 | 10/27/2005 | $100,000.00 |
| 10210609 | 2005-HSA1 | 10/24/2005 | $100,000.00 |
| 10211635 | 2005-HSA1 | 10/27/2005 | $75,000.00 |
| 10211699 | 2005-HS2 | 10/28/2005 | $34,800.00 |
| 10211703 | 2005-HS2 | 10/26/2005 | $14,650.00 |
| 10211751 | 2005-HS2 | 10/27/2005 | $27,000.00 |
| 10212031 | 2005-HSA1 | 10/25/2005 | $86,000.00 |
| 10212045 | 2005-HS2 | 11/3/2005 | $15,000.00 |
| 10212267 | 2005-HS2 | 10/26/2005 | $52,400.00 |
| 10213507 | 2005-HS2 | 10/27/2005 | $30,000.00 |
| 10213513 | 2005-HSA1 | 10/28/2005 | $20,000.00 |
| 10214623 | 2005-HSA1 | 10/28/2005 | $64,100.00 |
| 10214703 | 2005-HSA1 | 10/27/2005 | $55,000.00 |
| 10214851 | 2005-HS2 | 10/31/2005 | $21,600.00 |
| 10215027 | 2005-HS2 | 10/27/2005 | $100,000.00 |
| 10215107 | 2005-HS2 | 10/31/2005 | $54,700.00 |
| 10215109 | 2005-HS2 | 11/1/2005 | $12,100.00 |
| 10215129 | 2005-HS2 | 10/27/2005 | $28,000.00 |
| 10215185 | 2005-HSA1 | 10/28/2005 | $69,000.00 |
| 10216031 | 2005-HS2 | 10/28/2005 | $13,000.00 |
| 10216045 | 2005-HS2 | 11/9/2005 | $25,300.00 |
| 10216049 | 2005-HS2 | 11/1/2005 | $12,050.00 |
| 10216101 | 2005-HS2 | 11/14/2005 | $44,800.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10216163 | 2005-HS2 | 11/1/2005 | $15,000.00 |
| 10216327 | 2005-HS2 | 10/28/2005 | $55,000.00 |
| 10218509 | 2005-HS2 | 11/1/2005 | $16,050.00 |
| 10221209 | 2005-HS2 | 11/1/2005 | $15,500.00 |
| 10221215 | 2005-HS2 | 11/2/2005 | $50,000.00 |
| 10221219 | 2006-HI1 | 11/3/2005 | $74,846.95 |
| 10221227 | 2005-HS2 | 11/4/2005 | $66,100.00 |
| 10222561 | 2005-HS2 | 11/14/2005 | $37,800.00 |
| 10222743 | 2005-HS2 | 11/8/2005 | $41,800.00 |
| 10223401 | 2005-HSA1 | 11/2/2005 | $27,800.00 |
| 10223439 | 2005-HS2 | 11/2/2005 | $75,000.00 |
| 10224441 | 2005-HS2 | 11/2/2005 | $28,000.00 |
| 10224687 | 2006-HSA1 | 11/30/2005 | $20,000.00 |
| 10225321 | 2005-HSA1 | 11/3/2005 | $62,000.00 |
| 10225427 | 2005-HS2 | 11/9/2005 | $50,000.00 |
| 10226791 | 2005-HS2 | 11/4/2005 | $18,250.00 |
| 10226793 | 2006-HI1 | 11/18/2005 | $27,337.46 |
| 10228763 | 2005-S9 | 11/14/2005 | $353,000.00 |
| 10231049 | 2005-HS2 | 11/4/2005 | $75,000.00 |
| 10231055 | 2005-HS2 | 11/14/2005 | $60,000.00 |
| 10233199 | 2006-HSA4 | 11/22/2005 | $45,700.00 |
| 10233401 | 2005-HS2 | 11/14/2005 | $19,500.00 |
| 10233503 | 2005-S9 | 11/17/2005 | $370,000.00 |
| 10233509 | 2006-HI1 | 11/4/2005 | $54,656.06 |
| 10233541 | 2006-HI1 | 11/15/2005 | $56,896.13 |
| 10233723 | 2005-HS2 | 11/9/2005 | $65,000.00 |
| 10233753 | 2005-HS2 | 11/9/2005 | $60,900.00 |
| 10238381 | 2005-HS2 | 11/15/2005 | $69,500.00 |
| 10238741 | 2005-HS2 | 11/16/2005 | $33,000.00 |
| 10238749 | 2005-HS2 | 11/15/2005 | $35,000.00 |
| 10238757 | 2005-HS2 | 11/15/2005 | $20,000.00 |
| 10247265 | 2005-HS2 | 11/15/2005 | $25,000.00 |
| 10248227 | 2005-HS2 | 11/17/2005 | $47,925.00 |
| 10248229 | 2005-HS2 | 11/15/2005 | $47,000.00 |
| 10248231 | 2006-HSA1 | 12/5/2005 | $30,600.00 |
| 10248633 | 2005-HS2 | 11/15/2005 | $24,000.00 |
| 10248637 | 2005-HS2 | 11/15/2005 | $18,900.00 |
| 10248793 | 2005-HS2 | 11/15/2005 | $14,000.00 |
| 10248893 | 2005-HS2 | 11/15/2005 | $19,950.00 |
| 10248907 | 2005-HSA1 | 11/18/2005 | $50,000.00 |
| 10248913 | 2005-HSA1 | 11/18/2005 | $78,900.00 |
| 10250375 | 2005-HSA1 | 11/15/2005 | $100,000.00 |
| 10250377 | 2005-HS2 | 11/15/2005 | $10,800.00 |
| 10250399 | 2005-HSA1 | 11/15/2005 | $61,300.00 |
| 10250455 | 2005-HSA1 | 11/15/2005 | $26,200.00 |
| 10250489 | 2005-HS2 | 11/15/2005 | $21,800.00 |
| 10253281 | 2005-HS2 | 11/16/2005 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10254699 | 2005-HS2 | 11/17/2005 | $35,000.00 |
| 10254701 | 2005-HS2 | 11/17/2005 | $64,000.00 |
| 10254711 | 2006-HSA1 | 11/21/2005 | $21,400.00 |
| 10254713 | 2006-HI1 | 11/21/2005 | $35,676.03 |
| 10254725 | 2006-HSA1 | 11/21/2005 | $65,000.00 |
| 10254963 | 2005-HSA1 | 11/17/2005 | $40,000.00 |
| 10254989 | 2005-HSA1 | 11/18/2005 | $26,500.00 |
| 10257003 | 2005-HS2 | 11/17/2005 | $44,000.00 |
| 10257009 | 2006-HSA1 | 11/21/2005 | $22,900.00 |
| 10257065 | 2005-HSA1 | 11/23/2005 | $55,000.00 |
| 10257891 | 2005-HSA1 | 11/17/2005 | $49,000.00 |
| 10257963 | 2005-HSA1 | 11/29/2005 | $50,000.00 |
| 10261029 | 2006-HSA1 | 11/22/2005 | $58,000.00 |
| 10261031 | 2006-HI1 | 12/12/2005 | $59,697.37 |
| 10263127 | 2006-HSA1 | 12/7/2005 | $26,200.00 |
| 10263179 | 2005-HSA1 | 11/28/2005 | $32,000.00 |
| 10263425 | 2006-HI1 | 11/23/2005 | $31,860.45 |
| 10263447 | 2006-HI1 | 11/28/2005 | $34,763.69 |
| 10263449 | 2006-HI1 | 11/28/2005 | $39,922.89 |
| 10263915 | 2006-HSA1 | 11/30/2005 | $20,000.00 |
| 10264011 | 2006-HI1 | 12/28/2005 | $34,877.58 |
| 10264019 | 2006-HI1 | 11/30/2005 | $49,785.14 |
| 10264931 | 2006-HI1 | 11/30/2005 | $39,963.71 |
| 10265005 | 2006-HSA1 | 11/21/2005 | $34,500.00 |
| 10265417 | 2006-HI2 | 12/1/2005 | $28,000.00 |
| 10265451 | 2006-HI2 | 12/1/2005 | $65,000.00 |
| 10265539 | 2006-HSA2 | 11/23/2005 | $47,500.00 |
| 10269347 | 2005-HSA1 | 11/28/2005 | $73,600.00 |
| 10271861 | 2005-HSA1 | 11/29/2005 | $60,000.00 |
| 10271869 | 2006-HSA5 | 12/2/2005 | $62,900.00 |
| 10274969 | 2005-HSA1 | 11/30/2005 | $33,100.00 |
| 10274995 | 2006-HSA2 | 1/9/2006 | $46,666.55 |
| 10275017 | 2005-HSA1 | 11/30/2005 | $37,600.00 |
| 10278023 | 2006-HSA2 | 12/5/2005 | $29,950.00 |
| 10278085 | 2006-HSA2 | 12/15/2005 | $29,997.67 |
| 10279669 | 2006-HSA2 | 11/30/2005 | $39,800.00 |
| 10279709 | 2005-HSA1 | 12/1/2005 | $52,000.00 |
| 10282157 | 2006-HI1 | 12/7/2005 | $61,942.99 |
| 10283085 | 2006-HSA1 | 12/13/2005 | $22,200.00 |
| 10283109 | 2006-HI1 | 12/23/2005 | $44,763.38 |
| 10283241 | 2005-QO5 | 12/12/2005 | $320,000.00 |
| 10283251 | 2006-HSA2 | 12/27/2005 | $54,999.91 |
| 10283267 | 2006-HI1 | 12/5/2005 | $41,679.91 |
| 10283313 | 2006-HSA1 | 12/5/2005 | $10,000.00 |
| 10283377 | 2005-QO5 | 12/9/2005 | $284,800.00 |
| 10283397 | 2006-QO1 | 12/15/2005 | $163,350.00 |
| 10285815 | 2006-HSA2 | 12/9/2005 | $43,089.76 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10288323 | 2006-HSA2 | 12/30/2005 | $49,952.05 |
| 10288367 | 2006-HSA1 | 12/15/2005 | $42,500.00 |
| 10288379 | 2006-HI1 | 1/17/2006 | $74,499.44 |
| 10288741 | 2006-HSA1 | 12/22/2005 | $34,000.00 |
| 10291595 | 2005-QO5 | 12/15/2005 | $355,000.00 |
| 10293237 | 2006-HSA1 | 12/12/2005 | $46,500.00 |
| 10293247 | 2006-HSA1 | 12/13/2005 | $22,500.00 |
| 10293269 | 2006-HI2 | 2/24/2006 | $30,000.00 |
| 10293281 | 2006-HI1 | 12/15/2005 | $61,461.97 |
| 10293647 | 2006-HSA2 | 12/12/2005 | $29,972.88 |
| 10293651 | 2006-HSA2 | 12/12/2005 | $13,329.00 |
| 10295777 | 2006-HI1 | 12/16/2005 | $41,816.11 |
| 10297353 | 2006-HI1 | 12/20/2005 | $32,881.87 |
| 10297513 | 2006-HSA1 | 12/19/2005 | $10,000.00 |
| 10298251 | 2006-HSA1 | 12/13/2005 | $44,000.00 |
| 10298267 | 2006-HI1 | 1/25/2006 | $59,761.43 |
| 10303613 | 2006-HSA2 | 12/30/2005 | $26,850.00 |
| 10304655 | 2006-HSA1 | 12/16/2005 | $31,500.00 |
| 10304685 | 2006-HSA1 | 12/21/2005 | $52,200.00 |
| 10307205 | 2006-QS3 | 12/28/2005 | $140,000.00 |
| 10307375 | 2006-HSA1 | 12/21/2005 | $24,000.00 |
| 10307407 | 2006-HSA1 | 12/22/2005 | $15,000.00 |
| 10308573 | 2006-HSA1 | 12/19/2005 | $31,000.00 |
| 10310999 | 2006-HSA1 | 12/23/2005 | $19,000.00 |
| 10311051 | 2006-HI1 | 12/19/2005 | $40,909.52 |
| 10311093 | 2006-HSA1 | 12/21/2005 | $90,000.00 |
| 10312855 | 2006-HSA2 | 12/30/2005 | $30,000.00 |
| 10312885 | 2006-HSA3 | 2/27/2006 | $43,200.00 |
| 10314747 | 2006-HI1 | 12/22/2005 | $29,770.60 |
| 10314787 | 2006-HSA1 | 12/21/2005 | $20,000.00 |
| 10314791 | 2006-HI1 | 12/21/2005 | $49,976.04 |
| 10314799 | 2006-HSA2 | 1/18/2006 | $70,000.00 |
| 10315311 | 2006-QO1 | 12/30/2005 | $180,000.00 |
| 10317297 | 2006-HSA2 | 12/21/2005 | $35,605.21 |
| 10318323 | 2006-HSA2 | 12/28/2005 | $49,800.00 |
| 10318413 | 2006-HSA2 | 1/9/2006 | $31,737.34 |
| 10318433 | 2006-HSA1 | 12/28/2005 | $54,000.00 |
| 10320687 | 2006-HSA2 | 12/30/2005 | $74,927.23 |
| 10324749 | 2006-HI1 | 12/30/2005 | $66,384.46 |
| 10324985 | 2006-HSA1 | 12/30/2005 | $24,750.00 |
| 10327555 | 2006-HI1 | 1/10/2006 | $65,872.52 |
| 10330113 | 2006-HSA2 | 1/20/2006 | $24,942.40 |
| 10333297 | 2006-HSA2 | 1/11/2006 | $53,000.00 |
| 10336219 | 2006-HSA2 | 1/6/2006 | $49,858.68 |
| 10336915 | 2006-HI2 | 2/10/2006 | $75,000.00 |
| 10347123 | 2006-HSA4 | 2/15/2006 | $75,000.00 |
| 10349675 | 2006-HI1 | 1/13/2006 | $34,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10349691 | 2006-HI2 | 2/24/2006 | $50,000.00 |
| 10353051 | 2006-HI1 | 1/23/2006 | $45,223.18 |
| 10353387 | 2006-S1 | 1/20/2006 | $450,000.00 |
| 10357593 | 2006-HI2 | 2/28/2006 | $47,000.00 |
| 10357635 | 2006-HI2 | 2/10/2006 | $50,000.00 |
| 10357689 | 2006-HI2 | 2/24/2006 | $63,000.00 |
| 10357697 | 2006-HI1 | 1/25/2006 | $34,939.92 |
| 10365921 | 2006-HSA4 | 2/15/2006 | $30,000.00 |
| 10366723 | 2006-HI1 | 1/25/2006 | $34,940.64 |
| 10366865 | 2006-SA2 | 3/6/2006 | $425,000.00 |
| 10372167 | 2006-HI2 | 2/13/2006 | $44,800.00 |
| 10372189 | 2006-HI2 | 2/15/2006 | $30,000.00 |
| 10372355 | 2006-HSA4 | 3/8/2006 | $100,000.00 |
| 10377143 | 2006-HI2 | 3/6/2006 | $60,000.00 |
| 10382771 | 2006-HI2 | 2/10/2006 | $35,000.00 |
| 10382779 | 2006-HI1 | 1/26/2006 | $70,000.00 |
| 10387115 | 2006-S3 | 2/28/2006 | $560,000.00 |
| 10387733 | 2006-HSA3 | 2/28/2006 | $19,300.00 |
| 10388993 | 2006-HI2 | 2/22/2006 | $46,700.00 |
| 10389007 | 2006-HI2 | 2/10/2006 | $57,000.00 |
| 10389015 | 2006-HI2 | 2/7/2006 | $50,000.00 |
| 10390923 | 2006-HI2 | 2/10/2006 | $50,000.00 |
| 10391627 | 2006-HSA4 | 2/15/2006 | $76,000.00 |
| 10393567 | 2006-QO3 | 3/6/2006 | $198,000.00 |
| 10393581 | 2006-HI2 | 2/17/2006 | $30,000.00 |
| 10397201 | 2006-HI2 | 3/30/2006 | $60,000.00 |
| 10397253 | 2006-HI2 | 2/7/2006 | $35,000.00 |
| 10398071 | 2006-HSA4 | 2/10/2006 | $10,000.00 |
| 10398175 | 2006-S3 | 2/24/2006 | $499,000.00 |
| 10400585 | 2006-HI2 | 2/8/2006 | $60,000.00 |
| 10400589 | 2006-HI2 | 2/8/2006 | $74,000.00 |
| 10400591 | 2006-HI2 | 2/8/2006 | $31,400.00 |
| 10400593 | 2006-HI2 | 2/8/2006 | $33,200.00 |
| 10400781 | 2006-S2 | 2/6/2006 | $207,000.00 |
| 10400921 | 2006-QO2 | 2/6/2006 | $340,800.00 |
| 10401079 | 2006-HI2 | 2/15/2006 | $43,500.00 |
| 10401125 | 2006-HI2 | 2/28/2006 | $63,700.00 |
| 10401161 | 2006-HI2 | 2/15/2006 | $69,900.00 |
| 10410403 | 2006-HI2 | 2/15/2006 | $40,000.00 |
| 10410433 | 2006-HI2 | 2/10/2006 | $58,500.00 |
| 10411875 | 2006-QO2 | 2/7/2006 | $149,500.00 |
| 10411877 | 2006-HI2 | 2/15/2006 | $45,000.00 |
| 10411937 | 2006-HI2 | 2/27/2006 | $44,400.00 |
| 10412049 | 2006-HI2 | 2/15/2006 | $60,000.00 |
| 10412065 | 2006-HI2 | 2/10/2006 | $35,000.00 |
| 10412109 | 2006-HI2 | 2/10/2006 | $45,000.00 |
| 10416001 | 2006-HI2 | 2/15/2006 | $36,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10417995 | 2006-HI2 | 2/15/2006 | $51,500.00 |
| 10418011 | 2006-HI2 | 2/10/2006 | $60,000.00 |
| 10418041 | 2006-HI2 | 2/10/2006 | $60,000.00 |
| 10418101 | 2006-HI2 | 2/10/2006 | $75,000.00 |
| 10418253 | 2006-HI2 | 2/10/2006 | $69,000.00 |
| 10421065 | 2006-HI2 | 3/30/2006 | $25,000.00 |
| 10421221 | 2006-HI2 | 4/4/2006 | $60,000.00 |
| 10424625 | 2006-HSA3 | 3/6/2006 | $28,500.00 |
| 10431455 | 2006-SA2 | 3/10/2006 | $418,400.00 |
| 10433733 | 2006-HI2 | 2/13/2006 | $34,400.00 |
| 10433781 | 2006-HI2 | 2/13/2006 | $60,000.00 |
| 10433825 | 2006-HI2 | 2/13/2006 | $50,000.00 |
| 10433871 | 2006-HI2 | 3/1/2006 | $35,000.00 |
| 10434639 | 2006-HI2 | 2/23/2006 | $70,000.00 |
| 10436221 | 2006-HI2 | 2/23/2006 | $44,000.00 |
| 10436375 | 2006-HI2 | 2/23/2006 | $68,000.00 |
| 10436899 | 2006-HI2 | 2/17/2006 | $60,000.00 |
| 10438419 | 2006-QS3 | 3/9/2006 | $171,500.00 |
| 10438525 | 2006-HI2 | 2/23/2006 | $75,000.00 |
| 10438541 | 2006-HI2 | 2/23/2006 | $60,000.00 |
| 10438545 | 2006-HI2 | 2/23/2006 | $65,000.00 |
| 10440799 | 2006-HSA4 | 2/27/2006 | $24,900.00 |
| 10440973 | 2006-S3 | 2/28/2006 | $438,000.00 |
| 10441043 | 2006-HSA4 | 3/3/2006 | $35,000.00 |
| 10441245 | 2006-HI2 | 2/28/2006 | $34,800.00 |
| 10441509 | 2006-HI2 | 3/24/2006 | $30,000.00 |
| 10442025 | 2006-HSA3 | 2/27/2006 | $60,000.00 |
| 10442037 | 2006-HSA4 | 2/27/2006 | $33,000.00 |
| 10442049 | 2006-HSA3 | 2/27/2006 | $30,000.00 |
| 10442283 | 2006-HI2 | 2/28/2006 | $36,500.00 |
| 10443219 | 2006-QS3 | 3/3/2006 | $118,000.00 |
| 10446403 | 2006-HSA3 | 3/8/2006 | $90,000.00 |
| 10446421 | 2006-HSA3 | 3/8/2006 | $80,000.00 |
| 10448193 | 2006-QO4 | 3/17/2006 | $313,400.00 |
| 10448669 | 2006-HI2 | 2/28/2006 | $59,000.00 |
| 10448841 | 2006-HI2 | 3/6/2006 | $35,000.00 |
| 10448885 | 2006-HI2 | 2/28/2006 | $50,000.00 |
| 10450105 | 2006-HSA3 | 3/1/2006 | $59,800.00 |
| 10450137 | 2006-HSA3 | 2/28/2006 | $35,100.00 |
| 10450161 | 2006-HI2 | 3/17/2006 | $56,000.00 |
| 10450489 | 2006-HI2 | 3/17/2006 | $62,000.00 |
| 10450507 | 2006-HI2 | 3/6/2006 | $30,000.00 |
| 10450539 | 2006-HI2 | 3/1/2006 | $52,000.00 |
| 10450545 | 2006-HI2 | 4/5/2006 | $50,000.00 |
| 10455341 | 2006-HSA4 | 3/2/2006 | $44,000.00 |
| 10455555 | 2006-HI2 | 3/6/2006 | $30,000.00 |
| 10459227 | 2006-HI2 | 3/6/2006 | $60,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10459233 | 2006-HI2 | 3/3/2006 | $43,400.00 |
| 10459237 | 2006-HI2 | 3/8/2006 | $40,000.00 |
| 10459239 | 2006-HI2 | 3/7/2006 | $53,000.00 |
| 10459241 | 2006-HI2 | 3/7/2006 | $52,900.00 |
| 10459243 | 2006-HI2 | 3/9/2006 | $22,800.00 |
| 10459253 | 2006-HI2 | 3/8/2006 | $31,900.00 |
| 10459261 | 2006-HI2 | 3/9/2006 | $60,000.00 |
| 10459267 | 2006-HI2 | 4/4/2006 | $55,900.00 |
| 10459269 | 2006-HSA3 | 4/14/2006 | $185,000.00 |
| 10459271 | 2006-HI2 | 3/10/2006 | $50,100.00 |
| 10459285 | 2006-HSA3 | 3/13/2006 | $42,700.00 |
| 10459289 | 2006-HI2 | 3/7/2006 | $65,500.00 |
| 10459325 | 2006-QS5 | 3/17/2006 | $161,000.00 |
| 10459329 | 2006-HI2 | 3/6/2006 | $53,000.00 |
| 10459341 | 2006-S4 | 3/21/2006 | $333,000.00 |
| 10459343 | 2006-HSA3 | 3/30/2006 | $105,000.00 |
| 10459381 | 2006-HSA3 | 3/13/2006 | $65,000.00 |
| 10459385 | 2006-HSA3 | 3/29/2006 | $34,100.00 |
| 10459397 | 2006-HSA3 | 3/6/2006 | $56,000.00 |
| 10459401 | 2006-HSA3 | 3/13/2006 | $75,000.00 |
| 10459419 | 2006-HSA4 | 3/6/2006 | $65,000.00 |
| 10459511 | 2006-QS13 | 3/24/2006 | $168,000.00 |
| 10459559 | 2006-HI2 | 3/6/2006 | $67,000.00 |
| 10460429 | 2006-HI2 | 3/8/2006 | $40,000.00 |
| 10460437 | 2006-HI2 | 3/10/2006 | $39,200.00 |
| 10460441 | 2006-HI2 | 3/17/2006 | $71,000.00 |
| 10461433 | 2006-HSA3 | 4/4/2006 | $43,500.00 |
| 10461527 | 2006-HSA4 | 3/30/2006 | $97,000.00 |
| 10468189 | 2006-HI2 | 3/23/2006 | $75,000.00 |
| 10469585 | 2006-HSA3 | 3/13/2006 | $38,700.00 |
| 10470177 | 2006-HSA3 | 3/13/2006 | $77,000.00 |
| 10471299 | 2006-HI2 | 3/24/2006 | $47,500.00 |
| 10471359 | 2006-HSA4 | 3/13/2006 | $55,500.00 |
| 10473411 | 2006-HI2 | 3/29/2006 | $75,000.00 |
| 10473495 | 2006-HI2 | 3/24/2006 | $57,000.00 |
| 10473531 | 2006-HI2 | 3/29/2006 | $25,000.00 |
| 10474195 | 2006-HSA3 | 3/24/2006 | $93,000.00 |
| 10474215 | 2006-HI2 | 3/20/2006 | $58,750.00 |
| 10474447 | 2006-S4 | 3/17/2006 | $250,000.00 |
| 10476507 | 2006-HSA4 | 5/2/2006 | $147,000.00 |
| 10478169 | 2006-SA2 | 3/30/2006 | $320,000.00 |
| 10478415 | 2006-HI2 | 3/24/2006 | $48,300.00 |
| 10478423 | 2006-HI2 | 3/29/2006 | $35,000.00 |
| 10478497 | 2006-HSA3 | 3/17/2006 | $60,000.00 |
| 10478505 | 2006-HSA3 | 3/22/2006 | $48,000.00 |
| 10478511 | 2006-HI2 | 3/21/2006 | $50,000.00 |
| 10478515 | 2006-HSA3 | 3/30/2006 | $200,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10485305 | 2006-HSA4 | 3/24/2006 | $100,000.00 |
| 10485561 | 2006-HI2 | 3/24/2006 | $50,000.00 |
| 10487371 | 2006-SA2 | 3/30/2006 | $121,500.00 |
| 10487403 | 2006-S4 | 3/30/2006 | $559,000.00 |
| 10488499 | 2006-HSA3 | 3/23/2006 | $100,000.00 |
| 10488501 | 2006-HSA4 | 3/17/2006 | $73,000.00 |
| 10488511 | 2006-HSA4 | 3/22/2006 | $52,000.00 |
| 10488519 | 2006-HSA4 | 3/20/2006 | $99,500.00 |
| 10488523 | 2006-HSA3 | 3/21/2006 | $59,300.00 |
| 10488563 | 2006-HSA3 | 3/21/2006 | $50,000.00 |
| 10488577 | 2006-HSA3 | 3/17/2006 | $45,000.00 |
| 10488579 | 2006-HI2 | 3/17/2006 | $15,000.00 |
| 10488581 | 2006-HI2 | 3/17/2006 | $60,000.00 |
| 10488587 | 2006-HI2 | 4/6/2006 | $25,800.00 |
| 10488591 | 2006-HI2 | 3/22/2006 | $64,000.00 |
| 10488613 | 2006-HI2 | 3/17/2006 | $75,000.00 |
| 10488627 | 2006-HI2 | 3/17/2006 | $72,000.00 |
| 10488647 | 2006-HI2 | 4/11/2006 | $55,000.00 |
| 10488919 | 2006-HI2 | 4/6/2006 | $40,000.00 |
| 10489197 | 2006-HI2 | 4/5/2006 | $50,000.00 |
| 10489589 | 2006-HI2 | 3/17/2006 | $63,000.00 |
| 10490385 | 2006-HSA3 | 3/17/2006 | $75,000.00 |
| 10493127 | 2006-HI2 | 3/17/2006 | $60,700.00 |
| 10493139 | 2006-HI2 | 3/29/2006 | $30,000.00 |
| 10493823 | 2006-HI2 | 3/17/2006 | $40,000.00 |
| 10494565 | 2006-HSA3 | 3/23/2006 | $75,000.00 |
| 10494701 | 2006-HSA3 | 3/23/2006 | $37,500.00 |
| 10494763 | 2006-QA3 | 3/30/2006 | $135,000.00 |
| 10497375 | 2006-QS4 | 3/30/2006 | $199,600.00 |
| 10498713 | 2006-HI2 | 3/30/2006 | $50,000.00 |
| 10498751 | 2006-HI2 | 3/20/2006 | $50,000.00 |
| 10498951 | 2006-QO5 | 4/28/2006 | $461,150.00 |
| 10499765 | 2006-HSA4 | 3/24/2006 | $45,400.00 |
| 10499983 | 2006-HI2 | 4/4/2006 | $20,000.00 |
| 10499987 | 2006-HI2 | 3/24/2006 | $69,900.00 |
| 10499993 | 2006-HI2 | 4/5/2006 | $46,800.00 |
| 10501553 | 2006-HSA3 | 3/30/2006 | $50,000.00 |
| 10501555 | 2006-HSA3 | 3/30/2006 | $47,500.00 |
| 10501575 | 2006-HSA4 | 3/30/2006 | $87,500.00 |
| 10501587 | 2006-HSA3 | 3/30/2006 | $62,000.00 |
| 10501605 | 2006-HSA3 | 3/30/2006 | $59,800.00 |
| 10501629 | 2006-HSA3 | 3/30/2006 | $32,500.00 |
| 10501655 | 2006-HSA4 | 3/30/2006 | $74,500.00 |
| 10501663 | 2006-HSA4 | 3/30/2006 | $51,500.00 |
| 10501823 | 2006-HSA3 | 3/30/2006 | $78,000.00 |
| 10501825 | 2006-HSA3 | 3/30/2006 | $47,000.00 |
| 10501827 | 2006-HSA4 | 3/30/2006 | $70,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10501829 | 2006-HSA3 | 3/30/2006 | $40,000.00 |
| 10501831 | 2006-HSA4 | 3/30/2006 | $70,000.00 |
| 10501833 | 2006-HSA3 | 3/30/2006 | $60,600.00 |
| 10501835 | 2006-HSA3 | 3/30/2006 | $30,500.00 |
| 10501837 | 2006-HSA4 | 3/30/2006 | $52,000.00 |
| 10502541 | 2006-HSA3 | 3/30/2006 | $84,500.00 |
| 10502545 | 2006-HSA3 | 3/30/2006 | $76,000.00 |
| 10502589 | 2006-HSA3 | 3/23/2006 | $57,700.00 |
| 10502601 | 2006-HSA3 | 3/24/2006 | $33,000.00 |
| 10502611 | 2006-HSA4 | 3/30/2006 | $56,000.00 |
| 10502619 | 2006-HSA3 | 3/30/2006 | $65,000.00 |
| 10502625 | 2006-HSA3 | 3/30/2006 | $92,000.00 |
| 10502633 | 2006-HSA3 | 3/30/2006 | $62,600.00 |
| 10502639 | 2006-HSA4 | 3/30/2006 | $59,000.00 |
| 10502655 | 2006-HSA3 | 3/30/2006 | $41,000.00 |
| 10502803 | 2006-HSA3 | 3/30/2006 | $110,500.00 |
| 10502969 | 2006-HSA3 | 3/30/2006 | $76,300.00 |
| 10503089 | 2006-HSA3 | 3/30/2006 | $40,000.00 |
| 10503107 | 2006-HSA3 | 3/30/2006 | $50,000.00 |
| 10503137 | 2006-HSA4 | 3/30/2006 | $53,000.00 |
| 10503185 | 2006-HSA3 | 3/30/2006 | $95,000.00 |
| 10503199 | 2006-HSA3 | 3/30/2006 | $37,000.00 |
| 10503207 | 2006-HI2 | 3/23/2006 | $43,000.00 |
| 10503519 | 2006-HSA4 | 3/30/2006 | $55,000.00 |
| 10503775 | 2006-HSA3 | 3/23/2006 | $40,000.00 |
| 10505367 | 2006-HI2 | 4/5/2006 | $60,000.00 |
| 10505615 | 2006-HSA3 | 3/30/2006 | $65,000.00 |
| 10505625 | 2006-HSA4 | 3/30/2006 | $100,000.00 |
| 10505635 | 2006-HSA3 | 3/30/2006 | $58,900.00 |
| 10505647 | 2006-HSA3 | 3/30/2006 | $43,800.00 |
| 10506551 | 2006-HSA3 | 3/30/2006 | $95,000.00 |
| 10506573 | 2006-HSA3 | 3/30/2006 | $160,000.00 |
| 10506583 | 2006-HSA3 | 3/30/2006 | $69,000.00 |
| 10506591 | 2006-HSA3 | 3/30/2006 | $75,000.00 |
| 10506597 | 2006-HSA4 | 3/30/2006 | $56,000.00 |
| 10507467 | 2006-HI2 | 4/4/2006 | $44,000.00 |
| 10509039 | 2006-HI2 | 3/30/2006 | $64,000.00 |
| 10509043 | 2006-HI2 | 4/4/2006 | $60,000.00 |
| 10509045 | 2006-HI2 | 3/29/2006 | $69,500.00 |
| 10510465 | 2006-QS4 | 4/6/2006 | $238,000.00 |
| 10510467 | 2006-HSA3 | 3/30/2006 | $75,000.00 |
| 10510477 | 2006-HSA4 | 4/4/2006 | $88,900.00 |
| 10510491 | 2006-HSA3 | 4/4/2006 | $65,000.00 |
| 10510797 | 2006-HSA3 | 3/30/2006 | $48,000.00 |
| 10510835 | 2006-HI2 | 3/29/2006 | $45,000.00 |
| 10511873 | 2006-HSA3 | 3/30/2006 | $39,600.00 |
| 10513557 | 2006-HI2 | 4/4/2006 | $30,200.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10513717 | 2006-QS6 | 4/14/2006 | $272,000.00 |
| 10513779 | 2006-HSA3 | 4/4/2006 | $34,300.00 |
| 10513861 | 2006-HI2 | 4/4/2006 | $40,000.00 |
| 10513959 | 2006-HSA3 | 4/4/2006 | $19,200.00 |
| 10514159 | 2006-HSA3 | 4/4/2006 | $110,000.00 |
| 10515705 | 2006-QS4 | 4/6/2006 | $132,000.00 |
| 10516147 | 2006-SA2 | 4/11/2006 | $184,800.00 |
| 10516417 | 2006-HI2 | 3/29/2006 | $45,500.00 |
| 10516983 | 2006-HI2 | 3/30/2006 | $30,800.00 |
| 10517807 | 2006-HSA3 | 3/30/2006 | $50,000.00 |
| 10518457 | 2006-HI2 | 4/6/2006 | $50,000.00 |
| 10518513 | 2006-HSA4 | 4/20/2006 | $52,500.00 |
| 10518517 | 2006-HSA4 | 3/27/2006 | $60,000.00 |
| 10519715 | 2006-QS4 | 4/11/2006 | $181,600.00 |
| 10520105 | 2006-HI2 | 4/6/2006 | $25,000.00 |
| 10520127 | 2006-HI2 | 4/6/2006 | $54,000.00 |
| 10520181 | 2006-HI2 | 4/4/2006 | $49,400.00 |
| 10521697 | 2006-HI2 | 4/4/2006 | $36,000.00 |
| 10521943 | 2006-HI2 | 4/5/2006 | $45,000.00 |
| 10522071 | 2006-QO5 | 4/13/2006 | $432,000.00 |
| 10522115 | 2006-HI2 | 4/4/2006 | $70,000.00 |
| 10522159 | 2006-HI2 | 4/14/2006 | $50,000.00 |
| 10522209 | 2006-QS4 | 4/6/2006 | $169,100.00 |
| 10524887 | 2006-HI2 | 4/5/2006 | $50,000.00 |
| 10525553 | 2006-HI2 | 4/5/2006 | $40,000.00 |
| 10526335 | 2006-QS4 | 4/11/2006 | $168,000.00 |
| 10526455 | 2006-HI2 | 4/4/2006 | $41,800.00 |
| 10526517 | 2006-HI2 | 4/11/2006 | $43,000.00 |
| 10527421 | 2006-HSA3 | 4/18/2006 | $80,000.00 |
| 10527501 | 2006-HI2 | 4/5/2006 | $68,000.00 |
| 10528663 | 2006-QS6 | 5/3/2006 | $98,000.00 |
| 10528891 | 2006-HI2 | 4/5/2006 | $75,000.00 |
| 10528907 | 2006-HI2 | 4/4/2006 | $57,800.00 |
| 10529255 | 2006-SA2 | 4/11/2006 | $563,600.00 |
| 10529369 | 2006-HI2 | 4/6/2006 | $60,200.00 |
| 10529695 | 2006-HSA4 | 4/7/2006 | $39,000.00 |
| 10529697 | 2006-HSA3 | 4/21/2006 | $150,000.00 |
| 10533757 | 2006-HSA3 | 4/7/2006 | $50,000.00 |
| 10535019 | 2006-HI2 | 4/6/2006 | $35,500.00 |
| 10535119 | 2006-HI2 | 4/6/2006 | $50,000.00 |
| 10535171 | 2006-HI2 | 4/6/2006 | $58,900.00 |
| 10535365 | 2006-HI2 | 4/17/2006 | $75,000.00 |
| 10538813 | 2006-QS4 | 4/11/2006 | $430,000.00 |
| 10539329 | 2006-HSA3 | 4/7/2006 | $16,700.00 |
| 10539393 | 2006-HSA3 | 4/11/2006 | $25,500.00 |
| 10539907 | 2006-HSA4 | 4/7/2006 | $43,000.00 |
| 10540151 | 2006-HI2 | 4/11/2006 | $50,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10542669 | 2006-HSA3 | 4/18/2006 | $45,000.00 |
| 10542845 | 2006-QA5 | 4/19/2006 | $136,000.00 |
| 10543613 | 2006-HI2 | 4/11/2006 | $45,000.00 |
| 10543809 | 2006-HI2 | 4/14/2006 | $35,000.00 |
| 10545627 | 2006-HSA3 | 4/14/2006 | $34,000.00 |
| 10546061 | 2006-HSA3 | 4/14/2006 | $30,000.00 |
| 10546083 | 2006-HI2 | 4/14/2006 | $52,000.00 |
| 10546093 | 2006-HI2 | 4/14/2006 | $50,000.00 |
| 10546119 | 2006-HI2 | 4/18/2006 | $75,000.00 |
| 10546137 | 2006-HI2 | 4/19/2006 | $54,000.00 |
| 10546157 | 2006-HI2 | 4/28/2006 | $33,000.00 |
| 10546171 | 2006-HI2 | 4/18/2006 | $60,000.00 |
| 10546209 | 2006-HSA3 | 4/14/2006 | $100,000.00 |
| 10548097 | 2006-HI2 | 4/20/2006 | $38,000.00 |
| 10548113 | 2006-HI2 | 4/14/2006 | $35,000.00 |
| 10548241 | 2006-HI2 | 4/21/2006 | $38,500.00 |
| 10548485 | 2006-S10 | 4/19/2006 | $651,300.00 |
| 10548619 | 2006-HI2 | 4/14/2006 | $42,000.00 |
| 10548663 | 2006-HSA4 | 4/20/2006 | $100,000.00 |
| 10548679 | 2006-HSA4 | 4/19/2006 | $89,000.00 |
| 10551359 | 2006-QS4 | 4/17/2006 | $116,250.00 |
| 10551363 | 2006-HI2 | 4/19/2006 | $40,000.00 |
| 10551693 | 2006-HI2 | 4/17/2006 | $75,000.00 |
| 10555605 | 2006-HI2 | 4/20/2006 | $30,000.00 |
| 10555713 | 2006-QS5 | 4/28/2006 | $116,000.00 |
| 10555751 | 2006-QS4 | 4/14/2006 | $240,000.00 |
| 10555935 | 2006-HI2 | 4/19/2006 | $75,000.00 |
| 10556253 | 2006-HI2 | 4/19/2006 | $33,500.00 |
| 10556267 | 2006-HI2 | 4/20/2006 | $42,000.00 |
| 10559217 | 2006-HI2 | 4/21/2006 | $48,000.00 |
| 10559321 | 2006-HI2 | 4/28/2006 | $30,000.00 |
| 10562539 | 2007-HSA1 | 6/26/2006 | $150,000.00 |
| 10562633 | 2006-SA2 | 4/26/2006 | $271,200.00 |
| 10564087 | 2006-HSA3 | 4/24/2006 | $48,500.00 |
| 10564155 | 2006-HSA3 | 4/24/2006 | $100,000.00 |
| 10564275 | 2006-HSA3 | 4/24/2006 | $17,000.00 |
| 10564407 | 2006-HSA3 | 4/24/2006 | $56,000.00 |
| 10564457 | 2006-HSA3 | 4/24/2006 | $64,500.00 |
| 10564459 | 2006-HSA3 | 4/24/2006 | $52,000.00 |
| 10564543 | 2006-HSA5 | 4/24/2006 | $32,000.00 |
| 10564711 | 2006-HSA4 | 4/24/2006 | $48,600.00 |
| 10564873 | 2006-HSA3 | 4/24/2006 | $50,000.00 |
| 10564883 | 2006-HSA3 | 4/24/2006 | $27,500.00 |
| 10564901 | 2006-HSA4 | 4/24/2006 | $45,000.00 |
| 10564903 | 2006-HSA4 | 4/24/2006 | $100,000.00 |
| 10564917 | 2006-HSA3 | 4/24/2006 | $90,000.00 |
| 10564935 | 2006-HSA3 | 4/24/2006 | $38,700.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10564983 | 2006-HSA3 | 4/24/2006 | $100,000.00 |
| 10565003 | 2006-HSA3 | 4/24/2006 | $32,200.00 |
| 10565051 | 2006-HSA3 | 4/24/2006 | $125,000.00 |
| 10565061 | 2006-HSA4 | 4/24/2006 | $55,000.00 |
| 10565073 | 2006-HSA3 | 4/24/2006 | $50,000.00 |
| 10566933 | 2006-HSA4 | 4/24/2006 | $100,000.00 |
| 10566941 | 2006-HSA3 | 4/24/2006 | $30,900.00 |
| 10566945 | 2006-HSA3 | 4/24/2006 | $36,300.00 |
| 10566947 | 2006-HSA3 | 4/24/2006 | $50,000.00 |
| 10566949 | 2006-HSA4 | 4/24/2006 | $27,000.00 |
| 10566951 | 2006-HSA4 | 4/24/2006 | $200,000.00 |
| 10566959 | 2006-HSA4 | 4/24/2006 | $78,000.00 |
| 10566961 | 2006-HSA3 | 4/24/2006 | $150,000.00 |
| 10566967 | 2006-HSA4 | 4/24/2006 | $48,000.00 |
| 10566971 | 2006-HSA3 | 4/24/2006 | $58,800.00 |
| 10566973 | 2006-HSA3 | 4/24/2006 | $77,000.00 |
| 10566975 | 2006-HSA3 | 4/24/2006 | $25,000.00 |
| 10566977 | 2006-HSA3 | 4/24/2006 | $65,000.00 |
| 10566979 | 2006-HSA3 | 4/24/2006 | $38,100.00 |
| 10566981 | 2006-HSA4 | 4/24/2006 | $66,000.00 |
| 10566987 | 2006-HSA3 | 4/24/2006 | $60,000.00 |
| 10566989 | 2006-HSA3 | 4/24/2006 | $30,000.00 |
| 10566995 | 2006-HSA3 | 4/24/2006 | $30,000.00 |
| 10567009 | 2006-HSA3 | 4/24/2006 | $35,000.00 |
| 10567021 | 2006-HSA4 | 4/24/2006 | $26,000.00 |
| 10567029 | 2006-HSA3 | 4/24/2006 | $30,000.00 |
| 10567041 | 2006-HSA3 | 4/24/2006 | $25,500.00 |
| 10567043 | 2006-HSA4 | 4/24/2006 | $15,000.00 |
| 10567045 | 2006-HSA3 | 4/24/2006 | $80,000.00 |
| 10567047 | 2006-HSA4 | 4/24/2006 | $50,000.00 |
| 10567051 | 2006-HSA4 | 4/24/2006 | $49,000.00 |
| 10567055 | 2006-HSA3 | 4/24/2006 | $55,000.00 |
| 10567057 | 2006-HSA3 | 4/24/2006 | $130,000.00 |
| 10567059 | 2006-HSA3 | 4/24/2006 | $90,000.00 |
| 10567061 | 2006-HSA3 | 4/24/2006 | $64,000.00 |
| 10567095 | 2006-HSA3 | 4/24/2006 | $94,000.00 |
| 10567101 | 2006-HSA4 | 4/24/2006 | $30,000.00 |
| 10567103 | 2006-HSA4 | 4/24/2006 | $90,000.00 |
| 10567765 | 2006-HSA4 | 4/24/2006 | $78,600.00 |
| 10568343 | 2006-HSA4 | 4/24/2006 | $30,000.00 |
| 10568373 | 2006-HSA3 | 4/24/2006 | $75,000.00 |
| 10568385 | 2006-HSA4 | 4/24/2006 | $65,000.00 |
| 10568391 | 2006-HSA3 | 4/24/2006 | $52,000.00 |
| 10568395 | 2006-HSA4 | 4/24/2006 | $92,000.00 |
| 10568417 | 2006-HSA3 | 4/24/2006 | $60,000.00 |
| 10568419 | 2006-HSA4 | 4/24/2006 | $135,000.00 |
| 10568421 | 2006-HSA4 | 4/24/2006 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10568441 | 2006-HSA3 | 4/24/2006 | $180,000.00 |
| 10568443 | 2006-HSA3 | 4/24/2006 | $30,000.00 |
| 10568455 | 2006-HSA4 | 4/24/2006 | $40,000.00 |
| 10568459 | 2006-HSA4 | 4/24/2006 | $54,000.00 |
| 10568465 | 2006-HSA3 | 4/24/2006 | $40,000.00 |
| 10568471 | 2006-HSA3 | 4/24/2006 | $68,000.00 |
| 10568485 | 2006-HSA3 | 4/24/2006 | $30,000.00 |
| 10568489 | 2006-HSA3 | 4/24/2006 | $54,000.00 |
| 10568493 | 2006-HSA3 | 4/24/2006 | $83,800.00 |
| 10568501 | 2006-HSA3 | 4/24/2006 | $100,000.00 |
| 10568503 | 2006-HI2 | 4/25/2006 | $68,000.00 |
| 10568509 | 2006-HSA4 | 4/24/2006 | $24,000.00 |
| 10568515 | 2006-HSA4 | 4/24/2006 | $30,000.00 |
| 10568525 | 2006-HSA3 | 4/24/2006 | $58,000.00 |
| 10568541 | 2006-HSA3 | 4/24/2006 | $10,000.00 |
| 10568563 | 2006-HSA3 | 4/24/2006 | $32,000.00 |
| 10568649 | 2006-HSA4 | 4/24/2006 | $94,000.00 |
| 10568679 | 2006-HSA3 | 4/24/2006 | $29,500.00 |
| 10568711 | 2006-HI2 | 4/21/2006 | $60,000.00 |
| 10568737 | 2006-HI2 | 4/25/2006 | $42,000.00 |
| 10569719 | 2006-HSA3 | 4/24/2006 | $30,000.00 |
| 10569729 | 2006-HI2 | 4/20/2006 | $30,000.00 |
| 10570643 | 2006-HSA4 | 4/20/2006 | $47,000.00 |
| 10570693 | 2006-HI2 | 4/17/2006 | $50,000.00 |
| 10571255 | 2006-HSA3 | 4/24/2006 | $30,000.00 |
| 10571341 | 2006-HSA3 | 4/24/2006 | $26,000.00 |
| 10573335 | 2006-HSA3 | 4/25/2006 | $109,000.00 |
| 10573479 | 2006-HSA4 | 4/20/2006 | $42,500.00 |
| 10573579 | 2006-HSA4 | 4/28/2006 | $45,000.00 |
| 10573743 | 2006-HI2 | 4/21/2006 | $46,000.00 |
| 10573865 | 2006-HI2 | 4/28/2006 | $33,300.00 |
| 10573891 | 2006-HI2 | 4/21/2006 | $75,000.00 |
| 10573923 | 2006-HI2 | 4/28/2006 | $22,000.00 |
| 10574075 | 2006-HI2 | 4/25/2006 | $51,500.00 |
| 10576573 | 2006-QS13 | 5/9/2006 | $108,500.00 |
| 10576671 | 2006-HI2 | 4/26/2006 | $45,900.00 |
| 10576711 | 2006-HSA4 | 4/26/2006 | $30,000.00 |
| 10577391 | 2006-HI2 | 4/26/2006 | $30,000.00 |
| 10580987 | 2006-HI2 | 4/26/2006 | $50,000.00 |
| 10580997 | 2006-HSA4 | 4/24/2006 | $30,000.00 |
| 10581085 | 2006-HI2 | 4/27/2006 | $47,700.00 |
| 10581091 | 2006-HI2 | 4/28/2006 | $50,000.00 |
| 10581139 | 2006-HI2 | 4/27/2006 | $45,400.00 |
| 10581161 | 2006-HSA4 | 4/28/2006 | $19,000.00 |
| 10581247 | 2006-HSA4 | 4/27/2006 | $100,000.00 |
| 10581365 | 2006-HSA4 | 5/9/2006 | $50,000.00 |
| 10581451 | 2006-HSA4 | 4/28/2006 | $42,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10581913 | 2006-HSA4 | 4/26/2006 | $35,000.00 |
| 10581927 | 2006-HSA3 | 4/25/2006 | $65,000.00 |
| 10581935 | 2006-HSA4 | 4/26/2006 | $48,000.00 |
| 10583049 | 2006-HI2 | 4/26/2006 | $53,000.00 |
| 10583431 | 2006-QS5 | 5/3/2006 | $200,000.00 |
| 10583435 | 2006-QS5 | 4/27/2006 | $111,650.97 |
| 10583919 | 2006-HI2 | 4/27/2006 | $30,000.00 |
| 10583923 | 2006-HI2 | 4/27/2006 | $25,800.00 |
| 10583935 | 2006-HI2 | 4/26/2006 | $52,000.00 |
| 10583981 | 2006-HI2 | 4/26/2006 | $58,800.00 |
| 10585117 | 2006-HI2 | 4/27/2006 | $63,000.00 |
| 10585181 | 2006-HSA4 | 4/27/2006 | $60,000.00 |
| 10590557 | 2006-HSA4 | 5/2/2006 | $70,000.00 |
| 10590595 | 2006-HSA4 | 5/11/2006 | $97,500.00 |
| 10590607 | 2006-HSA4 | 5/2/2006 | $54,100.00 |
| 10590643 | 2006-HSA4 | 5/2/2006 | $47,800.00 |
| 10590975 | 2006-HSA4 | 4/27/2006 | $50,000.00 |
| 10591061 | 2006-S5 | 4/27/2006 | $600,000.00 |
| 10591187 | 2006-HI2 | 4/28/2006 | $48,100.00 |
| 10596497 | 2006-HI2 | 4/28/2006 | $38,000.00 |
| 10596609 | 2006-HI3 | 5/3/2006 | $40,809.84 |
| 10597455 | 2006-QS6 | 5/16/2006 | $152,800.00 |
| 10597633 | 2006-QO6 | 5/3/2006 | $575,000.00 |
| 10598969 | 2006-QS6 | 5/2/2006 | $114,400.00 |
| 10599227 | 2006-SA2 | 5/2/2006 | $465,000.00 |
| 10599383 | 2006-QS6 | 5/11/2006 | $160,000.00 |
| 10601057 | 2006-HI3 | 5/11/2006 | $46,512.54 |
| 10601289 | 2006-QS6 | 5/3/2006 | $130,400.00 |
| 10601687 | 2006-QA6 | 5/5/2006 | $127,200.00 |
| 10603079 | 2006-QS8 | 5/4/2006 | $212,000.00 |
| 10603581 | 2006-QA6 | 6/2/2006 | $132,400.00 |
| 10604219 | 2006-HI3 | 5/4/2006 | $74,915.75 |
| 10606455 | 2006-QS5 | 5/9/2006 | $100,000.00 |
| 10612277 | 2006-HI3 | 5/11/2006 | $15,391.76 |
| 10612601 | 2006-HSA4 | 5/26/2006 | $68,000.00 |
| 10612661 | 2006-QO6 | 5/12/2006 | $252,000.00 |
| 10612769 | 2006-HI3 | 5/11/2006 | $59,881.25 |
| 10612771 | 2006-HSA4 | 5/26/2006 | $25,000.00 |
| 10612863 | 2006-HSA4 | 5/26/2006 | $14,500.00 |
| 10612871 | 2006-HSA4 | 5/26/2006 | $25,500.00 |
| 10614433 | 2006-QO6 | 5/12/2006 | $200,000.00 |
| 10614449 | 2006-QS13 | 5/17/2006 | $145,600.00 |
| 10614451 | 2006-KS8 | 7/7/2006 | $136,000.00 |
| 10614459 | 2006-QS5 | 5/11/2006 | $161,000.00 |
| 10614727 | 2006-QO6 | 5/12/2006 | $211,000.00 |
| 10614749 | 2006-QO6 | 6/2/2006 | $157,500.00 |
| 10614771 | 2006-QO6 | 5/12/2006 | $113,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10614779 | 2006-QS6 | 5/12/2006 | $105,000.00 |
| 10615057 | 2006-QO6 | 5/17/2006 | $240,000.00 |
| 10615063 | 2006-QO6 | 5/12/2006 | $560,000.00 |
| 10615071 | 2006-QO6 | 5/11/2006 | $280,000.00 |
| 10615085 | 2006-QO6 | 5/24/2006 | $330,000.00 |
| 10615103 | 2006-QO6 | 5/12/2006 | $76,500.00 |
| 10615109 | 2006-SA2 | 5/16/2006 | $208,000.00 |
| 10615123 | 2006-QO6 | 5/12/2006 | $430,000.00 |
| 10615239 | 2006-QO6 | 6/9/2006 | $215,200.00 |
| 10615299 | 2006-QO6 | 5/12/2006 | $105,000.00 |
| 10615751 | 2006-HSA4 | 5/9/2006 | $24,000.00 |
| 10616891 | 2006-QO5 | 5/12/2006 | $407,500.00 |
| 10617875 | 2006-QO6 | 5/17/2006 | $260,000.00 |
| 10619593 | 2006-QO6 | 5/26/2006 | $263,200.00 |
| 10624857 | 2006-QO6 | 5/17/2006 | $200,000.00 |
| 10624979 | 2006-QO6 | 5/15/2006 | $328,000.00 |
| 10625005 | 2006-SA2 | 5/12/2006 | $554,475.23 |
| 10625127 | 2006-QO6 | 5/15/2006 | $204,000.00 |
| 10625147 | 2006-QO7 | 5/18/2006 | $511,500.00 |
| 10625155 | 2006-QO6 | 5/15/2006 | $256,000.00 |
| 10628165 | 2006-HI3 | 6/1/2006 | $31,941.64 |
| 10629701 | 2006-QO6 | 5/15/2006 | $278,200.00 |
| 10632301 | 2006-QO6 | 5/18/2006 | $576,000.00 |
| 10632411 | 2006-QO6 | 5/18/2006 | $400,000.00 |
| 10632521 | 2006-QO6 | 5/23/2006 | $184,000.00 |
| 10633827 | 2006-QO6 | 5/19/2006 | $488,000.00 |
| 10634101 | 2006-QO6 | 5/26/2006 | $184,000.00 |
| 10634167 | 2006-QO6 | 6/8/2006 | $544,000.00 |
| 10634663 | 2006-HSA4 | 5/26/2006 | $55,000.00 |
| 10634871 | 2006-HSA5 | 6/26/2006 | $58,000.00 |
| 10635813 | 2006-QO6 | 5/26/2006 | $120,000.00 |
| 10636295 | 2006-QO6 | 5/23/2006 | $164,700.00 |
| 10636329 | 2006-QO6 | 5/23/2006 | $224,000.00 |
| 10636331 | 2006-QO6 | 6/6/2006 | $390,500.00 |
| 10636377 | 2006-QO6 | 5/23/2006 | $123,200.00 |
| 10636387 | 2006-QO6 | 5/23/2006 | $166,000.00 |
| 10636425 | 2006-HSA4 | 5/26/2006 | $75,000.00 |
| 10636433 | 2006-HSA4 | 5/26/2006 | $100,000.00 |
| 10636455 | 2006-HSA4 | 5/26/2006 | $50,000.00 |
| 10636485 | 2006-HSA4 | 5/26/2006 | $100,000.00 |
| 10636505 | 2006-HSA4 | 5/26/2006 | $100,000.00 |
| 10636527 | 2006-HSA4 | 5/26/2006 | $99,500.00 |
| 10636537 | 2006-HSA4 | 5/26/2006 | $55,000.00 |
| 10636549 | 2006-HSA4 | 5/26/2006 | $100,000.00 |
| 10636561 | 2006-HSA4 | 5/26/2006 | $60,000.00 |
| 10636573 | 2006-HSA4 | 5/26/2006 | $50,000.00 |
| 10636581 | 2006-HSA4 | 5/26/2006 | $100,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10636593 | 2006-HSA4 | 5/26/2006 | $84,000.00 |
| 10636613 | 2006-HSA4 | 5/26/2006 | $50,000.00 |
| 10636615 | 2006-HSA4 | 5/26/2006 | $25,000.00 |
| 10636635 | 2006-HSA4 | 5/26/2006 | $43,000.00 |
| 10636643 | 2006-HSA4 | 5/26/2006 | $90,000.00 |
| 10636671 | 2006-HSA4 | 5/26/2006 | $65,500.00 |
| 10636701 | 2006-HSA4 | 5/26/2006 | $75,000.00 |
| 10636707 | 2006-HSA4 | 5/26/2006 | $92,500.00 |
| 10636711 | 2006-HSA4 | 5/26/2006 | $45,000.00 |
| 10636721 | 2006-HSA4 | 5/26/2006 | $150,000.00 |
| 10636735 | 2006-HSA4 | 5/26/2006 | $75,500.00 |
| 10636759 | 2006-HSA4 | 5/26/2006 | $100,000.00 |
| 10636761 | 2006-HSA4 | 5/26/2006 | $76,000.00 |
| 10636771 | 2006-HSA4 | 5/26/2006 | $19,900.00 |
| 10636783 | 2006-HSA4 | 5/26/2006 | $50,000.00 |
| 10636821 | 2006-HSA4 | 5/26/2006 | $40,800.00 |
| 10636827 | 2006-HSA4 | 5/26/2006 | $75,000.00 |
| 10636833 | 2006-HSA4 | 5/26/2006 | $67,000.00 |
| 10636837 | 2006-HSA4 | 5/26/2006 | $167,000.00 |
| 10636893 | 2006-HSA4 | 5/26/2006 | $94,200.00 |
| 10636933 | 2006-HSA4 | 5/26/2006 | $85,000.00 |
| 10636935 | 2006-HSA4 | 5/26/2006 | $100,000.00 |
| 10636945 | 2006-HSA4 | 5/26/2006 | $46,500.00 |
| 10636959 | 2006-HSA4 | 5/26/2006 | $89,000.00 |
| 10636963 | 2006-HSA4 | 5/26/2006 | $23,000.00 |
| 10636975 | 2006-HSA4 | 5/26/2006 | $69,000.00 |
| 10636981 | 2006-HSA4 | 5/26/2006 | $79,000.00 |
| 10636997 | 2006-HSA4 | 5/26/2006 | $86,000.00 |
| 10637017 | 2006-HSA4 | 5/26/2006 | $78,400.00 |
| 10637027 | 2006-HSA4 | 5/26/2006 | $150,000.00 |
| 10637865 | 2006-HSA4 | 5/26/2006 | $25,000.00 |
| 10637867 | 2006-HSA4 | 5/26/2006 | $58,300.00 |
| 10637869 | 2006-HSA4 | 5/26/2006 | $26,500.00 |
| 10637871 | 2006-HSA4 | 5/26/2006 | $125,000.00 |
| 10637873 | 2006-HSA4 | 5/26/2006 | $175,000.00 |
| 10638213 | 2006-HSA4 | 5/26/2006 | $34,500.00 |
| 10638215 | 2006-HSA4 | 5/26/2006 | $143,000.00 |
| 10638221 | 2006-HSA4 | 5/26/2006 | $73,000.00 |
| 10638225 | 2006-HSA4 | 5/26/2006 | $46,800.00 |
| 10638235 | 2006-HSA4 | 5/26/2006 | $184,000.00 |
| 10638243 | 2006-HSA4 | 5/26/2006 | $60,000.00 |
| 10638245 | 2006-HSA4 | 5/26/2006 | $51,000.00 |
| 10638259 | 2006-HSA4 | 5/26/2006 | $66,600.00 |
| 10638271 | 2006-HSA4 | 5/26/2006 | $70,000.00 |
| 10638273 | 2006-HSA4 | 5/26/2006 | $100,000.00 |
| 10638283 | 2006-HSA4 | 5/26/2006 | $50,000.00 |
| 10638291 | 2006-HSA4 | 5/26/2006 | $100,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10638383 | 2006-S5 | 5/23/2006 | $503,000.00 |
| 10638393 | 2006-QO6 | 5/26/2006 | $150,000.00 |
| 10638421 | 2006-QO6 | 5/19/2006 | $145,000.00 |
| 10638425 | 2006-QO6 | 5/24/2006 | $240,000.00 |
| 10638447 | 2006-QO6 | 5/24/2006 | $199,000.00 |
| 10638457 | 2006-QO6 | 5/24/2006 | $180,000.00 |
| 10638731 | 2006-QO6 | 5/25/2006 | $300,000.00 |
| 10638907 | 2006-HI4 | 6/1/2006 | $59,500.00 |
| 10642017 | 2006-QO6 | 5/25/2006 | $293,500.00 |
| 10642037 | 2006-QO6 | 5/26/2006 | $148,500.00 |
| 10642059 | 2006-QO6 | 5/25/2006 | $289,600.00 |
| 10642095 | 2006-QO6 | 5/24/2006 | $415,000.00 |
| 10644141 | 2006-QO6 | 5/24/2006 | $156,000.00 |
| 10644169 | 2006-QO6 | 5/26/2006 | $172,000.00 |
| 10646243 | 2006-QO6 | 6/6/2006 | $464,000.00 |
| 10646407 | 2006-QO6 | 5/31/2006 | $392,000.00 |
| 10646449 | 2006-QO6 | 5/31/2006 | $189,600.00 |
| 10646675 | 2006-S5 | 6/9/2006 | $555,000.00 |
| 10646881 | 2006-QO6 | 6/6/2006 | $338,400.00 |
| 10647045 | 2006-HI3 | 6/8/2006 | $44,083.50 |
| 10647055 | 2006-QS6 | 5/26/2006 | $140,000.00 |
| 10648089 | 2006-QS7 | 6/6/2006 | $236,000.00 |
| 10648215 | 2006-QO6 | 6/6/2006 | $228,000.00 |
| 10648537 | 2006-QS6 | 5/31/2006 | $154,000.00 |
| 10650991 | 2006-HSA5 | 6/29/2006 | $75,000.00 |
| 10651469 | 2006-HI3 | 5/31/2006 | $37,500.00 |
| 10653805 | 2006-HI3 | 5/31/2006 | $59,889.26 |
| 10653879 | 2006-HI4 | 6/1/2006 | $30,000.00 |
| 10655403 | 2006-HI3 | 6/8/2006 | $32,100.00 |
| 10655445 | 2006-QO6 | 6/6/2006 | $545,000.00 |
| 10655457 | 2006-HI3 | 6/5/2006 | $28,293.11 |
| 10656377 | 2006-S5 | 6/6/2006 | $470,000.00 |
| 10657401 | 2006-QO6 | 6/6/2006 | $556,000.00 |
| 10659821 | 2006-QS6 | 6/13/2006 | $195,000.00 |
| 10659991 | 2006-SA3 | 6/22/2006 | $700,000.00 |
| 10663437 | 2006-HI4 | 7/14/2006 | $30,000.00 |
| 10663769 | 2006-HSA5 | 6/23/2006 | $70,000.00 |
| 10665533 | 2006-S5 | 6/9/2006 | $176,000.00 |
| 10665807 | 2006-QS8 | 6/9/2006 | $232,000.00 |
| 10666353 | 2006-HI4 | 6/30/2006 | $30,000.00 |
| 10669689 | 2006-S5 | 6/8/2006 | $570,000.00 |
| 10669719 | 2006-QS6 | 6/8/2006 | $216,800.00 |
| 10669765 | 2006-QO6 | 6/14/2006 | $81,000.00 |
| 10670269 | 2006-HI3 | 6/8/2006 | $24,950.54 |
| 10674467 | 2006-HI3 | 6/15/2006 | $46,600.00 |
| 10674523 | 2006-QO6 | 6/16/2006 | $280,000.00 |
| 10675679 | 2006-QO8 | 6/15/2006 | $176,700.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10676043 | 2006-QO6 | 6/9/2006 | $275,000.00 |
| 10678887 | 2006-QO6 | 6/9/2006 | $301,500.00 |
| 10679821 | 2006-QO8 | 6/28/2006 | $450,000.00 |
| 10687913 | 2006-QA6 | 6/23/2006 | $238,000.00 |
| 10689125 | 2006-QO6 | 6/13/2006 | $264,000.00 |
| 10691227 | 2006-QO6 | 6/15/2006 | $340,000.00 |
| 10691293 | 2006-QO8 | 6/28/2006 | $168,000.00 |
| 10691387 | 2006-HSA5 | 6/14/2006 | $55,300.00 |
| 10691969 | 2006-QS6 | 6/9/2006 | $284,411.07 |
| 10693947 | 2006-QS6 | 6/13/2006 | $160,000.00 |
| 10694177 | 2006-HSA5 | 6/26/2006 | $27,250.00 |
| 10694209 | 2006-HSA5 | 6/26/2006 | $39,200.00 |
| 10694605 | 2006-HSA5 | 6/26/2006 | $100,000.00 |
| 10695207 | 2006-HSA5 | 6/26/2006 | $100,000.00 |
| 10695277 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10695337 | 2006-HSA5 | 6/26/2006 | $40,800.00 |
| 10695383 | 2006-HSA5 | 6/26/2006 | $18,600.00 |
| 10697049 | 2006-HSA5 | 6/26/2006 | $47,000.00 |
| 10697095 | 2006-HSA5 | 6/26/2006 | $39,000.00 |
| 10697097 | 2006-HSA5 | 6/26/2006 | $65,000.00 |
| 10697099 | 2006-HSA5 | 6/26/2006 | $53,000.00 |
| 10697101 | 2006-HSA5 | 6/26/2006 | $53,500.00 |
| 10697109 | 2006-HSA5 | 6/26/2006 | $31,000.00 |
| 10697111 | 2006-HSA5 | 6/26/2006 | $86,000.00 |
| 10697121 | 2006-HSA5 | 6/26/2006 | $45,000.00 |
| 10697125 | 2006-HSA5 | 6/26/2006 | $42,000.00 |
| 10699143 | 2006-HSA5 | 6/23/2006 | $31,200.00 |
| 10699165 | 2006-HSA5 | 6/23/2006 | $60,000.00 |
| 10699185 | 2006-HSA5 | 6/23/2006 | $71,400.00 |
| 10699191 | 2006-HSA5 | 6/23/2006 | $69,800.00 |
| 10699253 | 2006-HSA5 | 6/23/2006 | $43,500.00 |
| 10699265 | 2006-HSA5 | 6/23/2006 | $241,000.00 |
| 10699337 | 2006-HSA5 | 6/23/2006 | $28,600.00 |
| 10699343 | 2006-HSA5 | 6/23/2006 | $39,400.00 |
| 10699345 | 2006-HSA5 | 6/23/2006 | $150,000.00 |
| 10699373 | 2006-HSA5 | 6/23/2006 | $52,000.00 |
| 10699377 | 2006-QS6 | 6/16/2006 | $167,000.00 |
| 10699379 | 2006-QO6 | 6/16/2006 | $200,000.00 |
| 10699409 | 2006-S5 | 6/15/2006 | $496,000.00 |
| 10699443 | 2006-QS8 | 6/21/2006 | $166,400.00 |
| 10700185 | 2006-QA6 | 6/14/2006 | $230,000.00 |
| 10702289 | 2006-HI3 | 6/16/2006 | $41,922.67 |
| 10705669 | 2006-QS6 | 6/14/2006 | $167,250.00 |
| 10705689 | 2006-QA6 | 6/15/2006 | $102,300.00 |
| 10707895 | 2006-HSA5 | 6/26/2006 | $42,500.00 |
| 10707909 | 2006-HSA5 | 6/26/2006 | $48,600.00 |
| 10707913 | 2006-HSA5 | 6/26/2006 | $100,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10707929 | 2006-HSA5 | 6/26/2006 | $75,000.00 |
| 10707943 | 2006-HSA5 | 6/26/2006 | $21,700.00 |
| 10707951 | 2006-HSA5 | 6/26/2006 | $19,000.00 |
| 10707965 | 2006-HSA5 | 6/26/2006 | $25,000.00 |
| 10707971 | 2006-HSA5 | 6/26/2006 | $42,000.00 |
| 10707975 | 2006-HSA5 | 6/26/2006 | $15,800.00 |
| 10707979 | 2006-HSA5 | 6/26/2006 | $66,000.00 |
| 10707981 | 2006-HSA5 | 6/26/2006 | $165,000.00 |
| 10707995 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10707997 | 2006-HSA5 | 6/26/2006 | $75,000.00 |
| 10707999 | 2006-HSA5 | 6/26/2006 | $40,000.00 |
| 10708009 | 2006-HSA5 | 6/26/2006 | $41,700.00 |
| 10708013 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10708023 | 2006-HSA5 | 6/26/2006 | $50,000.00 |
| 10708029 | 2006-HSA5 | 6/26/2006 | $17,000.00 |
| 10708043 | 2006-HSA5 | 6/26/2006 | $100,000.00 |
| 10708083 | 2006-HSA5 | 6/26/2006 | $25,000.00 |
| 10708111 | 2006-HSA5 | 6/26/2006 | $25,700.00 |
| 10708141 | 2006-HSA5 | 6/26/2006 | $32,000.00 |
| 10708325 | 2006-HSA5 | 6/26/2006 | $75,000.00 |
| 10708363 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10708375 | 2006-HSA5 | 6/26/2006 | $134,000.00 |
| 10709729 | 2006-HSA5 | 6/26/2006 | $28,000.00 |
| 10709769 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10709807 | 2006-HSA5 | 6/26/2006 | $64,700.00 |
| 10709883 | 2006-HSA5 | 6/26/2006 | $85,000.00 |
| 10709923 | 2006-HSA5 | 6/26/2006 | $65,000.00 |
| 10709963 | 2007-HSA1 | 6/26/2006 | $76,200.00 |
| 10709967 | 2006-HSA5 | 6/26/2006 | $72,000.00 |
| 10709969 | 2006-HSA5 | 6/26/2006 | $95,200.00 |
| 10711771 | 2006-HSA5 | 6/26/2006 | $175,000.00 |
| 10711785 | 2006-QS9 | 6/29/2006 | $147,000.00 |
| 10713253 | 2006-S6 | 6/28/2006 | $475,000.00 |
| 10713305 | 2006-HSA5 | 6/26/2006 | $44,250.00 |
| 10713365 | 2006-HSA5 | 6/26/2006 | $48,500.00 |
| 10713483 | 2006-HSA5 | 6/26/2006 | $25,000.00 |
| 10713509 | 2006-HSA5 | 6/26/2006 | $100,000.00 |
| 10713555 | 2006-HSA5 | 6/26/2006 | $35,000.00 |
| 10713603 | 2006-HSA5 | 6/26/2006 | $30,500.00 |
| 10713619 | 2006-HSA5 | 6/26/2006 | $31,000.00 |
| 10713645 | 2006-HSA5 | 6/26/2006 | $56,000.00 |
| 10713819 | 2006-HSA5 | 6/26/2006 | $140,000.00 |
| 10713955 | 2006-HSA5 | 6/26/2006 | $16,500.00 |
| 10714011 | 2006-HSA5 | 6/26/2006 | $75,000.00 |
| 10714051 | 2006-HSA5 | 6/26/2006 | $90,900.00 |
| 10714053 | 2006-HSA5 | 6/26/2006 | $40,000.00 |
| 10714055 | 2006-HSA5 | 6/26/2006 | $143,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10714061 | 2006-HSA5 | 6/26/2006 | $16,000.00 |
| 10714083 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10714089 | 2006-HSA5 | 6/26/2006 | $100,000.00 |
| 10714103 | 2006-HSA5 | 6/26/2006 | $150,000.00 |
| 10714123 | 2006-HSA5 | 6/26/2006 | $58,000.00 |
| 10714129 | 2006-HSA5 | 6/26/2006 | $150,000.00 |
| 10714135 | 2006-HSA5 | 6/26/2006 | $136,500.00 |
| 10714141 | 2006-HSA5 | 6/26/2006 | $200,000.00 |
| 10714147 | 2006-HSA5 | 6/26/2006 | $10,000.00 |
| 10714165 | 2006-HSA5 | 6/26/2006 | $80,000.00 |
| 10714167 | 2006-HSA5 | 6/26/2006 | $10,000.00 |
| 10714173 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10714181 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10714203 | 2006-HSA5 | 6/26/2006 | $100,000.00 |
| 10714205 | 2006-HSA5 | 6/26/2006 | $104,500.00 |
| 10714243 | 2006-HSA5 | 6/26/2006 | $93,750.00 |
| 10714249 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10714251 | 2006-HSA5 | 6/26/2006 | $36,500.00 |
| 10714263 | 2006-HSA5 | 6/26/2006 | $16,000.00 |
| 10714289 | 2006-HSA5 | 6/26/2006 | $50,000.00 |
| 10714305 | 2006-HSA5 | 6/26/2006 | $20,000.00 |
| 10714335 | 2006-HSA5 | 6/26/2006 | $21,000.00 |
| 10714337 | 2006-HSA5 | 6/26/2006 | $33,250.00 |
| 10714369 | 2006-HSA5 | 6/26/2006 | $41,700.00 |
| 10714371 | 2006-HSA5 | 6/26/2006 | $70,000.00 |
| 10714375 | 2006-HSA5 | 6/26/2006 | $85,900.00 |
| 10714445 | 2006-HSA5 | 6/26/2006 | $22,000.00 |
| 10714447 | 2006-HSA5 | 6/26/2006 | $33,900.00 |
| 10714451 | 2006-HSA5 | 6/26/2006 | $85,000.00 |
| 10714453 | 2006-HSA5 | 6/26/2006 | $87,200.00 |
| 10714465 | 2006-HSA5 | 6/26/2006 | $42,000.00 |
| 10714491 | 2006-HSA5 | 6/26/2006 | $75,000.00 |
| 10714523 | 2006-HSA5 | 6/26/2006 | $28,000.00 |
| 10714527 | 2006-HSA5 | 6/26/2006 | $28,000.00 |
| 10714533 | 2006-HSA5 | 6/26/2006 | $50,000.00 |
| 10714563 | 2006-HSA5 | 6/26/2006 | $50,000.00 |
| 10714571 | 2006-HSA5 | 6/26/2006 | $52,500.00 |
| 10714573 | 2006-HSA5 | 6/26/2006 | $150,000.00 |
| 10714591 | 2006-HSA5 | 6/26/2006 | $25,100.00 |
| 10714599 | 2006-HSA5 | 6/26/2006 | $78,000.00 |
| 10714601 | 2006-HSA5 | 6/26/2006 | $25,500.00 |
| 10714607 | 2006-HSA5 | 6/26/2006 | $12,550.00 |
| 10714609 | 2006-HSA5 | 6/26/2006 | $30,000.00 |
| 10714613 | 2006-HSA5 | 6/26/2006 | $31,000.00 |
| 10714617 | 2006-HSA5 | 6/26/2006 | $23,000.00 |
| 10714619 | 2006-HSA5 | 6/26/2006 | $48,500.00 |
| 10714627 | 2006-HSA5 | 6/26/2006 | $47,400.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10714629 | 2006-HSA5 | 6/26/2006 | $68,000.00 |
| 10714635 | 2006-HSA5 | 6/26/2006 | $40,500.00 |
| 10714639 | 2006-HSA5 | 6/26/2006 | $57,000.00 |
| 10717151 | 2006-QO7 | 6/21/2006 | $250,000.00 |
| 10717291 | 2006-HI3 | 6/27/2006 | $46,900.00 |
| 10717947 | 2006-QO7 | 6/23/2006 | $200,000.00 |
| 10720333 | 2006-HSA5 | 6/29/2006 | $137,000.00 |
| 10720413 | 2006-QO9 | 7/10/2006 | $276,000.00 |
| 10720633 | 2006-SA3 | 6/23/2006 | $475,000.00 |
| 10720729 | 2006-QO7 | 6/23/2006 | $117,000.00 |
| 10720783 | 2006-QA6 | 6/22/2006 | $358,648.26 |
| 10723227 | 2006-QO8 | 6/28/2006 | $517,000.00 |
| 10723285 | 2006-QA6 | 6/23/2006 | $147,200.00 |
| 10723313 | 2006-HI3 | 6/27/2006 | $46,000.00 |
| 10727019 | 2006-QO8 | 6/27/2006 | $255,000.00 |
| 10727121 | 2006-SA3 | 6/23/2006 | $455,000.00 |
| 10727173 | 2006-QO7 | 6/23/2006 | $240,000.00 |
| 10728041 | 2006-QO7 | 6/28/2006 | $300,000.00 |
| 10730859 | 2006-HI3 | 6/27/2006 | $57,600.00 |
| 10730925 | 2006-QO7 | 6/27/2006 | $256,600.00 |
| 10730929 | 2006-S6 | 6/23/2006 | $417,000.00 |
| 10731189 | 2006-QO7 | 7/11/2006 | $201,500.00 |
| 10731531 | 2006-QO7 | 6/28/2006 | $148,000.00 |
| 10732813 | 2006-HSA5 | 7/17/2006 | $100,000.00 |
| 10733319 | 2006-HSA5 | 7/18/2006 | $58,000.00 |
| 10733349 | 2006-HSA5 | 7/17/2006 | $150,000.00 |
| 10733361 | 2006-HSA5 | 7/25/2006 | $38,000.00 |
| 10733595 | 2006-HSA5 | 6/27/2006 | $55,000.00 |
| 10734077 | 2006-HSA5 | 6/29/2006 | $90,000.00 |
| 10734081 | 2006-HSA5 | 7/17/2006 | $160,000.00 |
| 10734085 | 2006-HSA5 | 6/29/2006 | $14,000.00 |
| 10734089 | 2006-HSA5 | 6/29/2006 | $50,000.00 |
| 10734091 | 2006-HSA5 | 7/17/2006 | $15,000.00 |
| 10734103 | 2006-QO7 | 6/28/2006 | $245,000.00 |
| 10734123 | 2006-HSA5 | 6/29/2006 | $44,000.00 |
| 10734131 | 2006-HSA5 | 6/29/2006 | $57,400.00 |
| 10734135 | 2006-HSA5 | 6/29/2006 | $50,500.00 |
| 10734155 | 2006-HSA5 | 7/17/2006 | $30,000.00 |
| 10734159 | 2006-HSA5 | 7/17/2006 | $17,500.00 |
| 10734161 | 2006-HSA5 | 6/29/2006 | $125,000.00 |
| 10734183 | 2006-HSA5 | 6/30/2006 | $33,000.00 |
| 10734191 | 2006-HSA5 | 6/29/2006 | $50,000.00 |
| 10734229 | 2006-HSA5 | 7/17/2006 | $150,000.00 |
| 10734235 | 2006-HSA5 | 7/17/2006 | $30,000.00 |
| 10734241 | 2006-HSA5 | 7/25/2006 | $240,000.00 |
| 10734255 | 2006-HSA5 | 7/17/2006 | $200,000.00 |
| 10734271 | 2006-HSA5 | 6/29/2006 | $32,700.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10734277 | 2006-HSA5 | 7/17/2006 | $30,000.00 |
| 10734285 | 2006-HSA5 | 6/29/2006 | $52,800.00 |
| 10734291 | 2006-HSA5 | 7/17/2006 | $14,000.00 |
| 10734293 | 2006-HSA5 | 7/18/2006 | $21,500.00 |
| 10734553 | 2006-HSA5 | 7/18/2006 | $180,000.00 |
| 10734561 | 2006-HSA5 | 6/29/2006 | $23,800.00 |
| 10734567 | 2006-HSA5 | 6/29/2006 | $30,000.00 |
| 10734587 | 2006-HSA5 | 6/29/2006 | $98,400.00 |
| 10734603 | 2006-HSA5 | 7/17/2006 | $21,000.00 |
| 10734789 | 2006-HSA5 | 7/18/2006 | $99,000.00 |
| 10734793 | 2006-HSA5 | 6/29/2006 | $65,000.00 |
| 10736269 | 2006-QO7 | 6/28/2006 | $440,000.00 |
| 10736375 | 2006-QO9 | 6/28/2006 | $240,000.00 |
| 10737061 | 2006-HSA5 | 7/17/2006 | $115,000.00 |
| 10737763 | 2006-QO7 | 7/5/2006 | $540,000.00 |
| 10737981 | 2006-S6 | 6/30/2006 | $500,000.00 |
| 10738011 | 2006-S7 | 6/29/2006 | $290,000.00 |
| 10738699 | 2006-QS9 | 6/27/2006 | $120,000.00 |
| 10738731 | 2006-HI4 | 6/30/2006 | $45,000.00 |
| 10738749 | 2006-QO7 | 7/5/2006 | $229,000.00 |
| 10741497 | 2006-QS9 | 6/28/2006 | $108,000.00 |
| 10741587 | 2006-S6 | 6/29/2006 | $498,000.00 |
| 10741675 | 2006-QO7 | 6/28/2006 | $432,250.00 |
| 10741793 | 2006-QO9 | 7/19/2006 | $650,000.00 |
| 10741891 | 2006-S6 | 6/29/2006 | $606,000.00 |
| 10743003 | 2006-QO7 | 6/29/2006 | $234,000.00 |
| 10743323 | 2006-S6 | 7/7/2006 | $576,000.00 |
| 10746845 | 2006-S6 | 6/30/2006 | $650,000.00 |
| 10749275 | 2006-QO7 | 8/23/2006 | $344,000.00 |
| 10749279 | 2006-QO8 | 7/5/2006 | $498,000.00 |
| 10749319 | 2006-S6 | 7/5/2006 | $180,000.00 |
| 10749495 | 2006-QS8 | 7/18/2006 | $129,600.00 |
| 10752019 | 2006-HI4 | 7/5/2006 | $50,000.00 |
| 10755319 | 2006-S6 | 7/13/2006 | $430,000.00 |
| 10755343 | 2006-S6 | 7/11/2006 | $541,000.00 |
| 10755359 | 2006-QS13 | 7/5/2006 | $242,400.00 |
| 10755389 | 2006-HI4 | 7/13/2006 | $35,000.00 |
| 10755539 | 2006-QS10 | 8/3/2006 | $227,154.36 |
| 10756001 | 2006-S6 | 7/7/2006 | $450,000.00 |
| 10759415 | 2006-HI4 | 7/11/2006 | $50,000.00 |
| 10759519 | 2006-QO7 | 7/6/2006 | $174,100.00 |
| 10759673 | 2006-QS8 | 7/10/2006 | $136,800.00 |
| 10759675 | 2006-S6 | 7/12/2006 | $450,000.00 |
| 10759703 | 2006-QS8 | 7/17/2006 | $300,000.00 |
| 10761817 | 2006-QO8 | 7/11/2006 | $371,000.00 |
| 10761919 | 2006-HI4 | 7/14/2006 | $40,000.00 |
| 10761949 | 2006-HSA5 | 7/17/2006 | $99,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10761971 | 2006-HI4 | 7/10/2006 | $30,000.00 |
| 10762245 | 2006-HSA5 | 7/10/2006 | $100,000.00 |
| 10762383 | 2006-S6 | 7/13/2006 | $562,000.00 |
| 10765935 | 2006-S6 | 7/12/2006 | $280,000.00 |
| 10766225 | 2006-QO8 | 7/11/2006 | $240,400.00 |
| 10766227 | 2006-QO9 | 7/10/2006 | $149,400.00 |
| 10766391 | 2006-QO7 | 7/12/2006 | $260,000.00 |
| 10766403 | 2006-QS9 | 7/13/2006 | $134,000.00 |
| 10766451 | 2006-S6 | 7/11/2006 | $477,000.00 |
| 10766471 | 2006-S6 | 7/12/2006 | $425,600.00 |
| 10766689 | 2006-HI4 | 7/19/2006 | $75,000.00 |
| 10766733 | 2006-HI4 | 8/14/2006 | $57,500.00 |
| 10766741 | 2006-HI4 | 7/13/2006 | $47,100.00 |
| 10767887 | 2006-HI4 | 7/26/2006 | $30,000.00 |
| 10767919 | 2006-QS8 | 7/14/2006 | $128,000.00 |
| 10767945 | 2006-QO7 | 7/12/2006 | $176,400.00 |
| 10767947 | 2006-HI4 | 7/13/2006 | $60,000.00 |
| 10768013 | 2006-QO7 | 7/20/2006 | $196,200.00 |
| 10768185 | 2006-HI4 | 7/13/2006 | $75,000.00 |
| 10768205 | 2006-HI4 | 7/26/2006 | $30,000.00 |
| 10768213 | 2006-HI4 | 7/14/2006 | $26,500.00 |
| 10768221 | 2006-HI4 | 7/18/2006 | $30,000.00 |
| 10768233 | 2006-QO7 | 7/13/2006 | $250,000.00 |
| 10768247 | 2006-HI4 | 7/17/2006 | $30,000.00 |
| 10768265 | 2006-HI4 | 7/13/2006 | $35,000.00 |
| 10768271 | 2006-QO7 | 7/25/2006 | $250,000.00 |
| 10768291 | 2006-HI4 | 7/11/2006 | $50,000.00 |
| 10768309 | 2006-QO7 | 7/25/2006 | $258,000.00 |
| 10768325 | 2006-QS9 | 7/12/2006 | $84,000.00 |
| 10768403 | 2006-QO7 | 7/14/2006 | $179,500.00 |
| 10768423 | 2006-QO7 | 7/12/2006 | $335,000.00 |
| 10770047 | 2006-HI4 | 7/13/2006 | $30,000.00 |
| 10770419 | 2006-S6 | 7/14/2006 | $522,400.00 |
| 10770439 | 2006-S6 | 7/18/2006 | $638,500.00 |
| 10770669 | 2006-QS11 | 7/28/2006 | $226,471.07 |
| 10774609 | 2006-HI4 | 7/13/2006 | $75,000.00 |
| 10774743 | 2006-S6 | 7/12/2006 | $525,000.00 |
| 10776541 | 2006-HI4 | 7/17/2006 | $40,000.00 |
| 10776649 | 2006-HI4 | 7/26/2006 | $60,000.00 |
| 10776731 | 2006-S6 | 7/14/2006 | $529,000.00 |
| 10776803 | 2006-S6 | 7/17/2006 | $485,000.00 |
| 10776823 | 2006-QS10 | 7/25/2006 | $96,800.00 |
| 10776825 | 2006-S6 | 7/17/2006 | $150,000.00 |
| 10776835 | 2006-S7 | 7/14/2006 | $122,000.00 |
| 10777079 | 2006-QS8 | 7/17/2006 | $252,000.00 |
| 10780923 | 2006-HI4 | 7/18/2006 | $27,000.00 |
| 10781183 | 2006-HI4 | 7/17/2006 | $70,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10781299 | 2006-QO7 | 7/25/2006 | $237,000.00 |
| 10781331 | 2006-QO7 | 7/28/2006 | $215,000.00 |
| 10781367 | 2006-QO7 | 7/28/2006 | $432,000.00 |
| 10781385 | 2006-QO7 | 8/11/2006 | $460,000.00 |
| 10781431 | 2006-S6 | 7/18/2006 | $500,000.00 |
| 10783097 | 2006-S6 | 7/18/2006 | $525,000.00 |
| 10783121 | 2006-HI4 | 7/18/2006 | $38,300.00 |
| 10783125 | 2006-S6 | 7/19/2006 | $290,000.00 |
| 10783175 | 2006-S7 | 7/28/2006 | $559,200.00 |
| 10787987 | 2006-HSA5 | 7/19/2006 | $135,000.00 |
| 10788091 | 2006-S7 | 7/21/2006 | $452,000.00 |
| 10788257 | 2006-HI4 | 7/19/2006 | $45,000.00 |
| 10788527 | 2006-QO7 | 7/25/2006 | $114,600.00 |
| 10790609 | 2006-HI4 | 7/25/2006 | $74,700.00 |
| 10790639 | 2006-HI4 | 7/26/2006 | $30,000.00 |
| 10790865 | 2006-HI4 | 7/20/2006 | $50,000.00 |
| 10791401 | 2006-S7 | 8/1/2006 | $427,000.00 |
| 10791539 | 2006-QS10 | 7/20/2006 | $129,200.00 |
| 10791655 | 2006-QO7 | 7/27/2006 | $231,000.00 |
| 10794545 | 2006-HI4 | 7/31/2006 | $30,000.00 |
| 10794613 | 2006-HI4 | 7/28/2006 | $50,000.00 |
| 10794669 | 2006-HI4 | 7/25/2006 | $66,000.00 |
| 10794725 | 2006-HI4 | 7/26/2006 | $40,000.00 |
| 10794763 | 2006-QO7 | 8/2/2006 | $240,000.00 |
| 10794845 | 2006-HSA5 | 7/28/2006 | $47,200.00 |
| 10794881 | 2006-QS11 | 8/2/2006 | $106,000.00 |
| 10795081 | 2006-HI4 | 7/28/2006 | $56,200.00 |
| 10795125 | 2006-HSA5 | 7/28/2006 | $60,000.00 |
| 10795155 | 2006-HSA5 | 7/28/2006 | $25,000.00 |
| 10795183 | 2006-HSA5 | 7/28/2006 | $130,000.00 |
| 10795227 | 2006-HSA5 | 7/28/2006 | $100,000.00 |
| 10795263 | 2006-HSA5 | 7/24/2006 | $30,000.00 |
| 10795265 | 2006-HSA5 | 7/28/2006 | $47,900.00 |
| 10795269 | 2006-HSA5 | 7/26/2006 | $27,400.00 |
| 10795287 | 2006-HSA5 | 7/24/2006 | $62,800.00 |
| 10795313 | 2006-HI4 | 7/31/2006 | $75,000.00 |
| 10795473 | 2006-HSA5 | 7/26/2006 | $21,500.00 |
| 10795903 | 2006-HSA5 | 7/26/2006 | $38,700.00 |
| 10795925 | 2006-HSA5 | 8/4/2006 | $42,000.00 |
| 10795931 | 2006-HSA5 | 7/26/2006 | $126,000.00 |
| 10795957 | 2006-HSA5 | 7/25/2006 | $35,600.00 |
| 10795991 | 2006-HSA5 | 7/24/2006 | $41,800.00 |
| 10796033 | 2006-HSA5 | 7/27/2006 | $78,400.00 |
| 10796035 | 2006-HSA5 | 7/26/2006 | $168,400.00 |
| 10796043 | 2006-HSA5 | 7/26/2006 | $44,000.00 |
| 10796045 | 2006-HSA5 | 7/28/2006 | $58,000.00 |
| 10796049 | 2006-HSA5 | 7/26/2006 | $150,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10796057 | 2006-HSA5 | 7/27/2006 | $75,000.00 |
| 10796059 | 2006-HSA5 | 7/26/2006 | $120,000.00 |
| 10796061 | 2006-HSA5 | 7/28/2006 | $157,000.00 |
| 10796071 | 2006-HSA5 | 7/25/2006 | $18,500.00 |
| 10796079 | 2006-HSA5 | 7/28/2006 | $83,000.00 |
| 10796081 | 2006-HSA5 | 7/24/2006 | $199,600.00 |
| 10796089 | 2006-HSA5 | 7/26/2006 | $49,000.00 |
| 10796099 | 2006-HSA5 | 7/25/2006 | $70,000.00 |
| 10796109 | 2006-HSA5 | 7/26/2006 | $125,000.00 |
| 10796117 | 2006-HSA5 | 8/1/2006 | $20,000.00 |
| 10796121 | 2006-HSA5 | 7/26/2006 | $62,600.00 |
| 10796123 | 2006-HSA5 | 7/28/2006 | $100,000.00 |
| 10796127 | 2006-HSA5 | 8/1/2006 | $150,000.00 |
| 10796131 | 2006-HSA5 | 8/1/2006 | $83,000.00 |
| 10796135 | 2006-HSA5 | 7/26/2006 | $71,000.00 |
| 10796137 | 2006-HSA5 | 7/25/2006 | $70,000.00 |
| 10796139 | 2006-HSA5 | 7/24/2006 | $100,000.00 |
| 10796143 | 2006-HSA5 | 7/25/2006 | $93,000.00 |
| 10796151 | 2006-HSA5 | 7/27/2006 | $43,000.00 |
| 10796153 | 2006-HSA5 | 7/26/2006 | $48,000.00 |
| 10796155 | 2006-HSA5 | 8/8/2006 | $100,000.00 |
| 10796157 | 2006-HSA5 | 8/1/2006 | $100,000.00 |
| 10796161 | 2006-HSA5 | 8/1/2006 | $36,500.00 |
| 10796163 | 2006-HSA5 | 7/25/2006 | $33,000.00 |
| 10796167 | 2006-HSA5 | 7/25/2006 | $49,000.00 |
| 10796173 | 2006-HSA5 | 7/26/2006 | $44,000.00 |
| 10797469 | 2006-HSA5 | 8/1/2006 | $200,000.00 |
| 10797471 | 2006-HSA5 | 7/25/2006 | $30,700.00 |
| 10797477 | 2006-HSA5 | 8/1/2006 | $36,500.00 |
| 10797481 | 2006-HSA5 | 8/8/2006 | $20,000.00 |
| 10797485 | 2006-HSA5 | 8/1/2006 | $141,000.00 |
| 10797503 | 2006-HSA5 | 7/24/2006 | $100,000.00 |
| 10797519 | 2006-HSA5 | 7/28/2006 | $27,000.00 |
| 10797533 | 2006-HSA5 | 7/24/2006 | $39,000.00 |
| 10797539 | 2006-HSA5 | 7/26/2006 | $30,000.00 |
| 10797577 | 2006-HSA5 | 7/28/2006 | $52,500.00 |
| 10797579 | 2006-HSA5 | 7/26/2006 | $50,000.00 |
| 10797611 | 2006-HSA5 | 7/28/2006 | $41,000.00 |
| 10797621 | 2006-HSA5 | 7/28/2006 | $111,900.00 |
| 10797677 | 2006-HSA5 | 8/1/2006 | $35,000.00 |
| 10797735 | 2006-HSA5 | 8/1/2006 | $100,000.00 |
| 10797751 | 2006-HSA5 | 8/1/2006 | $68,500.00 |
| 10797775 | 2006-QO7 | 7/25/2006 | $275,000.00 |
| 10797797 | 2006-HSA5 | 8/8/2006 | $55,000.00 |
| 10797837 | 2006-QO7 | 7/25/2006 | $525,000.00 |
| 10798011 | 2006-S7 | 7/25/2006 | $600,000.00 |
| 10798039 | 2006-HI4 | 7/31/2006 | $40,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10798063 | 2006-HI4 | 7/26/2006 | $35,000.00 |
| 10798189 | 2006-HI4 | 7/25/2006 | $33,000.00 |
| 10798215 | 2006-HI4 | 7/27/2006 | $35,000.00 |
| 10800841 | 2006-HI4 | 7/31/2006 | $60,000.00 |
| 10800869 | 2006-HSA5 | 7/31/2006 | $36,200.00 |
| 10800877 | 2006-HI4 | 8/7/2006 | $24,000.00 |
| 10800917 | 2006-HSA5 | 8/2/2006 | $75,400.00 |
| 10800921 | 2006-HSA5 | 8/1/2006 | $60,000.00 |
| 10800927 | 2006-HSA5 | 7/28/2006 | $37,800.00 |
| 10800929 | 2006-HI4 | 8/1/2006 | $61,100.00 |
| 10800937 | 2006-HSA5 | 8/2/2006 | $18,000.00 |
| 10800943 | 2006-HSA5 | 7/28/2006 | $62,000.00 |
| 10800945 | 2006-QO7 | 8/3/2006 | $325,000.00 |
| 10800953 | 2006-HI4 | 7/28/2006 | $75,000.00 |
| 10800959 | 2006-HSA5 | 8/2/2006 | $80,000.00 |
| 10801009 | 2006-HSA5 | 8/2/2006 | $22,000.00 |
| 10801017 | 2006-HSA5 | 8/2/2006 | $50,400.00 |
| 10801021 | 2006-HSA5 | 8/1/2006 | $100,000.00 |
| 10801029 | 2006-HSA5 | 7/31/2006 | $23,000.00 |
| 10801031 | 2006-HSA5 | 8/2/2006 | $39,100.00 |
| 10801053 | 2006-HSA5 | 7/31/2006 | $22,500.00 |
| 10801057 | 2006-HSA5 | 7/28/2006 | $163,000.00 |
| 10801061 | 2006-HSA5 | 7/31/2006 | $53,000.00 |
| 10801067 | 2006-HSA5 | 8/1/2006 | $40,000.00 |
| 10801079 | 2006-HSA5 | 7/28/2006 | $119,000.00 |
| 10801101 | 2006-HSA5 | 8/2/2006 | $186,500.00 |
| 10801111 | 2006-HSA5 | 7/31/2006 | $97,300.00 |
| 10801137 | 2006-HSA5 | 8/25/2006 | $54,000.00 |
| 10801649 | 2006-QS11 | 7/28/2006 | $108,800.00 |
| 10805295 | 2006-QO8 | 9/18/2006 | $391,500.00 |
| 10805309 | 2006-QO7 | 8/1/2006 | $350,000.00 |
| 10805335 | 2006-SA4 | 8/3/2006 | $425,000.00 |
| 10805359 | 2006-HI4 | 7/28/2006 | $50,000.00 |
| 10805383 | 2006-HI4 | 7/28/2006 | $50,000.00 |
| 10805425 | 2006-HI4 | 8/23/2006 | $43,000.00 |
| 10805429 | 2006-HI4 | 7/28/2006 | $75,000.00 |
| 10807097 | 2006-QO7 | 8/1/2006 | $242,500.00 |
| 10809043 | 2006-HI4 | 8/2/2006 | $30,000.00 |
| 10809065 | 2006-HI4 | 7/28/2006 | $40,000.00 |
| 10809083 | 2006-HI4 | 8/14/2006 | $38,000.00 |
| 10809221 | 2006-QO7 | 8/18/2006 | $400,000.00 |
| 10809229 | 2006-QO7 | 8/1/2006 | $159,000.00 |
| 10809313 | 2006-QO7 | 8/9/2006 | $315,000.00 |
| 10809505 | 2006-S7 | 7/31/2006 | $510,000.00 |
| 10809509 | 2006-QS10 | 7/28/2006 | $200,000.00 |
| 10812883 | 2006-QO9 | 7/28/2006 | $517,500.00 |
| 10812929 | 2006-QS10 | 7/31/2006 | $135,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10813235 | 2006-QO8 | 8/17/2006 | $204,000.00 |
| 10815371 | 2006-SA3 | 7/31/2006 | $600,000.00 |
| 10815439 | 2006-QO7 | 8/1/2006 | $160,800.00 |
| 10815587 | 2006-QO7 | 8/3/2006 | $168,000.00 |
| 10815917 | 2006-HI4 | 8/1/2006 | $25,100.00 |
| 10815933 | 2006-HI4 | 8/2/2006 | $25,100.00 |
| 10815959 | 2006-HI4 | 8/8/2006 | $11,300.00 |
| 10815969 | 2006-HI4 | 8/2/2006 | $53,000.00 |
| 10816011 | 2006-QO7 | 8/1/2006 | $303,000.00 |
| 10816015 | 2006-HI4 | 8/2/2006 | $30,000.00 |
| 10816057 | 2006-HI4 | 8/2/2006 | $70,300.00 |
| 10816059 | 2006-HI4 | 8/2/2006 | $31,000.00 |
| 10816063 | 2006-QO7 | 8/28/2006 | $316,000.00 |
| 10818079 | 2006-HI4 | 8/7/2006 | $38,500.00 |
| 10818099 | 2006-QO7 | 8/2/2006 | $252,000.00 |
| 10818115 | 2006-HI4 | 8/7/2006 | $21,500.00 |
| 10818143 | 2006-QO7 | 8/1/2006 | $588,000.00 |
| 10818145 | 2006-HI4 | 8/7/2006 | $40,500.00 |
| 10818169 | 2006-QS11 | 8/1/2006 | $100,000.00 |
| 10819937 | 2006-HI4 | 8/7/2006 | $35,000.00 |
| 10819939 | 2006-HI4 | 8/7/2006 | $50,000.00 |
| 10820003 | 2006-HI4 | 8/7/2006 | $30,000.00 |
| 10820023 | 2006-HI4 | 8/7/2006 | $60,000.00 |
| 10822365 | 2006-HI4 | 8/7/2006 | $30,000.00 |
| 10822947 | 2006-HI4 | 8/7/2006 | $25,000.00 |
| 10822969 | 2006-HI4 | 8/7/2006 | $39,200.00 |
| 10823273 | 2006-QO7 | 8/31/2006 | $575,000.00 |
| 10823301 | 2006-QO7 | 8/1/2006 | $260,000.00 |
| 10823347 | 2006-QO7 | 8/4/2006 | $380,000.00 |
| 10828041 | 2006-HSA5 | 8/11/2006 | $55,000.00 |
| 10828049 | 2006-HSA5 | 8/8/2006 | $75,000.00 |
| 10828053 | 2006-HSA5 | 8/10/2006 | $115,000.00 |
| 10828069 | 2006-HSA5 | 8/10/2006 | $155,000.00 |
| 10828073 | 2006-HSA5 | 8/4/2006 | $119,600.00 |
| 10828075 | 2006-HSA5 | 8/4/2006 | $141,000.00 |
| 10828087 | 2006-HSA5 | 8/10/2006 | $80,900.00 |
| 10828091 | 2006-HSA5 | 8/9/2006 | $50,000.00 |
| 10828093 | 2006-HSA5 | 8/7/2006 | $107,000.00 |
| 10828097 | 2006-HSA5 | 8/10/2006 | $35,000.00 |
| 10828111 | 2006-HSA5 | 8/8/2006 | $44,000.00 |
| 10828121 | 2006-HSA5 | 8/7/2006 | $65,000.00 |
| 10828123 | 2006-HSA5 | 8/7/2006 | $140,000.00 |
| 10828129 | 2006-HSA5 | 8/7/2006 | $30,000.00 |
| 10828135 | 2006-HSA5 | 8/28/2006 | $25,000.00 |
| 10828147 | 2006-HSA5 | 8/9/2006 | $15,400.00 |
| 10828183 | 2006-HSA5 | 8/2/2006 | $30,000.00 |
| 10828185 | 2006-HSA5 | 8/28/2006 | $95,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10828189 | 2006-HSA5 | 8/7/2006 | $32,000.00 |
| 10828201 | 2006-HSA5 | 8/7/2006 | $39,000.00 |
| 10828203 | 2006-HSA5 | 8/7/2006 | $109,000.00 |
| 10828209 | 2006-HSA5 | 8/9/2006 | $46,900.00 |
| 10828213 | 2006-HSA5 | 8/8/2006 | $50,000.00 |
| 10828223 | 2006-HSA5 | 8/9/2006 | $103,800.00 |
| 10828229 | 2006-HSA5 | 8/7/2006 | $138,550.00 |
| 10828239 | 2006-QS11 | 8/2/2006 | $416,000.00 |
| 10828243 | 2006-HSA5 | 8/10/2006 | $72,900.00 |
| 10828299 | 2006-HSA5 | 8/4/2006 | $45,000.00 |
| 10828301 | 2006-HSA5 | 8/7/2006 | $58,000.00 |
| 10828309 | 2006-HSA5 | 8/10/2006 | $47,000.00 |
| 10828315 | 2006-HSA5 | 8/7/2006 | $19,900.00 |
| 10828319 | 2006-HSA5 | 8/7/2006 | $100,000.00 |
| 10828325 | 2006-HSA5 | 8/8/2006 | $99,000.00 |
| 10828327 | 2006-HSA5 | 8/7/2006 | $128,000.00 |
| 10828329 | 2006-HSA5 | 8/7/2006 | $73,500.00 |
| 10828331 | 2006-HSA5 | 8/7/2006 | $10,000.00 |
| 10828333 | 2006-HSA5 | 8/9/2006 | $100,000.00 |
| 10828339 | 2006-HSA5 | 8/7/2006 | $70,600.00 |
| 10828345 | 2006-HSA5 | 8/8/2006 | $98,400.00 |
| 10828347 | 2006-HSA5 | 8/10/2006 | $44,500.00 |
| 10828361 | 2006-QO7 | 8/3/2006 | $405,000.00 |
| 10828363 | 2006-HSA5 | 8/7/2006 | $78,500.00 |
| 10828731 | 2006-HI4 | 8/8/2006 | $30,000.00 |
| 10828809 | 2006-HSA5 | 8/7/2006 | $90,000.00 |
| 10828927 | 2006-HSA5 | 8/9/2006 | $25,500.00 |
| 10828993 | 2006-QO7 | 8/11/2006 | $145,000.00 |
| 10828999 | 2006-HSA5 | 8/7/2006 | $85,000.00 |
| 10829005 | 2006-HSA5 | 8/7/2006 | $38,000.00 |
| 10829015 | 2006-HSA5 | 8/11/2006 | $18,000.00 |
| 10829037 | 2007-HSA1 | 8/2/2006 | $80,000.00 |
| 10829045 | 2006-S7 | 8/9/2006 | $580,000.00 |
| 10829143 | 2006-HSA5 | 8/7/2006 | $30,000.00 |
| 10829151 | 2006-HSA5 | 8/7/2006 | $30,000.00 |
| 10829171 | 2006-HSA5 | 8/8/2006 | $66,000.00 |
| 10829177 | 2006-QO7 | 8/10/2006 | $357,000.00 |
| 10829181 | 2006-S9 | 8/2/2006 | $575,000.00 |
| 10829211 | 2006-HSA5 | 8/7/2006 | $98,000.00 |
| 10829235 | 2006-HSA5 | 8/8/2006 | $30,000.00 |
| 10829277 | 2006-HSA5 | 8/7/2006 | $38,500.00 |
| 10829395 | 2006-HSA5 | 8/7/2006 | $67,000.00 |
| 10829423 | 2006-HSA5 | 8/10/2006 | $37,900.00 |
| 10829425 | 2006-HSA5 | 8/7/2006 | $40,000.00 |
| 10829447 | 2006-HSA5 | 8/7/2006 | $39,500.00 |
| 10829473 | 2006-HSA5 | 8/10/2006 | $30,000.00 |
| 10829537 | 2006-HSA5 | 8/10/2006 | $93,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10829545 | 2006-HSA5 | 8/10/2006 | $51,600.00 |
| 10829553 | 2006-HSA5 | 8/7/2006 | $55,000.00 |
| 10829569 | 2006-HSA5 | 8/7/2006 | $59,500.00 |
| 10829581 | 2006-HSA5 | 8/8/2006 | $83,800.00 |
| 10829593 | 2006-HSA5 | 8/7/2006 | $46,000.00 |
| 10829615 | 2006-HSA5 | 8/10/2006 | $54,600.00 |
| 10829619 | 2006-HSA5 | 8/7/2006 | $27,600.00 |
| 10829623 | 2006-HSA5 | 8/7/2006 | $35,000.00 |
| 10829631 | 2006-HSA5 | 8/8/2006 | $78,100.00 |
| 10829651 | 2007-HSA1 | 8/9/2006 | $130,600.00 |
| 10829665 | 2006-HSA5 | 8/8/2006 | $16,600.00 |
| 10829667 | 2006-HSA5 | 8/10/2006 | $93,800.00 |
| 10829691 | 2006-HSA5 | 8/7/2006 | $64,800.00 |
| 10829699 | 2006-HSA5 | 8/10/2006 | $33,900.00 |
| 10829707 | 2006-HSA5 | 8/10/2006 | $66,000.00 |
| 10829723 | 2006-HSA5 | 8/7/2006 | $140,000.00 |
| 10830975 | 2006-HSA5 | 8/10/2006 | $60,000.00 |
| 10830983 | 2006-HI4 | 8/10/2006 | $50,000.00 |
| 10831003 | 2006-HSA5 | 8/10/2006 | $21,900.00 |
| 10831041 | 2006-HSA5 | 8/10/2006 | $100,000.00 |
| 10831045 | 2006-HSA5 | 8/8/2006 | $17,500.00 |
| 10831063 | 2006-QO7 | 8/4/2006 | $256,000.00 |
| 10831081 | 2006-HSA5 | 8/10/2006 | $50,000.00 |
| 10831617 | 2006-HSA5 | 8/15/2006 | $52,400.00 |
| 10831635 | 2006-QO7 | 8/9/2006 | $119,000.00 |
| 10831637 | 2006-HSA5 | 8/16/2006 | $50,000.00 |
| 10831665 | 2006-HSA5 | 8/10/2006 | $115,000.00 |
| 10831741 | 2006-HSA5 | 8/10/2006 | $189,800.00 |
| 10831743 | 2006-HSA5 | 8/10/2006 | $30,000.00 |
| 10831755 | 2006-HSA5 | 8/10/2006 | $117,500.00 |
| 10831757 | 2006-QO7 | 8/10/2006 | $182,000.00 |
| 10831791 | 2006-HSA5 | 8/10/2006 | $77,000.00 |
| 10831801 | 2006-HI4 | 8/10/2006 | $45,000.00 |
| 10831805 | 2006-QO7 | 8/8/2006 | $356,000.00 |
| 10831835 | 2006-HSA5 | 8/9/2006 | $50,000.00 |
| 10831847 | 2006-HSA5 | 8/10/2006 | $145,000.00 |
| 10831859 | 2006-HSA5 | 8/8/2006 | $170,000.00 |
| 10831863 | 2006-HSA5 | 8/8/2006 | $25,000.00 |
| 10832059 | 2006-HI4 | 8/10/2006 | $50,000.00 |
| 10832151 | 2006-HSA5 | 8/9/2006 | $50,100.00 |
| 10832171 | 2006-HI4 | 8/9/2006 | $15,000.00 |
| 10832179 | 2006-HI4 | 8/10/2006 | $30,000.00 |
| 10832407 | 2006-QO7 | 8/4/2006 | $160,000.00 |
| 10832609 | 2006-QO7 | 8/4/2006 | $113,400.00 |
| 10836395 | 2006-QS11 | 8/9/2006 | $159,200.00 |
| 10836989 | 2006-QS11 | 8/8/2006 | $155,900.00 |
| 10837027 | 2006-QO7 | 8/8/2006 | $120,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10837059 | 2006-SA3 | 8/18/2006 | $260,000.00 |
| 10837541 | 2006-HI4 | 8/11/2006 | $35,000.00 |
| 10837543 | 2006-HI4 | 8/10/2006 | $25,000.00 |
| 10837553 | 2006-HI4 | 8/17/2006 | $42,000.00 |
| 10837555 | 2006-HI4 | 8/9/2006 | $50,000.00 |
| 10837557 | 2006-HI4 | 8/4/2006 | $32,500.00 |
| 10837567 | 2006-HI4 | 8/9/2006 | $30,000.00 |
| 10840069 | 2006-HI4 | 8/4/2006 | $30,000.00 |
| 10840815 | 2006-QO7 | 8/18/2006 | $400,000.00 |
| 10840841 | 2006-QS10 | 8/9/2006 | $170,000.00 |
| 10840857 | 2006-QO7 | 8/9/2006 | $270,000.00 |
| 10840871 | 2006-QO7 | 8/9/2006 | $355,000.00 |
| 10840923 | 2006-QO7 | 8/9/2006 | $395,250.00 |
| 10841009 | 2006-QS11 | 8/8/2006 | $333,600.00 |
| 10841043 | 2006-S7 | 8/9/2006 | $500,000.00 |
| 10841065 | 2006-QO7 | 8/8/2006 | $222,000.00 |
| 10841067 | 2006-S7 | 8/8/2006 | $493,000.00 |
| 10841221 | 2006-HI4 | 8/11/2006 | $71,000.00 |
| 10842131 | 2006-HI4 | 8/14/2006 | $48,000.00 |
| 10842139 | 2006-HI4 | 8/15/2006 | $38,200.00 |
| 10842155 | 2006-HI4 | 8/11/2006 | $50,000.00 |
| 10843533 | 2006-QO7 | 8/10/2006 | $361,000.00 |
| 10843535 | 2006-QO7 | 8/11/2006 | $541,000.00 |
| 10843555 | 2006-QO7 | 8/9/2006 | $152,000.00 |
| 10843559 | 2006-QO7 | 8/10/2006 | $118,000.00 |
| 10843593 | 2006-QO7 | 8/15/2006 | $300,000.00 |
| 10843603 | 2006-QO8 | 8/18/2006 | $440,000.00 |
| 10843625 | 2006-QO7 | 8/9/2006 | $360,000.00 |
| 10843649 | 2006-HI4 | 8/15/2006 | $29,500.00 |
| 10843727 | 2006-QO7 | 8/14/2006 | $158,400.00 |
| 10843737 | 2006-HI4 | 8/11/2006 | $37,000.00 |
| 10843753 | 2006-HI4 | 8/11/2006 | $54,300.00 |
| 10843791 | 2006-HI4 | 8/14/2006 | $35,500.00 |
| 10843813 | 2006-HI4 | 8/11/2006 | $40,000.00 |
| 10843831 | 2006-HI4 | 8/11/2006 | $36,200.00 |
| 10844109 | 2006-HI4 | 8/11/2006 | $45,000.00 |
| 10847365 | 2006-QO7 | 8/10/2006 | $194,000.00 |
| 10847401 | 2006-S9 | 8/25/2006 | $432,200.00 |
| 10847491 | 2006-QO7 | 8/10/2006 | $198,400.00 |
| 10847523 | 2006-QO7 | 8/17/2006 | $210,400.00 |
| 10847553 | 2006-QO7 | 8/11/2006 | $291,700.00 |
| 10847591 | 2006-QO7 | 8/14/2006 | $271,000.00 |
| 10847633 | 2006-QO7 | 8/14/2006 | $225,000.00 |
| 10847647 | 2006-QO7 | 8/10/2006 | $325,600.00 |
| 10847673 | 2006-QO7 | 8/10/2006 | $148,000.00 |
| 10847707 | 2006-QO7 | 8/11/2006 | $200,000.00 |
| 10847907 | 2006-QO7 | 8/18/2006 | $192,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10847937 | 2006-QO7 | 8/10/2006 | $210,000.00 |
| 10847993 | 2006-QO7 | 8/10/2006 | $256,500.00 |
| 10848989 | 2006-QA7 | 8/11/2006 | $224,200.00 |
| 10849277 | 2006-SA4 | 8/11/2006 | $152,000.00 |
| 10849603 | 2006-HI4 | 8/11/2006 | $40,000.00 |
| 10849643 | 2006-HI4 | 8/14/2006 | $45,000.00 |
| 10849661 | 2006-HI4 | 8/11/2006 | $30,000.00 |
| 10849671 | 2006-HI4 | 8/14/2006 | $42,000.00 |
| 10849681 | 2006-HI4 | 8/31/2006 | $45,000.00 |
| 10850329 | 2006-HSA5 | 8/11/2006 | $23,000.00 |
| 10850623 | 2006-S7 | 8/14/2006 | $417,100.00 |
| 10850801 | 2006-QO7 | 8/11/2006 | $335,250.00 |
| 10850857 | 2006-QO7 | 8/11/2006 | $280,000.00 |
| 10851165 | 2006-QS12 | 8/11/2006 | $120,800.00 |
| 10851205 | 2006-QS10 | 8/17/2006 | $125,932.97 |
| 10851221 | 2006-S7 | 8/15/2006 | $420,000.00 |
| 10851239 | 2006-QS10 | 8/17/2006 | $700,000.00 |
| 10852059 | 2006-HI4 | 8/11/2006 | $30,000.00 |
| 10852081 | 2006-HI4 | 8/14/2006 | $54,700.00 |
| 10852487 | 2006-HI4 | 8/15/2006 | $34,500.00 |
| 10852581 | 2006-HI4 | 8/11/2006 | $42,000.00 |
| 10855025 | 2007-QO1 | 8/15/2006 | $126,400.00 |
| 10855061 | 2006-QO7 | 8/18/2006 | $333,000.00 |
| 10855139 | 2006-QO7 | 8/14/2006 | $396,000.00 |
| 10855411 | 2006-HI4 | 8/15/2006 | $50,000.00 |
| 10855435 | 2006-HI4 | 8/15/2006 | $51,700.00 |
| 10857405 | 2006-HI4 | 8/16/2006 | $50,000.00 |
| 10857499 | 2006-S8 | 8/25/2006 | $186,000.00 |
| 10857683 | 2006-HI4 | 8/22/2006 | $75,000.00 |
| 10858559 | 2006-HI4 | 8/22/2006 | $32,000.00 |
| 10862579 | 2006-HI4 | 8/17/2006 | $75,000.00 |
| 10862599 | 2006-HI4 | 8/18/2006 | $34,500.00 |
| 10862609 | 2006-QS10 | 8/17/2006 | $275,400.33 |
| 10862653 | 2006-QO8 | 8/17/2006 | $225,500.00 |
| 10863079 | 2006-QO7 | 8/18/2006 | $163,000.00 |
| 10863601 | 2006-HSA5 | 8/23/2006 | $150,000.00 |
| 10866763 | 2006-S8 | 8/23/2006 | $491,200.00 |
| 10866773 | 2006-HI4 | 8/18/2006 | $37,200.00 |
| 10867461 | 2006-S9 | 8/25/2006 | $190,443.18 |
| 10867735 | 2006-QS12 | 8/18/2006 | $138,300.00 |
| 10868041 | 2006-QO7 | 8/18/2006 | $257,000.00 |
| 10868077 | 2006-QO7 | 8/17/2006 | $325,600.00 |
| 10868101 | 2006-QO8 | 8/18/2006 | $288,800.00 |
| 10868271 | 2006-QO7 | 8/18/2006 | $210,000.00 |
| 10869301 | 2006-HI4 | 8/23/2006 | $17,000.00 |
| 10869315 | 2006-QO9 | 8/18/2006 | $153,000.00 |
| 10871539 | 2006-HI4 | 8/21/2006 | $26,800.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10871613 | 2006-HI4 | 8/18/2006 | $24,400.00 |
| 10871947 | 2006-S9 | 8/23/2006 | $460,000.00 |
| 10871959 | 2006-S8 | 8/23/2006 | $492,000.00 |
| 10873563 | 2006-HI4 | 9/1/2006 | $33,000.00 |
| 10873569 | 2006-HI4 | 8/22/2006 | $42,200.00 |
| 10873579 | 2006-HI4 | 8/22/2006 | $29,900.00 |
| 10873681 | 2006-HI4 | 8/21/2006 | $30,000.00 |
| 10873691 | 2006-QO7 | 8/24/2006 | $220,000.00 |
| 10873751 | 2006-QO7 | 8/18/2006 | $203,000.00 |
| 10873813 | 2006-HI4 | 8/21/2006 | $39,000.00 |
| 10873829 | 2006-HI4 | 9/1/2006 | $45,000.00 |
| 10874197 | 2006-HI4 | 8/21/2006 | $60,000.00 |
| 10874217 | 2006-QO7 | 8/23/2006 | $358,000.00 |
| 10874253 | 2006-HI4 | 8/22/2006 | $40,000.00 |
| 10874259 | 2006-QO7 | 8/23/2006 | $500,000.00 |
| 10874895 | 2006-HI4 | 8/21/2006 | $43,000.00 |
| 10874913 | 2006-QO7 | 8/23/2006 | $161,800.00 |
| 10875201 | 2006-QS12 | 8/24/2006 | $167,000.00 |
| 10875231 | 2006-QO8 | 8/21/2006 | $300,000.00 |
| 10875251 | 2006-QO7 | 8/24/2006 | $133,500.00 |
| 10875261 | 2006-QO7 | 9/11/2006 | $315,000.00 |
| 10875563 | 2006-QO7 | 8/21/2006 | $284,000.00 |
| 10875585 | 2006-QO7 | 8/22/2006 | $216,000.00 |
| 10875601 | 2006-QS14 | 8/24/2006 | $152,000.00 |
| 10875603 | 2006-S8 | 8/24/2006 | $185,000.00 |
| 10876887 | 2006-QO7 | 8/24/2006 | $206,250.00 |
| 10876915 | 2006-HI4 | 8/31/2006 | $56,000.00 |
| 10878915 | 2006-HI4 | 8/24/2006 | $50,000.00 |
| 10879051 | 2006-QO7 | 8/28/2006 | $248,000.00 |
| 10879075 | 2006-QO7 | 8/24/2006 | $292,000.00 |
| 10879351 | 2006-QO7 | 8/31/2006 | $473,600.00 |
| 10881295 | 2006-S9 | 9/5/2006 | $263,900.00 |
| 10881305 | 2007-HSA1 | 8/29/2006 | $53,700.00 |
| 10881425 | 2006-HSA5 | 8/29/2006 | $100,000.00 |
| 10881427 | 2006-QS12 | 8/24/2006 | $96,000.00 |
| 10881429 | 2006-QO7 | 8/25/2006 | $160,000.00 |
| 10881449 | 2006-HSA5 | 8/30/2006 | $100,000.00 |
| 10881527 | 2006-HSA5 | 8/30/2006 | $75,000.00 |
| 10881545 | 2007-HSA1 | 8/29/2006 | $56,600.00 |
| 10881567 | 2006-HSA5 | 8/30/2006 | $55,000.00 |
| 10881581 | 2007-HSA1 | 8/29/2006 | $119,300.00 |
| 10881591 | 2007-HSA1 | 8/24/2006 | $52,000.00 |
| 10881609 | 2006-HI4 | 8/24/2006 | $42,000.00 |
| 10881621 | 2006-HI4 | 8/24/2006 | $75,000.00 |
| 10882119 | 2006-HSA5 | 8/30/2006 | $14,300.00 |
| 10882125 | 2007-HSA1 | 8/28/2006 | $66,000.00 |
| 10882127 | 2006-HSA5 | 8/30/2006 | $69,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10882161 | 2006-HSA5 | 8/30/2006 | $69,500.00 |
| 10882193 | 2006-HSA5 | 8/30/2006 | $79,000.00 |
| 10882203 | 2007-HSA1 | 8/30/2006 | $50,000.00 |
| 10882251 | 2007-HSA1 | 8/30/2006 | $55,800.00 |
| 10882265 | 2006-HI4 | 8/30/2006 | $46,500.00 |
| 10882275 | 2007-HSA1 | 9/13/2006 | $100,000.00 |
| 10882451 | 2007-HSA1 | 9/11/2006 | $11,000.00 |
| 10882483 | 2007-HSA1 | 8/31/2006 | $184,000.00 |
| 10882513 | 2006-HSA5 | 8/30/2006 | $27,500.00 |
| 10882533 | 2006-QO7 | 8/24/2006 | $270,000.00 |
| 10882605 | 2007-HSA1 | 9/1/2006 | $27,400.00 |
| 10882643 | 2006-HSA5 | 8/28/2006 | $44,000.00 |
| 10884009 | 2006-HI4 | 8/30/2006 | $35,000.00 |
| 10884013 | 2006-QO7 | 8/28/2006 | $351,000.00 |
| 10884037 | 2006-HI4 | 8/29/2006 | $75,000.00 |
| 10884047 | 2006-HSA5 | 8/30/2006 | $69,400.00 |
| 10884051 | 2006-QO7 | 8/28/2006 | $432,000.00 |
| 10884055 | 2006-QO7 | 8/28/2006 | $505,000.00 |
| 10884057 | 2006-HI4 | 8/30/2006 | $60,000.00 |
| 10884069 | 2007-HSA1 | 8/30/2006 | $68,000.00 |
| 10884079 | 2006-HI4 | 8/25/2006 | $75,000.00 |
| 10884471 | 2006-HI4 | 8/28/2006 | $47,000.00 |
| 10884473 | 2007-HSA1 | 8/30/2006 | $57,300.00 |
| 10884475 | 2006-HSA5 | 8/30/2006 | $73,000.00 |
| 10884483 | 2006-HI4 | 8/25/2006 | $30,000.00 |
| 10884493 | 2006-HI4 | 9/1/2006 | $30,000.00 |
| 10884499 | 2006-HSA5 | 8/30/2006 | $100,000.00 |
| 10884549 | 2006-HSA5 | 8/30/2006 | $60,000.00 |
| 10884565 | 2006-HI5 | 9/11/2006 | $40,400.00 |
| 10884573 | 2006-HSA5 | 8/28/2006 | $120,000.00 |
| 10884631 | 2006-S9 | 8/30/2006 | $501,300.00 |
| 10884683 | 2006-S9 | 9/1/2006 | $525,000.00 |
| 10886483 | 2006-S9 | 8/25/2006 | $508,000.00 |
| 10887229 | 2006-S9 | 8/25/2006 | $150,000.00 |
| 10889481 | 2006-HI4 | 8/31/2006 | $45,000.00 |
| 10889485 | 2006-HI4 | 8/31/2006 | $30,000.00 |
| 10889487 | 2006-S10 | 9/1/2006 | $568,800.00 |
| 10889489 | 2006-HI4 | 8/31/2006 | $63,800.00 |
| 10889497 | 2006-HI4 | 9/5/2006 | $50,000.00 |
| 10889503 | 2006-HI4 | 8/31/2006 | $57,400.00 |
| 10889505 | 2006-HI4 | 9/5/2006 | $40,000.00 |
| 10889511 | 2006-HI4 | 8/30/2006 | $62,600.00 |
| 10889519 | 2006-HI4 | 8/31/2006 | $47,400.00 |
| 10889527 | 2006-HI4 | 8/30/2006 | $58,600.00 |
| 10889535 | 2006-HI4 | 8/31/2006 | $50,000.00 |
| 10889537 | 2006-HI4 | 8/31/2006 | $39,600.00 |
| 10889539 | 2006-HI4 | 8/31/2006 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10889545 | 2006-HI4 | 8/31/2006 | $35,000.00 |
| 10889557 | 2006-HI4 | 8/30/2006 | $50,000.00 |
| 10889563 | 2006-HI4 | 8/30/2006 | $53,000.00 |
| 10889629 | 2006-HI4 | 8/30/2006 | $33,000.00 |
| 10889727 | 2007-HSA2 | 8/31/2006 | $40,000.00 |
| 10889773 | 2006-HI4 | 8/30/2006 | $25,000.00 |
| 10889849 | 2006-S10 | 8/31/2006 | $164,000.00 |
| 10890059 | 2006-QS12 | 8/31/2006 | $112,000.00 |
| 10892971 | 2006-HI4 | 8/31/2006 | $45,600.00 |
| 10892975 | 2006-HI5 | 9/25/2006 | $52,000.00 |
| 10892993 | 2006-QO7 | 8/29/2006 | $170,000.00 |
| 10893013 | 2006-QO7 | 8/29/2006 | $508,000.00 |
| 10896009 | 2007-HSA1 | 8/31/2006 | $50,000.00 |
| 10896123 | 2006-S9 | 8/31/2006 | $556,000.00 |
| 10896181 | 2006-S9 | 8/31/2006 | $430,500.00 |
| 10896363 | 2006-QO8 | 8/31/2006 | $266,000.00 |
| 10900835 | 2006-HI4 | 8/31/2006 | $67,000.00 |
| 10900855 | 2006-HI4 | 8/31/2006 | $25,000.00 |
| 10900969 | 2006-S9 | 9/1/2006 | $493,000.00 |
| 10905077 | 2006-HI5 | 10/10/2006 | $35,000.00 |
| 10906215 | 2006-HI4 | 9/5/2006 | $46,500.00 |
| 10906225 | 2006-HI4 | 8/31/2006 | $35,000.00 |
| 10906235 | 2006-HI4 | 8/31/2006 | $30,400.00 |
| 10906271 | 2006-HI4 | 8/31/2006 | $30,000.00 |
| 10906281 | 2006-HI4 | 8/31/2006 | $65,000.00 |
| 10906297 | 2006-HI4 | 8/31/2006 | $25,000.00 |
| 10906321 | 2006-QO7 | 9/1/2006 | $320,000.00 |
| 10906385 | 2006-QS14 | 9/5/2006 | $392,000.00 |
| 10906395 | 2006-QS14 | 9/8/2006 | $164,000.00 |
| 10906453 | 2006-QO7 | 9/1/2006 | $446,250.00 |
| 10908417 | 2006-HI4 | 9/1/2006 | $60,000.00 |
| 10908427 | 2006-HI4 | 9/1/2006 | $33,000.00 |
| 10908445 | 2006-HI4 | 9/5/2006 | $39,000.00 |
| 10908537 | 2006-HI5 | 9/11/2006 | $22,000.00 |
| 10908673 | 2006-QO7 | 9/5/2006 | $234,400.00 |
| 10908753 | 2006-S9 | 9/7/2006 | $447,200.00 |
| 10908813 | 2006-QO8 | 10/2/2006 | $273,000.00 |
| 10909097 | 2006-QO9 | 9/11/2006 | $203,000.00 |
| 10909439 | 2006-S10 | 9/12/2006 | $436,000.00 |
| 10909459 | 2006-S10 | 9/7/2006 | $535,000.00 |
| 10909623 | 2006-QO9 | 9/8/2006 | $241,200.00 |
| 10912135 | 2006-HI4 | 9/5/2006 | $73,500.00 |
| 10912137 | 2006-HI4 | 9/5/2006 | $49,000.00 |
| 10912177 | 2006-HI4 | 9/5/2006 | $50,000.00 |
| 10912223 | 2006-QO8 | 9/19/2006 | $224,000.00 |
| 10913229 | 2006-QO8 | 9/19/2006 | $268,000.00 |
| 10917623 | 2006-HI4 | 9/7/2006 | $43,100.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10917627 | 2006-HI4 | 9/7/2006 | $35,000.00 |
| 10917691 | 2006-HI5 | 9/20/2006 | $30,000.00 |
| 10917717 | 2006-HI4 | 9/7/2006 | $30,000.00 |
| 10917789 | 2006-HI4 | 9/7/2006 | $30,000.00 |
| 10917841 | 2006-HI4 | 9/7/2006 | $56,000.00 |
| 10917863 | 2006-QO8 | 9/7/2006 | $320,000.00 |
| 10917905 | 2006-S8 | 9/8/2006 | $417,000.00 |
| 10918029 | 2006-S8 | 9/8/2006 | $450,000.00 |
| 10918069 | 2006-QO7 | 9/12/2006 | $191,000.00 |
| 10918101 | 2006-S8 | 9/14/2006 | $431,510.38 |
| 10921385 | 2007-HSA1 | 9/21/2006 | $100,000.00 |
| 10922933 | 2006-QS18 | 9/13/2006 | $232,800.00 |
| 10922951 | 2006-S9 | 9/8/2006 | $227,000.00 |
| 10923031 | 2006-QS12 | 9/12/2006 | $147,200.00 |
| 10923045 | 2006-QS14 | 9/12/2006 | $220,000.00 |
| 10923057 | 2006-HI4 | 9/8/2006 | $60,000.00 |
| 10923065 | 2006-S8 | 9/8/2006 | $442,500.00 |
| 10923081 | 2006-HI5 | 9/11/2006 | $34,000.00 |
| 10923091 | 2006-S8 | 9/8/2006 | $486,000.00 |
| 10923095 | 2006-HI5 | 9/18/2006 | $60,000.00 |
| 10923127 | 2006-HI4 | 9/8/2006 | $50,000.00 |
| 10923141 | 2006-S8 | 9/8/2006 | $484,000.00 |
| 10923151 | 2006-HI4 | 9/8/2006 | $42,000.00 |
| 10923503 | 2006-S9 | 9/8/2006 | $484,000.00 |
| 10923663 | 2006-S10 | 9/27/2006 | $440,000.00 |
| 10926057 | 2006-QO7 | 9/11/2006 | $448,000.00 |
| 10926073 | 2006-QS12 | 9/11/2006 | $535,000.00 |
| 10926127 | 2006-HI4 | 9/8/2006 | $25,000.00 |
| 10926167 | 2006-HI5 | 9/25/2006 | $39,700.00 |
| 10926169 | 2006-HI4 | 9/8/2006 | $50,000.00 |
| 10926175 | 2006-QS15 | 9/27/2006 | $122,400.00 |
| 10926181 | 2006-HI5 | 9/12/2006 | $51,100.00 |
| 10926185 | 2006-QO7 | 9/11/2006 | $179,000.00 |
| 10926659 | 2006-QO8 | 9/12/2006 | $316,000.00 |
| 10927349 | 2006-QO8 | 9/18/2006 | $179,000.00 |
| 10927355 | 2006-HI4 | 9/8/2006 | $30,000.00 |
| 10927377 | 2006-HI4 | 9/8/2006 | $30,000.00 |
| 10927569 | 2006-QO8 | 9/14/2006 | $241,800.00 |
| 10928063 | 2006-S10 | 9/27/2006 | $625,000.00 |
| 10928081 | 2006-QS12 | 9/11/2006 | $124,000.00 |
| 10928307 | 2006-S9 | 9/11/2006 | $296,000.00 |
| 10928333 | 2006-QO8 | 9/13/2006 | $159,000.00 |
| 10930633 | 2006-HI5 | 9/28/2006 | $75,000.00 |
| 10930733 | 2006-QO8 | 9/12/2006 | $325,000.00 |
| 10930751 | 2006-QS12 | 9/12/2006 | $191,200.00 |
| 10930755 | 2006-HI5 | 9/11/2006 | $35,000.00 |
| 10930769 | 2006-QO8 | 9/15/2006 | $452,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10930777 | 2006-QO8 | 9/21/2006 | $518,000.00 |
| 10930783 | 2006-QS14 | 9/28/2006 | $125,687.86 |
| 10930807 | 2006-S8 | 9/20/2006 | $570,000.00 |
| 10930825 | 2006-HI5 | 9/11/2006 | $45,000.00 |
| 10930841 | 2006-QO8 | 9/12/2006 | $257,600.00 |
| 10931005 | 2006-QO8 | 9/21/2006 | $292,000.00 |
| 10931035 | 2006-HI5 | 9/11/2006 | $60,000.00 |
| 10931069 | 2006-S10 | 9/13/2006 | $432,000.00 |
| 10931093 | 2006-HI5 | 9/12/2006 | $60,000.00 |
| 10931097 | 2006-HI5 | 9/11/2006 | $27,000.00 |
| 10931145 | 2006-QO7 | 9/13/2006 | $280,000.00 |
| 10933817 | 2006-HI5 | 9/13/2006 | $61,000.00 |
| 10933843 | 2006-HI5 | 9/13/2006 | $75,000.00 |
| 10933923 | 2006-HI5 | 9/12/2006 | $29,700.00 |
| 10934209 | 2006-HI5 | 9/12/2006 | $60,000.00 |
| 10934251 | 2006-QO8 | 10/6/2006 | $213,500.00 |
| 10934253 | 2007-HSA1 | 9/12/2006 | $80,000.00 |
| 10934307 | 2006-HI5 | 9/12/2006 | $35,000.00 |
| 10934333 | 2006-QO7 | 9/13/2006 | $334,000.00 |
| 10934359 | 2006-S8 | 9/18/2006 | $184,000.00 |
| 10934371 | 2006-QO8 | 9/19/2006 | $148,500.00 |
| 10936035 | 2007-HSA1 | 9/15/2006 | $30,000.00 |
| 10936047 | 2007-HSA1 | 9/15/2006 | $51,000.00 |
| 10936059 | 2007-HSA1 | 9/18/2006 | $60,000.00 |
| 10936061 | 2006-QO8 | 9/15/2006 | $164,500.00 |
| 10936075 | 2007-HSA1 | 9/13/2006 | $47,800.00 |
| 10936117 | 2007-HSA1 | 9/18/2006 | $30,000.00 |
| 10936135 | 2007-HSA1 | 9/13/2006 | $50,300.00 |
| 10936147 | 2007-HSA1 | 9/13/2006 | $33,000.00 |
| 10936249 | 2007-HSA1 | 9/19/2006 | $93,000.00 |
| 10936275 | 2006-HI5 | 9/18/2006 | $30,000.00 |
| 10936317 | 2006-S8 | 9/14/2006 | $439,000.00 |
| 10936319 | 2007-HSA1 | 9/14/2006 | $63,700.00 |
| 10938697 | 2007-HSA1 | 11/21/2006 | $32,000.00 |
| 10938725 | 2007-HSA1 | 9/15/2006 | $75,000.00 |
| 10938729 | 2007-HSA1 | 9/15/2006 | $40,000.00 |
| 10938775 | 2007-HSA1 | 9/15/2006 | $54,000.00 |
| 10938891 | 2007-HSA1 | 9/13/2006 | $100,000.00 |
| 10939131 | 2006-S8 | 9/15/2006 | $558,000.00 |
| 10943009 | 2007-HSA1 | 9/18/2006 | $33,600.00 |
| 10943049 | 2007-HSA1 | 9/18/2006 | $54,000.00 |
| 10943397 | 2007-HSA1 | 9/18/2006 | $25,000.00 |
| 10943415 | 2007-HSA1 | 9/18/2006 | $62,500.00 |
| 10943791 | 2007-HSA1 | 9/19/2006 | $40,900.00 |
| 10944559 | 2006-HI5 | 9/15/2006 | $30,000.00 |
| 10944571 | 2007-HSA1 | 9/15/2006 | $110,000.00 |
| 10944581 | 2006-HI5 | 9/15/2006 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10944613 | 2006-HI5 | 9/18/2006 | $31,200.00 |
| 10944633 | 2007-HSA1 | 9/15/2006 | $100,000.00 |
| 10944667 | 2007-HSA1 | 9/15/2006 | $150,000.00 |
| 10944681 | 2007-HSA1 | 9/15/2006 | $54,000.00 |
| 10944753 | 2007-HSA1 | 9/19/2006 | $78,000.00 |
| 10944883 | 2007-HSA1 | 9/15/2006 | $112,300.00 |
| 10944903 | 2007-HSA1 | 9/18/2006 | $10,000.00 |
| 10944909 | 2007-HSA1 | 9/15/2006 | $247,000.00 |
| 10944927 | 2007-HSA1 | 9/21/2006 | $140,500.00 |
| 10944941 | 2007-HSA1 | 9/15/2006 | $27,500.00 |
| 10945023 | 2006-S8 | 9/19/2006 | $180,000.00 |
| 10945027 | 2006-QS13 | 9/19/2006 | $550,000.00 |
| 10949471 | 2006-HI5 | 9/18/2006 | $44,100.00 |
| 10949915 | 2006-QO8 | 9/25/2006 | $142,500.00 |
| 10949917 | 2006-HI5 | 9/18/2006 | $75,000.00 |
| 10950043 | 2006-SA4 | 9/20/2006 | $750,000.00 |
| 10950091 | 2007-HSA1 | 9/20/2006 | $30,000.00 |
| 10950111 | 2006-HI5 | 9/27/2006 | $30,000.00 |
| 10950131 | 2006-HI5 | 9/19/2006 | $41,600.00 |
| 10950157 | 2006-HI5 | 9/18/2006 | $30,000.00 |
| 10950307 | 2006-QO8 | 9/19/2006 | $283,000.00 |
| 10953021 | 2006-HI5 | 9/19/2006 | $51,000.00 |
| 10953025 | 2006-HI5 | 9/19/2006 | $35,000.00 |
| 10953049 | 2006-HI5 | 9/19/2006 | $50,000.00 |
| 10953069 | 2006-HI5 | 9/20/2006 | $60,000.00 |
| 10953071 | 2006-HI5 | 9/21/2006 | $35,000.00 |
| 10953117 | 2006-HI5 | 9/25/2006 | $35,000.00 |
| 10953151 | 2006-HI5 | 9/20/2006 | $30,300.00 |
| 10954051 | 2006-QO8 | 9/21/2006 | $148,000.00 |
| 10954065 | 2006-QO8 | 9/21/2006 | $600,500.00 |
| 10956059 | 2006-HI5 | 9/20/2006 | $35,000.00 |
| 10956095 | 2006-HI5 | 9/29/2006 | $25,000.00 |
| 10956113 | 2007-HSA1 | 9/21/2006 | $26,700.00 |
| 10956169 | 2006-HI5 | 9/22/2006 | $65,500.00 |
| 10956199 | 2007-HSA1 | 9/19/2006 | $12,000.00 |
| 10956381 | 2006-QO8 | 9/25/2006 | $164,000.00 |
| 10956523 | 2006-QO8 | 9/21/2006 | $161,200.00 |
| 10956633 | 2006-QO8 | 9/20/2006 | $230,000.00 |
| 10956747 | 2006-QS14 | 9/21/2006 | $107,900.00 |
| 10956931 | 2006-QO9 | 9/20/2006 | $73,500.00 |
| 10956945 | 2006-QO8 | 9/20/2006 | $260,000.00 |
| 10959013 | 2006-HI5 | 9/22/2006 | $68,500.00 |
| 10959021 | 2006-HI5 | 9/20/2006 | $32,900.00 |
| 10959031 | 2006-HI5 | 9/22/2006 | $50,000.00 |
| 10959045 | 2006-HI5 | 9/22/2006 | $55,000.00 |
| 10959053 | 2006-HI5 | 9/22/2006 | $60,000.00 |
| 10959061 | 2006-HI5 | 9/22/2006 | $50,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10959063 | 2006-HI5 | 9/20/2006 | $71,000.00 |
| 10959147 | 2006-HI5 | 9/22/2006 | $37,100.00 |
| 10959149 | 2006-QS14 | 9/29/2006 | $259,200.00 |
| 10959257 | 2006-HI5 | 9/22/2006 | $35,000.00 |
| 10959325 | 2007-HSA1 | 9/22/2006 | $40,000.00 |
| 10959345 | 2007-HSA1 | 9/22/2006 | $40,000.00 |
| 10968293 | 2007-HSA1 | 9/22/2006 | $95,000.00 |
| 10968333 | 2007-HSA1 | 9/28/2006 | $57,000.00 |
| 10968385 | 2007-HSA1 | 10/2/2006 | $60,000.00 |
| 10968487 | 2007-HSA1 | 9/22/2006 | $43,300.00 |
| 10968543 | 2006-HI5 | 9/22/2006 | $51,600.00 |
| 10968647 | 2006-HI5 | 9/27/2006 | $35,000.00 |
| 10968649 | 2007-HSA1 | 9/29/2006 | $64,700.00 |
| 10968723 | 2007-HSA1 | 10/2/2006 | $53,000.00 |
| 10969855 | 2007-HSA1 | 9/22/2006 | $30,000.00 |
| 10969969 | 2007-HSA2 | 9/28/2006 | $110,000.00 |
| 10970089 | 2007-HSA2 | 9/27/2006 | $55,500.00 |
| 10970147 | 2006-QO8 | 9/22/2006 | $288,000.00 |
| 10970923 | 2006-QO8 | 9/21/2006 | $224,000.00 |
| 10976053 | 2006-HI5 | 9/25/2006 | $25,000.00 |
| 10976057 | 2006-HI5 | 9/28/2006 | $59,000.00 |
| 10976111 | 2006-QO8 | 9/22/2006 | $242,600.00 |
| 10976119 | 2006-HI5 | 9/27/2006 | $60,000.00 |
| 10976159 | 2006-HI5 | 9/28/2006 | $30,000.00 |
| 10976171 | 2006-HI5 | 9/28/2006 | $50,000.00 |
| 10976231 | 2006-HI5 | 9/25/2006 | $37,000.00 |
| 10976247 | 2007-HSA1 | 9/29/2006 | $77,000.00 |
| 10976279 | 2006-HI5 | 9/25/2006 | $32,000.00 |
| 10976281 | 2006-HI5 | 9/28/2006 | $21,300.00 |
| 10976405 | 2006-HI5 | 9/28/2006 | $27,000.00 |
| 10976451 | 2006-HI5 | 9/25/2006 | $28,800.00 |
| 10976491 | 2006-HI5 | 9/28/2006 | $59,500.00 |
| 10976493 | 2006-HI5 | 9/28/2006 | $26,000.00 |
| 10976517 | 2006-HI5 | 9/28/2006 | $20,000.00 |
| 10976593 | 2006-HI5 | 9/28/2006 | $75,000.00 |
| 10976869 | 2007-QO1 | 9/27/2006 | $253,500.00 |
| 10976947 | 2006-QO8 | 9/29/2006 | $137,000.00 |
| 10977381 | 2006-QO8 | 9/28/2006 | $205,600.00 |
| 10978119 | 2006-HI5 | 9/28/2006 | $40,000.00 |
| 10978795 | 2006-HI5 | 9/28/2006 | $29,100.00 |
| 10978829 | 2006-QO8 | 9/28/2006 | $142,250.00 |
| 10978831 | 2006-HI5 | 9/28/2006 | $30,000.00 |
| 10978845 | 2006-S10 | 9/28/2006 | $636,000.00 |
| 10978867 | 2006-HI5 | 9/28/2006 | $75,000.00 |
| 10978889 | 2006-HI5 | 9/28/2006 | $60,000.00 |
| 10978901 | 2007-HSA1 | 9/25/2006 | $65,000.00 |
| 10978963 | 2006-HI5 | 9/28/2006 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10978975 | 2006-HI5 | 9/28/2006 | $75,000.00 |
| 10978987 | 2006-HI5 | 9/28/2006 | $31,500.00 |
| 10979007 | 2006-HI5 | 9/28/2006 | $35,000.00 |
| 10981907 | 2006-QO8 | 9/28/2006 | $178,000.00 |
| 10981927 | 2007-HSA1 | 10/2/2006 | $48,900.00 |
| 10981931 | 2006-HI5 | 9/28/2006 | $25,000.00 |
| 10981955 | 2006-HI5 | 9/29/2006 | $33,500.00 |
| 10982013 | 2007-HSA1 | 9/29/2006 | $40,000.00 |
| 10982107 | 2006-QA9 | 9/28/2006 | $195,600.00 |
| 10982425 | 2006-QO8 | 9/28/2006 | $132,000.00 |
| 10982541 | 2006-QO8 | 9/28/2006 | $415,000.00 |
| 10982777 | 2006-QO9 | 10/12/2006 | $364,000.00 |
| 10982903 | 2006-QO9 | 9/29/2006 | $471,000.00 |
| 10984005 | 2006-QA9 | 9/28/2006 | $134,400.00 |
| 10984027 | 2007-HSA1 | 10/2/2006 | $30,000.00 |
| 10984037 | 2007-HSA1 | 9/29/2006 | $59,900.00 |
| 10984041 | 2007-HSA1 | 9/29/2006 | $92,500.00 |
| 10984059 | 2007-HSA1 | 9/29/2006 | $20,000.00 |
| 10984097 | 2007-HSA1 | 9/29/2006 | $75,000.00 |
| 10984155 | 2007-HSA1 | 9/29/2006 | $95,000.00 |
| 10984189 | 2006-HI5 | 9/29/2006 | $73,100.00 |
| 10984193 | 2007-HSA1 | 9/29/2006 | $200,000.00 |
| 10984203 | 2007-HSA1 | 9/29/2006 | $100,000.00 |
| 10984207 | 2007-HSA1 | 9/29/2006 | $45,000.00 |
| 10984211 | 2007-HSA1 | 9/29/2006 | $150,000.00 |
| 10984213 | 2007-HSA1 | 9/29/2006 | $34,000.00 |
| 10984215 | 2007-HSA1 | 9/29/2006 | $28,000.00 |
| 10984219 | 2007-HSA1 | 9/29/2006 | $100,000.00 |
| 10984227 | 2006-HI5 | 10/5/2006 | $23,400.00 |
| 10984229 | 2007-HSA1 | 9/29/2006 | $41,600.00 |
| 10984237 | 2006-S10 | 10/2/2006 | $264,000.00 |
| 10984245 | 2007-HSA1 | 9/29/2006 | $44,500.00 |
| 10984249 | 2007-HSA1 | 10/2/2006 | $55,000.00 |
| 10984253 | 2006-HI5 | 10/2/2006 | $45,500.00 |
| 10984271 | 2007-HSA1 | 9/29/2006 | $60,000.00 |
| 10984277 | 2007-HSA1 | 9/29/2006 | $55,000.00 |
| 10984281 | 2007-HSA1 | 9/29/2006 | $12,800.00 |
| 10984283 | 2007-HSA1 | 9/29/2006 | $43,000.00 |
| 10984289 | 2007-HSA1 | 9/29/2006 | $56,500.00 |
| 10984291 | 2006-S10 | 9/29/2006 | $461,000.00 |
| 10984293 | 2007-HSA1 | 9/29/2006 | $59,000.00 |
| 10984307 | 2007-HSA1 | 9/29/2006 | $100,000.00 |
| 10984311 | 2007-HSA1 | 9/29/2006 | $124,000.00 |
| 10984313 | 2007-HSA1 | 9/29/2006 | $41,500.00 |
| 10984315 | 2007-HSA1 | 10/2/2006 | $100,000.00 |
| 10984323 | 2006-QS18 | 9/28/2006 | $149,500.00 |
| 10984337 | 2007-HSA1 | 9/29/2006 | $65,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10984341 | 2007-HSA1 | 10/2/2006 | $44,400.00 |
| 10984347 | 2007-HSA1 | 9/29/2006 | $48,500.00 |
| 10984357 | 2007-HSA1 | 9/29/2006 | $75,000.00 |
| 10984359 | 2007-HSA1 | 9/29/2006 | $94,000.00 |
| 10984361 | 2007-HSA1 | 9/29/2006 | $18,000.00 |
| 10984369 | 2007-HSA1 | 9/29/2006 | $43,000.00 |
| 10984375 | 2007-HSA1 | 9/29/2006 | $200,000.00 |
| 10984381 | 2007-HSA1 | 9/29/2006 | $122,000.00 |
| 10984391 | 2007-HSA1 | 9/29/2006 | $100,000.00 |
| 10984393 | 2007-HSA1 | 9/29/2006 | $25,500.00 |
| 10984399 | 2007-HSA1 | 9/29/2006 | $48,000.00 |
| 10984403 | 2007-HSA1 | 9/29/2006 | $84,000.00 |
| 10984407 | 2007-HSA1 | 9/29/2006 | $40,000.00 |
| 10984413 | 2007-HSA1 | 9/29/2006 | $68,000.00 |
| 10984417 | 2006-HI5 | 9/29/2006 | $50,000.00 |
| 10984427 | 2007-HSA1 | 9/29/2006 | $65,000.00 |
| 10984429 | 2007-HSA1 | 9/29/2006 | $43,000.00 |
| 10984435 | 2007-HSA1 | 9/29/2006 | $67,000.00 |
| 10984439 | 2007-HSA1 | 9/29/2006 | $100,000.00 |
| 10984541 | 2006-QO9 | 10/6/2006 | $100,000.00 |
| 10984565 | 2006-QO8 | 9/29/2006 | $281,000.00 |
| 10984623 | 2006-QO8 | 10/3/2006 | $587,000.00 |
| 10984695 | 2007-HSA1 | 9/29/2006 | $99,500.00 |
| 10984713 | 2007-HSA1 | 10/5/2006 | $48,000.00 |
| 10984715 | 2007-HSA1 | 9/29/2006 | $46,000.00 |
| 10984725 | 2007-HSA1 | 9/29/2006 | $110,000.00 |
| 10984733 | 2007-HSA1 | 9/29/2006 | $40,000.00 |
| 10984739 | 2007-HSA1 | 9/29/2006 | $55,000.00 |
| 10984743 | 2007-HSA1 | 10/2/2006 | $195,000.00 |
| 10984745 | 2007-HSA1 | 9/29/2006 | $45,000.00 |
| 10984747 | 2007-HSA1 | 9/29/2006 | $39,000.00 |
| 10984749 | 2007-HSA1 | 9/29/2006 | $30,000.00 |
| 10984751 | 2007-HSA1 | 10/2/2006 | $59,000.00 |
| 10984753 | 2007-HSA1 | 9/29/2006 | $140,000.00 |
| 10984759 | 2007-HSA1 | 9/29/2006 | $72,000.00 |
| 10984761 | 2007-HSA1 | 10/4/2006 | $147,000.00 |
| 10984765 | 2007-HSA1 | 9/29/2006 | $57,000.00 |
| 10984771 | 2007-HSA1 | 9/29/2006 | $68,000.00 |
| 10984777 | 2007-HSA1 | 9/29/2006 | $81,000.00 |
| 10984779 | 2007-HSA3 | 10/2/2006 | $37,000.00 |
| 10984781 | 2007-HSA1 | 9/29/2006 | $40,000.00 |
| 10984783 | 2007-HSA1 | 9/29/2006 | $52,000.00 |
| 10984789 | 2007-HSA1 | 10/2/2006 | $28,200.00 |
| 10984791 | 2007-HSA1 | 9/29/2006 | $87,500.00 |
| 10984797 | 2007-HSA1 | 9/29/2006 | $30,000.00 |
| 10984801 | 2007-HSA1 | 10/6/2006 | $55,000.00 |
| 10984807 | 2007-HSA1 | 9/29/2006 | $62,700.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10984813 | 2007-HSA1 | 9/29/2006 | $20,000.00 |
| 10984817 | 2007-HSA1 | 9/29/2006 | $75,000.00 |
| 10984819 | 2007-HSA1 | 9/29/2006 | $25,700.00 |
| 10984853 | 2007-HSA1 | 9/29/2006 | $150,000.00 |
| 10984857 | 2007-HSA1 | 10/2/2006 | $95,000.00 |
| 10984865 | 2007-HSA1 | 9/29/2006 | $23,300.00 |
| 10984883 | 2007-HSA1 | 9/29/2006 | $185,000.00 |
| 10984891 | 2007-HSA1 | 10/2/2006 | $71,300.00 |
| 10984893 | 2007-HSA1 | 10/2/2006 | $55,000.00 |
| 10984895 | 2007-HSA1 | 9/29/2006 | $40,000.00 |
| 10984897 | 2007-HSA1 | 9/29/2006 | $150,000.00 |
| 10984899 | 2007-HSA1 | 9/29/2006 | $27,000.00 |
| 10984901 | 2007-HSA1 | 9/29/2006 | $78,600.00 |
| 10984909 | 2007-HSA1 | 9/29/2006 | $75,000.00 |
| 10984911 | 2007-HSA1 | 9/29/2006 | $80,000.00 |
| 10985997 | 2006-QO9 | 10/5/2006 | $177,500.00 |
| 10986003 | 2007-SA1 | 10/2/2006 | $132,000.00 |
| 10986035 | 2007-HSA1 | 10/2/2006 | $32,500.00 |
| 10986071 | 2007-HSA1 | 10/2/2006 | $30,000.00 |
| 10986115 | 2007-HSA1 | 10/2/2006 | $30,000.00 |
| 10988309 | 2006-QO8 | 9/29/2006 | $350,400.00 |
| 10989771 | 2006-HI5 | 9/29/2006 | $30,000.00 |
| 10989773 | 2007-HSA2 | 10/12/2006 | $39,000.00 |
| 10989775 | 2006-HI5 | 10/6/2006 | $27,000.00 |
| 10989801 | 2007-HSA1 | 10/2/2006 | $20,000.00 |
| 10989809 | 2007-HSA1 | 10/12/2006 | $40,000.00 |
| 10989839 | 2007-HSA1 | 10/2/2006 | $70,000.00 |
| 10989849 | 2006-HI5 | 10/2/2006 | $30,000.00 |
| 10989867 | 2006-HI5 | 9/29/2006 | $62,000.00 |
| 10989891 | 2006-HI5 | 10/2/2006 | $33,000.00 |
| 10989895 | 2006-HI5 | 10/2/2006 | $35,000.00 |
| 10989913 | 2006-HI5 | 10/2/2006 | $40,000.00 |
| 10989965 | 2006-HI5 | 10/2/2006 | $35,000.00 |
| 10990117 | 2006-S10 | 10/2/2006 | $700,500.00 |
| 10990145 | 2007-HSA1 | 10/19/2006 | $42,000.00 |
| 10990199 | 2006-QO10 | 11/9/2006 | $314,000.00 |
| 10992673 | 2006-HI5 | 10/2/2006 | $75,000.00 |
| 10992865 | 2007-HSA1 | 10/2/2006 | $32,500.00 |
| 10992935 | 2006-HI5 | 10/2/2006 | $64,200.00 |
| 10992991 | 2006-HI5 | 10/2/2006 | $29,900.00 |
| 10993489 | 2006-QO8 | 10/3/2006 | $154,400.00 |
| 10996271 | 2007-HSA1 | 10/13/2006 | $105,000.00 |
| 10999399 | 2006-HI5 | 10/3/2006 | $53,000.00 |
| 10999401 | 2006-HI5 | 10/4/2006 | $48,600.00 |
| 10999411 | 2007-HSA1 | 10/4/2006 | $65,000.00 |
| 10999413 | 2006-QO8 | 10/10/2006 | $235,000.00 |
| 10999425 | 2007-HSA1 | 10/4/2006 | $78,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 10999435 | 2007-HSA1 | 10/3/2006 | $30,000.00 |
| 10999453 | 2007-HSA1 | 10/4/2006 | $73,500.00 |
| 10999457 | 2006-HI5 | 10/10/2006 | $30,000.00 |
| 10999465 | 2006-HI5 | 10/4/2006 | $35,000.00 |
| 10999467 | 2007-HSA1 | 10/4/2006 | $93,000.00 |
| 10999469 | 2006-QO8 | 10/11/2006 | $131,500.00 |
| 10999477 | 2006-HI5 | 10/4/2006 | $35,000.00 |
| 10999479 | 2006-QO8 | 10/11/2006 | $184,000.00 |
| 10999485 | 2006-HI5 | 10/4/2006 | $42,500.00 |
| 10999495 | 2007-HSA1 | 10/4/2006 | $70,000.00 |
| 10999507 | 2007-HSA1 | 10/4/2006 | $84,600.00 |
| 10999555 | 2006-QO8 | 10/6/2006 | $182,500.00 |
| 10999615 | 2007-HSA1 | 10/3/2006 | $60,000.00 |
| 11000253 | 2007-HSA1 | 10/3/2006 | $75,000.00 |
| 11002757 | 2006-S10 | 10/5/2006 | $430,000.00 |
| 11002761 | 2006-HI5 | 10/4/2006 | $50,000.00 |
| 11002769 | 2006-HI5 | 10/6/2006 | $50,000.00 |
| 11002791 | 2006-QO8 | 10/5/2006 | $500,000.00 |
| 11002825 | 2007-HSA1 | 10/4/2006 | $23,800.00 |
| 11002827 | 2006-HI5 | 10/3/2006 | $30,000.00 |
| 11002837 | 2006-HI5 | 10/12/2006 | $32,500.00 |
| 11002839 | 2006-HI5 | 10/4/2006 | $49,500.00 |
| 11003025 | 2006-QO10 | 10/11/2006 | $213,000.00 |
| 11003053 | 2006-S10 | 10/5/2006 | $274,400.00 |
| 11003073 | 2006-S10 | 10/11/2006 | $432,000.00 |
| 11003109 | 2006-QO8 | 10/11/2006 | $166,000.00 |
| 11008913 | 2007-HSA1 | 10/6/2006 | $78,000.00 |
| 11008983 | 2006-HI5 | 10/12/2006 | $48,500.00 |
| 11008989 | 2006-HI5 | 10/6/2006 | $60,000.00 |
| 11008991 | 2007-HSA1 | 10/10/2006 | $25,000.00 |
| 11008997 | 2007-HSA1 | 10/6/2006 | $49,000.00 |
| 11009005 | 2007-HSA1 | 10/6/2006 | $60,000.00 |
| 11009019 | 2007-HSA1 | 10/10/2006 | $72,700.00 |
| 11009021 | 2007-HSA1 | 10/6/2006 | $30,300.00 |
| 11009025 | 2007-HSA1 | 10/10/2006 | $30,000.00 |
| 11009043 | 2006-QO8 | 10/6/2006 | $292,000.00 |
| 11009047 | 2007-HSA1 | 10/10/2006 | $29,900.00 |
| 11009051 | 2007-HSA1 | 10/6/2006 | $68,000.00 |
| 11009069 | 2007-HSA1 | 10/5/2006 | $61,300.00 |
| 11009071 | 2007-HSA1 | 10/10/2006 | $37,200.00 |
| 11009075 | 2007-HSA1 | 10/5/2006 | $64,000.00 |
| 11009077 | 2007-HSA1 | 10/6/2006 | $35,500.00 |
| 11009105 | 2007-HSA1 | 10/10/2006 | $70,000.00 |
| 11009111 | 2007-HSA1 | 10/10/2006 | $25,000.00 |
| 11009125 | 2007-HSA1 | 10/10/2006 | $95,000.00 |
| 11009127 | 2007-HSA1 | 10/10/2006 | $80,000.00 |
| 11009135 | 2006-S10 | 10/6/2006 | $500,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11009139 | 2007-HSA1 | 10/6/2006 | $87,500.00 |
| 11009153 | 2007-HSA1 | 10/6/2006 | $48,500.00 |
| 11009167 | 2007-HSA1 | 10/10/2006 | $50,000.00 |
| 11009171 | 2007-HSA1 | 10/5/2006 | $36,000.00 |
| 11009175 | 2007-HSA1 | 10/4/2006 | $100,000.00 |
| 11009181 | 2006-HI5 | 10/6/2006 | $30,000.00 |
| 11009183 | 2006-HI5 | 10/6/2006 | $30,000.00 |
| 11009187 | 2007-HSA1 | 10/10/2006 | $38,000.00 |
| 11009191 | 2007-HSA1 | 10/10/2006 | $127,000.00 |
| 11009201 | 2007-HSA1 | 10/10/2006 | $150,000.00 |
| 11009203 | 2007-HSA1 | 10/6/2006 | $35,000.00 |
| 11009215 | 2007-HSA1 | 10/10/2006 | $60,000.00 |
| 11009245 | 2007-HSA1 | 10/6/2006 | $50,000.00 |
| 11009285 | 2007-HSA1 | 10/6/2006 | $41,000.00 |
| 11009299 | 2007-HSA1 | 10/12/2006 | $38,000.00 |
| 11009631 | 2007-HSA1 | 10/5/2006 | $80,000.00 |
| 11009659 | 2006-S10 | 10/6/2006 | $649,900.00 |
| 11009677 | 2006-QO9 | 10/10/2006 | $245,700.00 |
| 11013341 | 2007-HSA1 | 10/11/2006 | $200,000.00 |
| 11013437 | 2007-HSA1 | 10/11/2006 | $30,000.00 |
| 11013457 | 2007-HSA1 | 10/11/2006 | $49,000.00 |
| 11013465 | 2007-HSA1 | 10/11/2006 | $95,000.00 |
| 11013481 | 2007-HSA1 | 10/10/2006 | $70,000.00 |
| 11013515 | 2007-HSA1 | 10/10/2006 | $40,000.00 |
| 11013543 | 2006-QO8 | 10/6/2006 | $389,000.00 |
| 11013553 | 2007-HSA1 | 10/10/2006 | $58,500.00 |
| 11013563 | 2007-HSA1 | 10/10/2006 | $90,000.00 |
| 11013565 | 2006-QO8 | 10/6/2006 | $268,000.00 |
| 11013583 | 2007-HSA1 | 10/10/2006 | $26,000.00 |
| 11013591 | 2007-HSA1 | 10/10/2006 | $70,600.00 |
| 11013603 | 2007-HSA1 | 10/11/2006 | $156,500.00 |
| 11013605 | 2007-HSA1 | 10/10/2006 | $181,000.00 |
| 11013609 | 2006-HI5 | 10/11/2006 | $31,000.00 |
| 11013633 | 2007-HSA1 | 10/11/2006 | $40,000.00 |
| 11013637 | 2006-HI5 | 10/12/2006 | $50,000.00 |
| 11013641 | 2007-HSA1 | 10/10/2006 | $95,000.00 |
| 11013649 | 2007-HSA1 | 10/10/2006 | $100,000.00 |
| 11013661 | 2006-HI5 | 10/12/2006 | $49,500.00 |
| 11013675 | 2006-HI5 | 10/10/2006 | $40,000.00 |
| 11013679 | 2007-HSA1 | 10/13/2006 | $20,000.00 |
| 11013693 | 2006-HI5 | 10/10/2006 | $25,000.00 |
| 11013715 | 2007-HSA1 | 10/10/2006 | $54,400.00 |
| 11013735 | 2007-HSA1 | 10/10/2006 | $55,000.00 |
| 11013739 | 2007-HSA1 | 10/10/2006 | $35,000.00 |
| 11013773 | 2007-HSA1 | 10/10/2006 | $70,000.00 |
| 11013793 | 2007-HSA1 | 10/10/2006 | $95,700.00 |
| 11013795 | 2007-HSA1 | 10/10/2006 | $81,200.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11013823 | 2007-HSA1 | 10/11/2006 | $77,000.00 |
| 11013827 | 2007-HSA1 | 10/11/2006 | $100,000.00 |
| 11013839 | 2007-HSA1 | 10/10/2006 | $46,500.00 |
| 11013845 | 2007-HSA1 | 10/10/2006 | $52,000.00 |
| 11013857 | 2006-HI5 | 10/10/2006 | $30,000.00 |
| 11013861 | 2007-HSA1 | 10/11/2006 | $30,000.00 |
| 11013937 | 2006-QO8 | 10/6/2006 | $175,000.00 |
| 11013957 | 2006-HI5 | 10/10/2006 | $40,000.00 |
| 11013979 | 2006-QO9 | 10/26/2006 | $235,900.00 |
| 11014109 | 2006-S11 | 10/6/2006 | $425,000.00 |
| 11021175 | 2007-HSA1 | 10/10/2006 | $81,500.00 |
| 11021189 | 2007-HSA1 | 10/11/2006 | $31,500.00 |
| 11021207 | 2007-HSA2 | 10/11/2006 | $33,000.00 |
| 11021211 | 2007-HSA1 | 10/12/2006 | $37,600.00 |
| 11021223 | 2007-HSA1 | 10/11/2006 | $100,000.00 |
| 11021225 | 2007-HSA1 | 10/11/2006 | $64,000.00 |
| 11021235 | 2007-HSA1 | 10/10/2006 | $126,000.00 |
| 11021243 | 2006-HI5 | 10/12/2006 | $28,100.00 |
| 11021249 | 2007-HSA1 | 10/11/2006 | $100,000.00 |
| 11021253 | 2006-HI5 | 10/11/2006 | $30,000.00 |
| 11021267 | 2007-HSA1 | 10/10/2006 | $100,000.00 |
| 11021279 | 2007-HSA1 | 10/18/2006 | $30,000.00 |
| 11021287 | 2006-HI5 | 10/12/2006 | $30,000.00 |
| 11021297 | 2006-HI5 | 10/11/2006 | $29,000.00 |
| 11021305 | 2006-HI5 | 10/12/2006 | $25,000.00 |
| 11021311 | 2007-HSA1 | 10/12/2006 | $49,000.00 |
| 11021319 | 2006-HI5 | 10/11/2006 | $27,100.00 |
| 11021327 | 2007-HSA1 | 10/12/2006 | $64,000.00 |
| 11021335 | 2006-HI5 | 10/12/2006 | $70,000.00 |
| 11021363 | 2007-HSA1 | 10/12/2006 | $33,000.00 |
| 11021379 | 2007-QO2 | 10/24/2006 | $369,600.00 |
| 11021381 | 2006-HI5 | 10/5/2006 | $42,000.00 |
| 11021393 | 2007-HSA1 | 10/12/2006 | $150,000.00 |
| 11021409 | 2006-S10 | 10/16/2006 | $212,000.00 |
| 11021415 | 2006-HI5 | 10/13/2006 | $58,000.00 |
| 11021427 | 2006-QO8 | 10/11/2006 | $100,000.00 |
| 11021435 | 2007-HSA1 | 10/10/2006 | $22,800.00 |
| 11022879 | 2007-HSA1 | 11/8/2006 | $29,000.00 |
| 11024691 | 2006-HI5 | 10/11/2006 | $35,000.00 |
| 11024701 | 2007-HSA1 | 10/11/2006 | $64,300.00 |
| 11024709 | 2006-QO8 | 10/10/2006 | $600,000.00 |
| 11024717 | 2007-HSA1 | 10/12/2006 | $55,000.00 |
| 11024731 | 2007-HSA1 | 10/11/2006 | $63,300.00 |
| 11024741 | 2007-HSA1 | 10/13/2006 | $60,000.00 |
| 11025013 | 2007-HSA1 | 10/13/2006 | $22,800.00 |
| 11025019 | 2007-HSA1 | 10/11/2006 | $45,300.00 |
| 11025025 | 2007-HSA1 | 10/11/2006 | $150,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11025027 | 2006-S10 | 10/12/2006 | $475,000.00 |
| 11025029 | 2007-HSA1 | 10/12/2006 | $105,000.00 |
| 11025039 | 2007-HSA1 | 10/12/2006 | $75,000.00 |
| 11025053 | 2007-HSA1 | 10/12/2006 | $25,000.00 |
| 11025057 | 2007-HSA1 | 10/12/2006 | $73,900.00 |
| 11025061 | 2007-HSA1 | 10/13/2006 | $40,000.00 |
| 11025069 | 2007-HSA1 | 10/13/2006 | $85,000.00 |
| 11025073 | 2007-HSA1 | 10/12/2006 | $30,000.00 |
| 11025079 | 2007-HSA1 | 10/12/2006 | $150,000.00 |
| 11025089 | 2007-HSA1 | 10/12/2006 | $40,000.00 |
| 11025095 | 2007-HSA1 | 10/12/2006 | $93,000.00 |
| 11025097 | 2007-HSA1 | 10/13/2006 | $50,000.00 |
| 11025099 | 2007-HSA1 | 10/12/2006 | $31,000.00 |
| 11025103 | 2007-HSA1 | 10/13/2006 | $39,800.00 |
| 11025111 | 2007-HSA1 | 10/17/2006 | $40,000.00 |
| 11025123 | 2007-HSA1 | 10/12/2006 | $17,250.00 |
| 11025125 | 2007-HSA1 | 10/13/2006 | $57,000.00 |
| 11025129 | 2007-HSA1 | 10/12/2006 | $56,000.00 |
| 11025131 | 2007-HSA1 | 10/16/2006 | $83,000.00 |
| 11025141 | 2007-HSA1 | 10/12/2006 | $32,100.00 |
| 11025145 | 2007-HSA1 | 10/12/2006 | $48,800.00 |
| 11025149 | 2007-HSA1 | 10/12/2006 | $92,000.00 |
| 11025167 | 2007-HSA1 | 10/12/2006 | $40,000.00 |
| 11025171 | 2007-HSA1 | 10/12/2006 | $55,500.00 |
| 11025175 | 2007-HSA1 | 10/20/2006 | $78,950.00 |
| 11025181 | 2007-HSA1 | 10/12/2006 | $45,000.00 |
| 11025239 | 2007-HSA1 | 10/12/2006 | $100,000.00 |
| 11025379 | 2007-HSA1 | 10/12/2006 | $105,000.00 |
| 11025389 | 2007-HSA1 | 10/12/2006 | $150,000.00 |
| 11025401 | 2006-HI5 | 10/11/2006 | $42,000.00 |
| 11025413 | 2007-HSA1 | 10/12/2006 | $80,000.00 |
| 11025419 | 2007-HSA1 | 10/12/2006 | $34,800.00 |
| 11025469 | 2007-HSA1 | 10/12/2006 | $45,000.00 |
| 11025503 | 2007-HSA1 | 10/13/2006 | $43,600.00 |
| 11025563 | 2007-HSA1 | 10/12/2006 | $100,000.00 |
| 11025605 | 2006-QO9 | 10/13/2006 | $430,000.00 |
| 11025633 | 2006-QO9 | 10/16/2006 | $155,000.00 |
| 11025859 | 2006-S10 | 10/12/2006 | $485,000.00 |
| 11028511 | 2006-QS15 | 10/12/2006 | $112,000.00 |
| 11028545 | 2007-HSA1 | 10/13/2006 | $18,000.00 |
| 11028553 | 2006-HI5 | 10/13/2006 | $38,000.00 |
| 11028555 | 2007-HSA1 | 10/13/2006 | $97,300.00 |
| 11028565 | 2007-HSA1 | 10/13/2006 | $35,300.00 |
| 11028581 | 2007-HSA1 | 10/13/2006 | $51,500.00 |
| 11028839 | 2007-HSA1 | 10/13/2006 | $60,000.00 |
| 11028949 | 2007-HSA1 | 10/13/2006 | $50,000.00 |
| 11029065 | 2007-HSA1 | 10/13/2006 | $40,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11029083 | 2007-HSA1 | 10/13/2006 | $31,500.00 |
| 11029195 | 2006-HI5 | 10/13/2006 | $16,200.00 |
| 11029583 | 2007-HSA1 | 10/13/2006 | $48,500.00 |
| 11030337 | 2007-HSA1 | 10/13/2006 | $44,000.00 |
| 11030353 | 2007-HSA1 | 10/13/2006 | $18,000.00 |
| 11030357 | 2007-HSA1 | 10/13/2006 | $18,600.00 |
| 11030361 | 2007-HSA1 | 10/17/2006 | $24,600.00 |
| 11030373 | 2007-HSA1 | 10/13/2006 | $61,800.00 |
| 11030381 | 2007-HSA1 | 10/13/2006 | $142,000.00 |
| 11030385 | 2007-HSA1 | 10/13/2006 | $49,000.00 |
| 11030387 | 2007-HSA1 | 10/13/2006 | $33,000.00 |
| 11030391 | 2007-HSA1 | 10/13/2006 | $57,900.00 |
| 11030405 | 2007-HSA1 | 10/13/2006 | $44,000.00 |
| 11030423 | 2007-HSA1 | 10/13/2006 | $35,000.00 |
| 11030425 | 2007-HSA1 | 10/13/2006 | $22,000.00 |
| 11030435 | 2007-HSA1 | 10/13/2006 | $60,000.00 |
| 11030445 | 2007-HSA1 | 10/13/2006 | $60,000.00 |
| 11030447 | 2007-HSA1 | 10/13/2006 | $60,000.00 |
| 11030469 | 2007-HSA1 | 10/13/2006 | $50,000.00 |
| 11030471 | 2007-HSA1 | 10/13/2006 | $27,000.00 |
| 11030517 | 2007-HSA1 | 10/13/2006 | $30,000.00 |
| 11030523 | 2006-HI5 | 10/13/2006 | $75,000.00 |
| 11030537 | 2007-HSA1 | 10/13/2006 | $44,000.00 |
| 11030559 | 2007-HSA1 | 10/13/2006 | $167,700.00 |
| 11030563 | 2006-HI5 | 10/13/2006 | $66,500.00 |
| 11030663 | 2007-HSA1 | 10/13/2006 | $45,000.00 |
| 11030699 | 2007-HSA1 | 10/13/2006 | $26,500.00 |
| 11030829 | 2007-HSA1 | 10/13/2006 | $90,000.00 |
| 11030881 | 2006-S10 | 10/12/2006 | $204,000.00 |
| 11030917 | 2006-S10 | 10/12/2006 | $650,000.00 |
| 11030947 | 2006-QO9 | 10/12/2006 | $300,000.00 |
| 11031045 | 2006-QS15 | 10/12/2006 | $166,400.00 |
| 11032743 | 2007-HSA1 | 10/16/2006 | $40,000.00 |
| 11032759 | 2007-HSA1 | 10/16/2006 | $66,000.00 |
| 11032779 | 2007-HSA1 | 10/19/2006 | $47,000.00 |
| 11032787 | 2007-HSA1 | 10/16/2006 | $26,500.00 |
| 11032805 | 2007-HSA1 | 10/18/2006 | $75,700.00 |
| 11032827 | 2007-HSA1 | 10/16/2006 | $200,000.00 |
| 11032855 | 2007-HSA1 | 10/17/2006 | $40,000.00 |
| 11032859 | 2007-HSA1 | 10/16/2006 | $50,300.00 |
| 11032861 | 2007-HSA1 | 10/16/2006 | $90,100.00 |
| 11032873 | 2006-S10 | 10/12/2006 | $420,000.00 |
| 11032885 | 2007-HSA1 | 10/16/2006 | $19,000.00 |
| 11032903 | 2007-HSA1 | 10/16/2006 | $141,700.00 |
| 11032909 | 2007-HSA1 | 10/16/2006 | $23,500.00 |
| 11032925 | 2006-S10 | 10/16/2006 | $600,000.00 |
| 11032929 | 2007-HSA1 | 10/16/2006 | $144,900.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|-------------|----------------|---------------------|------------------|
| 11032933 | 2007-HSA1 | 10/16/2006 | $30,000.00 |
| 11032971 | 2006-HI5 | 10/16/2006 | $54,900.00 |
| 11033019 | 2007-HSA1 | 10/16/2006 | $23,000.00 |
| 11033123 | 2007-HSA1 | 10/17/2006 | $85,000.00 |
| 11033135 | 2007-HSA1 | 10/16/2006 | $30,400.00 |
| 11033147 | 2007-HSA1 | 10/16/2006 | $59,600.00 |
| 11033181 | 2007-HSA1 | 10/16/2006 | $19,000.00 |
| 11033317 | 2007-HSA1 | 10/16/2006 | $150,000.00 |
| 11033345 | 2007-HSA1 | 10/16/2006 | $51,000.00 |
| 11033413 | 2007-HSA1 | 10/16/2006 | $75,000.00 |
| 11033707 | 2007-SP3 | 10/25/2006 | $161,000.00 |
| 11033749 | 2006-QO9 | 10/16/2006 | $171,000.00 |
| 11035105 | 2006-QS16 | 10/20/2006 | $235,200.00 |
| 11035221 | 2006-RZ5 | 10/18/2006 | $242,000.00 |
| 11035241 | 2007-HSA1 | 10/16/2006 | $63,000.00 |
| 11035299 | 2007-HSA1 | 10/16/2006 | $16,500.00 |
| 11035323 | 2006-QS15 | 10/17/2006 | $198,000.00 |
| 11035327 | 2006-QO10 | 11/8/2006 | $326,400.00 |
| 11035333 | 2007-HSA1 | 10/16/2006 | $46,500.00 |
| 11035353 | 2006-S12 | 10/17/2006 | $305,000.00 |
| 11035373 | 2006-QS15 | 10/16/2006 | $181,800.00 |
| 11035375 | 2006-HI5 | 10/16/2006 | $25,000.00 |
| 11035387 | 2006-QS16 | 10/23/2006 | $148,800.00 |
| 11035401 | 2006-QO9 | 10/18/2006 | $167,000.00 |
| 11035513 | 2007-HSA1 | 10/16/2006 | $68,000.00 |
| 11035529 | 2007-HSA1 | 10/16/2006 | $67,000.00 |
| 11035539 | 2007-HSA1 | 10/16/2006 | $125,000.00 |
| 11035563 | 2007-HSA1 | 10/16/2006 | $47,000.00 |
| 11035579 | 2007-HSA1 | 10/16/2006 | $100,000.00 |
| 11035737 | 2006-HI5 | 10/16/2006 | $42,000.00 |
| 11035753 | 2007-HSA1 | 10/16/2006 | $89,500.00 |
| 11035787 | 2007-HSA1 | 10/16/2006 | $50,500.00 |
| 11035815 | 2007-QA1 | 10/16/2006 | $336,000.00 |
| 11038911 | 2007-HSA1 | 11/2/2006 | $45,000.00 |
| 11038993 | 2007-HSA1 | 10/17/2006 | $12,300.00 |
| 11039949 | 2007-HSA1 | 10/17/2006 | $22,900.00 |
| 11040039 | 2007-HSA1 | 10/17/2006 | $42,600.00 |
| 11040095 | 2007-HSA1 | 10/17/2006 | $36,000.00 |
| 11040109 | 2006-S10 | 10/17/2006 | $500,000.00 |
| 11040157 | 2006-QO9 | 10/19/2006 | $264,000.00 |
| 11042151 | 2007-HSA2 | 11/6/2006 | $97,000.00 |
| 11042155 | 2007-HSA1 | 11/16/2006 | $28,500.00 |
| 11042335 | 2006-QO9 | 10/18/2006 | $125,600.00 |
| 11044471 | 2007-HSA1 | 11/22/2006 | $50,000.00 |
| 11046829 | 2006-HI5 | 10/19/2006 | $75,000.00 |
| 11047299 | 2007-HSA1 | 10/18/2006 | $20,000.00 |
| 11047301 | 2007-HSA1 | 10/19/2006 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11047305 | 2007-HSA1 | 10/19/2006 | $26,000.00 |
| 11047307 | 2006-HI5 | 10/19/2006 | $35,000.00 |
| 11047311 | 2006-HI5 | 10/19/2006 | $60,000.00 |
| 11047323 | 2007-HSA1 | 10/19/2006 | $39,500.00 |
| 11047325 | 2007-HSA1 | 10/20/2006 | $12,500.00 |
| 11047351 | 2007-HSA1 | 10/19/2006 | $75,000.00 |
| 11047353 | 2007-HSA1 | 10/18/2006 | $38,000.00 |
| 11047365 | 2006-HI5 | 10/19/2006 | $30,000.00 |
| 11047373 | 2007-HSA1 | 10/19/2006 | $16,000.00 |
| 11047383 | 2007-HSA1 | 10/19/2006 | $73,000.00 |
| 11047385 | 2007-HSA1 | 10/18/2006 | $100,000.00 |
| 11047389 | 2007-HSA1 | 10/19/2006 | $45,700.00 |
| 11047391 | 2007-HSA1 | 10/18/2006 | $50,500.00 |
| 11047401 | 2007-HSA1 | 10/19/2006 | $82,500.00 |
| 11047405 | 2007-HSA1 | 10/19/2006 | $44,000.00 |
| 11047407 | 2007-HSA1 | 10/19/2006 | $79,000.00 |
| 11047415 | 2006-HI5 | 10/19/2006 | $50,000.00 |
| 11047417 | 2007-HSA1 | 10/18/2006 | $28,300.00 |
| 11047425 | 2007-HSA1 | 10/19/2006 | $46,600.00 |
| 11047657 | 2007-HSA1 | 10/19/2006 | $100,000.00 |
| 11047681 | 2006-QO10 | 11/20/2006 | $215,200.00 |
| 11047713 | 2007-HSA1 | 10/19/2006 | $79,000.00 |
| 11047765 | 2006-QO9 | 10/20/2006 | $244,800.00 |
| 11047955 | 2006-QO9 | 10/20/2006 | $426,300.00 |
| 11047975 | 2006-QO9 | 10/20/2006 | $260,800.00 |
| 11048445 | 2006-S11 | 10/23/2006 | $480,000.00 |
| 11048591 | 2006-QO9 | 10/23/2006 | $162,000.00 |
| 11048611 | 2006-QO9 | 10/20/2006 | $248,000.00 |
| 11049983 | 2007-HSA1 | 10/23/2006 | $30,000.00 |
| 11050011 | 2006-HI5 | 10/20/2006 | $42,650.00 |
| 11050017 | 2007-HSA1 | 10/23/2006 | $50,000.00 |
| 11050039 | 2007-HSA1 | 10/20/2006 | $100,000.00 |
| 11050051 | 2007-HSA1 | 10/20/2006 | $27,000.00 |
| 11050059 | 2007-HSA1 | 10/23/2006 | $80,000.00 |
| 11050071 | 2007-HSA1 | 10/20/2006 | $200,000.00 |
| 11050101 | 2006-HI5 | 10/19/2006 | $20,500.00 |
| 11050111 | 2006-HI5 | 10/23/2006 | $51,500.00 |
| 11050113 | 2007-HSA1 | 10/20/2006 | $26,000.00 |
| 11050133 | 2007-HSA1 | 10/23/2006 | $15,400.00 |
| 11050139 | 2007-HSA1 | 10/23/2006 | $53,000.00 |
| 11050141 | 2007-HSA1 | 10/19/2006 | $30,000.00 |
| 11050149 | 2007-HSA1 | 10/23/2006 | $100,000.00 |
| 11050163 | 2007-HSA1 | 10/23/2006 | $50,000.00 |
| 11050199 | 2007-HSA1 | 10/23/2006 | $40,000.00 |
| 11050265 | 2007-HSA1 | 10/20/2006 | $63,000.00 |
| 11050281 | 2006-HI5 | 10/20/2006 | $30,000.00 |
| 11050389 | 2006-QO9 | 10/23/2006 | $172,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11050393 | 2007-HSA1 | 10/23/2006 | $21,700.00 |
| 11050453 | 2007-HSA1 | 10/23/2006 | $55,000.00 |
| 11050459 | 2007-HSA1 | 10/23/2006 | $100,000.00 |
| 11050485 | 2007-HSA1 | 10/23/2006 | $49,000.00 |
| 11050493 | 2006-HI5 | 10/23/2006 | $25,000.00 |
| 11050499 | 2007-HSA1 | 10/23/2006 | $55,000.00 |
| 11050509 | 2007-HSA1 | 10/20/2006 | $150,000.00 |
| 11050521 | 2007-HSA1 | 10/23/2006 | $97,900.00 |
| 11050523 | 2007-HSA1 | 10/23/2006 | $55,000.00 |
| 11050531 | 2007-HSA1 | 10/23/2006 | $135,000.00 |
| 11050533 | 2006-QO9 | 10/20/2006 | $351,000.00 |
| 11050539 | 2007-HSA1 | 10/23/2006 | $15,700.00 |
| 11050561 | 2007-HSA1 | 10/20/2006 | $54,000.00 |
| 11050583 | 2007-HSA1 | 10/23/2006 | $30,000.00 |
| 11050593 | 2007-HSA1 | 10/20/2006 | $63,000.00 |
| 11050599 | 2007-HSA1 | 10/23/2006 | $100,000.00 |
| 11050607 | 2007-HSA1 | 10/20/2006 | $57,500.00 |
| 11050625 | 2007-HSA1 | 10/23/2006 | $91,500.00 |
| 11050629 | 2007-HSA1 | 10/23/2006 | $150,000.00 |
| 11050637 | 2007-HSA1 | 10/23/2006 | $100,000.00 |
| 11050649 | 2007-HSA1 | 10/23/2006 | $90,000.00 |
| 11050693 | 2007-HSA1 | 10/23/2006 | $76,600.00 |
| 11050701 | 2007-HSA1 | 10/19/2006 | $59,000.00 |
| 11050739 | 2007-HSA1 | 10/23/2006 | $70,000.00 |
| 11050751 | 2007-HSA1 | 10/23/2006 | $37,000.00 |
| 11050849 | 2007-HSA1 | 10/20/2006 | $100,000.00 |
| 11050879 | 2007-HSA1 | 10/23/2006 | $85,000.00 |
| 11050897 | 2007-HSA1 | 10/23/2006 | $50,000.00 |
| 11052683 | 2006-S11 | 10/23/2006 | $474,000.00 |
| 11053145 | 2007-HSA1 | 10/25/2006 | $11,300.00 |
| 11053147 | 2006-S11 | 10/20/2006 | $422,500.00 |
| 11053157 | 2007-HSA1 | 10/23/2006 | $50,000.00 |
| 11053173 | 2007-HSA1 | 10/23/2006 | $20,200.00 |
| 11053191 | 2006-HI5 | 10/23/2006 | $37,200.00 |
| 11053195 | 2006-S11 | 10/23/2006 | $556,000.00 |
| 11053197 | 2006-HI5 | 10/23/2006 | $42,200.00 |
| 11053199 | 2006-S11 | 10/25/2006 | $452,000.00 |
| 11053207 | 2006-S11 | 10/23/2006 | $150,400.00 |
| 11053223 | 2006-S11 | 10/20/2006 | $158,000.00 |
| 11053295 | 2006-HI5 | 10/20/2006 | $42,500.00 |
| 11053297 | 2007-HSA1 | 10/23/2006 | $20,500.00 |
| 11053325 | 2007-HSA1 | 10/23/2006 | $14,200.00 |
| 11055115 | 2006-HI5 | 10/25/2006 | $52,000.00 |
| 11055141 | 2006-HI5 | 10/25/2006 | $31,000.00 |
| 11055145 | 2007-HSA1 | 10/23/2006 | $52,500.00 |
| 11055171 | 2006-HI5 | 10/24/2006 | $75,000.00 |
| 11055175 | 2007-HSA1 | 10/25/2006 | $47,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11055189 | 2007-HSA2 | 10/23/2006 | $90,000.00 |
| 11055193 | 2007-HSA1 | 10/24/2006 | $53,000.00 |
| 11055195 | 2007-HSA1 | 10/24/2006 | $32,000.00 |
| 11055197 | 2007-HSA1 | 10/25/2006 | $66,700.00 |
| 11055207 | 2006-QO9 | 10/25/2006 | $200,000.00 |
| 11055209 | 2007-HSA2 | 10/25/2006 | $80,000.00 |
| 11055219 | 2007-HSA1 | 10/24/2006 | $32,800.00 |
| 11055225 | 2007-HSA1 | 10/24/2006 | $100,000.00 |
| 11055227 | 2006-HI5 | 10/23/2006 | $35,000.00 |
| 11055233 | 2007-HSA1 | 10/23/2006 | $50,000.00 |
| 11055235 | 2007-HSA1 | 10/23/2006 | $37,600.00 |
| 11055347 | 2006-HI5 | 10/23/2006 | $50,000.00 |
| 11055379 | 2006-S11 | 10/27/2006 | $152,000.00 |
| 11055381 | 2006-HI5 | 10/25/2006 | $30,000.00 |
| 11055383 | 2007-HSA1 | 10/24/2006 | $45,000.00 |
| 11055391 | 2007-HSA1 | 10/25/2006 | $90,000.00 |
| 11055425 | 2007-HSA1 | 10/24/2006 | $95,000.00 |
| 11055427 | 2006-HI5 | 10/23/2006 | $20,000.00 |
| 11055477 | 2006-HI5 | 10/23/2006 | $92,000.00 |
| 11055507 | 2007-HSA1 | 10/25/2006 | $100,000.00 |
| 11055531 | 2007-HSA2 | 10/24/2006 | $72,000.00 |
| 11055535 | 2007-HSA1 | 10/24/2006 | $13,300.00 |
| 11055539 | 2007-HSA1 | 10/24/2006 | $46,300.00 |
| 11055561 | 2006-HI5 | 10/24/2006 | $66,100.00 |
| 11055591 | 2007-HSA1 | 10/25/2006 | $100,000.00 |
| 11055641 | 2007-HSA1 | 10/25/2006 | $52,000.00 |
| 11055665 | 2006-S11 | 10/31/2006 | $540,800.00 |
| 11055681 | 2007-HSA1 | 10/25/2006 | $75,000.00 |
| 11058303 | 2007-HSA1 | 10/25/2006 | $42,000.00 |
| 11058309 | 2007-HSA1 | 10/24/2006 | $80,000.00 |
| 11058313 | 2007-HSA1 | 10/26/2006 | $100,000.00 |
| 11058323 | 2007-HSA1 | 10/25/2006 | $86,600.00 |
| 11058325 | 2006-HI5 | 10/25/2006 | $30,000.00 |
| 11058331 | 2007-HSA1 | 10/24/2006 | $62,800.00 |
| 11058335 | 2007-HSA1 | 10/24/2006 | $40,000.00 |
| 11058337 | 2006-QS16 | 10/27/2006 | $275,326.08 |
| 11058339 | 2007-HSA1 | 10/24/2006 | $150,000.00 |
| 11058341 | 2006-HI5 | 10/25/2006 | $40,400.00 |
| 11058343 | 2007-HSA1 | 10/25/2006 | $71,000.00 |
| 11058347 | 2006-HI5 | 11/7/2006 | $35,000.00 |
| 11058349 | 2007-HSA1 | 10/24/2006 | $72,000.00 |
| 11058357 | 2007-HSA1 | 10/25/2006 | $75,000.00 |
| 11058361 | 2007-HSA1 | 10/24/2006 | $53,700.00 |
| 11058367 | 2007-HSA1 | 10/24/2006 | $30,000.00 |
| 11058379 | 2006-HI5 | 10/25/2006 | $60,000.00 |
| 11058381 | 2006-HI5 | 10/25/2006 | $60,000.00 |
| 11058385 | 2007-HSA2 | 10/25/2006 | $80,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11058387 | 2006-HI5 | 10/25/2006 | $42,000.00 |
| 11058391 | 2007-HSA2 | 10/25/2006 | $61,000.00 |
| 11058393 | 2007-HSA1 | 10/24/2006 | $39,100.00 |
| 11058403 | 2006-HI5 | 10/25/2006 | $55,000.00 |
| 11058405 | 2007-HSA1 | 10/25/2006 | $65,000.00 |
| 11058409 | 2006-HI5 | 10/25/2006 | $29,700.00 |
| 11058429 | 2006-HI5 | 10/25/2006 | $37,000.00 |
| 11058435 | 2007-HSA2 | 10/25/2006 | $58,600.00 |
| 11058509 | 2007-HSA1 | 10/25/2006 | $94,500.00 |
| 11058551 | 2007-HSA1 | 10/24/2006 | $40,000.00 |
| 11061701 | 2006-S11 | 10/26/2006 | $550,000.00 |
| 11061703 | 2006-HI5 | 10/27/2006 | $81,000.00 |
| 11061705 | 2007-HSA1 | 10/26/2006 | $24,500.00 |
| 11061707 | 2007-HSA1 | 10/26/2006 | $163,000.00 |
| 11061709 | 2007-HSA1 | 10/25/2006 | $41,100.00 |
| 11061715 | 2007-HSA1 | 10/26/2006 | $30,000.00 |
| 11061719 | 2007-HSA1 | 10/26/2006 | $30,000.00 |
| 11061725 | 2007-HSA1 | 10/26/2006 | $28,000.00 |
| 11061739 | 2007-HSA1 | 10/25/2006 | $39,500.00 |
| 11061741 | 2006-HI5 | 10/30/2006 | $39,700.00 |
| 11061749 | 2007-HSA1 | 10/26/2006 | $46,500.00 |
| 11061751 | 2007-HSA1 | 10/26/2006 | $73,600.00 |
| 11061759 | 2006-S11 | 10/26/2006 | $675,000.00 |
| 11061773 | 2007-HSA1 | 10/26/2006 | $133,000.00 |
| 11061855 | 2007-HSA1 | 10/26/2006 | $36,000.00 |
| 11061857 | 2007-HSA1 | 10/26/2006 | $49,500.00 |
| 11061861 | 2006-HI5 | 10/25/2006 | $35,000.00 |
| 11061875 | 2006-HI5 | 10/26/2006 | $60,000.00 |
| 11061877 | 2006-S11 | 10/26/2006 | $670,000.00 |
| 11061883 | 2007-HSA1 | 10/25/2006 | $40,000.00 |
| 11061885 | 2007-HSA1 | 10/26/2006 | $18,000.00 |
| 11061887 | 2007-HSA1 | 10/26/2006 | $100,000.00 |
| 11061895 | 2007-HSA1 | 10/26/2006 | $100,000.00 |
| 11061897 | 2007-HSA1 | 10/26/2006 | $26,000.00 |
| 11061903 | 2007-HSA1 | 10/25/2006 | $30,300.00 |
| 11061907 | 2007-HSA1 | 10/27/2006 | $33,000.00 |
| 11061909 | 2007-HSA1 | 10/26/2006 | $46,600.00 |
| 11061911 | 2007-HSA2 | 10/25/2006 | $119,000.00 |
| 11061917 | 2007-HSA1 | 10/26/2006 | $26,000.00 |
| 11061927 | 2007-HSA1 | 10/26/2006 | $100,000.00 |
| 11061933 | 2007-HSA1 | 10/26/2006 | $74,400.00 |
| 11061937 | 2007-HSA1 | 10/25/2006 | $53,000.00 |
| 11061939 | 2006-HI5 | 10/26/2006 | $36,700.00 |
| 11061941 | 2007-HSA1 | 10/27/2006 | $80,000.00 |
| 11061945 | 2007-HSA1 | 10/26/2006 | $75,000.00 |
| 11061949 | 2007-HSA1 | 10/26/2006 | $72,000.00 |
| 11061955 | 2007-HSA2 | 10/25/2006 | $18,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11061959 | 2007-HSA1 | 10/26/2006 | $150,000.00 |
| 11061961 | 2007-HSA1 | 10/25/2006 | $18,400.00 |
| 11061969 | 2007-HSA1 | 10/26/2006 | $70,000.00 |
| 11062011 | 2007-HSA1 | 10/25/2006 | $50,000.00 |
| 11062015 | 2007-HI1 | 10/26/2006 | $20,000.00 |
| 11062017 | 2007-HSA1 | 10/26/2006 | $54,000.00 |
| 11062023 | 2006-HI5 | 10/26/2006 | $21,200.00 |
| 11062033 | 2007-HSA1 | 10/26/2006 | $100,000.00 |
| 11062039 | 2007-HSA1 | 10/26/2006 | $40,000.00 |
| 11062041 | 2007-HSA1 | 10/26/2006 | $55,000.00 |
| 11062049 | 2007-HSA1 | 10/26/2006 | $150,000.00 |
| 11062053 | 2006-HI5 | 10/26/2006 | $42,000.00 |
| 11062067 | 2007-HSA1 | 10/31/2006 | $45,000.00 |
| 11062093 | 2007-HSA1 | 10/31/2006 | $35,000.00 |
| 11062335 | 2007-HSA1 | 11/16/2006 | $41,100.00 |
| 11063705 | 2006-QS16 | 10/26/2006 | $122,866.53 |
| 11063707 | 2007-HSA1 | 10/30/2006 | $100,000.00 |
| 11063717 | 2007-HSA1 | 10/27/2006 | $50,000.00 |
| 11063725 | 2007-HSA1 | 10/30/2006 | $85,000.00 |
| 11063733 | 2007-HSA1 | 10/30/2006 | $31,000.00 |
| 11063741 | 2007-HSA1 | 10/30/2006 | $97,000.00 |
| 11063745 | 2007-HSA1 | 10/30/2006 | $20,700.00 |
| 11063747 | 2007-HSA1 | 10/30/2006 | $40,000.00 |
| 11063753 | 2007-HSA2 | 10/27/2006 | $146,000.00 |
| 11063763 | 2007-HSA1 | 10/30/2006 | $46,000.00 |
| 11063769 | 2007-HSA1 | 10/30/2006 | $78,000.00 |
| 11063771 | 2007-HSA1 | 10/30/2006 | $146,000.00 |
| 11063773 | 2007-HSA1 | 10/27/2006 | $200,000.00 |
| 11063775 | 2006-HI5 | 10/30/2006 | $35,000.00 |
| 11063781 | 2006-S11 | 10/27/2006 | $562,000.00 |
| 11063785 | 2007-HSA1 | 10/30/2006 | $29,000.00 |
| 11063793 | 2007-HSA1 | 10/30/2006 | $33,000.00 |
| 11063795 | 2006-HI5 | 10/27/2006 | $65,000.00 |
| 11063797 | 2007-HSA1 | 10/30/2006 | $26,000.00 |
| 11063805 | 2006-QS16 | 10/27/2006 | $156,800.00 |
| 11063807 | 2006-HI5 | 10/30/2006 | $13,500.00 |
| 11063827 | 2007-HSA1 | 10/27/2006 | $34,000.00 |
| 11063833 | 2007-HI1 | 10/27/2006 | $15,800.00 |
| 11063841 | 2007-HSA1 | 10/30/2006 | $31,100.00 |
| 11063851 | 2007-HSA1 | 10/30/2006 | $100,000.00 |
| 11063863 | 2007-HSA1 | 10/30/2006 | $19,000.00 |
| 11063891 | 2007-HSA1 | 10/30/2006 | $50,000.00 |
| 11063909 | 2006-HI5 | 11/2/2006 | $17,800.00 |
| 11063913 | 2006-S11 | 10/26/2006 | $570,000.00 |
| 11063927 | 2007-HSA1 | 10/30/2006 | $30,000.00 |
| 11063955 | 2007-HSA1 | 11/2/2006 | $100,000.00 |
| 11064035 | 2007-HSA1 | 10/31/2006 | $132,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11064045 | 2007-HSA1 | 10/27/2006 | $56,000.00 |
| 11064101 | 2006-S11 | 10/27/2006 | $140,000.00 |
| 11064123 | 2006-S11 | 10/27/2006 | $500,000.00 |
| 11064155 | 2006-S11 | 10/27/2006 | $505,700.00 |
| 11064371 | 2007-HSA1 | 10/30/2006 | $90,000.00 |
| 11066411 | 2006-QO9 | 10/30/2006 | $360,000.00 |
| 11066417 | 2007-HSA2 | 10/30/2006 | $26,000.00 |
| 11066433 | 2006-QO10 | 10/31/2006 | $179,200.00 |
| 11066447 | 2006-QS16 | 10/27/2006 | $79,600.00 |
| 11066451 | 2006-HI5 | 10/30/2006 | $136,000.00 |
| 11066481 | 2006-HI5 | 10/30/2006 | $75,000.00 |
| 11066529 | 2007-HSA1 | 10/31/2006 | $73,000.00 |
| 11066575 | 2007-HSA1 | 11/3/2006 | $20,700.00 |
| 11066591 | 2007-HSA1 | 10/31/2006 | $200,000.00 |
| 11066629 | 2007-HSA1 | 10/31/2006 | $76,500.00 |
| 11066655 | 2007-HI1 | 10/30/2006 | $30,000.00 |
| 11066671 | 2007-HSA1 | 10/31/2006 | $60,000.00 |
| 11066687 | 2006-HI5 | 10/30/2006 | $34,700.00 |
| 11066699 | 2007-HSA1 | 10/31/2006 | $13,700.00 |
| 11066701 | 2006-HI5 | 10/30/2006 | $64,000.00 |
| 11066707 | 2007-HSA1 | 10/30/2006 | $98,000.00 |
| 11066727 | 2007-HSA1 | 10/30/2006 | $40,000.00 |
| 11066739 | 2007-HSA1 | 10/30/2006 | $30,000.00 |
| 11066745 | 2006-HI5 | 10/30/2006 | $15,000.00 |
| 11066755 | 2007-HSA1 | 10/30/2006 | $30,000.00 |
| 11067123 | 2006-HI5 | 10/30/2006 | $17,000.00 |
| 11067171 | 2007-HSA2 | 10/30/2006 | $27,500.00 |
| 11069339 | 2006-HI5 | 10/31/2006 | $37,500.00 |
| 11069405 | 2006-HI5 | 10/31/2006 | $41,000.00 |
| 11069409 | 2007-HSA2 | 10/31/2006 | $85,000.00 |
| 11069447 | 2007-HSA2 | 10/31/2006 | $53,000.00 |
| 11069477 | 2007-HSA2 | 10/31/2006 | $94,700.00 |
| 11069503 | 2006-HI5 | 10/31/2006 | $30,000.00 |
| 11069849 | 2006-QO10 | 10/31/2006 | $112,500.00 |
| 11069861 | 2007-HSA2 | 10/31/2006 | $70,000.00 |
| 11069889 | 2007-HSA1 | 10/31/2006 | $100,000.00 |
| 11069919 | 2006-HI5 | 11/6/2006 | $40,000.00 |
| 11070459 | 2006-QO9 | 11/2/2006 | $369,000.00 |
| 11070493 | 2006-QO9 | 10/31/2006 | $465,600.00 |
| 11070531 | 2006-S11 | 10/31/2006 | $480,400.00 |
| 11070561 | 2006-QO9 | 11/3/2006 | $402,100.00 |
| 11070591 | 2006-S12 | 10/31/2006 | $490,000.00 |
| 11070595 | 2006-S11 | 10/30/2006 | $499,200.00 |
| 11074683 | 2006-HI5 | 10/31/2006 | $63,900.00 |
| 11074691 | 2006-QO9 | 11/2/2006 | $260,000.00 |
| 11074695 | 2007-HSA1 | 10/31/2006 | $33,700.00 |
| 11074703 | 2007-HSA1 | 10/31/2006 | $62,600.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11074711 | 2007-HSA1 | 10/31/2006 | $30,000.00 |
| 11074723 | 2006-HI5 | 11/6/2006 | $19,400.00 |
| 11074743 | 2007-HSA1 | 10/31/2006 | $100,000.00 |
| 11074747 | 2007-HI1 | 10/31/2006 | $30,000.00 |
| 11074771 | 2007-HSA1 | 10/31/2006 | $44,500.00 |
| 11074779 | 2006-HI5 | 10/31/2006 | $51,300.00 |
| 11075359 | 2007-HI1 | 10/31/2006 | $30,000.00 |
| 11076175 | 2007-HSA1 | 10/31/2006 | $100,000.00 |
| 11076179 | 2007-HSA1 | 10/31/2006 | $60,000.00 |
| 11076207 | 2006-QO9 | 10/31/2006 | $370,000.00 |
| 11076215 | 2007-HSA1 | 10/31/2006 | $60,000.00 |
| 11076723 | 2006-S11 | 10/31/2006 | $222,400.00 |
| 11076841 | 2007-HSA2 | 10/31/2006 | $150,000.00 |
| 11076877 | 2006-HI5 | 10/31/2006 | $35,000.00 |
| 11076911 | 2007-HSA1 | 10/31/2006 | $27,000.00 |
| 11077011 | 2007-HI1 | 10/31/2006 | $30,000.00 |
| 11077057 | 2006-HI5 | 10/31/2006 | $30,000.00 |
| 11077121 | 2007-HSA1 | 11/17/2006 | $121,100.00 |
| 11078373 | 2006-HI5 | 11/3/2006 | $72,000.00 |
| 11078375 | 2007-HSA1 | 11/3/2006 | $150,000.00 |
| 11078387 | 2006-S12 | 11/2/2006 | $455,000.00 |
| 11078389 | 2007-HSA1 | 11/2/2006 | $23,900.00 |
| 11078393 | 2006-HI5 | 11/2/2006 | $51,800.00 |
| 11078395 | 2006-HI5 | 11/3/2006 | $74,700.00 |
| 11078407 | 2007-HSA1 | 11/6/2006 | $100,000.00 |
| 11078493 | 2007-HSA1 | 11/2/2006 | $48,000.00 |
| 11078497 | 2006-QS17 | 11/3/2006 | $121,600.00 |
| 11078501 | 2007-HSA1 | 11/2/2006 | $34,000.00 |
| 11078541 | 2006-HI5 | 11/2/2006 | $54,000.00 |
| 11078543 | 2007-HI1 | 11/2/2006 | $30,000.00 |
| 11078553 | 2007-HSA1 | 11/2/2006 | $45,000.00 |
| 11078555 | 2006-QS18 | 11/3/2006 | $226,374.02 |
| 11078557 | 2007-HSA1 | 11/2/2006 | $34,000.00 |
| 11078569 | 2006-HI5 | 11/2/2006 | $55,500.00 |
| 11078573 | 2007-HSA1 | 11/2/2006 | $50,000.00 |
| 11078597 | 2007-HSA1 | 11/2/2006 | $102,500.00 |
| 11078601 | 2006-HI5 | 11/2/2006 | $75,000.00 |
| 11078605 | 2006-HI5 | 11/2/2006 | $35,000.00 |
| 11078607 | 2007-HSA1 | 11/2/2006 | $63,000.00 |
| 11078619 | 2007-HSA1 | 11/3/2006 | $62,000.00 |
| 11078623 | 2006-HI5 | 11/2/2006 | $29,500.00 |
| 11078631 | 2006-HI5 | 11/8/2006 | $35,000.00 |
| 11078655 | 2006-HI5 | 11/2/2006 | $62,000.00 |
| 11078885 | 2007-HSA1 | 11/16/2006 | $76,500.00 |
| 11080471 | 2006-HI5 | 11/6/2006 | $30,000.00 |
| 11080491 | 2006-HI5 | 11/3/2006 | $49,000.00 |
| 11080511 | 2007-HSA1 | 11/3/2006 | $47,250.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11080533 | 2007-HSA1 | 11/3/2006 | $14,000.00 |
| 11080557 | 2006-HI5 | 11/3/2006 | $55,000.00 |
| 11080561 | 2006-HI5 | 11/3/2006 | $15,700.00 |
| 11080575 | 2007-HSA1 | 11/3/2006 | $100,000.00 |
| 11080589 | 2006-HI5 | 11/3/2006 | $83,000.00 |
| 11080591 | 2007-HI1 | 11/3/2006 | $30,000.00 |
| 11080605 | 2007-HSA1 | 11/3/2006 | $100,000.00 |
| 11080643 | 2006-HI5 | 11/3/2006 | $26,300.00 |
| 11080651 | 2007-HSA2 | 11/3/2006 | $60,000.00 |
| 11080655 | 2007-HSA1 | 11/3/2006 | $36,000.00 |
| 11080671 | 2007-HSA1 | 11/3/2006 | $97,800.00 |
| 11080689 | 2007-HSA1 | 11/7/2006 | $35,200.00 |
| 11080699 | 2006-HI5 | 11/3/2006 | $145,500.00 |
| 11080721 | 2006-S12 | 11/8/2006 | $542,000.00 |
| 11080729 | 2007-HSA1 | 11/3/2006 | $56,000.00 |
| 11080769 | 2006-QO10 | 11/7/2006 | $459,200.00 |
| 11081195 | 2006-QO10 | 11/8/2006 | $172,000.00 |
| 11081213 | 2006-S12 | 11/8/2006 | $324,000.00 |
| 11082311 | 2007-HSA1 | 11/6/2006 | $40,000.00 |
| 11082315 | 2006-HI5 | 11/6/2006 | $42,000.00 |
| 11082319 | 2007-HSA1 | 11/6/2006 | $50,000.00 |
| 11082343 | 2007-HSA1 | 11/6/2006 | $80,000.00 |
| 11082345 | 2007-HSA1 | 11/6/2006 | $30,000.00 |
| 11082351 | 2006-HI5 | 11/3/2006 | $30,000.00 |
| 11082353 | 2006-HI5 | 11/7/2006 | $45,000.00 |
| 11082363 | 2006-HI5 | 11/6/2006 | $41,200.00 |
| 11082379 | 2007-HSA1 | 11/6/2006 | $28,100.00 |
| 11082491 | 2006-HI5 | 11/6/2006 | $36,000.00 |
| 11082493 | 2007-HSA2 | 11/3/2006 | $44,400.00 |
| 11082505 | 2007-HSA2 | 11/6/2006 | $35,000.00 |
| 11082527 | 2007-HSA1 | 11/6/2006 | $40,000.00 |
| 11082529 | 2007-HI1 | 11/6/2006 | $30,000.00 |
| 11082535 | 2006-HI5 | 11/6/2006 | $23,900.00 |
| 11082539 | 2006-HI5 | 11/6/2006 | $47,000.00 |
| 11082553 | 2007-HSA1 | 11/7/2006 | $27,000.00 |
| 11082573 | 2007-HSA1 | 11/6/2006 | $59,900.00 |
| 11082577 | 2007-HSA1 | 11/3/2006 | $55,000.00 |
| 11082583 | 2007-HSA1 | 11/6/2006 | $58,000.00 |
| 11082585 | 2007-HSA2 | 11/3/2006 | $61,000.00 |
| 11082587 | 2006-HI5 | 11/9/2006 | $35,000.00 |
| 11082593 | 2007-HSA1 | 11/6/2006 | $65,000.00 |
| 11082597 | 2007-HSA1 | 11/6/2006 | $49,000.00 |
| 11082823 | 2007-HSA2 | 11/3/2006 | $19,000.00 |
| 11082829 | 2007-HSA1 | 11/7/2006 | $100,000.00 |
| 11082837 | 2007-HSA2 | 11/6/2006 | $97,000.00 |
| 11082841 | 2007-HSA1 | 11/8/2006 | $50,000.00 |
| 11083203 | 2007-HSA2 | 11/6/2006 | $75,400.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11083237 | 2007-HSA1 | 11/7/2006 | $28,000.00 |
| 11083251 | 2007-HSA1 | 11/10/2006 | $103,000.00 |
| 11083303 | 2007-HSA1 | 11/6/2006 | $58,000.00 |
| 11083309 | 2007-HSA1 | 11/6/2006 | $92,000.00 |
| 11083349 | 2007-HSA1 | 11/6/2006 | $95,000.00 |
| 11083379 | 2007-HSA1 | 11/6/2006 | $150,000.00 |
| 11083413 | 2007-HSA1 | 11/6/2006 | $100,000.00 |
| 11083429 | 2007-HSA1 | 11/6/2006 | $50,000.00 |
| 11084831 | 2007-HSA2 | 11/8/2006 | $43,000.00 |
| 11084857 | 2007-HSA1 | 11/8/2006 | $100,000.00 |
| 11084859 | 2007-HSA2 | 11/8/2006 | $86,000.00 |
| 11084867 | 2006-QO9 | 11/7/2006 | $500,000.00 |
| 11084871 | 2006-HI5 | 11/8/2006 | $72,800.00 |
| 11084879 | 2006-QO9 | 11/9/2006 | $188,000.00 |
| 11084891 | 2007-HSA2 | 11/8/2006 | $12,850.00 |
| 11084899 | 2006-HI5 | 11/8/2006 | $33,500.00 |
| 11084907 | 2007-HSA1 | 11/10/2006 | $52,000.00 |
| 11084939 | 2007-HSA1 | 11/8/2006 | $20,000.00 |
| 11084965 | 2006-S12 | 11/8/2006 | $288,000.00 |
| 11084983 | 2006-S12 | 11/8/2006 | $500,000.00 |
| 11085001 | 2006-S12 | 11/6/2006 | $500,000.00 |
| 11085005 | 2007-HSA1 | 11/8/2006 | $53,800.00 |
| 11085559 | 2006-S12 | 11/9/2006 | $485,000.00 |
| 11088179 | 2006-S12 | 11/8/2006 | $627,600.00 |
| 11088181 | 2007-HSA1 | 11/9/2006 | $35,000.00 |
| 11088187 | 2006-HI5 | 11/13/2006 | $75,000.00 |
| 11088189 | 2007-HSA1 | 11/13/2006 | $290,000.00 |
| 11088205 | 2007-HSA1 | 11/8/2006 | $80,000.00 |
| 11088221 | 2007-HSA1 | 11/8/2006 | $29,700.00 |
| 11088231 | 2007-HSA1 | 11/8/2006 | $30,000.00 |
| 11088235 | 2007-HSA1 | 11/13/2006 | $100,000.00 |
| 11088239 | 2007-HSA1 | 11/8/2006 | $32,300.00 |
| 11088247 | 2006-HI5 | 11/9/2006 | $50,000.00 |
| 11088251 | 2006-QO9 | 11/9/2006 | $200,000.00 |
| 11088255 | 2007-HSA1 | 11/8/2006 | $28,500.00 |
| 11088259 | 2007-HSA1 | 11/8/2006 | $50,000.00 |
| 11088265 | 2007-HSA1 | 11/13/2006 | $75,000.00 |
| 11088273 | 2007-HSA1 | 11/8/2006 | $90,000.00 |
| 11088279 | 2007-HSA1 | 11/9/2006 | $34,500.00 |
| 11088283 | 2007-HSA1 | 11/8/2006 | $76,500.00 |
| 11088291 | 2007-HSA1 | 11/9/2006 | $40,000.00 |
| 11088293 | 2007-HSA1 | 11/8/2006 | $97,000.00 |
| 11088297 | 2006-QO10 | 11/13/2006 | $142,000.00 |
| 11088299 | 2007-HSA2 | 11/8/2006 | $133,000.00 |
| 11088301 | 2007-HSA1 | 11/9/2006 | $58,000.00 |
| 11088309 | 2007-HSA1 | 11/8/2006 | $75,000.00 |
| 11088323 | 2007-HSA1 | 11/8/2006 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11088325 | 2007-HSA1 | 11/13/2006 | $69,500.00 |
| 11088335 | 2007-HSA1 | 11/9/2006 | $30,000.00 |
| 11088347 | 2007-HSA1 | 11/8/2006 | $22,400.00 |
| 11088359 | 2006-HI5 | 11/8/2006 | $36,600.00 |
| 11088361 | 2007-HSA1 | 11/10/2006 | $62,000.00 |
| 11088371 | 2006-QO9 | 11/8/2006 | $131,000.00 |
| 11088389 | 2007-HSA1 | 11/13/2006 | $57,300.00 |
| 11088395 | 2006-HI5 | 11/10/2006 | $44,800.00 |
| 11088409 | 2007-HSA1 | 11/8/2006 | $39,200.00 |
| 11088461 | 2007-HSA2 | 11/8/2006 | $81,800.00 |
| 11088485 | 2007-HSA1 | 11/8/2006 | $100,000.00 |
| 11088489 | 2007-HSA1 | 11/9/2006 | $51,000.00 |
| 11088493 | 2007-HSA1 | 11/13/2006 | $91,000.00 |
| 11088495 | 2007-HSA1 | 11/15/2006 | $100,000.00 |
| 11088507 | 2007-HSA1 | 11/9/2006 | $44,500.00 |
| 11088509 | 2007-HSA1 | 11/8/2006 | $100,000.00 |
| 11088519 | 2007-HSA1 | 11/13/2006 | $78,100.00 |
| 11088545 | 2007-HSA1 | 11/8/2006 | $160,000.00 |
| 11088579 | 2007-HSA1 | 11/8/2006 | $100,000.00 |
| 11088599 | 2007-HSA1 | 11/8/2006 | $61,000.00 |
| 11088995 | 2007-HSA1 | 11/8/2006 | $32,200.00 |
| 11089249 | 2007-HSA1 | 11/10/2006 | $64,900.00 |
| 11089297 | 2007-HSA1 | 11/10/2006 | $142,000.00 |
| 11089313 | 2006-HI5 | 11/13/2006 | $50,000.00 |
| 11089405 | 2007-HSA1 | 11/8/2006 | $23,200.00 |
| 11089427 | 2007-HSA1 | 11/13/2006 | $43,000.00 |
| 11089487 | 2007-HSA1 | 11/13/2006 | $100,000.00 |
| 11089521 | 2007-HSA1 | 11/8/2006 | $58,000.00 |
| 11092761 | 2006-QS16 | 11/8/2006 | $152,000.00 |
| 11092765 | 2007-QO2 | 11/9/2006 | $182,400.00 |
| 11092779 | 2007-HSA1 | 11/10/2006 | $43,000.00 |
| 11092783 | 2007-HSA1 | 11/13/2006 | $100,000.00 |
| 11092787 | 2006-HI5 | 11/15/2006 | $58,000.00 |
| 11092795 | 2007-HSA1 | 11/9/2006 | $75,000.00 |
| 11092797 | 2007-HSA1 | 11/13/2006 | $62,000.00 |
| 11092807 | 2007-HSA1 | 11/9/2006 | $130,000.00 |
| 11092817 | 2007-HSA1 | 11/13/2006 | $65,000.00 |
| 11092821 | 2007-HSA1 | 11/13/2006 | $11,200.00 |
| 11092825 | 2007-HSA1 | 11/13/2006 | $60,000.00 |
| 11092833 | 2007-HSA1 | 11/9/2006 | $35,600.00 |
| 11092845 | 2007-HSA1 | 11/15/2006 | $36,200.00 |
| 11092869 | 2007-HSA1 | 11/15/2006 | $47,200.00 |
| 11092877 | 2007-HSA1 | 11/10/2006 | $87,000.00 |
| 11092883 | 2007-HSA1 | 11/8/2006 | $100,000.00 |
| 11092891 | 2007-HSA1 | 11/13/2006 | $50,000.00 |
| 11092917 | 2007-HSA1 | 11/10/2006 | $32,000.00 |
| 11092921 | 2006-HI5 | 11/9/2006 | $40,400.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11092929 | 2007-HSA1 | 11/10/2006 | $64,000.00 |
| 11092933 | 2006-HI5 | 11/13/2006 | $50,000.00 |
| 11092945 | 2007-HSA1 | 11/10/2006 | $74,700.00 |
| 11092953 | 2007-HSA1 | 11/13/2006 | $100,000.00 |
| 11092965 | 2007-HSA1 | 11/9/2006 | $150,000.00 |
| 11092967 | 2007-HSA1 | 11/10/2006 | $220,000.00 |
| 11092979 | 2007-HSA1 | 11/15/2006 | $100,000.00 |
| 11092991 | 2007-HSA1 | 11/13/2006 | $15,000.00 |
| 11092997 | 2007-HSA1 | 11/10/2006 | $61,000.00 |
| 11092999 | 2007-HSA1 | 11/10/2006 | $100,000.00 |
| 11093003 | 2007-HSA1 | 11/8/2006 | $80,000.00 |
| 11093011 | 2007-HSA1 | 11/10/2006 | $29,000.00 |
| 11093013 | 2007-HSA1 | 11/10/2006 | $40,500.00 |
| 11093029 | 2007-HSA1 | 11/13/2006 | $50,000.00 |
| 11093045 | 2007-HSA1 | 11/13/2006 | $52,000.00 |
| 11093051 | 2007-HSA1 | 11/13/2006 | $54,200.00 |
| 11093065 | 2007-HSA1 | 11/8/2006 | $38,200.00 |
| 11093067 | 2007-HSA1 | 11/8/2006 | $145,000.00 |
| 11093073 | 2007-HSA1 | 11/10/2006 | $54,000.00 |
| 11093083 | 2007-HSA1 | 11/13/2006 | $23,500.00 |
| 11093085 | 2007-HSA3 | 11/10/2006 | $32,800.00 |
| 11093103 | 2007-HSA1 | 11/10/2006 | $25,000.00 |
| 11093151 | 2006-HI5 | 11/10/2006 | $27,000.00 |
| 11093165 | 2006-HI5 | 11/13/2006 | $70,500.00 |
| 11093193 | 2007-HSA1 | 11/13/2006 | $61,000.00 |
| 11093211 | 2006-HI5 | 11/9/2006 | $45,000.00 |
| 11093773 | 2007-HSA2 | 11/10/2006 | $59,000.00 |
| 11098711 | 2007-HSA2 | 11/10/2006 | $82,000.00 |
| 11098731 | 2007-HSA1 | 11/13/2006 | $292,900.00 |
| 11098737 | 2007-HSA1 | 11/13/2006 | $122,700.00 |
| 11098741 | 2007-HSA1 | 11/17/2006 | $30,000.00 |
| 11098743 | 2006-HI5 | 11/16/2006 | $42,100.00 |
| 11098747 | 2007-HSA1 | 11/13/2006 | $50,000.00 |
| 11098753 | 2006-HI5 | 11/10/2006 | $35,000.00 |
| 11098763 | 2007-HSA1 | 11/15/2006 | $30,000.00 |
| 11098765 | 2007-QO2 | 11/10/2006 | $118,700.00 |
| 11098793 | 2006-HI5 | 11/13/2006 | $62,500.00 |
| 11098795 | 2007-HSA1 | 11/9/2006 | $60,000.00 |
| 11098799 | 2007-HSA1 | 11/10/2006 | $65,000.00 |
| 11098807 | 2006-S12 | 11/10/2006 | $588,900.00 |
| 11098811 | 2007-HSA1 | 11/9/2006 | $45,000.00 |
| 11098819 | 2007-HSA1 | 11/13/2006 | $30,000.00 |
| 11098827 | 2006-QO9 | 11/13/2006 | $401,500.00 |
| 11098829 | 2006-HI5 | 11/13/2006 | $27,500.00 |
| 11098843 | 2007-HSA1 | 11/13/2006 | $130,000.00 |
| 11098847 | 2007-HSA1 | 11/10/2006 | $41,500.00 |
| 11098851 | 2006-QO9 | 11/10/2006 | $200,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11098865 | 2007-HSA1 | 11/10/2006 | $86,600.00 |
| 11098889 | 2007-HSA1 | 11/15/2006 | $79,000.00 |
| 11098893 | 2007-HSA1 | 11/15/2006 | $141,500.00 |
| 11098895 | 2006-HI5 | 11/13/2006 | $75,000.00 |
| 11098899 | 2007-HSA1 | 11/13/2006 | $38,000.00 |
| 11098907 | 2007-HSA1 | 11/13/2006 | $36,500.00 |
| 11098909 | 2006-HI5 | 11/10/2006 | $50,000.00 |
| 11098935 | 2007-HSA1 | 11/15/2006 | $44,000.00 |
| 11098943 | 2007-HSA1 | 11/10/2006 | $150,000.00 |
| 11098957 | 2007-HSA1 | 11/15/2006 | $37,000.00 |
| 11098987 | 2007-HSA1 | 11/10/2006 | $100,000.00 |
| 11098991 | 2007-HSA1 | 11/13/2006 | $100,000.00 |
| 11099009 | 2007-HSA1 | 11/13/2006 | $30,000.00 |
| 11099019 | 2007-HSA1 | 11/15/2006 | $47,900.00 |
| 11099621 | 2007-HSA2 | 11/13/2006 | $51,400.00 |
| 11099645 | 2006-HI5 | 11/10/2006 | $50,000.00 |
| 11100229 | 2006-QO10 | 11/15/2006 | $408,000.00 |
| 11100285 | 2006-S12 | 11/15/2006 | $455,000.00 |
| 11101051 | 2007-HSA1 | 11/15/2006 | $50,000.00 |
| 11101729 | 2007-HSA1 | 11/15/2006 | $65,000.00 |
| 11101747 | 2007-HSA1 | 11/15/2006 | $68,850.00 |
| 11101763 | 2007-HSA1 | 11/15/2006 | $100,000.00 |
| 11101769 | 2006-HI5 | 11/15/2006 | $30,000.00 |
| 11101777 | 2006-QO9 | 11/13/2006 | $130,000.00 |
| 11101779 | 2007-HSA1 | 11/15/2006 | $40,000.00 |
| 11101785 | 2007-HSA1 | 11/17/2006 | $33,500.00 |
| 11101793 | 2007-HSA1 | 11/15/2006 | $27,000.00 |
| 11101795 | 2006-HI5 | 11/16/2006 | $64,500.00 |
| 11101807 | 2007-HSA1 | 11/15/2006 | $100,000.00 |
| 11101819 | 2007-HSA1 | 11/15/2006 | $40,000.00 |
| 11101823 | 2007-HSA1 | 11/15/2006 | $52,000.00 |
| 11101833 | 2007-HSA1 | 11/15/2006 | $35,000.00 |
| 11101837 | 2007-HSA1 | 11/15/2006 | $87,000.00 |
| 11101841 | 2007-HSA1 | 11/15/2006 | $80,000.00 |
| 11101849 | 2007-HSA1 | 11/16/2006 | $54,500.00 |
| 11101855 | 2007-HSA1 | 11/15/2006 | $100,000.00 |
| 11101857 | 2007-HSA1 | 11/15/2006 | $80,000.00 |
| 11101859 | 2007-HSA1 | 11/15/2006 | $18,100.00 |
| 11101877 | 2006-HI5 | 11/15/2006 | $32,500.00 |
| 11101887 | 2007-HSA1 | 11/15/2006 | $145,000.00 |
| 11101891 | 2007-HSA1 | 11/15/2006 | $63,200.00 |
| 11101897 | 2007-HSA1 | 11/15/2006 | $43,500.00 |
| 11101917 | 2007-HSA1 | 11/15/2006 | $100,000.00 |
| 11101925 | 2007-HSA1 | 11/15/2006 | $110,000.00 |
| 11101937 | 2007-HSA1 | 11/15/2006 | $30,000.00 |
| 11101941 | 2007-HSA1 | 11/15/2006 | $57,400.00 |
| 11101947 | 2007-HSA1 | 11/10/2006 | $80,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11101973 | 2007-HSA1 | 11/15/2006 | $45,800.00 |
| 11102033 | 2007-HSA1 | 11/15/2006 | $21,000.00 |
| 11102059 | 2007-HSA1 | 11/15/2006 | $39,400.00 |
| 11102113 | 2007-HSA1 | 11/15/2006 | $60,000.00 |
| 11102121 | 2007-HSA1 | 11/15/2006 | $73,000.00 |
| 11102133 | 2006-QO10 | 11/10/2006 | $437,500.00 |
| 11102171 | 2007-HSA1 | 11/15/2006 | $40,000.00 |
| 11102203 | 2007-HSA1 | 11/15/2006 | $99,000.00 |
| 11103149 | 2006-S12 | 11/13/2006 | $425,000.00 |
| 11106325 | 2007-HSA1 | 11/16/2006 | $100,000.00 |
| 11106449 | 2007-HSA1 | 11/16/2006 | $32,000.00 |
| 11106469 | 2007-HSA1 | 11/16/2006 | $49,200.00 |
| 11106497 | 2007-HSA1 | 11/16/2006 | $63,300.00 |
| 11106513 | 2006-HI5 | 11/20/2006 | $52,100.00 |
| 11106541 | 2007-HSA1 | 11/16/2006 | $50,000.00 |
| 11106559 | 2007-HSA1 | 11/16/2006 | $100,000.00 |
| 11106629 | 2007-HSA1 | 11/16/2006 | $50,000.00 |
| 11106633 | 2006-QS18 | 11/16/2006 | $170,000.00 |
| 11106653 | 2006-S12 | 11/17/2006 | $578,000.00 |
| 11106659 | 2007-HSA1 | 11/17/2006 | $40,000.00 |
| 11106747 | 2007-HSA1 | 12/19/2006 | $50,000.00 |
| 11107903 | 2006-S12 | 12/8/2006 | $448,000.00 |
| 11109417 | 2006-HI5 | 11/16/2006 | $50,000.00 |
| 11109429 | 2007-HSA2 | 11/16/2006 | $29,900.00 |
| 11109469 | 2007-HSA2 | 11/16/2006 | $24,000.00 |
| 11109491 | 2006-S12 | 11/16/2006 | $510,000.00 |
| 11109621 | 2006-HI5 | 11/20/2006 | $44,400.00 |
| 11109641 | 2007-HSA1 | 11/16/2006 | $32,000.00 |
| 11109699 | 2007-HSA1 | 11/20/2006 | $50,000.00 |
| 11109825 | 2006-S11 | 11/16/2006 | $500,000.00 |
| 11109827 | 2006-HI5 | 11/16/2006 | $35,400.00 |
| 11109857 | 2007-HSA1 | 11/16/2006 | $67,100.00 |
| 11109917 | 2007-HSA2 | 11/16/2006 | $146,200.00 |
| 11109919 | 2007-HSA1 | 11/16/2006 | $20,000.00 |
| 11111003 | 2007-QS1 | 11/17/2006 | $162,500.00 |
| 11111033 | 2006-S12 | 11/16/2006 | $472,000.00 |
| 11111059 | 2007-QO1 | 11/20/2006 | $93,600.00 |
| 11111283 | 2007-HSA1 | 11/16/2006 | $99,800.00 |
| 11112283 | 2006-HI5 | 11/16/2006 | $50,000.00 |
| 11112337 | 2007-HSA1 | 11/16/2006 | $100,000.00 |
| 11112343 | 2007-HSA1 | 11/16/2006 | $100,000.00 |
| 11112355 | 2007-HSA1 | 11/16/2006 | $49,500.00 |
| 11112357 | 2007-HSA1 | 11/16/2006 | $18,000.00 |
| 11112365 | 2007-HSA1 | 11/16/2006 | $50,000.00 |
| 11112369 | 2007-HSA1 | 11/16/2006 | $19,000.00 |
| 11112375 | 2007-HSA1 | 11/16/2006 | $100,000.00 |
| 11112379 | 2007-HSA1 | 11/16/2006 | $49,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11112391 | 2007-HSA1 | 11/16/2006 | $37,500.00 |
| 11112397 | 2007-HSA1 | 11/17/2006 | $26,400.00 |
| 11112403 | 2007-HSA1 | 11/16/2006 | $24,000.00 |
| 11112443 | 2007-HSA1 | 11/16/2006 | $25,000.00 |
| 11114201 | 2007-HSA1 | 11/27/2006 | $79,800.00 |
| 11114209 | 2006-S12 | 11/29/2006 | $445,500.00 |
| 11114379 | 2007-HSA1 | 11/21/2006 | $150,000.00 |
| 11114449 | 2007-HSA1 | 11/20/2006 | $35,200.00 |
| 11114455 | 2007-HSA1 | 11/20/2006 | $75,000.00 |
| 11114459 | 2007-HSA1 | 11/20/2006 | $67,000.00 |
| 11114471 | 2007-HSA1 | 11/20/2006 | $42,500.00 |
| 11114473 | 2007-HSA1 | 11/20/2006 | $30,000.00 |
| 11114491 | 2007-HSA1 | 11/20/2006 | $99,000.00 |
| 11114493 | 2007-HSA1 | 12/6/2006 | $100,000.00 |
| 11114495 | 2007-HSA1 | 11/16/2006 | $45,500.00 |
| 11114497 | 2007-HSA1 | 11/22/2006 | $50,000.00 |
| 11114547 | 2007-HSA1 | 11/17/2006 | $84,000.00 |
| 11114555 | 2007-HSA1 | 11/17/2006 | $30,000.00 |
| 11114567 | 2007-HSA1 | 11/17/2006 | $95,000.00 |
| 11114573 | 2007-HSA1 | 11/22/2006 | $50,000.00 |
| 11114579 | 2007-HSA1 | 11/20/2006 | $50,000.00 |
| 11114591 | 2007-HSA1 | 11/17/2006 | $135,000.00 |
| 11114605 | 2007-HSA1 | 11/16/2006 | $94,400.00 |
| 11114763 | 2007-HSA1 | 11/20/2006 | $63,900.00 |
| 11114849 | 2007-HSA1 | 11/17/2006 | $161,000.00 |
| 11114855 | 2007-HSA1 | 11/16/2006 | $40,000.00 |
| 11114883 | 2007-HSA1 | 11/20/2006 | $50,000.00 |
| 11114933 | 2007-HSA1 | 11/20/2006 | $30,000.00 |
| 11114935 | 2007-HSA1 | 11/17/2006 | $95,000.00 |
| 11115077 | 2007-HSA1 | 11/20/2006 | $40,000.00 |
| 11115093 | 2007-HSA1 | 11/20/2006 | $50,000.00 |
| 11115097 | 2006-HI5 | 11/22/2006 | $30,000.00 |
| 11115115 | 2007-HSA1 | 11/17/2006 | $119,800.00 |
| 11115119 | 2007-HSA1 | 11/30/2006 | $78,400.00 |
| 11115131 | 2007-HSA1 | 11/22/2006 | $47,500.00 |
| 11115135 | 2006-HI5 | 11/21/2006 | $63,500.00 |
| 11115143 | 2007-HSA1 | 11/16/2006 | $23,000.00 |
| 11115155 | 2007-HSA1 | 11/16/2006 | $30,000.00 |
| 11115163 | 2007-HSA1 | 11/21/2006 | $50,000.00 |
| 11115177 | 2007-HSA1 | 11/20/2006 | $50,000.00 |
| 11115179 | 2007-HSA1 | 11/17/2006 | $10,000.00 |
| 11115181 | 2007-HSA1 | 11/20/2006 | $56,000.00 |
| 11115193 | 2007-HSA1 | 11/17/2006 | $42,500.00 |
| 11115205 | 2006-S12 | 11/16/2006 | $438,500.00 |
| 11115217 | 2007-HSA1 | 11/17/2006 | $24,200.00 |
| 11115235 | 2007-HSA1 | 11/21/2006 | $55,000.00 |
| 11115241 | 2007-HI1 | 12/12/2006 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11115261 | 2007-HSA1 | 11/21/2006 | $46,000.00 |
| 11115263 | 2007-HSA1 | 11/21/2006 | $27,400.00 |
| 11115279 | 2006-HI5 | 11/20/2006 | $34,000.00 |
| 11115293 | 2007-HSA1 | 11/21/2006 | $100,000.00 |
| 11115303 | 2007-HSA1 | 11/17/2006 | $94,000.00 |
| 11115305 | 2007-HSA1 | 11/20/2006 | $57,000.00 |
| 11115315 | 2007-HSA1 | 11/17/2006 | $42,500.00 |
| 11115343 | 2007-HSA1 | 11/16/2006 | $84,000.00 |
| 11115351 | 2007-HSA1 | 11/16/2006 | $25,000.00 |
| 11115359 | 2007-HSA2 | 11/20/2006 | $244,000.00 |
| 11115365 | 2006-HI5 | 11/21/2006 | $55,000.00 |
| 11115383 | 2006-HI5 | 11/21/2006 | $52,600.00 |
| 11115395 | 2006-HI5 | 11/30/2006 | $31,000.00 |
| 11115511 | 2006-HI5 | 11/21/2006 | $44,500.00 |
| 11117199 | 2007-HSA1 | 11/21/2006 | $37,800.00 |
| 11117209 | 2006-HI5 | 11/21/2006 | $75,000.00 |
| 11117223 | 2006-S12 | 11/20/2006 | $538,000.00 |
| 11117237 | 2007-HSA1 | 11/21/2006 | $90,000.00 |
| 11117337 | 2007-HSA1 | 11/17/2006 | $245,000.00 |
| 11117353 | 2007-HSA1 | 11/21/2006 | $60,000.00 |
| 11117371 | 2007-HSA1 | 11/22/2006 | $20,000.00 |
| 11117395 | 2007-HSA1 | 11/22/2006 | $38,500.00 |
| 11117777 | 2007-HSA1 | 11/22/2006 | $40,000.00 |
| 11117785 | 2007-HSA1 | 11/21/2006 | $150,000.00 |
| 11117811 | 2007-HSA1 | 11/21/2006 | $62,300.00 |
| 11117867 | 2007-HSA1 | 11/21/2006 | $60,000.00 |
| 11117875 | 2006-S12 | 11/17/2006 | $535,000.00 |
| 11117885 | 2007-HSA1 | 11/22/2006 | $106,000.00 |
| 11117913 | 2007-HSA1 | 11/22/2006 | $40,000.00 |
| 11117927 | 2007-HSA1 | 11/21/2006 | $119,000.00 |
| 11119465 | 2007-HSA1 | 11/21/2006 | $69,000.00 |
| 11119481 | 2006-S12 | 11/22/2006 | $168,000.00 |
| 11119487 | 2007-HSA1 | 11/22/2006 | $55,000.00 |
| 11119669 | 2006-QO10 | 11/22/2006 | $241,000.00 |
| 11119709 | 2006-HI5 | 11/22/2006 | $58,400.00 |
| 11119717 | 2006-S12 | 11/27/2006 | $589,700.00 |
| 11119753 | 2007-HSA1 | 11/22/2006 | $50,000.00 |
| 11119767 | 2006-HI5 | 11/21/2006 | $51,900.00 |
| 11119811 | 2006-HI5 | 11/22/2006 | $16,500.00 |
| 11119815 | 2007-HSA1 | 11/30/2006 | $40,000.00 |
| 11119825 | 2007-HSA1 | 11/21/2006 | $60,000.00 |
| 11119839 | 2007-HSA1 | 11/21/2006 | $58,000.00 |
| 11119949 | 2007-HSA1 | 11/22/2006 | $61,800.00 |
| 11119961 | 2007-HSA1 | 11/22/2006 | $27,000.00 |
| 11120087 | 2006-QO10 | 11/21/2006 | $184,000.00 |
| 11120151 | 2007-QO1 | 11/22/2006 | $166,500.00 |
| 11120529 | 2007-QO2 | 1/4/2007 | $360,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11120531 | 2006-QO10 | 11/22/2006 | $104,000.00 |
| 11120549 | 2006-QA11 | 11/22/2006 | $166,500.00 |
| 11120557 | 2006-S12 | 11/22/2006 | $490,000.00 |
| 11122875 | 2006-HI5 | 11/27/2006 | $20,000.00 |
| 11122927 | 2007-HSA1 | 11/28/2006 | $100,000.00 |
| 11122945 | 2007-HSA1 | 11/22/2006 | $30,000.00 |
| 11122949 | 2006-S12 | 11/29/2006 | $484,600.00 |
| 11123437 | 2006-S12 | 11/27/2006 | $493,000.00 |
| 11123611 | 2007-HSA1 | 11/22/2006 | $30,000.00 |
| 11123625 | 2007-HSA1 | 11/22/2006 | $18,000.00 |
| 11123699 | 2006-QO10 | 11/29/2006 | $128,000.00 |
| 11126009 | 2007-HSA1 | 11/27/2006 | $59,000.00 |
| 11126419 | 2006-HI5 | 11/28/2006 | $35,000.00 |
| 11126423 | 2006-QS18 | 12/1/2006 | $240,000.00 |
| 11126431 | 2006-S12 | 11/27/2006 | $132,000.00 |
| 11126433 | 2007-HSA1 | 11/27/2006 | $29,400.00 |
| 11126457 | 2007-HSA2 | 11/22/2006 | $25,200.00 |
| 11126699 | 2006-HI5 | 11/27/2006 | $35,000.00 |
| 11128675 | 2006-QO10 | 12/8/2006 | $110,000.00 |
| 11128759 | 2007-HSA1 | 11/29/2006 | $45,000.00 |
| 11128805 | 2006-HI5 | 11/29/2006 | $30,000.00 |
| 11129411 | 2006-HI5 | 11/29/2006 | $22,000.00 |
| 11129447 | 2007-HSA2 | 11/28/2006 | $25,500.00 |
| 11129603 | 2007-HSA1 | 11/29/2006 | $106,800.00 |
| 11129635 | 2007-HSA1 | 11/28/2006 | $42,800.00 |
| 11129641 | 2006-HI5 | 11/28/2006 | $50,000.00 |
| 11129649 | 2007-HI1 | 12/8/2006 | $60,000.00 |
| 11129675 | 2006-HI5 | 11/28/2006 | $41,800.00 |
| 11129687 | 2007-HSA2 | 11/28/2006 | $20,000.00 |
| 11129697 | 2007-HSA1 | 11/29/2006 | $10,600.00 |
| 11129699 | 2006-HI5 | 11/30/2006 | $50,000.00 |
| 11130185 | 2007-HSA2 | 11/28/2006 | $28,000.00 |
| 11131785 | 2007-HSA1 | 11/30/2006 | $30,000.00 |
| 11131799 | 2006-HI5 | 11/29/2006 | $30,000.00 |
| 11131961 | 2006-QO10 | 12/8/2006 | $121,000.00 |
| 11133193 | 2007-HSA1 | 11/30/2006 | $60,600.00 |
| 11133227 | 2007-HSA1 | 12/1/2006 | $30,000.00 |
| 11133231 | 2007-HSA1 | 12/1/2006 | $25,000.00 |
| 11133255 | 2007-HSA1 | 11/29/2006 | $33,200.00 |
| 11133265 | 2007-HSA1 | 11/30/2006 | $73,900.00 |
| 11133291 | 2007-HSA1 | 11/30/2006 | $57,100.00 |
| 11133385 | 2007-HSA1 | 11/30/2006 | $40,000.00 |
| 11133389 | 2007-HSA1 | 11/30/2006 | $23,000.00 |
| 11133405 | 2007-HSA1 | 11/30/2006 | $35,000.00 |
| 11133411 | 2007-HSA1 | 11/30/2006 | $66,900.00 |
| 11133429 | 2007-HSA1 | 11/30/2006 | $33,000.00 |
| 11133447 | 2007-HSA1 | 11/30/2006 | $70,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11133451 | 2007-HSA1 | 11/30/2006 | $34,700.00 |
| 11133457 | 2007-HSA1 | 11/30/2006 | $25,000.00 |
| 11133471 | 2007-HSA1 | 11/30/2006 | $34,000.00 |
| 11133473 | 2007-HSA1 | 11/30/2006 | $44,250.00 |
| 11133491 | 2007-HSA1 | 11/30/2006 | $73,400.00 |
| 11133643 | 2007-QO1 | 12/1/2006 | $292,000.00 |
| 11133649 | 2007-HSA1 | 11/30/2006 | $33,000.00 |
| 11133653 | 2007-HSA1 | 11/30/2006 | $30,000.00 |
| 11133659 | 2007-HSA1 | 11/30/2006 | $98,000.00 |
| 11133673 | 2007-HSA1 | 11/30/2006 | $20,000.00 |
| 11133677 | 2007-HSA1 | 11/29/2006 | $50,000.00 |
| 11133685 | 2007-HSA1 | 11/30/2006 | $50,000.00 |
| 11133897 | 2007-HSA1 | 11/30/2006 | $34,000.00 |
| 11134285 | 2007-HSA1 | 11/30/2006 | $55,000.00 |
| 11134305 | 2007-HSA1 | 11/30/2006 | $75,300.00 |
| 11134323 | 2006-HI5 | 11/30/2006 | $30,000.00 |
| 11134327 | 2007-HSA1 | 11/30/2006 | $34,800.00 |
| 11134337 | 2007-HSA1 | 11/30/2006 | $37,200.00 |
| 11134359 | 2006-HI5 | 11/29/2006 | $30,000.00 |
| 11134373 | 2007-HSA1 | 11/30/2006 | $80,800.00 |
| 11134387 | 2007-HSA1 | 11/30/2006 | $64,500.00 |
| 11134391 | 2007-HSA1 | 11/30/2006 | $90,000.00 |
| 11134393 | 2006-HI5 | 11/29/2006 | $27,000.00 |
| 11134399 | 2006-HI5 | 11/30/2006 | $30,000.00 |
| 11134409 | 2006-HI5 | 11/30/2006 | $32,500.00 |
| 11134415 | 2007-HSA1 | 11/30/2006 | $44,400.00 |
| 11134417 | 2007-HSA1 | 11/30/2006 | $37,000.00 |
| 11134431 | 2006-HI5 | 11/30/2006 | $46,000.00 |
| 11134449 | 2007-HSA1 | 11/30/2006 | $10,000.00 |
| 11134451 | 2007-HSA1 | 11/30/2006 | $40,000.00 |
| 11134455 | 2007-HSA1 | 11/30/2006 | $90,000.00 |
| 11134463 | 2007-HSA1 | 11/30/2006 | $27,500.00 |
| 11134469 | 2007-HSA1 | 11/30/2006 | $150,000.00 |
| 11134473 | 2007-HSA1 | 11/29/2006 | $100,000.00 |
| 11134483 | 2007-HSA1 | 12/1/2006 | $70,000.00 |
| 11134489 | 2007-HSA1 | 12/6/2006 | $26,200.00 |
| 11134493 | 2007-HSA1 | 11/30/2006 | $65,000.00 |
| 11134495 | 2007-HSA1 | 12/6/2006 | $118,500.00 |
| 11134503 | 2007-HSA1 | 12/1/2006 | $88,000.00 |
| 11134505 | 2007-HSA1 | 12/1/2006 | $72,000.00 |
| 11134513 | 2007-HSA1 | 12/6/2006 | $90,000.00 |
| 11134517 | 2007-HSA1 | 12/6/2006 | $29,600.00 |
| 11134523 | 2007-HSA1 | 11/30/2006 | $100,000.00 |
| 11134525 | 2007-HSA1 | 12/1/2006 | $39,000.00 |
| 11134533 | 2007-HSA1 | 11/30/2006 | $25,100.00 |
| 11134535 | 2007-HSA1 | 11/30/2006 | $95,000.00 |
| 11134541 | 2007-HSA1 | 12/6/2006 | $52,600.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11134549 | 2007-HSA1 | 12/1/2006 | $192,000.00 |
| 11134559 | 2007-HSA1 | 12/6/2006 | $90,000.00 |
| 11134567 | 2007-HSA1 | 12/6/2006 | $47,300.00 |
| 11134569 | 2007-HSA1 | 11/29/2006 | $20,000.00 |
| 11134585 | 2007-HSA1 | 12/1/2006 | $40,000.00 |
| 11134593 | 2007-HSA1 | 12/6/2006 | $40,000.00 |
| 11134595 | 2007-HSA1 | 12/1/2006 | $30,000.00 |
| 11134657 | 2007-HSA1 | 11/30/2006 | $22,200.00 |
| 11134659 | 2007-HSA1 | 12/6/2006 | $55,000.00 |
| 11134669 | 2007-HSA1 | 11/30/2006 | $40,000.00 |
| 11134677 | 2007-HSA1 | 12/6/2006 | $50,000.00 |
| 11134679 | 2007-HSA1 | 12/6/2006 | $31,000.00 |
| 11134751 | 2007-HSA1 | 12/1/2006 | $166,000.00 |
| 11134757 | 2007-HSA1 | 12/6/2006 | $143,000.00 |
| 11134767 | 2007-HSA1 | 12/6/2006 | $57,000.00 |
| 11134893 | 2007-HSA1 | 12/8/2006 | $48,000.00 |
| 11135449 | 2007-HSA1 | 12/6/2006 | $215,000.00 |
| 11135453 | 2007-HSA1 | 12/6/2006 | $39,000.00 |
| 11135459 | 2007-HSA1 | 12/11/2006 | $50,000.00 |
| 11135465 | 2007-HSA1 | 12/11/2006 | $33,000.00 |
| 11136567 | 2007-HSA1 | 12/1/2006 | $14,400.00 |
| 11137455 | 2007-HSA1 | 12/12/2006 | $18,200.00 |
| 11137459 | 2007-HSA1 | 12/6/2006 | $26,300.00 |
| 11137469 | 2007-HSA1 | 12/12/2006 | $31,500.00 |
| 11138901 | 2007-HSA1 | 12/8/2006 | $21,900.00 |
| 11138915 | 2007-HSA1 | 12/8/2006 | $52,000.00 |
| 11138931 | 2007-HSA1 | 12/8/2006 | $75,000.00 |
| 11138961 | 2007-HSA1 | 12/11/2006 | $79,000.00 |
| 11139305 | 2007-HSA1 | 12/8/2006 | $25,000.00 |
| 11139581 | 2007-HSA1 | 12/12/2006 | $30,000.00 |
| 11139591 | 2007-HSA1 | 12/8/2006 | $60,000.00 |
| 11139607 | 2007-HSA1 | 12/12/2006 | $27,500.00 |
| 11140261 | 2006-S12 | 12/6/2006 | $446,250.00 |
| 11140315 | 2006-S12 | 12/6/2006 | $594,000.00 |
| 11140319 | 2007-HSA1 | 12/12/2006 | $40,000.00 |
| 11140331 | 2007-HSA1 | 12/8/2006 | $32,000.00 |
| 11140341 | 2007-HSA1 | 12/15/2006 | $161,000.00 |
| 11140409 | 2007-HSA1 | 12/12/2006 | $180,000.00 |
| 11140421 | 2007-HI1 | 12/12/2006 | $40,000.00 |
| 11140443 | 2007-HSA1 | 12/12/2006 | $28,000.00 |
| 11140451 | 2007-HSA1 | 12/11/2006 | $41,000.00 |
| 11140453 | 2007-HSA1 | 12/21/2006 | $44,000.00 |
| 11140467 | 2007-HSA1 | 12/8/2006 | $87,000.00 |
| 11140469 | 2007-HSA1 | 12/12/2006 | $100,000.00 |
| 11140479 | 2007-HSA1 | 12/8/2006 | $36,000.00 |
| 11140485 | 2007-HSA1 | 12/11/2006 | $17,000.00 |
| 11140493 | 2007-HSA1 | 12/8/2006 | $84,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11140497 | 2007-HSA1 | 12/8/2006 | $51,500.00 |
| 11140537 | 2007-HSA1 | 12/13/2006 | $64,800.00 |
| 11140539 | 2007-HSA1 | 12/8/2006 | $35,500.00 |
| 11140543 | 2007-HSA1 | 12/14/2006 | $74,500.00 |
| 11140557 | 2007-HSA1 | 12/12/2006 | $17,200.00 |
| 11142075 | 2007-HSA1 | 12/8/2006 | $25,000.00 |
| 11142077 | 2007-HSA1 | 12/12/2006 | $85,500.00 |
| 11142079 | 2007-HSA1 | 12/14/2006 | $150,000.00 |
| 11142083 | 2007-HSA1 | 12/8/2006 | $18,900.00 |
| 11142223 | 2007-HSA1 | 12/8/2006 | $50,000.00 |
| 11142227 | 2007-HSA1 | 12/6/2006 | $50,000.00 |
| 11142257 | 2007-HSA1 | 12/6/2006 | $68,000.00 |
| 11142259 | 2007-HSA1 | 12/12/2006 | $75,000.00 |
| 11142293 | 2007-HSA1 | 12/6/2006 | $120,000.00 |
| 11142309 | 2007-HSA1 | 12/11/2006 | $37,000.00 |
| 11142457 | 2007-HSA1 | 12/11/2006 | $82,600.00 |
| 11142461 | 2007-QS1 | 12/19/2006 | $126,000.00 |
| 11143249 | 2007-HSA1 | 12/12/2006 | $100,000.00 |
| 11144763 | 2006-S12 | 12/6/2006 | $448,000.00 |
| 11145755 | 2006-S12 | 12/8/2006 | $427,000.00 |
| 11146035 | 2006-S12 | 12/6/2006 | $444,000.00 |
| 11146179 | 2007-HSA1 | 12/18/2006 | $75,000.00 |
| 11146183 | 2006-QS18 | 12/12/2006 | $180,000.00 |
| 11146195 | 2007-HSA1 | 12/8/2006 | $34,500.00 |
| 11146197 | 2006-QO10 | 12/8/2006 | $87,000.00 |
| 11146211 | 2007-HSA2 | 12/12/2006 | $100,000.00 |
| 11146215 | 2006-QO10 | 12/18/2006 | $235,000.00 |
| 11146223 | 2007-HSA1 | 12/12/2006 | $75,000.00 |
| 11146247 | 2007-HSA1 | 12/29/2006 | $60,000.00 |
| 11146261 | 2007-QO2 | 1/23/2007 | $215,000.00 |
| 11146775 | 2006-QO10 | 12/8/2006 | $124,000.00 |
| 11146793 | 2007-HSA1 | 12/12/2006 | $65,000.00 |
| 11146795 | 2006-S12 | 12/12/2006 | $479,600.00 |
| 11147035 | 2007-HSA1 | 12/13/2006 | $15,000.00 |
| 11147049 | 2007-HSA1 | 12/29/2006 | $77,600.00 |
| 11147061 | 2007-HSA1 | 12/8/2006 | $29,500.00 |
| 11147085 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11147095 | 2007-HSA1 | 12/12/2006 | $71,600.00 |
| 11147097 | 2007-HI1 | 12/13/2006 | $32,000.00 |
| 11147157 | 2007-HSA2 | 12/19/2006 | $13,000.00 |
| 11147167 | 2007-HSA1 | 12/11/2006 | $64,800.00 |
| 11147201 | 2007-HSA2 | 12/21/2006 | $92,000.00 |
| 11147213 | 2007-HSA2 | 12/28/2006 | $36,900.00 |
| 11147219 | 2007-HSA2 | 12/12/2006 | $45,000.00 |
| 11147229 | 2007-HSA2 | 12/8/2006 | $83,000.00 |
| 11147237 | 2007-HSA1 | 12/12/2006 | $100,000.00 |
| 11148837 | 2006-S12 | 12/15/2006 | $500,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11148883 | 2007-QO1 | 12/18/2006 | $605,600.00 |
| 11148897 | 2007-QS1 | 12/18/2006 | $128,700.00 |
| 11151223 | 2007-HSA1 | 12/12/2006 | $28,600.00 |
| 11151689 | 2007-HI1 | 12/13/2006 | $40,500.00 |
| 11152953 | 2007-HSA2 | 12/13/2006 | $56,500.00 |
| 11153059 | 2006-QS18 | 12/12/2006 | $134,000.00 |
| 11153069 | 2006-QO10 | 12/12/2006 | $273,000.00 |
| 11153175 | 2007-HSA1 | 12/13/2006 | $22,000.00 |
| 11154697 | 2007-S1 | 12/15/2006 | $396,850.00 |
| 11154767 | 2007-QA1 | 12/13/2006 | $136,000.00 |
| 11154769 | 2007-HSA1 | 12/8/2006 | $100,000.00 |
| 11154773 | 2007-QS1 | 12/20/2006 | $159,000.00 |
| 11154777 | 2007-HSA1 | 12/13/2006 | $50,000.00 |
| 11154795 | 2006-QO10 | 12/13/2006 | $217,600.00 |
| 11154809 | 2007-HSA1 | 12/11/2006 | $58,900.00 |
| 11159285 | 2007-HI1 | 12/12/2006 | $50,000.00 |
| 11159383 | 2006-S12 | 12/12/2006 | $510,700.00 |
| 11162005 | 2007-S2 | 12/18/2006 | $438,245.87 |
| 11163477 | 2007-QO1 | 12/12/2006 | $171,750.00 |
| 11163499 | 2007-S1 | 12/19/2006 | $484,000.00 |
| 11163525 | 2006-QO10 | 12/18/2006 | $310,000.00 |
| 11163711 | 2007-HI1 | 12/12/2006 | $26,400.00 |
| 11163755 | 2007-HI1 | 12/8/2006 | $25,400.00 |
| 11163767 | 2007-HI1 | 12/12/2006 | $49,300.00 |
| 11163985 | 2006-S12 | 12/8/2006 | $491,000.00 |
| 11164033 | 2007-HI1 | 12/12/2006 | $30,000.00 |
| 11164151 | 2007-QO1 | 12/12/2006 | $280,000.00 |
| 11164169 | 2006-QO10 | 12/12/2006 | $148,800.00 |
| 11164177 | 2007-QO2 | 12/14/2006 | $320,000.00 |
| 11166351 | 2006-QO10 | 12/12/2006 | $106,400.00 |
| 11166369 | 2007-HI1 | 12/14/2006 | $49,500.00 |
| 11166375 | 2007-HSA1 | 12/14/2006 | $45,800.00 |
| 11166381 | 2007-HSA1 | 12/18/2006 | $13,300.00 |
| 11166941 | 2007-HI1 | 12/14/2006 | $41,000.00 |
| 11166961 | 2007-HI1 | 12/18/2006 | $25,000.00 |
| 11167091 | 2007-HSA1 | 12/15/2006 | $150,000.00 |
| 11167517 | 2007-HSA1 | 12/19/2006 | $28,000.00 |
| 11167527 | 2007-HSA1 | 12/13/2006 | $31,500.00 |
| 11167539 | 2007-HSA1 | 12/14/2006 | $85,000.00 |
| 11167567 | 2007-HSA1 | 12/14/2006 | $19,500.00 |
| 11167575 | 2007-HSA1 | 12/14/2006 | $45,900.00 |
| 11167577 | 2007-HSA1 | 12/13/2006 | $34,300.00 |
| 11167607 | 2007-HSA1 | 12/26/2006 | $75,000.00 |
| 11167623 | 2007-HI1 | 12/14/2006 | $70,000.00 |
| 11167629 | 2007-S1 | 12/18/2006 | $500,000.00 |
| 11167637 | 2007-HSA1 | 12/14/2006 | $197,600.00 |
| 11167649 | 2007-HSA1 | 12/14/2006 | $68,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11167653 | 2007-HSA1 | 12/14/2006 | $59,000.00 |
| 11167669 | 2006-QO10 | 12/18/2006 | $232,000.00 |
| 11167683 | 2007-HI1 | 12/14/2006 | $25,000.00 |
| 11167727 | 2006-QS17 | 12/18/2006 | $176,000.00 |
| 11167759 | 2007-HI1 | 12/13/2006 | $25,000.00 |
| 11167959 | 2007-QO2 | 1/4/2007 | $185,000.00 |
| 11168059 | 2007-HSA2 | 12/18/2006 | $42,600.00 |
| 11169757 | 2007-HSA1 | 12/19/2006 | $65,000.00 |
| 11169767 | 2007-HSA1 | 12/15/2006 | $54,000.00 |
| 11169769 | 2007-HI1 | 12/15/2006 | $73,000.00 |
| 11169777 | 2007-HSA1 | 12/15/2006 | $60,000.00 |
| 11169789 | 2007-HSA1 | 12/15/2006 | $60,500.00 |
| 11169795 | 2007-HSA1 | 12/14/2006 | $80,000.00 |
| 11169859 | 2007-HSA1 | 12/15/2006 | $71,000.00 |
| 11169861 | 2007-HSA1 | 12/14/2006 | $44,000.00 |
| 11169863 | 2007-HI1 | 12/11/2006 | $50,000.00 |
| 11169869 | 2007-SA1 | 12/15/2006 | $300,000.00 |
| 11169935 | 2007-HSA1 | 12/14/2006 | $15,050.00 |
| 11169945 | 2007-HSA1 | 12/15/2006 | $16,500.00 |
| 11169947 | 2007-QO1 | 12/13/2006 | $280,000.00 |
| 11169973 | 2007-HSA1 | 12/14/2006 | $80,000.00 |
| 11170005 | 2007-HSA1 | 12/14/2006 | $32,400.00 |
| 11170023 | 2007-HSA1 | 12/14/2006 | $73,000.00 |
| 11170115 | 2007-HSA1 | 12/14/2006 | $143,200.00 |
| 11170127 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11170147 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11170153 | 2007-HSA1 | 12/14/2006 | $69,000.00 |
| 11170163 | 2006-QO10 | 12/11/2006 | $484,000.00 |
| 11170165 | 2007-HSA1 | 12/14/2006 | $70,000.00 |
| 11170191 | 2007-HI1 | 12/14/2006 | $65,000.00 |
| 11170237 | 2007-HSA1 | 12/15/2006 | $62,000.00 |
| 11170255 | 2007-HSA1 | 12/15/2006 | $93,000.00 |
| 11170271 | 2007-HSA1 | 12/14/2006 | $40,000.00 |
| 11170275 | 2007-HSA1 | 12/15/2006 | $43,800.00 |
| 11170293 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11170299 | 2007-HSA1 | 12/14/2006 | $70,000.00 |
| 11170311 | 2007-HSA1 | 12/14/2006 | $78,000.00 |
| 11170319 | 2007-HSA1 | 12/14/2006 | $55,000.00 |
| 11170325 | 2007-HSA1 | 12/15/2006 | $100,000.00 |
| 11170343 | 2007-HSA1 | 12/14/2006 | $60,000.00 |
| 11170361 | 2007-HSA1 | 12/14/2006 | $59,100.00 |
| 11170367 | 2007-HSA1 | 12/14/2006 | $32,000.00 |
| 11170375 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11170381 | 2007-HSA1 | 12/14/2006 | $75,000.00 |
| 11170393 | 2007-HSA1 | 12/14/2006 | $64,000.00 |
| 11170397 | 2007-HSA1 | 12/14/2006 | $50,000.00 |
| 11170579 | 2007-HSA1 | 12/14/2006 | $48,800.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11170923 | 2007-HSA1 | 12/14/2006 | $75,700.00 |
| 11170925 | 2007-HSA1 | 12/14/2006 | $19,300.00 |
| 11170939 | 2007-HSA1 | 12/13/2006 | $52,000.00 |
| 11170941 | 2007-HSA1 | 12/14/2006 | $75,000.00 |
| 11170943 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11170959 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11171311 | 2007-QO1 | 12/14/2006 | $208,800.00 |
| 11171405 | 2007-S1 | 12/18/2006 | $596,000.00 |
| 11171449 | 2007-HSA1 | 12/14/2006 | $42,000.00 |
| 11171453 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11171455 | 2007-HSA1 | 12/15/2006 | $30,000.00 |
| 11171457 | 2007-HSA1 | 12/14/2006 | $52,000.00 |
| 11171485 | 2007-HSA1 | 12/15/2006 | $100,000.00 |
| 11171487 | 2007-HSA1 | 12/14/2006 | $57,250.00 |
| 11171499 | 2007-HSA1 | 12/15/2006 | $62,000.00 |
| 11171501 | 2007-HSA1 | 12/14/2006 | $190,000.00 |
| 11171515 | 2007-HSA1 | 12/14/2006 | $21,700.00 |
| 11171531 | 2007-HSA1 | 12/15/2006 | $68,500.00 |
| 11171533 | 2007-HSA1 | 12/14/2006 | $27,200.00 |
| 11171545 | 2007-QO1 | 12/19/2006 | $200,000.00 |
| 11171551 | 2007-HSA1 | 12/14/2006 | $90,000.00 |
| 11171553 | 2007-HI1 | 12/14/2006 | $75,000.00 |
| 11171557 | 2007-HSA1 | 12/15/2006 | $95,000.00 |
| 11171569 | 2007-HSA1 | 12/14/2006 | $81,000.00 |
| 11171571 | 2007-HI1 | 12/14/2006 | $39,100.00 |
| 11171575 | 2007-QO1 | 12/18/2006 | $208,400.00 |
| 11171591 | 2007-HSA1 | 12/15/2006 | $60,000.00 |
| 11171603 | 2007-HSA1 | 12/15/2006 | $167,000.00 |
| 11171621 | 2007-HSA1 | 12/15/2006 | $80,000.00 |
| 11171629 | 2007-HSA1 | 12/15/2006 | $32,000.00 |
| 11171643 | 2007-HSA1 | 12/15/2006 | $70,000.00 |
| 11173267 | 2006-QO10 | 12/14/2006 | $317,000.00 |
| 11173315 | 2007-QS3 | 2/12/2007 | $99,200.00 |
| 11173317 | 2007-HSA1 | 12/15/2006 | $104,100.00 |
| 11173327 | 2007-QS2 | 12/18/2006 | $208,000.00 |
| 11173553 | 2007-HSA3 | 12/15/2006 | $199,867.24 |
| 11173555 | 2006-QO10 | 12/18/2006 | $161,250.00 |
| 11173565 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11173567 | 2007-HSA1 | 12/15/2006 | $17,300.00 |
| 11173631 | 2007-HSA1 | 12/15/2006 | $66,000.00 |
| 11173639 | 2007-HSA1 | 12/15/2006 | $20,000.00 |
| 11173641 | 2007-QO1 | 12/21/2006 | $120,000.00 |
| 11173645 | 2007-HSA1 | 12/18/2006 | $40,000.00 |
| 11173653 | 2007-HI1 | 12/27/2006 | $32,000.00 |
| 11173667 | 2007-HSA1 | 12/15/2006 | $25,900.00 |
| 11173825 | 2007-QO1 | 12/26/2006 | $197,000.00 |
| 11173831 | 2007-HSA1 | 12/14/2006 | $100,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11173839 | 2007-HSA1 | 12/15/2006 | $134,000.00 |
| 11173873 | 2007-HSA1 | 12/18/2006 | $83,200.00 |
| 11173901 | 2007-HI1 | 12/14/2006 | $50,000.00 |
| 11173919 | 2007-HI1 | 12/14/2006 | $50,000.00 |
| 11174001 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11174019 | 2007-HI1 | 12/15/2006 | $75,000.00 |
| 11174021 | 2007-HSA1 | 12/14/2006 | $45,000.00 |
| 11174031 | 2007-HSA1 | 12/14/2006 | $64,000.00 |
| 11174037 | 2007-HSA1 | 12/14/2006 | $39,300.00 |
| 11174047 | 2007-HSA1 | 12/14/2006 | $29,900.00 |
| 11174407 | 2007-HI1 | 12/19/2006 | $32,200.00 |
| 11174923 | 2007-HSA1 | 12/15/2006 | $43,000.00 |
| 11175167 | 2007-HSA1 | 12/14/2006 | $18,000.00 |
| 11175619 | 2007-HSA1 | 12/14/2006 | $82,500.00 |
| 11175969 | 2007-QO2 | 12/18/2006 | $287,000.00 |
| 11175995 | 2007-HSA1 | 12/18/2006 | $64,800.00 |
| 11175997 | 2007-HSA1 | 12/18/2006 | $100,000.00 |
| 11176011 | 2006-QO10 | 12/14/2006 | $320,000.00 |
| 11177155 | 2007-HSA1 | 12/18/2006 | $112,600.00 |
| 11177181 | 2007-QS4 | 12/15/2006 | $225,000.00 |
| 11177183 | 2007-HSA2 | 12/15/2006 | $35,000.00 |
| 11177199 | 2007-QS4 | 12/15/2006 | $116,000.00 |
| 11179039 | 2007-HSA2 | 12/14/2006 | $40,000.00 |
| 11179043 | 2007-HI1 | 12/15/2006 | $50,000.00 |
| 11179079 | 2007-HSA1 | 12/19/2006 | $69,500.00 |
| 11179095 | 2007-HSA1 | 12/14/2006 | $59,000.00 |
| 11179099 | 2007-HI1 | 12/19/2006 | $67,400.00 |
| 11179119 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11179121 | 2007-HSA1 | 12/18/2006 | $15,000.00 |
| 11179127 | 2007-HSA1 | 12/14/2006 | $50,000.00 |
| 11179149 | 2007-HSA1 | 12/18/2006 | $105,000.00 |
| 11179171 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11179183 | 2007-HSA1 | 12/14/2006 | $80,000.00 |
| 11179185 | 2007-HSA1 | 12/14/2006 | $18,000.00 |
| 11179193 | 2007-HSA1 | 12/19/2006 | $35,000.00 |
| 11179205 | 2007-HSA1 | 12/18/2006 | $10,000.00 |
| 11179207 | 2007-HSA1 | 12/14/2006 | $65,000.00 |
| 11179213 | 2007-HSA1 | 12/14/2006 | $30,000.00 |
| 11179267 | 2007-HSA1 | 12/14/2006 | $100,000.00 |
| 11179411 | 2007-HSA1 | 12/14/2006 | $65,000.00 |
| 11179565 | 2007-HSA1 | 12/26/2006 | $86,000.00 |
| 11179625 | 2007-HSA1 | 12/20/2006 | $95,000.00 |
| 11179687 | 2007-HSA1 | 12/18/2006 | $25,000.00 |
| 11181011 | 2007-S1 | 12/18/2006 | $450,000.00 |
| 11181411 | 2007-QS1 | 12/21/2006 | $120,000.00 |
| 11181477 | 2007-HI1 | 12/18/2006 | $24,500.00 |
| 11181485 | 2007-HSA1 | 12/18/2006 | $81,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11181491 | 2007-QO1 | 12/18/2006 | $172,000.00 |
| 11181501 | 2007-HSA1 | 12/19/2006 | $40,900.00 |
| 11181505 | 2007-QS1 | 12/18/2006 | $225,000.00 |
| 11181513 | 2007-HSA1 | 12/19/2006 | $26,000.00 |
| 11181519 | 2007-HSA1 | 12/26/2006 | $63,500.00 |
| 11181521 | 2007-QO2 | 12/18/2006 | $163,200.00 |
| 11181545 | 2007-HI1 | 12/19/2006 | $59,900.00 |
| 11187703 | 2007-HI1 | 12/19/2006 | $35,000.00 |
| 11187725 | 2007-HSA1 | 12/19/2006 | $21,500.00 |
| 11187755 | 2007-HSA1 | 12/26/2006 | $17,700.00 |
| 11188755 | 2007-S1 | 12/18/2006 | $520,000.00 |
| 11188763 | 2006-QO10 | 12/18/2006 | $127,000.00 |
| 11188783 | 2007-QS1 | 12/20/2006 | $123,314.77 |
| 11188785 | 2007-QO1 | 12/19/2006 | $212,500.00 |
| 11189869 | 2007-HSA1 | 12/19/2006 | $64,000.00 |
| 11189893 | 2007-HI1 | 12/20/2006 | $50,000.00 |
| 11189923 | 2007-HSA1 | 12/19/2006 | $47,500.00 |
| 11189945 | 2007-HSA1 | 12/21/2006 | $75,000.00 |
| 11190071 | 2007-HSA1 | 12/21/2006 | $55,000.00 |
| 11190085 | 2007-HSA1 | 12/21/2006 | $30,000.00 |
| 11190279 | 2007-HSA1 | 12/21/2006 | $75,000.00 |
| 11190297 | 2007-HSA1 | 12/21/2006 | $18,500.00 |
| 11190307 | 2007-HI1 | 12/21/2006 | $50,000.00 |
| 11190423 | 2007-HSA1 | 12/21/2006 | $15,000.00 |
| 11192729 | 2007-QO1 | 12/20/2006 | $265,000.00 |
| 11192731 | 2007-HSA1 | 12/19/2006 | $36,500.00 |
| 11193601 | 2007-HI1 | 12/21/2006 | $75,000.00 |
| 11193605 | 2007-S1 | 12/19/2006 | $500,000.00 |
| 11194013 | 2007-HI1 | 12/21/2006 | $35,000.00 |
| 11194449 | 2007-HI1 | 12/26/2006 | $13,000.00 |
| 11194645 | 2007-HI1 | 12/21/2006 | $40,300.00 |
| 11196297 | 2007-HSA1 | 12/21/2006 | $75,000.00 |
| 11196319 | 2007-HSA1 | 12/21/2006 | $50,000.00 |
| 11196327 | 2007-HSA1 | 12/21/2006 | $145,950.00 |
| 11196347 | 2007-HSA1 | 12/21/2006 | $37,500.00 |
| 11196361 | 2007-HSA1 | 12/21/2006 | $45,000.00 |
| 11196365 | 2007-HSA1 | 12/21/2006 | $26,000.00 |
| 11196387 | 2007-HSA1 | 12/28/2006 | $44,900.00 |
| 11196405 | 2007-HSA1 | 12/28/2006 | $39,000.00 |
| 11196437 | 2007-HSA1 | 12/21/2006 | $58,000.00 |
| 11196465 | 2007-HSA1 | 12/21/2006 | $100,000.00 |
| 11196521 | 2007-HSA1 | 12/28/2006 | $46,000.00 |
| 11196541 | 2007-HSA1 | 12/21/2006 | $30,000.00 |
| 11196569 | 2007-HSA1 | 12/21/2006 | $42,000.00 |
| 11196589 | 2007-HSA1 | 12/21/2006 | $44,000.00 |
| 11196603 | 2007-HSA1 | 12/21/2006 | $17,000.00 |
| 11196639 | 2007-HSA1 | 12/21/2006 | $45,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11196665 | 2007-HSA1 | 12/29/2006 | $26,000.00 |
| 11196727 | 2007-HSA1 | 12/28/2006 | $67,500.00 |
| 11196757 | 2007-HSA1 | 12/29/2006 | $19,300.00 |
| 11196809 | 2007-HSA1 | 12/28/2006 | $80,000.00 |
| 11196895 | 2007-HSA1 | 12/28/2006 | $48,500.00 |
| 11196941 | 2007-HSA1 | 12/29/2006 | $58,300.00 |
| 11197325 | 2007-SA1 | 12/26/2006 | $135,200.00 |
| 11197403 | 2007-QO1 | 12/20/2006 | $187,500.00 |
| 11197495 | 2007-HSA2 | 12/29/2006 | $96,000.00 |
| 11197621 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11197625 | 2007-QO1 | 12/19/2006 | $231,000.00 |
| 11197627 | 2007-HSA1 | 12/28/2006 | $64,000.00 |
| 11197637 | 2007-HSA1 | 12/28/2006 | $139,000.00 |
| 11197639 | 2007-HSA1 | 12/29/2006 | $25,300.00 |
| 11197647 | 2007-HSA1 | 12/21/2006 | $150,000.00 |
| 11197697 | 2007-HSA1 | 12/29/2006 | $38,000.00 |
| 11197849 | 2007-HSA1 | 12/29/2006 | $56,900.00 |
| 11197851 | 2007-HSA1 | 12/28/2006 | $31,500.00 |
| 11197853 | 2007-HSA1 | 12/28/2006 | $25,000.00 |
| 11197855 | 2007-HSA1 | 12/28/2006 | $35,000.00 |
| 11197857 | 2007-HSA1 | 12/29/2006 | $100,000.00 |
| 11197859 | 2007-HSA1 | 12/28/2006 | $42,000.00 |
| 11197861 | 2007-HSA1 | 12/28/2006 | $60,000.00 |
| 11197863 | 2007-HSA1 | 12/29/2006 | $73,000.00 |
| 11197865 | 2007-HSA1 | 12/28/2006 | $42,000.00 |
| 11197867 | 2007-HSA1 | 12/27/2006 | $100,000.00 |
| 11197869 | 2007-HSA1 | 12/29/2006 | $40,000.00 |
| 11197871 | 2007-HSA1 | 12/28/2006 | $85,000.00 |
| 11197873 | 2007-HSA1 | 12/28/2006 | $110,000.00 |
| 11197875 | 2007-HSA1 | 12/29/2006 | $55,000.00 |
| 11197877 | 2007-HSA1 | 12/29/2006 | $29,000.00 |
| 11197879 | 2007-HSA1 | 12/27/2006 | $52,000.00 |
| 11197881 | 2007-HSA1 | 12/28/2006 | $33,200.00 |
| 11197883 | 2007-HSA1 | 12/29/2006 | $50,000.00 |
| 11197885 | 2007-HSA1 | 12/29/2006 | $40,500.00 |
| 11197887 | 2007-HSA1 | 12/27/2006 | $35,000.00 |
| 11197889 | 2007-HSA1 | 12/28/2006 | $80,000.00 |
| 11197891 | 2007-HSA1 | 12/28/2006 | $50,000.00 |
| 11197893 | 2007-HSA1 | 1/3/2007 | $60,000.00 |
| 11197895 | 2007-HSA1 | 12/29/2006 | $75,000.00 |
| 11197899 | 2007-HSA1 | 12/28/2006 | $78,500.00 |
| 11197901 | 2007-HSA1 | 12/29/2006 | $40,000.00 |
| 11197903 | 2007-HI1 | 12/26/2006 | $34,000.00 |
| 11197905 | 2007-HSA1 | 12/28/2006 | $39,400.00 |
| 11197907 | 2007-HSA1 | 12/29/2006 | $62,000.00 |
| 11197909 | 2007-HSA1 | 12/28/2006 | $31,300.00 |
| 11197911 | 2007-HSA1 | 12/28/2006 | $100,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11197913 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11197917 | 2007-HSA1 | 12/28/2006 | $25,000.00 |
| 11197919 | 2007-HSA1 | 12/28/2006 | $150,000.00 |
| 11197921 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11197923 | 2007-HSA1 | 12/29/2006 | $40,000.00 |
| 11198781 | 2007-HSA1 | 12/26/2006 | $39,000.00 |
| 11198865 | 2007-HSA1 | 12/28/2006 | $68,000.00 |
| 11199089 | 2007-HSA1 | 12/28/2006 | $45,000.00 |
| 11199105 | 2007-HSA2 | 12/28/2006 | $20,000.00 |
| 11199117 | 2007-HSA1 | 12/21/2006 | $48,500.00 |
| 11199155 | 2007-HSA1 | 12/28/2006 | $33,000.00 |
| 11199475 | 2007-QO1 | 12/21/2006 | $220,000.00 |
| 11199495 | 2007-QS1 | 12/21/2006 | $151,600.00 |
| 11199515 | 2007-QS2 | 12/21/2006 | $212,500.00 |
| 11199529 | 2007-S1 | 12/21/2006 | $451,200.00 |
| 11199723 | 2007-QO1 | 12/21/2006 | $151,000.00 |
| 11199737 | 2007-S1 | 12/21/2006 | $501,000.00 |
| 11199817 | 2007-QS1 | 12/21/2006 | $132,000.00 |
| 11199847 | 2007-S2 | 12/21/2006 | $473,700.00 |
| 11199869 | 2007-QS1 | 12/21/2006 | $249,000.00 |
| 11201107 | 2007-QO1 | 12/29/2006 | $191,000.00 |
| 11201291 | 2007-HI1 | 12/29/2006 | $53,100.00 |
| 11201305 | 2007-QO1 | 12/27/2006 | $172,000.00 |
| 11202225 | 2007-QO1 | 12/21/2006 | $332,000.00 |
| 11203981 | 2007-HSA2 | 1/16/2007 | $43,000.00 |
| 11203997 | 2007-HSA2 | 12/29/2006 | $30,000.00 |
| 11204001 | 2007-HSA2 | 12/29/2006 | $49,000.00 |
| 11204007 | 2007-HI1 | 12/29/2006 | $30,000.00 |
| 11204009 | 2007-HSA2 | 1/4/2007 | $57,700.00 |
| 11204015 | 2007-HSA2 | 12/29/2006 | $33,000.00 |
| 11204019 | 2007-HSA2 | 12/29/2006 | $40,000.00 |
| 11204021 | 2007-HSA2 | 12/28/2006 | $31,000.00 |
| 11204035 | 2007-HI1 | 12/28/2006 | $30,000.00 |
| 11204043 | 2007-HSA2 | 12/28/2006 | $32,000.00 |
| 11204047 | 2007-HI1 | 12/29/2006 | $30,000.00 |
| 11204055 | 2007-HSA2 | 1/3/2007 | $40,000.00 |
| 11204059 | 2007-HI1 | 12/29/2006 | $30,000.00 |
| 11204061 | 2007-HSA2 | 12/29/2006 | $60,000.00 |
| 11204063 | 2007-HSA2 | 12/29/2006 | $138,000.00 |
| 11204065 | 2007-HSA2 | 12/29/2006 | $83,000.00 |
| 11204069 | 2007-HSA2 | 12/29/2006 | $54,000.00 |
| 11204075 | 2007-HSA2 | 1/4/2007 | $50,050.00 |
| 11204081 | 2007-HSA2 | 1/2/2007 | $45,500.00 |
| 11204083 | 2007-HSA2 | 1/4/2007 | $25,350.00 |
| 11204097 | 2007-HSA2 | 1/2/2007 | $54,000.00 |
| 11204111 | 2007-HSA2 | 12/29/2006 | $38,600.00 |
| 11204135 | 2007-HSA2 | 12/28/2006 | $40,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11204141 | 2007-HSA2 | 1/2/2007 | $57,000.00 |
| 11204147 | 2007-HSA2 | 12/29/2006 | $48,000.00 |
| 11204149 | 2007-HSA2 | 12/28/2006 | $33,000.00 |
| 11204157 | 2007-HSA1 | 12/28/2006 | $38,000.00 |
| 11204159 | 2007-HSA1 | 12/28/2006 | $144,500.00 |
| 11204161 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11204163 | 2007-HSA1 | 12/29/2006 | $45,000.00 |
| 11204165 | 2007-HSA1 | 12/28/2006 | $50,000.00 |
| 11204177 | 2007-HSA1 | 12/28/2006 | $175,000.00 |
| 11204181 | 2007-HSA1 | 1/31/2007 | $85,400.00 |
| 11204185 | 2007-HSA1 | 12/28/2006 | $150,000.00 |
| 11204187 | 2007-HSA1 | 12/29/2006 | $38,000.00 |
| 11204191 | 2007-HSA1 | 12/29/2006 | $32,000.00 |
| 11204195 | 2007-HSA1 | 12/29/2006 | $83,000.00 |
| 11204197 | 2007-HSA1 | 12/28/2006 | $58,300.00 |
| 11204201 | 2007-HSA1 | 12/29/2006 | $27,000.00 |
| 11204203 | 2007-HSA1 | 12/28/2006 | $29,000.00 |
| 11204205 | 2007-HSA1 | 12/29/2006 | $98,000.00 |
| 11204207 | 2007-HSA1 | 12/28/2006 | $55,000.00 |
| 11204209 | 2007-HSA1 | 12/28/2006 | $37,000.00 |
| 11204211 | 2007-HSA1 | 12/28/2006 | $146,000.00 |
| 11204215 | 2007-HSA1 | 12/28/2006 | $68,000.00 |
| 11204219 | 2007-HSA1 | 12/28/2006 | $42,000.00 |
| 11204225 | 2007-HSA1 | 12/29/2006 | $20,000.00 |
| 11204227 | 2007-HSA1 | 12/28/2006 | $97,400.00 |
| 11204233 | 2007-HSA1 | 12/28/2006 | $89,000.00 |
| 11204237 | 2007-HSA1 | 12/28/2006 | $53,300.00 |
| 11204239 | 2007-HSA1 | 12/29/2006 | $142,000.00 |
| 11204241 | 2007-HSA1 | 12/29/2006 | $52,400.00 |
| 11204243 | 2007-HSA1 | 12/28/2006 | $45,000.00 |
| 11204245 | 2007-HSA1 | 12/29/2006 | $49,100.00 |
| 11204247 | 2007-HSA1 | 12/28/2006 | $150,000.00 |
| 11204249 | 2007-HSA1 | 1/2/2007 | $25,000.00 |
| 11204251 | 2007-HSA1 | 12/29/2006 | $63,400.00 |
| 11204257 | 2007-HSA1 | 12/29/2006 | $100,000.00 |
| 11204259 | 2007-HSA1 | 12/29/2006 | $130,000.00 |
| 11204263 | 2007-HSA1 | 12/28/2006 | $120,000.00 |
| 11204265 | 2007-HSA1 | 12/29/2006 | $50,000.00 |
| 11204267 | 2007-HSA1 | 12/28/2006 | $150,000.00 |
| 11204273 | 2007-HSA1 | 1/2/2007 | $40,000.00 |
| 11204277 | 2007-HSA1 | 12/28/2006 | $62,000.00 |
| 11204279 | 2007-HSA1 | 12/28/2006 | $12,800.00 |
| 11204281 | 2007-HSA1 | 12/28/2006 | $36,000.00 |
| 11204283 | 2007-HSA1 | 12/28/2006 | $72,800.00 |
| 11204285 | 2007-HSA1 | 12/28/2006 | $145,000.00 |
| 11204287 | 2007-HSA1 | 12/28/2006 | $60,500.00 |
| 11204289 | 2007-HSA1 | 12/28/2006 | $40,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11204293 | 2007-HSA1 | 12/28/2006 | $40,000.00 |
| 11204297 | 2007-HSA1 | 12/28/2006 | $99,000.00 |
| 11204299 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11204301 | 2007-HSA1 | 12/28/2006 | $27,700.00 |
| 11204309 | 2007-HSA1 | 12/29/2006 | $54,000.00 |
| 11204311 | 2007-HSA1 | 1/2/2007 | $70,000.00 |
| 11204315 | 2007-HSA1 | 12/29/2006 | $100,000.00 |
| 11204317 | 2007-HSA1 | 12/29/2006 | $44,700.00 |
| 11204319 | 2007-HSA1 | 12/29/2006 | $125,000.00 |
| 11204321 | 2007-HSA1 | 12/29/2006 | $73,500.00 |
| 11204323 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11204325 | 2007-HSA1 | 12/29/2006 | $80,000.00 |
| 11204333 | 2007-HSA1 | 12/28/2006 | $42,450.00 |
| 11204335 | 2007-HSA1 | 12/28/2006 | $35,200.00 |
| 11204341 | 2007-HSA1 | 12/28/2006 | $35,000.00 |
| 11204343 | 2007-HSA1 | 12/28/2006 | $150,000.00 |
| 11204345 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11204347 | 2007-HSA1 | 12/28/2006 | $48,200.00 |
| 11204351 | 2007-HSA1 | 12/28/2006 | $85,000.00 |
| 11204353 | 2007-HSA1 | 12/28/2006 | $85,000.00 |
| 11204355 | 2007-HSA1 | 12/29/2006 | $43,300.00 |
| 11204359 | 2007-HSA1 | 12/29/2006 | $53,300.00 |
| 11204361 | 2007-HSA1 | 12/29/2006 | $25,000.00 |
| 11204365 | 2007-HSA1 | 1/2/2007 | $30,000.00 |
| 11204369 | 2007-HSA1 | 12/28/2006 | $151,200.00 |
| 11204373 | 2007-HSA1 | 12/28/2006 | $75,000.00 |
| 11204375 | 2007-HSA1 | 12/28/2006 | $21,550.00 |
| 11204379 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11204383 | 2007-HSA1 | 12/28/2006 | $71,000.00 |
| 11204387 | 2007-HSA1 | 12/29/2006 | $90,000.00 |
| 11204391 | 2007-HSA1 | 12/29/2006 | $100,000.00 |
| 11204393 | 2007-HSA1 | 12/28/2006 | $30,000.00 |
| 11204395 | 2007-HSA1 | 12/28/2006 | $80,800.00 |
| 11204397 | 2007-HSA1 | 12/28/2006 | $19,100.00 |
| 11204403 | 2007-HSA1 | 12/28/2006 | $119,000.00 |
| 11204405 | 2007-HSA1 | 12/29/2006 | $17,000.00 |
| 11204407 | 2007-HSA1 | 12/28/2006 | $67,500.00 |
| 11204411 | 2007-HSA1 | 12/28/2006 | $84,600.00 |
| 11204415 | 2007-HSA1 | 12/28/2006 | $100,000.00 |
| 11204417 | 2007-HSA1 | 12/28/2006 | $32,000.00 |
| 11204421 | 2007-HSA1 | 12/29/2006 | $75,000.00 |
| 11204423 | 2007-HSA1 | 12/29/2006 | $42,000.00 |
| 11204425 | 2007-HSA1 | 12/28/2006 | $94,000.00 |
| 11204427 | 2007-HSA1 | 12/28/2006 | $39,300.00 |
| 11204429 | 2007-HSA1 | 12/28/2006 | $110,000.00 |
| 11204435 | 2007-HSA1 | 12/28/2006 | $71,000.00 |
| 11204437 | 2007-HSA1 | 12/28/2006 | $150,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11204439 | 2007-HSA1 | 12/28/2006 | $60,000.00 |
| 11204445 | 2007-HSA1 | 12/28/2006 | $42,300.00 |
| 11204449 | 2007-HSA1 | 12/28/2006 | $37,100.00 |
| 11204451 | 2007-HSA1 | 12/28/2006 | $20,000.00 |
| 11204455 | 2007-HSA1 | 12/28/2006 | $32,000.00 |
| 11204459 | 2007-HSA1 | 12/28/2006 | $21,500.00 |
| 11204461 | 2007-HSA1 | 12/29/2006 | $20,400.00 |
| 11204463 | 2007-HSA1 | 12/29/2006 | $25,200.00 |
| 11204465 | 2007-HSA1 | 12/28/2006 | $32,000.00 |
| 11204467 | 2007-HSA1 | 12/29/2006 | $63,100.00 |
| 11204471 | 2007-HSA1 | 12/29/2006 | $60,000.00 |
| 11204475 | 2007-HSA1 | 12/29/2006 | $59,700.00 |
| 11204477 | 2007-HSA1 | 12/29/2006 | $140,000.00 |
| 11204481 | 2007-HSA1 | 12/29/2006 | $100,000.00 |
| 11204483 | 2007-HSA1 | 12/29/2006 | $91,000.00 |
| 11204485 | 2007-HSA1 | 12/29/2006 | $100,000.00 |
| 11204487 | 2007-HSA1 | 12/29/2006 | $66,900.00 |
| 11204489 | 2007-HSA1 | 12/28/2006 | $55,000.00 |
| 11204491 | 2007-HSA1 | 12/29/2006 | $50,100.00 |
| 11204495 | 2007-HSA1 | 1/4/2007 | $85,500.00 |
| 11204499 | 2007-HSA1 | 1/3/2007 | $110,000.00 |
| 11204501 | 2007-HSA1 | 1/2/2007 | $54,900.00 |
| 11204503 | 2007-HSA1 | 12/29/2006 | $56,000.00 |
| 11204505 | 2007-HSA1 | 1/4/2007 | $126,300.00 |
| 11204509 | 2007-HSA1 | 1/2/2007 | $90,000.00 |
| 11204511 | 2007-HSA1 | 12/29/2006 | $41,000.00 |
| 11204513 | 2007-HSA1 | 12/28/2006 | $54,000.00 |
| 11204517 | 2007-HSA1 | 12/29/2006 | $33,500.00 |
| 11204519 | 2007-HSA1 | 12/28/2006 | $63,000.00 |
| 11204523 | 2007-HSA1 | 12/28/2006 | $91,000.00 |
| 11206895 | 2007-HI1 | 12/27/2006 | $33,000.00 |
| 11206897 | 2007-HI1 | 12/27/2006 | $46,000.00 |
| 11206901 | 2007-HI1 | 12/27/2006 | $40,000.00 |
| 11207105 | 2007-S1 | 12/29/2006 | $613,000.00 |
| 11207131 | 2007-QO2 | 12/29/2006 | $101,500.00 |
| 11207135 | 2007-HI1 | 12/27/2006 | $35,700.00 |
| 11207165 | 2007-HI1 | 1/4/2007 | $49,000.00 |
| 11207167 | 2007-QO1 | 12/28/2006 | $181,500.00 |
| 11207671 | 2007-QO3 | 2/28/2007 | $308,000.00 |
| 11210673 | 2007-HI1 | 12/29/2006 | $36,700.00 |
| 11210681 | 2007-S1 | 12/29/2006 | $441,000.00 |
| 11210683 | 2007-HI1 | 1/4/2007 | $27,000.00 |
| 11210691 | 2007-QS1 | 12/27/2006 | $394,567.82 |
| 11210751 | 2007-HI1 | 12/28/2006 | $55,000.00 |
| 11210755 | 2007-HI1 | 12/28/2006 | $48,500.00 |
| 11210765 | 2007-QS2 | 12/27/2006 | $150,000.00 |
| 11210771 | 2007-HI1 | 12/29/2006 | $44,800.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11210783 | 2007-HI1 | 12/29/2006 | $75,000.00 |
| 11210785 | 2007-HI1 | 1/4/2007 | $30,000.00 |
| 11210789 | 2007-QS2 | 12/29/2006 | $156,000.00 |
| 11210811 | 2007-HI1 | 1/4/2007 | $37,400.00 |
| 11210813 | 2007-HI1 | 12/29/2006 | $40,000.00 |
| 11210819 | 2007-S1 | 12/29/2006 | $364,000.00 |
| 11211135 | 2007-HI1 | 12/28/2006 | $35,000.00 |
| 11211139 | 2007-QO1 | 12/27/2006 | $520,000.00 |
| 11211163 | 2007-QO1 | 12/28/2006 | $512,000.00 |
| 11211171 | 2007-S1 | 1/11/2007 | $475,000.00 |
| 11211295 | 2007-QO2 | 12/27/2006 | $112,000.00 |
| 11211323 | 2007-QO2 | 1/4/2007 | $256,000.00 |
| 11211571 | 2007-S1 | 12/29/2006 | $816,700.00 |
| 11216521 | 2007-QA3 | 1/11/2007 | $112,800.00 |
| 11216545 | 2007-HI1 | 12/29/2006 | $40,000.00 |
| 11216933 | 2007-S1 | 12/28/2006 | $495,000.00 |
| 11216951 | 2007-HI1 | 12/28/2006 | $37,000.00 |
| 11216991 | 2007-HI1 | 12/29/2006 | $30,000.00 |
| 11217091 | 2007-HI1 | 12/29/2006 | $44,400.00 |
| 11217127 | 2007-QO1 | 12/29/2006 | $230,000.00 |
| 11219853 | 2007-HSA2 | 1/30/2007 | $40,000.00 |
| 11220841 | 2007-QO1 | 12/29/2006 | $168,000.00 |
| 11220853 | 2007-HI1 | 12/28/2006 | $42,500.00 |
| 11222345 | 2007-HSA1 | 1/8/2007 | $118,000.00 |
| 11222379 | 2007-QS2 | 1/3/2007 | $264,000.00 |
| 11223183 | 2007-QO2 | 1/4/2007 | $253,000.00 |
| 11223207 | 2007-QO2 | 1/4/2007 | $361,000.00 |
| 11223349 | 2007-HSA1 | 1/12/2007 | $17,800.00 |
| 11223399 | 2007-HSA1 | 1/16/2007 | $20,000.00 |
| 11223435 | 2007-HSA1 | 1/16/2007 | $210,000.00 |
| 11223437 | 2007-HSA1 | 1/16/2007 | $36,100.00 |
| 11223451 | 2007-HSA1 | 1/16/2007 | $35,000.00 |
| 11223459 | 2007-HSA1 | 1/16/2007 | $76,700.00 |
| 11223463 | 2007-S1 | 1/4/2007 | $440,000.00 |
| 11223491 | 2007-HI1 | 1/4/2007 | $51,000.00 |
| 11224671 | 2007-S1 | 1/12/2007 | $468,000.00 |
| 11224687 | 2007-S1 | 1/4/2007 | $441,900.00 |
| 11224689 | 2007-S1 | 1/3/2007 | $487,000.00 |
| 11224697 | 2007-QO1 | 1/12/2007 | $120,000.00 |
| 11224721 | 2007-QO1 | 1/11/2007 | $237,400.00 |
| 11224835 | 2007-HSA2 | 1/11/2007 | $48,000.00 |
| 11224847 | 2007-HSA2 | 1/3/2007 | $26,500.00 |
| 11224881 | 2007-HI1 | 1/11/2007 | $20,000.00 |
| 11224883 | 2007-HI1 | 1/5/2007 | $35,000.00 |
| 11224899 | 2007-HI1 | 1/4/2007 | $35,000.00 |
| 11224901 | 2007-HSA1 | 1/11/2007 | $60,000.00 |
| 11224905 | 2007-HSA1 | 1/11/2007 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11224907 | 2007-HSA1 | 1/17/2007 | $61,000.00 |
| 11224909 | 2007-HSA1 | 1/11/2007 | $75,000.00 |
| 11224911 | 2007-HSA1 | 1/3/2007 | $28,000.00 |
| 11224913 | 2007-HSA1 | 1/17/2007 | $46,800.00 |
| 11224917 | 2007-HSA1 | 1/11/2007 | $60,000.00 |
| 11224919 | 2007-HSA1 | 1/3/2007 | $80,000.00 |
| 11224921 | 2007-HSA1 | 1/11/2007 | $149,000.00 |
| 11225983 | 2007-S1 | 1/5/2007 | $487,500.00 |
| 11227731 | 2007-HI1 | 1/4/2007 | $35,000.00 |
| 11227763 | 2007-QS1 | 1/5/2007 | $122,400.00 |
| 11227767 | 2007-HI1 | 1/12/2007 | $32,000.00 |
| 11228081 | 2007-HI1 | 1/4/2007 | $32,000.00 |
| 11228129 | 2007-HI1 | 1/16/2007 | $35,000.00 |
| 11230215 | 2007-QS1 | 1/12/2007 | $142,400.00 |
| 11230225 | 2007-QS1 | 1/8/2007 | $265,000.00 |
| 11230299 | 2007-HI1 | 2/27/2007 | $44,000.00 |
| 11230743 | 2007-QS3 | 1/11/2007 | $114,400.00 |
| 11231177 | 2007-HSA1 | 1/12/2007 | $60,000.00 |
| 11231181 | 2007-HSA1 | 1/16/2007 | $200,000.00 |
| 11231183 | 2007-HSA2 | 1/16/2007 | $38,200.00 |
| 11231187 | 2007-HSA2 | 1/12/2007 | $18,500.00 |
| 11231189 | 2007-HSA2 | 1/18/2007 | $36,100.00 |
| 11231191 | 2007-HSA1 | 1/12/2007 | $100,000.00 |
| 11231193 | 2007-HSA2 | 1/16/2007 | $12,000.00 |
| 11231197 | 2007-HSA1 | 1/12/2007 | $40,000.00 |
| 11231199 | 2007-HSA2 | 1/16/2007 | $150,000.00 |
| 11231203 | 2007-HSA2 | 1/17/2007 | $96,100.00 |
| 11231207 | 2007-HSA2 | 1/19/2007 | $19,900.00 |
| 11231209 | 2007-HSA2 | 1/19/2007 | $26,900.00 |
| 11231213 | 2007-HSA2 | 1/12/2007 | $38,000.00 |
| 11231217 | 2007-HSA2 | 1/26/2007 | $117,100.00 |
| 11231221 | 2007-HSA2 | 1/16/2007 | $42,000.00 |
| 11231227 | 2007-HSA2 | 1/26/2007 | $19,300.00 |
| 11231231 | 2007-HSA1 | 1/16/2007 | $86,000.00 |
| 11231233 | 2007-HSA1 | 1/19/2007 | $150,000.00 |
| 11231235 | 2007-HSA1 | 1/12/2007 | $200,000.00 |
| 11231237 | 2007-HSA1 | 1/16/2007 | $45,000.00 |
| 11231239 | 2007-HSA1 | 1/19/2007 | $99,000.00 |
| 11231241 | 2007-HSA1 | 1/17/2007 | $67,000.00 |
| 11231243 | 2007-HSA1 | 1/16/2007 | $59,000.00 |
| 11231245 | 2007-HSA1 | 1/12/2007 | $130,000.00 |
| 11231247 | 2007-HI1 | 1/12/2007 | $49,200.00 |
| 11231249 | 2007-HSA2 | 1/16/2007 | $81,000.00 |
| 11231251 | 2007-HSA2 | 1/16/2007 | $150,000.00 |
| 11231253 | 2007-HSA1 | 1/17/2007 | $41,900.00 |
| 11231255 | 2007-HSA1 | 1/17/2007 | $132,000.00 |
| 11231257 | 2007-HSA1 | 1/12/2007 | $59,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11231259 | 2007-HSA1 | 1/16/2007 | $75,000.00 |
| 11231261 | 2007-HSA1 | 1/17/2007 | $60,000.00 |
| 11231263 | 2007-HSA1 | 1/17/2007 | $150,000.00 |
| 11231267 | 2007-HSA1 | 1/17/2007 | $22,400.00 |
| 11231269 | 2007-HI1 | 1/16/2007 | $20,000.00 |
| 11231271 | 2007-HSA1 | 1/17/2007 | $100,000.00 |
| 11231273 | 2007-HSA1 | 1/16/2007 | $49,000.00 |
| 11231275 | 2007-HSA1 | 1/16/2007 | $94,500.00 |
| 11231277 | 2007-HSA1 | 1/16/2007 | $100,000.00 |
| 11231279 | 2007-HSA1 | 1/17/2007 | $60,000.00 |
| 11231281 | 2007-HSA1 | 1/16/2007 | $125,000.00 |
| 11231283 | 2007-HSA1 | 1/17/2007 | $27,000.00 |
| 11231285 | 2007-HSA1 | 1/12/2007 | $12,000.00 |
| 11231287 | 2007-HSA1 | 1/16/2007 | $109,000.00 |
| 11231291 | 2007-HSA2 | 1/19/2007 | $20,000.00 |
| 11231295 | 2007-HSA1 | 1/16/2007 | $27,900.00 |
| 11231297 | 2007-HSA1 | 1/16/2007 | $165,000.00 |
| 11231299 | 2007-HSA1 | 1/16/2007 | $47,700.00 |
| 11231301 | 2007-HSA1 | 1/16/2007 | $49,200.00 |
| 11231303 | 2007-HSA1 | 1/22/2007 | $42,000.00 |
| 11231305 | 2007-HSA1 | 1/17/2007 | $40,000.00 |
| 11231309 | 2007-HSA1 | 1/17/2007 | $100,000.00 |
| 11231311 | 2007-HSA1 | 1/16/2007 | $98,100.00 |
| 11231313 | 2007-HSA1 | 1/16/2007 | $97,700.00 |
| 11231315 | 2007-HSA1 | 1/19/2007 | $30,000.00 |
| 11231321 | 2007-HSA1 | 1/16/2007 | $52,500.00 |
| 11231323 | 2007-HSA1 | 1/17/2007 | $150,000.00 |
| 11231327 | 2007-HSA2 | 1/12/2007 | $41,800.00 |
| 11231329 | 2007-HI1 | 1/16/2007 | $75,000.00 |
| 11231331 | 2007-HI1 | 1/12/2007 | $52,000.00 |
| 11231333 | 2007-HSA2 | 1/30/2007 | $40,000.00 |
| 11231335 | 2007-HSA1 | 1/12/2007 | $40,400.00 |
| 11231337 | 2007-HSA2 | 1/16/2007 | $21,500.00 |
| 11231339 | 2007-HSA1 | 1/16/2007 | $91,600.00 |
| 11231341 | 2007-HSA2 | 1/16/2007 | $72,000.00 |
| 11231343 | 2007-HSA2 | 1/11/2007 | $53,000.00 |
| 11231347 | 2007-HSA2 | 2/7/2007 | $92,000.00 |
| 11231349 | 2007-HSA2 | 1/16/2007 | $39,750.00 |
| 11231353 | 2007-HSA1 | 1/5/2007 | $100,000.00 |
| 11231355 | 2007-HSA1 | 1/23/2007 | $25,600.00 |
| 11231359 | 2007-HSA1 | 1/8/2007 | $64,000.00 |
| 11231361 | 2007-HSA1 | 1/19/2007 | $39,000.00 |
| 11231363 | 2007-HSA1 | 1/8/2007 | $68,000.00 |
| 11231365 | 2007-HSA2 | 1/12/2007 | $55,000.00 |
| 11231367 | 2007-HSA1 | 1/16/2007 | $100,000.00 |
| 11231369 | 2007-HSA1 | 1/23/2007 | $16,100.00 |
| 11231371 | 2007-HSA1 | 1/12/2007 | $58,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11231373 | 2007-HSA1 | 1/17/2007 | $100,000.00 |
| 11231375 | 2007-HSA2 | 1/19/2007 | $63,800.00 |
| 11231377 | 2007-HSA1 | 1/16/2007 | $150,000.00 |
| 11231379 | 2007-HSA1 | 1/8/2007 | $65,000.00 |
| 11231381 | 2007-HSA1 | 1/12/2007 | $43,000.00 |
| 11231383 | 2007-HSA1 | 1/17/2007 | $13,000.00 |
| 11231385 | 2007-HSA2 | 1/17/2007 | $60,000.00 |
| 11231387 | 2007-HSA1 | 1/16/2007 | $35,000.00 |
| 11231391 | 2007-HSA1 | 1/16/2007 | $38,500.00 |
| 11231393 | 2007-HSA1 | 1/16/2007 | $100,000.00 |
| 11231395 | 2007-HSA1 | 1/16/2007 | $12,600.00 |
| 11231397 | 2007-HSA2 | 1/16/2007 | $46,000.00 |
| 11231399 | 2007-HSA1 | 1/16/2007 | $11,800.00 |
| 11231401 | 2007-HSA1 | 1/16/2007 | $34,000.00 |
| 11231403 | 2007-HSA1 | 1/17/2007 | $80,000.00 |
| 11231405 | 2007-HI1 | 1/16/2007 | $30,000.00 |
| 11231407 | 2007-HSA1 | 1/17/2007 | $42,500.00 |
| 11231411 | 2007-HSA2 | 1/16/2007 | $30,000.00 |
| 11231413 | 2007-HSA1 | 1/16/2007 | $53,000.00 |
| 11231415 | 2007-HSA1 | 1/12/2007 | $100,000.00 |
| 11231419 | 2007-HSA1 | 1/17/2007 | $70,000.00 |
| 11231421 | 2007-HSA1 | 1/16/2007 | $28,000.00 |
| 11231423 | 2007-HSA1 | 1/16/2007 | $90,000.00 |
| 11231425 | 2007-HSA1 | 1/22/2007 | $70,000.00 |
| 11231427 | 2007-HSA1 | 1/12/2007 | $75,000.00 |
| 11231431 | 2007-HSA1 | 1/12/2007 | $80,000.00 |
| 11231433 | 2007-HSA1 | 1/16/2007 | $21,000.00 |
| 11231435 | 2007-HSA1 | 1/12/2007 | $70,800.00 |
| 11231437 | 2007-HSA1 | 1/26/2007 | $50,000.00 |
| 11231439 | 2007-HSA1 | 1/11/2007 | $23,000.00 |
| 11231441 | 2007-HSA2 | 1/12/2007 | $100,000.00 |
| 11231443 | 2007-HSA1 | 1/19/2007 | $18,700.00 |
| 11231445 | 2007-HSA1 | 1/19/2007 | $30,000.00 |
| 11231447 | 2007-HSA1 | 1/17/2007 | $19,500.00 |
| 11231449 | 2007-HSA1 | 1/16/2007 | $50,000.00 |
| 11231451 | 2007-HSA1 | 1/16/2007 | $35,000.00 |
| 11231453 | 2007-HSA1 | 1/16/2007 | $72,900.00 |
| 11231457 | 2007-HSA1 | 1/17/2007 | $38,500.00 |
| 11231459 | 2007-HSA1 | 1/16/2007 | $54,000.00 |
| 11231461 | 2007-HSA1 | 1/16/2007 | $25,000.00 |
| 11231465 | 2007-HSA1 | 1/17/2007 | $19,100.00 |
| 11231467 | 2007-HSA1 | 1/17/2007 | $40,500.00 |
| 11231469 | 2007-HSA1 | 1/17/2007 | $20,000.00 |
| 11231473 | 2007-HSA2 | 1/19/2007 | $50,000.00 |
| 11231475 | 2007-HSA1 | 1/17/2007 | $50,000.00 |
| 11231477 | 2007-HSA1 | 1/12/2007 | $100,000.00 |
| 11231479 | 2007-HSA1 | 1/18/2007 | $24,800.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11231481 | 2007-HSA1 | 1/18/2007 | $25,000.00 |
| 11231483 | 2007-HSA1 | 1/17/2007 | $64,000.00 |
| 11231485 | 2007-HSA1 | 1/17/2007 | $19,000.00 |
| 11231487 | 2007-HSA1 | 1/17/2007 | $53,500.00 |
| 11231489 | 2007-HSA1 | 1/17/2007 | $20,000.00 |
| 11231491 | 2007-HSA1 | 1/12/2007 | $25,000.00 |
| 11231493 | 2007-HSA2 | 1/16/2007 | $33,200.00 |
| 11231495 | 2007-HSA1 | 1/12/2007 | $75,000.00 |
| 11231497 | 2007-HSA1 | 1/16/2007 | $40,800.00 |
| 11231499 | 2007-HSA1 | 1/16/2007 | $225,000.00 |
| 11231501 | 2007-HSA1 | 1/16/2007 | $58,800.00 |
| 11231503 | 2007-HSA1 | 1/12/2007 | $37,000.00 |
| 11231505 | 2007-HSA1 | 1/16/2007 | $68,000.00 |
| 11231509 | 2007-HSA1 | 1/12/2007 | $25,000.00 |
| 11231511 | 2007-HSA2 | 1/16/2007 | $11,000.00 |
| 11231513 | 2007-HSA1 | 1/12/2007 | $40,000.00 |
| 11231515 | 2007-HSA1 | 1/16/2007 | $47,000.00 |
| 11231517 | 2007-HSA2 | 1/12/2007 | $20,000.00 |
| 11231521 | 2007-HSA1 | 1/18/2007 | $47,400.00 |
| 11231523 | 2007-HSA1 | 1/16/2007 | $100,000.00 |
| 11231527 | 2007-HSA2 | 1/16/2007 | $21,500.00 |
| 11231529 | 2007-HSA1 | 1/16/2007 | $53,000.00 |
| 11231531 | 2007-HSA1 | 1/16/2007 | $20,200.00 |
| 11231535 | 2007-HSA1 | 1/12/2007 | $34,000.00 |
| 11231537 | 2007-HSA1 | 1/12/2007 | $25,000.00 |
| 11231539 | 2007-HSA1 | 1/16/2007 | $40,000.00 |
| 11231541 | 2007-HSA1 | 1/17/2007 | $55,000.00 |
| 11231543 | 2007-HSA1 | 1/12/2007 | $126,000.00 |
| 11231545 | 2007-HSA2 | 1/12/2007 | $52,000.00 |
| 11231547 | 2007-HSA1 | 1/17/2007 | $100,000.00 |
| 11231549 | 2007-HSA1 | 1/19/2007 | $200,000.00 |
| 11231929 | 2007-HSA2 | 1/11/2007 | $27,000.00 |
| 11233455 | 2007-QO1 | 1/8/2007 | $172,900.00 |
| 11233701 | 2007-HI1 | 1/8/2007 | $21,100.00 |
| 11233723 | 2007-QS3 | 1/5/2007 | $152,000.00 |
| 11233747 | 2007-HI1 | 1/8/2007 | $37,500.00 |
| 11233797 | 2007-HSA2 | 1/12/2007 | $55,700.00 |
| 11233859 | 2007-HI1 | 1/8/2007 | $75,000.00 |
| 11235547 | 2007-S1 | 1/5/2007 | $424,800.00 |
| 11235565 | 2007-S1 | 1/11/2007 | $268,000.00 |
| 11235575 | 2007-S2 | 1/5/2007 | $539,000.00 |
| 11236923 | 2007-HI1 | 1/17/2007 | $30,000.00 |
| 11240751 | 2007-HI1 | 1/18/2007 | $35,600.00 |
| 11240773 | 2007-HI1 | 1/17/2007 | $40,000.00 |
| 11240777 | 2007-S1 | 1/12/2007 | $424,000.00 |
| 11240813 | 2007-QS1 | 1/16/2007 | $208,000.00 |
| 11240897 | 2007-HI1 | 1/17/2007 | $56,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11240963 | 2007-HSA2 | 1/11/2007 | $33,000.00 |
| 11240981 | 2007-QA3 | 1/12/2007 | $128,416.01 |
| 11241053 | 2007-HSA2 | 1/11/2007 | $35,000.00 |
| 11241095 | 2007-HSA2 | 1/11/2007 | $50,000.00 |
| 11241251 | 2007-QS3 | 1/31/2007 | $168,000.00 |
| 11241403 | 2007-S3 | 1/17/2007 | $454,000.00 |
| 11243325 | 2007-QO1 | 1/12/2007 | $215,000.00 |
| 11243339 | 2007-S1 | 1/12/2007 | $470,000.00 |
| 11244047 | 2007-QO1 | 1/16/2007 | $340,000.00 |
| 11244141 | 2007-QO1 | 1/12/2007 | $139,200.00 |
| 11244155 | 2007-HI1 | 1/16/2007 | $31,000.00 |
| 11244165 | 2007-S1 | 1/12/2007 | $600,000.00 |
| 11244175 | 2007-HI1 | 1/17/2007 | $60,000.00 |
| 11246251 | 2007-QO2 | 1/22/2007 | $171,000.00 |
| 11246293 | 2007-QO1 | 1/16/2007 | $287,000.00 |
| 11246295 | 2007-QS4 | 1/18/2007 | $132,000.00 |
| 11248535 | 2007-HI1 | 2/28/2007 | $60,000.00 |
| 11250557 | 2007-HI1 | 1/23/2007 | $30,000.00 |
| 11250595 | 2007-HI1 | 1/17/2007 | $45,000.00 |
| 11250781 | 2007-HSA2 | 1/17/2007 | $68,500.00 |
| 11251191 | 2007-QO1 | 1/16/2007 | $434,000.00 |
| 11251243 | 2007-QS1 | 1/17/2007 | $421,665.19 |
| 11253377 | 2007-QO1 | 1/16/2007 | $617,500.00 |
| 11254371 | 2007-HSA1 | 1/17/2007 | $100,000.00 |
| 11254443 | 2007-HSA1 | 1/17/2007 | $88,000.00 |
| 11254523 | 2007-HSA1 | 1/18/2007 | $55,000.00 |
| 11254525 | 2007-HI1 | 1/18/2007 | $22,000.00 |
| 11254539 | 2007-HSA2 | 1/19/2007 | $26,000.00 |
| 11254547 | 2007-HSA2 | 1/19/2007 | $18,500.00 |
| 11254579 | 2007-S2 | 1/23/2007 | $123,200.00 |
| 11254583 | 2007-HSA1 | 1/18/2007 | $70,800.00 |
| 11254607 | 2007-HSA1 | 1/18/2007 | $44,400.00 |
| 11254629 | 2007-HSA1 | 1/18/2007 | $22,300.00 |
| 11254683 | 2007-HSA1 | 1/17/2007 | $75,000.00 |
| 11254691 | 2007-HI1 | 1/19/2007 | $30,000.00 |
| 11254707 | 2007-HSA1 | 1/19/2007 | $59,000.00 |
| 11254715 | 2007-HSA1 | 1/18/2007 | $40,000.00 |
| 11254731 | 2007-HSA1 | 1/18/2007 | $62,000.00 |
| 11254741 | 2007-HSA1 | 1/17/2007 | $69,900.00 |
| 11254769 | 2007-HSA1 | 1/18/2007 | $54,000.00 |
| 11254771 | 2007-HSA1 | 1/18/2007 | $57,000.00 |
| 11254807 | 2007-HSA1 | 1/22/2007 | $80,000.00 |
| 11254813 | 2007-HSA1 | 1/18/2007 | $40,000.00 |
| 11254853 | 2007-HSA2 | 1/19/2007 | $15,000.00 |
| 11254857 | 2007-HSA1 | 1/18/2007 | $90,000.00 |
| 11254935 | 2007-HSA1 | 1/18/2007 | $40,850.00 |
| 11254947 | 2007-HSA1 | 1/18/2007 | $60,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11254949 | 2007-HSA1 | 1/18/2007 | $20,000.00 |
| 11254973 | 2007-HSA1 | 1/26/2007 | $100,000.00 |
| 11254979 | 2007-HSA1 | 1/18/2007 | $62,500.00 |
| 11254983 | 2007-HSA1 | 1/18/2007 | $62,800.00 |
| 11254985 | 2007-HSA2 | 1/18/2007 | $57,900.00 |
| 11254987 | 2007-HSA1 | 1/18/2007 | $100,000.00 |
| 11255003 | 2007-HSA1 | 1/18/2007 | $78,400.00 |
| 11255009 | 2007-HSA1 | 1/18/2007 | $16,500.00 |
| 11255013 | 2007-HSA1 | 1/19/2007 | $30,000.00 |
| 11255021 | 2007-HSA1 | 1/18/2007 | $47,100.00 |
| 11255023 | 2007-HSA2 | 1/17/2007 | $40,000.00 |
| 11255025 | 2007-HSA1 | 1/18/2007 | $87,000.00 |
| 11255053 | 2007-HSA2 | 1/17/2007 | $32,500.00 |
| 11255057 | 2007-HSA2 | 1/19/2007 | $30,000.00 |
| 11255063 | 2007-HSA1 | 1/19/2007 | $80,000.00 |
| 11255135 | 2007-HSA1 | 1/18/2007 | $100,000.00 |
| 11255139 | 2007-HSA2 | 1/18/2007 | $30,000.00 |
| 11255145 | 2007-HSA1 | 1/18/2007 | $150,000.00 |
| 11255149 | 2007-HSA1 | 1/18/2007 | $25,000.00 |
| 11255151 | 2007-HSA1 | 1/18/2007 | $60,000.00 |
| 11255167 | 2007-HSA1 | 1/19/2007 | $27,000.00 |
| 11255171 | 2007-HSA1 | 1/18/2007 | $72,000.00 |
| 11255213 | 2007-HSA1 | 1/17/2007 | $23,000.00 |
| 11255217 | 2007-HSA1 | 1/18/2007 | $100,000.00 |
| 11255219 | 2007-HSA1 | 1/17/2007 | $33,400.00 |
| 11255221 | 2007-HSA1 | 1/18/2007 | $20,000.00 |
| 11255223 | 2007-HSA2 | 1/17/2007 | $23,000.00 |
| 11255225 | 2007-HSA1 | 1/18/2007 | $150,000.00 |
| 11255607 | 2007-HSA1 | 1/19/2007 | $85,000.00 |
| 11255653 | 2007-HSA1 | 1/17/2007 | $75,000.00 |
| 11255803 | 2007-HSA1 | 1/18/2007 | $100,000.00 |
| 11255843 | 2007-HSA1 | 1/18/2007 | $126,000.00 |
| 11255853 | 2007-HSA1 | 1/18/2007 | $33,300.00 |
| 11255859 | 2007-HSA1 | 1/18/2007 | $89,400.00 |
| 11255863 | 2007-HSA2 | 1/18/2007 | $54,800.00 |
| 11255865 | 2007-HI1 | 1/18/2007 | $27,000.00 |
| 11255883 | 2007-HSA1 | 1/17/2007 | $108,000.00 |
| 11256115 | 2007-HSA1 | 1/18/2007 | $100,000.00 |
| 11256117 | 2007-HSA2 | 1/18/2007 | $36,800.00 |
| 11256119 | 2007-HSA1 | 1/18/2007 | $59,000.00 |
| 11256121 | 2007-HSA2 | 1/18/2007 | $39,500.00 |
| 11256123 | 2007-HSA1 | 1/18/2007 | $27,800.00 |
| 11256203 | 2007-HSA1 | 1/17/2007 | $225,000.00 |
| 11256205 | 2007-HSA1 | 1/17/2007 | $80,000.00 |
| 11256219 | 2007-HSA1 | 1/17/2007 | $44,000.00 |
| 11256223 | 2007-HSA1 | 1/18/2007 | $72,800.00 |
| 11256227 | 2007-HSA2 | 1/18/2007 | $40,800.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11256245 | 2007-HSA1 | 1/18/2007 | $107,000.00 |
| 11256247 | 2007-HSA2 | 1/17/2007 | $38,000.00 |
| 11256249 | 2007-HSA1 | 1/23/2007 | $43,000.00 |
| 11256253 | 2007-HSA1 | 1/18/2007 | $44,500.00 |
| 11256261 | 2007-HSA1 | 1/18/2007 | $25,000.00 |
| 11256263 | 2007-HSA1 | 1/26/2007 | $56,700.00 |
| 11256265 | 2007-HSA1 | 1/17/2007 | $69,800.00 |
| 11256297 | 2007-HSA1 | 1/19/2007 | $41,600.00 |
| 11256299 | 2007-HSA1 | 1/18/2007 | $20,000.00 |
| 11256301 | 2007-HSA1 | 1/18/2007 | $40,000.00 |
| 11256303 | 2007-HSA1 | 1/18/2007 | $18,000.00 |
| 11256305 | 2007-HSA1 | 1/19/2007 | $60,000.00 |
| 11256325 | 2007-HSA1 | 1/18/2007 | $170,000.00 |
| 11256331 | 2007-HSA1 | 1/18/2007 | $55,000.00 |
| 11256337 | 2007-HSA2 | 1/18/2007 | $61,100.00 |
| 11256339 | 2007-HSA2 | 1/19/2007 | $50,000.00 |
| 11256363 | 2007-HSA1 | 1/18/2007 | $122,100.00 |
| 11256365 | 2007-HSA1 | 1/18/2007 | $41,000.00 |
| 11256377 | 2007-HSA1 | 1/18/2007 | $43,600.00 |
| 11256381 | 2007-HSA1 | 1/18/2007 | $111,200.00 |
| 11256383 | 2007-HSA1 | 1/18/2007 | $145,500.00 |
| 11256403 | 2007-HSA2 | 1/19/2007 | $68,000.00 |
| 11256405 | 2007-HSA1 | 1/17/2007 | $36,000.00 |
| 11256407 | 2007-HSA1 | 1/18/2007 | $45,000.00 |
| 11256445 | 2007-HSA1 | 1/18/2007 | $35,000.00 |
| 11256453 | 2007-HSA1 | 1/19/2007 | $80,000.00 |
| 11257973 | 2007-HSA1 | 1/18/2007 | $50,000.00 |
| 11258005 | 2007-HSA1 | 1/26/2007 | $36,000.00 |
| 11258019 | 2007-HI1 | 1/26/2007 | $35,000.00 |
| 11258055 | 2007-HSA1 | 1/18/2007 | $100,000.00 |
| 11258065 | 2007-HSA1 | 1/19/2007 | $45,000.00 |
| 11258073 | 2007-HI1 | 1/23/2007 | $37,500.00 |
| 11258103 | 2007-HSA1 | 1/22/2007 | $100,000.00 |
| 11258105 | 2007-HSA1 | 1/22/2007 | $22,400.00 |
| 11258127 | 2007-HSA1 | 1/18/2007 | $40,000.00 |
| 11258143 | 2007-HSA1 | 1/18/2007 | $45,500.00 |
| 11258385 | 2007-S1 | 1/19/2007 | $450,000.00 |
| 11258495 | 2007-HSA2 | 1/18/2007 | $30,000.00 |
| 11258511 | 2007-HSA1 | 1/18/2007 | $100,000.00 |
| 11258535 | 2007-HSA2 | 1/18/2007 | $45,000.00 |
| 11258579 | 2007-HSA1 | 1/18/2007 | $20,000.00 |
| 11258581 | 2007-HSA1 | 1/18/2007 | $18,600.00 |
| 11258591 | 2007-HSA1 | 1/18/2007 | $90,000.00 |
| 11258605 | 2007-HSA1 | 1/18/2007 | $37,600.00 |
| 11258619 | 2007-HSA1 | 1/18/2007 | $25,800.00 |
| 11258621 | 2007-HSA1 | 1/18/2007 | $58,000.00 |
| 11258633 | 2007-HSA1 | 1/17/2007 | $100,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11259351 | 2007-HSA2 | 1/19/2007 | $40,000.00 |
| 11259363 | 2007-HSA1 | 1/18/2007 | $45,800.00 |
| 11259375 | 2007-HSA1 | 1/26/2007 | $40,000.00 |
| 11259377 | 2007-HSA1 | 1/18/2007 | $60,000.00 |
| 11259499 | 2007-HSA1 | 1/22/2007 | $12,900.00 |
| 11259505 | 2007-HI1 | 1/23/2007 | $60,000.00 |
| 11259537 | 2007-HI1 | 1/23/2007 | $35,000.00 |
| 11259645 | 2007-HSA1 | 1/19/2007 | $40,000.00 |
| 11260603 | 2007-HI1 | 1/30/2007 | $20,000.00 |
| 11261237 | 2007-HI1 | 1/23/2007 | $35,000.00 |
| 11261243 | 2007-S1 | 1/19/2007 | $220,000.00 |
| 11262019 | 2007-HSA1 | 1/22/2007 | $44,000.00 |
| 11262563 | 2007-HI1 | 1/26/2007 | $51,000.00 |
| 11262779 | 2007-HSA1 | 1/18/2007 | $23,000.00 |
| 11262809 | 2007-HSA1 | 1/19/2007 | $34,000.00 |
| 11262901 | 2007-S2 | 1/23/2007 | $460,000.00 |
| 11264739 | 2007-HSA2 | 1/19/2007 | $50,000.00 |
| 11264765 | 2007-HSA2 | 1/22/2007 | $113,300.00 |
| 11264817 | 2007-HI1 | 1/26/2007 | $43,300.00 |
| 11264825 | 2007-HSA1 | 1/26/2007 | $91,400.00 |
| 11264861 | 2007-S3 | 2/9/2007 | $511,200.00 |
| 11264867 | 2007-HSA1 | 1/19/2007 | $30,000.00 |
| 11265011 | 2007-HSA1 | 1/22/2007 | $30,000.00 |
| 11265059 | 2007-HSA1 | 1/19/2007 | $99,500.00 |
| 11265409 | 2007-S1 | 1/22/2007 | $290,400.00 |
| 11265453 | 2007-HSA1 | 1/19/2007 | $98,000.00 |
| 11265489 | 2007-HSA1 | 1/19/2007 | $149,000.00 |
| 11266733 | 2007-QO2 | 1/26/2007 | $184,000.00 |
| 11268245 | 2007-S3 | 1/30/2007 | $201,200.00 |
| 11268779 | 2007-S2 | 1/22/2007 | $587,000.00 |
| 11269065 | 2007-S2 | 1/23/2007 | $630,000.00 |
| 11271005 | 2007-HSA2 | 1/26/2007 | $17,000.00 |
| 11271043 | 2007-S2 | 1/30/2007 | $646,000.00 |
| 11271089 | 2007-HSA2 | 1/30/2007 | $31,000.00 |
| 11271093 | 2007-HSA1 | 1/30/2007 | $280,000.00 |
| 11271097 | 2007-HSA1 | 1/31/2007 | $24,200.00 |
| 11271123 | 2007-SA2 | 1/23/2007 | $432,000.00 |
| 11271143 | 2007-HSA2 | 1/30/2007 | $30,000.00 |
| 11271145 | 2007-HI1 | 1/29/2007 | $43,000.00 |
| 11271147 | 2007-QO2 | 1/30/2007 | $405,000.00 |
| 11271285 | 2007-HSA2 | 1/31/2007 | $25,000.00 |
| 11271325 | 2007-HSA2 | 1/31/2007 | $10,000.00 |
| 11271367 | 2007-HSA2 | 2/1/2007 | $97,600.00 |
| 11271539 | 2007-HSA1 | 1/31/2007 | $48,500.00 |
| 11271609 | 2007-HSA1 | 1/31/2007 | $68,000.00 |
| 11271695 | 2007-HSA1 | 1/31/2007 | $19,900.00 |
| 11271699 | 2007-HSA1 | 1/31/2007 | $92,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11271775 | 2007-HSA1 | 1/31/2007 | $125,000.00 |
| 11271783 | 2007-HSA2 | 1/29/2007 | $24,500.00 |
| 11271813 | 2007-HSA2 | 2/2/2007 | $37,000.00 |
| 11271815 | 2007-HSA1 | 1/31/2007 | $54,600.00 |
| 11271819 | 2007-HSA1 | 1/30/2007 | $27,500.00 |
| 11271847 | 2007-HSA1 | 1/31/2007 | $200,000.00 |
| 11271857 | 2007-HSA1 | 1/31/2007 | $96,000.00 |
| 11271865 | 2007-HSA1 | 1/31/2007 | $37,800.00 |
| 11271899 | 2007-S2 | 2/7/2007 | $600,000.00 |
| 11271923 | 2007-HSA2 | 1/31/2007 | $25,500.00 |
| 11271977 | 2007-HSA2 | 1/31/2007 | $11,600.00 |
| 11272021 | 2007-HSA2 | 1/29/2007 | $46,400.00 |
| 11272025 | 2007-QO2 | 1/26/2007 | $247,500.00 |
| 11272043 | 2007-HSA1 | 1/31/2007 | $73,000.00 |
| 11272049 | 2007-HSA2 | 1/31/2007 | $50,000.00 |
| 11272053 | 2007-HSA1 | 1/31/2007 | $80,000.00 |
| 11272083 | 2007-HI1 | 1/30/2007 | $52,000.00 |
| 11272163 | 2007-HSA1 | 1/30/2007 | $15,100.00 |
| 11272175 | 2007-HSA1 | 1/30/2007 | $200,000.00 |
| 11272195 | 2007-HSA2 | 1/31/2007 | $26,000.00 |
| 11272205 | 2007-HSA2 | 1/31/2007 | $40,000.00 |
| 11272219 | 2007-HSA1 | 1/31/2007 | $55,000.00 |
| 11272229 | 2007-HSA2 | 1/31/2007 | $23,500.00 |
| 11272263 | 2007-HSA1 | 1/31/2007 | $54,300.00 |
| 11272273 | 2007-HSA2 | 1/30/2007 | $31,500.00 |
| 11272739 | 2007-HSA2 | 1/30/2007 | $28,600.00 |
| 11272775 | 2007-HSA2 | 2/2/2007 | $17,300.00 |
| 11272781 | 2007-HSA2 | 1/30/2007 | $82,500.00 |
| 11273249 | 2007-HSA1 | 1/31/2007 | $80,000.00 |
| 11273287 | 2007-HSA1 | 1/31/2007 | $85,900.00 |
| 11273405 | 2007-HSA1 | 1/30/2007 | $70,000.00 |
| 11273447 | 2007-HSA1 | 1/31/2007 | $34,000.00 |
| 11273487 | 2007-HSA1 | 1/31/2007 | $87,000.00 |
| 11273491 | 2007-HSA1 | 1/31/2007 | $21,400.00 |
| 11273493 | 2007-HSA1 | 1/31/2007 | $82,000.00 |
| 11273523 | 2007-HSA1 | 1/30/2007 | $71,000.00 |
| 11273525 | 2007-HSA1 | 1/31/2007 | $54,000.00 |
| 11273527 | 2007-HSA1 | 1/30/2007 | $41,800.00 |
| 11273565 | 2007-HSA1 | 1/31/2007 | $23,700.00 |
| 11273605 | 2007-HSA1 | 1/31/2007 | $75,000.00 |
| 11273609 | 2007-HSA1 | 1/31/2007 | $30,000.00 |
| 11273613 | 2007-HSA1 | 1/31/2007 | $39,000.00 |
| 11273615 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11273617 | 2007-HSA1 | 1/31/2007 | $77,500.00 |
| 11273619 | 2007-HSA1 | 1/31/2007 | $44,000.00 |
| 11273621 | 2007-HSA1 | 1/31/2007 | $30,000.00 |
| 11273631 | 2007-HSA1 | 1/31/2007 | $97,600.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11273635 | 2007-HSA1 | 1/29/2007 | $15,000.00 |
| 11273641 | 2007-HSA1 | 1/31/2007 | $57,000.00 |
| 11273645 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11275609 | 2007-S2 | 1/30/2007 | $530,000.00 |
| 11276325 | 2007-S2 | 1/26/2007 | $537,000.00 |
| 11276499 | 2007-HI1 | 1/30/2007 | $75,000.00 |
| 11276515 | 2007-HSA1 | 1/30/2007 | $55,000.00 |
| 11276521 | 2007-HI1 | 2/7/2007 | $30,000.00 |
| 11276539 | 2007-HSA2 | 1/31/2007 | $40,000.00 |
| 11276567 | 2007-HI1 | 1/31/2007 | $50,000.00 |
| 11278093 | 2007-HSA2 | 1/29/2007 | $47,800.00 |
| 11278095 | 2007-HSA2 | 1/30/2007 | $63,750.00 |
| 11278131 | 2007-HSA2 | 1/30/2007 | $15,400.00 |
| 11278165 | 2007-HSA2 | 1/29/2007 | $26,000.00 |
| 11278167 | 2007-HSA2 | 1/29/2007 | $22,500.00 |
| 11278181 | 2007-HSA2 | 2/9/2007 | $48,000.00 |
| 11278191 | 2007-QS6 | 1/31/2007 | $134,800.00 |
| 11278209 | 2007-QS5 | 1/31/2007 | $415,000.00 |
| 11278257 | 2007-S2 | 1/30/2007 | $532,000.00 |
| 11278289 | 2007-S5 | 1/30/2007 | $128,000.00 |
| 11278379 | 2007-S2 | 1/31/2007 | $533,000.00 |
| 11278531 | 2007-QS3 | 1/30/2007 | $150,000.00 |
| 11278547 | 2007-HSA1 | 1/31/2007 | $71,500.00 |
| 11278899 | 2007-HSA1 | 1/29/2007 | $35,000.00 |
| 11278903 | 2007-HSA2 | 1/30/2007 | $40,000.00 |
| 11278935 | 2007-HSA1 | 1/30/2007 | $150,000.00 |
| 11278951 | 2007-HSA1 | 1/30/2007 | $100,000.00 |
| 11278957 | 2007-HSA2 | 1/31/2007 | $33,000.00 |
| 11278963 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11278965 | 2007-HSA2 | 2/1/2007 | $24,000.00 |
| 11278969 | 2007-HSA1 | 1/29/2007 | $20,000.00 |
| 11278977 | 2007-HSA2 | 1/31/2007 | $20,000.00 |
| 11278991 | 2007-HSA1 | 1/29/2007 | $24,000.00 |
| 11279007 | 2007-HSA2 | 1/31/2007 | $37,000.00 |
| 11279017 | 2007-HSA1 | 1/30/2007 | $56,000.00 |
| 11279019 | 2007-HSA1 | 1/29/2007 | $50,000.00 |
| 11279021 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11279043 | 2007-HSA2 | 1/31/2007 | $50,000.00 |
| 11279047 | 2007-HSA1 | 1/30/2007 | $72,000.00 |
| 11279057 | 2007-HSA2 | 1/30/2007 | $30,900.00 |
| 11279063 | 2007-HSA2 | 2/7/2007 | $45,000.00 |
| 11279067 | 2007-HSA1 | 1/29/2007 | $64,000.00 |
| 11279087 | 2007-HSA1 | 1/30/2007 | $40,000.00 |
| 11279093 | 2007-HSA2 | 1/30/2007 | $21,900.00 |
| 11279101 | 2007-HI1 | 1/31/2007 | $47,000.00 |
| 11279105 | 2007-HSA1 | 1/29/2007 | $41,500.00 |
| 11279127 | 2007-HI1 | 1/31/2007 | $42,800.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11279131 | 2007-HSA1 | 1/31/2007 | $23,100.00 |
| 11279133 | 2007-HSA1 | 1/30/2007 | $59,100.00 |
| 11279135 | 2007-HSA2 | 1/31/2007 | $43,000.00 |
| 11279137 | 2007-HI1 | 1/31/2007 | $40,000.00 |
| 11279139 | 2007-HSA1 | 1/29/2007 | $21,600.00 |
| 11279163 | 2007-HSA2 | 2/8/2007 | $47,800.00 |
| 11279171 | 2007-HSA1 | 1/29/2007 | $105,000.00 |
| 11279179 | 2007-HSA2 | 1/30/2007 | $30,000.00 |
| 11279209 | 2007-HSA1 | 1/29/2007 | $95,000.00 |
| 11279217 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11279219 | 2007-HSA2 | 1/30/2007 | $50,000.00 |
| 11279221 | 2007-HSA2 | 1/31/2007 | $30,000.00 |
| 11279283 | 2007-HSA2 | 1/30/2007 | $15,000.00 |
| 11279285 | 2007-HSA1 | 1/29/2007 | $33,500.00 |
| 11279287 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11279291 | 2007-HSA2 | 1/29/2007 | $150,000.00 |
| 11279293 | 2007-HSA1 | 1/30/2007 | $40,000.00 |
| 11279295 | 2007-HSA1 | 1/31/2007 | $20,000.00 |
| 11279323 | 2007-HSA1 | 1/31/2007 | $55,400.00 |
| 11279325 | 2007-HSA1 | 1/29/2007 | $69,300.00 |
| 11279327 | 2007-HSA1 | 1/30/2007 | $42,500.00 |
| 11279331 | 2007-HSA1 | 1/30/2007 | $44,800.00 |
| 11279333 | 2007-HSA2 | 1/29/2007 | $105,000.00 |
| 11279367 | 2007-HSA1 | 1/29/2007 | $14,000.00 |
| 11279371 | 2007-HSA1 | 1/29/2007 | $55,000.00 |
| 11279375 | 2007-HSA1 | 1/29/2007 | $34,500.00 |
| 11279407 | 2007-HSA1 | 1/31/2007 | $42,000.00 |
| 11279409 | 2007-HSA1 | 1/29/2007 | $104,000.00 |
| 11279413 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11279443 | 2007-HSA2 | 1/31/2007 | $27,800.00 |
| 11279451 | 2007-HSA2 | 1/29/2007 | $26,700.00 |
| 11279453 | 2007-HSA1 | 1/31/2007 | $60,000.00 |
| 11279455 | 2007-HSA2 | 1/29/2007 | $19,000.00 |
| 11279483 | 2007-HSA1 | 1/29/2007 | $100,000.00 |
| 11279489 | 2007-HSA2 | 1/31/2007 | $27,000.00 |
| 11279493 | 2007-HSA2 | 1/31/2007 | $28,000.00 |
| 11279497 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11279501 | 2007-HSA2 | 1/30/2007 | $46,500.00 |
| 11279503 | 2007-HSA1 | 1/29/2007 | $40,000.00 |
| 11279507 | 2007-HSA1 | 1/29/2007 | $80,000.00 |
| 11279511 | 2007-HSA1 | 1/31/2007 | $25,000.00 |
| 11279525 | 2007-HSA2 | 2/2/2007 | $25,000.00 |
| 11279527 | 2007-HSA1 | 1/29/2007 | $30,200.00 |
| 11279605 | 2007-HSA1 | 1/31/2007 | $53,000.00 |
| 11279643 | 2007-HSA1 | 1/31/2007 | $37,000.00 |
| 11279645 | 2007-HSA1 | 1/30/2007 | $19,500.00 |
| 11279683 | 2007-HSA1 | 1/29/2007 | $60,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11279723 | 2007-HSA1 | 1/31/2007 | $50,000.00 |
| 11279763 | 2007-HSA2 | 1/30/2007 | $25,000.00 |
| 11279765 | 2007-HSA1 | 1/29/2007 | $17,900.00 |
| 11279767 | 2007-HSA1 | 1/30/2007 | $200,000.00 |
| 11279771 | 2007-HSA1 | 1/31/2007 | $40,000.00 |
| 11279773 | 2007-HSA2 | 1/30/2007 | $15,000.00 |
| 11279775 | 2007-HSA1 | 1/31/2007 | $200,000.00 |
| 11279777 | 2007-HSA1 | 1/31/2007 | $150,000.00 |
| 11279779 | 2007-HSA2 | 2/9/2007 | $44,250.00 |
| 11279783 | 2007-HSA1 | 1/30/2007 | $25,000.00 |
| 11279787 | 2007-HSA1 | 1/29/2007 | $25,000.00 |
| 11279789 | 2007-HSA1 | 1/30/2007 | $60,000.00 |
| 11279793 | 2007-HSA2 | 1/29/2007 | $35,000.00 |
| 11279795 | 2007-HSA1 | 1/29/2007 | $37,000.00 |
| 11279799 | 2007-HSA2 | 1/30/2007 | $26,000.00 |
| 11279803 | 2007-HSA1 | 1/30/2007 | $43,000.00 |
| 11279805 | 2007-HSA2 | 2/1/2007 | $35,000.00 |
| 11279807 | 2007-HSA1 | 1/29/2007 | $14,000.00 |
| 11279891 | 2007-HSA1 | 1/30/2007 | $125,000.00 |
| 11280609 | 2007-HSA2 | 1/30/2007 | $25,000.00 |
| 11281571 | 2007-HSA2 | 2/20/2007 | $39,980.00 |
| 11281573 | 2007-HSA1 | 1/31/2007 | $59,000.00 |
| 11281659 | 2007-HSA2 | 1/29/2007 | $150,000.00 |
| 11281661 | 2007-HSA1 | 1/29/2007 | $30,000.00 |
| 11281697 | 2007-HSA2 | 2/1/2007 | $140,000.00 |
| 11281731 | 2007-HSA1 | 1/31/2007 | $34,800.00 |
| 11281735 | 2007-HSA2 | 1/30/2007 | $53,800.00 |
| 11281769 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11281811 | 2007-HSA1 | 1/30/2007 | $34,800.00 |
| 11281941 | 2007-QS5 | 2/7/2007 | $240,000.00 |
| 11282011 | 2007-S2 | 2/2/2007 | $479,000.00 |
| 11282027 | 2007-HSA1 | 1/31/2007 | $53,000.00 |
| 11282053 | 2007-QS7 | 1/31/2007 | $164,500.00 |
| 11282091 | 2007-HSA1 | 1/31/2007 | $25,000.00 |
| 11285369 | 2007-HSA2 | 1/31/2007 | $25,000.00 |
| 11285549 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11285577 | 2007-HSA1 | 1/29/2007 | $43,000.00 |
| 11285613 | 2007-HSA1 | 1/31/2007 | $100,000.00 |
| 11288705 | 2007-S5 | 1/31/2007 | $127,000.00 |
| 11289531 | 2007-HI1 | 2/2/2007 | $23,000.00 |
| 11291391 | 2007-QS3 | 1/30/2007 | $109,000.00 |
| 11291417 | 2007-HI1 | 1/31/2007 | $50,000.00 |
| 11291469 | 2007-S2 | 1/30/2007 | $434,500.00 |
| 11295283 | 2007-HI1 | 2/1/2007 | $50,000.00 |
| 11297009 | 2007-QO2 | 2/12/2007 | $144,000.00 |
| 11297019 | 2007-QO2 | 2/1/2007 | $169,200.00 |
| 11297053 | 2007-HSA2 | 2/5/2007 | $55,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11298701 | 2007-HSA2 | 2/1/2007 | $42,000.00 |
| 11298897 | 2007-HI1 | 2/8/2007 | $60,000.00 |
| 11299051 | 2007-HI1 | 2/1/2007 | $53,500.00 |
| 11299143 | 2007-HSA2 | 2/1/2007 | $40,000.00 |
| 11299403 | 2007-HI1 | 2/1/2007 | $67,500.00 |
| 11300129 | 2007-HI1 | 2/1/2007 | $44,700.00 |
| 11300181 | 2007-HI1 | 2/5/2007 | $55,000.00 |
| 11300341 | 2007-HSA3 | 2/1/2007 | $29,420.50 |
| 11301399 | 2007-S2 | 2/7/2007 | $485,000.00 |
| 11302137 | 2007-HSA2 | 2/5/2007 | $25,100.00 |
| 11302263 | 2007-HSA2 | 2/7/2007 | $35,000.00 |
| 11302389 | 2007-HSA2 | 2/9/2007 | $59,800.00 |
| 11302409 | 2007-HSA3 | 2/6/2007 | $10,000.00 |
| 11302413 | 2007-HSA2 | 2/6/2007 | $24,900.00 |
| 11302417 | 2007-HSA2 | 2/5/2007 | $49,900.00 |
| 11302423 | 2007-HSA2 | 2/6/2007 | $31,700.00 |
| 11302449 | 2007-HSA2 | 2/5/2007 | $20,000.00 |
| 11302463 | 2007-HSA2 | 2/5/2007 | $20,000.00 |
| 11302469 | 2007-HSA2 | 2/5/2007 | $45,000.00 |
| 11302489 | 2007-HSA2 | 2/6/2007 | $60,000.00 |
| 11302503 | 2007-HSA2 | 2/5/2007 | $57,000.00 |
| 11302531 | 2007-HSA2 | 2/6/2007 | $100,000.00 |
| 11302543 | 2007-HSA3 | 2/5/2007 | $233,000.00 |
| 11302549 | 2007-HSA2 | 2/6/2007 | $58,000.00 |
| 11302555 | 2007-HSA2 | 2/5/2007 | $71,000.00 |
| 11302651 | 2007-HSA2 | 2/6/2007 | $145,000.00 |
| 11302661 | 2007-HSA2 | 2/5/2007 | $44,000.00 |
| 11302693 | 2007-HSA2 | 2/5/2007 | $89,900.00 |
| 11304595 | 2007-QO2 | 2/6/2007 | $725,000.00 |
| 11304667 | 2007-SA3 | 2/6/2007 | $120,000.00 |
| 11304679 | 2007-QS3 | 2/6/2007 | $172,000.00 |
| 11305059 | 2007-HI1 | 2/6/2007 | $30,000.00 |
| 11305077 | 2007-HSA2 | 2/6/2007 | $18,000.00 |
| 11305085 | 2007-S2 | 2/6/2007 | $525,000.00 |
| 11305133 | 2007-HSA2 | 2/6/2007 | $92,800.00 |
| 11305145 | 2007-HI1 | 2/5/2007 | $30,000.00 |
| 11305149 | 2007-HSA2 | 2/5/2007 | $40,000.00 |
| 11305169 | 2007-HSA2 | 2/5/2007 | $51,000.00 |
| 11305171 | 2007-HSA2 | 2/5/2007 | $83,500.00 |
| 11305215 | 2007-HSA2 | 2/16/2007 | $60,000.00 |
| 11305251 | 2007-HSA2 | 2/5/2007 | $28,000.00 |
| 11305259 | 2007-HI1 | 2/13/2007 | $30,000.00 |
| 11305353 | 2007-HSA2 | 2/6/2007 | $21,000.00 |
| 11305453 | 2007-HSA3 | 2/5/2007 | $24,697.28 |
| 11305495 | 2007-HI1 | 2/6/2007 | $30,000.00 |
| 11305569 | 2007-HI1 | 2/12/2007 | $30,000.00 |
| 11307225 | 2007-QO4 | 2/7/2007 | $220,500.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11307249 | 2007-S2 | 2/7/2007 | $491,650.00 |
| 11307551 | 2007-QA3 | 2/22/2007 | $272,000.00 |
| 11307703 | 2007-QO2 | 2/8/2007 | $400,000.00 |
| 11308065 | 2007-HSA2 | 2/8/2007 | $23,500.00 |
| 11308091 | 2007-HSA2 | 2/8/2007 | $55,000.00 |
| 11308131 | 2007-HI1 | 2/14/2007 | $65,000.00 |
| 11308139 | 2007-HSA3 | 2/8/2007 | $87,000.00 |
| 11308169 | 2007-HI1 | 2/14/2007 | $36,900.00 |
| 11308175 | 2007-HSA3 | 2/12/2007 | $127,000.00 |
| 11308187 | 2007-HSA2 | 2/9/2007 | $24,000.00 |
| 11308227 | 2007-HSA2 | 2/7/2007 | $26,000.00 |
| 11308239 | 2007-HSA2 | 2/8/2007 | $42,500.00 |
| 11308251 | 2007-HSA2 | 2/7/2007 | $25,200.00 |
| 11308317 | 2007-HSA2 | 2/7/2007 | $35,000.00 |
| 11308321 | 2007-HSA2 | 2/9/2007 | $20,400.00 |
| 11308343 | 2007-HSA2 | 2/7/2007 | $34,700.00 |
| 11308359 | 2007-HSA2 | 2/8/2007 | $95,000.00 |
| 11308363 | 2007-HI1 | 2/7/2007 | $18,700.00 |
| 11308379 | 2007-HSA2 | 2/7/2007 | $32,700.00 |
| 11308385 | 2007-HSA2 | 2/9/2007 | $25,000.00 |
| 11308409 | 2007-HI1 | 2/12/2007 | $30,000.00 |
| 11308419 | 2007-HSA2 | 2/9/2007 | $52,000.00 |
| 11308427 | 2007-HSA3 | 2/9/2007 | $36,000.00 |
| 11308459 | 2007-HI1 | 2/20/2007 | $47,000.00 |
| 11308461 | 2007-HSA2 | 2/7/2007 | $30,000.00 |
| 11308575 | 2007-HSA2 | 2/9/2007 | $25,000.00 |
| 11310341 | 2007-S2 | 2/8/2007 | $437,000.00 |
| 11310703 | 2007-S2 | 2/8/2007 | $595,000.00 |
| 11310735 | 2007-S5 | 2/8/2007 | $268,000.00 |
| 11310861 | 2007-QO5 | 2/23/2007 | $80,100.00 |
| 11310869 | 2007-HSA2 | 2/20/2007 | $80,000.00 |
| 11311803 | 2007-HSA2 | 2/9/2007 | $115,000.00 |
| 11311937 | 2007-HSA2 | 2/12/2007 | $48,000.00 |
| 11311963 | 2007-HSA3 | 2/16/2007 | $43,916.45 |
| 11312017 | 2007-HI1 | 2/14/2007 | $41,000.00 |
| 11312055 | 2007-HSA2 | 2/12/2007 | $33,000.00 |
| 11312065 | 2007-HI1 | 2/8/2007 | $26,000.00 |
| 11312071 | 2007-HSA2 | 2/8/2007 | $28,000.00 |
| 11312101 | 2007-HSA2 | 2/9/2007 | $38,000.00 |
| 11312169 | 2007-HSA2 | 2/12/2007 | $27,600.00 |
| 11312187 | 2007-HSA2 | 2/12/2007 | $60,900.00 |
| 11314741 | 2007-QO2 | 2/9/2007 | $401,250.00 |
| 11315025 | 2007-HSA2 | 2/16/2007 | $39,200.00 |
| 11315033 | 2007-QA3 | 2/14/2007 | $175,000.00 |
| 11315049 | 2007-HSA2 | 2/9/2007 | $36,200.00 |
| 11315099 | 2007-HSA3 | 2/12/2007 | $40,000.00 |
| 11315201 | 2007-HSA2 | 2/16/2007 | $18,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11315225 | 2007-HSA2 | 2/9/2007 | $56,700.00 |
| 11315259 | 2007-HI1 | 2/14/2007 | $35,000.00 |
| 11315423 | 2007-HSA2 | 2/9/2007 | $40,000.00 |
| 11317703 | 2007-SA2 | 2/12/2007 | $510,000.00 |
| 11320229 | 2007-S3 | 2/16/2007 | $540,000.00 |
| 11320713 | 2007-HI1 | 2/14/2007 | $50,000.00 |
| 11322649 | 2007-HSA2 | 2/21/2007 | $10,000.00 |
| 11322653 | 2007-HSA2 | 2/20/2007 | $13,500.00 |
| 11322655 | 2007-HSA2 | 2/21/2007 | $21,900.00 |
| 11322657 | 2007-HSA2 | 2/22/2007 | $39,500.00 |
| 11322659 | 2007-HSA2 | 2/20/2007 | $52,000.00 |
| 11322661 | 2007-HSA2 | 2/21/2007 | $28,000.00 |
| 11322663 | 2007-HSA2 | 2/21/2007 | $42,000.00 |
| 11322665 | 2007-HSA2 | 2/21/2007 | $59,300.00 |
| 11322667 | 2007-HSA2 | 2/22/2007 | $18,000.00 |
| 11322671 | 2007-HI1 | 2/21/2007 | $25,000.00 |
| 11322673 | 2007-HSA2 | 2/22/2007 | $55,000.00 |
| 11322675 | 2007-HSA2 | 2/16/2007 | $18,200.00 |
| 11322677 | 2007-HSA2 | 2/22/2007 | $52,900.00 |
| 11322679 | 2007-HSA2 | 2/23/2007 | $11,500.00 |
| 11322681 | 2007-HSA2 | 2/20/2007 | $25,100.00 |
| 11322683 | 2007-HSA2 | 2/20/2007 | $25,000.00 |
| 11322685 | 2007-HSA2 | 2/15/2007 | $65,000.00 |
| 11322687 | 2007-HSA2 | 2/20/2007 | $30,000.00 |
| 11322691 | 2007-HSA2 | 2/20/2007 | $63,800.00 |
| 11322693 | 2007-HSA2 | 2/21/2007 | $19,000.00 |
| 11322695 | 2007-HI1 | 2/15/2007 | $32,000.00 |
| 11322697 | 2007-HSA2 | 2/20/2007 | $25,000.00 |
| 11322699 | 2007-HSA2 | 2/21/2007 | $30,000.00 |
| 11322701 | 2007-HSA2 | 2/20/2007 | $36,000.00 |
| 11322703 | 2007-HSA2 | 2/20/2007 | $35,000.00 |
| 11322705 | 2007-HSA2 | 2/20/2007 | $18,500.00 |
| 11322707 | 2007-HSA2 | 2/16/2007 | $44,000.00 |
| 11322709 | 2007-HSA2 | 2/20/2007 | $32,400.00 |
| 11322711 | 2007-HSA2 | 2/21/2007 | $30,000.00 |
| 11322713 | 2007-HSA2 | 2/15/2007 | $16,500.00 |
| 11322715 | 2007-HSA2 | 2/20/2007 | $35,000.00 |
| 11322719 | 2007-HSA2 | 2/20/2007 | $50,000.00 |
| 11322721 | 2007-HI1 | 2/22/2007 | $30,000.00 |
| 11322723 | 2007-HSA2 | 2/22/2007 | $36,600.00 |
| 11322725 | 2007-HSA2 | 2/20/2007 | $81,200.00 |
| 11322727 | 2007-HSA2 | 2/21/2007 | $24,500.00 |
| 11322729 | 2007-HSA2 | 2/21/2007 | $31,200.00 |
| 11322731 | 2007-HSA2 | 2/21/2007 | $150,000.00 |
| 11322733 | 2007-HSA2 | 2/20/2007 | $26,200.00 |
| 11322735 | 2007-HSA2 | 2/20/2007 | $60,000.00 |
| 11322737 | 2007-HSA2 | 2/20/2007 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11322739 | 2007-HSA2 | 2/20/2007 | $31,000.00 |
| 11322741 | 2007-HSA2 | 2/21/2007 | $40,000.00 |
| 11322743 | 2007-HSA2 | 2/23/2007 | $75,000.00 |
| 11322745 | 2007-HSA2 | 2/21/2007 | $25,100.00 |
| 11322747 | 2007-HSA2 | 2/20/2007 | $28,400.00 |
| 11322749 | 2007-HSA2 | 2/22/2007 | $38,000.00 |
| 11322751 | 2007-HSA2 | 2/21/2007 | $26,000.00 |
| 11322753 | 2007-HSA2 | 2/16/2007 | $47,000.00 |
| 11322755 | 2007-HSA2 | 2/21/2007 | $27,300.00 |
| 11322757 | 2007-HSA2 | 2/16/2007 | $31,800.00 |
| 11322759 | 2007-HSA2 | 2/22/2007 | $33,000.00 |
| 11322761 | 2007-HSA2 | 2/21/2007 | $31,700.00 |
| 11322763 | 2007-HSA2 | 2/20/2007 | $18,500.00 |
| 11322765 | 2007-HI1 | 2/20/2007 | $30,000.00 |
| 11322767 | 2007-HSA2 | 2/20/2007 | $30,000.00 |
| 11322769 | 2007-HSA2 | 2/20/2007 | $45,000.00 |
| 11322771 | 2007-HSA2 | 2/20/2007 | $45,000.00 |
| 11322773 | 2007-HSA2 | 2/20/2007 | $12,000.00 |
| 11322775 | 2007-HSA2 | 2/22/2007 | $26,000.00 |
| 11322777 | 2007-HSA2 | 2/22/2007 | $148,400.00 |
| 11322779 | 2007-HSA2 | 2/21/2007 | $54,400.00 |
| 11322781 | 2007-HSA2 | 2/20/2007 | $42,500.00 |
| 11322783 | 2007-HSA2 | 2/21/2007 | $63,000.00 |
| 11322785 | 2007-HSA2 | 2/21/2007 | $125,000.00 |
| 11322787 | 2007-HSA2 | 2/21/2007 | $29,400.00 |
| 11322789 | 2007-HSA2 | 2/20/2007 | $20,000.00 |
| 11322791 | 2007-HSA2 | 2/20/2007 | $43,000.00 |
| 11322793 | 2007-HSA2 | 2/20/2007 | $166,000.00 |
| 11322795 | 2007-HSA2 | 2/21/2007 | $45,000.00 |
| 11322797 | 2007-HSA2 | 2/21/2007 | $80,000.00 |
| 11322799 | 2007-HSA2 | 2/16/2007 | $54,200.00 |
| 11322801 | 2007-HSA2 | 2/22/2007 | $30,000.00 |
| 11322803 | 2007-HSA2 | 2/20/2007 | $46,500.00 |
| 11322805 | 2007-HSA2 | 2/21/2007 | $77,000.00 |
| 11322807 | 2007-HSA2 | 2/16/2007 | $50,000.00 |
| 11322809 | 2007-HSA2 | 2/21/2007 | $46,000.00 |
| 11322811 | 2007-HSA2 | 2/26/2007 | $34,000.00 |
| 11322813 | 2007-HSA2 | 2/26/2007 | $19,400.00 |
| 11322843 | 2007-HSA3 | 2/16/2007 | $62,456.94 |
| 11322877 | 2007-HSA3 | 2/20/2007 | $39,935.68 |
| 11322901 | 2007-HSA3 | 2/21/2007 | $28,347.15 |
| 11322919 | 2007-HSA3 | 2/21/2007 | $51,800.00 |
| 11322991 | 2007-HSA3 | 2/21/2007 | $35,000.00 |
| 11322995 | 2007-HSA3 | 2/20/2007 | $45,352.01 |
| 11323021 | 2007-HSA3 | 2/21/2007 | $15,000.00 |
| 11323037 | 2007-HSA3 | 2/20/2007 | $44,708.94 |
| 11323101 | 2007-HSA3 | 2/23/2007 | $41,219.93 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11323863 | 2007-S2 | 2/13/2007 | $590,000.00 |
| 11326697 | 2007-QS3 | 2/16/2007 | $108,000.00 |
| 11328751 | 2007-HI1 | 2/26/2007 | $50,000.00 |
| 11328973 | 2007-HI1 | 2/15/2007 | $50,000.00 |
| 11328989 | 2007-HI1 | 2/14/2007 | $50,000.00 |
| 11332171 | 2007-QO4 | 4/5/2007 | $308,000.00 |
| 11332411 | 2007-HI1 | 2/15/2007 | $13,200.00 |
| 11332431 | 2007-S3 | 2/21/2007 | $504,000.00 |
| 11332449 | 2007-HI1 | 2/15/2007 | $16,000.00 |
| 11335289 | 2007-QO3 | 2/16/2007 | $183,000.00 |
| 11335315 | 2007-S3 | 2/16/2007 | $446,650.97 |
| 11335419 | 2007-HI1 | 2/26/2007 | $32,700.00 |
| 11335489 | 2007-HI1 | 2/26/2007 | $40,000.00 |
| 11335877 | 2007-HSA2 | 2/22/2007 | $29,000.00 |
| 11338101 | 2007-HSA2 | 2/20/2007 | $43,000.00 |
| 11338129 | 2007-HSA2 | 2/20/2007 | $27,600.00 |
| 11338131 | 2007-HSA2 | 2/21/2007 | $34,200.00 |
| 11338145 | 2007-HSA2 | 2/22/2007 | $43,000.00 |
| 11338149 | 2007-HSA2 | 2/21/2007 | $136,500.00 |
| 11338173 | 2007-HSA2 | 2/22/2007 | $63,000.00 |
| 11338181 | 2007-HSA2 | 2/22/2007 | $122,000.00 |
| 11338185 | 2007-HSA2 | 2/21/2007 | $26,200.00 |
| 11338189 | 2007-HSA2 | 2/20/2007 | $37,000.00 |
| 11338193 | 2007-HSA2 | 2/21/2007 | $53,000.00 |
| 11338215 | 2007-HSA2 | 2/20/2007 | $28,800.00 |
| 11338223 | 2007-HSA2 | 2/20/2007 | $48,600.00 |
| 11338229 | 2007-HSA2 | 2/20/2007 | $74,700.00 |
| 11338255 | 2007-HSA2 | 2/22/2007 | $36,600.00 |
| 11338259 | 2007-HSA2 | 2/22/2007 | $38,000.00 |
| 11338283 | 2007-HSA2 | 2/20/2007 | $49,000.00 |
| 11338291 | 2007-HSA2 | 2/26/2007 | $55,000.00 |
| 11338305 | 2007-HSA2 | 2/21/2007 | $20,100.00 |
| 11338309 | 2007-HSA2 | 2/21/2007 | $124,500.00 |
| 11338311 | 2007-HSA2 | 2/23/2007 | $35,000.00 |
| 11338317 | 2007-HSA2 | 2/21/2007 | $20,000.00 |
| 11338323 | 2007-HSA2 | 2/20/2007 | $55,000.00 |
| 11338377 | 2007-HSA2 | 2/23/2007 | $32,500.00 |
| 11338379 | 2007-HSA2 | 2/21/2007 | $39,900.00 |
| 11338383 | 2007-HSA2 | 2/21/2007 | $26,200.00 |
| 11338411 | 2007-HSA2 | 2/20/2007 | $22,000.00 |
| 11338413 | 2007-HSA2 | 2/21/2007 | $30,600.00 |
| 11338423 | 2007-HSA2 | 2/21/2007 | $200,000.00 |
| 11338467 | 2007-HSA2 | 2/20/2007 | $30,000.00 |
| 11338853 | 2007-HSA2 | 2/21/2007 | $76,800.00 |
| 11338863 | 2007-HSA2 | 2/28/2007 | $50,000.00 |
| 11338911 | 2007-HSA2 | 2/22/2007 | $83,000.00 |
| 11338981 | 2007-HSA2 | 2/21/2007 | $45,400.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11339091 | 2007-HSA2 | 2/22/2007 | $39,000.00 |
| 11339137 | 2007-HSA2 | 2/21/2007 | $64,000.00 |
| 11339139 | 2007-HSA2 | 2/20/2007 | $25,500.00 |
| 11339179 | 2007-HSA2 | 2/20/2007 | $31,719.00 |
| 11339185 | 2007-HSA2 | 2/21/2007 | $26,650.00 |
| 11339187 | 2007-HSA2 | 2/20/2007 | $41,000.00 |
| 11339213 | 2007-HSA2 | 2/20/2007 | $24,000.00 |
| 11339249 | 2007-HSA2 | 2/20/2007 | $48,000.00 |
| 11339289 | 2007-HSA2 | 2/20/2007 | $44,000.00 |
| 11339331 | 2007-HI1 | 2/21/2007 | $30,000.00 |
| 11339337 | 2007-HSA2 | 2/20/2007 | $54,500.00 |
| 11339339 | 2007-HSA3 | 2/22/2007 | $19,997.33 |
| 11339369 | 2007-HSA2 | 2/20/2007 | $115,300.00 |
| 11339371 | 2007-HSA2 | 2/20/2007 | $35,000.00 |
| 11339413 | 2007-HSA2 | 2/21/2007 | $46,000.00 |
| 11339449 | 2007-HI1 | 2/20/2007 | $30,000.00 |
| 11339451 | 2007-HSA2 | 2/20/2007 | $55,000.00 |
| 11339493 | 2007-HSA2 | 2/22/2007 | $29,200.00 |
| 11339503 | 2007-HSA2 | 2/23/2007 | $40,000.00 |
| 11339505 | 2007-HSA2 | 2/21/2007 | $37,650.00 |
| 11339511 | 2007-HSA2 | 2/21/2007 | $58,500.00 |
| 11339515 | 2007-HSA3 | 2/22/2007 | $99,998.86 |
| 11339517 | 2007-HSA2 | 2/20/2007 | $88,600.00 |
| 11341331 | 2007-HSA2 | 2/23/2007 | $109,000.00 |
| 11341343 | 2007-QO3 | 2/22/2007 | $229,000.00 |
| 11341345 | 2007-S3 | 2/22/2007 | $476,000.00 |
| 11341379 | 2007-HSA2 | 2/21/2007 | $29,000.00 |
| 11341381 | 2007-QO3 | 2/22/2007 | $432,000.00 |
| 11341411 | 2007-S3 | 2/23/2007 | $453,200.00 |
| 11341519 | 2007-HSA2 | 2/20/2007 | $30,000.00 |
| 11341545 | 2007-HSA2 | 2/22/2007 | $27,000.00 |
| 11341551 | 2007-HSA2 | 2/22/2007 | $34,622.00 |
| 11341575 | 2007-HSA2 | 2/20/2007 | $56,000.00 |
| 11341581 | 2007-HSA2 | 2/21/2007 | $20,000.00 |
| 11341613 | 2007-HSA2 | 2/21/2007 | $65,000.00 |
| 11341649 | 2007-HI1 | 2/26/2007 | $35,000.00 |
| 11341691 | 2007-HSA2 | 2/20/2007 | $70,000.00 |
| 11341711 | 2007-HSA3 | 2/21/2007 | $26,994.64 |
| 11341713 | 2007-HI1 | 2/26/2007 | $40,000.00 |
| 11341721 | 2007-HSA2 | 2/20/2007 | $16,300.00 |
| 11341731 | 2007-HSA2 | 2/23/2007 | $35,200.00 |
| 11341871 | 2007-HI1 | 2/26/2007 | $20,000.00 |
| 11341873 | 2007-HSA2 | 2/21/2007 | $36,400.00 |
| 11341879 | 2007-HSA2 | 2/26/2007 | $50,000.00 |
| 11341889 | 2007-HSA2 | 2/21/2007 | $58,100.00 |
| 11341907 | 2007-HI1 | 2/26/2007 | $68,000.00 |
| 11341929 | 2007-HSA2 | 2/21/2007 | $30,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11341933 | 2007-HSA2 | 2/21/2007 | $29,000.00 |
| 11341945 | 2007-HSA2 | 2/22/2007 | $20,000.00 |
| 11341991 | 2007-HSA2 | 2/21/2007 | $18,300.00 |
| 11342027 | 2007-HSA2 | 2/20/2007 | $57,000.00 |
| 11342083 | 2007-HSA2 | 2/20/2007 | $61,000.00 |
| 11342301 | 2007-HSA2 | 2/21/2007 | $40,000.00 |
| 11345175 | 2007-HI1 | 2/27/2007 | $32,000.00 |
| 11345305 | 2007-S3 | 2/22/2007 | $454,000.00 |
| 11346899 | 2007-S3 | 2/23/2007 | $406,200.00 |
| 11347387 | 2007-HI1 | 2/26/2007 | $30,000.00 |
| 11347581 | 2007-S3 | 2/26/2007 | $312,000.00 |
| 11347621 | 2007-QS4 | 2/27/2007 | $129,600.00 |
| 11349023 | 2007-HI1 | 2/26/2007 | $29,300.00 |
| 11349111 | 2007-HI1 | 2/26/2007 | $39,900.00 |
| 11349193 | 2007-S3 | 2/27/2007 | $179,200.00 |
| 11351289 | 2007-S3 | 2/27/2007 | $450,000.00 |
| 11351351 | 2007-HI1 | 2/26/2007 | $60,000.00 |
| 11351385 | 2007-HI1 | 2/26/2007 | $30,350.00 |
| 11351413 | 2007-QS6 | 2/28/2007 | $121,400.00 |
| 11351419 | 2007-HI1 | 2/23/2007 | $47,000.00 |
| 11351467 | 2007-HI1 | 2/28/2007 | $27,000.00 |
| 11353337 | 2007-S3 | 2/28/2007 | $500,000.00 |
| 11358631 | 2007-HI1 | 3/1/2007 | $30,000.00 |
| 11358665 | 2007-S3 | 2/28/2007 | $292,000.00 |
| 11358783 | 2007-S3 | 2/28/2007 | $500,000.00 |
| 11361451 | 2007-S3 | 2/28/2007 | $300,000.00 |
| 11361489 | 2007-S3 | 2/28/2007 | $320,000.00 |
| 11361583 | 2007-QA3 | 3/1/2007 | $156,000.00 |
| 11362211 | 2007-HI1 | 3/1/2007 | $35,000.00 |
| 11362267 | 2007-S3 | 3/9/2007 | $552,000.00 |
| 11362297 | 2007-QO3 | 2/28/2007 | $197,000.00 |
| 11363855 | 2007-S4 | 3/29/2007 | $510,000.00 |
| 11365975 | 2007-QO3 | 3/1/2007 | $217,600.00 |
| 11368193 | 2007-S3 | 3/9/2007 | $445,000.00 |
| 11368399 | 2007-HI1 | 3/6/2007 | $30,000.00 |
| 11368409 | 2007-HI1 | 3/6/2007 | $30,000.00 |
| 11368435 | 2007-HI1 | 3/7/2007 | $15,000.00 |
| 11368439 | 2007-HSA3 | 3/6/2007 | $45,989.78 |
| 11368477 | 2007-HI1 | 3/6/2007 | $30,000.00 |
| 11368479 | 2007-HI1 | 3/6/2007 | $30,000.00 |
| 11368725 | 2007-HSA3 | 3/9/2007 | $50,000.00 |
| 11368831 | 2007-HSA3 | 3/7/2007 | $24,925.00 |
| 11368857 | 2007-HSA3 | 3/7/2007 | $47,099.35 |
| 11368869 | 2007-HSA3 | 3/7/2007 | $38,500.00 |
| 11368883 | 2007-HSA3 | 3/2/2007 | $35,000.00 |
| 11369109 | 2007-S3 | 3/15/2007 | $617,500.00 |
| 11369331 | 2007-S3 | 3/9/2007 | $455,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11371335 | 2007-QO4 | 3/15/2007 | $372,000.00 |
| 11371381 | 2007-S3 | 3/7/2007 | $396,000.00 |
| 11371463 | 2007-S3 | 3/9/2007 | $503,000.00 |
| 11380217 | 2007-QO4 | 3/12/2007 | $576,000.00 |
| 11380255 | 2007-S3 | 3/12/2007 | $500,000.00 |
| 11381225 | 2007-HI1 | 3/9/2007 | $70,000.00 |
| 11381307 | 2007-HI1 | 3/9/2007 | $50,000.00 |
| 11381347 | 2007-HI1 | 3/9/2007 | $12,700.00 |
| 11385999 | 2007-S3 | 3/13/2007 | $600,000.00 |
| 11386007 | 2007-QO4 | 3/13/2007 | $128,000.00 |
| 11389813 | 2007-QO4 | 3/14/2007 | $148,000.00 |
| 11389903 | 2007-S3 | 3/14/2007 | $460,000.00 |
| 11390219 | 2007-QO4 | 3/12/2007 | $163,000.00 |
| 11390339 | 2007-QO4 | 3/14/2007 | $100,000.00 |
| 11391897 | 2007-QS9 | 3/13/2007 | $154,400.00 |
| 11391899 | 2007-S3 | 3/14/2007 | $151,200.00 |
| 11392141 | 2007-QO4 | 4/13/2007 | $240,000.00 |
| 11394879 | 2007-QO4 | 3/29/2007 | $675,000.00 |
| 11395809 | 2007-HSA3 | 3/12/2007 | $32,293.08 |
| 11395881 | 2007-HSA3 | 3/13/2007 | $44,989.56 |
| 11395903 | 2007-HSA3 | 3/16/2007 | $135,000.00 |
| 11395919 | 2007-HSA3 | 3/16/2007 | $48,900.00 |
| 11395921 | 2007-HSA3 | 3/16/2007 | $149,999.04 |
| 11395923 | 2007-HSA3 | 3/15/2007 | $14,998.84 |
| 11395933 | 2007-HSA3 | 3/12/2007 | $40,000.00 |
| 11395945 | 2007-HSA3 | 3/12/2007 | $100,000.00 |
| 11395995 | 2007-HSA3 | 3/21/2007 | $100,000.00 |
| 11396025 | 2007-HSA3 | 3/16/2007 | $38,700.00 |
| 11396781 | 2007-S3 | 3/15/2007 | $312,000.00 |
| 11396819 | 2007-QS4 | 3/13/2007 | $119,000.00 |
| 11398779 | 2007-S3 | 3/14/2007 | $428,000.00 |
| 11399139 | 2007-S3 | 3/14/2007 | $632,000.00 |
| 11402051 | 2007-S3 | 3/16/2007 | $431,200.00 |
| 11404225 | 2007-QO4 | 3/19/2007 | $140,000.00 |
| 11404507 | 2007-QO4 | 3/19/2007 | $208,000.00 |
| 11404665 | 2007-QO4 | 3/21/2007 | $196,000.00 |
| 11406731 | 2007-QO4 | 3/21/2007 | $161,500.00 |
| 11406777 | 2007-S4 | 3/22/2007 | $224,000.00 |
| 11406781 | 2007-QO4 | 3/21/2007 | $261,600.00 |
| 11408171 | 2007-HSA3 | 3/19/2007 | $55,000.00 |
| 11409733 | 2007-S4 | 3/20/2007 | $456,000.00 |
| 11413111 | 2007-QO4 | 3/26/2007 | $210,000.00 |
| 11413179 | 2007-S4 | 3/29/2007 | $140,000.00 |
| 11415089 | 2007-S4 | 3/23/2007 | $180,000.00 |
| 11415183 | 2007-S4 | 3/28/2007 | $498,000.00 |
| 11415569 | 2007-QO4 | 3/26/2007 | $213,200.00 |
| 11418411 | 2007-S4 | 3/23/2007 | $160,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 11419733 | 2007-S4 | 3/29/2007 | $438,400.00 |
| 11419773 | 2007-S4 | 3/29/2007 | $450,000.00 |
| 11419813 | 2007-QO4 | 3/28/2007 | $230,500.00 |
| 11419817 | 2007-S4 | 4/2/2007 | $471,000.00 |
| 11419849 | 2007-QO4 | 3/30/2007 | $194,000.00 |
| 11422329 | 2007-QO4 | 4/2/2007 | $305,000.00 |
| 11428457 | 2007-S4 | 3/29/2007 | $480,700.00 |
| 11430333 | 2007-S4 | 4/2/2007 | $459,900.00 |
| 11430689 | 2007-S5 | 4/4/2007 | $479,500.00 |
| 11432529 | 2007-S4 | 4/12/2007 | $425,000.00 |
| 11432573 | 2007-QO4 | 4/12/2007 | $340,000.00 |
| 11435451 | 2007-QS6 | 4/10/2007 | $240,000.00 |
| 11435529 | 2007-QO4 | 4/2/2007 | $445,000.00 |
| 11437449 | 2007-QO4 | 4/10/2007 | $286,000.00 |
| 11437489 | 2007-S5 | 4/3/2007 | $513,000.00 |
| 11437529 | 2007-QS7 | 4/4/2007 | $160,000.00 |
| 11438027 | 2007-S4 | 4/6/2007 | $536,000.00 |
| 11440289 | 2007-QO4 | 4/5/2007 | $147,200.00 |
| 11440465 | 2007-QS6 | 4/10/2007 | $260,000.00 |
| 11441901 | 2007-S4 | 4/10/2007 | $673,000.00 |
| 11445037 | 2007-S4 | 4/10/2007 | $430,000.00 |
| 11446387 | 2007-QO4 | 4/12/2007 | $281,600.00 |
| 11446415 | 2007-S4 | 4/12/2007 | $468,750.00 |
| 11446691 | 2007-S6 | 4/16/2007 | $508,000.00 |
| 11448145 | 2007-S4 | 4/12/2007 | $554,000.00 |
| 11450979 | 2007-S5 | 4/17/2007 | $520,000.00 |
| 11452097 | 2007-S6 | 4/16/2007 | $539,100.00 |
| 15466289 | 2007-S5 | 4/24/2007 | $364,000.00 |
| 15467593 | 2007-QO4 | 4/19/2007 | $712,000.00 |
| 15467889 | 2007-S5 | 4/20/2007 | $288,000.00 |
| 15468089 | 2007-S5 | 4/27/2007 | $430,000.00 |
| 17469177 | 2007-S5 | 4/24/2007 | $551,200.00 |
| 17469495 | 2007-S7 | 4/30/2007 | $163,200.00 |
| 17469535 | 2007-S5 | 4/20/2007 | $484,500.00 |
| 17469811 | 2007-S5 | 4/24/2007 | $542,000.00 |
| 17471013 | 2007-QO4 | 4/26/2007 | $110,000.00 |
| 19025299 | 2007-HSA3 | 4/26/2007 | $52,800.00 |
| 19026851 | 2007-QO4 | 5/2/2007 | $250,000.00 |
| 19081415 | 2007-SA3 | 4/27/2007 | $440,000.00 |
| 19081493 | 2007-QS7 | 4/27/2007 | $192,200.00 |
| 19081769 | 2007-QO4 | 5/11/2007 | $275,000.00 |
| 19102659 | 2007-HSA3 | 5/2/2007 | $28,400.00 |
| 19103135 | 2007-S5 | 5/2/2007 | $424,000.00 |
| 19103169 | 2007-SA3 | 5/2/2007 | $600,000.00 |
| 19124213 | 2007-QO4 | 5/7/2007 | $232,000.00 |
| 19124425 | 2007-QS8 | 5/8/2007 | $132,000.00 |
| 19132457 | 2007-QO4 | 5/16/2007 | $133,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 19146893 | 2007-S5 | 5/8/2007 | $320,000.00 |
| 19155049 | 2007-S5 | 5/15/2007 | $538,333.24 |
| 19155051 | 2007-QO4 | 5/16/2007 | $196,000.00 |
| 19155053 | 2007-S5 | 5/11/2007 | $553,000.00 |
| 19282009 | 2007-SA3 | 5/15/2007 | $459,000.00 |
| 19283055 | 2007-S9 | 6/22/2007 | $160,000.00 |
| 19316289 | 2007-S6 | 5/18/2007 | $525,000.00 |
| 19323091 | 2007-S6 | 5/22/2007 | $559,200.00 |
| 19342929 | 2007-S7 | 5/24/2007 | $440,000.00 |
| 19343009 | 2007-S6 | 5/23/2007 | $548,000.00 |
| 19343019 | 2007-S6 | 5/24/2007 | $512,000.00 |
| 19385929 | 2007-QS10 | 6/4/2007 | $208,182.56 |
| 19396129 | 2007-S7 | 6/5/2007 | $450,000.00 |
| 19396169 | 2007-S7 | 6/5/2007 | $424,000.00 |
| 19413969 | 2007-S7 | 6/14/2007 | $492,200.00 |
| 19421531 | 2007-QO5 | 6/28/2007 | $152,000.00 |
| 19421779 | 2007-QO5 | 7/18/2007 | $408,000.00 |
| 19434215 | 2007-QO5 | 6/29/2007 | $605,000.00 |
| 19434817 | 2007-QO5 | 7/25/2007 | $108,900.00 |
| 19434901 | 2007-QO5 | 7/9/2007 | $153,900.00 |
| 19439091 | 2007-QS9 | 6/14/2007 | $206,500.00 |
| 19439251 | 2007-QS8 | 6/14/2007 | $304,000.00 |
| 19439703 | 2007-QS8 | 6/14/2007 | $196,000.00 |
| 19469135 | 2007-QA5 | 6/18/2007 | $391,500.00 |
| 19477375 | 2007-QA5 | 6/21/2007 | $148,000.00 |
| 19484171 | 2007-QS9 | 6/21/2007 | $604,000.00 |
| 19502329 | 2007-QS9 | 6/26/2007 | $207,500.00 |
| 19502375 | 2007-QO5 | 6/28/2007 | $384,000.00 |
| 19508651 | 2007-QO5 | 6/28/2007 | $337,000.00 |
| 19508853 | 2007-QO5 | 6/28/2007 | $400,000.00 |
| 19508889 | 2007-QO5 | 7/10/2007 | $111,150.00 |
| 19508977 | 2007-QO5 | 6/29/2007 | $346,000.00 |
| 19509495 | 2007-QO5 | 7/3/2007 | $157,500.00 |
| 19523769 | 2007-QO5 | 6/28/2007 | $97,500.00 |
| 19523821 | 2007-QO5 | 6/29/2007 | $202,500.00 |
| 19540569 | 2007-QO5 | 6/29/2007 | $450,000.00 |
| 19540781 | 2007-S7 | 7/9/2007 | $384,000.00 |
| 19540813 | 2007-S7 | 7/5/2007 | $454,200.00 |
| 19561451 | 2007-QO5 | 7/6/2007 | $450,000.00 |
| 19586535 | 2007-QO5 | 7/16/2007 | $270,000.00 |
| 19588369 | 2007-QO5 | 7/13/2007 | $160,000.00 |
| 19598169 | 2007-QO5 | 7/13/2007 | $356,000.00 |
| 19598703 | 2007-QO5 | 7/13/2007 | $249,600.00 |
| 19630731 | 2007-QO5 | 7/26/2007 | $389,000.00 |
| 19630781 | 2007-QO5 | 7/20/2007 | $120,000.00 |
| 19635131 | 2007-QO5 | 7/25/2007 | $205,600.00 |
| 19645537 | 2007-QO5 | 7/26/2007 | $400,000.00 |

| Loan ID No. | Securitization | Date of Acquisition | Original Balance |
|---|---|---|---|
| 19652939 | 2007-QO5 | 7/25/2007 | $255,000.00 |
| 19657937 | 2007-QO5 | 7/31/2007 | $182,000.00 |
| 19663291 | 2007-QO5 | 8/1/2007 | $79,253.68 |
| 19663419 | 2007-QO5 | 8/3/2007 | $158,350.00 |
| 19684015 | 2007-QO5 | 8/3/2007 | $236,000.00 |
| 19695861 | 2007-QO5 | 8/6/2007 | $228,800.00 |
| 19701655 | 2007-QO5 | 8/8/2007 | $368,000.00 |
| 19826773 | 2007-QS11 | 8/20/2007 | $170,000.00 |
| 19826809 | 2007-QO5 | 8/13/2007 | $378,000.00 |
| 19833057 | 2007-QA5 | 8/13/2007 | $428,000.00 |
| 19833773 | 2007-QA5 | 8/13/2007 | $588,000.00 |
| 999991111 | 2004-HI3 | 7/14/2004 | $25,000.00 |
| | | | |
| TOTAL | | | $600,904,991.44 |
| | | | |